Form of Class CE Certificates

THIS CERTIFICATE IS SUBORDINATED IN RIGHT OF PAYMENT TO THE SENIOR CERTIFICATES AND THE CLASS M CERTIFICATES AS DESCRIBED IN THE AGREEMENT (AS DEFINED BELOW).

SOLELY FOR U.S. FEDERAL INCOME TAX PURPOSES, THIS CERTIFICATE REPRESENTS A "REGULAR INTEREST" IN A "REAL ESTATE MORTGAGE INVESTMENT CONDUIT," AS THOSE TERMS ARE DEFINED, RESPECTIVELY, IN SECTIONS 860G AND 860D OF THE INTERNAL REVENUE CODE OF 1986 (THE "CODE").

THIS CERTIFICATE HAS NOT BEEN AND WILL NOT BE REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR UNDER ANY STATE SECURITIES LAWS. THE HOLDER HEREOF, BY PURCHASING THIS CERTIFICATE, AGREES THAT THIS CERTIFICATE MAY BE REOFFERED, RESOLD, PLEDGED OR OTHERWISE TRANSFERRED ONLY IN COMPLIANCE WITH THE SECURITIES ACT AND OTHER APPLICABLE LAWS AND ONLY (1) PURSUANT TO RULE 144A UNDER THE SECURITIES ACT ("RULE 144A") TO A PERSON THAT THE HOLDER REASONABLY BELIEVES IS A QUALIFIED INSTITUTIONAL BUYER WITHIN THE MEANING OF RULE 144A (A "QIB"), PURCHASING FOR ITS OWN ACCOUNT OR A QIB PURCHASING FOR THE ACCOUNT OF A QIB, WHOM THE HOLDER HAS INFORMED, IN EACH CASE, THAT THE REOFFER, RESALE, PLEDGE OR OTHER TRANSFER IS BEING MADE IN RELIANCE ON RULE 144A, (2) PURSUANT TO AN EXEMPTION FROM REGISTRATION PROVIDED BY RULE 144 UNDER THE SECURITIES ACT (IF AVAILABLE) OR (3) IN CERTIFICATED FORM TO AN "INSTITUTIONAL ACCREDITED INVESTOR" WITHIN THE MEANING THEREOF IN RULE 501(a)(1), (2), (3) or (7) OF REGULATION D UNDER THE ACT OR ANY ENTITY IN WHICH ALL OF THE EQUITY OWNERS COME WITHIN SUCH PARAGRAPHS PURCHASING NOT FOR DISTRIBUTION IN VIOLATION OF THE SECURITIES ACT, SUBJECT TO (A) THE RECEIPT BY THE SECURITIES ADMINISTRATOR OF A LETTER SUBSTANTIALLY IN THE FORM PROVIDED IN THE AGREEMENT AND (B) THE RECEIPT BY THE SECURITIES ADMINISTRATOR OF SUCH OTHER EVIDENCE ACCEPTABLE TO THE SECURITIES ADMINISTRATOR THAT SUCH REOFFER, RESALE, PLEDGE OR TRANSFER IS IN COMPLIANCE WITH THE SECURITIES ACT AND OTHER APPLICABLE LAWS OR IN EACH CASE IN ACCORDANCE WITH ALL APPLICABLE SECURITIES LAWS OF THE UNITED STATES AND ANY OTHER APPLICABLE JURISDICTION.

NO TRANSFER OF THIS CERTIFICATE MAY BE MADE TO ANY PERSON, UNLESS THE TRANSFEREE PROVIDES EITHER A CERTIFICATION PURSUANT TO SECTION 7.02(b) OF THE AGREEMENT OR AN OPINION OF

COUNSEL SATISFACTORY TO THE SECURITIES ADMINISTRATOR THAT THE PURCHASE AND HOLDING OF THIS CERTIFICATE ARE PERMISSIBLE UNDER APPLICABLE LAW, WILL NOT CONSTITUTE OR RESULT IN ANY NON-EXEMPT PROHIBITED TRANSACTIONS UNDER SECTION 406 OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS AMENDED ("ERISA") OR SECTION 4975 OF THE CODE AND WILL NOT SUBJECT THE TRUSTEE, THE MASTER SERVICER, THE SECURITIES ADMINISTRATOR OR THE DEPOSITOR TO ANY OBLIGATION OR LIABILITY IN ADDITION TO THOSE UNDERTAKEN IN THE AGREEMENT.

NO TRANSFER OF THIS CERTIFICATE SHALL BE MADE UNLESS THE PROPOSED TRANSFEREE OF SUCH CERTIFICATE (1) PROVIDES TO THE SECURITIES ADMINISTRATOR THE APPROPRIATE TAX CERTIFICATION FORM THAT WOULD ELIMINATE ANY WITHHOLDING OR DEDUCTION FOR TAXES FROM AMOUNTS PAYABLE BY THE SWAP PROVIDER, PURSUANT TO THE SWAP AGREEMENT, TO THE SWAP ADMINISTRATOR ON BEHALF OF THE SUPPLEMENTAL INTEREST TRUST (I.E., IRS FORM W-9 OR IRS FORM W-8BEN, W-8IMY, W-8EXP OR W-8ECI, AS APPLICABLE (OR ANY SUCCESSOR FORM THERETO), TOGETHER WITH ANY APPLICABLE ATTACHMENTS) AND (2) AGREES TO UPDATE SUCH FORM (A) UPON EXPIRATION OF ANY SUCH FORM, (B) AS REQUIRED UNDER THEN APPLICABLE U.S. TREASURY REGULATIONS AND (C) PROMPTLY UPON LEARNING THAT SUCH FORM HAS BECOME OBSOLETE OR INCORRECT, EACH AS A CONDITION TO SUCH TRANSFER. IN ADDITION, NO TRANSFER OF THIS CERTIFICATE SHALL BE MADE IF SUCH TRANSFER WOULD CAUSE THE SUPPLEMENTAL INTEREST TRUST TO BE BENEFICIALLY OWNED BY TWO OR MORE PERSONS FOR FEDERAL INCOME TAX PURPOSES, OR CONTINUE TO BE SO TREATED, UNLESS (I) EACH PROPOSED TRANSFEREE OF SUCH CERTIFICATE COMPLIES WITH THE FOREGOING CONDITIONS, AND (II) THE PROPOSED MAJORITY HOLDER OF THE CLASS CE CERTIFICATES (OR EACH HOLDER, IF THERE IS OR WOULD BE NO MAJORITY HOLDER) (X) PROVIDES, OR CAUSES TO BE PROVIDED, ON BEHALF OF THE SUPPLEMENTAL INTEREST TRUST, IF APPLICABLE, TO THE SECURITIES ADMINISTRATOR, THE APPROPRIATE TAX CERTIFICATION FORM THAT WOULD BE REQUIRED FROM THE SUPPLEMENTAL INTEREST TRUST TO ELIMINATE ANY WITHHOLDING OR DEDUCTION FOR TAXES FROM AMOUNTS PAYABLE BY THE SWAP PROVIDER, PURSUANT TO THE SWAP AGREEMENT, TO THE SWAP ADMINISTRATOR ON BEHALF OF THE SUPPLEMENTAL INTEREST TRUST (I.E., IRS FORM W-9 OR IRS FORM W-8BEN, W-8IMY, W-8EXP OR W-8ECI, AS APPLICABLE (OR ANY SUCCESSOR FORM THERETO), TOGETHER WITH ANY APPLICABLE ATTACHMENTS) AND (Y) AGREES TO UPDATE SUCH FORM (A) UPON EXPIRATION OF SUCH FORM, (B) AS REQUIRED UNDER THEM APPLICABLE U.S. TREASURY REGULATIONS AND (C) PROMPTLY UPON LEARNING THAT SUCH FORM HAS BECOME OBSOLETE OR INCORRECT. UNDER THE AGREEMENT, UPON RECEIPT OF ANY TAX CERTIFICATION FORM PURSUANT TO THESE TRANSFER RESTRICTIONS FROM A HOLDER OF THIS CERTIFICATE, THE SECURITIES ADMINISTRATOR

SHALL FORWARD SUCH TAX CERTIFICATION FORM TO THE SUPPLEMENTAL INTEREST TRUST TRUSTEE. THE SUPPLEMENTAL INTEREST TRUST TRUSTEE SHALL FORWARD SUCH TAX CERTIFICATION FORM PROVIDED TO IT TO THE SWAP PROVIDER. EACH HOLDER OF THIS CERTIFICATE AND EACH TRANSFEREE THEREOF SHALL BE DEEMED TO HAVE CONSENTED TO THE SUPPLEMENTAL INTEREST TRUST TRUSTEE FORWARDING TO THE SWAP PROVIDER ANY TAX CERTIFICATION FORM IT HAS PROVIDED AND UPDATED IN ACCORDANCE WITH THESE TRANSFER RESTRICTIONS. ANY PURPORTED SALES OR TRANSFERS OF THIS CERTIFICATE TO A TRANSFEREE WHICH DOES NOT COMPLY WITH THESE REQUIREMENTS SHALL BE DEEMED NULL AND VOID UNDER THE AGREEMENT.

Certificate No. 1

Percentage Interest: 100%

Class CE

Date of Pooling and Servicing Agreement
and Cut-off Date:
June 1, 2007

Initial Certificate Notional Amount of this
Certificate as of the Cut-off Date:
$[_____]

First Distribution Date:
July 25, 2007

Aggregate Certificate Notional Amount of this
Certificate as of the Cut-off Date:
$[_____]

Master Servicer and Securities Administrator:
Wells Fargo Bank, National Association

CUSIP: [_____]

Last Scheduled Distribution Date:
[_____]

## MORGAN STANLEY STRUCTURED TRUST I 2007-1
### ASSET-BACKED CERTIFICATE
### SERIES 2007-1

evidencing a fractional undivided interest in the distributions allocable to the
Class CE Certificates with respect to a Trust Fund consisting primarily of a pool
of conventional, closed-end, first and second lien, subprime, one-to-four family
fixed and adjustable interest rate mortgage loans sold by BEAR STEARNS
ASSET BACKED SECURITIES I LLC.

This Certificate is payable solely from the assets of the Trust Fund, and does not
represent an obligation of or interest in Bear Stearns Asset Backed Securities I LLC, the Master
Servicer, the Securities Administrator or the Trustee referred to below or any of their affiliates or
any other person. Neither this Certificate nor the underlying Mortgage Loans are guaranteed or
insured by any governmental entity or by Bear Stearns Asset Backed Securities I LLC, the
Master Servicer, the Securities Administrator or the Trustee or any of their affiliates or any other
person. None of Bear Stearns Asset Backed Securities I LLC, the Master Servicer or any of their
affiliates will have any obligation with respect to any certificate or other obligation secured by or
payable from payments on the Certificates.

This certifies that Morgan Stanley Mortgage Capital Holdings LLC is the
registered owner of the Percentage Interest evidenced hereby in the beneficial ownership interest
of Certificates of the same Class as this Certificate in a trust (the "Trust Fund") generally

consisting of conventional, closed-end, first and second lien, subprime, fixed and adjustable rate mortgage loans secured by one- to four- family residences (collectively, the "Mortgage Loans") sold by Bear Stearns Asset Backed Securities I LLC ("BSABS I"). The Mortgage Loans were sold by EMC Mortgage Corporation ("EMC") and Morgan Stanley Mortgage Capital Holdings LLC to BSABS I. Wells Fargo Bank, National Association will act as master servicer of the Mortgage Loans (in that capacity, the "Master Servicer," which term includes any successors thereto under the Agreement referred to below). The Trust Fund was created pursuant to the Pooling and Servicing Agreement, dated as of the Cut-off Date specified above (the "Agreement"), among BSABS I, as depositor (the "Depositor"), Wells Fargo Bank, National Association as Master Servicer and securities administrator (in such capacity, the "Securities Administrator"), and Deutsche Bank National Trust Company, as trustee (the "Trustee"), a summary of certain of the pertinent provisions of which is set forth hereafter. To the extent not defined herein, capitalized terms used herein shall have the meaning ascribed to them in the Agreement. This Certificate is issued under and is subject to the terms, provisions and conditions of the Agreement, to which Agreement the Holder of this Certificate by virtue of its acceptance hereof assents and by which such Holder is bound.

The Securities Administrator will distribute on the 25th day of each month, or, if such 25th day is not a Business Day, the immediately following Business Day (each, a "Distribution Date"), commencing on the First Distribution Date specified above, to the Person in whose name this Certificate is registered at the close of business on the last day (or if such last day is not a Business Day, the Business Day immediately preceding such last day) of the calendar month immediately preceding the month in which the Distribution Date occurs, an amount equal to the product of the Percentage Interest evidenced by this Certificate and the amounts required to be distributed to the Holders of Certificates of the same Class as this Certificate.

Distributions on this Certificate will be made by the Securities Administrator by check mailed to the address of the Person entitled thereto as such name and address shall appear on the Certificate Register or by wire transfer, if such Person so requests by notifying the Securities Administrator in writing as specified in the Agreement. Notwithstanding the above, the final distribution on this Certificate will be made after due notice by the Securities Administrator of the pendency of such distribution and only upon presentation and surrender of this Certificate at the office or agency appointed by the Securities Administrator for that purpose and designated in such notice.

No transfer of this Certificate shall be made unless the transfer is made pursuant to an effective registration statement under the Securities Act of 1933, as amended (the "1933 Act"), and an effective registration or qualification under applicable state securities laws, or is made in a transaction that does not require such registration or qualification. In the event that such a transfer of this Certificate is to be made without registration or qualification, the Securities Administrator shall require receipt of (i) if such transfer is purportedly being made in reliance upon Rule 144A under the 1933 Act, written certifications from the Holder of the Certificate desiring to effect the transfer, and from such Holder's prospective transferee, substantially in the forms attached to the Agreement as Exhibit D and either Exhibit E or Exhibit F, as applicable, and (ii) in all other cases, an Opinion of Counsel satisfactory to it that such

transfer may be made without such registration or qualification (which Opinion of Counsel shall not be an expense of the Trust Fund or of the Depositor, the Securities Administrator, the Trustee, or the Master Servicer in their respective capacities as such), together with copies of the written certification(s) of the Holder of the Certificate desiring to effect the transfer and/or such Holder's prospective transferee upon which such Opinion of Counsel is based. Neither the Depositor, the Securities Administrator nor the Trustee is obligated to register or qualify the Class of Certificates specified on the face hereof under the 1933 Act or any other securities law or to take any action not otherwise required under the Agreement to permit the transfer of such Certificates without registration or qualification. Any Holder desiring to effect a transfer of this Certificate shall be required to indemnify the Trustee, the Securities Administrator, the Depositor, the Sellers and the Master Servicer against any liability that may result if the transfer is not so exempt or is not made in accordance with such federal and state laws.

No transfer of this Class CE Certificate will be made unless the Securities Administrator shall have received either (i) the Opinion of Counsel set forth in Section 7.02(b) of the Agreement or (ii) a representation letter under Section 7.02(b) of the Agreement, in the form as described by the Agreement, stating that the transferee is not an employee benefit or other plan subject to the prohibited transaction provisions of ERISA or Section 4975 of the Code (a "Plan"), or any other person (including an investment manager, a named fiduciary or a trustee of any Plan) acting, directly or indirectly, on behalf of or purchasing any Certificate with "plan assets" of any Plan.

This Certificate is one of a duly authorized issue of Certificates designated as set forth on the face hereof (the "Certificates"). The Certificates, in the aggregate, evidence the entire beneficial ownership interest in the Trust Fund formed pursuant to the Agreement.

The Certificateholder, by its acceptance of this Certificate, agrees that it will look solely to the Trust Fund for payment hereunder and that neither the Trustee nor the Securities Administrator is liable to the Certificateholders for any amount payable under this Certificate or the Agreement or, except as expressly provided in the Agreement, subject to any liability under the Agreement.

This Certificate does not purport to summarize the Agreement and reference is made to the Agreement for the interests, rights and limitations of rights, benefits, obligations and duties evidenced hereby, and the rights, duties and immunities of the Securities Administrator and the Trustee.

The Agreement permits, with certain exceptions therein provided, the amendment thereof and the modification of the rights and obligations of the Depositor and the rights of the Certificateholders under the Agreement from time to time by the parties thereto with the consent of the Holders of Certificates, evidencing over 50% of the Voting Rights of the Certificates, or with the consent of the Holders of each Class of Certificates affected thereby evidencing over 50% of the Voting Rights of such Class or Classes, as applicable. Any such consent by the Holder of this Certificate shall be conclusive and binding on such Holder and upon all future Holders of this Certificate and of any Certificate issued upon the transfer hereof or in lieu hereof whether or not notation of such consent is made upon this Certificate. The Agreement also

permits the amendment thereof, in certain limited circumstances, without the consent of the Holders of any of the Certificates.

As provided in the Agreement and subject to certain limitations therein set forth, the transfer of this Certificate is registrable with the Securities Administrator upon surrender of this Certificate for registration of transfer at the offices or agencies maintained by the Securities Administrator for such purposes, duly endorsed by, or accompanied by a written instrument of transfer in form satisfactory to the Securities Administrator duly executed by the Holder hereof or such Holder's attorney duly authorized in writing, and thereupon one or more new Certificates in authorized denominations representing a like aggregate Percentage Interest will be issued to the designated transferee.

The Certificates are issuable only as registered Certificates without coupons in the Classes and denominations specified in the Agreement. As provided in the Agreement and subject to certain limitations therein set forth, this Certificate is exchangeable for one or more new Certificates evidencing the same Class and in the same aggregate Percentage Interest, as requested by the Holder surrendering the same.

No service charge will be made to the Certificateholders for any such registration of transfer, but the Securities Administrator may require payment of a sum sufficient to cover any tax or other governmental charge payable in connection therewith. The Depositor, the Master Servicer, the Securities Administrator, the Trustee and any agent of any of them may treat the Person in whose name this Certificate is registered as the owner hereof for all purposes, and none of the Depositor, the Master Servicer, the Securities Administrator, the Trustee or any such agent shall be affected by notice to the contrary.

The obligations created by the Agreement and the Trust Fund created thereby (other than the obligations to make payments to Certificateholders with respect to the termination of the Agreement) shall terminate upon the earlier of (i) the later of (A) the maturity or other liquidation (or Advance with respect thereto) of the last Mortgage Loan remaining in the Trust Fund and disposition of all property acquired upon foreclosure or deed in lieu of foreclosure of any Mortgage Loan and (B) the remittance of all funds due under the Agreement, or (ii) the optional repurchase by the party named in the Agreement of all the Mortgage Loans and other assets of the Trust Fund in accordance with the terms of the Agreement. Such optional repurchase may be made only on or after the first Distribution Date on which the aggregate Stated Principal Balance of the Mortgage Loans is less than or equal to a certain percentage of the aggregate Stated Principal Balance of the Mortgage Loans as of the Cut-off Date as set forth in the Agreement. The exercise of such right will effect the early retirement of the Certificates. In no event, however, will the Trust created by the Agreement continue beyond the earlier of (i) the expiration of 21 years after the death of certain persons identified in the Agreement and (ii) the Latest Possible Maturity Date (as defined in the Agreement).

Unless this Certificate has been countersigned by an authorized signatory of the Securities Administrator by manual signature, this Certificate shall not be entitled to any benefit under the Agreement, or be valid for any purpose.

IN WITNESS WHEREOF, the Trustee has caused this Certificate to be duly executed.

Dated: _____, _____

WELLS FARGO BANK, NATIONAL ASSOCIATION,
as Securities Administrator


By: _____
Authorized Signatory

## CERTIFICATE OF AUTHENTICATION

This is one of the Class CE Certificates referred to in the within-mentioned Agreement.

WELLS FARGO BANK, NATIONAL ASSOCIATION,
as Securities Administrator

By: _____
Authorized Signatory

## ASSIGNMENT

FOR VALUE RECEIVED, the undersigned hereby sell(s), assign(s) and transfer(s) unto _____ (Please print or typewrite name and address including postal zip code of assignee) a Percentage Interest evidenced by the within Asset-Backed Certificate and hereby authorizes the transfer of registration of such interest to assignee on the Certificate Register of the Trust Fund.

I (We) further direct the Certificate Registrar to issue a new Certificate of a like denomination and Class, to the above named assignee and deliver such Certificate to the following address:

_____

_____

Dated: _____

_____
Signature by or on behalf of assignor

_____
Signature Guaranteed

## DISTRIBUTION INSTRUCTIONS

The assignee should include the following for purposes of distribution:

Distributions shall be made, by wire transfer or otherwise, in immediately available funds to _____

_____

for the account of _____

account number _____ or, if mailed by check, to

_____

Applicable statements should be mailed to _____

_____

This information is provided by _____ assignee named above, or _____ _____ its agent.

EXHIBIT A-5

Form of Class P Certificate

SOLELY FOR U.S. FEDERAL INCOME TAX PURPOSES, THIS CERTIFICATE REPRESENTS A "REGULAR INTEREST" IN A "REAL ESTATE MORTGAGE INVESTMENT CONDUIT," AS THOSE TERMS ARE DEFINED, RESPECTIVELY, IN SECTIONS 860G AND 860D OF THE INTERNAL REVENUE CODE OF 1986 (THE "CODE").

THE CERTIFICATE PRINCIPAL BALANCE OF THIS CERTIFICATE WILL BE DECREASED BY THE PRINCIPAL PAYMENTS HEREON. ACCORDINGLY, FOLLOWING THE INITIAL ISSUANCE OF THE CERTIFICATES, THE CERTIFICATE PRINCIPAL BALANCE OF THIS CERTIFICATE WILL BE DIFFERENT FROM THE DENOMINATION SHOWN BELOW. ANYONE ACQUIRING THIS CERTIFICATE MAY ASCERTAIN ITS CERTIFICATE PRINCIPAL BALANCE BY INQUIRY OF THE SECURITIES ADMINISTRATOR NAMED HEREIN.

THIS CERTIFICATE HAS NOT BEEN AND WILL NOT BE REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR UNDER ANY STATE SECURITIES LAWS. THE HOLDER HEREOF, BY PURCHASING THIS CERTIFICATE, AGREES THAT THIS CERTIFICATE MAY BE REOFFERED, RESOLD, PLEDGED OR OTHERWISE TRANSFERRED ONLY IN COMPLIANCE WITH THE SECURITIES ACT AND OTHER APPLICABLE LAWS AND ONLY (1) PURSUANT TO RULE 144A UNDER THE SECURITIES ACT ("RULE 144A") TO A PERSON THAT THE HOLDER REASONABLY BELIEVES IS A QUALIFIED INSTITUTIONAL BUYER WITHIN THE MEANING OF RULE 144A (A "QIB"), PURCHASING FOR ITS OWN ACCOUNT OR A QIB PURCHASING FOR THE ACCOUNT OF A QIB, WHOM THE HOLDER HAS INFORMED, IN EACH CASE, THAT THE REOFFER, RESALE, PLEDGE OR OTHER TRANSFER IS BEING MADE IN RELIANCE ON RULE 144A, (2) PURSUANT TO AN EXEMPTION FROM REGISTRATION PROVIDED BY RULE 144 UNDER THE SECURITIES ACT (IF AVAILABLE) OR (3) IN CERTIFICATED FORM TO AN "INSTITUTIONAL ACCREDITED INVESTOR" WITHIN THE MEANING THEREOF IN RULE 501(a)(1), (2), (3) or (7) OF REGULATION D UNDER THE ACT OR ANY ENTITY IN WHICH ALL OF THE EQUITY OWNERS COME WITHIN SUCH PARAGRAPHS PURCHASING NOT FOR DISTRIBUTION IN VIOLATION OF THE SECURITIES ACT, SUBJECT TO (A) THE RECEIPT BY THE SECURITIES ADMINISTRATOR OF A LETTER SUBSTANTIALLY IN THE FORM PROVIDED IN THE AGREEMENT AND (B) THE RECEIPT BY THE SECURITIES ADMINISTRATOR OF SUCH OTHER EVIDENCE ACCEPTABLE TO THE SECURITIES ADMINISTRATOR THAT SUCH REOFFER, RESALE, PLEDGE OR TRANSFER IS IN COMPLIANCE WITH THE SECURITIES ACT AND OTHER APPLICABLE LAWS OR IN EACH CASE IN ACCORDANCE WITH ALL

APPLICABLE SECURITIES LAWS OF THE UNITED STATES AND ANY OTHER APPLICABLE JURISDICTION.

NO TRANSFER OF THIS CERTIFICATE MAY BE MADE TO ANY PERSON, UNLESS THE TRANSFEREE PROVIDES EITHER A CERTIFICATION PURSUANT TO SECTION 7.02(b) OF THE AGREEMENT OR AN OPINION OF COUNSEL SATISFACTORY TO THE SECURITIES ADMINISTRATOR THAT THE PURCHASE AND HOLDING OF THIS CERTIFICATE ARE PERMISSIBLE UNDER APPLICABLE LAW, WILL NOT CONSTITUTE OR RESULT IN ANY NON-EXEMPT PROHIBITED TRANSACTIONS UNDER SECTION 406 OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS AMENDED ("ERISA") OR SECTION 4975 OF THE CODE AND WILL NOT SUBJECT THE TRUSTEE, MASTER SERVICER, THE SECURITIES ADMINISTRATOR OR THE DEPOSITOR TO ANY OBLIGATION OR LIABILITY IN ADDITION TO THOSE UNDERTAKEN IN THE AGREEMENT.

Certificate No.1                                    Percentage Interest: 100%

Class P

Date of Pooling and Servicing Agreement and        Aggregate Initial Certificate Principal Balance
Cut-off Date:                                      of this Certificate as of the Cut-off Date:
June 1, 2007                                       $100.00

First Distribution Date:                            Initial Certificate Principal Balance of this
July 25 2007                                       Certificate as of the Cut-off Date:
                                                   $100.00

Master Servicer and Securities Administrator:       CUSIP: [        ]
Wells Fargo Bank, National Association

Last Scheduled Distribution Date:
[                ]

## MORGAN STANLEY STRUCTURED TRUST I 2007-1
## ASSET-BACKED CERTIFICATE
## SERIES 2007-1

evidencing a fractional undivided interest in the distributions allocable to the
Class P Certificates with respect to a Trust Fund consisting primarily of a pool of
conventional, closed-end, first and second lien, subprime, one- to four-family
fixed and adjustable interest rate mortgage loans sold by BEAR STEARNS
ASSET BACKED SECURITIES I LLC.

This Certificate is payable solely from the assets of the Trust Fund, and does not
represent an obligation of or interest in Bear Stearns Asset Backed Securities I LLC, the Master
Servicer, the Securities Administrator or the Trustee referred to below or any of their affiliates or
any other person. Neither this Certificate nor the underlying Mortgage Loans are guaranteed or
insured by any governmental entity or by Bear Stearns Asset Backed Securities I LLC, the
Master Servicer, the Securities Administrator or the Trustee or any of their affiliates or any other
person. None of Bear Stearns Asset Backed Securities I LLC, the Master Servicer or any of their
affiliates will have any obligation with respect to any certificate or other obligation secured by or
payable from payments on the Certificates.

This certifies that Morgan Stanley Mortgage Capital Holdings LLC is the
registered owner of the Percentage Interest evidenced hereby in the beneficial ownership interest
of Certificates of the same Class as this Certificate in a trust (the "Trust Fund") generally

A-4-3

consisting of conventional, closed-end, first and second lien, subprime, fixed and adjustable rate mortgage loans secured by one- to four- family residences (collectively, the "Mortgage Loans") sold by Bear Stearns Asset Backed Securities I LLC ("BSABS I"). The Mortgage Loans were sold by EMC Mortgage Corporation ("EMC") and Morgan Stanley Mortgage Capital Holdings LLC to BSABS I. Wells Fargo Bank, National Association will act as master servicer of the Mortgage Loans (in that capacity, the "Master Servicer," which term includes any successors thereto under the Agreement referred to below). The Trust Fund was created pursuant to the Pooling and Servicing Agreement, dated as of the Cut-off Date specified above (the "Agreement"), among BSABS I, as depositor (the "Depositor"), Wells Fargo Bank, National Association as Master Servicer and securities administrator (in such capacity, the "Securities Administrator"), and Deutsche Bank National Trust Company, as trustee (the "Trustee"), a summary of certain of the pertinent provisions of which is set forth hereafter. To the extent not defined herein, capitalized terms used herein shall have the meaning ascribed to them in the Agreement. This Certificate is issued under and is subject to the terms, provisions and conditions of the Agreement, to which Agreement the Holder of this Certificate by virtue of its acceptance hereof assents and by which such Holder is bound.

The Securities Administrator will distribute on the 25th day of each month, or, if such 25th day is not a Business Day, the immediately following Business Day (each, a "Distribution Date"), commencing on the First Distribution Date specified above, to the Person in whose name this Certificate is registered at the close of business on the last day (or if such last day is not a Business Day, the Business Day immediately preceding such last day) of the calendar month immediately preceding the month in which the Distribution Date occurs, an amount equal to the product of the Percentage Interest evidenced by this Certificate and the amounts required to be distributed to the Holders of Certificates of the same Class as this Certificate.

Distributions on this Certificate will be made by the Securities Administrator by check mailed to the address of the Person entitled thereto as such name and address shall appear on the Certificate Register or by wire transfer, if such Person so requests by notifying the Securities Administrator in writing as specified in the Agreement. Notwithstanding the above, the final distribution on this Certificate will be made after due notice by the Securities Administrator of the pendency of such distribution and only upon presentation and surrender of this Certificate at the office or agency appointed by the Securities Administrator for that purpose and designated in such notice.

No transfer of this Certificate shall be made unless the transfer is made pursuant to an effective registration statement under the Securities Act of 1933, as amended (the "1933 Act"), and an effective registration or qualification under applicable state securities laws, or is made in a transaction that does not require such registration or qualification. In the event that such a transfer of this Certificate is to be made without registration or qualification, the Securities Administrator shall require receipt of (i) if such transfer is purportedly being made in reliance upon Rule 144A under the 1933 Act, written certifications from the Holder of the Certificate desiring to effect the transfer, and from such Holder's prospective transferee, substantially in the forms attached to the Agreement as Exhibit D and either Exhibit E or Exhibit F, as applicable, and (ii) in all other cases, an Opinion of Counsel satisfactory to it that such

transfer may be made without such registration or qualification (which Opinion of Counsel shall not be an expense of the Trust Fund or of the Depositor, the Securities Administrator, the Trustee or the Master Servicer in their respective capacities as such), together with copies of the written certification(s) of the Holder of the Certificate desiring to effect the transfer and/or such Holder's prospective transferee upon which such Opinion of Counsel is based. Neither the Depositor, the Securities Administrator nor the Trustee is obligated to register or qualify the Class of Certificates specified on the face hereof under the 1933 Act or any other securities law or to take any action not otherwise required under the Agreement to permit the transfer of such Certificates without registration or qualification. Any Holder desiring to effect a transfer of this Certificate shall be required to indemnify the Trustee, the Securities Administrator, the Depositor, the Sellers and the Master Servicer against any liability that may result if the transfer is not so exempt or is not made in accordance with such federal and state laws.

No transfer of this Class P Certificate will be made unless the Securities Administrator shall have received either (i) the Opinion of Counsel set forth in Section 7.02(b) of the Agreement or (ii) a representation letter under Section 7.02(b) of the Agreement, in the form as described by the Agreement, stating that the transferee is not an employee benefit or other plan subject to the prohibited transaction provisions of ERISA or Section 4975 of the Code (a "Plan"), or any other person (including an investment manager, a named fiduciary or a trustee of any Plan) acting, directly or indirectly, on behalf of or purchasing any Certificate with "plan assets" of any Plan.

This Certificate is one of a duly authorized issue of Certificates designated as set forth on the face hereof (the "Certificates"). The Certificates, in the aggregate, evidence the entire beneficial ownership interest in the Trust Fund formed pursuant to the Agreement.

The Certificateholder, by its acceptance of this Certificate, agrees that it will look solely to the Trust Fund for payment hereunder and that neither the Trustee nor the Securities Administrator is liable to the Certificateholders for any amount payable under this Certificate or the Agreement or, except as expressly provided in the Agreement, subject to any liability under the Agreement.

This Certificate does not purport to summarize the Agreement and reference is made to the Agreement for the interests, rights and limitations of rights, benefits, obligations and duties evidenced hereby, and the rights, duties and immunities of the Securities Administrator and the Trustee.

The Agreement permits, with certain exceptions therein provided, the amendment thereof and the modification of the rights and obligations of the Depositor and the rights of the Certificateholders under the Agreement from time to time by the parties thereto with the consent of the Holders of Certificates, evidencing over 50% of the Voting Rights of the Certificates, or with the consent of the Holders of each Class of Certificates affected thereby evidencing over 50% of the Voting Rights of such Class or Classes, as applicable. Any such consent by the Holder of this Certificate shall be conclusive and binding on such Holder and upon all future Holders of this Certificate and of any Certificate issued upon the transfer hereof or in lieu hereof whether or not notation of such consent is made upon this Certificate. The Agreement also

permits the amendment thereof, in certain limited circumstances, without the consent of the Holders of any of the Certificates.

As provided in the Agreement and subject to certain limitations therein set forth, the transfer of this Certificate is registrable with the Securities Administrator upon surrender of this Certificate for registration of transfer at the offices or agencies maintained by the Securities Administrator for such purposes, duly endorsed by, or accompanied by a written instrument of transfer in form satisfactory to the Securities Administrator duly executed by the Holder hereof or such Holder's attorney duly authorized in writing, and thereupon one or more new Certificates in authorized denominations representing a like aggregate Percentage Interest will be issued to the designated transferee.

The Certificates are issuable only as registered Certificates without coupons in the Classes and denominations specified in the Agreement. As provided in the Agreement and subject to certain limitations therein set forth, this Certificate is exchangeable for one or more new Certificates evidencing the same Class and in the same aggregate Percentage Interest, as requested by the Holder surrendering the same.

No service charge will be made to the Certificateholders for any such registration of transfer, but the Securities Administrator may require payment of a sum sufficient to cover any tax or other governmental charge payable in connection therewith. The Depositor, the Master Servicer, the Securities Administrator, the Trustee and any agent of any of them may treat the Person in whose name this Certificate is registered as the owner hereof for all purposes, and none of the Depositor, the Master Servicer, the Securities Administrator, the Trustee or any such agent shall be affected by notice to the contrary.

The obligations created by the Agreement and the Trust Fund created thereby (other than the obligations to make payments to Certificateholders with respect to the termination of the Agreement) shall terminate upon the earlier of (i) the later of (A) the maturity or other liquidation (or Advance with respect thereto) of the last Mortgage Loan remaining in the Trust Fund and disposition of all property acquired upon foreclosure or deed in lieu of foreclosure of any Mortgage Loan and (B) the remittance of all funds due under the Agreement, or (ii) the optional repurchase by the party named in the Agreement of all the Mortgage Loans and other assets of the Trust Fund in accordance with the terms of the Agreement. Such optional repurchase may be made only on or after the first Distribution Date on which the aggregate Stated Principal Balance of the Mortgage Loans is less than or equal to a certain percentage of the aggregate Stated Principal Balance of the Mortgage Loans as of the Cut-off Date as set forth in the Agreement. The exercise of such right will effect the early retirement of the Certificates. In no event, however, will the Trust created by the Agreement continue beyond the earlier of (i) the expiration of 21 years after the death of certain persons identified in the Agreement and (ii) the Latest Possible Maturity Date (as defined in the Agreement).

Unless this Certificate has been countersigned by an authorized signatory of the Securities Administrator by manual signature, this Certificate shall not be entitled to any benefit under the Agreement, or be valid for any purpose.

IN WITNESS WHEREOF, the Trustee has caused this Certificate to be duly executed.

Dated: _____, ____

WELLS FARGO BANK, NATIONAL ASSOCIATION,
as Securities Administrator


By: _____
                Authorized Signatory


## CERTIFICATE OF AUTHENTICATION

This is one of the Class P Certificates referred to in the within-mentioned Agreement.

WELLS FARGO BANK, NATIONAL ASSOCIATION
as Securities Administrator


By: _____
                Authorized Signatory

## ASSIGNMENT

FOR VALUE RECEIVED, the undersigned hereby sell(s), assign(s) and transfer(s) unto _____ (Please print or typewrite name and address including postal zip code of assignee) a Percentage Interest evidenced by the within Asset-Backed Certificate and hereby authorizes the transfer of registration of such interest to assignee on the Certificate Register of the Trust Fund.

I (We) further direct the Certificate Registrar to issue a new Certificate of a like denomination and Class, to the above named assignee and deliver such Certificate to the following address:

_____

_____

_____ .

Dated: _____          _____
                                 Signature by or on behalf of assignor

                                 _____
                                 Signature Guaranteed

### DISTRIBUTION INSTRUCTIONS

The assignee should include the following for purposes of distribution:

Distributions shall be made, by wire transfer or otherwise, in immediately available funds to _____

_____

for the account of _____

account number _____ or, if mailed by check, to

_____

Applicable statements should be mailed to _____

_____

This information is provided by _____ assignee named above, or _____ its agent.

EXHIBIT A-6

Form of Class R Certificates

**THIS CERTIFICATE MAY NOT BE HELD BY OR TRANSFERRED TO A NON-UNITED STATES PERSON OR A DISQUALIFIED ORGANIZATION (AS DEFINED BELOW).**

**SOLELY FOR U.S. FEDERAL INCOME TAX PURPOSES, THIS CERTIFICATE IS A "RESIDUAL INTEREST" IN A "REAL ESTATE MORTGAGE INVESTMENT CONDUIT" AS THOSE TERMS ARE DEFINED, RESPECTIVELY, IN SECTIONS 860G AND 860D OF THE INTERNAL REVENUE CODE OF 1986 (THE "CODE").**

**NO TRANSFER OF THIS CERTIFICATE MAY BE MADE TO ANY PERSON, UNLESS THE TRANSFEREE PROVIDES EITHER A CERTIFICATION PURSUANT TO SECTION 7.02(b) OF THE AGREEMENT OR AN OPINION OF COUNSEL SATISFACTORY TO THE SECURITIES ADMINISTRATOR THAT THE PURCHASE AND HOLDING OF THIS CERTIFICATE ARE PERMISSIBLE UNDER APPLICABLE LAW, WILL NOT CONSTITUTE OR RESULT IN ANY NON-EXEMPT PROHIBITED TRANSACTIONS UNDER SECTION 406 OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS AMENDED ("ERISA") OR SECTION 4975 OF THE CODE AND WILL NOT SUBJECT THE TRUSTEE, THE MASTER SERVICER, THE SECURITIES ADMINISTRATOR OR THE DEPOSITOR TO ANY OBLIGATION OR LIABILITY IN ADDITION TO THOSE UNDERTAKEN IN THE AGREEMENT.**

**ANY RESALE, TRANSFER OR OTHER DISPOSITION OF THIS CERTIFICATE MAY BE MADE ONLY IF THE PROPOSED TRANSFEREE PROVIDES A TRANSFER AFFIDAVIT TO THE SECURITIES ADMINISTRATOR THAT (1) SUCH TRANSFEREE IS NOT (A) THE UNITED STATES, ANY STATE OR POLITICAL SUBDIVISION THEREOF, ANY POSSESSION OF THE UNITED STATES, OR ANY AGENCY OR INSTRUMENTALITY OF ANY OF THE FOREGOING (OTHER THAN AN INSTRUMENTALITY WHICH IS A CORPORATION IF ALL OF ITS ACTIVITIES ARE SUBJECT TO TAX AND EXCEPT FOR FREDDIE MAC, A MAJORITY OF ITS BOARD OF DIRECTORS IS NOT SELECTED BY SUCH GOVERNMENTAL UNIT), (B) A FOREIGN GOVERNMENT, ANY INTERNATIONAL ORGANIZATION, OR ANY AGENCY OR INSTRUMENTALITY OF EITHER OF THE FOREGOING, (C) ANY ORGANIZATION (OTHER THAN CERTAIN FARMERS' COOPERATIVES DESCRIBED IN SECTION 521 OF THE CODE) WHICH IS EXEMPT FROM THE TAX IMPOSED BY CHAPTER 1 OF THE CODE UNLESS SUCH ORGANIZATION IS SUBJECT TO THE TAX IMPOSED BY SECTION 511 OF THE CODE (INCLUDING THE TAX IMPOSED BY SECTION 511 OF THE CODE ON UNRELATED BUSINESS TAXABLE INCOME), (D) RURAL ELECTRIC AND TELEPHONE COOPERATIVES DESCRIBED IN SECTION 1381(a)(2)(C) OF THE CODE, (E) AN ELECTING LARGE PARTNERSHIP UNDER**

SECTION 775(a) OF THE CODE (ANY SUCH PERSON DESCRIBED IN THE FOREGOING CLAUSES (A), (B), (C), (D) OR (E) BEING HEREIN REFERRED TO AS A "DISQUALIFIED ORGANIZATION"), OR (F) AN AGENT OF A DISQUALIFIED ORGANIZATION, (2) SUCH TRANSFEREE IS A UNITED STATES PERSON UNDER SECTION 7701 OF THE CODE, (3) NO PURPOSE OF SUCH TRANSFER IS TO IMPEDE THE ASSESSMENT OR COLLECTION OF TAX AND (4) SUCH TRANSFEREE SATISFIES CERTAIN ADDITIONAL CONDITIONS RELATING TO THE FINANCIAL CONDITION OF THE PROPOSED TRANSFEREE. NOTWITHSTANDING THE REGISTRATION IN THE CERTIFICATE REGISTER OR ANY TRANSFER, SALE OR OTHER DISPOSITION OF THIS CERTIFICATE TO A DISQUALIFIED ORGANIZATION OR AN AGENT OF A DISQUALIFIED ORGANIZATION, SUCH REGISTRATION SHALL BE DEEMED TO BE OF NO LEGAL FORCE OR EFFECT WHATSOEVER AND SUCH PERSON SHALL NOT BE DEEMED TO BE A CERTIFICATEHOLDER FOR ANY PURPOSE HEREUNDER, INCLUDING, BUT NOT LIMITED TO, THE RECEIPT OF DISTRIBUTIONS ON THIS CERTIFICATE. EACH HOLDER OF THIS CERTIFICATE BY ACCEPTANCE OF THIS CERTIFICATE SHALL BE DEEMED TO HAVE CONSENTED TO THE PROVISIONS OF THIS PARAGRAPH.

Certificate No.1

Class [R-1][R-2][R-3][RX]                    Percentage Interest: 100%

Date of Pooling and Servicing Agreement and
Cut-off Date:
June 1, 2007

First Distribution Date:
July 25, 2007

Master Servicer and Securities Administrator:    CUSIP: [_____]
Wells Fargo Bank, National Association

Last Scheduled Distribution Date:
[_____]

### ASSET-BACKED CERTIFICATE
### SERIES 2007-1

evidencing a fractional undivided interest in the distributions allocable to the Class [R-1][R-2][R-3][RX] Certificates with respect to a Trust Fund consisting primarily of a pool of conventional, closed-end, first and second lien, subprime, one- to four-family fixed and adjustable interest rate mortgage loans sold by BEAR STEARNS ASSET BACKED SECURITIES I LLC.

This Certificate is payable solely from the assets of the Trust Fund, and does not represent an obligation of or interest in Bear Stearns Asset Backed Securities I LLC, the Master Servicer, the Securities Administrator or the Trustee referred to below or any of their affiliates or any other person. Neither this Certificate nor the underlying Mortgage Loans are guaranteed or insured by any governmental entity or by Bear Stearns Asset Backed Securities I LLC, the Master Servicer, the Securities Administrator, the Trustee or any of their affiliates or any other person. None of Bear Stearns Asset Backed Securities I LLC, the Master Servicer or any of their affiliates will have any obligation with respect to any certificate or other obligation secured by or payable from payments on the Certificates.

This certifies that [ _____ ] is the registered owner of the Percentage Interest evidenced hereby in the beneficial ownership interest of Certificates of the same Class as this Certificate in a trust (the "Trust Fund") generally consisting of conventional, closed-end, first and second lien, subprime, fixed and adjustable rate mortgage loans secured by one- to four- family residences (collectively, the "Mortgage Loans") sold by Bear Stearns Asset

A-5-3

Backed Securities I LLC ("BSABS I"). The Mortgage Loans were sold by EMC Mortgage Corporation ("EMC") and Morgan Stanley Mortgage Capital Holdings LLC to BSABS I. Wells Fargo Bank, National Association will act as master servicer of the Mortgage Loans (in that capacity, the "Master Servicer," which term includes any successors thereto under the Agreement referred to below). The Trust Fund was created pursuant to the Pooling and Servicing Agreement, dated as of the Cut-off Date specified above (the "Agreement"), among BSABS I, as depositor (the "Depositor"), Wells Fargo Bank, National Association as Master Servicer and securities administrator (in such capacity, the "Securities Administrator"), and Deutsche Bank National Trust Company, as trustee (the "Trustee")7.02(b), a summary of certain of the pertinent provisions of which is set forth hereafter. To the extent not defined herein, capitalized terms used herein shall have the meaning ascribed to them in the Agreement. This Certificate is issued under and is subject to the terms, provisions and conditions of the Agreement, to which Agreement the Holder of this Certificate by virtue of its acceptance hereof assents and by which such Holder is bound.

Each Holder of this Certificate will be deemed to have agreed to be bound by the restrictions set forth in the Agreement to the effect that (i) each person holding or acquiring any Ownership Interest in this Certificate must be a Permitted Transferee, (ii) the transfer of any Ownership Interest in this Certificate will be conditioned upon the delivery to the Trustee of, among other things, an affidavit to the effect that it is a Permitted Transferee, (iii) any attempted or purported transfer of any Ownership Interest in this Certificate in violation of such restrictions will be absolutely null and void and will vest no rights in the purported transferee, and (iv) if any person other than a Permitted Transferee acquires any Ownership Interest in this Certificate in violation of such restrictions, then the Depositor will have the right, in its sole discretion and without notice to the Holder of this Certificate, to sell this Certificate to a purchaser selected by the Depositor, which purchaser may be the Depositor, or any affiliate of the Depositor, on such terms and conditions as the Depositor may choose.

The Securities Administrator will distribute on the 25th day of each month, or, if such 25th day is not a Business Day, the immediately following Business Day (each, a "Distribution Date"), commencing on the First Distribution Date specified above, to the Person in whose name this Certificate is registered at the close of business on the last day (or if such last day is not a Business Day, the Business Day immediately preceding such last day) of the calendar month immediately preceding the month in which the Distribution Date occurs, an amount equal to the product of the Percentage Interest evidenced by this Certificate and the amounts required to be distributed to the Holders of Certificates of the same Class as this Certificate.

Distributions on this Certificate will be made by the Securities Administrator by check mailed to the address of the Person entitled thereto as such name and address shall appear on the Certificate Register or, if such Person so requests by notifying the Securities Administrator in writing as specified in the Agreement. Notwithstanding the above, the final distribution on this Certificate will be made after due notice by the Securities Administrator of the pendency of such distribution and only upon presentation and surrender of this Certificate at the office or agency appointed by the Securities Administrator for that purpose and designated in such notice.

No transfer of this Class [R-1][R-2][R-3][RX] Certificate will be made unless the Trustee and the Securities Administrator shall have received either (i) the Opinion of Counsel set forth in Section 7.02(b) of the Agreement or (ii) a representation letter under Section 7.02(b) of the Agreement, in the form as described by the Agreement, stating that the transferee is not an employee benefit or other plan subject to the prohibited transaction provisions of ERISA or Section 4975 of the Code (a "Plan"), or any other person (including an investment manager, a named fiduciary or a trustee of any Plan) acting, directly or indirectly, on behalf of or purchasing any Certificate with "plan assets" of any Plan.

This Certificate is one of a duly authorized issue of Certificates designated as set forth on the face hereof (the "Certificates"). The Certificates, in the aggregate, evidence the entire beneficial ownership interest in the Trust Fund formed pursuant to the Agreement.

The Certificateholder, by its acceptance of this Certificate, agrees that it will look solely to the Trust Fund for payment hereunder and that neither the Trustee nor the Securities Administrator is liable to the Certificateholders for any amount payable under this Certificate or the Agreement or, except as expressly provided in the Agreement, subject to any liability under the Agreement.

This Certificate does not purport to summarize the Agreement and reference is made to the Agreement for the interests, rights and limitations of rights, benefits, obligations and duties evidenced hereby, and the rights, duties and immunities of the Securities Administrator and the Trustee.

The Agreement permits, with certain exceptions therein provided, the amendment thereof and the modification of the rights and obligations of the Depositor and the rights of the Certificateholders under the Agreement from time to time by the parties thereto with the consent of the Holders of Certificates, evidencing over 50% of the Voting Rights of the Certificates, or with the consent of the Holders of each Class of Certificates affected thereby evidencing over 50% of the Voting Rights of such Class or Classes, as applicable. Any such consent by the Holder of this Certificate shall be conclusive and binding on such Holder and upon all future Holders of this Certificate and of any Certificate issued upon the transfer hereof or in lieu hereof whether or not notation of such consent is made upon this Certificate. The Agreement also permits the amendment thereof, in certain limited circumstances, without the consent of the Holders of any of the Certificates.

As provided in the Agreement and subject to certain limitations therein set forth, the transfer of this Certificate is registrable with the Securities Administrator upon surrender of this Certificate for registration of transfer at the offices or agencies maintained by the Securities Administrator for such purposes, duly endorsed by, or accompanied by a written instrument of transfer in form satisfactory to the Securities Administrator duly executed by the Holder hereof or such Holder's attorney duly authorized in writing, and thereupon one or more new Certificates in authorized denominations representing a like aggregate Percentage Interest will be issued to the designated transferee.

The Certificates are issuable only as registered Certificates without coupons in the Classes and denominations specified in the Agreement. As provided in the Agreement and subject to certain limitations therein set forth, this Certificate is exchangeable for one or more new Certificates evidencing the same Class and in the same aggregate Percentage Interest, as requested by the Holder surrendering the same.

No service charge will be made to the Certificateholders for any such registration of transfer, but the Securities Administrator may require payment of a sum sufficient to cover any tax or other governmental charge payable in connection therewith. The Depositor, the Master Servicer, the Securities Administrator, the Trustee and any agent of any of them may treat the Person in whose name this Certificate is registered as the owner hereof for all purposes, and none of Depositor, the Master Servicer, the Securities Administrator, the Trustee or any such agent shall be affected by notice to the contrary.

The obligations created by the Agreement and the Trust Fund created thereby (other than the obligations to make payments to Certificateholders with respect to the termination of the Agreement) shall terminate upon the earlier of (i) the later of (A) the maturity or other liquidation (or Advance with respect thereto) of the last Mortgage Loan remaining in the Trust Fund and disposition of all property acquired upon foreclosure or deed in lieu of foreclosure of any Mortgage Loan and (B) the remittance of all funds due under the Agreement, or (ii) the optional repurchase by the party named in the Agreement of all the Mortgage Loans and other assets of the Trust Fund in accordance with the terms of the Agreement. Such optional repurchase may be made only on or after the first Distribution Date on which the aggregate Stated Principal Balance of the Mortgage Loans is less than or equal to a certain percentage of the aggregate Stated Principal Balance of the Mortgage Loans as of the Cut-off Date as set forth in the Agreement. The exercise of such right will effect the early retirement of the Certificates. In no event, however, will the Trust created by the Agreement continue beyond the earlier of (i) the expiration of 21 years after the death of certain persons identified in the Agreement and (ii) the Latest Possible Maturity Date (as defined in the Agreement).

Unless this Certificate has been countersigned by an authorized signatory of the Securities Administrator by manual signature, this Certificate shall not be entitled to any benefit under the Agreement, or be valid for any purpose.

IN WITNESS WHEREOF, the Trustee has caused this Certificate to be duly executed.

Dated: _____, _____

WELLS FARGO BANK, NATIONAL
ASSOCIATION,
as Securities Administrator

By: _____
              Authorized Signatory

## CERTIFICATE OF AUTHENTICATION

This is one of the Class [R-1][R-2][R-3][RX] Certificates referred to in the within-mentioned Agreement.

WELLS FARGO BANK, NATIONAL
ASSOCIATION,
as Securities Administrator

By: _____
              Authorized Signatory

## ASSIGNMENT

FOR VALUE RECEIVED, the undersigned hereby sell(s), assign(s) and transfer(s) unto _____ (Please print or typewrite name and address including postal zip code of assignee) a Percentage Interest evidenced by the within Asset-Backed Certificate and hereby authorizes the transfer of registration of such interest to assignee on the Certificate Register of the Trust Fund.

I (We) further direct the Certificate Registrar to issue a new Certificate of a like denomination and Class, to the above named assignee and deliver such Certificate to the following address:

_____

_____

_____ .

Dated: _____

_____

Signature by or on behalf of assignor

_____

Signature Guaranteed

## DISTRIBUTION INSTRUCTIONS

The assignee should include the following for purposes of distribution:

Distributions shall be made, by wire transfer or otherwise, in immediately available funds to _____

for the account of _____

account number _____ or, if mailed by check, to _____

_____

Applicable statements should be mailed to _____

_____

This information is provided by _____ assignee named above, or _____ its agent.

# EXHIBIT B

## MORTGAGE LOAN SCHEDULE

EXHIBIT C

# FORM OF TRANSFEREE AFFIDAVIT AND AGREEMENT

Affidavit pursuant to Section 860E(e)(4)
of the Internal Revenue Code of 1986, as
amended, and for other purposes

STATE OF NEW YORK )
                    )   ss.:
COUNTY OF NEW YORK )

        The undersigned is the [Title of Officer] of [Name of Transferee] (the "Investor"), the proposed transferee of an Ownership Interest in the Morgan Stanley Structured Trust I, Asset-Backed Certificates, Series 2007-1, Class [R-1][R-2][R-3][RX] Certificates (the "Certificates") issued pursuant to the Pooling and Servicing Agreement, dated as of June 1, 2007 (the "Agreement"), among BSABS I, as depositor (the "Depositor"), Wells Fargo Bank, National Association, as Master Servicer, and Deutsche Bank National Trust Company, as trustee (the "Trustee"), and makes this affidavit on behalf of the Investor for the benefit of the Depositor and the Securities Administrator. Capitalized terms used, but not defined herein, shall have the meanings ascribed to such terms in the Agreement.

        1.     The Investor is, as of the date hereof, and will be, as of the date of the Transfer, a Permitted Transferee. The Investor is not acquiring its ownership interest in the Certificates for the account of a Person other than a Permitted Transferee.

        2.     The Investor has been advised and understands that (i) a tax will be imposed on Transfers of the Certificates to Persons that are not Permitted Transferees; (ii) such tax will be imposed on the transferor, or, if such Transfer is through an agent (which includes a broker, nominee or middleman) for a Person that is not a Permitted Transferee, on the agent; and (iii) the Person otherwise liable for the tax shall be relieved of liability for the tax if a subsequent transferee furnishes to such Person an affidavit that such subsequent transferee is a Permitted Transferee, and at the time of Transfer, such Person does not have actual knowledge that the affidavit is false.

        3.     The Investor has been advised and understands that a tax will be imposed on a "pass-through entity" holding the Certificates if at any time during the taxable year of the pass-through entity a Person that is not a Permitted Transferee is the record holder of an interest in such entity. The Investor understands that such tax will not be imposed for any period with respect to which the record holder furnishes to the pass-through entity an affidavit that such record holder is a Permitted Transferee and the pass-through entity does not have actual knowledge that such affidavit is false. (For this purpose, a "pass-through entity" includes a regulated investment company, a real estate investment trust or common trust fund, a partnership, trust or estate, and certain cooperatives and, except as may be provided in Treasury regulations, Persons holding interests in pass-through entities as a nominee for another Person.)

4. The Investor has reviewed the provisions of Section 6.02(i) of the Agreement and understands the legal consequences of the acquisition of an Ownership Interest in the Certificates, including, without limitation, the restrictions on subsequent Transfers and the provisions regarding voiding any prohibited Transfers and mandatory sales. The Investor expressly agrees to be bound by, and to abide by, such provisions of the Agreement and the restrictions noted on the face of the Certificates. The Investor understands and agrees that any breach of any of the representations included herein shall render the Transfer of the Certificates to the Investor contemplated hereby null and void. The Investor consents to any amendment of the Agreement that shall be deemed necessary by the Depositor (upon advice of nationally recognized counsel) to constitute a reasonable arrangement to ensure that the Certificates will not be owned directly or indirectly by a Person other than a Permitted Transferee.

5. The Investor agrees not to Transfer the Certificates, or cause the Transfer of the Certificates by a Person for whom the Investor is acting as nominee, trustee or agent, in each case unless it has received an affidavit and agreement in substantially the same form as this affidavit and agreement containing these same representations and covenants from the subsequent transferee. In connection with any such Transfer by the Investor, the Investor agrees to deliver to the Securities Administrator and the Depositor an affidavit substantially in the form set forth as Exhibit R to the Agreement to the effect that the Investor has no actual knowledge that the Person to which the Transfer is to be made is not a Permitted Transferee.

6. The Investor has historically paid its debts as they have come due, intends to pay its debts as they come due in the future, and understands that the taxes associated with holder an ownership interest in the Certificates may exceed the cash flow with respect thereto in some or all periods and intends to pay such taxes as they become due. The Investor does not have the intention, and no purpose of the Transfer of the Certificates to the Investor is, to impede the assessment or collection of any tax legally required to be paid with respect to the Certificates.

7. The Investor's U.S. taxpayer identification number is [＿＿＿＿＿＿＿＿＿].

8. The Investor is a "United States person" within the meaning of Section 7701(a)(30) of the Code (a "United State Person").

9. The Investor is aware that the Certificates may be a "noneconomic residual interest" within the meaning of Treasury regulations promulgated under Section 860E of the Code and that the transferor of a noneconomic residual interest will remain liable for any taxes due with respect to the income on such residual interest, unless no significant purpose of the transfer was to impede the assessment or collection of tax.

10. The Investor will not cause income from the Certificates to be attributable to a foreign permanent establishment or fixed base, within the meaning of an applicable income tax treaty, of the Investor or any other United States Person.

11. Check one of the following:

☐ The Transfer of the Certificates complies with U.S. Treasury Regulation Sections 1.860E-1(c)(7) and (8) and, accordingly:

(i)     the present value of the anticipated tax liabilities associated with holding the Certificates does not exceed the sum of:

(a)     the present value of any consideration given to the Investor to acquire such Certificates;

(b)     the present value of the expected future distributions on such Certificates; and

(c)     the present value of the anticipated tax savings associated with holding such Certificates as the related REMIC generates losses; and

(ii)    the Transfer of the Certificates will not result in such Certificates being held, directly or indirectly, by a foreign permanent establishment or fixed base, within the meaning of an applicable income tax treaty, of the Investor or any other United States Person.

For purposes of the calculation in clause (i) above, (x) the Investor is assumed to pay tax at the highest rate currently specified in Section 11(b)(1) of the Code (but the tax rate in Section 55(b)(1)(B) of the Code may be used in lieu of the highest rate specified in Section 11(b)(1) of the Code if the Investor has been subject to the alternative minimum tax under Section 55 of the Code in the preceding two years and will compute its taxable income in the current taxable year using the alternative minimum tax rate) and (y) present values are computed using a discount rate equal to the short-term Federal rate prescribed by Section 1274(d) of the Code for the month of the transfer and the compounding period used by the Investor.

☐ The Transfer of the Certificates complies with U.S. Treasury Regulation Sections 1.860E-1(c)(5) and (6) and, accordingly:

(i)     the Investor is an "eligible corporation," as defined in U.S. Treasury Regulation Section 1.860E-1(c)(6)(i), as to which income from the Certificates will only be taxed in the United States;

(ii)    at the time of the Transfer, and at the close of the Investor's two fiscal years preceding the fiscal year of the transfer, the Investor had gross assets for financial reporting purposes (excluding any obligation of a "related person" to the Investor within the meaning of U.S. Treasury Regulation Section 1.860E-1(c)(6)(ii) and any other asset the principal purpose of which is to permit the Investor to satisfy the condition of this clause (ii)) in excess of $100 million and net assets in excess of $10 million;

(iii)   the Investor will transfer the Certificates only to another "eligible corporation," as defined in U.S. Treasury Regulation Section 1.860E-

1(c)(6)(i), in a transaction in which the requirements of U.S. Treasury Regulation Sections 1.860E-1(c)(4)(i), (ii) and (iii) and -1(c)(5) are satisfied and, accordingly, the subsequent transferee provides a similar affidavit with this box checked; and

(iv)     the Investor determined the consideration paid to it to acquire the Certificates based on reasonable market assumptions (including, but not limited to, borrowing and investment rates, prepayment and loss assumptions, expense and reinvestment assumptions, tax rates and other factors specific to the Investor) that it has determined in good faith and has concluded that such consideration, together with other assets of the Investor, will be sufficient to cover the taxes associated with the Certificates.

☐ None of the above.

IN WITNESS WHEREOF, the Investor has caused this instrument to be executed on its behalf, pursuant to authority of its Board of Directors, by its [Title of Officer] this ____ day of _____, 20__.

[NAME OF INVESTOR]

By: _____

Name: [Name of Officer]
Title: [Title of Officer]
[Address of Investor for receipt of distributions]

Address of Investor for receipt of tax information:

Personally appeared before me the above-named [Name of Officer], known or proved to me to be the same person who executed the foregoing instrument and to be the [Title of Officer] of the Investor, and acknowledged to me that he/she executed the same as his/her free act and deed and the free act and deed of the Investor.

Subscribed and sworn before me this ____ day of _____, 20____.

NOTARY PUBLIC

COUNTY OF

STATE OF

My commission expires the ____ day of _____, 20____.

EXHIBIT D

# FORM OF TRANSFEROR CERTIFICATE

_____, 200___

Bear Stearns Asset Backed Securities I LLC
383 Madison Avenue
New York, New York 10179

Wells Fargo Bank, National Association
Sixth Street and Marquette Avenue
Minneapolis, Minnesota 55479
Attn: MSSTI 07-1

Attention: Morgan Stanley Structured Trust I 2007-1

> Re:    Morgan Stanley Structured Trust I 2007-1, Asset-Backed Certificates, Series
> 2007-1 (the "Certificates"), including the Class
> Certificates (the "Privately Offered Certificates")

Ladies and Gentlemen:

In connection with the sale by _____ (the "Seller") to _____ (the "Purchaser") of $_____ Initial Certificate Principal Balance of Asset-Backed Certificates, Series 2007-1, Class _____ (the "Certificates"), issued pursuant to the Pooling and Servicing Agreement (the "Pooling and Servicing Agreement"), dated as of June 1, 2007, among BSABS I, as depositor (the "Depositor"), Wells Fargo Bank, National Association, as Master Servicer and Securities Administrator, and Deutsche Bank National Trust Company, as trustee (the "Trustee"). The Seller hereby certifies, represents and warrants to, a covenants with, the Depositor and the Securities Administrator that:

Neither the Seller nor anyone acting on its behalf (a) has offered, pledged, sold, disposed of or otherwise transferred any Certificate, any interest in any Certificate or any other similar security to any person in any manner, (b) has solicited any offer to buy or to accept a pledge, disposition or other transfer of any Certificate, any interest in any Certificate or any other similar security from any person in any manner, (c) has otherwise approached or negotiated with respect to any Certificate, any interest in any Certificate or any other similar security with any person in any manner, (d) has made any general solicitation by means of general advertising or in any other manner, or (e) has taken any other action, that (as to any of (a) through (e) above) would constitute a distribution of the Certificates under the Securities Act of 1933 (the "Act"), that would render the disposition of any Certificate a violation of Section 5 of the Act or any state securities law, or that would require registration or qualification pursuant thereto. The Seller will not act in any manner set forth in the foregoing sentence with respect to any Certificate. The Seller has not and will not sell or otherwise transfer any of the Certificates, except in compliance with the provisions of the Pooling and Servicing Agreement.

Very truly yours,

_____
(Seller)


By: _____
Name: _____
Title: _____

EXHIBIT E

FORM OF INVESTMENT LETTER (NON RULE 144A)

[Date]

[SELLER]

Bear Stearns Asset Backed Securities I LLC
383 Madison Avenue
New York, New York 10179

Wells Fargo Bank, National Association
Sixth Street and Marquette Avenue
Minneapolis, Minnesota 55479
Attn: MSSTI 07-1

Re:    Morgan Stanley Structured Trust I 2007-1, Asset-Backed Certificates, Series 2007-1 (the "Certificates"), including the Class Certificates (the "Privately Offered Certificates")

Dear Ladies and Gentlemen:

In connection with our purchase of Privately Offered Certificates, we confirm that:

(i)      we understand that the Privately Offered Certificates are not being registered under the Securities Act of 1933, as amended (the "Act") or any applicable state securities or "Blue Sky" laws, and are being sold to us in a transaction that is exempt from the registration requirements of such laws;

(ii)      any information we desired concerning the Certificates, including the Privately Offered Certificates, the trust in which the Certificates represent the entire beneficial ownership interest (the "Trust") or any other matter we deemed relevant to our decision to purchase Privately Offered Certificates has been made available to us;

(iii)      we are able to bear the economic risk of investment in Privately Offered Certificates; we are an institutional "accredited investor" as defined in Section 501(a) of Regulation D promulgated under the Act and a sophisticated institutional investor;

(iv)      we are acquiring Privately Offered Certificates for our own account, not as nominee for any other person, and not with a present view to any distribution or other disposition of the Privately Offered Certificates;

(v)      we agree the Privately Offered Certificates must be held indefinitely by us (and may not be sold, pledged, hypothecated or in any way disposed of) unless subsequently registered under the Act and any applicable state

securities or "Blue Sky" laws or an exemption from the registration requirements of the Act and any applicable state securities or "Blue Sky" laws is available;

(vi)     we agree that in the event that at some future time we wish to dispose of or exchange any of the Privately Offered Certificates (such disposition or exchange not being currently foreseen or contemplated), we will not transfer or exchange any of the Privately Offered Certificates unless:

(A) (1) the sale is to an Eligible Purchaser (as defined below), (2) if required by the Pooling and Servicing Agreement (as defined below) a letter to substantially the same effect as either this letter or, if the Eligible Purchaser is a Qualified Institutional Buyer as defined under Rule 144A of the Act, the Rule 144A and Related Matters Certificate in the form attached to the Pooling and Servicing Agreement (as defined below) (or such other documentation as may be acceptable to the Trustee) is executed promptly by the purchaser and delivered to the addressees hereof and (3) all offers or solicitations in connection with the sale, whether directly or through any agent acting on our behalf, are limited only to Eligible Purchasers and are not made by means of any form of general solicitation or general advertising whatsoever; and

(B) if the Privately Offered Certificate is not registered under the Act (as to which we acknowledge you have no obligation), the Privately Offered Certificate is sold in a transaction that does not require registration under the Act and any applicable state securities or "blue sky" laws and, if Wells Fargo Bank, National Association (the "Securities Administrator") so requests, a satisfactory Opinion of Counsel is furnished to such effect, which Opinion of Counsel shall be an expense of the transferor or the transferee;

(vii)    we agree to be bound by all of the terms (including those relating to restrictions on transfer) of the Pooling and Servicing, pursuant to which the Trust was formed; we have reviewed carefully and understand the terms of the Pooling and Servicing Agreement;

(viii)   we either: (i) are not acquiring the Privately Offered Certificate directly or indirectly by, or on behalf of, an employee benefit plan or other retirement arrangement which is subject to Title I of the Employee Retirement Income Security Act of 1974, as amended, and/or section 4975 of the Internal Revenue Code of 1986, as amended, or (ii) in the case of the Privately Offered Certificates, have provided the Opinion of Counsel required by the Agreement or (iii) in the case of the Class B-4 Certificates, are providing a representation to the effect that the proposed transfer and holding of such Certificate and servicing, management and operation of the Trust and its assets: (I) will not result in any prohibited transaction which is not covered

under Prohibited Transaction Class Exemption ("PTCE") 84-14, PTCE 91-38, PTCE 90-1, PTCE 95-60, PTCE 96-23 and (II) will not give rise to any additional obligations on the part of the Depositor, the Master Servicer or the Trustee.

(ix)     We understand that each of the Privately Offered Certificates bears, and will continue to bear, a legend to substantiate the following effect: **THIS CERTIFICATE MAY NOT BE ACQUIRED DIRECTLY OR INDIRECTLY BY, OR ON BEHALF OF, AN EMPLOYEE BENEFIT PLAN OR OTHER RETIREMENT ARRANGEMENT WHICH IS SUBJECT TO TITLE I OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS AMENDED, OR SECTION 4975 OF THE INTERNAL REVENUE CODE OF 1986, AS AMENDED, UNLESS THE TRANSFEREE CERTIFIES OR REPRESENTS THAT THE PROPOSED TRANSFER AND HOLDING OF A CERTIFICATE AND THE SERVICING, MANAGEMENT AND OPERATION OF THE TRUST AND ITS ASSETS: (I) WILL NOT RESULT IN ANY PROHIBITED TRANSACTION WHICH IS NOT COVERED UNDER AN INDIVIDUAL OR CLASS PROHIBITED TRANSACTION EXEMPTION, INCLUDING, BUT NOT LIMITED TO, PROHIBITED TRANSACTION CLASS EXEMPTION ("PTCE") 84-14, PTCE 91-38, PTCE 90-1, PTCE 95-60 OR PTCE 96-23 AND (II) WILL NOT GIVE RISE TO ANY ADDITIONAL OBLIGATIONS ON THE PART OF THE DEPOSITOR, THE MASTER SERVICER, THE SECURITIES ADMINISTRATOR OR THE TRUSTEE, WHICH WILL BE DEEMED REPRESENTED BY AN OWNER OF A BOOK-ENTRY CERTIFICATE OR A GLOBAL CERTIFICATE, OR PROVIDES AN OPINION OF COUNSEL TO SUCH EFFECT. THIS CERTIFICATE HAS NOT BEEN AND WILL NOT BE REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR UNDER ANY STATE SECURITIES LAWS. THE HOLDER HEREOF, BY PURCHASING THIS CERTIFICATE, AGREES THAT THIS CERTIFICATE MAY BE REOFFERED, RESOLD, PLEDGED OR OTHERWISE TRANSFERRED ONLY IN COMPLIANCE WITH THE SECURITIES ACT AND OTHER APPLICABLE LAWS AND ONLY (1) PURSUANT TO RULE 144A UNDER THE SECURITIES ACT ("RULE 144A") TO A PERSON THAT THE HOLDER REASONABLY BELIEVES IS A QUALIFIED INSTITUTIONAL BUYER WITHIN THE MEANING OF RULE 144A (A "QIB"), PURCHASING FOR ITS OWN ACCOUNT OR A QIB PURCHASING FOR THE ACCOUNT OF A QIB, WHOM THE HOLDER HAS INFORMED, IN EACH CASE, THAT THE REOFFER, RESALE, PLEDGE OR OTHER TRANSFER IS BEING MADE IN RELIANCE ON RULE 144A, (2) PURSUANT TO AN**

EXEMPTION FROM REGISTRATION PROVIDED BY RULE 144 UNDER THE SECURITIES ACT (IF AVAILABLE) OR (3) IN CERTIFICATED FORM TO AN "INSTITUTIONAL ACCREDITED INVESTOR" WITHIN THE MEANING THEREOF IN RULE 501(a)(1), (2), (3) or (7) OF REGULATION D UNDER THE ACT OR ANY ENTITY IN WHICH ALL OF THE EQUITY OWNERS COME WITHIN SUCH PARAGRAPHS PURCHASING NOT FOR DISTRIBUTION IN VIOLATION OF THE SECURITIES ACT, SUBJECT TO (A) THE RECEIPT BY THE SECURITIES ADMINISTRATOR OF A LETTER SUBSTANTIALLY IN THE FORM PROVIDED IN THE AGREEMENT AND (B) THE RECEIPT BY THE SECURITIES ADMINISTRATOR OF SUCH OTHER EVIDENCE ACCEPTABLE TO THE SECURITIES ADMINISTRATOR THAT SUCH REOFFER, RESALE, PLEDGE OR TRANSFER IS IN COMPLIANCE WITH THE SECURITIES ACT AND OTHER APPLICABLE LAWS OR IN EACH CASE IN ACCORDANCE WITH ALL APPLICABLE SECURITIES LAWS OF THE UNITED STATES AND ANY OTHER APPLICABLE JURISDICTION. NOTWITHSTANDING THE PREVIOUS PARAGRAPH, A CERTIFICATION WILL NOT BE REQUIRED WITH RESPECT TO THE TRANSFER OF THIS CERTIFICATE TO A DEPOSITORY, OR FOR ANY SUBSEQUENT TRANSFER OF THIS CERTIFICATE FOR SO LONG AS THIS CERTIFICATE IS A BOOK-ENTRY CERTIFICATE. ANY TRANSFEREE OF THIS CERTIFICATE WILL BE DEEMED TO HAVE REPRESENTED BY VIRTUE OF ITS PURCHASE OR HOLDING OF THIS CERTIFICATE (OR INTEREST HEREIN) THAT SUCH TRANSFEREE IS A "QUALIFIED INSTITUTIONAL BUYER" WITHIN THE MEANING OF RULE 144A UNDER THE 1933 ACT.

[In the case of the Class P, Class CE and Class R Certificates]:
NO TRANSFER OF THIS CERTIFICATE MAY BE MADE TO ANY PERSON, UNLESS THE TRANSFEREE PROVIDES EITHER A CERTIFICATION PURSUANT TO SECTION 7.02(b) OF THE AGREEMENT OR AN OPINION OF COUNSEL SATISFACTORY TO THE SECURITIES ADMINSTRATOR THAT THE PURCHASE AND HOLDING OF THIS CERTIFICATE ARE PERMISSIBLE UNDER APPLICABLE LAW, WILL NOT CONSTITUTE OR RESULT IN ANY NON-EXEMPT PROHIBITED TRANSACTIONS UNDER SECTION 406 OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS AMENDED ("ERISA") OR SECTION 4975 OF THE CODE AND WILL NOT SUBJECT THE TRUSTEE, THE MASTER SERVICER, THE SECURITIES ADMINISTRATOR OR THE DEPOSITOR TO ANY OBLIGATION OR LIABILITY IN ADDITION TO THOSE UNDERTAKEN IN THE

AGREEMENT.

[In the case of the Class CE Certificates]: **NO TRANSFER OF THIS CERTIFICATE SHALL BE MADE UNLESS THE PROPOSED TRANSFEREE OF SUCH CERTIFICATE (1) PROVIDES TO THE TRUSTEE THE APPROPRIATE TAX CERTIFICATION FORM THAT WOULD ELIMINATE ANY WITHHOLDING OR DEDUCTION FOR TAXES FROM AMOUNTS PAYABLE BY THE SWAP PROVIDER, PURSUANT TO THE SWAP AGREEMENT, TO THE SWAP ADMINISTRATOR ON BEHALF OF THE SUPPLEMENTAL INTEREST TRUST (I.E., IRS FORM W-9 OR IRS FORM W-8BEN, W-8IMY, W-8EXP OR W-8ECI, AS APPLICABLE (OR ANY SUCCESSOR FORM THERETO), TOGETHER WITH ANY APPLICABLE ATTACHMENTS) AND (2) AGREES TO UPDATE SUCH FORM (A) UPON EXPIRATION OF ANY SUCH FORM, (B) AS REQUIRED UNDER THEN APPLICABLE U.S. TREASURY REGULATIONS AND (C) PROMPTLY UPON LEARNING THAT SUCH FORM HAS BECOME OBSOLETE OR INCORRECT, EACH AS A CONDITION TO SUCH TRANSFER. IN ADDITION, NO TRANSFER OF THIS CERTIFICATE SHALL BE MADE IF SUCH TRANSFER WOULD CAUSE THE SUPPLEMENTAL INTEREST TRUST TO BE BENEFICIALLY OWNED BY TWO OR MORE PERSONS FOR FEDERAL INCOME TAX PURPOSES, OR CONTINUE TO BE SO TREATED, UNLESS (I) EACH PROPOSED TRANSFEREE OF SUCH CERTIFICATE COMPLIES WITH THE FOREGOING CONDITIONS, AND (II) THE PROPOSED MAJORITY HOLDER OF THE CLASS CE CERTIFICATES (OR EACH HOLDER, IF THERE IS OR WOULD BE NO MAJORITY HOLDER) (X) PROVIDES, OR CAUSES TO BE PROVIDED, ON BEHALF OF THE SUPPLEMENTAL INTEREST TRUST, IF APPLICABLE, TO THE TRUSTEE, THE APPROPRIATE TAX CERTIFICATION FORM THAT WOULD BE REQUIRED FROM THE SUPPLEMENTAL INTEREST TRUST TO ELIMINATE ANY WITHHOLDING OR DEDUCTION FOR TAXES FROM AMOUNTS PAYABLE BY THE SWAP PROVIDER, PURSUANT TO THE SWAP AGREEMENT, TO THE SWAP ADMINISTRATOR ON BEHALF OF THE SUPPLEMENTAL INTEREST TRUST (I.E., IRS FORM W-9 OR IRS FORM W-8BEN, W-8IMY, W-8EXP OR W-8ECI, AS APPLICABLE (OR ANY SUCCESSOR FORM THERETO), TOGETHER WITH ANY APPLICABLE ATTACHMENTS) AND (Y) AGREES TO UPDATE SUCH FORM (A) UPON EXPIRATION OF SUCH FORM, (B) AS REQUIRED UNDER THEM APPLICABLE U.S. TREASURY REGULATIONS AND (C) PROMPTLY UPON LEARNING THAT SUCH FORM HAS BECOME OBSOLETE OR INCORRECT. UNDER THE**

AGREEMENT, UPON RECEIPT OF ANY TAX CERTIFICATION FORM PURSUANT TO THESE TRANSFER RESTRICTIONS FROM A HOLDER OF THIS CERTIFICATE, THE TRUSTEE SHALL FORWARD SUCH TAX CERTIFICATION FORM TO THE SUPPLEMENTAL INTEREST TRUST TRUSTEE. THE SUPPLEMENTAL INTEREST TRUST TRUSTEE SHALL FORWARD SUCH TAX CERTIFICATION FORM PROVIDED TO IT TO THE SWAP PROVIDER. EACH HOLDER OF THIS CERTIFICATE AND EACH TRANSFEREE THEREOF SHALL BE DEEMED TO HAVE CONSENTED TO THE SUPPLEMENTAL INTEREST TRUST TRUSTEE FORWARDING TO THE SWAP PROVIDER ANY TAX CERTIFICATION FORM IT HAS PROVIDED AND UPDATED IN ACCORDANCE WITH THESE TRANSFER RESTRICTIONS. ANY PURPORTED SALES OR TRANSFERS OF THIS CERTIFICATE TO A TRANSFEREE WHICH DOES NOT COMPLY WITH THESE REQUIREMENTS SHALL BE DEEMED NULL AND VOID UNDER THE AGREEMENT.

"Eligible Purchaser" means a corporation, partnership or other entity which we have reasonable grounds to believe and do believe (i) can make representations with respect to itself to substantially the same effect as the representations set forth herein, and (ii) is either a Qualified Institutional Buyer as defined under Rule 144A of the Act or an institutional "Accredited Investor" as defined under Rule 501 of the Act.

Terms not otherwise defined herein shall have the meanings assigned to them in the Pooling and Servicing Agreement, dated as of June 1, 2007, among Bear Stearns Asset Backed Securities I LLC, as depositor, Wells Fargo Bank, National Association, as master servicer and securities administrator, and Deutsche Bank National Trust Company, as Trustee (the "Pooling and Servicing Agreement").

If the Purchaser proposes that its Certificates be registered in the name of a nominee on its behalf, the Purchaser has identified such nominee below, and has caused such nominee to complete the Nominee Acknowledgment at the end of this letter.

Name of Nominee (if any):_____

IN WITNESS WHEREOF, this document has been executed by the undersigned who is duly authorized to do so on behalf of the undersigned Eligible Purchaser on the ___ day of _____, 20___:

Very truly yours,

[PURCHASER]

By: _____
(Authorized Officer)

By: _____
(Attorney-in-fact)

## Nominee Acknowledgment

The undersigned hereby acknowledges and agrees that as to the Certificates being registered in its name, the sole beneficial owner thereof is and shall be the Purchaser identified above, for whom the undersigned is acting as nominee.

[NAME OF NOMINEE]

By: _____
(Authorized Officer)

By: _____
(Attorney-in-fact)

## FORM OF RULE 144A AND RELATED MATTERS CERTIFICATE

[SELLER]

Bear Stearns Asset Backed Securities I LLC
383 Madison Avenue
New York, New York 10179

Wells Fargo Bank, National Association
Sixth Street and Marquette Avenue
Minneapolis, Minnesota 55479
Attn: MSSTI 07-1

> Re: Morgan Stanley Structured Trust I 2007-1, Asset-Backed Certificates, Series 2007-1 (the "Certificates"), including the Class Certificates (the "Privately Offered Certificates")

Dear Ladies and Gentlemen:

In connection with our purchase of Privately Offered Certificates, the undersigned certifies to each of the parties to whom this letter is addressed that it is a qualified institutional buyer (as defined in Rule 144A under the Securities Act of 1933, as amended (the "Act")) as follows:

1. It owned and/or invested on a discretionary basis eligible securities (excluding affiliate's securities, bank deposit notes and CD's, loan participations, repurchase agreements, securities owned but subject to a repurchase agreement and swaps), as described below:

Date: _____, 20__ (must be on or after the close of its most recent fiscal year)

Amount: $ _____; and

2. The dollar amount set forth above is:

a. greater than $100 million and the undersigned is one of the following entities:

(1) [ ] an insurance company as defined in Section 2(13) of the Act[1]; or

(2) [ ] an investment company registered under the Investment Company Act or any business development company as defined

---

[1] A purchase by an insurance company for one or more of its separate accounts, as defined by Section 2(a)(37) of the Investment Company Act of 1940, which are neither registered nor required to be registered thereunder, shall be deemed to be a purchase for the account of such insurance company.

in Section 2(a)(48) of the Investment Company Act of 1940; or

(3)    [ ]    a Small Business Investment Company licensed by the U.S. Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958; or

(4)    [ ]    a plan (i) established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, the laws of which permit the purchase of securities of this type, for the benefit of its employees and (ii) the governing investment guidelines of which permit the purchase of securities of this type; or

(5)    [ ]    a business development company as defined in Section 202(a)(22) of the Investment Advisers Act of 1940; or

(6)    [ ]    a corporation (other than a U.S. bank, savings and loan association or equivalent foreign institution), partnership, Massachusetts or similar business trust, or an organization described in Section 501(c)(3) of the Internal Revenue Code; or

(7)    [ ]    a U.S. bank, savings and loan association or equivalent foreign institution, which has an audited net worth of at least $25 million as demonstrated in its latest annual financial statements; or

(8)    [ ]    an investment adviser registered under the Investment Advisers Act; or

b.    [ ]    greater than $10 million, and the undersigned is a broker-dealer registered with the SEC; or

c.    [ ]    less than $10 million, and the undersigned is a broker-dealer registered with the SEC and will only purchase Rule 144A securities in transactions in which it acts as a riskless principal (as defined in Rule 144A); or

d.    [ ]    less than $100 million, and the undersigned is an investment company registered under the Investment Company Act of 1940, which, together with one or more registered investment companies having the same or an affiliated investment adviser, owns at least $100 million of eligible securities; or

e.    [ ]    less than $100 million, and the undersigned is an entity, all the equity owners of which are qualified institutional buyers.

The undersigned further certifies that it is purchasing a Privately Offered Certificate for its own account or for the account of others that independently qualify as "Qualified Institutional Buyers" as defined in Rule 144A. It is aware that the sale of the Privately Offered Certificates is

being made in reliance on its continued compliance with Rule 144A. It is aware that the transferor may rely on the exemption from the provisions of Section 5 of the Act provided by Rule 144A. The undersigned understands that the Privately Offered Certificates may be resold, pledged or transferred only to (i) a person reasonably believed to be a Qualified Institutional Buyer that purchases for its own account or for the account of a Qualified Institutional Buyer to whom notice is given that the resale, pledge or transfer is being made in reliance in Rule 144A, or (ii) an institutional "accredited investor," as such term is defined under Rule 501 of the Act in a transaction that otherwise does not constitute a public offering.

The undersigned agrees that if at some future time it wishes to dispose of or exchange any of the Privately Offered Certificates, it will not transfer or exchange any of the Privately Offered Certificates to a Qualified Institutional Buyer without first obtaining a Rule 144A and Related Matters Certificate in the form hereof from the transferee and delivering such certificate to the addressees hereof. Prior to making any transfer of Privately Offered Certificates, if the proposed Transferee is an institutional "accredited investor," the transferor shall obtain from the transferee and deliver to the addressees hereof an Investment Letter in the form attached to the Pooling and Servicing Agreement, dated as of June 1, 2007, among Bear Stearns Asset Backed Securities I LLC, as depositor, Wells Fargo Bank, National Association, as master servicer and securities administrator, and Deutsche Bank National Trust Company, as Trustee, pursuant to which the Certificates were issued.

The undersigned certifies that it: (i) is not acquiring the Privately Offered Certificate directly or indirectly by, or on behalf of, an employee benefit plan or other retirement arrangement which is subject to Title I of the Employee Retirement Income Security Act of 1974, as amended, and/or section 4975 of the Internal Revenue Code of 1986, as amended, or (ii) in the case of the Privately Offered Certificates, has provided the Opinion of Counsel required by the Agreement.

If the Purchaser proposes that its Certificates be registered in the name of a nominee on its behalf, the Purchaser has identified such nominee below, and has caused such nominee to complete the Nominee Acknowledgment at the end of this letter.

Name of Nominee (if any): _____

IN WITNESS WHEREOF, this document has been executed by the undersigned who is duly authorized to do so on behalf of the undersigned Eligible Purchaser on the _____ day of _____, 20___.

Very truly yours,

[PURCHASER]

By: _____
                   (Authorized Officer)

By: _____
                   (Attorney-in-fact)

## Nominee Acknowledgment

The undersigned hereby acknowledges and agrees that as to the Certificates being registered in its name, the sole beneficial owner thereof is and shall be the Purchaser identified above, for whom the undersigned is acting as nominee.

[NAME OF NOMINEE]

By: _____
            (Authorized Officer)

By: _____
            (Attorney-in-fact)

## FORM OF REQUEST FOR RELEASE

To: Wells Fargo Bank, National Association
24 Executive Park
Irvine, California 92614
Attn: MSSTI-07-1

RE: Pooling and Servicing Agreement, dated as of June 1, 2007, among Bear Stearns Asset Backed Securities I LLC, as Depositor, Wells Fargo Bank, National Association, as master servicer and securities administrator, and Deutsche Bank National Trust Company, as Trustee

In connection with the administration of the Mortgage Loans held by you pursuant to the above-captioned Pooling and Servicing Agreement, we request the release, and hereby acknowledge receipt, of the Mortgage File for the Mortgage Loan described below, for the reason indicated.

Mortgagor's Name, Address & Zip Code:

Mortgage Loan Number:

Reason for Requesting Documents (check one):

_____ 1. Mortgage Loan paid in full. ([The Master Servicer] [The Securities Administrator] hereby certifies that all amounts received in connection therewith have been credited to _____.)

_____ 2. Mortgage Loan in foreclosure.

_____ 3. Repurchase. (The [Master Servicer] [Securities Administrator] hereby certifies that the repurchase price has been credited to _____.)

_____ 4. A Mortgage Loan liquidated by _____. ([The Master Servicer] [The Securities Administrator] hereby certifies that all proceeds of the foreclosure, insurance, condemnation or other liquidation have been finally received and credited to _____.)

_____ 5. Other (explain)

By: _____
(authorized signer)

Issuer: _____

Address: _____

G-1

Date: _____

## EXHIBIT H

## DTC Letter of Representations

[Provided Upon Request]

# EXHIBIT I

Schedule of Mortgage Loans with Lost Notes

[Provided Upon Request]

# EXHIBIT J-1

## FORM OF DEUTSCHE BANK CUSTODIAL AGREEMENT

EXHIBIT J-2

FORM OF WELLS FARGO CUSTODIAL AGREEMENT

EXHIBIT K

FORM OF BACK-UP CERTIFICATION

Re:    The [          ] agreement dated as of [      ], 200[ ] (the "Agreement"), among [IDENTIFY PARTIES]

I, _____, the _____ of [NAME OF COMPANY], certify to [the Purchaser], [the Depositor], and the [Master Servicer] [Securities Administrator] [Trustee], and their officers, with the knowledge and intent that they will rely upon this certification, that:

(1)    I have reviewed the servicer compliance statement of the Company provided in accordance with Item 1123 of Regulation AB (the "Compliance Statement"), the report on assessment of the Company's compliance with the servicing criteria set forth in Item 1122(d) of Regulation AB (the "Servicing Criteria"), provided in accordance with Rules 13a-18 and 15d-18 under Securities Exchange Act of 1934, as amended (the "Exchange Act") and Item 1122 of Regulation AB (the "Servicing Assessment"), the registered public accounting firm's attestation report provided in accordance with Rules 13a-18 and 15d-18 under the Exchange Act and Section 1122(b) of Regulation AB (the "Attestation Report"), and all servicing reports, officer's certificates and other information relating to the servicing of the Mortgage Loans by the Company during 200[ ] that were delivered by the Company to the [Depositor] [Master Servicer]    [Securities Administrator] [Trustee] pursuant to the Agreement (collectively, the "Company Servicing Information");

(2)    Based on my knowledge, the Company Servicing Information, taken as a whole, does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in the light of the circumstances under which such statements were made, not misleading with respect to the period of time covered by the Company Servicing Information;

(3)    Based on my knowledge, all of the Company Servicing Information required to be provided by the Company under the Agreement has been provided to the [Depositor] [Master Servicer] [Securities Administrator] [Trustee];

(4)    I am responsible for reviewing the activities performed by the Company as servicer under the Agreement, and based on my knowledge and the compliance review conducted in preparing the Compliance Statement and except as disclosed in the Compliance Statement, the Servicing Assessment or the Attestation Report, the Company has fulfilled its obligations under the Agreement in all material respects; and

(5)    The Compliance Statement required to be delivered by the Company pursuant to the Agreement, and the Servicing Assessment and Attestation Report required to be provided by the Company and by any Subservicer or Subcontractor pursuant to the Agreement, have been provided to the [Depositor] [Master Servicer]. Any material instances of noncompliance described in such reports have been disclosed to the

[Depositor] [Master Servicer].   Any material instance of noncompliance with the Servicing Criteria has been disclosed in such reports.


Date: _____


By: _____

Name: _____

Title: _____

# EXHIBIT L

## FORM OF MORTGAGE LOAN PURCHASE AGREEMENT

# EXHIBIT M-1

## SWAP AGREEMENT

# EXHIBIT M-2

## YIELD MAINTENANCE AGREEMENT

SERVICING CRITERIA TO BE ADDRESSED
IN ASSESSMENT OF COMPLIANCE

Definitions
Master Servicer – aggregator of pool assets
Custodian – safe keeper of pool assets
Trustee – fiduciary of the transaction
Securities Administrator – waterfall calculator

Where there are multiple checks for criteria the attesting party will identify in their management
assertion that they are attesting only to the portion of the distribution chain they are responsible
for in the related transaction agreements.

Key:  **X – obligation**

| Reg AB Reference | Servicing Criteria | Master Servicer | Securities Administrator | Custodians | Trustee (Nominal) |
|---|---|---|---|---|---|
| | **General Servicing Considerations** | | | | |
| 1122(d)(1)(i) | Policies and procedures are instituted to monitor any performance or other triggers and events of default in accordance with the transaction agreements. | X | X | | |
| 1122(d)(1)(ii) | If any material servicing activities are outsourced to third parties, policies and procedures are instituted to monitor the third party's performance and compliance with such servicing activities. | X | | | |
| 1122(d)(1)(iii) | Any requirements in the transaction agreements to maintain a back-up servicer for the Pool Assets are maintained. | | | | |
| 1122(d)(1)(iv) | A fidelity bond and errors and omissions policy is in effect on the party participating in the servicing function throughout the reporting period in the amount of coverage required by and otherwise in accordance with the terms of the transaction agreements. | X | | | |
| | **Cash Collection and Administration** | | | | |
| 1122(d)(2)(i) | Payments on pool assets are deposited into the appropriate custodial bank accounts and related bank clearing accounts no more than two business days following receipt, or such other number of days specified in the transaction agreements. | X | X | | |
| 1122(d)(2)(ii) | Disbursements made via wire transfer on behalf of an obligor or to an investor are made only by authorized personnel. | X | X | | |
| 1122(d)(2)(iii) | Advances of funds or guarantees regarding collections, cash flows or distributions, and any interest or other fees charged for such advances, are made, reviewed and approved as specified in the transaction agreements. | X | X | | |
| 1122(d)(2)(iv) | The related accounts for the transaction, such as cash reserve accounts or accounts established as a form of over collateralization, | X | X | | |

| Reg AB Reference | Servicing Criteria | Master Servicer | Securities Administrator | Custodians | Trustee (Nominal) |
|---|---|---|---|---|---|
| | are separately maintained (e.g., with respect to commingling of cash) as set forth in the transaction agreements. | | | | |
| 1122(d)(2)(v) | Each custodial account is maintained at a federally insured depository institution as set forth in the transaction agreements. For purposes of this criterion, "federally insured depository institution" with respect to a foreign financial institution means a foreign financial institution that meets the requirements of Rule 13k-1(b)(1) of the Securities Exchange Act. | X | X | | |
| 1122(d)(2)(vi) | Unissued checks are safeguarded so as to prevent unauthorized access. | X | | | |
| 1122(d)(2)(vii) | Reconciliations are prepared on a monthly basis for all asset-backed securities related bank accounts, including custodial accounts and related bank clearing accounts. These reconciliations are (A) mathematically accurate; (B) prepared within 30 calendar days after the bank statement cutoff date, or such other number of days specified in the transaction agreements; (C) reviewed and approved by someone other than the person who prepared the reconciliation; and (D) contain explanations for reconciling items. These reconciling items are resolved within 90 calendar days of their original identification, or such other number of days specified in the transaction agreements. | X | X | | |
| | **Investor Remittances and Reporting** | | | | |
| 1122(d)(3)(i) | Reports to investors, including those to be filed with the Commission, are maintained in accordance with the transaction agreements and applicable Commission requirements. Specifically, such reports (A) are prepared in accordance with timeframes and other terms set forth in the transaction agreements; (B) provide information calculated in accordance with the terms specified in the transaction agreements; (C) are filed with the Commission as required by its rules and regulations; and (D) agree with investors' or the trustee's records as to the total unpaid principal balance and number of Pool Assets serviced by the Servicer. | X | X | | |
| 1122(d)(3)(ii) | Amounts due to investors are allocated and remitted in accordance with timeframes, distribution priority and other terms set forth in the transaction agreements. | X | X | | |
| 1122(d)(3)(iii) | Disbursements made to an investor are posted within two business days to the Servicer's investor records, or such other number of days specified in the transaction agreements. | X | X | | |
| 1122(d)(3)(iv) | Amounts remitted to investors per the investor reports agree with cancelled checks, or other form of payment, or custodial bank statements. | X | X | | |
| | **Pool Asset Administration** | | | | |

| Reg AB Reference | Servicing Criteria | Master Servicer | Securities Administrator | Custodians | Trustee (Nominal) |
|---|---|---|---|---|---|
| 1122(d)(4)(i) | Collateral or security on pool assets is maintained as required by the transaction agreements or related pool asset documents. | | | X | |
| 1122(d)(4)(ii) | Pool assets and related documents are safeguarded as required by the transaction agreements | | | X | |
| 1122(d)(4)(iii) | Any additions, removals or substitutions to the asset pool are made, reviewed and approved in accordance with any conditions or requirements in the transaction agreements. | X | X | | |
| 1122(d)(4)(iv) | Payments on pool assets, including any payoffs, made in accordance with the related pool asset documents are posted to the Servicer's obligor records maintained no more than two business days after receipt, or such other number of days specified in the transaction agreements, and allocated to principal, interest or other items (e.g., escrow) in accordance with the related pool asset documents. | X | | | |
| 1122(d)(4)(v) | The Servicer's records regarding the pool assets agree with the Servicer's records with respect to an obligor's unpaid principal balance. | X | | | |
| 1122(d)(4)(vi) | Changes with respect to the terms or status of an obligor's pool assets (e.g., loan modifications or re-agings) are made, reviewed and approved by authorized personnel in accordance with the transaction agreements and related pool asset documents. | X | | | |
| 1122(d)(4)(vii) | Loss mitigation or recovery actions (e.g., forbearance plans, modifications and deeds in lieu of foreclosure, foreclosures and repossessions, as applicable) are initiated, conducted and concluded in accordance with the timeframes or other requirements established by the transaction agreements. | X | | | |
| 1122(d)(4)(viii) | Records documenting collection efforts are maintained during the period a pool asset is delinquent in accordance with the transaction agreements. Such records are maintained on at least a monthly basis, or such other period specified in the transaction agreements, and describe the entity's activities in monitoring delinquent pool assets including, for example, phone calls, letters and payment rescheduling plans in cases where delinquency is deemed temporary (e.g., illness or unemployment). | X | | | |
| 1122(d)(4)(ix) | Adjustments to interest rates or rates of return for pool assets with variable rates are computed based on the related pool asset documents. | X | | | |
| 1122(d)(4)(x) | Regarding any funds held in trust for an obligor (such as escrow accounts): (A) such funds are analyzed, in accordance with the obligor's pool asset documents, on at least an annual basis, or such other period specified in the transaction agreements; (B) interest on such funds is paid, or credited, to obligors in | X | | | |

| Reg AB Reference | Servicing Criteria | Master Servicer | Securities Administrator | Custodians | Trustee (Nominal) |
|---|---|---|---|---|---|
| | accordance with applicable pool asset documents and state laws; and (C) such funds are returned to the obligor within 30 calendar days of full repayment of the related pool assets, or such other number of days specified in the transaction agreements. | | | | |
| 1122(d)(4)(xi) | Payments made on behalf of an obligor (such as tax or insurance payments) are made on or before the related penalty or expiration dates, as indicated on the appropriate bills or notices for such payments, provided that such support has been received by the servicer at least 30 calendar days prior to these dates, or such other number of days specified in the transaction agreements. | X | | | |
| 1122(d)(4)(xii) | Any late payment penalties in connection with any payment to be made on behalf of an obligor are paid from the Servicer's funds and not charged to the obligor, unless the late payment was due to the obligor's error or omission. | X | | | |
| 1122(d)(4)(xiii) | Disbursements made on behalf of an obligor are posted within two business days to the obligor's records maintained by the servicer, or such other number of days specified in the transaction agreements. | X | | | |
| 1122(d)(4)(xiv) | Delinquencies, charge-offs and uncollectible accounts are recognized and recorded in accordance with the transaction agreements. | X | | | |
| 1122(d)(4)(xv) | Any external enhancement or other support, identified in Item 1114(a)(1) through (3) or Item 1115 of Regulation AB, is maintained as set forth in the transaction agreements. | | X | | |

## EXHIBIT O

## FORM 10-D, FORM 8-K AND FORM 10-K
## REPORTING RESPONSIBILITY

As to each item described below, the entity indicated as the Responsible Party shall be primarily responsible for reporting the information to the party identified as responsible for preparing the Securities Exchange Act Reports pursuant to Section 3.16 of the Pooling and Servicing Agreement.

Under Item 1 of Form 10-D: a) items marked "monthly statements to certificateholders" are required to be included in the periodic Distribution Date statement under Section 5.06 of the Pooling and Servicing Agreement, provided by the Securities Administrator based on information received from the party providing such information to the Securities Administrator; and b) items marked "Form 10-D report" are required to be in the Form 10-D report but not the monthly statements to certificateholders, provided by the party indicated. Information under all other Items of Form 10-D is to be included in the Form 10-D report. All such information and any other Items of Form 8-K and Form 10-K set forth in this exhibit shall be sent to the Securities Adminsitrator and the Depositor.

| Form | Item | Description | Servicers | Master Servicer | Securities Administrator | Custodians | Trustee (nominal) | Depositor | Sponsor |
|------|------|-------------|-----------|-----------------|--------------------------|------------|-------------------|-----------|---------|
| 10-D | | Must be filed within 15 days of the distribution date for the asset-backed securities. | | | | | | | |
| | 1 | **Distribution and Pool Performance Information** | | | | | | | |
| | | *Item 1121(a) – Distribution and Pool Performance Information* | | | | | | | |
| | | (1) Any applicable record dates, accrual dates, determination dates for calculating distributions and actual distribution dates for the distribution period. | | | **X**<br><br>**(monthly statements to certificateholders)** | | | | |
| | | (2) Cash flows received and the sources thereof for distributions, fees and expenses. | | | **X**<br><br>**(monthly statements to certificateholders)** | | | | |
| | | (3) Calculated amounts and distribution of the flow of funds for the period itemized by type and priority of payment, including: | | | **X**<br><br>**(monthly statements to certificateholders)** | | | | |
| | | (i) Fees or expenses accrued and paid, with an identification of the general purpose of such fees and the party receiving such fees or expenses. | | | **X**<br><br>**(monthly statements to certificateholders)** | | | | |

| Form | Item | Description | Servicers | Master Servicer | Securities Administrator | Custodians | Trustee (nominal) | Depositor | Sponsor |
|------|------|-------------|-----------|-----------------|--------------------------|------------|-------------------|-----------|---------|
| | | (ii) Payments accrued or paid with respect to enhancement or other support identified in Item 1114 of Regulation AB (such as insurance premiums or other enhancement maintenance fees), with an identification of the general purpose of such payments and the party receiving such payments. | | | **X** **(monthly statements to certificateholders)** | | | | |
| | | (iii) Principal, interest and other distributions accrued and paid on the asset-backed securities by type and by class or series and any principal or interest shortfalls or carryovers. | | | **X** **(monthly statements to certificateholders)** | | | | |
| | | (iv) The amount of excess cash flow or excess spread and the disposition of excess cash flow. | | | **X** **(monthly statements to certificateholders)** | | | | |
| | | (4) Beginning and ending principal balances of the asset-backed securities. | | | **X** **(monthly statements to certificateholders)** | | | | |

| Form | Item | Description | Servicers | Master Servicer | Securities Administrator | Custodians | Trustee (nominal) | Depositor | Sponsor |
|------|------|-------------|-----------|-----------------|-------------------------|------------|-------------------|-----------|---------|
| | | (5) Interest rates applicable to the pool assets and the asset-backed securities, as applicable. Consider providing interest rate information for pool assets in appropriate distributional groups or incremental ranges. | | | **X**<br><br>**(monthly statements to certificateholders)** | | | | |
| | | (6) Beginning and ending balances of transaction accounts, such as reserve accounts, and material account activity during the period. | | | **X**<br><br>**(monthly statements to certificateholders)**<br>**(only with respect to reserve accounts)** | | | | |
| | | (7) Any amounts drawn on any credit enhancement or other support identified in Item 1114 of Regulation AB, as applicable, and the amount of coverage remaining under any such enhancement, if known and applicable. | | | **X**<br><br>**(monthly statements to certificateholders)** | | | | |

| Form | Item | Description | Servicers | Master Servicer | Securities Administrator | Custodians | Trustee (nominal) | Depositor | Sponsor |
|------|------|-------------|-----------|-----------------|--------------------------|------------|-------------------|-----------|---------|
| | | (8) Number and amount of pool assets at the beginning and ending of each period, and updated pool composition information, such as weighted average coupon, weighted average remaining term, pool factors and prepayment amounts. | | | **X**<br><br>**(monthly statements to certificateholders)** | | | Updated pool composition information fields to be as specified by Depositor from time to time | |
| | | (9) Delinquency and loss information for the period. | | | **X**<br><br>**(monthly statements to certificateholders)** | | | | |
| | | In addition, describe any material changes to the information specified in Item 1100(b)(5) of Regulation AB regarding the pool assets. (methodology) | **X** | **X** | | | | | |
| | | (10) Information on the amount, terms and general purpose of any advances made or reimbursed during the period, including the general use of funds advanced and the general source of funds for reimbursements. | | | **X**<br><br>**(monthly statements to certificateholders)** | | | | |

| Form | Item | Description | Servicers | Master Servicer | Securities Administrator | Custodians | Trustee (nominal) | Depositor | Sponsor |
|------|------|-------------|-----------|-----------------|--------------------------|------------|-------------------|-----------|---------|
| | | (11) Any material modifications, extensions or waivers to pool asset terms, fees, penalties or payments during the distribution period or that have cumulatively become material over time. | | | **X**<br><br>**(monthly statements to certificateholders)** | | | | |
| | | (12) Material breaches of pool asset representations or warranties or transaction covenants. | **X** | **X** | **X**<br><br>**(if agreed upon by the parties)** | | | **X** | |
| | | (13) Information on ratio, coverage or other tests used for determining any early amortization, liquidation or other performance trigger and whether the trigger was met. | | | **X**<br><br>**(monthly statements to certificateholders)** | | | | |
| | | (14) Information regarding any new issuance of asset-backed securities backed by the same asset pool, | | | | | | **X** | |

| Form | Item | Description | Servicers | Master Servicer | Securities Administrator | Custodians | Trustee (nominal) | Depositor | Sponsor |
|------|------|-------------|-----------|-----------------|--------------------------|------------|-------------------|-----------|---------|
| | | information regarding any pool asset changes (other than in connection with a pool asset converting into cash in accordance with its terms), such as additions or removals in connection with a prefunding or revolving period and pool asset substitutions and repurchases (and purchase rates, if applicable), and cash flows available for future purchases, such as the balances of any prefunding or revolving accounts, if applicable. | X | X | X | | | X | |
| | | Disclose any material changes in the solicitation, credit-granting, underwriting, origination, acquisition or pool selection criteria or procedures, as applicable, used to originate, acquire or select the new pool assets. | | | | | | X | X |
| | | *Item 1121(b) – Pre-Funding or Revolving Period Information* <br><br> Updated pool information as required under Item 1121(b). | | | | | | X | |

| Form | Item | Description | Servicers | Master Servicer | Securities Administrator | Custodians | Trustee (nominal) | Depositor | Sponsor |
|---|---|---|---|---|---|---|---|---|---|
| | 2 | **Legal Proceedings** | | | | | | | |
| | | Item 1117 – Legal proceedings pending against the following entities, or their respective property, that is material to Certificateholders, including proceedings known to be contemplated by governmental authorities: | | | | | | | |
| | | Sponsor (Seller) | | | | | | | X |
| | | Depositor | | | | | | X | |
| | | Trustee | | | | | | | |
| | | Issuing entity | | | | | | X | |
| | | Master Servicer, affiliated Servicer, other Servicer servicing 20% or more of pool assets at time of report, other material servicers | X | X | | | | | |
| | | Securities Administrator | | | X | | | | |
| | | Originator of 20% or more of pool assets as of the Cut-off Date | | | | | | X | |
| | | Custodians | | | | X | | | |
| | 3 | **Sales of Securities and Use of Proceeds** | | | | | | | |

| Form | Item | Description | Servicers | Master Servicer | Securities Administrator | Custodians | Trustee (nominal) | Depositor | Sponsor |
|------|------|-------------|-----------|-----------------|--------------------------|------------|-------------------|-----------|---------|
| | | *Information from Item 2(a) of Part II of Form 10-Q:* | | | | | | **X** | |
| | | With respect to any sale of securities by the sponsor, depositor or issuing entity, that are backed by the same asset pool or are otherwise issued by the issuing entity, whether or not registered, provide the sales and use of proceeds information in Item 701 of Regulation S-K. Pricing information can be omitted if securities were not registered. | | | | | | | |
| | 4 | **Defaults Upon Senior Securities** | | | | | | | |
| | | *Information from Item 3 of Part II of Form 10-Q:*<br><br>Report the occurrence of any Event of Default (after expiration of any grace period and provision of any required notice) | | **X**<br><br>**(only with respect to any servicer event of default)** | | | | | |
| | 5 | **Submission of Matters to a Vote of Certificateholders** | | | | | | | |

| Form | Item | Description | Servicers | Master Servicer | Securities Administrator | Custodians | Trustee (nominal) | Depositor | Sponsor |
|---|---|---|---|---|---|---|---|---|---|
| | | *Information from Item 4 of Part II of Form 10-Q* | | | **X** | | | | |
| | 6 | **Significant Obligors of Pool Assets** | | | | | | | |
| | | *Item 1112(b) – Significant Obligor Financial Information\** | | | | | | **X** | |
| | | \*This information need only be reported on the Form 10-D for the distribution period in which updated information is required pursuant to the Item. | | | | | | | |
| | 7 | **Significant Enhancement Provider Information** | | | | | | | |
| | | *Item 1114(b)(2) – Credit Enhancement Provider Financial Information\** | | | | | | | |
| | | Determining applicable disclosure threshold | | | **X** | | | | |
| | | Requesting required financial information or effecting incorporation by reference | | | **X** | | | | |
| | | *Item 1115(b) – Derivative Counterparty Financial Information\** | | | | | | | |

| Form | Item | Description | Servicers | Master Servicer | Securities Administrator | Custodians | Trustee (nominal) | Depositor | Sponsor |
|------|------|-------------|-----------|-----------------|--------------------------|------------|-------------------|-----------|---------|
| | | Determining current maximum probable exposure | | | | | | **X** | |
| | | Determining current significance percentage | | | **X** | | | | |
| | | Requesting required financial information or effecting incorporation by reference | | | **X** | | | | |
| | | *This information need only be reported on the Form 10-D for the distribution period in which updated information is required pursuant to the Items. | | | | | | | |
| | 8 | **Other Information** | | | | | | | |
| | | *Disclose any information required to be reported on Form 8-K during the period covered by the Form 10-D but not reported* | The Responsible Party for the applicable Form 8-K item as indicated below. | | | | | | |
| | 9 | **Exhibits** | | | | | | | |
| | | Distribution report | | | **X** | | | | |
| | | *Exhibits required by Item 601 of Regulation S-K, such as material agreements* | | | | | | **X** | |

| Form | Item | Description | Servicers | Master Servicer | Securities Administrator | Custodians | Trustee (nominal) | Depositor | Sponsor |
|------|------|-------------|-----------|-----------------|--------------------------|------------|-------------------|-----------|---------|
| 8-K | | Must be filed within four business days of an event reportable on Form 8-K. | | | | | | | |
| | 1.01 | **Entry into a Material Definitive Agreement** | | | | | | | |
| | | Disclosure is required regarding entry into or amendment of any definitive agreement that is material to the securitization, even if depositor is not a party. <br><br> Examples: servicing agreement, custodial agreement. <br><br> Note: disclosure not required as to definitive agreements that are fully disclosed in the prospectus | X | X | X | | | X | X |
| | 1.02 | **Termination of a Material Definitive Agreement** | X | X | X | | | X | X |

O-12

| Form | Item | Description | Servicers | Master Servicer | Securities Administrator | Custodians | Trustee (nominal) | Depositor | Sponsor |
|------|------|-------------|-----------|-----------------|--------------------------|------------|-------------------|-----------|---------|
| | | Disclosure is required regarding termination of any definitive agreement that is material to the securitization (other than expiration in accordance with its terms), even if depositor is not a party.<br><br>Examples: servicing agreement, custodial agreement. | | | | | | | |
| | 1.03 | **Bankruptcy or Receivership** | | | | | | | |

| Form | Item | Description | Servicers | Master Servicer | Securities Administrator | Custodians | Trustee (nominal) | Depositor | Sponsor |
|------|------|-------------|-----------|-----------------|-------------------------|------------|-------------------|-----------|---------|
| | | Disclosure is required regarding the bankruptcy or receivership, if known to the Master Servicer, with respect to any of the following: | $\underline{X}$ | $\underline{X}$ | $\underline{X}$ | $\underline{X}$ | | $\underline{X}$ | $\underline{X}$ |
| | | Sponsor (Seller), Depositor, Master Servicer, affiliated Servicer, other Servicer servicing 20% or more of pool assets at time of report, other material servicers, Securities Administrator, Trustee, significant obligor, credit enhancer (10% or more), derivatives counterparty, Custodians | | | | | | | |
| | 2.04 | **Triggering Events that Accelerate or Increase a Direct Financial Obligation or an Obligation under an Off-Balance Sheet Arrangement**<br><br>[in this transaction there is no off-balance sheet arrangement] | | | | | | | |

| Form | Item | Description | Servicers | Master Servicer | Securities Administrator | Custodians | Trustee (nominal) | Depositor | Sponsor |
|------|------|-------------|-----------|-----------------|--------------------------|------------|-------------------|-----------|---------|
| | | Includes an early amortization, performance trigger or other event, including event of default, that would materially alter the payment priority/distribution of cash flows/amortization schedule. Disclosure will be made of events other than waterfall triggers which are disclosed in the monthly statements to certificateholders. [in this transaction there will be no events other than waterfall triggers] | | | **X** | | | | |
| | 3.03 | **Material Modification to Rights of Certificateholders** | | | | | | | |
| | | Disclosure is required of any material modification to documents defining the rights of Certificateholders, including the Pooling and Servicing Agreement | | | **X** | | | **X** | |

| Form | Item | Description | Servicers | Master Servicer | Securities Administrator | Custodians | Trustee (nominal) | Depositor | Sponsor |
|---|---|---|---|---|---|---|---|---|---|
| | 5.03 | **Amendments to Articles of Incorporation or Bylaws; Change in Fiscal Year** | | | | | | | |
| | | Disclosure is required of any amendment "to the governing documents of the issuing entity" | | | | | | X | |
| | 5.06 | **Change in Shell Company Status** | | | | | | | |
| | | [Not applicable to ABS issuers] | | | | | | X | |
| | 6.01 | **ABS Informational and Computational Material** | | | | | | | |
| | | [Not included in reports to be filed under Section 3.19] | | | | | | X | |
| | 6.02 | **Change of Servicer or Trustee** | | | | | | | |
| | | Requires disclosure of any removal, replacement, substitution or addition of any master servicer, affiliated servicer, other servicer servicing 10% or more of pool assets at time of report, other material servicers, securities administrator or trustee. | X | X | X | | | X | |

| Form | Item | Description | Servicers | Master Servicer | Securities Administrator | Custodians | Trustee (nominal) | Depositor | Sponsor |
|------|------|-------------|-----------|-----------------|--------------------------|------------|-------------------|-----------|---------|
| | | Reg AB disclosure about any new servicer is also required. | $\underline{X}$ | | | | | | |
| | | Reg AB disclosure about any new trustee is also required. | | | | | $\underline{X}$ (to the extent required by successor trustee) | | |
| | | Reg AB disclosure about any new securities administrator is also required. | | | $\underline{X}$ | | | | |
| | 6.03 | **Change in Credit Enhancement or Other External Support** | | | | | | | |
| | | Covers termination of any enhancement in manner other than by its terms, the addition of an enhancement, or a material change in the enhancement provided. Applies to external credit enhancements as well as derivatives. | | | $\underline{X}$ | | | $\underline{X}$ | |
| | | Reg AB disclosure about any new enhancement provider is required. | | | $\underline{X}$ | | | $\underline{X}$ | |
| | 6.04 | **Failure to Make a Required Distribution** | | | $\underline{X}$ | | | | |
| | 6.05 | **Securities Act Updating Disclosure** | | | | | | | |

| Form | Item | Description | Servicers | Master Servicer | Securities Administrator | Custodians | Trustee (nominal) | Depositor | Sponsor |
|------|------|-------------|-----------|-----------------|-------------------------|------------|-------------------|-----------|---------|
| | | If any material pool characteristic differs by 5% or more at the time of issuance of the securities from the description in the final prospectus, provide updated Reg AB disclosure about the actual asset pool. | | | | | | **X** | |
| | | If there are any new servicers or originators required to be disclosed under Regulation AB as a result of the foregoing, provide the information called for in Items 1108 and 1110 respectively. | | | | | | **X** | |
| | 7.01 | **Regulation FD Disclosure** | **X** | **X** | **X** | **X** | | **X** | |
| | 8.01 | **Other Events** | | | | | | | |
| | | Any event, with respect to which information is not otherwise called for in Form 8-K, that the registrant deems of importance to Certificateholders. | | | | | | **X** | |
| | 9.01 | **Financial Statements and Exhibits** | The Responsible Party applicable to reportable event. | | | | | | |
| **10-K** | | Must be filed within 90 days of the fiscal year end for the registrant. | | | | | | | |
| | 9B | **Other Information** | | | | | | | |

| Form | Item | Description | Servicers | Master Servicer | Securities Administrator | Custodians | Trustee (nominal) | Depositor | Sponsor |
|---|---|---|---|---|---|---|---|---|---|
| | | Disclose any information required to be reported on Form 8-K during the fourth quarter covered by the Form 10-K but not reported | The Responsible Party for the applicable Form 8-K Item as indicated above. | | | | | | |
| | 15 | **Exhibits and Financial Statement Schedules** | | | | | | | |
| | | *Item 1112(b) – Significant Obligor Financial Information* | | | | | | **X** | |
| | | *Item 1114(b)(2) – Credit Enhancement Provider Financial Information* | | | | | | | |
| | | Determining applicable disclosure threshold | | | **X** | | | | |
| | | Requesting required financial information or effecting incorporation by reference | | | **X** | | | | |
| | | *Item 1115(b) – Derivative Counterparty Financial Information* | | | | | | | |
| | | Determining current maximum probable exposure | | | | | | **X** | |

| Form | Item | Description | Servicers | Master Servicer | Securities Administrator | Custodians | Trustee (nominal) | Depositor | Sponsor |
|------|------|-------------|-----------|-----------------|--------------------------|------------|-------------------|-----------|---------|
| | | Determining current significance percentage | | | $\underline{\mathbf{X}}$ | | | | |
| | | Requesting required financial information or effecting incorporation by reference | | | $\underline{\mathbf{X}}$ | | | | |
| | | Item 1117 – Legal proceedings pending against the following entities, or their respective property, that is material to Certificateholders, including proceedings known to be contemplated by governmental authorities: | | | | | | | |
| | | Sponsor (Seller) | | | | | | | $\underline{\mathbf{X}}$ |
| | | Depositor | | | | | | $\underline{\mathbf{X}}$ | |
| | | Trustee | | | | | | | |
| | | Issuing entity | | | | | | $\underline{\mathbf{X}}$ | |
| | | Master Servicer, affiliated Servicer, other Servicer servicing 20% or more of pool assets at time of report, other material servicers | $\underline{\mathbf{X}}$ | $\underline{\mathbf{X}}$ | | | | | |
| | | Securities Administrator | | | $\underline{\mathbf{X}}$ | | | | |
| | | Originator of 20% or more of pool assets as of the Cut-off Date | | | | | | $\underline{\mathbf{X}}$ | |

| Form | Item | Description | Servicers | Master Servicer | Securities Administrator | Custodians | Trustee (nominal) | Depositor | Sponsor |
|---|---|---|---|---|---|---|---|---|---|
| | | Custodians | | | | **X** | | | |
| | | Item 1119 – Affiliations and relationships between the following entities, or their respective affiliates, that are material to Certificateholders: | | | | | | | |
| | | Sponsor (Seller) | | | | | | | **X** |
| | | Depositor | | | | | | **X** | |
| | | Trustee | | | | | | | |
| | | Master Servicer, affiliated Servicer, other Servicer servicing 20% or more of pool assets at time of report, other material servicers | **X** | **X** | | | | | |
| | | Securities Administrator | | | **X** | | | | |
| | | Originator | | | | | | **X** | |
| | | Custodians | | | | **X** | | | |
| | | Credit Enhancer/Support Provider | | | | | | **X** | |
| | | Significant Obligor | | | | | | **X** | |
| | | *Item 1122 – Assessment of Compliance with Servicing Criteria* | **X** | **X** | **X** | **X** | | | |
| | | *Item 1123 – Servicer Compliance Statement* | **X** | **X** | **X** | | | | |

## EXHIBIT P

## ADDITIONAL DISCLOSURE NOTIFICATION

Bear Stearns Asset Backed Securities I LLC
383 Madison Avenue
New York, New York 10179
Fax: (212) 272-2000
E-mail: regabnotifications@bear.com

Wells Fargo Bank, National Association as Securities Administrator
9062 Old Annapolis Road
Columbia, Maryland 21045
Fax: (410) 715-2380
E-mail: cts.sec.notifications@wellsfargo.com
Attn: Corporate Trust Services – BSABS-MSSTI 2007-1-SEC REPORT PROCESSING

RE: **Additional Form [ ] Disclosure**Required

Ladies and Gentlemen:

In accordance with Section 3.16(a)(iv) of the Pooling and Servicing Agreement, dated as of June 1, 2007, among Bear Stearns Asset Backed Securities I LLC, as depositor, Wells Fargo Bank, National Association, as master servicer and securities administrator, and Deutsche Bank National Trust Company, as trustee. The Undersigned, as [Name of Party], hereby notifies you that certain events have come to our attention that [will][may] need to be disclosed on Form [ ].

Description of Additional Form [ ] Disclosure:

List of Any Attachments hereto to be included in the Additional Form [ ] Disclosure:


Any inquiries related to this notification should be directed to [ ], phone number: [ ]; email address: [ ].

> [NAME OF PARTY]
> as [role]
>
>
> By: _____
>      Name:
>      Title:

EXHIBIT Q-1

COUNTRYWIDE SERVICING AGREEMENT

# EXHIBIT Q-2

## SAXON SERVICING AGREEMENT

# EXHIBIT Q-3

## WELLS FARGO SERVICING AGREEMENT

## EXHIBIT R-1

COUNTRYWIDE ASSIGNMENT, ASSUMPTION AND RECOGNITION AGREEMENT

# EXHIBIT R-2

## SAXON ASSIGNMENT, ASSUMPTION AND RECOGNITION AGREEMENT

# EXHIBIT R-3

## WELLS FARGO ASSIGNMENT, ASSUMPTION AND RECOGNITION AGREEMENT

# EXHIBIT S

## REPORTING DATA FOR MONTHLY REPORT

| | Standard Loan Level File Layout – Master Servicing | | | |
|---|---|---|---|---|
| | | | | |
| **Exhibit 1:** Layout | | | | |
| Column Name | Description | Decimal | Format Comment | Max Size |
| **Each file requires the following fields:** | | | | |
| SER_INVESTOR_NBR | A value assigned by the Servicer to define a group of loans. | | Text up to 20 digits | 20 |
| LOAN_NBR | A unique identifier assigned to each loan by the investor. | | Text up to 10 digits | 10 |
| SERVICER_LOAN_NBR | A unique number assigned to a loan by the Servicer. This may be different than the LOAN_NBR. | | Text up to 10 digits | 10 |
| SCHED_PAY_AMT | Scheduled monthly principal and scheduled interest payment that a borrower is expected to pay, P&I constant. | 2 | No commas(,) or dollar signs ($) | 11 |
| NOTE_INT_RATE | The loan interest rate as reported by the Servicer. | 4 | Max length of 6 | 6 |
| NET_INT_RATE | The loan gross interest rate less the service fee rate as reported by the Servicer. | 4 | Max length of 6 | 6 |
| SERV_FEE_RATE | The servicer's fee rate for a loan as reported by the Servicer. | 4 | Max length of 6 | 6 |
| SERV_FEE_AMT | The servicer's fee amount for a loan as reported by the Servicer. | 2 | No commas(,) or dollar signs ($) | 11 |
| NEW_PAY_AMT | The new loan payment amount as reported by the Servicer. | 2 | No commas(,) or dollar signs ($) | 11 |
| NEW_LOAN_RATE | The new loan rate as reported by the Servicer. | 4 | Max length of 6 | 6 |
| ARM_INDEX_RATE | The index the Servicer is using to calculate a forecasted rate. | 4 | Max length of 6 | 6 |
| ACTL_BEG_PRIN_BAL | The borrower's actual principal balance at the beginning of the processing cycle. | 2 | No commas(,) or dollar signs ($) | 11 |
| ACTL_END_PRIN_BAL | The borrower's actual principal balance at the end of the processing cycle. | 2 | No commas(,) or dollar signs ($) | 11 |
| BORR_NEXT_PAY_DUE_DATE | The date at the end of processing cycle that the borrower's next payment is due to the Servicer, as reported by Servicer. | | MM/DD/YYYY | 10 |
| SERV_CURT_AMT_1 | The first curtailment amount to be applied. | 2 | No commas(,) or dollar signs ($) | 11 |
| SERV_CURT_DATE_1 | The curtailment date associated with the first curtailment amount. | | MM/DD/YYYY | 10 |
| CURT_ADJ_AMT_1 | The curtailment interest on the first curtailment amount, if applicable. | 2 | No commas(,) or dollar signs ($) | 11 |
| SERV_CURT_AMT_2 | The second curtailment amount to be applied. | 2 | No commas(,) or dollar signs ($) | 11 |
| SERV_CURT_DATE_2 | The curtailment date associated with the second curtailment amount. | | MM/DD/YYYY | 10 |

| CURT_ADJ_AMT_2 | The curtailment interest on the second curtailment amount, if applicable. | 2 | No commas(,) or dollar signs ($) | 11 |

## Exhibit 1: Continued — Standard Loan Level File Layout

| Column Name | Description | Decimal | Format Comment | Max Size |
|---|---|---|---|---|
| SERV_CURT_AMT_3 | The third curtailment amount to be applied. | 2 | No commas(,) or dollar signs ($) | 11 |
| SERV_CURT_DATE_3 | The curtailment date associated with the third curtailment amount. | | MM/DD/YYYY | 10 |
| CURT_ADJ_AMT_3 | The curtailment interest on the third curtailment amount, if applicable. | 2 | No commas(,) or dollar signs ($) | 11 |
| PIF_AMT | The loan "paid in full" amount as reported by the Servicer. | 2 | No commas(,) or dollar signs ($) | 11 |
| PIF_DATE | The paid in full date as reported by the Servicer. | | MM/DD/YYYY | 10 |
| ACTION_CODE | The standard FNMA numeric code used to indicate the default/delinquent status of a particular loan. | | Action Code Key: 15=Bankruptcy, 30=Foreclosure, 60=PIF, 63=Substitution, 65=Repurchase,70=REO | 2 |
| INT_ADJ_AMT | The amount of the interest adjustment as reported by the Servicer. | 2 | No commas(,) or dollar signs ($) | 11 |
| SOLDIER_SAILOR_ADJ_AMT | The Soldier and Sailor Adjustment amount, if applicable. | 2 | No commas(,) or dollar signs ($) | 11 |
| NON_ADV_LOAN_AMT | The Non Recoverable Loan Amount, if applicable. | 2 | No commas(,) or dollar signs ($) | 11 |
| LOAN_LOSS_AMT | The amount the Servicer is passing as a loss, if applicable. | 2 | No commas(,) or dollar signs ($) | 11 |
| **Plus the following applicable fields:** | | | | |
| SCHED_BEG_PRIN_BAL | The scheduled outstanding principal amount due at the beginning of the cycle date to be passed through to investors. | 2 | No commas(,) or dollar signs ($) | 11 |
| SCHED_END_PRIN_BAL | The scheduled principal balance due to investors at the end of a processing cycle. | 2 | No commas(,) or dollar signs ($) | 11 |
| SCHED_PRIN_AMT | The scheduled principal amount as reported by the Servicer for the current cycle — only applicable for Scheduled/Scheduled Loans. | 2 | No commas(,) or dollar signs ($) | 11 |
| SCHED_NET_INT | The scheduled gross interest amount less the service fee amount for the current cycle as reported by the Servicer — only applicable for Scheduled/Scheduled Loans. | 2 | No commas(,) or dollar signs ($) | 11 |
| ACTL_PRIN_AMT | The actual principal amount collected by the Servicer for the current reporting cycle — only applicable for Actual/Actual Loans. | 2 | No commas(,) or dollar signs ($) | 11 |
| ACTL_NET_INT | The actual gross interest amount less the service fee amount for the current reporting cycle as reported by the Servicer — only applicable for Actual/Actual Loans. | 2 | No commas(,) or dollar signs ($) | 11 |
| PREPAY_PENALTY_AMT | The penalty amount received when a borrower prepays on his loan as reported by the Servicer. | 2 | No commas(,) or dollar signs ($) | 11 |
| PREPAY_PENALTY_WAIVED | The prepayment penalty amount for the loan waived by the servicer. | 2 | No commas(,) or dollar signs ($) | 11 |

| Exhibit 1: Continued | Standard Loan Level File Layout | | | |
|---|---|---|---|---|
| Column Name | Description | Decimal | Format Comment | Max Size |
| MOD_DATE | The Effective Payment Date of the Modification for the loan. | | MM/DD/YYYY | 10 |
| MOD_TYPE | The Modification Type. | | Varchar - value can be alpha or numeric | 30 |
| DELINQ_P&I_ADVANCE_AMT | The current outstanding principal and interest advances made by Servicer. | 2 | No commas(,) or dollar signs ($) | 11 |
| BREACH_FLAG | Flag to indicate if the repurchase of a loan is due to a breach of Representations and Warranties | | Y=Breach N=NO Breach Let blank if N/A | 1 |

REPORTING DATA FOR DEFAULTED LOANS

## Standard File Layout – Delinquency Reporting

*The column/header names in **bold** are the minimum fields Wells Fargo must receive from every Servicer*

| Column/Header Name | Description | Decimal | Format Comment |
|---|---|---|---|
| **SERVICER_LOAN_NBR** | A unique number assigned to a loan by the Servicer. This may be different than the LOAN_NBR | | |
| **LOAN_NBR** | A unique identifier assigned to each loan by the originator. | | |
| CLIENT_NBR | Servicer Client Number | | |
| **SERV_INVESTOR_NBR** | Contains a unique number as assigned by an external servicer to identify a group of loans in their system. | | |
| BORROWER_FIRST_NAME | First Name of the Borrower. | | |
| **BORROWER_LAST_NAME** | Last name of the borrower. | | |
| PROP_ADDRESS | Street Name and Number of Property | | |
| **PROP_STATE** | The state where the property located. | | |
| **PROP_ZIP** | Zip code where the property is located. | | |
| BORR_NEXT_PAY_DUE_DATE | The date that the borrower's next payment is due to the servicer at the end of processing cycle, as reported by Servicer. | | MM/DD/YYYY |
| LOAN_TYPE | Loan Type (i.e. FHA, VA, Conv) | | |
| **BANKRUPTCY_FILED_DATE** | The date a particular bankruptcy claim was filed. | | MM/DD/YYYY |
| BANKRUPTCY_CHAPTER_CODE | The chapter under which the bankruptcy was filed. | | |
| BANKRUPTCY_CASE_NBR | The case number assigned by the court to the bankruptcy filing. | | |
| POST_PETITION_DUE_DATE | The payment due date once the bankruptcy has been approved by the courts | | MM/DD/YYYY |
| BANKRUPTCY_DCHRG_DISM_DATE | The Date The Loan Is Removed From Bankruptcy. Either by Dismissal, Discharged and/or a Motion For Relief Was Granted. | | MM/DD/YYYY |
| LOSS_MIT_APPR_DATE | The Date The Loss Mitigation Was Approved By The Servicer | | MM/DD/YYYY |
| LOSS_MIT_TYPE | The Type Of Loss Mitigation Approved For A Loan Such As; | | |
| LOSS_MIT_EST_COMP_DATE | The Date The Loss Mitigation /Plan Is Scheduled To End/Close | | MM/DD/YYYY |
| LOSS_MIT_ACT_COMP_DATE | The Date The Loss Mitigation Is Actually Completed | | MM/DD/YYYY |
| FRCLSR_APPROVED_DATE | The date DA Admin sends a letter to the servicer with instructions to begin foreclosure proceedings. | | MM/DD/YYYY |
| ATTORNEY_REFERRAL_DATE | Date File Was Referred To Attorney to Pursue Foreclosure | | MM/DD/YYYY |
| FIRST_LEGAL_DATE | Notice of 1st legal filed by an Attorney in a Foreclosure Action | | MM/DD/YYYY |
| FRCLSR_SALE_EXPECTED_DATE | The date by which a foreclosure sale is expected to occur. | | MM/DD/YYYY |
| FRCLSR_SALE_DATE | The actual date of the foreclosure sale. | | MM/DD/YYYY |
| FRCLSR_SALE_AMT | The amount a property sold for at the foreclosure sale. | 2 | No commas(,) or dollar signs ($) |
| EVICTION_START_DATE | The date the servicer initiates eviction of the borrower. | | MM/DD/YYYY |
| EVICTION_COMPLETED_DATE | The date the court revokes legal possession of the property from the borrower. | | MM/DD/YYYY |
| LIST_PRICE | The price at which an REO property is marketed. | 2 | No commas(,) or dollar signs ($) |
| LIST_DATE | The date an REO property is listed at a particular price. | | MM/DD/YYYY |
| OFFER_AMT | The dollar value of an offer for an REO property. | 2 | No commas(,) or dollar signs ($) |

| | | | |
|---|---|---|---|
| OFFER_DATE_TIME | The date an offer is received by DA Admin or by the Servicer. | | MM/DD/YYYY |
| REO_CLOSING_DATE | The date the REO sale of the property is scheduled to close. | | MM/DD/YYYY |
| REO_ACTUAL_CLOSING_DATE | Actual Date Of REO Sale | | MM/DD/YYYY |
| OCCUPANT_CODE | Classification of how the property is occupied. | | |
| PROP_CONDITION_CODE | A code that indicates the condition of the property. | | |
| PROP_INSPECTION_DATE | The date a property inspection is performed. | | MM/DD/YYYY |
| APPRAISAL_DATE | The date the appraisal was done. | | MM/DD/YYYY |
| CURR_PROP_VAL | The current "as is" value of the property based on brokers price opinion or appraisal. | 2 | |
| REPAIRED_PROP_VAL | The amount the property would be worth if repairs are completed pursuant to a broker's price opinion or appraisal. | 2 | |
| If applicable: | | | |
| DELINQ_STATUS_CODE | FNMA Code Describing Status of Loan | | |
| DELINQ_REASON_CODE | The circumstances which caused a borrower to stop paying on a loan. Code indicates the reason why the loan is in default for this cycle. | | |
| MI_CLAIM_FILED_DATE | Date Mortgage Insurance Claim Was Filed With Mortgage Insurance Company. | | MM/DD/YYYY |
| MI_CLAIM_AMT | Amount of Mortgage Insurance Claim Filed | | No commas(,) or dollar signs ($) |
| MI_CLAIM_PAID_DATE | Date Mortgage Insurance Company Disbursed Claim Payment | | MM/DD/YYYY |
| MI_CLAIM_AMT_PAID | Amount Mortgage Insurance Company Paid On Claim | 2 | No commas(,) or dollar signs ($) |
| POOL_CLAIM_FILED_DATE | Date Claim Was Filed With Pool Insurance Company | | MM/DD/YYYY |
| POOL_CLAIM_AMT | Amount of Claim Filed With Pool Insurance Company | 2 | No commas(,) or dollar signs ($) |
| POOL_CLAIM_PAID_DATE | Date Claim Was Settled and The Check Was Issued By The Pool Insurer | | MM/DD/YYYY |
| POOL_CLAIM_AMT_PAID | Amount Paid On Claim By Pool Insurance Company | 2 | No commas(,) or dollar signs ($) |
| FHA_PART_A_CLAIM_FILED_DATE | Date FHA Part A Claim Was Filed With HUD | | MM/DD/YYYY |
| FHA_PART_A_CLAIM_AMT | Amount of FHA Part A Claim Filed | 2 | No commas(,) or dollar signs ($) |
| FHA_PART_A_CLAIM_PAID_DATE | Date HUD Disbursed Part A Claim Payment | | MM/DD/YYYY |
| FHA_PART_A_CLAIM_PAID_AMT | Amount HUD Paid on Part A Claim | 2 | No commas(,) or dollar signs ($) |
| FHA_PART_B_CLAIM_FILED_DATE | Date FHA Part B Claim Was Filed With HUD | | MM/DD/YYYY |
| FHA_PART_B_CLAIM_AMT | Amount of FHA Part B Claim Filed | 2 | No commas(,) or dollar signs ($) |
| FHA_PART_B_CLAIM_PAID_DATE | Date HUD Disbursed Part B Claim Payment | | MM/DD/YYYY |
| FHA_PART_B_CLAIM_PAID_AMT | Amount HUD Paid on Part B Claim | 2 | No commas(,) or dollar signs ($) |
| VA_CLAIM_FILED_DATE | Date VA Claim Was Filed With the Veterans Admin | | MM/DD/YYYY |
| VA_CLAIM_PAID_DATE | Date Veterans Admin. Disbursed VA Claim Payment | | MM/DD/YYYY |
| VA_CLAIM_PAID_AMT | Amount Veterans Admin. Paid on VA Claim | 2 | No commas(,) or dollar signs ($) |
| MOTION_FOR_RELIEF_DATE | The date the Motion for Relief was filed | 10 | MM/DD/YYYY |
| FRCLSR_BID_AMT | The foreclosure sale bid amount | 11 | No commas(,) or dollar signs ($) |
| FRCLSR_SALE_TYPE | The foreclosure sales results: REO, Third Party, Conveyance to HUD/VA | | |

| REO_PROCEEDS | The net proceeds from the sale of the REO property. | | No commas(,) or dollar signs ($) |
|---|---|---|---|
| BPO_DATE | The date the BPO was done. | | |
| CURRENT_FICO | The current FICO score | | |
| HAZARD_CLAIM_FILED_DATE | The date the Hazard Claim was filed with the Hazard Insurance Company. | 10 | MM/DD/YYYY |
| HAZARD_CLAIM_AMT | The amount of the Hazard Insurance Claim filed. | 11 | No commas(,) or dollar signs ($) |
| HAZARD_CLAIM_PAID_DATE | The date the Hazard Insurance Company disbursed the claim payment. | 10 | MM/DD/YYYY |
| HAZARD_CLAIM_PAID_AMT | The amount the Hazard Insurance Company paid on the claim. | 11 | No commas(,) or dollar signs ($) |
| ACTION_CODE | Indicates loan status | | Number |
| NOD_DATE | | | MM/DD/YYYY |
| NOI_DATE | | | MM/DD/YYYY |
| ACTUAL_PAYMENT_PLAN_START_DATE | | | MM/DD/YYYY |
| ACTUAL_PAYMENT_PLAN_END_DATE | | | |
| ACTUAL_REO_START_DATE | | | MM/DD/YYYY |
| REO_SALES_PRICE | | | Number |
| REALIZED_LOSS/GAIN | As defined in the Servicing Agreement | | Number |

## Exhibit 2: Standard File Codes – Delinquency Reporting

The **Loss Mit Type** field should show the approved Loss Mitigation Code as follows:

- ASUM- Approved Assumption
- BAP- Borrower Assistance Program
- CO- Charge Off
- DIL- Deed-in-Lieu
- FFA- Formal Forbearance Agreement
- MOD- Loan Modification
- PRE- Pre-Sale
- SS- Short Sale
- MISC- Anything else approved by the PMI or Pool Insurer

**NOTE:** Wells Fargo Bank will accept alternative Loss Mitigation Types to those above, provided that they are consistent with industry standards. If Loss Mitigation Types other than those above are used, the Servicer must supply Wells Fargo Bank with a description of each of the Loss Mitigation Types prior to sending the file.

The **Occupant Code** field should show the current status of the property code as follows:

- Mortgagor
- Tenant
- Unknown

- Vacant

The **Property Condition** field should show the last reported condition of the property as follows:
- Damaged
- Excellent
- Fair
- Gone
- Good
- Poor
- Special Hazard
- Unknown

# Exhibit 2: Standard File Codes – Delinquency Reporting, *Continued*

The **FNMA Delinquent Reason Code** field should show the Reason for Delinquency as follows:

| Delinquency Code | Delinquency Description |
|---|---|
| 001 | FNMA-Death of principal mortgagor |
| 002 | FNMA-Illness of principal mortgagor |
| 003 | FNMA-Illness of mortgagor's family member |
| 004 | FNMA-Death of mortgagor's family member |
| 005 | FNMA-Marital difficulties |
| 006 | FNMA-Curtailment of income |
| 007 | FNMA-Excessive Obligation |
| 008 | FNMA-Abandonment of property |
| 009 | FNMA-Distant employee transfer |
| 011 | FNMA-Property problem |
| 012 | FNMA-Inability to sell property |
| 013 | FNMA-Inability to rent property |
| 014 | FNMA-Military Service |
| 015 | FNMA-Other |
| 016 | FNMA-Unemployment |
| 017 | FNMA-Business failure |
| 019 | FNMA-Casualty loss |
| 022 | FNMA-Energy environment costs |
| 023 | FNMA-Servicing problems |
| 026 | FNMA-Payment adjustment |
| 027 | FNMA-Payment dispute |
| 029 | FNMA-Transfer of ownership pending |
| 030 | FNMA-Fraud |
| 031 | FNMA-Unable to contact borrower |
| INC | FNMA-Incarceration |

The **FNMA Delinquent Status Code** field should show the Status of Default as follows:

| Status Code | Status Description |
|---|---|
| 09 | Forbearance |
| 17 | Pre-foreclosure Sale Closing Plan Accepted |
| 24 | Government Seizure |
| 26 | Refinance |
| 27 | Assumption |
| 28 | Modification |
| 29 | Charge-Off |
| 30 | Third Party Sale |
| 31 | Probate |
| 32 | Military Indulgence |
| 43 | Foreclosure Started |
| 44 | Deed-in-Lieu Started |
| 49 | Assignment Completed |
| 61 | Second Lien Considerations |
| 62 | Veteran's Affairs-No Bid |
| 63 | Veteran's Affairs-Refund |
| 64 | Veteran's Affairs-Buydown |
| 65 | Chapter 7 Bankruptcy |
| 66 | Chapter 11 Bankruptcy |
| 67 | Chapter 13 Bankruptcy |

# EXHIBIT U

## REPORTING DATA FOR REALIZED LOSSES AND GAINS

### Calculation of Realized Loss/Gain Form 332– Instruction Sheet

**NOTE: Do not net or combine items. Show all expenses individually and all credits as separate line items. Claim packages are due within 90 days of liquidation. Late submissions may result in claims not being passed until the following month. The Servicer is responsible to remit all funds pending loss approval and /or resolution of any disputed items.**

The numbers on the 332 form correspond with the numbers listed below.

### Liquidation and Acquisition Expenses:

1. The Actual Unpaid Principal Balance of the Mortgage Loan. For documentation, an Amortization Schedule from date of default through liquidation breaking out the net interest and servicing fees advanced is required.

2. The Total Interest Due less the aggregate amount of servicing fee that would have been earned if all delinquent payments had been made as agreed. For documentation, an Amortization Schedule from date of default through liquidation breaking out the net interest and servicing fees advanced is required.

3. Accrued Servicing Fees based upon the Scheduled Principal Balance of the Mortgage Loan as calculated on a monthly basis. For documentation, an Amortization Schedule from date of default through liquidation breaking out the net interest and servicing fees advanced is required.

4-12. Complete as applicable. Required documentation:

* For taxes and insurance advances – see page 2 of 332 form - breakdown required showing period

of coverage, base tax, interest, penalty. Advances prior to default require evidence of servicer efforts to recover advances.

 * For escrow advances - complete payment history

  (to calculate advances from last positive escrow balance forward)

* Other expenses - copies of corporate advance history showing all payments

* REO repairs > $1500 require explanation

* REO repairs >$3000 require evidence of at least 2 bids.

* Short Sale or Charge Off require P&L supporting the decision and WFB's approved Officer Certificate

 * Unusual or extraordinary items may require further documentation.

13. The total of lines 1 through 12.

### Credits:

14-21. Complete as applicable. Required documentation:

* Copy of the HUD 1 from the REO sale. If a 3rd Party Sale, bid instructions and Escrow Agent / Attorney

Letter of Proceeds Breakdown.

* Copy of EOB for any MI or gov't guarantee

* All other credits need to be clearly defined on the 332 form

22.   The total of lines 14 through 21.

Please Note:   For HUD/VA loans, use line (18a) for Part A/Initial proceeds and line (18b) for Part B/Supplemental proceeds.

**Total Realized Loss (or Amount of Any Gain)**
23.   The total derived from subtracting line 22 from 13. If the amount represents a realized gain, show the amount in parenthesis ( ).

### Calculation of Realized Loss/Gain Form 332

Prepared by: _____          Date: _____
Phone: _____   Email Address: _____

| Servicer Loan No. | Servicer Name | Servicer Address |
|---|---|---|
| | | |

**WELLS FARGO BANK, N.A. Loan No.** _____

Borrower's Name: _____
Property Address: _____

**Liquidation Type:   REO Sale**   3rd Party Sale   Short Sale   Charge Off

Was this loan granted a Bankruptcy deficiency or cramdown   Yes   No
If "Yes", provide deficiency or cramdown amount _____

**Liquidation and Acquisition Expenses:**

| | | |
|---|---|---|
| (1) Actual Unpaid Principal Balance of Mortgage Loan | $ _____ | (1) |
| (2) Interest accrued at Net Rate | _____ | (2) |
| (3) Accrued Servicing Fees | _____ | (3) |
| (4) Attorney's Fees | _____ | (4) |
| (5) Taxes (see page 2) | _____ | (5) |
| (6) Property Maintenance | _____ | (6) |
| (7) MI/Hazard Insurance Premiums (see page 2) | _____ | (7) |
| (8) Utility Expenses | _____ | (8) |
| (9) Appraisal/BPO | _____ | (9) |
| (10) Property Inspections | _____ | (10) |
| (11) FC Costs/Other Legal Expenses | _____ | (11) |
| (12) Other (itemize) | _____ | (12) |
| Cash for Keys _____ | _____ | (12) |
| HOA/Condo Fees _____ | _____ | (12) |

|                                                    |            |        |
|----------------------------------------------------|------------|--------|
|                                                    | _____ | (12)   |
| **Total Expenses**                                 | $ _____ | (13)   |
| **Credits:**                                       |            |        |
| (14) Escrow Balance                                | $ _____ | (14)   |
| (15) HIP Refund                                    | _____ | (15)   |
| (16) Rental Receipts                               | _____ | (16)   |
| (17) Hazard Loss Proceeds                          | _____ | (17)   |
| (18) Primary Mortgage Insurance / Gov't Insurance HUD Part A | _____ | (18a)  |
| HUD Part B                                         | _____ | (18b)  |
| (19) Pool Insurance Proceeds                       | _____ | (19)   |
| (20) Proceeds from Sale of Acquired Property       | _____ | (20)   |
| (21) Other (itemize)                               | _____ | (21)   |
|                                                    | _____ | (21)   |
| **Total Credits**                                  | $ _____ | (22)   |
| **Total Realized Loss (or Amount of Gain)**        | $ _____ (23) |    |

| Type (Tax /Ins.) | Date Paid | Period of Coverage | Total Paid | Base Amount | Penalties | Interest |
|------------------|-----------|--------------------|------------|-------------|-----------|----------|
|                  |           |                    |            |             |           |          |

## EXHIBIT V

### FORM OF CERTIFICATION TO BE PROVIDED
### BY THE SECURITIES ADMINISTRATOR TO THE DEPOSITOR

## FORM OF TRANSFEROR AFFIDAVIT

STATE OF NEW YORK   )
                          )  ss.:
COUNTY OF NEW YORK  )

       The undersigned is the [Title of Officer] of [Name of Transferor] (the "Owner"), the proposed transferor of an Ownership Interest in the Morgan Stanley Structured Trust I, Asset-Backed Certificates, Series 2007-1, Class [R-1][R-2][R-3][RX] Certificate (the "Certificate") issued pursuant to the Pooling and Servicing Agreement, dated as of June 1, 2007 (the "Agreement"), among BSABS I, as depositor (the "Depositor"), Wells Fargo Bank, National Association, as Master Servicer and Securities Administrator, and Deutsche Bank National Trust Company, as trustee (the "Trustee"), and makes this affidavit on behalf of the Owner for the benefit of the Depositor, the Trustee and the Securities Administrator. Capitalized terms used, but not defined herein, shall have the meanings ascribed to such terms in the Agreement.

       1.     The Owner is not transferring the Certificate to impede the assessment or collection of any tax.

       2.     The Owner has no actual knowledge that the proposed transferee of the Certificate: (i) has insufficient assets to pay any taxes that would be owed by such transferee as Holder of the Certificate; (ii) may become insolvent or subject to a bankruptcy proceeding for so long as the Certificate remains outstanding; and (iii) is not a Permitted Transferee.

       3.     The Owner understands that the proposed transferee has delivered to the Trustee and the Depositor a transfer affidavit and agreement in the form attached to the Agreement as Exhibit C. The Owner does not know or believe that any representation contained therein is false.

       4.     At the time of transfer, the Owner has conducted a reasonable investigation of the financial condition of the proposed transferee as contemplated by Treasury Regulation Section 1.860E-1(c)(4)(i) and, as a result of that investigation, the Owner has determined that the proposed transferee has historically paid its debts as they became due and has found no significant evidence to indicate that the proposed transferee will not continue to pay its debts as they become due in the future. The Owner understands that the transfer of the Certificate may not be respected for U.S. federal income tax purposes (and the Owner may continue to be liable for U.S. federal income taxes associated therewith) unless the Owner has conducted such an investigation.

IN WITNESS WHEREOF, the Investor has caused this instrument to be executed on its behalf, pursuant to authority of its Board of Directors, by its [Title of Officer] this _____ day of _____, 20__.

[NAME OF OWNER]

By: _____

Name: [Name of Officer]

Title: [Title of Officer]

Personally appeared before me the above-named [Name of Officer], known or proved to me to be the same person who executed the foregoing instrument and to be the [Title of Officer] of the Owner, and acknowledged to me that he/she executed the same as his/her free act and deed and the free act and deed of the Owner.

Subscribed and sworn before me this _____ day of _____, 20____.

NOTARY PUBLIC

COUNTY OF

STATE OF

My commission expires the _____ day of _____, 20____.