**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

DEUTSCHE BANK NATIONAL TRUST
COMPANY, solely in its capacity as
Trustee for MORGAN STANLEY
STRUCTURED TRUST I 2007-1,

                    Plaintiff,

      v.

MORGAN STANLEY MORTGAGE
CAPITAL HOLDINGS LLC, as
Successor-by-Merger to MORGAN
STANLEY MORTGAGE CAPITAL INC.,

                  Defendant.

14-CV-3020(LTS)(AJP)

---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Steven F. Molo
Justin M. Ellis
MOLOLAMKEN LLP
540 Madison Avenue
New York, N.Y. 10022
(212) 607-8160 (telephone)
(212) 607-8161 (facsimile)

Justin V. Shur
MOLOLAMKEN LLP
The Watergate, Suite 660
600 New Hampshire Ave., NW
Washington, D.C. 20037
(202) 556-2000 (telephone)
(202) 556-2001 (facsimile)

*Attorneys for Plaintiff Deutsche
Bank National Trust Company,
as Trustee for Morgan Stanley
Structured Trust 2007-1*

September 5, 2014

**TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND .......................................................................................... 3

I.      Creation of the Trust ......................................................................................... 3

II.     Morgan Stanley Capital's Obligations ............................................................. 4

III.    Morgan Stanley Capital Breaches Its Obligations .......................................... 6

ARGUMENT .................................................................................................................. 7

I.      Standard of Review ........................................................................................... 7

II.     The Complaint Adequately Identifies Breaching Loans .................................. 8

III.    The Complaint Properly Seeks Repurchase of Accredited Loans ................... 9

        A.      Morgan Stanley Capital Must Purchase Breaching Accredited Loans
                When Accredited Fails To Do So ........................................................ 10

        B.      The Trustee Adequately Alleged Breaches of Accredited's
                Representations and Warranties ........................................................... 11

        C.      The Notice on the Accredited Loans Was Timely ............................... 12

IV.     The Complaint Properly Seeks Repurchase of All Breaching Loans ............. 13

        A.      The Complaint Sufficiently Pleads Morgan Stanley Capital's Discovery of
                Pervasive Breaches .............................................................................. 14

        B.      The Breach Notice Provided Adequate Notice of All Breaching Loans ............. 16

        C.      The Trustee May Seek Repurchase of All Defective Loans Even Without
                Pre-Suit Discovery or Notice to Morgan Stanley Capital ..................... 18

V.      The Complaint Properly Seeks Damages and Rescission ................................ 20

        A.      The Sole-Remedies Provision Is Unenforceable ................................. 21

        B.      The Sole-Remedies Provision Does Not Apply to Breaches of Morgan
                Stanley Capital's Repurchase or Notice Obligations ........................... 22

        C.      The Sole-Remedies Provision Does Not Preclude the Court from
                Awarding Damages Necessary to Make the Trust Whole .................... 23

VI.      The Implied Covenant Claim Is Proper ........................................................................... 24

CONCLUSION ....................................................................................................................... 24

# TABLE OF AUTHORITIES

Page(s)

## CASES

*511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 773 N.E.2d 496 (N.Y. 2002) .....................24

*Ace Sec. Corp. Home Equity Loan Trust Series 2008-ASAP2 v. DB Structured Prods., Inc.*, No. 651936/2013, Dkt. 27 (N.Y. Sup. Ct. N.Y. Cnty. Aug. 29, 2014) ........................................................................................................................15, 20

*Ace Sec. Corp. Home Equity Loan Trust, Series 2006-HE4 v. DB Structured Prods.*, No. 653394/2012, Dkt. 28 (N.Y. Sup. Ct. N.Y. Cnty. Apr. 4, 2014) .........................23

*Ace Sec. Corp. Home Equity Loan Trust, Series 2007-HE3 ex rel. HSBC Bank USA, Nat'l Ass'n v. DB Structured Prods., Inc.*, No. 13 Civ. 1869, 2014 WL 1116758 (S.D.N.Y. Mar. 20, 2014) .........................................................8, 15, 16, 23

*ACE Sec. Corp. v. DB Structured Prods., Inc.*, 112 A.D.3d 552 (1st Dep't 2013) ......................................................................................................3

*ACE Sec. Corp. v. DB Structured Prods., Inc.*, 977 N.Y.S.2d 229 (1st Dep't 2013) ...................19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................7

*Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*, No. 11 Civ. 2375, 2011 WL 5335566 (S.D.N.Y. Oct. 31, 2011) ........................................................23

*Assured Guar. Mun. Corp. v. Flagstar Bank FSB*, 920 F. Supp. 2d 475 (S.D.N.Y. 2013) ........................................................................................17

*Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42 (2d Cir. 2012) ....................................................................................................7

*Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 347 F. Supp. 2d 1 (S.D.N.Y. 2004) ........................24

*Bear Stearns Mortg. Funding Trust 2007-AR2 v. EMC Mortg. LLC*, No. 6861-CS, 2013 WL 164098 (Del. Ch. Jan. 15, 2013) ..............................................................3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..........................................................7

*Comfort Inn Oceanside v. Hertz Corp.*, No. 11-1534, 2011 WL 5238658 (E.D.N.Y. Nov. 1, 2011) .............................................................................7

*Deutsche Alt-A Sec. Mortg. Loan Trust, Series 2006-OA1 v. DB Structured Prods., Inc.*, 958 F. Supp. 2d 488 (S.D.N.Y. 2013) ............................................................ *passim*

*Deutsche Bank Nat'l Trust Co. v. Decision One Mortg. Co., LLC*,
   No. 2013 L 005823, 2013 WL 6284438 (Ill. Cir. Ct. Nov. 19, 2013) ..................15, 21, 22, 23

*Deutsche Bank Nat'l Trust Co. v. WMC Mortg., LLC*, No. 12-cv-00933,
   2014 WL 1289234 (D. Conn. Mar. 31, 2014) .........................................................................15

*Empire One Telecomms., Inc. v. Verizon N.Y., Inc.*, 888 N.Y.S.2d 714
   (N.Y. Sup. Ct. Kings Cnty. 2009).........................................................................................21

*Fantozzi v. Axsys Techs., Inc.*, No. 07 Civ. 2667, 2008 WL 4866054
   (S.D.N.Y. Nov. 6, 2008) .......................................................................................................24

*Galli v. Metz*, 973 F.2d 145 (2d Cir. 1992)..................................................................................11

*Garza v. Marine Transp.*, 861 F.2d 23 (2d Cir. 1988)..................................................................11

*Gold Connection Disc. Jewelers, Inc. v. Am. Dist. Tel. Co.*, 212 A.D.2d 577
   (2d Dep't 1995)......................................................................................................................21

*Gorman v. Consol. Edison Corp.*, 488 F.3d 586 (2d Cir. 2008)...................................................11

*Graham v. James*, 144 F.3d 229 (2d Cir. 1998) .........................................................................19

*Home Equity Mortg. Trust Series 2006-5 v. DLJ Mortgage Capital, Inc.*, No.
   653787/2012, Dkt. 119 (N.Y. Sup. Ct. N.Y. Cnty. Jan. 27, 2014) .............................18, 20, 22

*Home Equity Mortg. Trust Series 2006-1 v. DLJ Mortgage Capital, Inc.*, No.
   156016/2012, Dkt. 262 (N.Y. Sup. Ct. N.Y. Cnty. Jan. 10, 2014) ...................................20, 22

*In re Howard's Exp., Inc.*, 151 F. App'x 46 (2d Cir. 2005) .........................................................13

*La Salle Bank Nat'l Ass'n v. CIBC, Inc.*, No. 08 Civ 8426, 2012 WL 112208
   (S.D.N.Y. Jan. 12, 2012).......................................................................................................22

*LaSalle Bank N.A. v. Lehman Bros. Holdings, Inc.*, 237 F. Supp. 2d 618
   (D. Md. 2002) ...................................................................................................................22, 24

*LaSalle Bank Nat'l Ass'n v. Citicorp Real Estate, Inc.*, No. 02-7868,
   2003 WL 21671812 (S.D.N.Y. July 16, 2003) .......................................................................19

*LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 72 A.D.3d 409
   (1st Dep't 2010) .....................................................................................................................19

*Lehman Bros. Holdings, Inc. v. PMC Bancorp*, No. LA CV10–07207,
   2013 WL 1095458 (C.D. Cal. Mar. 8, 2013).........................................................................22

*MASTR Asset Backed Sec. Trust 2006-HE3 ex rel. U.S. Bank N.A. v. WMC Mortg.
   Corp.*, No. 11-2542, 2013 WL 5596419 (D. Minn. Oct. 11, 2013)..................................21, 23

*MASTR Asset Backed Sec. Trust 2006-HE3 ex rel. U.S. Bank Nat'l Ass'n v. WMC Mortg. Corp.*, 843 F. Supp. 2d 996 (D. Minn. 2012)...................................................3

*MASTR Adjustable Rate Mortgs. Trust 2006-OA2 v. UBS Real Estate Sec. Inc.*, No. 12 Civ. 7322, 2013 WL 4399210 (S.D.N.Y. Aug. 15, 2013) .........................................3, 8

*MBIA Ins. Corp. v. Credit Suisse Sec. (USA) LLC*, 32 Misc. 3d 758 (N.Y. Sup. Ct. N.Y. Cnty. 2011) .............................................................9

*Morgan Guar. Trust Co. v. Bay View Franchise Mortg. Acceptance Co.*. No. 00 Civ. 8613, 2002 WL 818082 (S.D.N.Y. Apr. 30, 2002)...........................................22

*Morgan Stanley Mortg. Loan Trust 2006-14SL v. Morgan Stanley Mortg. Capital Holdings LLC*, No. 652763/2012, 2013 WL 4488367 (N.Y. Sup. Ct. N.Y. Cnty. Aug. 16, 2013).................................................... *passim*

*N.J. Carpenters Vacation Fund v. Royal Bank of Scotland Grp.*, 720 F. Supp. 2d 254 (S.D.N.Y. 2010)...........................................................20

*Nomura Asset Acceptance Corp. Alt. Loan Trust 2006-S4 v. Nomura Credit & Capital Inc.*, No. 653390/2012, 2014 WL 2890341 (N.Y. Sup. Ct. N.Y. Cnty. Jun. 26, 2014) ...........................................16

*Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 660 N.E.2d 415 (N.Y. 1995) .........................................................................19

*Orix Real Estate Capital Mkts., LLC v. Superior Bank, FSB*, 127 F. Supp. 2d 981 (N.D. Ill. 2000)...........................................................23

*Residential Funding Co. v. Americash*, No. 13 Civ. 3460, 2014 WL 3577312 (D. Minn. July 21, 2014) ...........................................9

*Sanford v. Brown Bros. Co.*, 134 A.D. 652 (2d Dep't 1909)........................................23

*Soroof Trading Dev. Co. v. GE Fuel Cell Sys., LLC*, 842 F. Supp. 2d 502 (S.D.N.Y. 2012)...........................................................21

*Sure-Snap Corp. v. State St. Bank & Trust Co.*, 948 F.2d 869 (2d Cir. 1991) .............................13

*Torchlight Loan Servs., LLC v. Column Fin. Inc.*, No. 11 Civ. 7246, 2012 WL 3065929 (S.D.N.Y. Jul. 25, 2012) ...........................................9

*Trust for Certificate Holders of Merrill Lynch Mortgage Pass-Through Certificates Series 1999-C1 v. Love Funding Corp.*, No. 04-9890, 2005 WL 2582177 (S.D.N.Y. Oct. 11, 2005)...........................................19

*U.S. Bank, N.A. v. Greenpoint Mortg. Funding, Inc.*, No. 600352/09, 2010 WL 841367 (N.Y. Sup. Ct. N.Y. Cnty. Mar. 3, 2010)...........................................3

*U.S. Bank Nat'l Ass'n v. Countrywide Home Loans, Inc.*, No. 652388/2011,
2013 WL 2356295 (N.Y. Sup. Ct. N.Y. Cnty. May 29, 2013)..................................................3

*U.S. Bank Nat'l Ass'n v. Dexia Real Estate Capital Mkts.*, No. 12 Civ. 9412,
2013 WL 2468027 (S.D.N.Y. June 6, 2013) .......................................................3, 18

*U.S. Naval Inst. v. Charter Commc'ns, Inc.*, 875 F.2d 1044 (2d Cir. 1989) ..................................8

*United States v. Winstar Corp.*, 518 U.S. 839 (1996).....................................................20

*Walnut Place LLC v. Countrywide Home Loans, Inc.*, 96 A.D.3d 684
(1st Dep't 2012) ........................................................................................3

*Wells Fargo Bank, N.A. v. LaSalle Bank N.A.*, No. 08-1125, 2011 WL 3739170
(W.D. Okla. Aug. 23, 2011)..........................................................................23

## OTHER AUTHORITIES

C.P.L.R. § 203(f).....................................................................................20

Fed. R. Civ. P. 15(c)(2)(B) ...........................................................................20

## INTRODUCTION

Deutsche Bank National Trust Company, as Trustee of the Morgan Stanley Structured Trust I 2007-1 (the "Trust"), brought this suit to obtain the benefit of the Trust's bargain in a residential mortgage-backed securitization.   Defendant Morgan Stanley Mortgage Capital Holdings LLC ("Morgan Stanley Capital") served as the Sponsor in that securitization.   To close the deal, Morgan Stanley Capital made or stood behind an extensive series of representations and warranties about the loans in the Trust, assuring investors that the loans were of sufficient quality to fund the income stream the deal was supposed to provide.   Morgan Stanley Capital promised to notify the Trustee if those representations and warranties were breached.   And it pledged to make the Trust whole by repurchasing breaching loans.

Despite those guarantees, a preliminary investigation has uncovered that at least 1,620 of the 4,374 loans in the Trust breach the representations and warranties.   In further violation of its contractual obligations, Morgan Stanley Capital failed to notify the Trustee of a single one of those breaches.   And although Morgan Stanley Capital has agreed to repurchase 149 loans, it has refused to honor its obligations to repurchase the remaining 1,471.   Morgan Stanley Capital now seeks to escape liability based on erroneous theories that defy the parties' bargain:

**1.        The Trustee's claims are adequately pled:**   Morgan Stanley Capital's contention that the Complaint's breach allegations are inadequate is meritless.   The Complaint describes the nature of the breaches and their materiality in painstaking detail, providing several examples.   And the breach notice sent to Morgan Stanley Capital – attached as an exhibit to the Complaint – identified all 1,620 noticed loans and the nature of each breach.   That is more than sufficient.

**2.        Morgan Stanley Capital must repurchase defective Accredited loans:**   The parties' agreement expressly requires Morgan Stanley Capital to repurchase materially breaching

loans originated by Accredited Home Lenders if Accredited is unable to do so.  When the Trustee sent the breach notice to Morgan Stanley Capital, Accredited had been bankrupt for over four years, its assets had been distributed, and its legal counsel immediately confirmed that Accredited would not be able to honor its repurchase obligations.  Morgan Stanley Capital is thus obligated to repurchase those loans.

3.     **Morgan Stanley Capital's repurchase obligations are not limited to specifically noticed loans:**  Morgan Stanley Capital argues that it is not answerable for loans that were not included in the breach notice the Trustee sent.  But the Complaint alleges that Morgan Stanley Capital discovered additional breaches, and Morgan Stanley Capital does not and cannot challenge the merits of those allegations at this stage.  As courts have repeatedly held in similar mortgage repurchase cases, a defendant is not entitled to partial dismissal of loans not previously noticed where a plaintiff plausibly alleges that the defendant discovered breaches in additional, non-noticed loans.

4.     **The sole-remedies provision does not bar damages or rescission:**  The sole-remedies provision is unenforceable because of Morgan Stanley Capital's gross negligence.  Besides, that provision applies only to breaches of representations and warranties, not breaches of the repurchase or notice obligations, and it does not preclude the Court from awarding damages consistent with the repurchase obligation.

5.     **The implied covenant claim is proper:**  Finally, the Trustee's claim for breach of the implied covenant of good faith and fair dealing is proper.  The Complaint alleges that Morgan Stanley Capital deposited thousands of defective loans into the Trust, failed to notify the Trustee of any breaches, and then refused to repurchase over 90% of the noticed loans.  The

Trustee is entitled to bring this claim to address that conduct to the extent not covered by express terms of the governing contracts.

The issues in this case are not new.  Courts deciding motions to dismiss in similar litigation have routinely denied them, in whole or in large part.[1]  The few decisions granting such motions have involved grounds – such as statute-of-limitations or standing defects – that Morgan Stanley Capital cannot and does not invoke here.[2]  This case should proceed.

## FACTUAL BACKGROUND

### I.   CREATION OF THE TRUST

The Trust was created by a mortgage-backed securitization deal (the "MSST 2007-1 Deal") in which Morgan Stanley Capital and EMC Mortgage Corporation sold a pool of 4,374 mortgage loans to Bear Stearns Asset Backed Securities I LLC (the "Depositor") through a Mortgage Loan Purchase Agreement ("MLPA").  Compl. ¶¶ 1, 13 & Ex. 1.  The Depositor agreed to deposit the loans into a trust.  *Id.*  The Trustee, the Depositor, and Wells Fargo Bank, N.A. (the master servicer and securities administrator) then entered into a Pooling and Servicing

---

[1]  *See, e.g.*, *Morgan Stanley Mortg. Loan Trust 2006-14SL v. Morgan Stanley Mortg. Capital Holdings LLC*, No. 652763/2012, 2013 WL 4488367 (N.Y. Sup. Ct. N.Y. Cnty. Aug. 16, 2013); *MASTR Adjustable Rate Mortgs. Trust 2006-OA2 v. UBS Real Estate Sec. Inc.*, No. 12 Civ. 7322, 2013 WL 4399210 (S.D.N.Y. Aug. 15, 2013); *Deutsche Alt-A Sec. Mortg. Loan Trust, Series 2006-OA1 v. DB Structured Prods., Inc.*, 958 F. Supp. 2d 488 (S.D.N.Y. 2013); *U.S. Bank Nat'l Ass'n v. Dexia Real Estate Capital Mkts.*, No. 12 Civ. 9412, 2013 WL 2468027 (S.D.N.Y. June 6, 2013); *U.S. Bank Nat'l Ass'n v. Countrywide Home Loans, Inc.*, No. 652388/2011, 2013 WL 2356295 (N.Y. Sup. Ct. N.Y. Cnty. May 29, 2013); *Bear Stearns Mortg. Funding Trust 2007-AR2 v. EMC Mortg. LLC*, No. 6861-CS, 2013 WL 164098 (Del. Ch. Jan. 15, 2013), as revised (Jan. 17, 2013); *MASTR Asset Backed Sec. Trust 2006-HE3 ex rel. U.S. Bank Nat'l Ass'n v. WMC Mortg. Corp.*, 843 F. Supp. 2d 996 (D. Minn. 2012); *U.S. Bank, N.A. v. Greenpoint Mortg. Funding, Inc.*, No. 600352/09, 2010 WL 841367 (N.Y. Sup. Ct. N.Y. Cnty. Mar. 3, 2010).

[2]  *See, e.g.*, *ACE Sec. Corp. v. DB Structured Prods., Inc.*, 112 A.D.3d 552 (1st Dep't 2013) (statute of limitations); *Walnut Place LLC v. Countrywide Home Loans, Inc.*, 96 A.D.3d 684 (1st Dep't 2012) (standing).

Agreement ("PSA") that created the Trust.  Compl. ¶ 15 & Ex. 2.  The loans served as collateral for mortgage-backed securities, known as "certificates," that the Trust issued to investors. Compl. ¶ 10.

## II.    MORGAN STANLEY CAPITAL'S OBLIGATIONS

Certificateholders receive income from the Trust as borrowers repay their loans.  Compl. ¶¶ 10-11.  But prior to purchasing the securities, certificateholders lacked critical information about borrowers' creditworthiness and the value of the mortgaged properties necessary to determine whether borrowers would repay.  *Id.* ¶ 18.  Morgan Stanley Capital, by contrast, was able to conduct a review of the loan seller and loan due diligence, including an underwriting guideline review, before the loans were transferred to the Trust.  *Id.* ¶ 20.

To address that information disparity, Morgan Stanley Capital provided certificateholders with three core guarantees:

*First*, Morgan Stanley Capital made a series of representations and warranties about the loans.  Compl. Ex. 1 § 10(a), (b)(1)-(24).  For all of the loans in the Trust, Morgan Stanley Capital represented that the information contained in the Mortgage Loan Schedule delivered to the Depositor at closing was complete, true, and correct, and that all requirements of federal, state, and local law were met.  *Id.* § 10(a)(1)-(2).  For loans originated by one of eight different originators (the "MSMCH Represented Loans"), Morgan Stanley Capital made additional representations and warranties – for example, that the mortgage and related agreements, to its knowledge, contained no untrue statement or omission of material fact, *id.* § 10(b)(5), and that there was no default or other event that would permit acceleration of the due date of a loan, *id.* § 10(b)(7).  Collectively, the representations and warranties assured certificateholders that the loans were free from fraud, error, or negligence and that they complied with established underwriting standards.  Compl. ¶ 21.

4

**Second**, Morgan Stanley Capital agreed to provide "prompt written notice" of a breach upon "discovery."  Compl. Ex. 1 § 10.  That duty applies regardless of whether the Trustee is aware of the breach.  *Id.*  It also applies whether or not the breaching loan is in default.  *Id.*

**Third**, Morgan Stanley Capital agreed that, if a loan materially breached one of the representations and warranties it had made, Morgan Stanley Capital would "cure such breach in all material respects" or "purchase the affected Mortgage Loan at the applicable Purchase Price." Compl. Ex. 1 § 10.[3]  The Purchase Price, in turn, is defined to include "the principal remaining unpaid on such Mortgage Loan as of the date of purchase (including **if a foreclosure has already occurred, the principal balance of the related Mortgage Loan at the time the Mortgaged Property was acquired**)."  *Id.* at 5 (emphasis added).  As that definition makes clear, Morgan Stanley Capital is required to make the Trust whole for breaches even when defective loans have been liquidated as a result of foreclosure.  *Id.* ¶ 41.

Under the MLPA, Morgan Stanley Capital must cure or repurchase a defective loan "within 90 days from the **date of discovery** by [Morgan Stanley Capital], or **the date [Morgan Stanley Capital] is notified** by the party discovering or receiving notice of such breach **(whichever occurs earlier)**."  Compl. Ex. 1 § 10 (emphasis added).  Thus, if Morgan Stanley Capital discovers breaches of the representations and warranties it made, it must cure or repurchase the defective loans even if it **never** receives separate notice from the Trustee.  Indeed, given Morgan Stanley Capital's superior knowledge of the loans it sponsored and the due diligence it performed, *see* Compl. ¶ 61, Morgan Stanley Capital was in a far better position to discover such breaches than a certificateholder or the Trustee.

---

[3] Morgan Stanley Capital previously had the option, in lieu of cure or repurchase, to substitute a replacement loan.  Compl. Ex. 1 § 10.  That option, however, expired two years after the Closing Date.  *Id.*

In addition to those repurchase commitments, Morgan Stanley Capital assumed similar responsibilities for loans in the Trust originated by another entity called Accredited Home Lenders, Inc.  Accredited made its own representations and warranties in an Assignment and Recognition Agreement that largely track those Morgan Stanley Capital made in the MLPA. Compl. Ex. 1 at Ex. 8; Ellis Decl. Ex. 1.[4]   But because Accredited was in financial distress at the time, *cf.* Compl. ¶ 48, Morgan Stanley Capital stood behind Accredited's representations and warranties by agreeing to repurchase breaching loans if Accredited failed to do so.  Specifically, the MLPA provides that, "[i]n the case of any such breach of a representation or warranty set forth in this Section 10 made by Accredited with respect to an Accredited Mortgage Loan, in the event Accredited fails to cure, substitute or repurchase an Accredited Mortgage Loan within the period specified in the Accredited Assignment, Assumption and Recognition Agreement, [Morgan Stanley Capital] will cure, substitute or repurchase such Accredited Mortgage Loan in accordance with the terms of the foregoing paragraph."  Compl. Ex. 1 § 10.

## III.   MORGAN STANLEY CAPITAL BREACHES ITS OBLIGATIONS

As it turned out, the Trust was rife with loans that breached Morgan Stanley Capital's and Accredited's representations and warranties.  On April 4, 2013, the Trustee sent a letter to Morgan Stanley Capital enclosing an April 2, 2013 breach notice from a certificateholder informing Morgan Stanley Capital of material breaches in 1,620 loans.  Compl. ¶ 47 & Ex. 3. That breach notice provided extensive information about the representations and warranties that were breached and the nature of the breaches.  Compl. Ex. 3 at Ex. A.  It enclosed a CD with schedules itemizing the breaches for each individual loan.  *Id.* at 1.  And it put Morgan Stanley Capital on notice of other potential breaches throughout the rest of the loan pool.  *See id.* at 2

---

[4] References to "Ellis Decl." are to the Declaration of Justin Ellis, filed herewith.

("[T]his repurchase request reflects only current findings.  We will continue to review the loan files of additional mortgage loans . . . .").  The Trustee demanded that Morgan Stanley Capital cure or repurchase the breaching loans.  Compl. Ex. 3 at 2.

Of the 1,620 defective loans identified in the breach notice, approximately 300 were Accredited loans.  Compl. ¶ 48.  But by then, Accredited had declared bankruptcy.  *Id.* Accredited thus refused to repurchase any loans, noting that the bankruptcy claim deadline had expired over three years earlier and that, "[p]ursuant to . . . orders of the Bankruptcy Court, Accredited has distributed all of its assets, the corporation has been dissolved, and its bankruptcy case has been closed."  Compl. Ex. 4 at 9.

Morgan Stanley Capital subsequently repurchased 149 loans.  Compl. ¶ 67.  But it has refused to repurchase the remaining 1,471.  *Id.*  On April 28, 2014, the Trustee brought this action on behalf of the Trust.  Dkt. 1.

<u>**ARGUMENT**</u>

I.      **STANDARD OF REVIEW**

A complaint need only contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[R]elatively simple allegations will suffice to plead a breach of contract claim even post-*Twombly* and *Iqbal*."  *Comfort Inn Oceanside v. Hertz Corp.*, No. 11-1534, 2011 WL 5238658, at *7 (E.D.N.Y. Nov. 1, 2011).  And " 'if a contract is ambiguous as applied to a particular set of facts, a court has insufficient data to dismiss a complaint for failure to state [a] claim.'"  *Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 56 (2d Cir. 2012).  "The meaning of a contract term that is susceptible to at least two reasonable interpretations is generally an issue of fact, requiring

the trier of fact to determine the parties' intent," which "may be proven by extrinsic evidence." *U.S. Naval Inst. v. Charter Commc'ns, Inc.*, 875 F.2d 1044, 1048 (2d Cir. 1989).

## II.    THE COMPLAINT ADEQUATELY IDENTIFIES BREACHING LOANS

Morgan Stanley Capital argues that, even as to the MSMCH Represented Loans for which it received loan-specific notice, the Complaint is inadequate because it "describes only eighteen allegedly defective Mortgage Loans in any detail."  MSC Mem. at 15.  That argument is meritless.  The breach notice sent to Morgan Stanley Capital – which was attached as an exhibit to the Complaint – enclosed a CD that identified each of the 1,620 defective loans and the nature of each breach.  Compl. ¶ 47 & Ex. 3.  And the Complaint describes the loan review findings in exhaustive detail, setting forth the most common types of breaches and explaining why they were material.  *Id.* ¶¶ 52-59.

Courts have repeatedly held such allegations sufficient to satisfy the notice pleading standard.  *See, e.g.*, *Ace Sec. Corp. Home Equity Loan Trust, Series 2007-HE3 ex rel. HSBC Bank USA, Nat'l Ass'n v. DB Structured Prods., Inc.*, No. 13 Civ. 1869, 2014 WL 1116758, at *13 (S.D.N.Y. Mar. 20, 2014) (collecting cases for the proposition that "a complaint for repurchase need not contain specific allegations regarding each loan at issue"); *MASTR Adjustable Rate Mortgs. Trust 2006-OA2 v. UBS Real Estate Sec., Inc.*, No. 12 Civ. 7322, 2013 WL 4399210, at *5 (S.D.N.Y. Aug. 15, 2013) (complaint "comfortably m[et] the pleading standard by pointing to the repurchase provision in the PSAs and by alleging the results of [the plaintiff's] loan review, written notices to [responsible parties]," and "losses incurred").[5]

---

[5] New York state courts have reached similar conclusions.  *See Morgan Stanley Mortg. Loan Trust 2006-14SL v. Morgan Stanley Mortg. Capital Holdings, LLC*, No. 652763/2012, 2013 WL 4488367, at *3-4 (N.Y. Sup. Ct. N.Y. Cnty. Aug. 16, 2013) (complaint adequately alleged "the existence of several contracts," the "breach of those contracts through [the defendant's] failure to repurchase allegedly defective loans," and damages); *MBIA Ins. Corp. v. Credit Suisse*

Morgan Stanley Capital appears to argue that the Complaint must set forth *every* individual breach for each of the 1,620 noticed loans.  But Morgan Stanley Capital cites no authority for that requirement, which is far more than the notice pleading standard requires.  *See Residential Funding Co. v. Americash*, No. 13 Civ. 3460, 2014 WL 3577312, *3 (D. Minn. July 21, 2014) (refusing to dismiss complaint because it "fail[ed] to enumerate each allegedly defective loan").  The Complaint satisfies the notice pleading standard because it sufficiently alerted Morgan Stanley Capital that the breaches listed in the breach notice are at issue in this case.[6]

## III.    THE COMPLAINT PROPERLY SEEKS REPURCHASE OF ACCREDITED LOANS

Morgan Stanley Capital next advances several reasons why it is not obligated to repurchase any Accredited loans.  Those arguments only apply to the Accredited loans, and would not warrant dismissal of the entire action even if the Court accepts them.  In any event, Morgan Stanley Capital's arguments all fail.

---

*Sec.(USA) LLC*, 32 Misc. 3d 758, 778  (N.Y. Sup. Ct. N.Y. Cnty. 2011), *reconsideration granted on other grounds,* 33 Misc. 3d 1208(A) (N.Y. Sup. Ct. 2011), *rev'd on other grounds,* 102 A.D.3d 488 (1st Dep't 2013) (even though plaintiff "may ultimately be required to itemize the breaches constituting its contract claims," pleadings need only recount "the existence of a valid agreement," that defendants "breached particular provisions," that the plaintiff "conducted a review," and damages).

[6] The lone case on which Morgan Stanley Capital relies – *Torchlight Loan Servs., LLC v. Column Fin. Inc.*, No. 11 Civ. 7246, 2012 WL 3065929 (S.D.N.Y. Jul. 25, 2012) – does not support its position.  In *Torchlight*, the plaintiff alleged breaches of seven different representations and warranties with respect to a single loan.  *Id.* at *1-2.  The Court denied the defendant's motion to dismiss with respect to most of those representations and warranties.  But in the portion of the opinion cited by Morgan Stanley Capital, it held that one claim was inadequately pled because the Complaint "recite[d]" a representation and warranty and "later quote[d] a portion of it," but contained "no allegations" concerning noncompliance.  *Id.* at *9. The Complaint here, by contrast, contains extensive allegations about Morgan Stanley Capital's breaches.  *See* Compl. ¶¶ 52-59 & Ex. 3.

### A.       Morgan Stanley Capital Must Purchase Breaching Accredited Loans When Accredited Fails To Do So

Morgan Stanley Capital first argues that it never has any obligation to repurchase Accredited loans because the relevant MLPA provision refers only to breaches of Accredited's representations and warranties "set forth in this Section 10," and Section 10 does not in fact set forth any representations and warranties by Accredited.  MSC Mem. at 16.  That argument rests on an implausible construction of the contract.

Section 10 of the MLPA provides in relevant part:

> With respect to any Accredited Mortgage Loan, reference is made to the Accredited Assignment, Assumption and Recognition Agreement attached hereto as Exhibit 8.  In the case of any such breach of a representation or warranty set forth in this Section 10 made by Accredited with respect to an Accredited Mortgage Loan, in the event Accredited fails to cure, substitute or repurchase an Accredited Mortgage Loan within the period specified in the Accredited Assignment, Assumption and Recognition Agreement, [Morgan Stanley Capital] will cure, substitute or repurchase such Accredited Mortgage Loan in accordance with the terms of the foregoing paragraph.

Compl. Ex. A § 10.  The first sentence of that paragraph thus expressly incorporates by reference Accredited's own representations and warranties set forth in Exhibit 8 to the MLPA.  And the second sentence's reference to "a representation or warranty set forth in this Section 10 made by Accredited" is obviously a reference to those Accredited representations and warranties that were just incorporated by reference in the immediately preceding sentence.

Morgan Stanley Capital's contrary construction makes no sense.  On that interpretation, Morgan Stanley Capital never has any obligation to repurchase *any* Accredited loans because Accredited's representations and warranties are merely incorporated by reference in Section 10 of the MLPA rather than being set out there expressly.  That interpretation renders this paragraph of Section 10 a complete nullity:  There is no reason to set out a mechanism by which Morgan Stanley Capital must repurchase Accredited loans if that mechanism can never be invoked.

10

Morgan Stanley Capital's interpretation thus violates the bedrock principle of contract interpretation that contracts should not be interpreted to render provisions superfluous. *See Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992) ("Under New York law an interpretation of a contract that has 'the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible.'" (quoting *Garza v. Marine Transp. Lines, Inc.*, 861 F.2d 23, 27 (2d Cir. 1988))).

### B.    The Trustee Adequately Alleged Breaches of Accredited's Representations and Warranties

Morgan Stanley Capital also insists that, even if it is required to repurchase breaching Accredited loans, the Complaint and breach notice did not sufficiently allege that any Accredited representations and warranties were breached.  MSC Mem. at 16-17.  But the Complaint specifically alleges that "[o]f the 1,620 Defective Mortgage Loans" itemized in detail in the breach notice, "approximately 300 were Loans originated by Accredited."  Compl. ¶ 48.  And it references Morgan Stanley Capital's obligation to repurchase loans containing "any breach of a ***representation and warranty made by Accredited*** that materially and adversely affects the value of the Loan."  *Id.* ¶ 33 (emphasis added).  The only fair reading of those allegations is that the approximately 300 noticed loans originated by Accredited breached representations and warranties made by Accredited, that Accredited failed to repurchase them, and that Morgan Stanley Capital now must do so.  *See Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 591-92 (2d Cir. 2007) (on a motion to dismiss a complaint under Rule 12(b)(6), court must "draw all reasonable inferences in favor of the non-moving party").[7]

---

[7] Morgan Stanley Capital seems to be complaining that the Complaint and breach notice focus on provisions of Morgan Stanley Capital's representations and warranties in the MLPA rather than the corresponding provisions of Accredited's representations and warranties in the Assignment, Assumption and Recognition Agreement.  *See, e.g.*, Compl. ¶¶ 51-59 & Ex. 3.  But the breach

### C.      The Notice on the Accredited Loans Was Timely

Morgan Stanley Capital finally asserts that, even if it was adequately notified of Accredited's beaches, the claims are time-barred because the Trustee did not give it sufficient time to repurchase those loans.  MSC Mem. 17-19.  Morgan Stanley Capital does not deny that the Trustee sent the breach notice containing the Accredited loans at least 90 days before the statute of limitations expired.  Nonetheless, it argues that it is also entitled to a ***second*** 90-day cure period after the first 90-day cure period expires, and that this second 90-day period had not run by the time the Trustee filed the Complaint.

That argument rests on a misreading of the contract.  Section 10 of the MLPA provides that "in the event Accredited fails to cure, substitute or repurchase an Accredited Mortgage Loan within the period specified in the Accredited Assignment, Assumption and Recognition Agreement, [Morgan Stanley Capital] will cure, substitute or repurchase such Accredited Mortgage Loan ***in accordance with the terms of the foregoing paragraph***."  Compl. Ex. A § 10 (emphasis added).  The "foregoing paragraph" requires Morgan Stanley Capital to repurchase the loan "within 90 days from the date of discovery [of the breach] by [Morgan Stanley Capital], or the date [Morgan Stanley Capital] is notified by the party discovering or receiving notice of such breach (whichever occurs earlier)."  *Id.*   Thus, under the plain terms of the contract, Morgan Stanley Capital's 90-day cure period runs from the date it learns of Accredited's breach, not the subsequent date it learns of Accredited's failure to repurchase.  Morgan Stanley Capital gets one 90-day cure period, not two.

---

notice and enclosed CD set forth the facts establishing each breach in detail, and given that the two sets of representations and warranties are not meaningfully different, Morgan Stanley Capital cannot seriously claim it was confused or misled about what it was being asked to do or why.  *Compare* Compl. Ex. 1 § 10 *with* Ellis Decl. Ex. 1.  The breach notice was sufficient to put Morgan Stanley Capital on notice of the breaches, and the Complaint was sufficient to put Morgan Stanley Capital on notice of the claims.  This is not grounds for dismissal.

Even if Morgan Stanley Capital's cure period ran from the date it learned of Accredited's failure to repurchase, the claim would still be timely.  This is not a situation where Morgan Stanley Capital could not have known, until the last day of the original 90-day cure period, whether Accredited would fail to repurchase the loans.  At the time Morgan Stanley Capital received the breach notice, Accredited had already been bankrupt for ***more than four years***. Ellis Decl. Ex. 2.[8]  Morgan Stanley Capital was obviously aware of that development: Accredited's bankruptcy petition listed Morgan Stanley Capital as its fourth-largest unsecured creditor.  *Id.*  Morgan Stanley Capital had lent Accredited more than $1 billion to finance its loan origination activities in 2006 alone.  Ellis Decl. Ex. 3 at 21.  Thus, Morgan Stanley Capital knew full well that Accredited would fail to repurchase the breaching loans the day it received the breach notice.  At a minimum, Morgan Stanley Capital's knowledge is a fact question that cannot be resolved at this stage.  *See Deutsche Alt-A Sec. Mortg. Loan Trust, Series 2006-OA1 v. DB Structured Prods., Inc.*, 958 F. Supp. 2d 488, 497 (S.D.N.Y. 2013) ("premature" to decide defendant's knowledge on a motion to dismiss).[9]

## IV.   THE COMPLAINT PROPERLY SEEKS REPURCHASE OF ALL BREACHING LOANS

Morgan Stanley Capital also seeks partial dismissal on the ground that the Trustee did not comply with the MLPA's notice requirement.  Morgan Stanley Capital does not contest that the Trustee provided sufficient notice for the 1,620 loans specifically identified in the breach notice.

---

[8] This Court may take judicial notice of public filings such as Accredited's bankruptcy filing and papers filed with the SEC.  *See Sure-Snap Corp. v. State St. Bank & Trust Co.*, 948 F.2d 869, 872-73 (2d Cir. 1991); *In Re Howard's Exp., Inc.*, 151 F. App'x 46, 48 (2d Cir. 2005).

[9] Even if Morgan Stanley's cure period had not run on the Accredited loans at the time the Complaint was filed, the cure period has certainly ***now*** run, and there is no dispute that Morgan Stanley still has not repurchased any of those breaching loans.  As explained below, the Trustee may pursue repurchase claims for those loans even if the cure period had not expired at the time it filed the Complaint.  *See* pp. 13-20, *infra*.

13

But it claims that the Trustee may not seek any remedies for the remaining 2,754 loans in the Trust.  That argument fails for multiple reasons.

### A.    The Complaint Sufficiently Pleads Morgan Stanley Capital's Discovery of Pervasive Breaches

The scope of the Trustee's breach notices is irrelevant because the Complaint alleges that Morgan Stanley Capital ***discovered*** additional breaches on its own.  The MLPA provides that Morgan Stanley Capital must cure or repurchase breaching loans within "90 days ***from the date of discovery by [Morgan Stanley Capital]***, or the date [Morgan Stanley Capital] is notified by the party discovering or receiving notice of such breach ***(whichever occurs earlier)***."  Compl. Ex. 1 § 10 (emphases added).  Morgan Stanley Capital's own discovery of the breaches precludes dismissal on this ground.

The Complaint sets forth extensive detail about Morgan Stanley Capital's discovery of the breaches.  "[P]rior to acquiring any Loans," it explains, "Morgan Stanley Capital was able to conduct a review of the loan seller as well as conduct Loan due diligence, including an underwriting guideline review."   Compl. ¶ 20; *see also id.* ¶ 61 (quoting statements in the Prospectus Supplement concerning Morgan Stanley Capital's due diligence).  It further alleges that "a reputable mortgage loan due diligence provider provided due diligence to Morgan Stanley Capital, and found that 63,000 loans that Morgan Stanley Capital had sponsored had a rejection rate of 37 percent," but that "Morgan Stanley Capital waived in 56 percent of them."  *Id.* ¶ 62. "If Morgan Stanley Capital performed pre-securitization due diligence on the Loans consistent with representations that it made in the Prospectus Supplement, Morgan Stanley Capital would have discovered material violations of underwriting guidelines that breach its representations and warranties regarding the Mortgage Loans."   *Id.* ¶ 63.   "Indeed, the high rate of breaches identified in the Breach Notice demonstrates that any due diligence conducted on the Loans

14

would necessarily have identified breaches of representations and warranties." *Id.*; *see also id.*
¶¶ 52-59 (identifying specific loans for which breaches were obvious from the loan file itself).

Thus, regardless of whether the Trustee sufficiently ***notified*** Morgan Stanley Capital of
the additional breaches, Morgan Stanley Capital ***discovered*** the breaches on its own.  Those
allegations of independent discovery render moot any dispute over the scope of the breach
notices.  *See Ace Sec. Corp. Home Equity Loan Trust, Series 2007-HE3*, 2014 WL 1116758, at
*14 ("[B]ased on Plaintiff's discovery allegations, the adequacy of its breach notices is moot.");
*Deutsche Alt-A*, 958 F. Supp. 2d at 497 ("Whether these [additional] loans did, in fact, breach the
RWs and whether DBSP knew, or should have known, of these breaches at the time of its
review, is a question of fact.  It would therefore be premature to dismiss Plaintiff's claims as to
loans which are not the subject of any Breach Notices at this stage."); *Deutsche Bank Nat'l Trust
Co. v. WMC Mortg., LLC*, No. 12-cv-00933, 2014 WL 1289234, at *11 (D. Conn. Mar. 31,
2014) (quoting *DB Structured Products* and "reach[ing] the same conclusion"); *Ace Sec. Corp.
Home Equity Loan Trust Series 2007-ASAP2 v. DB Structured Prods., Inc.*, No. 651936/2013,
Dkt. 27 at 4 (N.Y. Sup. Ct. N.Y. Cnty. Aug. 28, 2014) (defendant's "own discovery of breaches
of the representations and warranties gave rise to an obligation to repurchase that was
independent of any obligation that would have arisen pursuant to a repurchase demand").

Courts have repeatedly found allegations that a defendant was involved in due diligence
on the loans sufficient to support a plausible allegation of discovery.  *See Ace Sec. Corp. Home
Equity Loan Trust, Series 2007-HE3*, 2014 WL 1116758, at *13 ("Plaintiff's allegations that
DBSP performed due diligence on loan pools rife with defects makes its claims that DBSP
discovered breaches of the representations and warranties more than plausible."); *Deutsche Bank
Nat'l Trust Co. v. Decision One Mortg. Co.*, No. 2013 L 005823, 2013 WL 6284438, at *3-4 (Ill.

Cir. Ct. Nov. 19, 2013) (complaint adequately alleged the defendant's "independent knowledge of the mortgage-loan breaches" because the "'pervasive'" and "'flagrant'" breaches "would have been apparent to an underwriting firm following industry standards"); *Nomura Asset Acceptance Corp. Alt. Loan Trust 2006-S4 v. Nomura Credit & Capital Inc.*, No. 653390/2012, 2014 WL 2890341, at *15 (N.Y. Sup. Ct. N.Y. Cnty. Jun. 26, 2014) (complaint sufficiently alleged that, as a result of due diligence, Nomura "may have had notice of breaches of the Mortgage Representations from the inception of the Trust" (quotation marks omitted)); *Home Equity Mortg. Trust Series 2006-1 v. DLJ Mortg. Capital, Inc.*, No. 156016/2012, 2013 WL 5691995, at *5 (N.Y. Sup. Ct. N.Y. Cnty. Oct. 9, 2013) (allegations that defendant "re-underwr[o]te the loans" sufficient to "specif[y] the process by which [the defendant]'s obligations under the PSA led it to discover the breached representations"); *Home Equity Mortg. Trust Series 2006-5 v. DLJ Mortg. Capital, Inc.*, No. 653787/2002, 2013 WL 5314331, at *5-6 (N.Y. Sup. Ct. N.Y. Cnty. Sept. 18, 2013) (same). Those are precisely the sorts of allegations the Complaint makes here. Compl. ¶¶ 60-63.

To be sure, "[d]iscovery may reveal that [Morgan Stanley Capital] was, in fact, unaware of certain breaches, meaning that its obligation to cure them or repurchase the defective loans would be triggered only upon notice." *Ace Sec. Corp. Home Equity Loan Trust, Series 2007-HE3*, 2014 WL 1116758, at *17. But "whether [Morgan Stanley Capital] knew, or should have known, of these breaches at the time of its review, is a question of fact." *Deutsche Alt-A*, 958 F. Supp. 2d at 497. It is thus "premature to dismiss Plaintiff's claims as to loans which are not the subject of any Breach Notices at this stage." *Id.*

### B.     The Breach Notice Provided Adequate Notice of All Breaching Loans

Even apart from Morgan Stanley Capital's own discovery of the breaches, the breach notice was sufficient to put Morgan Stanley Capital on notice of pervasive breaches throughout

the entire loan pool.  The breach notice specifically identified 1,620 out of the 4,374 loans in the

Trust as defective – an extraordinary breach rate that clearly indicates systemic problems

throughout the broader pool.  Compl. ¶ 1 & Ex. 3.  The notice also made clear that "this

repurchase request reflects only current findings," and that "[w]e will continue to review the loan

files of additional mortgage loans and submit loans for repurchase as additional breaches are

found."  Compl. Ex. 3 at 2.  Given the pervasive nature of the breaches identified and the breach

notice's express admonition that review was ongoing, Morgan Stanley Capital was sufficiently

put on notice of additional defective loans in the Trust.

Courts have held that notice of pervasive breaches is sufficient to satisfy similar notice

provisions.  In *Assured Guaranty Municipal Corp. v. Flagstar Bank FSB*, 920 F. Supp. 2d 475

(S.D.N.Y. 2013), for example, Judge Rakoff held that "by informing Flagstar of pervasive

breaches affecting the charged off loans with its January 2009 repurchase demand, [the plaintiff]

rendered Flagstar constructively aware – or, at a minimum, put Flagstar on inquiry notice – of

the substantial likelihood that these breaches extended beyond the charged off loan population

and into the broader loan portfolio."  *Id.* at 512-13 (quotation marks omitted).  Judge Rakoff

rejected the argument that "knowledge as to a subset of breaches . . . is insufficient to create an

obligation to repurchase any loans not included in that subset."  *Id.*  And he rebuffed the

argument that a party "must be notified as to each loan as to which a material breach is claimed

with sufficient specificity to allow [it] to identify the loan and investigate the alleged breach."

*Id.* at 513.

Indeed, Morgan Stanley Capital already made – and lost – this same argument just last

year.  In *Morgan Stanley Mortgage Loan Trust 2006-14SL v. Morgan Stanley Mortgage Capital

Holdings LLC*, No. 652763/2012, 2013 WL 4488367 (N.Y. Sup. Ct. N.Y. Cnty. Aug. 16, 2013),

17

the court held that a trustee need not provide "specific notice identifying the breaching loans." *Id.* at *3. Observing that the notice provision there did "not mandate any level of details about the loans," the court dismissed the defendant's argument as an improper "attempt to supplement the contractual language." *Id.* It held that breach notices identifying a "sampling of the loan pool," together with allegations "that a loan-level review revealed over 90% of the loans violate some warranty," were sufficient to support a cause of action as to all breaching loans. *Id.*; *see also Home Equity Mortg. Trust Series 2006-5 v. DLJ Mortg. Capital*, No. 653787/2012, Dkt. No. 119 at 10 (N.Y. Sup. Ct. N.Y. Cnty. Jan. 27, 2014) (allowing action to proceed as to "all breaching loans in the Trust" because "the [breach notice] put [the defendant] on notice of 'pervasive' breaches in the loan pool"). Likewise here, the breach notice was sufficient to put Morgan Stanley Capital on notice of pervasive breaches throughout the pool.

### C. The Trustee May Seek Repurchase of All Defective Loans Even Without Pre-Suit Discovery or Notice to Morgan Stanley Capital

Finally, even if Morgan Stanley Capital did not independently discover the additional breaches, and even if the breach notice was not sufficient to put Morgan Stanley Capital on notice of them, the Trustee is still entitled to seek relief for those additional breaches in its Complaint. The Complaint itself is certainly sufficient to put Morgan Stanley Capital on notice of those breaches: It expressly states that "[t]he pool of Loans Morgan Stanley Capital sold to the Trust is replete with material breaches of the representations and warranties concerning the quality of the Loans and the borrowers' creditworthiness." Compl. ¶ 44. "Given the pervasive nature of the breaches," it explains, "Morgan Stanley Capital has received sufficient notice of widespread breaches in the Trust to trigger its repurchase obligation with respect to ***all Defective Mortgage Loans***." *Id.* ¶ 47 (emphasis added); *see also id.* ¶ 78 (alerting Morgan Stanley Capital

that "widespread breaches existed throughout the entire pool of Loans").  Despite that further notice, Morgan Stanley Capital still has not repurchased any of those additional loans.

Morgan Stanley Capital invokes *ACE Securities Corp. v. DB Structured Products, Inc.*, 977 N.Y.S.2d 229 (1st Dep't 2013), for the proposition that the notice requirement is a "condition precedent to filing suit" and that failure to afford the full 90-day notice-and-cure period ***before*** filing the complaint renders the claims a "nullity."  MSC Mem. at 7.  But the New York Court of Appeals has since granted review of that decision.  *See* 2014 WL 2891678 (N.Y. Jun. 26, 2014).  And although *ACE* did state that "[t]he certificate holders' failure to comply with a condition precedent to commencing suit rendered their summons with notice a nullity," the court merely assumed rather than held that the notice requirement was a condition precedent, a point that was not at issue before the court.  977 N.Y.S.2d at 231.  "New York respects a presumption that terms of a contract are covenants rather than conditions."  *Graham v. James*, 144 F.3d 229, 237 (2d Cir. 1998); *see also Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 660 N.E.2d 415, 418 (N.Y. 1995).[10]  Thus, notice in the Complaint is sufficient even as to loans for which the 90-day cure period had not run when the Complaint was filed.

Even if *ACE* had held that notice is a condition precedent – which it did not – that case is readily distinguishable from this one.  In *ACE*, the notice-and-cure period had not expired for ***any*** of the loans at the time the summons with notice was filed.  977 N.Y.S.2d at 231.  That is why the court referred to the filing as a "nullity."  *Id.*  Here, by contrast, there is no serious

---

[10] *See also Trust for Certificate Holders of Merrill Lynch Mortg. Pass-Through Certificates Series 1999-C1 v. Love Funding Corp.*, No. 04-9890, 2005 WL 2582177, at *7 (S.D.N.Y. Oct. 11, 2005) (holding that a similar notice-and-cure provision was an independent obligation rather than a condition precedent because New York law "interpret[s] doubtful language as embodying a promise or constructive condition rather than an express condition" (quotation marks omitted)); *LaSalle Bank Nat'l Ass'n v. Citicorp Real Estate, Inc.*, No. 02-7868, 2003 WL 21671812, at *3 (S.D.N.Y. July 16, 2003) (similar); *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 72 A.D.3d 409 (1st Dep't 2010) (similar).

dispute that any alleged condition precedent was satisfied for the 1,620 specifically noticed loans. The only question is whether the Trustee may now pursue claims for additional loans.

Courts have refused to extend *ACE* to those situations. For example, in *Home Equity Mortgage Trust Series 2006-5 ex rel. U.S. Bank N.A. v. DLJ Mortgage Capital, Inc.*, No. 653787/2012, Dkt. 119 (N.Y. Sup. Ct. N.Y. Cnty. Jan. 27, 2014), the court refused to dismiss the plaintiff's claims where, for some but not all of the loans, the notice-and-cure period had not run by the time the plaintiff filed its summons with notice, but had subsequently run by the time the plaintiff filed its complaint after the limitations period expired. The court noted that the defendant "cites no authority for the proposition that a ripe claim in the operative pleading must be dismissed simply because it may have been unripe at the time a now-superseded summons with notice was filed. There is none." *Id.* at 10-11; *see also Home Mortg. Equity Trust Series 2006-1 et al. v. DLJ Mortgage Capital, Inc.*, No. 156016/2012, Dkt. 262 at 11 (N.Y. Sup. Ct. N.Y. Cnty. Jan. 10, 2014) (same); *Ace Sec. Corp. Home Equity Loan Trust Series 2007-ASAP2*, No. 651936/2013, Dkt. 27 at 3 (allowing claims to go forward even though "repurchase period 'had not elapsed' prior to filing of the summons with notice"). Likewise here, the Trustee should remain free to pursue claims for loans noticed in its Complaint, even if those claims were unripe at the time because the notice-and-cure period had not yet run.[11]

## V.    THE COMPLAINT PROPERLY SEEKS DAMAGES AND RESCISSION

Morgan Stanley Capital also improperly seeks to limit the Trustee's remedies to specific performance of the repurchase obligation rather than damages or rescission. But "damages are always the default remedy for breach of contract." *United States v. Winstar Corp.*, 518 U.S. 839,

---

[11] Similarly, the Trustee should remain free to assert additional breaches and loans in future pleadings. Any such pleadings would relate back to the timely filed Complaint. *See* C.P.L.R. § 203(f); Fed. R. Civ. P. 15(c)(2)(B); *N.J. Carpenters Vacation Fund v. Royal Bank of Scotland Grp.*, 720 F. Supp. 2d 254, 266-67 (S.D.N.Y. 2010).

885 (1996) (plurality opinion).  Rescission is also appropriate on these facts.  *See Decision One*, 2013 WL 6284438, at *5.  Nothing in the MLPA bars the Trustee from pursuing those ordinary contract remedies here.

### A.      The Sole-Remedies Provision Is Unenforceable

First, the sole-remedies provision is unenforceable because of Morgan Stanley Capital's gross negligence.  Contractual limitations of liability "will not preclude recovery in . . . breach of contract where the losses are the result of gross negligence."  *Gold Connection Disc. Jewelers, Inc. v. Am. Dist. Tel. Co.*, 212 A.D.2d 577, 578 (2d Dep't 1995).  That rule applies even where a clause merely limits damages rather than exculpating a defendant entirely.  *See Empire One Telecomms., Inc. v. Verizon N.Y., Inc.*, 888 N.Y.S.2d 714, 723 (N.Y. Sup. Ct. Kings Cnty. 2009); *Soroof Trading Dev. Co. v. GE Fuel Cell Sys., LLC*, 842 F. Supp. 2d 502, 515 (S.D.N.Y. 2012).  Courts thus refuse to enforce sole-remedies provisions where a party was grossly negligent.  *See Deutsche Alt-A*, 958 F. Supp. 2d at 500-02 (clause unenforceable where defendant "willfully knew of material breaches of loans and failed to cure these breaches for more than five years"); *Decision One*, 2013 WL 6284438, at *5 ("[A] sole-remedies clause does not apply in a breach of contract action where the losses are the result of gross negligence."); *MASTR Asset Backed Sec. Trust 2006-HE3 ex rel. U.S. Bank N.A. v. WMC Mortg. Corp.*, No. 11-2542, 2013 WL 5596419, at *7 (D. Minn. Oct. 11, 2013) ("If the Trustee is able to prove facts that demonstrate WMC acted in a grossly negligent or reckless manner, the sole remedies clause would be ineffective.").

That principle applies squarely here.  The Complaint alleges that Morgan Stanley Capital's breaches were "grossly negligent given that, on information and belief, the Loans were made without following minimal underwriting standards or verifying basic and critical information about mortgage borrowers."  Compl. ¶ 45.  That allegation is supported by, among other things, the sheer volume of breaching loans (at least 1,620), *id.* ¶ 3, the percentage of the

21

loans in breach, *id.* ¶¶ 1, 3, and the flagrant nature of many of the breaches, *id.* ¶¶ 52-59.  Courts have repeatedly found comparable allegations sufficient at this stage.  *See, e.g., Decision One*, 2013 WL 6284438, at *5 (allegations "support a claim of gross negligence or willful misconduct"); *Deutsche Alt-A*, 958 F. Supp. 2d at 501-02 (similar).

### B.   The Sole-Remedies Provision Does Not Apply to Breaches of Morgan Stanley Capital's Repurchase or Notice Obligations

Even if the sole-remedies clause is enforceable, it applies only to claims "respecting a breach of representations or warranties."  Compl. Ex. 1 § 10.  Morgan Stanley Capital, however, also breached its separate notice obligation, Compl. ¶¶ 60-66, and its separate repurchase obligation, *id.* ¶¶ 67-69.  The sole-remedies provision does not apply to those separate breaches.

Even after *ACE*, New York courts have recognized that similarly worded sole-remedies clauses do not bar claims for breaches of those separate obligations.  In *Home Equity Mortgage Trust Series 2006-1 v. DLJ Mortgage Capital, Inc.*, No. 156016/2012 (N.Y. Sup. Ct. N.Y. Cnty. Jan. 10, 2014), Justice Schweitzer ruled: "[W]hile the PSAs clearly provide that the sole remedy for ***breach of a R&W*** . . . is the repurchase or cure of defective Loans, this does not preclude the Trusts from recovering damages for DLJ's ***breach of its cure or repurchase obligation***."  Dkt. 262 at 16.  "This obligation is independent and unqualified."  *Id.* at 17; *see also Home Equity Mortg. Trust Series 2006-5*, No. 653787/2012, Dkt. No. 119 at 15-16.[12]

Morgan Stanley Capital urges that the sole-remedies provision applies to any claim "respecting" a breach of representations and warranties, and asserts that a claim for failure to

---

[12] *See also LaSalle Bank N.A. v. Lehman Bros. Holdings, Inc.*, 237 F. Supp. 2d 618, 638 (D. Md. 2002); *Morgan Guar. Trust Co. v. Bay View Franchise Mortg. Acceptance Co.*, No. 00 Civ. 8613, 2002 WL 818082, at *12 (S.D.N.Y. Apr. 30, 2002); *Lehman Bros. Holdings, Inc. v. PMC Bancorp*, No. LA CV10–07207, 2013 WL 1095458, at *4 (C.D. Cal. Mar. 8, 2013); *La Salle Bank Nat'l Ass'n v. CIBC, Inc.*, No. 08 Civ. 8426, 2012 WL 112208, at *2 (S.D.N.Y. Jan. 12, 2012).

notify or repurchase is a claim "respecting" such a breach.  MSC Mem. 14-15.  But a provision stating that a remedy is the sole remedy "respecting" a particular type of breach means, plain and simple, that the remedy is exclusive *for that type of breach*.  *See MASTR Asset Backed Sec. Trust 2006-HE3*, 2013 WL 5596419, at *6 ("[T]he Trustee's failure to notify claim is not a claim 'respecting a breach' of the representations and warranties.").  At a minimum, the provision is ambiguous, and a "contract should not be construed as providing an exclusive remedy for any breach of it, unless the language is plain and unmistakable."  *Sanford v. Brown Bros. Co.*, 134 A.D. 652, 656 (2d Dep't 1909).

### C.    The Sole-Remedies Provision Does Not Preclude the Court from Awarding Damages Necessary to Make the Trust Whole

Finally, as courts have repeatedly held, the sole-remedies provision does not preclude an award of damages necessary to make the Trust whole, consistent with the repurchase remedy. "There is no practical difference between th[e] 'repurchase' remedy and compensatory damages."  *Orix Real Estate Capital Mkts., LLC v. Superior Bank, FSB*, 127 F. Supp. 2d 981, 983 (N.D. Ill. 2000).  "[W]hether the Trustee's remedy is characterized as 'compensatory damages,' 'rescissory damages,' or 'specific performance' . . . has little practical significance." *Deutsche Alt-A*, 958 F. Supp. 2d at 501.  Thus, "courts have been willing – in the face of sole remedy provisions . . .  – to award money damages equivalent to what the defendant would pay were performance possible."  *Ace Sec. Corp. Home Equity Loan Trust, Series 2007-HE3*, 2014 WL 1116758, at *8.[13]

---

[13] *See also Ace Sec. Corp. Home Equity Loan Trust, Series 2006-HE4 v. DB Structured Prods.*, No. 653394/2012, Dkt. 28 at 9 (N.Y. Sup. Ct. N.Y. Cnty. Apr. 4, 2014) (defendant "can be compelled to either specifically perform its obligation to repurchase . . . or to pay damages equivalent"); *Morgan Stanley Mortg.*, 2013 WL 4488367, at *4-6; *Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*, No. 11 Civ. 2375, 2011 WL 5335566, at *7-8 (S.D.N.Y. Oct. 31, 2011); *Decision One*, 2013 WL 6284438, at *5; *Wells Fargo Bank, N.A. v. LaSalle Bank N.A.*, No. 08-

## VI.    THE IMPLIED COVENANT CLAIM IS PROPER

Finally, the Complaint properly states a claim for breach of the implied covenant of good faith and fair dealing.  "In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance."  *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 773 N.E.2d 496, 500 (N.Y. 2002).  "This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  *Id.* (quotation marks omitted).  By "depositing large numbers of Defective Mortgage Loans into the Trust," "keeping silent about the defects," and failing to "voluntarily cure or repurchase over 90% of the Loans," Morgan Stanley Capital deprived the Trustee of the fruits of its bargain and breached that implied covenant.  Compl. ¶¶ 109-110.

Morgan Stanley Capital insists that this claim is duplicative of the contract claim.  MSC Mem. at 19.  But a "claim for breach of contract does not preclude a party from bringing a claim for breach of the implied covenant of good faith and fair dealing when they are brought ***in the alternative***."  *Fantozzi v. Axsys Techs., Inc.*, No. 07 Civ. 2667, 2008 WL 4866054, at *7-8 (S.D.N.Y. Nov. 6, 2008) (emphasis added); *see also Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 347 F. Supp. 2d 1, 4 (S.D.N.Y. 2004).  That is what the Trustee is doing here.

## CONCLUSION

Morgan Stanley Capital's motion to dismiss should be denied in its entirety.[14]

---

1125, 2011 WL 3739170, at *2-3 (W.D. Okla. Aug. 23, 2011); *Lehman Bros. Holdings, Inc.*, 237 F. Supp. 2d at 638.

[14] The Trustee requests leave to amend its Complaint if Morgan Stanley Capital's motion is granted.

September  5, 2014                                   Respectfully Submitted,


                                                    /s/ Steven F. Molo
                                                    Steven F. Molo
                                                    Justin M. Ellis
                                                    MOLOLAMKEN LLP
                                                    540 Madison Avenue
                                                    New York, N.Y.  10022
                                                    (212) 607-8160 (telephone)
                                                    (212) 607-8161 (facsimile)

                                                    Justin V. Shur
                                                    MOLOLAMKEN LLP
                                                    The Watergate, Suite 600
                                                    600 New Hampshire Ave., NW
                                                    Washington, D.C.  20037
                                                    (202) 556-2000 (telephone)
                                                    (202) 556-2001 (facsimile)

                                                    *Attorneys for Plaintiff Deutsche
                                                    Bank National Trust Company,
                                                    as Trustee for Morgan Stanley
                                                    Structured Trust 2007-1*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 5, 2014, I electronically filed the foregoing Plaintiff's

Memorandum of Law in Opposition to Defendant's Motion to Dismiss using the CM/ECF

system, which sent a notice of electronic filing to all ECF registered participants.

<u>/s/ Steven F. Molo</u>
Steven F. Molo
MOLOLAMKEN LLP
540 Madison Avenue
New York, N.Y.  10022
(212) 607-8160 (telephone)
(212) 607-8161 (facsimile)

*Attorneys for Plaintiff Deutsche*
*Bank National Trust Company,*
*as Trustee for Morgan Stanley*
*Structured Trust 2007-1*