UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

DEUTSCHE BANK NATIONAL TRUST CO.,

       Plaintiff,

  -v-                                                             No.  14CV3020-LTS-AJP

MORGAN STANLEY MORTGAGE CAPITAL
HOLDINGS LLC,

       Defendant.

-------------------------------------------------------x

### MEMORANDUM OPINION AND ORDER

Plaintiff Deutsche Bank National Trust Company ("Trustee" or "Plaintiff"), in its capacity as Trustee for the Morgan Stanley Structured Trust I 2007-1 (the "Trust"), brings this action against Defendant Morgan Stanley Mortgage Capital Holdings LLC ("MSMC" or "Defendant"), asserting claims for breach of contract and breach of the covenant of good faith and fair dealing.  MSMC now moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the complaint for failure to state a claim upon which relief can be granted.  The Court has jurisdiction of this action pursuant to 28 U.S.C § 1332.  The Court has considered the parties' submissions carefully.  For the reasons stated below, the Court grants in part, and denies in part, Defendants' motion.

### BACKGROUND[1]

This action arises from a transaction in which MSMC served as the sponsor of a

---

[1] The facts recited herein are drawn largely from the Complaint in this action. (Docket Entry No. 2.)

residential mortgage-backed securitization. (Compl. ¶ 1.) MSMC and EMC Mortgage Corporation sold a pool of 4,374 mortgage loans, with an aggregate principal balance of approximately $735,000,000, to Bear Stearns Asset Backed Securities I LLC, pursuant to the terms of a Mortgage Loan Purchase Agreement ("MLPA"). (Compl. ¶¶ 1, 13 and Ex. 1.) Bear Stearns agreed to deposit the loans into a trust (the "Trust"), for which Plaintiff was to serve as Trustee. (Id. ¶¶ 14-15.) Bear Stearns and Plaintiff, along with Wells Fargo Bank, entered into a Pooling and Servicing Agreement ("PSA") in order to create the Trust. (Id. ¶ 15 and Ex. 2.) Both the MLPA and the PSA had a closing date of July 6, 2007. (Id. ¶ 15.) The loans served as collateral for securities, called certificates, issued by the Trust. (Id. ¶ 10.) Certificates generate cash flow as borrowers make payments on loans in the Trust; thus, the value of the certificates depends largely on the quality of the loans in the pool. (Compl. ¶¶ 10-11.)

    As the sponsor of the securitization, MSMC was obligated to provide certificateholders with an extensive set of representations and warranties attesting to the quality of the loans and creditworthiness of the borrowers. (Id. ¶¶ 19-21; Ex. 1., MLPA § 10.) MSMC also committed itself to bearing the risk should any of the loans fail to meet the minimum quality standards guaranteed in the representations and warranties. (Id. ¶ 23.) The parties to the MLPA agreed that, if any of the loans were found to have breached the representations and warranties, MSMC would be obligated to cure such breaches or repurchase the affected loans in order to make the Trust whole. (Id. ¶¶ 27-28; Ex. 1, MLPA § 10.) A subset of the loans was originated by an entity known as Accredited Home Lenders, Inc. ("Accredited"). (Id. ¶ 33.) According to the Trustee, representations and warranties made by Accredited were incorporated by reference into the MLPA (See MLPA § 10), and MSMC assumed the responsibility of curing or

repurchasing any defective Accredited-originated loans that Accredited fail to cure. (See Compl. ¶ 34; Ex. 1, MPLA § 10.)

The mechanism for remedying a breach of the representations and warranties, referred to as the "repurchase protocol," operated in two steps. First, the party discovering the breach was to provide prompt written notice of the defective loans to the other parties to the transaction. (Compl. ¶ 29; Ex. 1, MLPA § 10.) Receipt of notice by MSMC triggered a 90-day period within which MSMC was obligated to cure or repurchase the defective loans. (Id. ¶¶ 31-32; Ex. 1, MLPA § 10.) Should MSMC fail to cure, the Trustee was empowered by the PSA to enforce MSMC's obligations through legal action. (Id. ¶ 37; Ex. 2, PSA § 2.02(d).)

On April 4, 2013, the Trustee sent a letter to MSMC enclosing an April 2, 2013, breach notice from a certificateholder that identified allegedly material breaches in 1,620 loans. (Compl. ¶ 47; Ex. 3.) Of these loans, approximately 300 had been originated by Accredited.[2] (Id. ¶ 48.) A forensic analysis had allegedly revealed several types of material breaches permeating the loan pool, including, inter alia: income misrepresentation, misrepresentation of debt obligations, employment misrepresentation, impermissible debt-to-income ratios, misrepresentations of occupancy and lack of arms-length transactions. (See id. ¶¶ 49-59.) Plaintiff further alleges that MSMC had previously performed extensive due diligence review of the loans that would necessarily have alerted MSMC to deficiencies permeating the loan pool. (Compl. ¶¶ 61-63.)

---

[2] Accredited was copied on the breach notice sent to the Trustee on April 3, 2013, concerning defective Accredited loans. On April 8, 2013, Accredited's counsel sent a response indicating that the company had filed for bankruptcy and distributed its assets, leaving it unable to cure or repurchase any defective loans. (See Compl. ¶ 48.)

By the time that MSMC's 90-day cure or repurchase period expired on July 3, 2013, MSMC had failed to cure or repurchase any of the allegedly defective loans. (Id. ¶ 67.) MSMC has since repurchased 149 of the loans. (Id.) On April 28, 2014, Plaintiff filed suit, seeking to enforce MSMC's cure or repurchase obligations. Plaintiff also seeks damages to the extent that repurchase of the defective loans is insufficient to provide the Trust with the economic benefit of its bargain. (Compl. ¶ 69.)

DISCUSSION

Motion to Dismiss Standard

When deciding a Rule 12(b)(6) motion to dismiss a complaint for failure to state a claim, the Court assumes the truth of the facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff. See Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). If the plaintiff has not "nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Twombly, 550 U.S. at 570.

In evaluating a Rule 12(b)(6) motion to dismiss, a court may consider "only the complaint and any documents attached thereto or incorporated by reference and documents upon which the complaint relies heavily." Building Indus. Elec. Contractors Ass'n v. City of New

York, 678 F.3d 184, 187 (2d Cir. 2012) (citing In re Citigroup ERISA Litig., 662 F.3d 128, 135 (2d Cir. 2011) (internal quotation marks omitted)).  In deciding this motion, the Court has considered, in addition to the Complaint, the breach notice letter, the MLPA, the PSA and the exhibits attached to those documents.  All of these documents were attached to, and are integral to the allegations of, the Complaint, and their authenticity is undisputed by the parties.  See Fed. R. Civ. P. 10(c) (a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes). See also, Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (a document is deemed integral to the complaint when it "relies heavily upon its terms and effect.").

In addition, when analyzing a complaint for breach of contract at the motion to dismiss stage, courts must bear in mind that "if a contract is ambiguous as applied to a particular set of facts, a court has insufficient data to dismiss a complaint for failure to state [a] claim." Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC, 692 F.3d 42, 56 (2d Cir. 2012) (internal quotation marks and citation omitted).

Timeliness of Plaintiff's Action With Respect to Loans Not Specified in the Breach Notice

MSMC first argues that, because Plaintiff failed to comply with the notice requirement of the repurchase protocol with respect to any loans other than the 1,620 identified in its breach notice letter, any claims respecting loans beyond those 1,620 must be dismissed as untimely.  (See MSMC Memo at 7-8.)  The parties debate at some length whether the breach notice requirement is a "condition precedent" to filing suit under the contract.  The Court need not, however, decide this question, as it finds that Plaintiff's letter gave adequate notice with respect to breaching loans beyond the 1,620 specifically mentioned.

The breach notice unquestionably identified 1,620 of the 4,374 loans in the Trust as defective. In its opposition papers, Plaintiff characterizes the notice as identifying "an extraordinary breach rate that clearly indicates systemic problems throughout the broader pool." (See Plaintiff's Memo p. 17; see also Compl. ¶ 1 and Ex. 3.) Plaintiff indicated in its letter that its repurchase request "reflect[ed] only current findings" and that its review of the loan pool was ongoing. (Compl., Ex. 3.) Plaintiff argues that, given the pervasive nature of the breaches identified and the notice's indication that review was ongoing, MSMC was put on notice of a more extensive range of defective loans within the Trust. Courts in this district have reached conclusions consistent with Plaintiff's position. In Assured Guaranty Municipal Corp. v. Flagstar Bank FSB, Judge Rakoff reaffirmed his prior holding that, "by informing [Defendant] of pervasive breaches affecting the charged off loans with its January 2009 repurchase demand [the Plaintiff had ] rendered [Defendant] constructively 'aware' – or, at a minimum, put [Defendant] on inquiry notice – of the substantial likelihood that these breaches extended beyond the charged off loan population and into the broader loan portfolio." 920 F. Supp. 2d 475, 512-13 (S.D.N.Y. 2013). MSMC attempts to distinguish this case by noting that Assured Guarantee was not a trustee repurchase case. However, judges in this district have cited Judge Rakoff's reasoning in cases directly analogous to the one at bar. See, e.g., Deutsche Alt-A Securities Mortg. Loan Trust, Series 2006-OA1 v. DB Structured Products, Inc., 958 F. Supp. 2d 488, 497 n.3 (S.D.N.Y. 2013) ("Deutsche Alt-A") (denying motion to dismiss claims as to loans not enumerated in breach notices and observing: "[i]n [Assured Guaranty], the court went on to note that because of the material uniformity of the underlying loan population, plaintiff's notification to defendant of 'pervasive breaches' affecting the loans was sufficient to render the defendant 'constructively aware-or, at minimum put [defendant] on inquiry notice of the substantial

likelihood that these breaches extended beyond' the specified loans into the 'broader loan portfolio.'  The court therefore allowed claims to remain as to loans which were not the subject of previous notices to the defendant.").  The Court likewise finds that the Complaint, which incorporates the notification letter by reference, sufficiently pleads constructive notice of the additional breaches.  Moreover, because the MLPA also imposed an affirmative obligation on MSMC to give notice of and cure breaches upon discovery of the breaches, the letter defect rate documented in the breach letter may support an inference that MSMC already had knowledge of the representation and warranty breaches based on its due diligence activities at the initiation of the Trust.  (See Compl. ¶¶ 60-66.)  Defendants' motion is denied insofar as it seeks dismissal of Plaintiff's claims relating to defective loans not specifically identified in the breach notice letter.

The Accredited Loans

MSMC further argues that The Trustee's claims with respect to the loans originated by Accredited must be dismissed because: (1) MSMC has no obligation to cure or repurchase such loans; and (2) even if MSMC had such an obligation, The Trustee's claims are time-barred.

*MSMC's Obligation to Cure or Repurchase Accredited Loans*

MSMC disputes the Trustee's assertion that section 10 of the MLPA obliges MSMC to repurchase defective loans that were originated by Accredited.  According to MSMC, Section 10 of the MLPA provides that MSMC must only cure or repurchase "MSMCH Represented Mortgage Loans," which are defined in Section One of the MLPA as "[a]ny Mortgage Loan . . . originated by Aames Capital Corporation, Aegis Mortgage Corporation, Decision One Mortgage Company, LLC, First NLC Financial Services, LLC, MILA, Inc., New

Century Mortgage Corporation, Option One Mortgage Corporation or Wilmington Finance Inc."
(See Compl., Ex. 1, §§ 1, 10.)  MSMC asserts that, "[t]his definition plainly excludes Accredited
Mortgage Loans."  (MSMC Memo at p. 16.)  MSMC makes a textual argument focused on the
language of Section 10 of the MLPA, which provides in pertinent part:

> With respect to any Accredited Mortgage Loan, reference is made to the
> Accredited Assignment, Assumption and Recognition Agreement attached hereto
> as Exhibit 8. In the case of any such breach of a representation or warranty set
> forth in this Section 10 made by Accredited with respect to an Accredited
> Mortgage Loan, in the event Accredited fails to cure, substitute or repurchase an
> Accredited Mortgage Loan within the period specified in the Accredited
> Assignment, Assumption and Recognition Agreement, [Morgan Stanley Capital]
> will cure, substitute or repurchase such Accredited Mortgage Loan in accordance
> with the terms of the foregoing paragraph.

(Compl., Ex. 1, § 10.)  MSMC argues that, because there are no explicit "representation[s] or
warrant[ies] set forth in . . . Section 10 made by Accredited with respect to an Accredited
Mortgage Loan," the language of the provision does not obligate MSMC to honor Accredited's
cure or repurchase obligations.

In response, Plaintiff asserts that the paragraph incorporates Accredited's
representations and warranties (set forth in exhibit 8 to the MLPA) by reference, and imposes
upon MSMC the affirmative obligation to cure or repurchase defective Accredited loans.
Plaintiff argues that MSMC's interpretation of the paragraph would negate any obligation to cure
or repurchase breaching Accredited loans MSMC might ever have, which would render the
paragraph a nullity.  As Plaintiff explains, "[t]here is no reason to set out a mechanism by which
Morgan Stanley Capital must repurchase Accredited loans if that mechanism can never be
invoked."  (Plaintiff's Memo at p. 10.)

It is a fundamental principle of New York contract law that "an interpretation of a
contract that has the effect of rendering at least one clause superfluous or meaningless . . . is not

preferred and will be avoided if possible . . . Rather, an interpretation that gives a reasonable and effective meaning to all terms of a contract is generally preferred to one that leaves a part unreasonable or of no effect." Galli v. Metz, 973 F.2d 145, 149 (2d Cir. 1992) (internal quotation marks and citations omitted).  Indeed, MSMC's reading of the relevant paragraph would free it from ever having to cure or repurchase loans on Accredited's behalf, which would render the procedure set out for doing so useless.  The MPLA does not by any means unambiguously relieve MSMC of liability for Accredited's breaches of representations and warranties.  Construing the ambiguity in Plaintiff's favor for the purposes of this motion practice, the Court finds that Plaintiff has pleaded sufficiently that MSMC has an obligation to repurchase defective Accredited Loans.[3]

*Timeliness of the Accredited Claims*

MSMC further argues that, even if it is obligated to cure or repurchase the defective Accredited loans, The Trustee's claims in this respect are time-barred.  In this connection, MSMC asserts that its cure or repurchase obligation is triggered only if Accredited fails within its contractually-allocated 90-day period to cure or repurchase, and that MSMC is not in default of any obligation related to Accredited loans unless it fails, within a *further* 90-day period, to cure or repurchase.  MSMC seeks dismissal of the Trustee's Accredited loan-related claims because this litigation was commenced prior to the expiration of the cumulative 180-day cure period MSMC claims under the contract.  While MSMC's argument may not be entirely frivolous, the contractual provisions are not so unambiguous as to warrant dismissal of the challenged claims at this juncture.

---

[3] The Court also concludes that Plaintiff has pleaded facts sufficient to plausibly allege breaches of Accredited's Representations and Warranties.  (See Compl. ¶¶ 33, 48.)

Sufficiency of Plaintiff's Claims for Specific Performance

MSMC argues that, as a general matter, Plaintiff has failed to plead sufficiently that MSMC breached its representations and warranties with respect to any of the loans in the Trust.  According to MSMC, because the Complaint "describes only eighteen allegedly defective Mortgage Loans in any detail," Plaintiff has at most stated a claim that is limited to those loans.  (MSMC Memo at p. 15.)  MSMC ignores entirely the information provided in Plaintiff's pre-Complaint breach notice letter, claiming that it was not submitted to the Court and therefore should not be considered.  These arguments are without merit.

The Complaint describes the findings of Plaintiff's loan review in great detail, describing the most common types of breaches and explaining what makes them material.  (See Compl. ¶¶ 52-59.)  Courts within this district have found such allegations sufficient to satisfy the notice pleading standard.  See, e.g., Ace Securities Corp. Home Equity Loan Trust, Series 2007-HE3 ex rel. HSBC Bank USA, Nat. Ass'n v. DB Structured Products ,Inc., 5 F. Supp. 3d 543, 560 (S.D.N.Y. 2014) ("Ace Securities") ("several courts have found that, as a matter of pleading sufficiency, a complaint for repurchase need not contain specific allegations regarding each loan at issue") (internal quotation marks and citations omitted).  Indeed, a complaint need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Twombly, 550 U.S. at 555.  Plaintiff certainly does as much here, detailing several types of breaches that it has discovered, and asserting that "the remainder of the Loans, if reviewed, would exhibit a [high] defect rate.  Indeed, the breaches are so pervasive throughout the Trust that Morgan Stanley Capital knew or should have known of those breaches long before the Trustee provided notice."  (Compl. ¶ 3.)  A complaint "comfortably meets the pleading standard by pointing to the repurchase provision in the [relevant contracts] and by alleging the results of

[plaintiff's] loan review, written notices to [defendant] by . . . the Trustee, [defendant]'s response, and losses incurred." MASTR Adjustable Rate Mortgages Trust 2006-OA2 v. UBS Real Estate Securities Inc., 12CV7322-HB, 2013 WL 4399210, at *5 (S.D.N.Y. Aug. 15, 2013). The Complaint in the instant action satisfies all of these criteria, and therefore cannot be said to be deficient.

Furthermore, the breach notice letter sent by Plaintiff to MSMC was attached as an exhibit to the Complaint, and was relied upon by Plaintiff in setting forth its allegations of breach. (Compl., Ex. 3.) As previously noted, in evaluating a Rule 12(b)(6) motion to dismiss, the Court may consider "the complaint and any documents attached thereto or incorporated by reference and documents upon which the complaint relies heavily." Building Indus. Elec. Contractors Ass'n, 678 F.3d at 187. Thus, the breach notice letter is properly considered here. The letter itself enclosed a copy of the original certificateholder's letter setting out in detail 15 "schedules" among which the 1,620 allegedly breaching loans were classified, with each schedule representing a different type of breach. (See Compl., Ex. 3.) According to Plaintiff, the notice letter enclosed a CD cataloguing each of the 1,620 defective loans in the pool, along with the corresponding nature of breach for each loan. (See Compl. ¶ 47; Ex. 3; and Plaintiff's Memo at p. 8.) Although the Court was not provided the opportunity to review the CD itself, at this phase of the litigation all facts alleged by Plaintiff are taken as true and all reasonable inferences are drawn in Plaintiff's favor. See Harris, 572 F.3d at 71. Assuming that the CD contains the information that Plaintiff claims it does, Plaintiff has more than sufficiently alleged material breaches with respect to the noticed loans.

The Complaint further alleges that MSMC conducted extensive due diligence prior to acquiring the loans that it placed into the trust, which Plaintiff claims would have led

MSMC to discover the breaches pervading the pool.  (See Compl. ¶¶ 20, 61-64.)  Courts within this district have found such allegations sufficient to support a claim that the defendant actually discovered breaches of representations and warranties on its own.  See, e.g., Ace Securities, 5 F. Supp. 3d at 559-60 ("Taken as true, Plaintiff's allegations that DBSP performed due diligence on loan pools rife with defects makes its claims that DBSP discovered breaches of the representations and warranties more than plausible.").  While the court in Ace Securities noted that "[d]iscovery may reveal that [the defendant] was, in fact, unaware of certain breaches, meaning that its obligation to cure them or repurchase the defective loans would be triggered only upon notice," id. at 564, it held that, because "the Court [was] required to accept Plaintiff's allegations of widespread breaches as true," the plaintiff had adequately pleaded the defendant's own discovery of breaching loans.  Plaintiff has clearly met that same standard here.

In light of the foregoing, the Court denies MSMC's motion insofar as it seeks dismissal of Plaintiff's claims for specific performance as inadequate.

Plaintiff's Claims for Compensatory, Consequential and/or Rescissory Damages

Plaintiff seeks an award of "compensatory, consequential, and/or rescissory damages against Morgan Stanley Capital in an amount to be proven at trial."  (See Compl., "Prayer for Relief.")  Plaintiff claims, inter alia, that it is entitled to seek such damages as a result of MSMC's breach of its obligation to notify the other parties of defective loans and breach of its repurchase obligation, which Plaintiff characterizes as causes of action separate from its cause of action for breach of representations and warranties.  MSMC moves to dismiss the Complaint to the extent that Plaintiff seeks any damages beyond "payment of the repurchase price for any breaching mortgage loans."  (See MSMC Reply Memo at p. 4.)  MSMC invokes

the "sole remedy" provision of the MLPA, which states that "the obligations of [MSMC] to cure, purchase or substitute a qualifying Replacement Mortgage Loan shall constitute the . . . Trustee's . . . sole and exclusive remedy under this Agreement."  (MLPA § 10.)  Such sole remedy provisions are valid and enforceable under New York law.  See, e.g., Net2Globe Int'l, Inc. v. Time Warner Telecom of N.Y., 273 F. Supp. 2d 436, 449-50 (S.D.N.Y. 2003) ("The New York Court of Appeals has declared that [a] limitation on liability provision in a contract represents the parties' Agreement on the allocation of risk of economic loss in the event that the contemplated transaction is not fully executed, which the courts should honor") (internal quotation marks and citation omitted).

Plaintiff contends that MSMC's breach of its repurchase obligation and its obligation to notify all parties of the presence of breaching loans constitute distinct causes of action to which the sole remedy provision does not apply, under which compensatory, consequential and/or rescissory damages may be sought, and has pleaded such causes of action in Counts Two and Three of the Complaint.  However, courts in this district have consistently held that "the failure to cure or repurchase does not constitute an independent breach of the contract under New York law so as to vitiate the sole remedy provision."  Citigroup Mortg. Loan Trust 2007-AMC3 ex rel. U.S. Bank Nat. Ass'n v. Citigroup Global Markets Realty Corp., No. 13CV2843-GBD, 2014 WL 1329165, at *5 (S.D.N.Y. Mar. 31, 2014).  See also Ace Securities, 5 F. Supp. 3d at 552 ("Plaintiff contends that DBSP's failure to repurchase loans that it was obligated to repurchase constitutes an independent breach of contract.  The Court disagrees.").  Indeed, as MSMC argues, "the notice/cure/repurchase protocol is remedial and cannot constitute a basis for an independent breach separate and apart from the alleged underlying breaches of representations and warranties."  (MSMC Reply Memo at p. 4.)  Such a protocol "merely

provides for a remedy in the event of a breach." Walnut Place LLC v. Countrywide Home Loans, Inc., 96 A.D.3d 684, 685 (1st Dep't 2012).  Thus, MSMC's "alleged failure to comply with its cure or repurchase obligations does not give rise to a separate breach of contract at the time of refusal because New York Law  . . . does not recognize pre-suit remedial provisions as constituting separate promises which can serve as the basis for independent causes of action." Lehman XS Trust, Series 2006-4N v. GreenPoint Mortg. Funding Inc., 991 F. Supp. 2d 472, 478 (S.D.N.Y. 2014) (internal quotation marks and citation omitted).  It follows that Counts Two and Three of the Complaint fail to state valid causes of action and must be dismissed.

        The Complaint contains other references to compensatory, rescissory and consequential damages, all of which MSMC argues are precluded by the sole remedy provision. Plaintiff asserts that the sole remedy provision of the MLPA, as applicable to its claim for breach of representations and warranties, is unenforceable as a result of MSMC's "gross negligence," opening the door to a potential damages award.  (Opposition Memo at p. 21.)  Under New York law, contractual provisions limiting liability "will not preclude recovery in . . . breach of contract where the losses are the result of gross negligence." Gold Connection Disc. Jewelers, Inc. v. Am. Dist. Tel. Co., 212 A.D.2d 577, 578 (2d Dep't 1995).

        It is not necessary at this early juncture to explore the circumstances, if any, under which the sole remedy provision might be held void in relation to gross negligence.  "[S]pecific performance is an equitable remedy, and 'where the granting of equitable relief appears to be impossible or impracticable, equity may award damages in lieu of the desired equitable remedy.'" Ace Securities, 5 F. Supp. 3d at 554 (quoting Doyle v. Allstate Ins. Co., 1 N.Y.2d 439, 443 (1956)).  As the Ace Securities Court noted, many courts have awarded money damages, notwithstanding sole remedy provisions, "equivalent to what the defendant would pay

were performance possible" in situations in which properties have been foreclosed or specific aspects of the prescribed remedy mechanism are no longer feasible.  <u>Ace Securities</u>, 5 F. Supp. 3d at 554.

Defendant's motion is therefore denied, without prejudice, to the extent it seeks to strike claims for types of relief other than those specified in the sole remedy provision.

<u>Breach of the Implied Covenant of Good Faith and Fair Dealing</u>

In addition to its breach of contract claims, Plaintiff asserts a claim for breach of the implied covenant of good faith and fair dealing.  (<u>See</u> Compl. ¶¶ 107-11.)  However, "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled."  <u>Harris v. Provident Life and Acc. Ins. Co.</u>, 310 F.3d 73, 81 (2d Cir. 2002).  As MSMC points out, the "duty of good faith and fair dealing is implicit in every contract.  However, a breach of that duty will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate claim for breach of covenant of an express provision of the underlying contract."  <u>In re Hougibant Inc.</u>, 914 F. Supp. 964, 989 (S.D.N.Y. 1995).

Plaintiff bases its claim for breach of the covenant of good faith and fair dealing on precisely the same factual allegations upon which its breach of contract claim is based.  In light of this, and because there is no dispute as to the existence of the contracts or as to whether Plaintiff's claims fall within the scope of these contracts, the Court grants MSMC's motion to dismiss Plaintiff's claim for breach of the covenant of good faith and fair dealing as duplicative of Plaintiff's breach of contract claim.

CONCLUSION

The Court grants Defendant MSMC's motion insofar as it seeks dismissal of Counts Two, Three and Four of the Complaint. The Court denies MSMC's motion in all other respects. Plaintiff's request for leave to amend the Complaint in response to the Court's decision on this motion practice is denied, Plaintiff having chosen to oppose this motion rather than seek leave to amend the Complaint in response to it. (See ECF Docket Entry No. 21 and Subdivision A.2.b.(iii) of the Individual Practices Rules of the undersigned.)

This Memorandum Opinion and Order resolves Docket Entry Number 18. The initial pre-trial conference in this case is scheduled for May 15, 2015, at 11:00 a.m. The parties must consult in advance of the conference and prepare a joint submission in accordance with the requirements of the Initial Conference Order. (See Docket Entry No. 3.)

SO ORDERED.

Dated: New York, New York
April 3, 2015

      /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge