# Exhibit F

MORTGAGE LOAN PURCHASE AGREEMENT

among

EMC MORTGAGE CORPORATION

as a Mortgage Loan Seller

MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC

as a Mortgage Loan Seller

and

BEAR STEARNS ASSET BACKED SECURITIES I LLC

as Purchaser

Dated as of

July 6, 2007

[TPW: NYLEGAL:688702.10] 17297-00533  11/26/2007 07:47 PM

CONFIDENTIAL

MSM_MSSTI_20071_0001812

# TABLE OF CONTENTS

Page

SECTION 1.  Definitions.............................................................................................1
SECTION 2.  Purchase and Sale of the Mortgage Loans and Related Rights................6
SECTION 3.  Mortgage Loan Schedule ......................................................................6
SECTION 4.  Mortgage Loan Transfer. ......................................................................6
SECTION 5.  Examination of Mortgage Files.............................................................8
SECTION 6.  Recordation of Assignments of Mortgage.............................................8
SECTION 7.  Representations and Warranties Concerning EMC ...............................10
SECTION 8.  Representations and Warranties of EMC Concerning the EMC Mortgage
            Loans......................................................................................................11
SECTION 9.  Representations and Warranties Concerning MSMCH ........................11
SECTION 10. Representations and Warranties of MSMCH Concerning the Mortgage
            Loans......................................................................................................12
SECTION 11. Assignment of Bring Down Letters from Accredited Home Lenders, Inc.
            and Fremont Investment & Loan ..............................................................18
SECTION 12. [Reserved] ..........................................................................................19
SECTION 13. Representations and Warranties Concerning the Purchaser .................19
SECTION 14. Conditions to Closing.........................................................................20
SECTION 15. Fees and Expenses ..............................................................................22
SECTION 16. Accountants' Letters. ..........................................................................22
SECTION 17. [Reserved]. .........................................................................................22
SECTION 18. Notices ...............................................................................................22
SECTION 19. Transfer of Mortgage Loans ...............................................................22
SECTION 20. Termination.........................................................................................23
SECTION 21. Representations, Warranties and Agreements to Survive Delivery.......23
SECTION 22. Severability ........................................................................................23
SECTION 23. Counterparts........................................................................................23
SECTION 24. Amendment .........................................................................................23
SECTION 25. GOVERNING LAW ............................................................................23
SECTION 26. Further Assurances..............................................................................23
SECTION 27. Successors and Assigns........................................................................23
SECTION 28. The Mortgage Loan Sellers..................................................................24
SECTION 29. Entire Agreement ................................................................................24
SECTION 30. No Partnership.....................................................................................24

## EXHIBITS AND SCHEDULE TO
## MORTGAGE LOAN PURCHASE AGREEMENT

Exhibit 1      Contents of Mortgage File
Exhibit 2      Mortgage Loan Schedule (All Loans)
Exhibit 3      Underlying EMC Purchase Agreement

- 2 -

[TPW: NYLEGAL:688702.10] 17297-00533  11/26/2007 07:47 PM

CONFIDENTIAL

Exhibit 4     [Reserved]
Exhibit 5     [Reserved]
Exhibit 6     Schedule of Lost Notes
Exhibit 7     [Reserved]
Exhibit 8     Accredited Assignment, Assumption and Recognition Agreement
Schedule A    Required Ratings for Each Class of Certificates

- 2 -

[TPW: NYLEGAL:688702.10] 17297-00533  11/26/2007 07:47 PM

CONFIDENTIAL

MSM_MSSTI_20071_000181

MORTGAGE LOAN PURCHASE AGREEMENT

This MORTGAGE LOAN PURCHASE AGREEMENT, dated as of July 6, 2007, as amended and supplemented by any and all amendments hereto (collectively, this "Agreement"), is by and among EMC MORTGAGE CORPORATION, a Delaware corporation ("EMC" or a "Mortgage Loan Seller"), MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC, a New York limited liability company ("MSMCH" or a "Mortgage Loan Seller", and together with EMC, the "Mortgage Loan Sellers") and BEAR STEARNS ASSET BACKED SECURITIES I LLC, a Delaware limited liability company (the "Purchaser").

Upon the terms and subject to the conditions of this Agreement, each Mortgage Loan Seller agrees to sell, and the Purchaser agrees to purchase, certain conventional, closed-end, subprime, fixed rate and adjustable rate, first and second lien mortgage loans secured by one- to four-family residences (collectively, the "Mortgage Loans") as described herein. The Purchaser intends to deposit the Mortgage Loans into a trust fund (the "Trust Fund") and create Morgan Stanley Structured Trust I 2007-1, Asset-Backed Certificates, Series 2007-1 (the "Certificates"), under a pooling and servicing agreement, to be dated as of June 1, 2007 (the "Pooling and Servicing Agreement"), among the Purchaser, as depositor, Wells Fargo Bank, National Association, as master servicer (in such capacity, the "Master Servicer") and securities administrator (in such capacity, the "Securities Administrator") and Deutsche Bank National Trust Company, as trustee (the "Trustee").

The Purchaser has filed with the Securities and Exchange Commission (the "Commission") a registration statement on Form S-3 (Number 333-131374) relating to its Asset-Backed Certificates and the offering of certain series thereof (including certain classes of the Certificates) from time to time in accordance with Rule 415 under the Securities Act of 1933, as amended, and the rules and regulations of the Commission promulgated thereunder (the "Securities Act"). Such registration statement, when it became effective under the Securities Act, and the prospectus relating to the public offering of certain classes of the Certificates by the Purchaser (the "Public Offering"), as each may be amended or supplemented from time to time pursuant to the Securities Act or otherwise, are referred to herein as the "Registration Statement" and the "Prospectus," respectively. The "Free Writing Prospectus" shall mean the free writing prospectus, dated June 29, 2007, relating to certain classes of the Certificates. The "Prospectus Supplement" shall mean the final supplement, dated July 5, 2007, to the Prospectus, dated June 26, 2007, relating to certain classes of the Certificates. With respect to the Public Offering of certain classes of the Certificates, Bear, Stearns & Co. Inc. ("Bear Stearns") and the Purchaser have entered into a terms agreement, dated as of June 29, 2007, to an underwriting agreement, dated April 13, 2006 (together, the "Underwriting Agreement") between Bear Stearns and the Purchaser.

Now, therefore, in consideration of the premises and the mutual agreements set forth herein, the parties hereto agree as follows:

SECTION 1.     Definitions.   Certain terms are defined herein. Capitalized terms used herein but not defined herein shall have the meanings specified in the Pooling and Servicing Agreement. The following other terms are defined as follows:

1

CONFIDENTIAL

MSM_MSSTI_20071_000181

Aames Capital Mortgage Loans: The Mortgage Loans identified as such on the Mortgage Loan Schedule which were originated by Aames Capital Corporation.

Accredited Assignment, Assumption and Recognition Agreement: The assignment, assumption and recognition agreement, dated as of July 6, 2007, among EMC, the Purchaser and Accredited.

Accredited Mortgage Loans: The Mortgage Loans identified as such on the Mortgage Loan Schedule which were originated by Accredited.

Acquisition Price: With respect to EMC and the sale of the EMC Mortgage Loans, cash in an amount equal to $_____*\_\_\_\_\_$ (plus $_____*\_\_\_\_\_$ in accrued interest). With respect to MSMCH and the sale of the MSMCH Mortgage Loans, cash in an amount equal to $\_\_\_\_\_*\_\_\_\_\_$ (plus $_____*\_\_\_\_\_$ in accrued interest).

Aegis Mortgage Loans: The Mortgage Loans identified as such on the Mortgage Loan Schedule which were originated by Aegis Mortgage Corporation.

Closing Date: July 6, 2007.

Covered Loan: A Mortgage Loan categorized as Covered pursuant to Appendix E of Standard & Poor's Glossary.

Cut-off Date: June 1, 2007.

Cut-off Date Balance: Shall mean $735,100,463.83.

Deleted Mortgage Loan: A Mortgage Loan replaced or to be replaced by a Replacement Mortgage Loan.

Decision One Mortgage Loans: The Mortgage Loans identified as such on the Mortgage Loan Schedule which were originated by Decision One Mortgage Company, LLC.

Deutsche Bank Custodial Agreement: An agreement, dated as of July 6, 2007, among the Depositor, EMC, MSMCH, the Master Servicer, the Securities Administrator, the Trustee and Deutsche Bank National Trust Company as custodian (in such capacity, the "Custodian").

Due Date: As to any Mortgage Loan, the date in each month on which the related Scheduled Payment is due, as set forth in the related Mortgage Note.

EMC Mortgage Loans: Any loan on the Mortgage Loan Schedule indicated as having been sold by EMC.

First NLC Mortgage Loans: The Mortgage Loans identified as such on the Mortgage Loan Schedule which were originated by First NLC Financial Services, LLC.

---

\*   Please contact Bear Stearns or MSMCH, as applicable, for pricing information.

2

[TPW: NYLEGAL:688702.10] 17297-00533  11/26/2007 07:47 PM

CONFIDENTIAL

MSM_MSSTI_20071_000181

Fremont Mortgage Loans: The Mortgage Loans identified as such on the Mortgage Loan Schedule which were originated by Fremont Investment & Loan.

High Cost Loan: A Mortgage Loan (a) covered by the Home Ownership and Equity Protection Act of 1994 ("HOEPA"), (b) classified as a "high cost home," "threshold," "covered," (excluding New Jersey "Covered Home Loans" as that term was defined in clause (1) of the definition of that term in the New Jersey Home Ownership Security Act of 2002 that were originated between November 26, 2003 and July 7, 2004), "high risk home," "predatory" or similar loan under any other applicable state, federal or local law which expressly exposes assignees of mortgage loans to civil or criminal liability or damages or to regulatory action or enforcement proceedings or penalties, or (c) categorized as High Cost pursuant to Appendix E of Standard & Poor's Glossary.

MERS: Mortgage Electronic Registration Systems, Inc., a corporation organized and existing under the laws of the State of Delaware, or any successor thereto.

MERS® System: The system of recording transfers of Mortgages electronically maintained by MERS.

Meritage Mortgage Loans: The Mortgage Loans identified as such on the Mortgage Loan Schedule which were originated by Meritage Mortgage Corporation.

MILA Mortgage Loans: The Mortgage Loans identified as such on the Mortgage Loan Schedule which were originated by MILA, Inc.

Moody's: Moody's Investors Service, Inc., or its successors in interest.

Mortgage: The mortgage, deed of trust or other instrument creating a first or second lien on or first or second priority ownership interest in an estate in fee simple in real property securing a Mortgage Note.

Mortgage File: The items referred to in Exhibit 1 pertaining to a particular Mortgage Loan and any additional documents required to be added to such documents pursuant to this Agreement.

Mortgage Loan: Certain fixed and adjustable rate, conventional, closed-end sub-prime mortgage loans that are secured by first and second liens on one- to four-family residential properties and certain other assets as described in the Prospectus Supplement.

Mortgage Loan Schedule: The schedule of Mortgage Loans setting forth the following information with respect to each Mortgage Loan: (1) the related Seller's Mortgage Loan identifying number; (2) [reserved]; (3) the city, state and zip code of the Mortgaged Property; (4) [reserved]; (5) the number and type of residential units constituting the Mortgaged Property (e.g. single family residence, a two- to four-family dwelling, condominium, planned unit development or cooperative); (6) the original months to maturity or the remaining months to maturity from the Cut-off Date, in any case based on the original amortization schedule and, if different, the maturity expressed in the same manner but based on the actual amortization schedule; (7) with respect to each First Lien Loan, the Loan-to- Value Ratio at origination, and

3

CONFIDENTIAL

with respect to each Second Lien Loan, the combined loan-to-value ratio (the "CLTV") at origination; (8) the Mortgage Rate and the Net Mortgage Rate as of the Cut-off Date; (9) the date on which the first Monthly Payment was due on the Mortgage Loan and, if such date is not consistent with the Due Date currently in effect, the Due Date; (10) the stated maturity date; (11) the amount of the Monthly Payment as of the Cut-off Date; (12) [reserved]; (13) the original principal amount of the Mortgage Loan; (14) the actual principal balance of the Mortgage Loan as of the close of business on the Cut-off Date, after deduction of payments of principal collected on or before the Cut-off Date; (15) with respect to Adjustable Rate Mortgage Loans, the Interest Rate Adjustment Date; (16) with respect to Adjustable Rate Mortgage Loans, the Gross Margin; (17) with respect to Adjustable Rate Mortgage Loans, the Periodic Rate Cap, if applicable, under the terms of the Mortgage Note; (18) [reserved]; (19) the type of Mortgage Loan (i.e., Fixed or Adjustable Rate Mortgage Loan, First or Second Lien Loan); (20) a code indicating the purpose of the loan (i.e., purchase, rate/term refinance or cash-out refinance); (21) the Servicing Fee Rate; (22) the LPMI Fee, if applicable; (23) the Master Servicing Fee Rate; (24) the MIN with respect to each MOM Loan; (25) with respect to Adjustable Rate Mortgage Loans, the Maximum Mortgage Rate, if applicable; (26) with respect to Adjustable Rate Mortgage Loans, the Minimum Mortgage Rate, if applicable; (27) which Mortgage Loans adjust after an initial fixed-rate period of one, two, three, five, seven or ten years or any other period; (28) the Prepayment Charge, if any; (29) a code indicating whether the Mortgage Loan is has a balloon payment; (30) a code indicating whether the Mortgage Loan is an interest-only loan; (31) the interest-only term, if applicable; (32) the related Seller; and (33) the original amortization term. The Mortgage Loan Schedule is attached as Exhibit 2 hereto.

Mortgage Rate: The annual rate of interest borne by a Mortgage Note as stated herein.

Mortgagor: The obligor(s) on a Mortgage Note.

MSMCH Mortgage Loans: Any Mortgage Loan on the Mortgage Loan Schedule indicated as having been sold by MSMCH.

MSMCH Represented Mortgage Loans: Any Mortgage Loan on the Mortgage Loan Schedule indicated as having been originated by Aames Capital Corporation, Aegis Mortgage Corporation, Decision One Mortgage Company, LLC, First NLC Financial Services, LLC, MILA, Inc., New Century Mortgage Corporation, Option One Mortgage Corporation or Wilmington Finance Inc.

Net Mortgage Rate: As to each Mortgage Loan, and at any time, the per annum rate equal to the Mortgage Rate less the sum of (i) the Servicing Fee Rate, (ii) the Trustee Fee Rate, if any, and (iii) the rate at which the LPMI Fee is calculated, if any.

New Century Mortgage Loans: The Mortgage Loans identified as such on the Mortgage Loan Schedule which were originated by New Century Mortgage Corporation.

Opinion of Counsel: A written opinion of counsel, who may be counsel for the Mortgage Loan Sellers or the Purchaser, reasonably acceptable to the Trustee.

4

CONFIDENTIAL

<u>Option One Mortgage Loans</u>: The Mortgage Loans identified as such on the Mortgage Loan Schedule which were originated by Option One Mortgage Corporation.

<u>Person</u>: Any legal person, including any individual, corporation, partnership, joint venture, association, joint stock company, trust, unincorporated organization or government or any agency or political subdivision thereof.

<u>Piggyback Loan</u>: A second lien Mortgage Loan originated by the same originator to the same borrower at the same time as the first lien Mortgage Loan, each secured by the same Mortgaged Property.

<u>Purchase Price</u>: With respect to any Mortgage Loan required to be purchased by EMC or MSMCH pursuant to the applicable provisions of this Agreement, an amount equal to the sum of (i) 100% of the principal remaining unpaid on such Mortgage Loan as of the date of purchase (including if a foreclosure has already occurred, the principal balance of the related Mortgage Loan at the time the Mortgaged Property was acquired), net of any Servicing Advances and Advances attributable to principal and payable to the purchaser of the Mortgage Loan if such purchaser is also the servicer of such Mortgage Loan, (ii) accrued and unpaid interest thereon at the applicable Mortgage Rate through and including the last day of the month of such purchase, net of any portion of the Servicing Fee and any Servicing Advances and Advances attributable to interest that is payable to the purchaser of the Mortgage Loan if such purchaser is also the servicer of such Mortgage Loan, plus (iii) any costs and damages (if any) incurred by the Purchaser in connection with any violation of such Mortgage Loan of any anti-predatory lending laws.

<u>Rating Agencies</u>: Standard & Poor's and Moody's, each a "<u>Rating Agency</u>."

<u>Replacement Mortgage Loan</u>: A mortgage loan substituted for a Deleted Mortgage Loan which must meet on the date of such substitution the requirements stated herein; upon such substitution, such mortgage loan shall be a "<u>Mortgage Loan</u>" hereunder.

<u>Standard & Poor's</u>: Standard & Poor's, a division of The McGraw-Hill Companies, Inc. or its successors in interest.

<u>Underlying EMC Purchase Agreement</u>: The Mortgage Loan Purchase and Warranties Agreement, dated May 1, 2007, between EMC and MSMCH.

<u>Value</u>: The value of the Mortgaged Property at the time of origination of the related Mortgage Loan, such value being the lesser of (i) the value of such property set forth in an appraisal accepted by the applicable originator of the Mortgage Loan or (ii) the sales price of such property at the time of origination.

<u>Wells Fargo</u>: Wells Fargo Bank, National Association, or its successors in interest.

<u>Wells Fargo Custodial Agreement</u>: An agreement, dated as of July 6, 2007, among the Depositor, EMC, MSMCH, the Master Servicer, the Securities Administrator, the

5

CONFIDENTIAL

MSM_MSSTI_20071_000181

Trustee and Wells Fargo Bank, National Association as custodian (in such capacity, the "Custodian").

Wilmington Finance Mortgage Loans: The Mortgage Loans identified as such on the Mortgage Loan Schedule which were originated by Wilmington Finance Inc.

WMC Mortgage Loans: The Mortgage Loans identified as such on the Mortgage Loan Schedule which were originated by WMC Mortgage Corp.

SECTION 2.    Purchase and Sale of the Mortgage Loans and Related Rights.

(a)    Upon satisfaction of the conditions set forth in Section 11 hereof, each Mortgage Loan Seller agrees to sell, and the Purchaser agrees to purchase, Mortgage Loans sold by such Mortgage Loan Seller having an aggregate outstanding principal balance as of the Cut-off Date equal to the Cut-off Date Balance, and such Mortgage Loan Seller's interest, if any, in the Swap Agreements.

(b)    The closing for the purchase and sale of the Mortgage Loans and the closing for the issuance of the Certificates will take place on the Closing Date at the office of the Purchaser's counsel in New York, New York or such other place as the parties shall agree.

(c)    Upon the satisfaction of the conditions set forth in Section 11 hereof, on the Closing Date, the Purchaser shall pay to each respective Mortgage Loan Seller the related Acquisition Price for the Mortgage Loans sold by such Mortgage Loan Seller in immediately available funds by wire transfer to such account or accounts as shall be designated by such Mortgage Loan Seller.

SECTION 3.    Mortgage Loan Schedule.    Each of EMC and MSMCH agrees to provide to the Purchaser as of the date hereof a listing of the Mortgage Loans (the "Mortgage Loan Schedule") setting forth the information listed on Exhibit 2 to this Agreement with respect to each of the Mortgage Loans being sold by the respective Mortgage Loan Sellers. The Mortgage Loan Schedule shall be delivered to the Purchaser on the Closing Date and shall be in form and substance mutually agreed to by EMC, MSMCH and the Purchaser.

SECTION 4.    Mortgage Loan Transfer.

(a)    The Purchaser will be entitled to all scheduled payments of principal and interest on the Mortgage Loans due after the Cut-off Date (regardless of when actually collected) and all payments thereof. Each Mortgage Loan Seller will be entitled to all scheduled payments of principal and interest on the Mortgage Loans sold by it to the Purchaser due on or before the Cut-off Date (including payments collected after the Cut-off Date) and all payments thereof. Such principal amounts and any interest thereon belonging to the related Mortgage Loan Seller as described above will not be included in the aggregate outstanding principal balance of the Mortgage Loans as of the Cut-off Date as set forth on the Mortgage Loan Schedule.

(b)    Pursuant to various conveyancing documents to be executed on the Closing Date and pursuant to the Pooling and Servicing Agreement, the Purchaser will assign on

6

CONFIDENTIAL

MSM_MSSTI_20071_0001820

the Closing Date all of its right, title and interest in and to the Mortgage Loans to the Trustee for the benefit of the Certificateholders. In connection with the transfer and assignment of the Mortgage Loans, each Mortgage Loan Seller has delivered or will deliver or cause to be delivered to the Trustee, or the related Custodian on behalf of the Trustee, by the Closing Date or such later date as is agreed to by the Purchaser and such Mortgage Loan Seller (each of the Closing Date and such later date is referred to as a "Mortgage File Delivery Date"), the items of each Mortgage File, provided, however, that in lieu of the foregoing, each Mortgage Loan Seller may deliver the following documents, under the circumstances set forth below: (x) in lieu of the original Mortgage, assignments to the Trustee or intervening assignments thereof which have been delivered, are being delivered or will upon receipt of recording information relating to the Mortgage required to be included thereon, be delivered to recording offices for recording and have not been returned in time to permit their delivery as specified above, the related Mortgage Loan Seller may deliver a true copy thereof with a certification, on the face of such copy, substantially as follows: "Certified to be a true and correct copy of the original;" (y) in lieu of the Mortgage, assignments to the Trustee or intervening assignments thereof, if the applicable jurisdiction retains the originals of such documents or if the originals are lost (in each case, as evidenced by a certification to such effect), such Mortgage Loan Seller may deliver photocopies of such documents containing an original certification by the judicial or other governmental authority of the jurisdiction where such documents were recorded; and (z) in lieu of the Mortgage Notes relating to the Mortgage Loans, each identified in the list delivered by the Purchaser to the Trustee on the Closing Date and attached hereto as Exhibit 6 the related Mortgage Loan Seller may deliver lost note affidavits and indemnities of such Mortgage Loan Seller; and provided further, however, that in the case of Mortgage Loans which have been prepaid in full after the Cut-off Date and prior to the Closing Date, such Mortgage Loan Seller, in lieu of delivering the above documents, may deliver to the Trustee a certification by such Mortgage Loan Seller or the Master Servicer to such effect. Each Mortgage Loan Seller shall deliver such original documents (including any original documents as to which certified copies had previously been delivered) or such certified copies to the Trustee, or the related Custodian on behalf of the Trustee, promptly after they are received. EMC or MSMCH, as applicable, shall cause the Mortgage and intervening assignments, if any, and the assignment of the Mortgage to be recorded not later than 180 days after the Closing Date unless such assignment is not required to be recorded under the terms set forth in Section 6(a) hereof.

(c)     In connection with the assignment of any Mortgage Loan registered on the MERS® System, EMC or MSMCH, as applicable, further agrees that it will cause, at EMC's own expense, within 30 days after the Closing Date, the MERS® System to indicate that such Mortgage Loans have been assigned by the related Mortgage Loan Seller to the Purchaser and by the Purchaser to the Trustee in accordance with this Agreement for the benefit of the Certificateholders by including (or deleting, in the case of Mortgage Loans which are repurchased in accordance with this Agreement) in such computer files (a) the code in the field which identifies the specific Trustee and (b) the code in the field "Pool Field" which identifies the series of the Certificates issued in connection with such Mortgage Loans. EMC or MSMCH, as applicable, further agrees that it will not, and will not permit the Master Servicer to, and the Master Servicer agrees that it will not, alter the codes referenced in this paragraph with respect to any Mortgage Loan during the term of the Pooling and Servicing Agreement unless and until

[TPW: NYLEGAL:688702.10] 17297-00533  11/26/2007 07:47 PM

CONFIDENTIAL

MSM_MSSTI_20071_000182

such Mortgage Loan is repurchased in accordance with the terms of the Pooling and Servicing Agreement.

SECTION 5.        Examination of Mortgage Files.

(a)        On or before the Mortgage File Delivery Date, each Mortgage Loan Seller will have made the related Mortgage Files available to the Purchaser or its agent for examination which may be at the offices of the Trustee or such Mortgage Loan Seller and/or such Mortgage Loan Seller's custodian. The fact that the Purchaser or its agent has conducted or has failed to conduct any partial or complete examination of the related Mortgage Files shall not affect the Purchaser's rights to demand cure, repurchase, substitution or other relief as provided in this Agreement. In furtherance of the foregoing, each Mortgage Loan Seller shall make the related Mortgage Files available to the Purchaser or its agent from time to time so as to permit the Purchaser to confirm such Mortgage Loan Seller's compliance with the delivery and recordation requirements of this Agreement. In addition, upon request of the Purchaser, each Mortgage Loan Seller agrees to provide to the Purchaser, Bear Stearns and to any investors or prospective investors in the Certificates information regarding the Mortgage Loans and their servicing, to make the related Mortgage Files available to the Purchaser, Bear Stearns and to such investors or prospective investors (which may be at the offices of the related Mortgage Loan Seller and/or such Mortgage Loan Seller's custodian) and to make available personnel knowledgeable about the related Mortgage Loans for discussions with the Purchaser, Bear Stearns and such investors or prospective investors, upon reasonable request during regular business hours, sufficient to permit the Purchaser, Bear Stearns and such investors or potential investors to conduct such due diligence as any such party reasonably believes is appropriate.

(b)        At the time of any substitution, EMC or MSMCH, as applicable, shall deliver or cause to be delivered the Replacement Mortgage Loan, the related Mortgage File and any other documents and payments required to be delivered in connection with a substitution pursuant to this Agreement. At the time of any purchase or substitution, the Trustee shall (i) assign the selected Mortgage Loan to EMC or MSMCH, as applicable, and shall release or cause the related Custodian to release the documents (including, but not limited to, the Mortgage, Mortgage Note and other contents of the Mortgage File) in the possession of the Trustee or the related Custodian, as applicable relating to the Deleted Mortgage Loan and (ii) execute and deliver such instruments of transfer or assignment, in each case without recourse, as shall be necessary to vest in EMC or MSMCH, as applicable, title to such Deleted Mortgage Loan.

SECTION 6.        Recordation of Assignments of Mortgage.

(a)        EMC or MSMCH, as applicable, will, promptly after the Closing Date, cause each Mortgage and each assignment of Mortgage from the applicable Mortgage Loan Seller to the Trustee, and all unrecorded intervening assignments, if any, delivered on or prior to the Closing Date, to be recorded in all recording offices in the jurisdictions where the related Mortgaged Properties are located; provided, however, neither EMC nor MSMCH need cause to be recorded any assignment which relates to a Mortgage Loan that is a MOM Loan or for which the related Mortgaged Property is located in any jurisdiction under the laws of which, as evidenced by an Opinion of Counsel delivered by EMC or MSMCH, as applicable, to the Trustee and the Rating Agencies, the recordation of such assignment is not necessary to protect

8

CONFIDENTIAL

the Trustee's interest in the related Mortgage Loan; provided, however, notwithstanding the delivery of any Opinion of Counsel, each assignment of Mortgage shall be submitted for recording by EMC or MSMCH, as applicable, in the manner described above, at no expense to the Trust Fund or Trustee, upon the earliest to occur of (i) reasonable direction by the Holders of Certificates evidencing Percentage Interests aggregating not less than 25% of the Trust, (ii) the occurrence of an Event of Default, (iii) the occurrence of a bankruptcy, insolvency or foreclosure relating to EMC under the Pooling and Servicing Agreement, (iv) the occurrence of a servicing transfer or an assignment of the servicing as described in Section 7.07 of the Pooling and Servicing Agreement or (iv) with respect to any one assignment of Mortgage, the occurrence of a bankruptcy, insolvency or foreclosure relating to the Mortgagor under the related Mortgage.

While each such Mortgage or assignment is being recorded, if necessary, EMC or MSMCH, as applicable, shall leave or cause to be left with the Trustee or the related Custodian on its behalf a certified copy of such Mortgage or assignment. In the event that, within 180 days of the Closing Date, the Trustee has not been provided with an Opinion of Counsel as described above or received evidence of recording with respect to each Mortgage Loan delivered to the Purchaser pursuant to the terms hereof or as set forth above and the related Mortgage Loan is not a MOM Loan, the failure to provide evidence of recording or such Opinion of Counsel shall be considered a Material Defect, and the provisions of Section 5(c) and (d) shall apply. All customary recording fees and reasonable expenses relating to the recordation of the assignments of mortgage to the Trustee or the Opinion of Counsel, as the case may be, shall be borne by EMC.

(b)     It is the express intent of the parties hereto that the conveyance of the Mortgage Loans by each Mortgage Loan Seller to the Purchaser, as contemplated by this Agreement be, and be treated as, a sale. It is, further, not the intention of the parties that such conveyance be deemed a pledge of the Mortgage Loans by such Mortgage Loan Seller to the Purchaser to secure a debt or other obligation of that Mortgage Loan Seller. However, in the event that, notwithstanding the intent of the parties, the Mortgage Loans are held by a court to continue to be property of such Mortgage Loan Seller, then (a) this Agreement shall also be deemed to be a security agreement within the meaning of Articles 8 and 9 of the applicable Uniform Commercial Code; (b) the transfer of the Mortgage Loans provided for herein shall be deemed to be a grant by such Mortgage Loan Seller to the Purchaser of a security interest in all of such Mortgage Loan Seller's right, title and interest in and to the Mortgage Loans and all amounts payable to the holders of the Mortgage Loans in accordance with the terms thereof and all proceeds of the conversion, voluntary or involuntary, of the foregoing into cash, instruments, securities or other property, to the extent the Purchaser would otherwise be entitled to own such Mortgage Loans and proceeds pursuant to Section 4 hereof, including all amounts, other than investment earnings, from time to time held or invested in any accounts created pursuant to the Pooling and Servicing Agreement, whether in the form of cash, instruments, securities or other property; (c) the possession by the Purchaser or the Trustee (or the related Custodian on its behalf) of Mortgage Notes and such other items of property as constitute instruments, money, negotiable documents or chattel paper shall be deemed to be "possession by the secured party" for purposes of perfecting the security interest pursuant to Section 9-305 (or comparable provision) of the applicable Uniform Commercial Code; and (d) notifications to persons holding such property, and acknowledgments, receipts or confirmations from persons holding such property, shall be deemed notifications to, or acknowledgments, receipts or confirmations from,

9

CONFIDENTIAL

financial intermediaries, bailees or agents (as applicable) of the Purchaser for the purpose of perfecting such security interest under applicable law. Any assignment of the interest of the Purchaser pursuant to any provision hereof or pursuant to the Pooling and Servicing Agreement shall also be deemed to be an assignment of any security interest created hereby. EMC or MSMCH, as applicable, and the Purchaser shall, to the extent consistent with this Agreement, take such actions as may be reasonably necessary to ensure that, if this Agreement were deemed to create a security interest in the Mortgage Loans, such security interest would be deemed to be a perfected security interest of first priority under applicable law and will be maintained as such throughout the term of the Pooling and Servicing Agreement.

SECTION 7.    Representations and Warranties Concerning EMC.   As of the date hereof and as of the Closing Date, EMC represents and warrants to the Purchaser and MSMCH as to itself in the capacity indicated as follows:

(a)   EMC (i) is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware and (ii) is qualified and in good standing to do business in each jurisdiction where such qualification is necessary, except where the failure so to qualify would not reasonably be expected to have a material adverse effect on EMC's business as presently conducted or on EMC's ability to enter into this Agreement and to consummate the transactions contemplated hereby;

(b)   EMC has full power to own its property, to carry on its business as presently conducted and to enter into and perform its obligations under this Agreement;

(c)   The execution and delivery by EMC of this Agreement has been duly authorized by all necessary action on the part of EMC; and neither the execution and delivery of this Agreement, nor the consummation of the transactions herein contemplated, nor compliance with the provisions hereof or thereof, will conflict with or result in a breach of, or constitute a default under, any of the provisions of any law, governmental rule, regulation, judgment, decree or order binding on EMC or its properties or the charter or by-laws of EMC, except those conflicts, breaches or defaults which would not reasonably be expected to have a material adverse effect on EMC's ability to enter into this Agreement and to consummate the transactions contemplated hereby;

(d)   The execution, delivery and performance by EMC of this Agreement and the consummation of the transactions contemplated hereby do not require the consent or approval of, the giving of notice to, the registration with, or the taking of any other action in respect of, any state, federal or other governmental authority or agency, except those consents, approvals, notices, registrations or other actions as have already been obtained, given or made and, in connection with the recordation of the Mortgages, powers of attorney or assignments of Mortgages not yet completed;

(e)   This Agreement has been duly executed and delivered by EMC and, assuming due authorization, execution and delivery by the Purchaser or the parties thereto, constitutes a valid and binding obligation of EMC enforceable against it in accordance with its terms (subject to applicable bankruptcy and insolvency laws and other similar laws affecting the enforcement of the rights of creditors generally);

10

CONFIDENTIAL

MSM_MSSTI_20071_000182

(f)     There are no actions, suits or proceedings pending or, to the knowledge of EMC, threatened against EMC, before or by any court, administrative agency, arbitrator or governmental body (i) with respect to any of the transactions contemplated by this Agreement or (ii) with respect to any other matter which in the judgment of EMC could reasonably be expected to be determined adversely to EMC and if determined adversely to EMC materially and adversely affect EMC's ability to perform its obligations under this Agreement; and EMC not in default with respect to any order of any court, administrative agency, arbitrator or governmental body so as to materially and adversely affect the transactions contemplated by this Agreement; and

(g)     The Mortgage Loan Seller's Information (as defined in Section 14(a) hereof) does not include any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

SECTION 8.     Representations and Warranties of EMC Concerning the EMC Mortgage Loans.  EMC hereby represents and warrants to the Purchaser as of the Closing Date or such other date as may be specified below with respect to each EMC Mortgage Loan:

(a)     EMC is the sole owner of record and holder of the EMC Mortgage Loans and the indebtedness evidenced by each Mortgage Note.  The EMC Mortgage Loans are not assigned or pledged, and EMC has good, indefeasible and marketable title thereto, and has full right to transfer and sell the EMC Mortgage Loans to the Purchaser free and clear of any encumbrance, equity, participation interest, lien, pledge, charge, claim or security interest, and has full right and authority to subject to no interest or participation of, or agreement with, any other party, to sell and assign each EMC Mortgage Loan and following the sale of each EMC Mortgage Loan, the Purchaser will own such EMC Mortgage Loan free and clear of any encumbrance, equity, participation interest, lien, pledge, charge, claim or security interest.

SECTION 9.     Representations and Warranties Concerning MSMCH.  As of the date hereof and as of the Closing Date, MSMCH represents and warrants to EMC and the Purchaser as to itself in the capacity indicated as follows:

(a)     MSMCH (i) is a limited liability company duly organized, validly existing and in good standing under the laws of the State of New York and (ii) is qualified and in good standing to do business in each jurisdiction where such qualification is necessary, except where the failure so to qualify would not reasonably be expected to have a material adverse effect on MSMCH's business as presently conducted or on MSMCH's ability to enter into this Agreement and to consummate the transactions contemplated hereby;

(b)     MSMCH has full power to own its property, to carry on its business as presently conducted and to enter into and perform its obligations under this Agreement;

(c)     The execution and delivery by MSMCH of this Agreement has been duly authorized by all necessary action on the part of MSMCH; and neither the execution and delivery of this Agreement, nor the consummation of the transactions herein contemplated, nor

11

[TPW: NYLEGAL:688702.10] 17297-00533  11/26/2007 07:47 PM

CONFIDENTIAL

compliance with the provisions hereof or thereof, will conflict with or result in a breach of, or constitute a default under, any of the provisions of any law, governmental rule, regulation, judgment, decree or order binding on MSMCH or its properties or the written consent of the sole member or formation agreement of MSMCH, except those conflicts, breaches or defaults which would not reasonably be expected to have a material adverse effect on MSMCH's ability to enter into this Agreement and to consummate the transactions contemplated hereby;

(d)     The execution, delivery and performance by MSMCH of this Agreement and the consummation of the transactions contemplated hereby do not require the consent or approval of, the giving of notice to, the registration with, or the taking of any other action in respect of, any state, federal or other governmental authority or agency, except those consents, approvals, notices, registrations or other actions as have already been obtained, given or made and, in connection with the recordation of the Mortgages, powers of attorney or assignments of Mortgages not yet completed;

(e)     This Agreement has been duly executed and delivered by MSMCH and, assuming due authorization, execution and delivery by the Purchaser or the parties thereto, constitutes a valid and binding obligation of MSMCH enforceable against it in accordance with its terms (subject to applicable bankruptcy and insolvency laws and other similar laws affecting the enforcement of the rights of creditors generally); and

(f)     There are no actions, suits or proceedings pending or, to the knowledge of MSMCH, threatened against MSMCH, before or by any court, administrative agency, arbitrator or governmental body (i) with respect to any of the transactions contemplated by this Agreement or (ii) with respect to any other matter which in the judgment of MSMCH could reasonably be expected to be determined adversely to MSMCH and if determined adversely to MSMCH materially and adversely affect MSMCH's ability to perform its obligations under this Agreement; and MSMCH is not in default with respect to any order of any court, administrative agency, arbitrator or governmental body so as to materially and adversely affect the transactions contemplated by this Agreement.

SECTION 10.     Representations and Warranties of MSMCH Concerning the Mortgage Loans. MSMCH hereby represents and warrants to the Purchaser as of the Closing Date or such other date as may be specified below:

(a)     With respect to each Mortgage Loan:

(1)     The information set forth in the Mortgage Loan Schedule relating to the Mortgage Loans is complete, true and correct as of the Cut-off Date;

(2)     Any and all requirements of any federal, state or local law including, without limitation, usury, truth-in-lending, real estate settlement procedures, consumer credit protection, equal credit opportunity, disclosure and all predatory, abusive and fair lending laws applicable to the Mortgage Loan, including, without limitation, any provisions relating to Prepayment Penalties, have been complied with, and the consummation of the transactions contemplated hereby will not involve the violation of any such laws or regulations; and

12

CONFIDENTIAL

(3)     No Mortgage Loan is a High Cost Loan or Covered Loan, as applicable, and no Mortgage Loan originated on or after October 1, 2002 through March 6, 2003 is governed by the Georgia Fair Lending Act. No Mortgage Loan is covered by the Home Ownership and Equity Protection Act of 1994 and no Mortgage Loan is in violation of any comparable state or local law.

(b)     With respect to the MSMCH Represented Mortgage Loans (except as otherwise set forth in this subsection (b)):

(1)     Except as set forth on the Mortgage Loan Schedule, (i) all payments required to be made up to the Closing Date for the MSMCH Represented Mortgage Loan under the terms of the Mortgage Note, other than payments not yet 30 days Delinquent, have been made and credited, (ii) no payment required under the MSMCH Represented Mortgage Loan has been 30 days or more Delinquent at any time since the origination of the MSMCH Represented Mortgage Loan, and (iii) the first Monthly Payment was made with respect to the MSMCH Represented Mortgage Loan on its related Due Date or within the grace period, all in accordance with the terms of the related Mortgage Note;

(2)     The MSMCH Represented Mortgage Loan is not subject to any right of rescission, set-off, counterclaim or defense, including without limitation the defense of usury, nor will the operation of any of the terms of the Mortgage Note or the Mortgage, or the exercise of any right thereunder, render either the Mortgage Note or the Mortgage unenforceable, in whole or in part and no such right of rescission, set-off, counterclaim or defense has been asserted with respect thereto, and no Mortgagor was a debtor in any state or Federal bankruptcy or insolvency proceeding at the time the MSMCH Represented Mortgage Loan was originated;

(3)     Pursuant to the terms of the Mortgage, all buildings or other improvements upon the Mortgaged Property are insured by a generally acceptable insurer against loss by fire, hazards of extended coverage and such other hazards as are customarily insured against in the jurisdiction where the related Mortgaged Property is located and acceptable to the Rating Agencies;

(4)     The Mortgage is a valid, subsisting, enforceable and perfected, first lien (with respect to a First Lien Loan) or second lien (with respect to a Second Lien Loan) on the Mortgaged Property, including all buildings and improvements on the Mortgaged Property and all installations and mechanical, electrical, plumbing, heating and air conditioning systems located in or annexed to such buildings, and all additions, alterations and replacements made at any time with respect to the foregoing. The lien of the Mortgage is subject only to:

(i)     with respect to a Second Lien Loan only, the lien of the first mortgage on the Mortgaged Property;

(ii)     the lien of current real property taxes and assessments not yet due and payable;

(iii)     covenants, conditions and restrictions, rights of way, easements and other matters of the public record as of the date of recording acceptable to

13

CONFIDENTIAL

MSM_MSSTI_20071_000182

prudent mortgage lending institutions generally and specifically referred to in the lender's title insurance policy delivered to the originator of the MSMCH Represented Mortgage Loan and (a) specifically referred to or otherwise considered in the appraisal made for the originator of the MSMCH Represented Mortgage Loan or (b) which do not adversely affect the Appraised Value of the Mortgaged Property set forth in such appraisal; and

(iv)     other matters to which like properties are commonly subject which do not materially interfere with the benefits of the security intended to be provided by the Mortgage or the use, enjoyment, value or marketability of the related Mortgaged Property.

Any security agreement, chattel mortgage or equivalent document related to and delivered in connection with the MSMCH Represented Mortgage Loan establishes and creates a valid, subsisting, enforceable and perfected first lien (with respect to a First Lien Loan) or second lien (with respect to a Second Lien Loan) and first priority (with respect to a First Lien Loan) or second priority (with respect to a Second Lien Loan) security interest on the property described therein and MSMCH has full right to sell and assign the same to the Purchaser.

(5)     The Mortgage Note and the Mortgage and any other agreement executed and delivered by a Mortgagor in connection with a MSMCH Represented Mortgage Loan are genuine, and each is the legal valid and binding obligation of the maker thereof enforceable in accordance with its terms (including, without limitation, any provisions therein relating to Prepayment Penalties). All parties to the Mortgage Note, the Mortgage and any other such related agreement had legal capacity to enter into the MSMCH Represented Mortgage Loan and to execute and deliver the Mortgage, the Mortgage and any such agreement, and the Mortgage Note, the Mortgage and any other such related agreement have been duly and properly executed by other such related parties. No fraud, error, omission, misrepresentation, negligence or similar occurrence with respect to a MSMCH Represented Mortgage Loan has taken place on the part of MSMCH, or, to the knowledge of MSMCH, any other person, including without limitation, the Mortgagor, any appraiser, any builder or developer, or any other party involved in the origination of the MSMCH Represented Mortgage Loan;

(6)     With respect to a MSMCH Represented Mortgage Loan which is not a Co-op Loan, the MSMCH Represented Mortgage Loan is covered by an ALTA lender's title insurance policy, or with respect to any MSMCH Represented Mortgage Loan for which the related Mortgaged Property is located in California a CLTA lender's title insurance policy, or other generally acceptable form of policy or insurance acceptable to Fannie Mae or Freddie Mac and each such title insurance policy is issued by a generally accepted title insurer and qualified to do business in the jurisdiction where the Mortgaged Property is located, insuring MSMCH, its successors and assigns, as to the first (with respect to a First Lien Loan) or second (with respect to a Second Lien Loan) priority lien of the Mortgage in the original principal amount of the MSMCH Represented Mortgage Loan (or to the extent a Mortgage Note provides for negative amortization, the maximum amount of negative amortization in accordance with the Mortgage), subject only to the exceptions contained in clauses (i), (ii) and (iii) of paragraph (4) of this Section 10, and in the case of Adjustable Rate MSMCH Represented Mortgage Loans, against any loss by reason of the invalidity or unenforceability of the lien resulting from the provisions of the Mortgage providing for adjustment to the Mortgage Interest Rate and Monthly Payment;

14

[TPW: NYLEGAL:688702.10] 17297-00533  11/26/2007 07:47 PM

(7)     Except as set forth in paragraph (1) above, there is no default, breach, violation or event which would permit acceleration existing under the Mortgage or the Mortgage Note and no event which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event which would permit acceleration, and neither MSMCH nor any of its Affiliates nor any of their respective predecessors, have waived any default, breach, violation or event which would permit acceleration;

(8)     The MSMCH Represented Mortgage Loan has been closed and the proceeds of the MSMCH Represented Mortgage Loan have been fully disbursed and there is no requirement for future advances thereunder, and any and all requirements as to completion of any on-site or off-site improvement and as to disbursements of any escrow funds therefor have been complied with. All costs, fees and expenses incurred in making or closing the MSMCH Represented Mortgage Loan and the recording of the Mortgage were paid, and the Mortgagor is not entitled to any refund of any amounts paid or due under the Mortgage Note or Mortgage;

(9)     There are no mechanics' or similar liens or claims which have been filed for work, labor or material (and no rights are outstanding that under the law could give rise to such liens) affecting the related Mortgaged Property which are or may be liens prior to, or equal or coordinate with, the lien of the related Mortgage;

(10)     The Mortgage contains customary and enforceable provisions such as to render the rights and remedies of the holder thereof adequate for the realization against the Mortgaged Property of the benefits of the security provided thereby, including, (i) in the case of a Mortgage designated as a deed of trust, by trustee's sale, and (ii) otherwise by judicial foreclosure. Upon default by a Mortgagor on a MSMCH Represented Mortgage Loan and foreclosure on, or trustee's sale of, the Mortgaged Property pursuant to the proper procedures, the holder of the MSMCH Represented Mortgage Loan will be able to deliver good and merchantable title to the Mortgaged Property. There is no homestead or other exemption available to a Mortgagor which would interfere with the right to sell the mortgaged property at a trustee's sale or the right to foreclose the Mortgage, subject to applicable federal and state laws and judicial precedent with respect to bankruptcy and right of redemption or similar law;

(11)     With respect to each fixed rate MSMCH Represented Mortgage Loan, the Mortgage contains an enforceable provision for the acceleration of the payment of the unpaid principal balance of the MSMCH Represented Mortgage Loan in the event that the Mortgaged Property is sold or transferred without the prior written consent of the mortgagee thereunder, and to the best of MSMCH's knowledge, such provision is enforceable;

(12)     There is no proceeding pending or, to MSMCH's knowledge, threatened for the total or partial condemnation of the Mortgaged Property. The Mortgaged Property is undamaged by waste, fire, earthquake or earth movement, windstorm, flood, tornado or other casualty so as to affect adversely the value of the Mortgaged Property as security for the MSMCH Represented Mortgage Loan or the use for which the premises were intended and each Mortgaged Property is in good repair. There have not been any condemnation proceedings with respect to the Mortgaged Property;

15

[TPW: NYLEGAL:688702.10] 17297-00533  11/26/2007 07:47 PM

(13)     The Mortgagor was not encouraged or required to select a MSMCH Represented Mortgage Loan product offered by the Originator which is a higher cost product designed for less creditworthy mortgagors, unless at the time of the MSMCH Represented Mortgage Loan's origination, such Mortgagor did not qualify taking into such facts as, without limitation, the MSMCH Represented Mortgage Loan's requirements and the Mortgagor's credit history, income, assets and liabilities and debt to income ratios for a lower cost credit product then offered by the Originator or any Affiliate of the Originator. If, at the time of loan application, the Mortgagor may have qualified for a lower cost credit product then offered by any mortgage lending Affiliate of the Originator, the Originator referred the related Mortgagor's application to such Affiliate for underwriting consideration. For a Mortgagor who seeks financing through a MSMCH Represented Mortgage Loan originator's higher-priced subprime lending channel, the Mortgagor was directed towards or offered the MSMCH Represented Mortgage Loan originator's standard mortgage line if the Mortgagor was able to qualify for one of the standard products;

(14)     [Reserved];

(15)     There are no defaults in complying with the terms of the Mortgage, and all taxes, governmental assessments, insurance premiums, water, sewer and municipal charges, leasehold payments or ground rents which previously became due and owing have been paid, or an escrow of funds has been established in an amount sufficient to pay for every such item which remains unpaid and which has been assessed but is not yet due and payable;

(16)     The terms of the Mortgage Note and Mortgage have not been impaired, waived, altered or modified in any respect, from the date of origination except by a written instrument which has been recorded, if necessary to protect the interests of the Purchaser, and which has been delivered to the Trustee or to such other Person as the Purchaser shall designate in writing, and the terms of which are reflected in the Mortgage Loan Schedule. The substance of any such waiver, alteration or modification has been approved by the issuer of the title insurer, if any, to the extent required, and its terms are reflected on the Mortgage Loan Schedule, if applicable;

(17)     The MSMCH Represented Mortgage Loan would be a "qualified mortgage," within the meaning of Section 860G(a)(3) of the Code, if transferred to a REMIC on its startup day in exchange for the regular or residual interests in the REMIC;

(18)     Solely with respect to the Fremont Mortgage Loans, the New Century Mortgage Loans and any First NLC Mortgage Loans and Accredited Mortgage Loans sold by MSMCH to the Purchaser on the Closing Date, MSMCH is the sole owner of record and holder of each such Mortgage Loan and the indebtedness evidenced by each Mortgage Note. Each such Mortgage Loan is not assigned or pledged, and MSMCH has good, indefeasible and marketable title thereto, and has full right to transfer and sell each such Mortgage Loan to the Purchaser free and clear of any encumbrance, equity, participation interest, lien, pledge, charge, claim or security interest, and has full right and authority subject to no interest or participation of, or agreement with, any other party, to sell and assign each such Mortgage Loan and following the sale of each such Mortgage Loan, the Purchaser will own such Mortgage Loan free and clear of any encumbrance, equity, participation interest, lien, pledge, charge, claim or security interest;

16

[TPW: NYLEGAL:688702.10] 17297-00533  11/26/2007 07:47 PM

CONFIDENTIAL

(19)   All improvements which were considered in determining the appraised value of the Mortgaged Property lay wholly within the boundaries and building restriction lines of the Mortgaged Property, and no improvements on adjoining properties encroach upon the Mortgaged Property. No improvement located on or being part of the Mortgaged Property is in violation of any applicable zoning law or regulation;

(20)   The Mortgage File contains an appraisal of the related Mortgaged Property signed prior to the approval of the MSMCH Represented Mortgage Loan application by a Qualified Appraiser, duly appointed by MSMCH, who had no interest, direct or indirect in the Mortgaged Property or in any loan made on the security thereof, and whose compensation is not affected by the approval or disapproval of the MSMCH Represented Mortgage Loan, and the appraisal and appraiser both satisfy the requirements of Fannie Mae or Freddie Mac and Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 and the regulations promulgated thereunder, all as in effect on the date the MSMCH Represented Mortgage Loan was originated;

(21)   No MSMCH Represented Mortgage Loan has an LTV greater than 100%;

(22)   Each MSMCH Represented Mortgage Loan that is subject to a prepayment penalty as provided in the related Mortgage Note is identified on the related Mortgage Loan Schedule. With respect to each MSMCH Represented Mortgage Loan that has a prepayment penalty feature, each such prepayment penalty is enforceable and will be enforced by MSMCH for the benefit of the Purchaser, and each prepayment penalty is permitted pursuant to federal, state and local law. Each such prepayment penalty is in an amount not more than the maximum amount permitted under applicable law and no such prepayment penalty may be imposed for a term in excess of five (5) years with respect to MSMCH Represented Mortgage Loans originated prior to October 1, 2002. With respect to MSMCH Represented Mortgage Loans originated on or after October 1, 2002, the duration of the prepayment penalty period shall not exceed three (3) years from the date of the Mortgage Note unless the MSMCH Represented Mortgage Loan was modified to reduce the prepayment penalty period to no more than three (3) years from the date of the related Mortgage Note and the Mortgagor was notified in writing of such reduction in prepayment penalty period;

(23)   No Mortgagor was required to purchase any single premium credit insurance policy (e.g. life, mortgage, disability, property, accident unemployment or health insurance product) or debt cancellation agreement as a condition of obtaining the extension of credit. No Mortgagor obtained a prepaid single-premium credit insurance policy (e.g., life, mortgage, disability, property, accident, unemployment or health insurance) in connection with the origination of the MSMCH Represented Mortgage Loan. No proceeds from any MSMCH Represented Mortgage Loan were used to purchase single premium credit insurance policies or debt cancellation agreements as part of the origination of, or as a condition to closing, such MSMCH Represented Mortgage Loan; and

(24)   No MSMCH Represented Mortgage Loan originated on or after July 1, 2004 requires the related Mortgagor to submit to arbitration to resolve any dispute arising out of or relating in any way to the MSMCH Represented Mortgage Loan transaction.

17

[TPW: NYLEGAL:688702.10] 17297-00533  11/26/2007 07:47 PM

CONFIDENTIAL

It is understood and agreed that the representations and warranties set forth in this Section 10 will inure to the benefit of the Purchaser, its successors and assigns, notwithstanding any restrictive or qualified endorsement on any Mortgage Note or assignment of Mortgage or the examination of any Mortgage File. Upon any substitution for a MSMCH Represented Mortgage Loan, the representations and warranties set forth above shall be deemed to be made by the related Mortgage Loan Seller as to any Replacement Mortgage Loan as of the date of substitution.

Upon discovery or receipt of notice by MSMCH or the Purchaser of a breach of any representation or warranty of MSMCH set forth in this Section 10 which materially and adversely affects the value of the interests of the Purchaser in any of the MSMCH Represented Mortgage Loans delivered to the Purchaser pursuant to this Agreement, the party discovering or receiving notice of such breach shall give prompt written notice to the others. In the case of any such breach of a representation or warranty set forth in this Section 10, within 90 days from the date of discovery by MSMCH, or the date MSMCH is notified by the party discovering or receiving notice of such breach (whichever occurs earlier), MSMCH will, (i) cure such breach in all material respects, (ii) purchase the affected Mortgage Loan at the applicable Purchase Price or (iii) if within two years of the Closing Date, substitute a qualifying Replacement Mortgage Loan in exchange for such MSMCH Represented Mortgage Loan. The obligations of MSMCH to cure, purchase or substitute a qualifying Replacement Mortgage Loan shall constitute the Purchaser's, the Trustee's and the Certificateholder's sole and exclusive remedy under this Agreement or otherwise respecting a breach of representations or warranties hereunder with respect to the MSMCH Represented Mortgage Loans.

With respect to any Accredited Mortgage Loan, reference is made to the Accredited Assignment, Assumption and Recognition Agreement attached hereto as Exhibit 8. In the case of any such breach of a representation or warranty set forth in this Section 10 made by Accredited with respect to an Accredited Mortgage Loan, in the event Accredited fails to cure, substitute or repurchase an Accredited Mortgage Loan within the period specified in the Accredited Assignment, Assumption and Recognition Agreement, MSMCH will cure, substitute or repurchase such Accredited Mortgage Loan in accordance with the terms of the foregoing paragraph.

Any cause of action against MSMCH or relating to or arising out of a breach by MSMCH of any representations and warranties made in this Section 10 shall accrue as to any MSMCH Represented Mortgage Loan upon (i) discovery of such breach by MSMCH or notice thereof by the party discovering such breach and (ii) failure by MSMCH to cure such breach, purchase such MSMCH Represented Mortgage Loan or substitute a qualifying Replacement Mortgage Loan pursuant to the terms hereof.

SECTION 11.    Assignment of Accredited Assignment, Assumption and Recognition Agreement and the Fremont Investment & Loan Bring Down Letter. EMC, MSMCH and BSABS I hereby agree that the following agreements are hereby assigned to Deutsche Bank National Trust Company, not individually but solely as Trustee for the holders of Morgan Stanley Structured Trust I 2007-1, Asset-Backed Certificates, Series 2007-1:

(a)    Accredited Assignment, Assumption and Recognition Agreement.

18

CONFIDENTIAL

MSM_MSSTI_20071_000183

(b)     Bring Down and Indemnification Letter, dated July 6, 2007, between Fremont Investment & Loan and MSMCH.

SECTION 12.     [Reserved].

SECTION 13.     <u>Representations and Warranties Concerning the Purchaser</u>. As of the date hereof and as of the Closing Date, the Purchaser represents and warrants to the Mortgage Loan Sellers as follows:

(a)     The Purchaser (i) is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware and (ii) is qualified and in good standing to do business in each jurisdiction where such qualification is necessary, except where the failure so to qualify would not reasonably be expected to have a material adverse effect on the Purchaser's business as presently conducted or on the Purchaser's ability to enter into this Agreement and to consummate the transactions contemplated hereby;

(b)     The Purchaser has full power to own its property, to carry on its business as presently conducted and to enter into and perform its obligations under this Agreement;

(c)     The execution and delivery by the Purchaser of this Agreement has been duly authorized by all necessary action on the part of the Purchaser; and neither the execution and delivery of this Agreement, nor the consummation of the transactions herein contemplated, nor compliance with the provisions hereof, will conflict with or result in a breach of, or constitute a default under, any of the provisions of any law, governmental rule, regulation, judgment, decree or order binding on the Purchaser or its properties or the certificate of formation or limited liability company agreement of the Purchaser, except those conflicts, breaches or defaults which would not reasonably be expected to have a material adverse effect on the Purchaser's ability to enter into this Agreement and to consummate the transactions contemplated hereby or thereby;

(d)     The execution, delivery and performance by the Purchaser of this Agreement and the consummation of the transactions contemplated hereby or thereby do not require the consent or approval of, the giving of notice to, the registration with, or the taking of any other action in respect of, any state, federal or other governmental authority or agency, except those consents, approvals, notices, registrations or other actions as have already been obtained, given or made;

(e)     This Agreement has been duly executed and delivered by the Purchaser and, assuming due authorization, execution and delivery by the Mortgage Loan Sellers, constitutes a valid and binding obligation of the Purchaser enforceable against it in accordance with its terms (subject to applicable bankruptcy and insolvency laws and other similar laws affecting the enforcement of the rights of creditors generally); and

(f)     There are no actions, suits or proceedings pending or, to the knowledge of the Purchaser, threatened against the Purchaser, before or by any court, administrative agency, arbitrator or governmental body (i) with respect to any of the transactions contemplated by this Agreement or (ii) with respect to any other matter which in the judgment of the Purchaser could

19

CONFIDENTIAL

reasonably be expected to be determined adversely to the Purchaser and if determined adversely to the Purchaser materially and adversely affect the Purchaser's ability to perform its obligations under this Agreement; and the Purchaser is not in default with respect to any order of any court, administrative agency, arbitrator or governmental body so as to materially and adversely affect the transactions contemplated by this Agreement.

SECTION 14.   <u>Conditions to Closing</u>.

(a)   The obligations of the Purchaser under this Agreement will be subject to the satisfaction, on or prior to the Closing Date, of the following conditions:

(1)   Each of the obligations of each Mortgage Loan Seller required to be performed at or prior to the Closing Date pursuant to the terms of this Agreement shall have been duly performed and complied with in all material respects; all of the representations and warranties of each Mortgage Loan Seller under this Agreement shall be true and correct as of the date or dates specified in all material respects; and no event shall have occurred which, with notice or the passage of time, would constitute a default under this Agreement or the Pooling and Servicing Agreement; and the Purchaser shall have received certificates to that effect signed by authorized officers of each of the Mortgage Loan Sellers.

(2)   The Purchaser shall have received all of the following closing documents, in such forms as are agreed upon and reasonably acceptable to the Purchaser, duly executed by all signatories other than the Purchaser as required pursuant to the respective terms thereof:

(i)   The Pooling and Servicing Agreement, in form and substance reasonably satisfactory to the Trustee and the Purchaser, and all documents required thereby duly executed by all signatories;

(ii)   A certificate of an officer of EMC dated as of the Closing Date, in a form reasonably acceptable to the Purchaser, and attached thereto the resolutions of EMC authorizing the transactions contemplated by this Agreement, together with copies of the articles of incorporation, by-laws and certificate of good standing of EMC;

(iii)   A certificate of an officer of MSMCH dated as of the Closing Date, in a form reasonably acceptable to the Purchaser, and attached thereto the resolutions of MSMCH authorizing the transactions contemplated by this Agreement, together with copies of the written consent of the sole member, articles of incorporation, operating agreement and certificate of good standing of MSMCH;

(iv)   One or more opinions of counsel from the Mortgage Loan Sellers' counsel otherwise in form and substance reasonably satisfactory to the Purchaser, the Trustee and each Rating Agency;

(v)   A letter from each of the Rating Agencies giving each Class of Certificates set forth on Schedule A hereto the rating set forth therein; and

20

[TPW: NYLEGAL:688702.10] 17297-00533   11/26/2007 07:47 PM

CONFIDENTIAL

(vi)    Such other documents, certificates (including additional representations and warranties) and opinions as may be reasonably necessary to secure the intended ratings from each Rating Agency for the Certificates.

(3)    The Certificates to be sold to Bear Stearns pursuant to the Underwriting Agreement and the Purchase Agreement shall have been issued and sold to Bear Stearns.

(4)    Each Mortgage Loan Seller shall have furnished to the Purchaser such other certificates of its officers or others and such other documents and opinions of counsel to evidence fulfillment of the conditions set forth in this Agreement and the transactions contemplated hereby as the Purchaser and their respective counsel may reasonably request.

(b)    The obligations of each Mortgage Loan Seller under this Agreement shall be subject to the satisfaction, on or prior to the Closing Date, of the following conditions:

(1)    The obligations of the Purchaser required to be performed by it on or prior to the Closing Date pursuant to the terms of this Agreement shall have been duly performed and complied with in all material respects, and all of the representations and warranties of the Purchaser under this Agreement shall be true and correct in all material respects as of the date hereof and as of the Closing Date, and no event shall have occurred which would constitute a breach by it of the terms of this Agreement or the Pooling and Servicing Agreement, and each Mortgage Loan Seller shall have received a certificate to that effect signed by an authorized officer of the Purchaser.

(2)    Each Mortgage Loan Seller shall have received copies of all of the following closing documents, in such forms as are agreed upon and reasonably acceptable to each Mortgage Loan Seller, duly executed by all signatories other than the related Mortgage Loan Seller as required pursuant to the respective terms thereof:

(i)    The Pooling and Servicing Agreement, in form and substance reasonably satisfactory to the Mortgage Loan Sellers, the Master Servicer and the Trustee, and all documents required thereby duly executed by all signatories;

(ii)    A certificate of an officer of the Purchaser dated as of the Closing Date, in a form reasonably acceptable to each Mortgage Loan Seller, and attached thereto the written consent of the member of the Purchaser authorizing the transactions contemplated by this Agreement, the Pooling and Servicing Agreement, together with copies of the Purchaser's certificate of formation, limited liability company agreement and evidence as to the good standing of the Purchaser dated as of a recent date;

(iii)    One or more opinions of counsel from the Purchaser's counsel in form and substance reasonably satisfactory to each Mortgage Loan Seller, the Trustee and the Rating Agencies; and

21

[TPW: NYLEGAL:688702.10] 17297-00533  11/26/2007 07:47 PM

CONFIDENTIAL

(iv)    Such other documents, certificates (including additional representations and warranties) and opinions as may be reasonably necessary to secure the intended rating from each Rating Agency for the Certificates.

SECTION 15.       Fees and Expenses.  EMC and MSMCH shall pay fees and expenses as previously agreed.

SECTION 16.       Accountants' Letters.

(a)      Deloitte & Touche LLP will review the characteristics of a sample of the Mortgage Loans described in the Mortgage Loan Schedule and will compare those characteristics to the description of the Mortgage Loans contained in the Free Writing Prospectus under the captions "Summary—The Mortgage Loans" and "The Mortgage Pool" and in Schedule A thereto.  Deloitte & Touche LLP will review the characteristics of a sample of the Mortgage Loans described in the Mortgage Loan Schedule and will compare those characteristics to the description of the Mortgage Loans contained in the Prospectus Supplement under the captions "Summary—The Mortgage Loans" and "The Mortgage Pool" and in Schedule A thereto.  EMC or MSMCH, as applicable, will cooperate with the Purchaser in making available all information and taking all steps reasonably necessary to permit such accountants to complete the review and to deliver the letters required of them under the Underwriting Agreement.  Deloitte & Touche LLP will also confirm certain calculations as set forth under the caption "Yield, Prepayment and Maturity Considerations" in the Free Writing Prospectus and in the Prospectus Supplement.

SECTION 17.       [Reserved].

SECTION 18.       Notices.  All demands, notices and communications hereunder shall be in writing but may be delivered by facsimile transmission subsequently confirmed in writing. Notices to EMC shall be directed to EMC Mortgage Corporation, 2780 Lake Vista Drive, Lewisville, Texas 75067, (Facsimile: (241-626-4714)) Attention: General Counsel; notices to MSMCH shall be directed to Morgan Stanley Mortgage Capital Holdings LLC, 1585 Broadway, Floor 10, New York, New York 10036 (Facsimile: (212) 507-8305) Attention: Steven Shapiro; and notices to the Purchaser shall be directed to Bear Stearns Asset Backed Securities I LLC, 383 Madison Avenue, New York, New York 10179, (Facsimile: (212-272-7206)), Attention: Chief Counsel; or to any other address as may hereafter be furnished by one party to the other party by like notice. Any such demand, notice or communication hereunder shall be deemed to have been received on the date received at the premises of the addressee (as evidenced, in the case of registered or certified mail, by the date noted on the return receipt) provided that it is received on a business day during normal business hours and, if received after normal business hours, then it shall be deemed to be received on the next business day.

SECTION 19.       Transfer of Mortgage Loans.  The Purchaser retains the right to assign the Mortgage Loans and any or all of its interest under this Agreement to the Trustee without the consent of the Mortgage Loan Sellers, and, upon such assignment, the Trustee shall succeed to the applicable rights and obligations of the Purchaser hereunder; provided, however, the Purchaser shall remain entitled to the benefits set forth in Sections 12, 14 and 18 hereto and as provided in Section 2(a). Notwithstanding the foregoing, the sole and

22

CONFIDENTIAL

MSM_MSSTI_20071_000183

exclusive right and remedy of the Trustee with respect to a breach of representation or warranty of the Mortgage Loan Sellers shall be the cure, purchase or substitution obligations contained in Sections 5 and 7 hereof.

SECTION 20. <u>Termination</u>. This Agreement may be terminated (a) by the mutual consent of the parties hereto prior to the Closing Date, (b) by the Purchaser, if the conditions to the Purchaser's obligation to close set forth under Section 11(a) hereof are not fulfilled as and when required to be fulfilled or (c) by any Mortgage Loan Seller, if the conditions to the Mortgage Loan Sellers' obligation to close set forth under Section 11(b) hereof are not fulfilled as and when required to be fulfilled. In the event of a termination pursuant to this Section 20, each party shall be responsible for its own expenses.

SECTION 21. <u>Representations, Warranties and Agreements to Survive Delivery</u>. All representations, warranties and agreements contained in this Agreement, or contained in certificates of officers of the Mortgage Loan Sellers submitted pursuant hereto, shall remain operative and in full force and effect and shall survive delivery of the Mortgage Loans to the Purchaser (and by the Purchaser to the Trustee). Subsequent to the delivery of the Mortgage Loans to the Purchaser, each of the representations and warranties contained herein with respect to the Mortgage Loans shall be deemed to relate to the Mortgage Loans actually delivered to the Purchaser and included in the Mortgage Loan Schedule and any Replacement Mortgage Loan.

SECTION 22. <u>Severability</u>. If any provision of this Agreement shall be prohibited or invalid under applicable law, this Agreement shall be ineffective only to such extent, without invalidating the remainder of this Agreement.

SECTION 23. <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which will be an original, but which together shall constitute one and the same agreement.

SECTION 24. <u>Amendment</u>. This Agreement cannot be amended or modified in any manner without the prior written consent of each party.

SECTION 25. <u>GOVERNING LAW</u>. THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO CONFLICT OF LAWS PRINCIPLES THEREOF OTHER THAN SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW.

SECTION 26. <u>Further Assurances</u>. Each of the parties agrees to execute and deliver such instruments and take such actions as another party may, from time to time, reasonably request in order to effectuate the purpose and to carry out the terms of this Agreement including any amendments hereto which may be required by either Rating Agency.

SECTION 27. <u>Successors and Assigns</u>. This Agreement shall bind and inure to the benefit of and be enforceable by each of the Mortgage Loan Sellers and the Purchaser and their permitted successors and assigns and, to the extent specified in Section 14

23

CONFIDENTIAL

MSM_MSSTI_20071_0001837

hereof, Bear Stearns, and their directors, officers and controlling persons (within the meaning of federal securities laws). The Mortgage Loan Sellers acknowledge and agree that the Purchaser may assign its rights under this Agreement (including, without limitation, with respect to their representations and warranties respecting the Mortgage Loans) to the Trustee on behalf of the Certificateholders. Any person into which any Mortgage Loan Seller may be merged or consolidated (or any person resulting from any merger or consolidation involving such Mortgage Loan Seller), any person resulting from a change in form of such Mortgage Loan Seller or any person succeeding to the business of such Mortgage Loan Seller, shall be considered the "successor" of such Mortgage Loan Seller, hereunder and shall be considered a party hereto without the execution or filing of any paper or any further act or consent on the part of any party hereto. Except as provided in the two preceding sentences, this Agreement cannot be assigned, pledged or hypothecated to a third party by either party hereto without the written consent of the other parties to this Agreement and any such assignment or purported assignment shall be deemed null and void.

SECTION 28.    The Mortgage Loan Sellers.  EMC will keep in full force and effect its existence, all rights and franchises as a corporation under the laws of the State of its incorporation and will obtain and preserve its qualification to do business as a foreign corporation in each jurisdiction in which such qualification is necessary to perform its obligations under this Agreement.  MSMCH will keep in full force and effect its existence, all rights and franchises as a limited liability company under the laws of the State of its formation and will obtain and preserve its qualification to do business as a foreign limited liability company in each jurisdiction in which such qualification is necessary to perform its obligations under this Agreement.

SECTION 29.    Entire Agreement.  This Agreement contains the entire agreement and understanding between the parties with respect to the subject matter hereof, and supersedes all prior and contemporaneous agreements, understandings, inducements and conditions, express or implied, oral or written, of any nature whatsoever with respect to the subject matter hereof.

SECTION 30.    No Partnership.  Nothing herein contained shall be deemed or construed to create a partnership or joint venture between the parties hereto.

24

CONFIDENTIAL

MSM_MSSTI_20071_000183

IN WITNESS WHEREOF, the parties hereto have caused their names to be signed hereto by their respective duly authorized officers as of the date first above written.

EMC MORTGAGE CORPORATION

By: _____
Name: Jacqueline Oliver
Title: Senior Vice President


BEAR STEARNS ASSET BACKED
SECURITIES I LLC

By: _____
Name: Baron Silverstein
Title:   Vice President


MORGAN STANLEY MORTGAGE
CAPITAL HOLDINGS LLC

By: _____
Name:
Title:


MORTGAGE LOAN PURCHASE AGREEMENT

CONFIDENTIAL

IN WITNESS WHEREOF, the parties hereto have caused their names to be signed hereto by their respective duly authorized officers as of the date first above written.

EMC MORTGAGE CORPORATION

By:_____
Name:
Title:


BEAR STEARNS ASSET BACKED
SECURITIES I LLC

By:_____
Name: Baron Silverstein
Title:   Vice President


MORGAN STANLEY MORTGAGE
CAPITAL HOLDINGS LLC

By:_____
Name:
Title:

MORTGAGE LOAN PURCHASE AGREEMENT

CONFIDENTIAL

IN WITNESS WHEREOF, the parties hereto have caused their names to be signed hereto by their respective duly authorized officers as of the date first above written.

EMC MORTGAGE CORPORATION

By:_____
Name:
Title:

BEAR STEARNS ASSET BACKED
SECURITIES I LLC

By:_____
Name: Baron Silverstein
Title:   Vice President

MORGAN STANLEY MORTGAGE
CAPITAL HOLDINGS LLC

By:_____
Name: Steven Shapiro
Title: Managing Director

MORTGAGE LOAN PURCHASE AGREEMENT

CONFIDENTIAL

## EXHIBIT 1
## CONTENTS OF MORTGAGE FILE

With respect to each Mortgage Loan, the Mortgage File shall include each of the following items, which shall be available for inspection by the Purchaser or its designee, and which shall be delivered to the Purchaser or its designee pursuant to the terms of this Agreement.

(i)     Copies of the Mortgage Loan Documents (as defined in the Underlying EMC Purchase Agreement);

(ii)     Residential loan application;

(iii)     Mortgage Loan closing statement;

(iv)     Verification of employment and income, if required;

(v)     Verification of acceptable evidence of source and amount of downpayment;

(vi)     Credit report on Mortgagor;

(vii)     Residential appraisal report;

(viii)     Photograph of the Mortgaged Property and photographs of comparable properties;

(ix)     Survey of the Mortgaged Property, unless a survey is not required by the title insurer;

(x)     Copy of each instrument necessary to complete identification of any exception set forth in the exception schedule in the title policy, i.e., map or plat, restrictions, easements, home owner association declarations, etc.;

(xi)     Copies of all required disclosure statements;

(xii)     If applicable, termite report, structural engineer's report, water potability; and septic certification;

(xiii)     Sales contract, if applicable;

(xiv)     Copy of the owner's title insurance policy or attorney's opinion of title and abstract of title, as applicable; and

(xv)     Evidence of electronic notation of the hazard insurance policy, and, if required by law, evidence of the flood insurance policy.

E-1-1

CONFIDENTIAL

EXHIBIT 2
MORTGAGE LOAN SCHEDULE INFORMATION

The Mortgage Loan Schedule shall set forth the following information with respect to each Mortgage Loan:

(a)     the Seller's Mortgage Loan identifying number;

(b)     the Mortgagor's name;

(c)     the street address of the Mortgaged Property including the city, state and zip code;

(d)     a code indicating whether the Mortgaged Property is owner-occupied, investment property or a second home;

(e)     the number and type of residential units constituting the Mortgaged Property (e.g. single family residence, a two- to four-family dwelling, condominium, planned unit development or cooperative);

(f)     the original months to maturity or the remaining months to maturity from the Cut-off Date, in any case based on the original amortization schedule and, if different, the maturity expressed in the same manner but based on the actual amortization schedule;

(g)     with respect to each First Lien Loan, the Loan-to- Value Ratio at origination, and with respect to each Second Lien Loan, the CLTV at origination;

(h)     the Mortgage Interest Rate as of the Cut-off Date;

(i)     the date on which the first Monthly Payment was due on the Mortgage Loan and, if such date is not consistent with the Due Date currently in effect, the Due Date;

(j)     the stated maturity date;

(k)     the amount of the Monthly Payment as of the Cut-off Date;

(l)     the last payment date on which a payment was actually applied to the outstanding principal balance;

(m)     the original principal amount of the Mortgage Loan;

(n)     the actual principal balance of the Mortgage Loan as of the close of business on the Cut-off Date, after deduction of payments of principal collected on or before the Cut-off Date;

(o)     with respect to Adjustable Rate Mortgage Loans, the Interest Rate Adjustment Date;

(p)     with respect to Adjustable Rate Mortgage Loans, the Gross Margin;

(q)     with respect to Adjustable Rate Mortgage Loans, the Lifetime Rate Cap under the

E-2-1

CONFIDENTIAL

terms of the Mortgage Note;

(r)     with respect to Adjustable Rate Mortgage Loans, a code indicating the type of Index;

(s)     the type of Mortgage Loan (i.e., Fixed or Adjustable Rate Mortgage Loan, First or Second Lien Loan);

(t)     a code indicating the purpose of the loan (i.e., purchase, rate/term refinance or cash-out refinance);

(u)     the applicable Originator;

(v)     the applicable Servicer;

(w)     the applicable Custodian;

(x)     the Purchase Date; and

(y)     the Appraised Value.

Such schedule also shall set forth for all of the Mortgage Loans, the total number of Mortgage Loans, the total of each of the amounts described under (o) above, the weighted average by principal balance as of the Cut-off Date of the rate described under (h) above, and the weighted average remaining term to maturity by unpaid principal balance as of the Cut-off Date.

E-2-2

[TPW: NYLEGAL:688702.10] 17297-00533  11/26/2007 07:47 PM

CONFIDENTIAL

MSM_MSSTI_20071_000184

<u>EXHIBIT 3</u>

UNDERLYING EMC PURCHASE AGREEMENT

E-3-1

[TPW: NYLEGAL:688702.10] 17297-00533  11/26/2007 07:47 PM

CONFIDENTIAL

**EXECUTION COPY**

MORTGAGE LOAN PURCHASE AND WARRANTIES AGREEMENT

EMC MORTGAGE CORPORATION,

Purchaser

MORGAN STANLEY MORTGAGE CAPITAL INC.,

Seller

Dated as of May 1, 2007

Conventional,
Fixed and Adjustable Rate
Residential Mortgage Loans

USActive 8685293.11

CONFIDENTIAL

# TABLE OF CONTENTS

Page

SECTION 1.     DEFINITIONS..................................................................................1

SECTION 2.     AGREEMENT TO PURCHASE MORTGAGE LOANS..................................11

SECTION 3.     MORTGAGE SCHEDULE. ............................................................11

SECTION 4.     PURCHASE PRICE. .....................................................................11

SECTION 5.     EXAMINATION OF MORTGAGE FILES.......................................12

SECTION 6.     CONVEYANCE FROM SELLER TO PURCHASER. ....................12

SECTION 7.     SERVICING OF THE MORTGAGE LOANS. ................................13

SECTION 8.     REPRESENTATIONS, WARRANTIES AND COVENANTS OF THE SELLER; REMEDIES FOR BREACH...............................................13

SECTION 9.     CLOSING .......................................................................................17

SECTION 10.    CLOSING DOCUMENTS. ..............................................................18

SECTION 11.    COSTS. ............................................................................................18

SECTION 12.    COOPERATION OF SELLER WITH A RECONSTITUTION.........18

SECTION 13.    GRANT OF SECURITY INTEREST. .............................................20

SECTION 14.    NOTICES..........................................................................................20

SECTION 15.    SEVERABILITY CLAUSE. ............................................................21

SECTION 16.    COUNTERPARTS. ..........................................................................21

SECTION 17.    INTENTION OF THE PARTIES......................................................21

SECTION 18.    SUCCESSORS AND ASSIGNS; ASSIGNMENT OF AGREEMENT. ..........22

SECTION 19.    WAIVERS. ........................................................................................22

SECTION 20.    EXHIBITS. ........................................................................................22

SECTION 21.    GENERAL INTERPRETIVE PRINCIPLES. ..................................22

SECTION 22.    REPRODUCTION OF DOCUMENTS............................................23

CONFIDENTIAL

MSM_MSSTI_20071_000184

SECTION 23.   FURTHER AGREEMENTS. ...................................................................23

SECTION 24.   RECORDATION OF ASSIGNMENTS OF MORTGAGE. ...............................23

SECTION 25.   NO SOLICITATION. .....................................................................23

SECTION 26.   WAIVER OF TRIAL BY JURY. ........................................................24

SECTION 27.   GOVERNING LAW JURISDICTION; CONSENT TO SERVICE OF
              PROCESS ...........................................................................24

SECTION 28.   PRIVACY ACT COMPLIANCE. .........................................................25

EXHIBITS

EXHIBIT A-1   MORTGAGE LOAN DOCUMENTS

EXHIBIT A-2   CONTENTS OF EACH MORTGAGE FILE

EXHIBIT B     MORTGAGE LOAN SCHEDULE

EXHIBIT C     PRIOR PURCHASE AGREEMENTS AND SERVICING AGREEMENTS

EXHIBIT D     FORM OF ASSIGNMENT AND ASSUMPTION AGREEMENT

EXHIBIT E     NON-TRANSFERRED LOANS

EXHIBIT F     MORTGAGE LOAN REPRESENTATIONS AND WARRANTIES

CONFIDENTIAL

MSM_MSSTI_20071_000184

<u>MORTGAGE LOAN PURCHASE AND WARRANTIES AGREEMENT</u>

This MORTGAGE LOAN PURCHASE AND WARRANTIES AGREEMENT, dated as of May 1, 2007 ("Agreement"), is between EMC Mortgage Corporation, a Delaware corporation (the "Purchaser"), and Morgan Stanley Mortgage Capital Inc., a New York corporation (the "Seller").

<u>W I T N E S S E T H</u>:

WHEREAS, the Seller has purchased certain conventional fixed and adjustable rate residential first and second lien mortgage loans (the "Mortgage Loans") from various originators (each, an "Originator") on certain purchase dates (each, a "Purchase Date") pursuant to the Prior Purchase Agreements;

WHEREAS, the Seller desires to sell to the Purchaser, and the Purchaser desires to purchase from the Seller, the Mortgage Loans on a servicing retained basis as described herein;

WHEREAS, each Mortgage Loan is secured by a mortgage, deed of trust or other security instrument creating a first or second lien on a residential dwelling located in the jurisdiction indicated on the Mortgage Loan Schedule; and

WHEREAS, the Purchaser and the Seller wish to prescribe the manner of the conveyance and control of the Mortgage Loans.

NOW, THEREFORE, in consideration of the premises and mutual agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Purchaser and the Seller agree as follows:

SECTION 1.   <u>Definitions</u>.

For purposes of this Agreement the following capitalized terms shall have the respective meanings set forth below.

<u>Accepted Servicing Practices</u>:   With respect to any Mortgage Loan, those mortgage servicing practices which are in accordance with accepted mortgage servicing practices of prudent mortgage lending institutions which service mortgage loans of the same type as such Mortgage Loan in the jurisdiction where the related Mortgaged Property is located.

<u>Adjustable Rate Mortgage Loan</u>:   A Mortgage Loan purchased pursuant to this Agreement, the Mortgage Interest Rate of which is adjusted from time to time in accordance with the terms of the related Mortgage Note.

USActive 8685293.11

Affiliate: With respect to any specified Person, any other Person controlling or controlled by or under common control with such specified Person. For the purposes of this definition, "control" when used with respect to any specified Person means the power to direct the management and policies of such Person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

Agreement: This Mortgage Loan Purchase and Warranties Agreement including all exhibits, schedules, amendments and supplements hereto.

ALTA: The American Land Title Association or any successor thereto.

Appraised Value: The value set forth in an appraisal made in connection with the origination of the related Mortgage Loan as the value of the Mortgaged Property.

Assignment and Assumption Agreement: As defined in Subsection 6.01.

Assignment of Mortgage: An individual assignment of the Mortgage, notice of transfer or equivalent instrument in recordable form and in blank, sufficient under the laws of the jurisdiction in which the related Mortgaged Property is located to give record notice of the sale of the Mortgage to the Purchaser.

Business Day: Any day other than (i) a Saturday or Sunday or (ii) a day on which banking and savings and loan institutions in the State of New York or State of Texas are authorized or obligated by law or executive order to be closed.

Closing Date: May 31, 2007

CLTV: As of any date and as to any Second Lien Loan, the ratio, expressed as a percentage, of the (a) sum of (i) the outstanding principal balance of the Second Lien Loan and (ii) the outstanding principal balance as of such date of any mortgage loan or mortgage loans that are senior or equal in priority to the Second Lien Loan and which are secured by the same Mortgaged Property to (b) the Appraised Value as determined pursuant to the Underwriting Guidelines of the related Mortgaged Property as of the origination of the Second Lien Loan.

Code: The Internal Revenue Code of 1986, as amended.

Condemnation Proceeds: All awards, compensation and settlements in respect of a taking of all or part of a Mortgaged Property, whether permanent or temporary, partial or entire, by exercise of the power of condemnation or the right of eminent domain, to the extent not required to be released to a Mortgagor in accordance with the terms of the related Mortgage Loan Documents.

Co-op: A private, cooperative housing corporation, having only one class of stock outstanding, which owns or leases land and all or part of a building or buildings, including apartments, spaces used for commercial purposes and common areas therein and whose board of directors authorizes the sale of stock and the issuance of a Co-op Lease.

CONFIDENTIAL

Co-op Lease:  With respect to a Co-op Loan, the lease with respect to a dwelling unit occupied by the Mortgagor and relating to the stock allocated to the related dwelling unit.

Co-op Loan:  A Mortgage Loan secured by the pledge of stock allocated to a dwelling unit in a residential cooperative housing corporation and a collateral assignment of the related Co-op Lease.

Co-op UCC Filing:  With respect to a Co-op Loan, a financing statement in the form of a UCC-1 filed pursuant to the Uniform Commercial Code to perfect a security interest in the relevant Co-op stock and Co-op Lease.

Covered Loan:  A Mortgage Loan categorized as Covered pursuant to Appendix E of Standard & Poor's Glossary.

Custodian:  With respect to each Mortgage Loan, the custodian specified on the Mortgage Loan Schedule attached as Exhibit B hereto.

Cut-off Date:  June 1, 2007.

Deleted Mortgage Loan:  A Mortgage Loan that is repurchased or to be repurchase or replaced with a Qualified Substitute Mortgage Loan by the Seller in accordance with the terms of this Agreement.

Delinquent:  With respect to any Mortgage Loan, means any Monthly Payment due on a Due Date that is not made by the close of business on the next scheduled Due Date for that Mortgage Loan.

Due Date:  The day of the month on which the Monthly Payment is due on a Mortgage Loan, exclusive of any days of grace.

Escrow Payments:  With respect to any Mortgage Loan, the amounts constituting ground rents, taxes, assessments, water rates, sewer rents, municipal charges, mortgage insurance premiums, fire and hazard insurance premiums, condominium charges, and any other payments required to be escrowed by the Mortgagor with the Mortgagee pursuant to the Mortgage or any other document.

Fannie Mae:  The Federal National Mortgage Association, or any successor thereto.

FHA:  The Federal Housing Administration, an agency within the United States Department of Housing and Urban Development, or any successor thereto and including the Federal Housing Commissioner and the Secretary of Housing and Urban Development where appropriate under the FHA Regulations.

First Lien Loan:  A Mortgage Loan secured by a first lien Mortgage on the related Mortgaged Property.

CONFIDENTIAL                                                                 MSM_MSSTI_20071_000185

Fixed Rate Mortgage Loan:  A fixed rate mortgage loan purchased pursuant to this Agreement.

FPD:  First payment default provisions regarding certain Mortgage Loans, as described in Subsection 8.03.

Freddie Mac:  The Federal Home Loan Mortgage Corporation, or any successor thereto.

Gross Margin:  With respect to each Adjustable Rate Mortgage Loan, the fixed percentage amount set forth in the related Mortgage Note which amount is added to the Index in accordance with the terms of the related Mortgage Note to determine on each Interest Rate Adjustment Date the Mortgage Interest Rate for such Mortgage Loan.

Group 1 Mortgage Loans:  Mortgage Loans purchased by the Seller from Aames Capital Corporation, Aegis Mortgage Corporation, Decision One Mortgage Company, LLC, Meritage Mortgage Corporation, MILA, Inc., NC Capital Corporation and Option One Mortgage Corporation, Option One Owner Trust 2001-1A, Option One Owner Trust 2001-1B, Option One Owner Trust 2001-2, Option One Owner Trust 2002-3, Option One Owner Trust 2003-4 and Option One Owner Trust 2003-5.

High Cost Loan:  A Mortgage Loan (a) covered by the Home Ownership and Equity Protection Act of 1994 ("HOEPA"), (b) classified as a "high cost home," "threshold," "covered," (excluding New Jersey "Covered Home Loans" as that term was defined in clause (1) of the definition of that term in the New Jersey Home Ownership Security Act of 2002 that were originated between November 26, 2003 and July 7, 2004), "high risk home," "predatory" or similar loan under any other applicable state, federal or local law which expressly exposes assignees of mortgage loans to civil or criminal liability or damages or to regulatory action or enforcement proceedings or penalties, or (c) categorized as High Cost pursuant to Appendix E of Standard & Poor's Glossary.

HUD:  The Department of Housing and Urban Development, or any federal agency or official thereof which may from time to time succeed to the functions thereof with regard to Mortgage Insurance issued by the FHA.  The term "HUD," for purposes of this Agreement, is also deemed to include subdivisions thereof such as the FHA and Government National Mortgage Association.

Index:  The index indicated in the related Mortgage Note for each Adjustable Rate Mortgage Loan.

Insurance Proceeds:  With respect to each Mortgage Loan, proceeds of insurance policies insuring the Mortgage Loan or the related Mortgaged Property.

Interest Rate Adjustment Date:  With respect to each Adjustable Rate Mortgage Loan, the date, specified in the related Mortgage Note and the Mortgage Loan Schedule, on which the Mortgage Interest Rate is adjusted.

CONFIDENTIAL

Interim Funder:  With respect to each MERS Designated Mortgage Loan, the Person named on the MERS System as the interim funder pursuant to the MERS Procedures Manual.

Investor:  With respect to each MERS Designated Mortgage Loan, the Person named on the MERS System as the investor pursuant to the MERS Procedures Manual.

Letter Agreement:  That certain letter agreement, dated as of May 30, 2007, between Morgan Stanley & Co. Incorporated and Bear, Stearns & Co. Inc., related to a proposed Securitization Transaction.

Lifetime Rate Cap:  The provision of each Mortgage Note related to an Adjustable Rate Mortgage Loan which provides for an absolute maximum Mortgage Interest Rate thereunder.  The Mortgage Interest Rate during the terms of each Adjustable Rate Mortgage Loan shall not at any time exceed the Mortgage Interest Rate at the time of origination of such Adjustable Rate Mortgage Loan by more than the amount *per annum* set forth on the Mortgage Loan Schedule.

Liquidation Proceeds:  The proceeds received in connection with the liquidation of a defaulted Mortgage Loan, whether through the sale or assignment of such Mortgage Loan, trustee's sale, foreclosure sale or otherwise or the sale of the related Mortgaged Property if the Mortgaged Property is acquired in satisfaction of the Mortgage Loan.

Loan-to-Value Ratio:  With respect to any Mortgage Loan, as of any date of determination, the ratio (expressed as a percentage) the numerator of which is the outstanding principal balance of the Mortgage Loan as of the Cut-off Date (unless otherwise indicated), and the denominator of which is the lesser of (a) the Appraised Value of the Mortgaged Property at origination and (b) if the Mortgage Loan was made to finance the acquisition of the related Mortgaged Property, the purchase price of the Mortgaged Property.

Manufactured Home: A single family residential unit that is constructed in a factory in sections in accordance with the Federal Manufactured Home Construction and Safety Standards adopted on July 15, 1976, by the Department of Housing and Urban Development ("HUD Code"), as amended in 2000, which preempts state and local building codes. Each unit is identified by the presence of a HUD Plate/Compliance Certificate label.  The sections are then transported to the site and joined together and affixed to a pre-built permanent foundation (which satisfies the manufacturer's requirements and all state, county, and local building codes and regulations).  The manufactured home is built on a non-removable, permanent frame chassis that supports the complete unit of walls, floors, and roof.  The underneath part of the home may have running gear (wheels, axles, and brakes) that enable it to be transported to the permanent site. The wheels and hitch are removed prior to anchoring the unit to the permanent foundation.  The manufactured home must be classified as real estate and taxed accordingly.  The permanent foundation may be on land owned by the Mortgagor or may be on leased land.

MERS:  Mortgage Electronic Registration Systems, Inc., a Delaware corporation, and its successors in interest.

CONFIDENTIAL

MSM_MSSTI_20071_000185

MERS Designated Mortgage Loan:  Mortgage Loans for which (a) the Seller has designated or will designate MERS as, and has taken or will take such action as is necessary to cause MERS to be, the mortgagee of record, as nominee for the Seller, in accordance with MERS Procedure Manual and (b) the Seller has designated or will designate the Purchaser as the Investor on the MERS System.

MERS Procedure Manual:  The MERS Procedures Manual, as it may be amended, supplemented or otherwise modified from time to time.

MERS System:  MERS mortgage electronic registry system, as more particularly described in the MERS Procedures Manual.

Monthly Payment:  With respect to any Mortgage Loan, the scheduled payment of principal and interest payable by a Mortgagor under the related Mortgage Note on each Due Date.

Mortgage:  With respect to a Mortgage Loan that is not a Co-op Loan, the mortgage, deed of trust or other instrument securing a Mortgage Note, which creates a first lien on the Mortgaged Property.  With respect to a Co-op Loan, the Security Agreement.

Mortgage File:  With respect to any Mortgage Loan, the Mortgage Loan Documents and the items listed in Exhibit A-2 hereto (to the extent in the possession of the applicable Servicer) and any additional documents required to be added to the Mortgage File pursuant to this Agreement.

Mortgage Interest Rate:  With respect to each Mortgage Loan, the annual rate at which interest accrues on such Mortgage Loan from time to time in accordance with the provisions of the related Mortgage Note.

Mortgage Interest Rate Cap:  With respect to an Adjustable Rate Mortgage Loan, the limit on each Mortgage Interest Rate adjustment as set forth in the related Mortgage Note.

Mortgage Loan:  Each mortgage loan sold, assigned and transferred pursuant to this Agreement and identified on the Mortgage Loan Schedule, which Mortgage Loan includes, without limitation, the Mortgage File, the Monthly Payments, Principal Prepayments, Liquidation Proceeds, Condemnation Proceeds, Insurance Proceeds and all other rights, benefits, proceeds and obligations arising from or in connection with such Mortgage Loan, excluding replaced or repurchased mortgage loans.

Mortgage Loan Documents:  With respect to any Mortgage Loan, the documents required to be delivered to the Purchaser or its designee pursuant to Subsection 6.03 hereto.

Mortgage Loan Schedule:  The schedule of Mortgage Loans setting forth the following information with respect to each Mortgage Loan:  (1) the Seller's Mortgage Loan identifying number; (2) the Mortgagor's name; (3) the street address of the Mortgaged Property including the city, state and zip code; (4) a code indicating whether the Mortgaged Property is owner-occupied, investment property or a second home; (5) the number and type of residential units constituting the Mortgaged Property (e.g.  single family residence, a two- to four-family

CONFIDENTIAL

dwelling, condominium, planned unit development or cooperative); (6) the original months to maturity or the remaining months to maturity from the Cut-off Date, in any case based on the original amortization schedule and, if different, the maturity expressed in the same manner but based on the actual amortization schedule; (7) with respect to each First Lien Loan, the Loan-to-Value Ratio at origination, and with respect to each Second Lien Loan, the CLTV at origination; (8) the Mortgage Interest Rate as of the Cut-off Date; (9) the date on which the first Monthly Payment was due on the Mortgage Loan and, if such date is not consistent with the Due Date currently in effect, the Due Date; (10) the stated maturity date; (11) the amount of the Monthly Payment as of the Cut-off Date; (12) the last payment date on which a payment was actually applied to the outstanding principal balance; (13) the original principal amount of the Mortgage Loan; (14) the actual principal balance of the Mortgage Loan as of the close of business on the Cut-off Date, after deduction of payments of principal collected on or before the Cut-off Date; (15) with respect to Adjustable Rate Mortgage Loans, the Interest Rate Adjustment Date; (16) with respect to Adjustable Rate Mortgage Loans, the Gross Margin; (17) with respect to Adjustable Rate Mortgage Loans, the Lifetime Rate Cap under the terms of the Mortgage Note; (18) with respect to Adjustable Rate Mortgage Loans, a code indicating the type of Index; (19) the type of Mortgage Loan (i.e., Fixed or Adjustable Rate Mortgage Loan, First or Second Lien Loan); (20) a code indicating the purpose of the loan (i.e., purchase, rate/term refinance or cash-out refinance); (21) the Originator; (22) the Servicer; (23) the Custodian; (24) the Purchase Date and (25) the Appraised Value.  The Mortgage Loan Schedule is attached as <u>Exhibit B</u> hereto.

<u>Mortgage Note</u>:  The note or other evidence of the indebtedness of a Mortgagor secured by a Mortgage.

<u>Mortgaged Property</u>:  With respect to a Mortgage Loan that is not a Co-op Loan, the Mortgagor's real property securing repayment of a related Mortgage Note, consisting of an unsubordinated estate in fee simple or, with respect to real property located in jurisdictions in which the use of leasehold estates for residential properties is a widely-accepted practice, a leasehold estate, in a single parcel or multiple parcels of real property improved by a Residential Dwelling. With respect to a Co-op Loan, the stock allocated to a dwelling unit in the residential cooperative housing corporation that was pledged to secure such Co-op Loan and the related Co-op Lease.

<u>Mortgagee</u>:  The mortgagee or beneficiary named in the Mortgage and the successors and assigns of such mortgagee or beneficiary.

<u>Mortgagor</u>:  The obligor on the related Mortgage Note.

<u>Originator</u>:  As defined in the Recitals hereto.

<u>Periodic Rate Cap</u>:  The provision of each Mortgage Note related to an Adjustable Rate Mortgage Loan which provides for an absolute maximum amount by which the Mortgage Interest Rate therein may increase or decrease on an Interest Rate Adjustment Date above or below the Mortgage Interest Rate previously in effect.  The Periodic Rate Cap for each Adjustable Rate Mortgage Loan is the rate set forth as such on the Mortgage Loan Schedule.

CONFIDENTIAL

MSM_MSSTI_20071_000185

Person:  Any individual, corporation, partnership, limited liability company, joint venture, association, joint-stock company, trust, unincorporated organization, government or any agency or political subdivision thereof.

Prepayment Penalty:  With respect to each Mortgage Loan, the amount of any premium or penalty required to be paid by the Mortgagor if the Mortgagor prepays such Mortgage Loan as provided in the related Mortgage Note or Mortgage.

Principal Prepayment:  Any payment or other recovery of principal on a Mortgage Loan which is received in advance of its scheduled Due Date, including any prepayment penalty or premium thereon, and which is not accompanied by an amount of interest representing scheduled interest due on any date or dates in any month or months subsequent to the month of prepayment.

Prior Purchase Agreement:  With respect to each Mortgage Loan, the applicable Prior Purchase Agreement set forth on Exhibit C attached hereto, under which the Seller acquired such Mortgage Loan from the related Originator.

Purchase Date:  As defined in the Recitals hereto.

Purchase Price:  The price paid on the Closing Date by the Purchaser to the Seller in exchange for the Mortgage Loans purchased on the Closing Date as calculated in Section 4 of this Agreement.

Purchase Price Percentage:  The purchase price percentage for the Mortgage Loans set forth in the Letter Agreement.

Purchaser:  EMC Mortgage Corporation, a Delaware corporation, and its successors in interest.

Qualified Appraiser:  An appraiser, duly appointed by the Seller, who had no interest, direct or indirect, in the Mortgaged Property or in any loan made on the security thereof, and whose compensation was not affected by the approval or disapproval of the Mortgage Loan, and such appraiser and the appraisal made by such appraiser both satisfied the requirements of Title XI of FIRREA and the regulations promulgated thereunder, all as in effect on the date the Mortgage Loan was originated.

Qualified Correspondent: Any Person from which the Seller purchased Mortgage Loans, provided that the following conditions are satisfied: (i) such Mortgage Loans were originated pursuant to an agreement between the Seller and such Person that contemplated that such Person would underwrite mortgage loans from time to time, for sale to the Seller, in accordance with underwriting guidelines designated by the Seller ("Designated Guidelines") or guidelines that do not vary materially from such Designated Guidelines; (ii) such Mortgage Loans were in fact underwritten as described in clause (i) above and were acquired by the Seller within 180 days after origination; (iii) either (x) the Designated Guidelines were, at the time such Mortgage Loans were originated, used by the Seller in origination of mortgage loans of the same type as the Mortgage Loans for the Seller's own account or (y) the Designated Guidelines were, at the time such Mortgage Loans were underwritten, designated by the Seller on a consistent

CONFIDENTIAL

MSM_MSSTI_20071_000185

basis for use by lenders in originating mortgage loans to be purchased by the Seller; and (iv) the Seller employed, at the time such Mortgage Loans were acquired by the Seller, pre-purchase or post-purchase quality assurance procedures (which may involve, among other things, review of a sample of mortgage loans purchased during a particular time period or through particular channels) designed to ensure that Persons from which it purchased mortgage loans properly applied the underwriting criteria designated by the Seller.

Qualified Substitute Mortgage Loan:   A mortgage loan eligible to be substituted by the Seller for a Deleted Mortgage Loan which must, on the date of such substitution, (i) have an outstanding principal balance, after deduction of all scheduled payments due in the month of substitution (or in the case of a substitution of more than one mortgage loan for a Deleted Mortgage Loan, an aggregate principal balance), not in excess of the outstanding principal balance of the Deleted Mortgage Loan; (ii) have a Mortgage Interest Rate not less than and not more than 1% greater than the Mortgage Interest Rate of the Deleted Mortgage Loan; (iii) have a remaining term to maturity not greater than and not more than one year less than that of the Deleted Mortgage Loan; (iv) be of the same type as the Deleted Mortgage Loan (i.e., fixed rate or adjustable rate with same Mortgage Interest Rate Caps); (v) comply with each representation and warranty (respecting individual Mortgage Loans) set forth in Section 8; and (vi) not have been originated by New Century Mortgage Corporation or Fremont Investment & Loan or any of their respective Affiliates, without the prior written consent of the Purchaser.

Rating Agency:   Any of Fitch, Inc., Moody's Investors Service, Inc. or Standard & Poor's Ratings Services, a division of The McGraw-Hill Companies Inc., or their respective successors designated by the Purchasers.

Reconstitution:   As defined in Section 12.

Reconstitution Agreements:   The agreement or agreements entered into by the Seller and the Purchaser and/or certain third parties on the Reconstitution Date or Dates with respect to any or all of the Mortgage Loans sold hereunder, in connection with a Securitization Transaction pursuant to Section 12.

Reconstitution Date:   As defined in Section 12.

REMIC:   A "real estate mortgage investment conduit" within the meaning of Section 860D of the Code.

Regulation AB:   Subpart 229.1100 – Asset Backed Securities (Regulation AB), 17 C.F.R. §§229.1100-229.1123, as amended from time to time, and subject to such clarification and interpretation as have been provided by the Commission in the adopting release (Asset-Backed Securities, Securities Act Release No. 33-8518, 70 Fed. Reg. 1,506–1,631 (Jan. 7, 2005)) or by the staff of the Commission, or as may be provided by the Commission or its staff from time to time.

Representations and Warranties:   As defined in Subsection 8.02.

Repurchase Price:   With respect to any Mortgage Loan to be repurchased by the Seller pursuant to Section 8, the price equal to the sum of (a) the product of the Purchase Price

CONFIDENTIAL

Percentage (or 100% if such Mortgage Loan is the subject of a Reconstitution) multiplied by the Stated Principal Balance of such Mortgage Loan on the repurchase date, *plus* (b) the accrued interest on such Stated Principal Balance at the Mortgage Interest Rate from the last interest paid to date through which interest has been paid by or on behalf of the Mortgagor through the date prior to the date of repurchase, *plus*, (c) the amount of any outstanding servicing advances owed to any servicer, *plus* (d) the third party expenses incurred by the Purchaser in connection with the repurchase and transfer of such Mortgage Loan.

Residential Dwelling:   Any one of the following: (i) a detached one-family dwelling, (ii) a detached two- to four-family dwelling, (iii) a one-family dwelling unit in a condominium project, (iv) a one-family dwelling in a planned unit development, (v) a Co-op or (vi) a Manufactured Home, none of which is a mobile home.

Saxon:   Saxon Mortgage Services, Inc., a Texas corporation, and its successors in interest and assigns.

Second Lien Loan:   A Mortgage Loan secured by a second lien Mortgage on the related Mortgaged Property.

Securitization Transaction:   Any transaction involving either (1) a sale or other transfer of some or all of the Mortgage Loans directly or indirectly to an issuing entity in connection with an issuance of publicly offered or privately placed, rated or unrated mortgage-backed securities or (2) an issuance of publicly offered or privately placed, rated or unrated securities, the payments on which are determined primarily by reference to one or more portfolios of residential mortgage loans consisting, in whole or in part, of some or all of the Mortgage Loans.

Security Agreement:   The agreement creating a security interest in the stock allocated to a dwelling unit in the residential cooperative housing corporation that was pledged to secure such Co-op Loan and the related Co-op Lease.

Seller:   As defined in the initial paragraph of this Agreement, and its successors in interest and assigns.

Seller Information.   As defined in Section 12.

Servicer:   With respect to each Mortgage Loan, the Servicer set forth on Exhibit B attached hereto.

Servicing Agreement:   With respect to each Mortgage Loan, the applicable Servicing Agreement set forth on Exhibit C attached hereto.

Servicing Fee:   With respect to each Mortgage Loan, the fee payable to the Servicer of such Mortgage Loan under the applicable Servicing Agreement.

Servicing Rights:   Any and all of the following: (a) any and all rights to service the Mortgage Loans; (b) any payments to or monies received by the Seller for servicing the Mortgage Loans; (c) any late fees, penalties or similar payments with respect to the Mortgage

CONFIDENTIAL

Loans; (d) all agreements or documents creating, defining or evidencing any such servicing rights to the extent they relate to such servicing rights and all rights of the Seller thereunder; (e) Escrow Payments or other similar payments with respect to the Mortgage Loans and any amounts actually collected by the Seller with respect thereto; (f) all accounts and other rights to payment related to any of the property described in this paragraph; and (g) any and all documents, files, records, servicing files, servicing documents, servicing records, data tapes, computer records, or other information pertaining to the Mortgage Loans or pertaining to the past, present or prospective servicing of the Mortgage Loans.

       <u>Stated Principal Balance</u>:   As to each Mortgage Loan on any date of determination, (i) the principal balance of such Mortgage Loan at the Cut-off Date after giving effect to payments of principal due on or before such date, *minus* (ii) all amounts previously distributed to the Purchaser with respect to the related Mortgage Loan representing payments or recoveries of principal on such Mortgage Loan.

SECTION 2.   <u>Agreement to Purchase Mortgage Loans</u>.

       The Seller agrees to sell, and the Purchaser agrees to purchase, on a servicing retained basis, Mortgage Loans having an aggregate Stated Principal Balance on the Cut-off Date in an amount set forth on the Mortgage Loan Schedule, together with the related Mortgage Files and all rights and obligations arising under the documents contained therein.

SECTION 3.   <u>Mortgage Schedule</u>.

       The Seller shall deliver the Mortgage Loan Schedule for the Mortgage Loans to be purchased on the Closing Date to the Purchaser at least two (2) Business Days prior to the Closing Date; *provided, however*, that the Seller shall not be responsible for any delays in the delivery of the Mortgage Loan Schedule caused by changes to the Mortgage Loans made at the Purchaser's request, so long as the Seller delivers the Mortgage Loan Schedule within a reasonable period of time after such changes are requested.

SECTION 4.   <u>Purchase Price</u>.

       The Purchase Price for the Mortgage Loans shall be equal to the Purchase Price Percentage multiplied by the aggregate Stated Principal Balance of the Mortgage Loans listed on the Mortgage Loan Schedule, after application of payments of principal due or received on or before the Cut-off Date.  The Purchase Price shall be paid to the Seller by wire transfer of immediately available funds to an account designated by the Seller in writing.

       The Purchaser shall be entitled to (1) all scheduled principal due after the Cut-off Date, (2) all other recoveries of principal collected on or after the Cut-off Date, and (3) all payments of interest on the Mortgage Loans that accrue from and after the Closing Date, net of applicable Servicing Fees.

CONFIDENTIAL                                                                          MSM_MSSTI_20071_000185

SECTION 5.   <u>Examination of Mortgage Files</u>.

On or prior to the Closing Date, the Seller shall, with respect to each Mortgage Loan, cause the applicable Custodian (as set forth on the Mortgage Loan Schedule attached as <u>Exhibit B</u> hereto) to make the related Mortgage File, including a copy of the Assignment of Mortgage pertaining to each Mortgage Loan, available to the Purchaser for Purchaser's review. Such examination may be made by the Purchaser or its designee at any reasonable time before the Closing Date. The Purchaser may, at its option and without notice to the Seller, purchase some or all of the Mortgage Loans without conducting any partial or complete examination. The fact that the Purchaser or its designee has conducted or has failed to conduct any partial or complete examination of the Mortgage Files shall not affect the Purchaser's (or any of its successor's) rights to demand repurchase or substitution as provided herein.

SECTION 6.   <u>Conveyance from Seller to Purchaser</u>.

Subsection 6.01     <u>Conveyance of Mortgage Loans</u>.

The Seller, simultaneously with the execution and delivery of this Agreement, does hereby sell, transfer, assign, set over and convey to the Purchaser, without recourse, but subject to the terms of this Agreement, all right, title and interest of the Seller in and to the Mortgage Loans and the Mortgage Files and all rights and obligations arising under the documents contained therein, except with respect to the Servicing Rights. In addition, on the Closing Date the Seller shall assign to the Purchaser the Prior Purchase Agreements (except with respect to the Group 1 Mortgage Loans) and the related Servicing Agreements solely with respect to the related Mortgage Loans pursuant to an assignment and assumption agreement substantially in the form attached as <u>Exhibit D</u> hereto (the "<u>Assignment and Assumption Agreement</u>").

Subsection 6.02     <u>Books and Records</u>.

Record title to each Mortgage and the related Mortgage Note as of the Closing Date shall be in the name of the Seller or an Affiliate of the Seller; *provided, however*, that if a Mortgage has been recorded in the name of MERS or its designee, the Seller is shown as the owner of the related Mortgage Loan on the records of MERS for purposes of the system of recording transfers of beneficial ownership of mortgages maintained by MERS. Notwithstanding the foregoing, ownership of each Mortgage and related Mortgage Note shall be vested solely in the Purchaser or the appropriate designee of the Purchaser, as the case may be. All rights arising out of the Mortgage Loans including, but not limited to, all funds received by the Seller or its designee after the Cut-off Date on or in connection with a Mortgage Loan shall be vested in the Purchaser or one or more designees of the Purchaser; *provided, however*, that all funds received on or in connection with a Mortgage Loan that the Seller is unable to promptly forward to the Purchaser shall be received and held by the Seller or its designee in trust for the benefit of the Purchaser or the appropriate designee of the Purchaser, as the case may be, as the owner of the Mortgage Loans pursuant to the terms of this Agreement.

It is the express intention of the parties that the transactions contemplated by this Agreement be, and be construed as, a sale of the Mortgage Loans by the Seller and not a pledge

CONFIDENTIAL                                                     MSM_MSSTI_20071_000186

of such Mortgage Loans by the Seller to the Purchaser to secure a debt or other obligation of the Seller.  Consequently, the sale of each Mortgage Loan shall be reflected as a purchase on the Purchaser's business records, tax returns and financial statements, and as a sale of assets on the Seller's business records, tax returns and financial statements.

Subsection 6.03      Mortgage Loan Documents.

On the Closing Date the Seller will cause the Custodians to deliver certifications to the Purchaser specifying the Mortgage Loan Documents set forth on Exhibit A-1 hereto that each Custodian is holding with respect to each Mortgage Loan.  On the Closing Date, the Seller shall authorize each Custodian to continue to hold the Mortgage Loan Documents in its possession for and on behalf of the Purchaser upon the Seller's receipt of the Purchase Price.  Thereafter the Purchaser shall pay all fees and expenses of the Custodians.

Subsection 6.04      MERS Designated Loans.

With respect to each MERS Designated Mortgage Loan, the Seller shall, promptly following the Closing Date, designate the Purchaser or its named designee as the Investor and the Purchaser or its designee as custodian, and no Person shall be listed as Interim Funder on the MERS System.

SECTION 7.   Servicing of the Mortgage Loans.

The Mortgage Loans have been sold by the Seller to the Purchaser on a servicing retained basis.

On the Closing Date the Seller shall assign each Servicing Agreement to the Purchaser pursuant to the Assignment and Assumption Agreement and shall cause the Mortgage Loans to be serviced and administered in accordance with the related Servicing Agreement pursuant to which each Mortgage Loan is serviced as of the Closing Date as set forth on the Mortgage Loan Schedule attached as Exhibit C hereto.   Thereafter, the related Servicer shall continue to service the applicable Mortgage Loans for the Purchaser.

Notwithstanding the foregoing, with respect to certain Mortgage Loans described on Exhibit E attached hereto (the "Non-transferred Loans"), the Seller has sold the related Servicing Rights to Saxon.  On the related Servicing Transfer Dates set forth on Exhibit E, the Seller shall cause the related Servicer to transfer servicing with respect to the related Non-transferred Loans to Saxon after which Saxon will continue to service such Non-Transferred Loans for the Purchaser pursuant to the Servicing Agreement between the Seller and Saxon referenced on Exhibit C hereto.

SECTION 8.   Representations, Warranties and Covenants of the Seller; Remedies for Breach.

CONFIDENTIAL

MSM_MSSTI_20071_000186

Subsection 8.01        Representations and Warranties Regarding the Seller.

The Seller represents, warrants and covenants to the Purchaser that as of the date hereof and as of the Closing Date:

(a)     Due Organization and Authority. The Seller is a corporation, validly existing, and in good standing under the laws of its jurisdiction of incorporation or formation and has all licenses necessary to carry on its business as now being conducted and is licensed, qualified and in good standing in the states where the Mortgaged Property is located if the laws of such state require licensing or qualification in order to conduct business of the type conducted by the Seller. The Seller has corporate power and authority to execute and deliver this Agreement and to perform its obligations hereunder; the execution, delivery and performance of this Agreement (including all instruments of transfer to be delivered pursuant to this Agreement) by the Seller and the consummation of the transactions contemplated hereby have been duly and validly authorized; this Agreement has been duly executed and delivered and constitutes the valid, legal, binding and enforceable obligation of the Seller, except as enforceability may be limited by (i) bankruptcy, insolvency, liquidation, receivership, moratorium, reorganization or other similar laws affecting the enforcement of the rights of creditors and (ii) general principles of equity, whether enforcement is sought in a proceeding in equity or at law. All requisite corporate action has been taken by the Seller to make this Agreement valid and binding upon the Seller in accordance with its terms;

(b)     No Consent Required. No consent, approval, authorization or order is required for the transactions contemplated by this Agreement from any court, governmental agency or body, or federal or state regulatory authority having jurisdiction over the Seller is required or, if required, such consent, approval, authorization or order has been or will, prior to the Closing Date, be obtained;

(c)     Ordinary Course of Business. The consummation of the transactions contemplated by this Agreement are in the ordinary course of business of the Seller;

(d)     No Conflicts. Neither the execution and delivery of this Agreement, the acquisition of the Mortgage Loans by the Seller, the sale of the Mortgage Loans to the Purchaser, the consummation of the transactions contemplated hereby, nor the fulfillment of or compliance with the terms and conditions of this Agreement, will conflict with or result in a breach of any of the terms, conditions or provisions of the Seller's charter or by-laws;

(e)     No Litigation Pending. There is no action, suit, proceeding or investigation pending or, to the best of Seller's knowledge, threatened against the Seller, before any court, administrative agency or other tribunal, asserting the invalidity of this Agreement, seeking to prevent the consummation of any of the transactions contemplated by this Agreement, or which would be likely to impair materially the ability of the Seller to perform under the terms of this Agreement;

(f)     Ability to Perform. The Seller does not believe, nor does it have any reason or cause to believe, that it cannot perform each and every covenant contained in this Agreement; and

USActive 8685293.11                              -14-

CONFIDENTIAL

(g)     Sale Treatment.  The Seller shall treat the disposition of the Mortgage Loans pursuant to this Agreement as a sale for accounting and tax purposes.

Subsection 8.02      Representations and Warranties Regarding Individual Mortgage Loans; Remedies for Breach.

Pursuant to the Assignment and Assumption Agreement, the Purchaser shall be the assignee of the representations and warranties of the related Originator (the "Representations and Warranties") and remedies for breaches thereof under the related Prior Purchase Agreements as described in Subsection 6.01.

In addition, with respect to the Group 1 Mortgage Loans, the Seller hereby makes the representations and warranties set forth on Part A of Exhibit F hereto to the Purchaser as of the Closing Date.  As to each Mortgage Loan, the Seller hereby makes the representations and warranties set forth on Part B of Exhibit F hereto to the Purchaser as of the Closing Date.  It is understood and agreed that the covenants, representations and warranties of the Seller set forth in this Agreement shall survive the sale of the Mortgage Loans to the Purchaser and shall inure to the benefit of the Purchaser, notwithstanding any restrictive or qualified endorsement on any Mortgage Note or Assignment of Mortgage or the examination or lack of examination of any Mortgage File.

Notwithstanding the foregoing, within 120 days of the earlier of either discovery by or receipt of notice by the Seller of the breach of a Representation and Warranty that (1) materially and adversely affects the interests of the Purchaser in any Mortgage Loan (it being understood that a breach of a representation set forth in clauses (N), (O), (R), (W) or (Y) of Part A on Exhibit F with respect to a Group 1 Mortgage Loan will be deemed to have such a material and adverse effect) and (2), with respect to non-Group 1 Mortgage Loans, if such Mortgage Loan has not been cured, repurchased or substituted for by the applicable Originator in accordance with the terms of the related Prior Purchase Agreement, the Seller shall take such actions as described in the following paragraph.

The Seller shall use its best efforts promptly to cure such breach in all material respects and, if such breach cannot be cured, the Seller shall, at the Purchaser's option, repurchase such Mortgage Loan at the Repurchase Price.  In the event that a breach shall involve any Representation and Warranty, and such breach cannot be cured within 120 days of the earlier of either discovery by or notice to the Seller of such breach, all of the Mortgage Loans affected by such breach shall, at the Purchaser's option, be repurchased by the Seller at the Repurchase Price.  However, if the breach shall involve any Representation and Warranty and the Seller discovers or receives notice of any such breach within 180 days of the Closing Date, the Seller shall, at the Purchaser's option and provided that the Seller has a Qualified Substitute Mortgage Loan, rather than repurchase the Mortgage Loan as provided above, remove such Mortgage Loan (a "Deleted Mortgage Loan") and substitute in its place a Qualified Substitute Mortgage Loan or Loans, provided that any such substitution shall be effected not later than 180 days after the Closing Date.  If the Seller has no Qualified Substitute Mortgage Loan, it shall repurchase the deficient Mortgage Loan at the Repurchase Price.  Any repurchase of a Mortgage Loan or Loans pursuant to the foregoing provisions of this Subsection 8.02 shall be accomplished by direct

CONFIDENTIAL

MSM_MSSTI_20071_000186

remittance of the Repurchase Price to the Purchaser or its designee in accordance with the Purchaser's instructions.

At the time of repurchase or substitution, the Purchaser and the Seller shall arrange for the reassignment of the Deleted Mortgage Loan to the Seller and the delivery to the Seller of any documents held by the Purchaser or its designee relating to the Deleted Mortgage Loan. In the event of a repurchase or substitution, the Seller shall, simultaneously with such reassignment, give written notice to the Purchaser that such repurchase or substitution has taken place, amend the Mortgage Loan Schedule to reflect the withdrawal of the Deleted Mortgage Loan from this Agreement, and, in the case of substitution, identify a Qualified Substitute Mortgage Loan and amend the Mortgage Loan Schedule to reflect the addition of such Qualified Substitute Mortgage Loan to this Agreement. In connection with any such substitution, the Seller shall be deemed to have made as to such Qualified Substitute Mortgage Loan the representations and warranties set forth in this Agreement except that all such representations and warranties set forth in this Agreement shall be deemed made as of the date of such substitution. The Seller shall effect such substitution by delivering to the Purchaser or its designee or to such other party as the Purchaser may designate in writing for such Qualified Substitute Mortgage Loan the documents required by Subsection 6.03, with the Mortgage Note endorsed as required by Subsection 6.03. The Seller shall remit, or shall cause to be remitted, directly to the Purchaser, or its designee in accordance with the Purchaser's instructions the Monthly Payment less the Servicing Fee due, if any, on such Qualified Substitute Mortgage Loan or Loans in the month following the date of such substitution. Monthly Payments due with respect to Qualified Substitute Mortgage Loans in the month of substitution shall be retained by the Seller. For the month of substitution, distributions to the Purchaser shall include the Monthly Payment due on any Deleted Mortgage Loan in the month of substitution, and the Seller shall thereafter be entitled to retain all amounts subsequently received by the Seller in respect of such Deleted Mortgage Loan.

For any month in which the Seller substitutes a Qualified Substitute Mortgage Loan for a Deleted Mortgage Loan, the Seller shall determine the amount (if any) by which the aggregate principal balance of all Qualified Substitute Mortgage Loans as of the date of substitution is less than the aggregate Stated Principal Balance of all Deleted Mortgage Loans (after application of scheduled principal payments due in the month of substitution). The amount of such shortfall shall be distributed by the Seller directly to the Purchaser or its designee in accordance with the Purchaser's instructions within two (2) Business Days of such substitution.

In addition to such repurchase or substitution obligation, and provided the Mortgage Loans are not the subject of a Reconstitution, the Seller shall indemnify the Purchaser and hold it harmless against any losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments, and other costs and expenses resulting from any claim, demand, defense or assertion based on or grounded upon, or resulting from a breach of any representation or warranty set forth on Exhibit F hereto or any obligation of the Seller set forth in Subsection 8.03. It is understood and agreed that the obligations of the Seller set forth in this Subsection 8.02 to cure, substitute for, repurchase or indemnify (to the extent provided in the preceding sentence) a defective Mortgage Loan constitute the sole remedies of the Purchaser respecting a breach of the foregoing representations and warranties.

CONFIDENTIAL

MSM_MSSTI_20071_000186

Any cause of action against the Seller relating to or arising out of the breach of any representations and warranties made in Subsections 8.01 and 8.02 shall accrue as to any Mortgage Loan upon (i) discovery of such breach by the Purchaser or the Servicer or notice thereof by the Seller or the Servicer to the Purchaser and (ii) failure by the Seller to cure such breach or repurchase such Mortgage Loan as specified above.

Subsection 8.03        Repurchase of Mortgage Loans with First Payment Defaults.

Pursuant to the Assignment and Assumption Agreement, the Purchaser shall be the beneficiary of the FPD provisions under the related Prior Purchase Agreement. In the event a Mortgage Loan suffers a FPD following the Closing Date and the related Originator does not repurchase such Mortgage Loan as described in the related Prior Purchase Agreement, the Seller agrees to undertake such remedial actions as described in the related Prior Purchase Agreement as if the Seller were the applicable Originator.

In addition, in the event that any Mortgage Loan is not the subject of a Reconstitution as a result of a breach of the representation set forth in clause (D) of Part B of Exhibit F, or in the event that the May 2007 Monthly Payment with respect to any Mortgage Loan that had a paid-through date (as set forth on the Mortgage Loan Schedule) in April 2007 is not made by June 28, 2007 and such Mortgage Loan has not been the subject of a Reconstitution in June 2007, the Seller shall repurchase such Mortgage Loan promptly after receipt of notice from the Purchaser.

SECTION 9.   Closing.  The closing for the purchase and sale of each Mortgage Loan shall take place on the Closing Date. At the Purchaser's option, the Closing shall be either: by telephone, confirmed by letter or wire as the parties shall agree, or conducted in person, at such place as the parties shall agree.

The closing for the Mortgage Loans to be purchased on each Closing Date shall be subject to each of the following conditions:

(i)     prior to the Closing Date, the Seller shall deliver to the Purchaser a magnetic diskette, or transmit by modem, a listing on a loan-level basis of the necessary information to compute the Purchase Price of the Mortgage Loans delivered on the Closing Date (including accrued interest), and prepare a complete Mortgage Loan Schedule;

(ii)    all of the representations and warranties of the Seller under this Agreement shall be true and correct as of the Closing Date and no event shall have occurred which, with notice or the passage of time, would constitute a default under this Agreement;

(iii)   the Purchaser shall have received, or the Purchaser's attorneys shall have received in escrow, all closing documents as specified in Section 10 of this Agreement, in such forms as are agreed upon and acceptable to the

CONFIDENTIAL

MSM_MSSTI_20071_000186

Purchaser, duly executed by all signatories other than the Purchaser as required pursuant to the terms hereof;

(iv) the Seller shall have released to the Purchaser all documents required pursuant to this Agreement; and

(v) all other terms and conditions of this Agreement (unless waived) shall have been complied with.

Subject to the foregoing conditions, the Purchaser shall pay to the Seller on the Closing Date the Purchase Price by wire transfer of immediately available funds to the account designated by the Seller.

SECTION 10. <u>Closing Documents</u>.

The Closing Documents for the Mortgage Loans to be purchased on each Closing Date shall consist of fully executed originals of the following documents:

1. this Agreement (to be executed and delivered only for the initial Closing Date);

2. the Mortgage Loan Schedule;

3. the Assignment and Assumption Agreement with respect to the Prior Purchase Agreements and Servicing Agreements;

4. certifications from the Seller's Custodians in accordance with <u>Subsection 6.03</u>, as required under this Agreement; and

5. the Letter Agreement.

SECTION 11. <u>Costs</u>.

The Seller shall pay any commissions due its salesmen, the legal fees and expenses of its attorneys, recordation fees for the Mortgage and Assignment of Mortgage, the Co-op UCC Filing and fees for the title policy endorsements and continuations.  All other costs and expenses incurred in connection with the transfer and delivery of the Mortgage Loans including, without limitation, due diligence fees, and the fees and expenses of Purchaser's counsel, shall be paid by the Purchaser.

SECTION 12. <u>Cooperation of Seller with a Reconstitution</u>.

The Seller and the Purchaser agree that with respect to the Mortgage Loans, after the Closing Date, on one or more dates (each, a "<u>Reconstitution Date</u>") at the Purchaser's sole option, the Purchaser may effect a sale (each, a "<u>Reconstitution</u>") of some or all of the Mortgage Loans then subject to this Agreement, without recourse, to one or more trusts or other entities to be formed as part of a Securitization Transaction.

CONFIDENTIAL

Notwithstanding the foregoing, the Purchaser shall be limited to one (1) Reconstitution in connection with the Mortgage Loans.

With respect to each Securitization Transaction entered into by the Purchaser, the Seller agrees (1) to cooperate fully with the Purchaser and any prospective purchaser with respect to all reasonable requests and (2) to execute, deliver and perform any Reconstitution Agreement reasonably required by the Purchaser and reasonably acceptable to the Seller and not inconsistent with the terms of this Agreement. The Seller shall use its reasonable best efforts to provide to such master servicer or issuer, as the case may be, and any other participants in such Reconstitution: (i) any and all information and appropriate verification of information which may be reasonably available to the Seller or its affiliates, whether through letters of its auditors and counsel or otherwise, as the Purchaser or any such other participant shall reasonably request; and (ii) such additional opinions of counsel, letters from auditors, and certificates of public officials or officers of the Seller as are reasonably believed necessary by the Purchaser or any such other participant.

In addition, in connection with the reconstitution provisions in the related Prior Purchase Agreements assigned to the Purchaser pursuant to Subsection 6.01, each Originator shall make the related Representations and Warranties in the related Reconstitution Agreement as of the Reconstitution Date, to the extent required thereunder. In connection with the same, and to the extent required in connection with a Securitization Transaction, in the event any Originator does not remedy any breach of a Representation and Warranty as required, the Seller hereby agrees to repurchase or substitute the affected Mortgage Loan as if it were the related Originator.

All Mortgage Loans not sold or transferred pursuant to a Reconstitution shall remain subject to this Agreement and with respect thereto this Agreement shall remain in full force and effect.

In connection with a Reconstitution, the Seller shall deliver to the Purchaser within 5 Business Days after request by the Purchaser such information (the "Seller Information") with respect to the Seller, as sponsor, as is required under Item 1105(a)(1)-(3) and (c), 1117, 1119(a), (b) and (c) of Regulation AB.

The Seller shall indemnify the Purchaser and each affiliate of the Purchaser that acts as depositor, underwriter or initial purchaser in the Securitization Transaction, each other broker dealer acting as underwriter, placement agent or initial purchaser, each Person who controls any of such parties (within the meaning of Section 15 of the Securities Act and Section 20 of the Exchange Act), and shall hold each of them harmless from and against any losses, damages, penalties, fines, forfeitures, legal fees and expenses and related costs, judgments, and any other costs, fees and expenses that any of them may sustain arising out of or based upon (A) any untrue statement of a material fact contained or alleged to be contained in the Seller Information, (B) the omission or alleged omission to state in the Seller Information a material fact required to be stated in the Seller Information or necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading; provided, by way of clarification, that clause (B) of this paragraph shall be construed solely by reference to the Seller Information and not to any other information communicated in connection with a sale

CONFIDENTIAL

MSM_MSSTI_20071_000186

or purchase of securities, without regard to whether the Seller Information or any portion thereof is presented together with or separately from such other information or (C) any failure by the Seller to deliver the Seller Information as described in the previous paragraph.

SECTION 13. Grant of Security Interest.

The Seller hereby grants to the Purchaser a lien on and a continuing security interest in each Mortgage Loan and each document and instrument evidencing each such Mortgage Loan to secure the performance by the Seller of its obligations under this Agreement, and the Seller agrees that it shall hold such Mortgage Loans in custody for the Purchaser subject to the Purchaser's (a) right to reject any Mortgage Loan (or Qualified Substitute Mortgage Loan) under the terms of this Agreement and to require another Mortgage Loan (or Qualified Substitute Mortgage Loan) to be substituted therefor, and (b) obligation to pay the Purchase Price for the Mortgage Loans. All rights and remedies of the Purchaser under this Agreement are distinct from, and cumulative with, any other rights or remedies under this Agreement or afforded by law or equity and all such rights and remedies may be exercised concurrently, independently or successively.

SECTION 14. Notices.

All demands, notices and communications hereunder shall be in writing and shall be deemed to have been duly given if mailed, by registered or certified mail, return receipt requested, or, if by other means, when received by the other party at the address as follows:

(i)     Morgan Stanley Mortgage Capital Inc.
        1221 Avenue of the Americas, 27th Floor
        New York, New York 10020
        Attention: Peter Woroniecki - Whole Loan Operations Manager
        Fax: 212-507-3565
        Email: peter.woroniecki@morganstanley.com

        with copies to:

        Jeff Williams
        Morgan Stanley – Servicing Oversight
        5002 T-Rex Ave
        Suite 300
        Boca Raton, Florida 33431
        Fax: 561-443-6040
        Email: jeff.williams@morganstanley.com

        Scott Samlin
        Morgan Stanley - RFPG
        1585 Broadway, 10th Floor
        New York, New York 10036
        Fax: 212-507-6569
        Email: scott.samlin@morganstanley.com

CONFIDENTIAL

MSM_MSSTI_20071_000186

> (ii)    if to the Purchaser:
>
> Anthony Villani
> EMC Mortgage Corporation
> 2780 Lake Vista Drive
> Lewisville, Texas 75067
> <u>Attention</u>: General Counsel
> Fax: (469) 759-4714
> Email: avillani@bear.com

or such other address as may hereafter be furnished to the other party by like notice. Any such demand, notice or communication hereunder shall be deemed to have been received on the date delivered to or received at the premises of the addressee (as evidenced, in the case of registered or certified mail, by the date noted on the return receipt).

SECTION 15. <u>Severability Clause</u>.

Any part, provision representation or warranty of this Agreement which is prohibited or unenforceable or is held to be void or unenforceable in any jurisdiction shall be ineffective, as to such jurisdiction, to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction as to any Mortgage Loan shall not invalidate or render unenforceable such provision in any other jurisdiction. To the extent permitted by applicable law, the parties hereto waive any provision of law which prohibits or renders void or unenforceable any provision hereof. If the invalidity of any part, provision, representation or warranty of this Agreement shall deprive any party of the economic benefit intended to be conferred by this Agreement, the parties shall negotiate, in good-faith, to develop a structure the economic effect of which is nearly as possible the same as the economic effect of this Agreement without regard to such invalidity.

SECTION 16. <u>Counterparts</u>.

This Agreement may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument.

SECTION 17. <u>Intention of the Parties</u>.

It is the intention of the parties that the Purchaser is purchasing, and the Seller is selling the Mortgage Loans and not a debt instrument of the Seller or another security. Accordingly, the parties hereto each intend to treat the transaction for Federal income tax purposes as a sale by the Seller, and a purchase by the Purchaser, of the Mortgage Loans. Moreover, the arrangement under which the Mortgage Loans are held shall be consistent with classification of such arrangement as a grantor trust in the event it is not found to represent direct ownership of the Mortgage Loans. The Purchaser shall have the right to review the Mortgage Loans and the related Mortgage Files to determine the characteristics of the Mortgage Loans which shall affect the Federal income tax consequences of owning the Mortgage Loans and the

CONFIDENTIAL                                    MSM_MSSTI_20071_000186

Seller shall cooperate with all reasonable requests made by the Purchaser in the course of such review.

SECTION 18. <u>Successors and Assigns; Assignment of Agreement</u>.

This Agreement shall bind and inure to the benefit of and be enforceable by the Seller and the Purchaser and the respective permitted successors and assigns of the Seller and the successors and assigns of the Purchaser. This Agreement shall not be assigned, pledged or hypothecated by the Seller to a third party not affiliated with the Seller without the prior written consent of the Purchaser, which consent may be withheld by the Purchaser in its sole discretion. This Agreement may be assigned, pledged or hypothecated by the Purchaser in whole or in part, and with respect to one or more of the Mortgage Loans, without the consent of the Seller. The Purchaser shall be limited to three (3) assignments or transfers with respect to the Mortgage Loans and this Agreement as described in <u>Section 12</u>. In the event the Purchaser assigns this Agreement, and the assignee assumes any of the Purchaser's obligations hereunder, the Seller acknowledges and agrees to look solely to such assignee, and not to the Purchaser, for performance of the obligations so assumed and the Purchaser shall be relieved from any liability to the Seller with respect thereto.

SECTION 19. <u>Waivers</u>.

No term or provision of this Agreement may be waived or modified unless such waiver or modification is in writing and signed by the party against whom such waiver or modification is sought to be enforced.

SECTION 20. <u>Exhibits</u>.

The exhibits to this Agreement are hereby incorporated and made a part hereof and are an integral part of this Agreement.

SECTION 21. <u>General Interpretive Principles</u>.

For purposes of this Agreement, except as otherwise expressly provided or unless the context otherwise requires:

(a)     the terms defined in this Agreement have the meanings assigned to them in this Agreement and include the plural as well as the singular, and the use of any gender herein shall be deemed to include the other gender;

(b)     accounting terms not otherwise defined herein have the meanings assigned to them in accordance with generally accepted accounting principles;

(c)     references herein to "Articles," "Sections," "Subsections," "Paragraphs," and other subdivisions without reference to a document are to designated Articles, Sections, Subsections, Paragraphs and other subdivisions of this Agreement;

CONFIDENTIAL                                                                  MSM_MSSTI_20071_000187

(d)      reference to a Subsection without further reference to a Section is a reference to such Subsection as contained in the same Section in which the reference appears, and this rule shall also apply to Paragraphs and other subdivisions;

(e)      the words "herein," "hereof," "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular provision; and

(f)      the term "include" or "including" shall mean without limitation by reason of enumeration.

SECTION 22. <u>Reproduction of Documents</u>.

This Agreement and all documents relating thereto, including, without limitation, (a) consents, waivers and modifications which may hereafter be executed, (b) documents received by any party at the closing, and (c) financial statements, certificates and other information previously or hereafter furnished, may be reproduced by any photographic, photostatic, microfilm, micro-card, miniature photographic or other similar process.  The parties agree that any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding, whether or not the original is in existence and whether or not such reproduction was made by a party in the regular course of business, and that any enlargement, facsimile or further reproduction of such reproduction shall likewise be admissible in evidence.

SECTION 23. <u>Further Agreements</u>.

The Seller and the Purchaser each agree to execute and deliver to the other such reasonable and appropriate additional documents, instruments or agreements as may be necessary or appropriate to effectuate the purposes of this Agreement.

SECTION 24. <u>Recordation of Assignments of Mortgage</u>.

To the extent permitted by applicable law, each of the Assignments of Mortgage is subject to recordation in all appropriate public offices for real property records in all the counties or their comparable jurisdictions in which any or all of the Mortgaged Properties are situated, and in any other appropriate public recording office or elsewhere, such recordation to be effected at the Seller's expense in the event recordation is either necessary under applicable law or requested by the Purchaser at its sole option.

SECTION 25. <u>No Solicitation</u>.

From and after the Closing Date, the Seller agrees that it will not take any action or permit or cause any action to be taken by any of its agents or affiliates, or by any independent contractors on the Seller's behalf, to personally, by telephone or mail (via electronic means or otherwise), solicit a Mortgagor under any Mortgage Loan for the purpose of refinancing a Mortgage Loan, in whole or in part, without the prior written consent of the Purchaser.

USActive 8685293.11

CONFIDENTIAL

MSM_MSSTI_20071_000187

Notwithstanding the foregoing, it is understood and agreed that the Seller, or any of its respective affiliates:

(i)     may advertise its availability for handling refinancings of mortgages in its portfolio, including the promotion of terms it has available for such refinancings, through the sending of letters or promotional material, so long as it does not specifically target Mortgagors and so long as such promotional material either is sent to the mortgagors for all of the mortgages in the servicing portfolio of the Seller and any of its affiliates (those it owns as well as those serviced for others); and

(ii)    may provide pay-off information and otherwise cooperate with individual mortgagors who contact it about prepaying their mortgages by advising them of refinancing terms and streamlined origination arrangements that are available.

Promotions undertaken by the Seller or by any affiliate of the Seller which are directed to the general public at large (including, without limitation, mass mailing based on commercially acquired mailing lists, newspaper, radio and television advertisements), shall not constitute solicitation under this Section 25.

SECTION 26. Waiver of Trial by Jury.

THE SELLER AND THE PURCHASER EACH KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY OF ANY DISPUTE ARISING UNDER OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

SECTION 27. Governing Law Jurisdiction; Consent to Service of Process. THIS AGREEMENT SHALL BE DEEMED IN EFFECT WHEN A FULLY EXECUTED COUNTERPART THEREOF IS RECEIVED BY THE PURCHASER IN THE STATE OF NEW YORK AND SHALL BE DEEMED TO HAVE BEEN MADE IN THE STATE OF NEW YORK. THIS AGREEMENT SHALL BE GOVERNED BY THE INTERNAL LAWS OF THE STATE OF NEW YORK, WITHOUT GIVING EFFECT TO ITS CHOICE OF LAW RULES AND PRINCIPLES. EACH OF THE PURCHASER AND THE SELLER IRREVOCABLY (I) SUBMITS TO THE EXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK AND THE COUNTY AND CITY OF NEW YORK AND THE FEDERAL COURTS OF THE UNITED STATES OF AMERICA FOR THE SOUTHERN DISTRICT OF NEW YORK FOR THE PURPOSE OF ANY ACTION OR PROCEEDING RELATING TO THIS AGREEMENT; (II) WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, THE DEFENSE OF AN INCONVENIENT FORUM IN ANY ACTION OR PROCEEDING IN ANY SUCH COURT; (III) AGREES THAT A FINAL JUDGMENT IN ANY ACTION OR PROCEEDING IN ANY SUCH COURT SHALL BE CONCLUSIVE AND MAY BE ENFORCED IN ANY OTHER JURISDICTION BY SUIT ON THE JUDGMENT OR IN ANY OTHER MANNER PROVIDED BY LAW; AND (IV) CONSENTS TO SERVICE OF

CONFIDENTIAL

MSM_MSSTI_20071_000187

PROCESS UPON IT BY MAILING A COPY THEREOF BY CERTIFIED MAIL ADDRESSED TO IT AS PROVIDED FOR NOTICES HEREUNDER.

SECTION 28. <u>Privacy Act Compliance</u>.

Seller and Purchaser shall maintain policies, procedures, and safeguards designed to protect the security and confidentiality of any non-public personal information relating to Mortgagors. Seller and Purchaser agree to comply with the provisions of the Gramm-Leach-Bliley Act of 1999, as the same may be amended from time to time, and all implementing rules and regulations regarding consumer financial privacy, to the extent applicable to each of their actions and responsibilities hereunder.

[Signature Page Follows]

CONFIDENTIAL                                                           MSM_MSSTI_20071_000187

IN WITNESS WHEREOF, the Seller and the Purchaser have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the date first above written.

MORGAN STANLEY MORTGAGE
CAPITAL INC.

By: _____

Name: *Steven Shapiro*
Title: *Vice President*

EMC MORTGAGE CORPORATION

By: _____

Name:
Title:

CONFIDENTIAL

IN WITNESS WHEREOF, the Seller and the Purchaser have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the date first above written.

MORGAN STANLEY MORTGAGE
CAPITAL INC.

By:_____
    Name:
    Title:

EMC MORTGAGE CORPORATION

By:_____
    Name: Jacqueline Oliver
    Title: Senior Vice President

CONFIDENTIAL

**EXHIBIT A-1**

**MORTGAGE LOAN DOCUMENTS**

With respect to each Mortgage Loan, the Mortgage Loan Documents shall include each of the following items, which shall be available for inspection by the Purchaser and any prospective Purchaser, and which shall be delivered to the Purchaser, or to such other Person as the Purchaser shall designate in writing, pursuant to Section 6 of the Mortgage Loan Purchase and Warranties Agreement to which this Exhibit is attached (the "Agreement"):

(a)     the original Mortgage Note bearing all intervening endorsements, endorsed "Pay to the order of _____, without recourse" and signed in the name of the last endorsee (the "Last Endorsee") by an authorized officer. To the extent that there is no room on the face of the Mortgage Notes for endorsements, the endorsement may be contained on an allonge, if state law so allows and the Purchaser is so advised by the Seller that state law so allows. If the Mortgage Loan was acquired by the Seller in a merger, the endorsement must be by "[Last Endorsee], successor by merger to [name of predecessor]". If the Mortgage Loan was acquired or originated by the Last Endorsee while doing business under another name, the endorsement must be by "[Last Endorsee], formerly known as [previous name]";

(b)     the original or an imaged copy of the original of any guarantee executed in connection with the Mortgage Note;

(c)     with respect to Mortgage Loans that are not Co-op Loans, the original or an imaged copy of the original Mortgage with evidence of recording thereon. With respect to any Co-op Loan, the original or an imaged copy of the Security Agreement. If in connection with any Mortgage Loan, the Seller cannot deliver or cause to be delivered the original or an imaged copy of the original Mortgage with evidence of recording thereon on or prior to the Closing Date because of a delay caused by the public recording office where such Mortgage has been delivered for recordation or because such Mortgage has been lost or because such public recording office retains the original recorded Mortgage, the Seller shall deliver or cause to be delivered to the Purchaser or its designee, an imaged copy of such Mortgage, together with (i) in the case of a delay caused by the public recording office, a certification by the Seller that such Mortgage has been dispatched to the appropriate public recording office for recordation and that an imaged copy of the original recorded Mortgage with evidence of recording will be promptly delivered to the Purchaser upon receipt thereof by the Seller; or (ii) in the case of a Mortgage where a public recording office retains the original recorded Mortgage or in the case where a Mortgage is lost after recordation in a public recording office, an imaged copy of such Mortgage certified by such public recording office to be a true and complete copy of the original recorded Mortgage;

(d)     the originals of all assumption, modification, consolidation or extension agreements, if any, with evidence of recording thereon;

(e)     with respect to Mortgage Loans that are not Co-op Loans, the original Assignment of Mortgage for each Mortgage Loan, in form and substance acceptable for

A-1-1

MSM_MSSTI_20071_000187

recording (except with respect to MERS Designated Loan). The Assignment of Mortgage must be duly recorded only if recordation is either necessary under applicable law or commonly required by private institutional mortgage investors in the area where the Mortgaged Property is located or on direction of the Purchaser as provided in this Agreement. If the Assignment of Mortgage is to be recorded, the Mortgage shall be assigned to the Purchaser. If the Assignment of Mortgage is not to be recorded, the Assignment of Mortgage shall be delivered in blank. If the Mortgage Loan was acquired by the Seller in a merger, the Assignment of Mortgage must be made by "[Seller], successor by merger to [name of predecessor]". If the Mortgage Loan was acquired or originated by the Seller while doing business under another name, the Assignment of Mortgage must be by "[Seller], formerly known as [previous name]";

(f) with respect to Mortgage Loans that are not Co-op Loans, the originals of all intervening assignments of mortgage (if any) evidencing a complete chain of assignment from the Seller to the Last Endorsee (or, in the case of a MERS Designated Loan, MERS) with evidence of recording thereon, or if any such intervening assignment has not been returned from the applicable recording office or has been lost or if such public recording office retains the original recorded assignments of mortgage, the Seller shall deliver or cause to be delivered to the Purchaser or its designee, an imaged copy of such intervening assignment, together with (i) in the case of a delay caused by the public recording office, a certification by the Seller stating that such intervening assignment of mortgage has been dispatched to the appropriate public recording office for recordation and that an imaged copy of such original recorded intervening assignment of mortgage with evidence of recording will be promptly delivered to the Purchaser or its designee upon receipt thereof by the Seller; or (ii) in the case of an intervening assignment where a public recording office retains the original recorded intervening assignment or in the case where an intervening assignment is lost after recordation in a public recording office, an imaged copy of such intervening assignment certified by such public recording office to be a true and complete copy of the original recorded intervening assignment;

(g) with respect to Mortgage Loans that are not Co-op Loans, an imaged copy of the original mortgagee policy of title insurance or, in the event such original title policy is unavailable, a certified true imaged copy of the related policy binder or commitment for title certified to be true and complete by the title insurance company;

(h) an imaged copy of the original of any security agreement, chattel mortgage or equivalent document executed in connection with the Mortgage;

(i) with respect to any Co-op Loan: imaged copies of the (i) the Co-op Lease and the assignment of such Co-op Lease, with all intervening assignments showing a complete chain of title and an assignment thereof by Seller; (ii) the stock certificate together with an undated stock power relating to such stock certificate executed in blank; (iii) the recognition agreement of the interests of the Mortgagee with respect to the Co-op Loan by the residential cooperative housing corporation, the stock of which was pledged by the related Mortgagor to the originator of such Co-op Loan; and (iv) the Co-op UCC Filing filed by the originator as secured party and, if applicable, a filed UCC-3 assignment of the subject security interest showing a complete chain of title, together with an executed UCC-3 assignment of such security interest by the Seller in a form sufficient for filing; and

CONFIDENTIAL

(j)      if any of the above documents has been executed by a person holding a power of attorney, an original or photocopy of such power certified by  the Seller to be a true and correct copy of the original.

CONFIDENTIAL

MSM_MSSTI_20071_000187

## EXHIBIT A-2

## CONTENTS OF EACH MORTGAGE FILE

With respect to each Mortgage Loan, the Mortgage File shall include each of the following items (to the extent in the possession of the applicable Seller) which shall be available for inspection by the Purchaser:

(a)     Copies of the Mortgage Loan Documents.

(b)     Residential loan application.

(c)     Mortgage Loan closing statement.

(d)     Verification of employment and income, if required.

(e)     Verification of acceptable evidence of source and amount of downpayment.

(f)     Credit report on Mortgagor.

(g)     Residential appraisal report.

(h)     Photograph of the Mortgaged Property and photographs of comparable properties.

(i)     Survey of the Mortgaged Property, unless a survey is not required by the title insurer.

(j)     Copy of each instrument necessary to complete identification of any exception set forth in the exception schedule in the title policy, i.e., map or plat, restrictions, easements, home owner association declarations, etc.

(k)     Copies of all required disclosure statements.

(l)     If applicable, termite report, structural engineer's report, water potability and septic certification.

(m)     Sales contract, if applicable.

(n)     Copy of the owner's title insurance policy or attorney's opinion of title and abstract of title, as applicable.

(o)     Evidence of electronic notation of the hazard insurance policy, and, if required by law, evidence of the flood insurance policy.

CONFIDENTIAL

MSM_MSSTI_20071_000187

**EXHIBIT B**

**MORTGAGE LOAN SCHEDULE**

Provided Upon Request

CONFIDENTIAL

## EXHIBIT C

## PRIOR PURCHASE AGREEMENTS; SERVICING AGREEMENTS

### Prior Purchase Agreements

| Originator | Purchase Date | Prior Purchase Agreements |
|---|---|---|
| Accredited Home Lenders, Inc. ("Accredited") | 05/17/04 | Third Amended and Restated Mortgage Loan Purchase and Warranties Agreement, dated as of February 1, 2004, as amended by Amendment No. 1, dated as of April 2, 2004, between Accredited and Morgan Stanley. |
| | 06/16/06 | Seventh Amended and Restated Mortgage Loan Purchase and Warranties Agreement, dated as of June 1, 2006, between Accredited and Morgan Stanley. |
| | 08/30/06 11/30/06 12/21/06 12/28/06 04/20/07 04/27/07 | Eighth Amended and Restated Mortgage Loan Purchase and Warranties Agreement, dated as of August 1, 2006, between Accredited and Morgan Stanley. |
| Fist NLC Financial Services, LLC ("First NLC") | 08/29/06 09/29/06 11/21/06 12/22/06 01/30/07 | Second Amended and Restated Mortgage Loan Purchase and Warranties Agreement, dated as of March 1, 2006, between First NLC and Morgan Stanley. |
| | 04/25/07 05/07/07 | Third Amended and Restated Mortgage Loan Purchase and Warranties Agreement, dated as of April 1, 2007, between First NLC and Morgan Stanley. |

CONFIDENTIAL

MSM_MSSTI_20071_000188

| | | |
|---|---|---|
| Fremont Investment & Loan ("Fremont") | 11/29/06 | Second Amended and Restated Mortgage Loan Purchase and Warranties Agreement, dated as of November 1, 2006, between Fremont and Morgan Stanley. |
| Wilmington Finance Inc. ("Wilmington") | 06/24/05<br>07/27/05 | Amended and Restated Mortgage Loan Purchase and Warranties Agreement, dated as of June 1, 2005, among Wilmington, Morgan Stanley and AIG Federal Savings Bank (through its Wilmington Finance division). |
| | 09/28/06<br>10/30/06<br>01/30/07<br>02/27/07 | Fourth Amended and Restated Mortgage Loan Purchase and Warranties Agreement, dated as of July 1, 2006, between Wilmington and Morgan Stanley. |
| WMC Mortgage Corp. ("WMC") | 11/28/06<br>12/28/06<br>01/30/07 | Fifth Amended and Restated Mortgage Loan Purchase and Warranties Agreement, dated as of November 1, 2006, between WMC and Morgan Stanley. |
| | 02/15/07<br>02/26/07 | Sixth Amended and Restated Mortgage Loan Purchase and Warranties Agreement, dated as of February 1, 2007, between WMC and Morgan Stanley. |

CONFIDENTIAL

MSM_MSSTI_20071_000188

**Servicing Agreements**

| Servicer | Servicing Agreement |
|---|---|
| Saxon Mortgage Services, Inc. ("Saxon") | Servicing Rights Purchase and Servicing Agreement, dated as of October 1, 2006 (with respect to Mortgage Loans serviced by Saxon, the "Servicing Agreement"), between Morgan Stanley Mortgage Capital Inc. ("Morgan Stanley") and Saxon. |
| Countrywide Home Loans, Inc. ("Countrywide") | Flow Servicing Rights Purchase and Servicing Agreement, dated as of November 1, 2004 (with respect to Mortgage Loans serviced by Countrywide, the "Servicing Agreement"), between Morgan Stanley and Countrywide. |
| Wells Fargo Bank, N.A. ("Wells Fargo") | Flow Servicing Agreement, dated as of May 13, 2005 (with respect to Mortgage Loans serviced by Wells Fargo, the "Servicing Agreement"), as amended by Amendment No. 1, dated as of January 1, 2006 and as supplemented by the First Addendum, dated as of March 1, 2006, between Morgan Stanley and Wells Fargo. |
| Accredited Home Lenders, Inc. ("Accredited") | Interim Servicing Agreement, dated as of August 1, 2002, as amended by Amendment No. 1, dated as of January 15, 2004 (with respect to Mortgage Loans serviced by Accredited, the "Servicing Agreement"), between Accredited and Morgan Stanley. |
| First NLC Financial Services, LLC ("First NLC") | Amended and Restated Interim Servicing Agreement, dated as of September 29, 2005 ( with respect to Mortgage Loans serviced by First NLC, the "Servicing Agreement"), between Morgan Stanley and Fist NLC. |

CONFIDENTIAL

MSM_MSSTI_20071_000188

**EXHIBIT D**

**FORM OF ASSIGNMENT AND ASSUMPTION AGREEMENT**

**ASSIGNMENT AND ASSUMPTION AGREEMENT**

THIS ASSIGNMENT AND ASSUMPTION AGREEMENT, dated May 31, 2007 ("Agreement"), between Morgan Stanley Mortgage Capital Inc. ("Assignor") and EMC Mortgage Corporation ("Assignee"):

For and in consideration of the sum of TEN DOLLARS ($10.00) and other valuable consideration the receipt and sufficiency of which hereby are acknowledged, and of the mutual covenants herein contained, the parties hereto hereby agree as follows:

Assignment and Conveyance

1.      The Assignor hereby conveys, sells, grants, transfers and assigns to the Assignee all of the right, title and interest of the Assignor in, to and under (a) those certain Mortgage Loans listed on the schedule (the "Mortgage Loan Schedule") attached hereto as *Exhibit A* (the "Mortgage Loans"), (b) except as described below, those certain mortgage loan purchase and warranties agreements attached as Exhibit B hereto (the "Purchase Agreements"), solely insofar as the Purchase Agreements relate to the Mortgage Loans and (c) those certain servicing agreements attached as Exhibit C hereto (the "Servicing Agreements"), solely insofar as the Servicing Agreements relate to the Mortgage Loans.

The Assignor specifically reserves and does not assign to the Assignee hereunder any and all right, title and interest in, to and under and any obligations of the Assignor with respect to any mortgage loans subject to the Purchase Agreements and the Servicing Agreements which are not the Mortgage Loans set forth on the Mortgage Loan Schedule and are not the subject of this Agreement. In addition, the Assignor shall use commercially reasonable efforts to enforce, on behalf of the Assignee, compliance by the related Originators and Servicers with the Regulation AB obligations under the Purchase Agreements and Servicing Agreements.

Representations and Warranties of the Assignor

2.      The Assignor warrants and represents to the Assignee as of the date hereof that:

(a)      Attached hereto as Exhibit B are true and accurate copies of the Purchase Agreements, and the Purchase Agreements are in full force and effect as of the date hereof and their provisions have not been waived, amended or modified in any respect, nor has any notice of termination been given thereunder;

(b)      Attached hereto as Exhibit C are true and accurate copies of the Servicing Agreements, and the Servicing Agreements are in full force and effect as of the date hereof and their provisions have not been waived, amended or modified in any respect, nor has any notice of termination been given thereunder;

CONFIDENTIAL

MSM_MSSTI_20071_000188

(c)     Assignor is the lawful owner of the Mortgage Loans, with full right to transfer the Mortgage Loans and any and all of its interests, rights and obligations under the Purchase Agreements and the Servicing Agreements as they relate to the Mortgage Loans, free and clear of any and all liens, claims and encumbrances; and upon the transfer of the Mortgage Loans to Assignee as contemplated herein, Assignee shall have title to each and every Mortgage Loan, as well as any and all of Assignor's interests, rights and obligations under the Purchase Agreements and the Servicing Agreements as they relate to the Mortgage Loans, free and clear of any and all liens, claims and encumbrances;

(d)     Assignor has not received notice, of, and has no knowledge of, any offsets, counterclaims or other defenses available to the Originators or the Servicers with respect to the Purchase Agreements and the Servicing Agreements, as applicable, or their continuing obligations in respect of the Mortgage Loans;

(e)     Assignor has not received notice of, and has no knowledge of, any waivers under, or any modification of, any Mortgage Loan, except for such waivers and modifications as may be included in the Mortgage File;

(f)     Assignor has all requisite power and authority to enter into this Agreement and carry out the transactions contemplated hereby, such actions do not conflict with any of Assignor's other obligations and such actions have been duly authorized by Assignor;

(g)     The Assignor is a corporation, validly existing, and in good standing under the laws of its jurisdiction of incorporation or formation and has all licenses necessary to carry on its business as now being conducted and is licensed, qualified and in good standing in the states where the Mortgaged Property is located if the laws of such state require licensing or qualification in order to conduct business of the type conducted by the Assignor. The Assignor has corporate power and authority to execute and deliver this Agreement and to perform its obligations hereunder; the execution, delivery and performance of this Agreement by the Assignor and the consummation of the transactions contemplated hereby have been duly and validly authorized; this Agreement has been duly executed and delivered and constitutes the valid, legal, binding and enforceable obligation of the Assignor, except as enforceability may be limited by (i) bankruptcy, insolvency, liquidation, receivership, moratorium, reorganization or other similar laws affecting the enforcement of the rights of creditors and (ii) general principles of equity, whether enforcement is sought in a proceeding in equity or at law. All requisite corporate action has been taken by the Assignor to make this Agreement valid and binding upon the Assignor in accordance with its terms;

(h)     No consent, approval, authorization or order is required for the transactions contemplated by this Agreement from any court, governmental agency or body, or federal or state regulatory authority having jurisdiction over the Assignor is required or, if required, such consent, approval, authorization or order has been or will, prior to the Closing Date, be obtained;

(i)     There is no action, suit, proceeding or investigation pending or, to the best of Assignor's knowledge, threatened against the Assignor, before any court, administrative

CONFIDENTIAL

agency or other tribunal, asserting the invalidity of this Agreement, seeking to prevent the consummation of any of the transactions contemplated by this Agreement, or which would be likely to impair materially the ability of the Assignor to perform under the terms of this Agreement; and

(j)     No consent, approval or authorization of any other party, including an Originator or Servicer, is required to be obtained or made by Assignor to assign its rights in the Agreements.

Miscellaneous

3.     This Agreement shall be construed in accordance with the laws of the State of New York, without regard to conflicts of law principles, and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with such laws.

4.     No term or provision of this Agreement may be waived or modified unless such waiver or modification is in writing and signed by the party against whom such waiver or modification is sought to be enforced.

5.     This Agreement shall inure to the benefit of the successors and assigns of the parties hereto.  Any entity into which Assignor or Assignee may be merged or consolidated shall, without the requirement for any further writing, be deemed Assignor or Assignee, respectively, hereunder.

6.     Each of this Agreement, the Purchase Agreements and the Servicing Agreements shall survive the conveyance of the Mortgage Loans and the assignment of the Purchase Agreements and the Servicing Agreements (to the extent assigned hereunder) by Assignor to Assignee.

7.     This Agreement may be executed simultaneously in any number of counterparts.  Each counterpart shall be deemed to be an original and all such counterparts shall constitute one and the same instrument.

8.     In the event that any provision of this Agreement conflicts with any provision of the Purchase Agreements or the Servicing Agreements with respect to the Mortgage Loans, the terms of this Agreement shall control.

9.     Capitalized terms used in this Agreement (including the exhibits hereto) but not defined in this Agreement shall have the meanings given to such terms in the Mortgage Loan Purchase and Warranties Agreement, dated as of May 1, 2007, between the Assignor and the Assignee.

**[SIGNATURE PAGE FOLLOWS]**

CONFIDENTIAL

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized officers as of the date first above written.

EMC MORTGAGE CORPORATION
(Assignee)


By:_____
Name: _____
Its: _____


MORGAN STANLEY MORTGAGE
CAPITAL INC.
(Assignor)


By:_____
Name: _____
Its: _____

USActive 8685293.11

CONFIDENTIAL

EXHIBIT A

**Mortgage Loan Schedule**

CONFIDENTIAL

MSM_MSSTI_20071_0001885

<u>EXHIBIT B</u>

**Purchase Agreements**

CONFIDENTIAL                                                     MSM_MSSTI_20071_0001889

## EXHIBIT C

**Servicing Agreements**

CONFIDENTIAL                    MSM_MSSTI_20071_0001890

## EXHIBIT E

## NON-TRANSFERRED LOANS

| Originator | Amount | Purchase Date | Servicing Transfer Date |
|---|---|---|---|
| Accredited | $100,003,042 | 04/20/07 | 06/01/07 |
| Accredited | $200,081,824 | 04/27/07 | 07/02/07 |
| First NLC | $649,604,666 | 04/25/07 | 06/01/07 |
| First NLC | $25,601,122 | 05/07/07 | 07/02/07 |

CONFIDENTIAL

MSM_MSSTI_20071_000189

**EXHIBIT F**

**MORTGAGE LOAN REPRESENTATIONS AND WARRANTIES**

**Part A: Mortgage Loan Representations and Warranties with respect to Group 1 Mortgage Loans:**

      (A)   <u>Payments Current</u>. Except as set forth on the Mortgage Loan Schedule, (i) all payments required to be made up to the Closing Date for the Mortgage Loan under the terms of the Mortgage Note, other than payments not yet 30 days Delinquent, have been made and credited, (ii) no payment required under the Mortgage Loan has been 30 days or more Delinquent at any time since the origination of the Mortgage Loan, and (iii) the first Monthly Payment was made with respect to the Mortgage Loan on its related Due Date or within the grace period, all in accordance with the terms of the related Mortgage Note;

      (B)   <u>No Defenses</u>. The Mortgage Loan is not subject to any right of rescission, set-off, counterclaim or defense, including without limitation the defense of usury, nor will the operation of any of the terms of the Mortgage Note or the Mortgage, or the exercise of any right thereunder, render either the Mortgage Note or the Mortgage unenforceable, in whole or in part and no such right of rescission, set-off, counterclaim or defense has been asserted with respect thereto, and no Mortgagor was a debtor in any state or Federal bankruptcy or insolvency proceeding at the time the Mortgage Loan was originated;

      (C)   <u>Hazard Insurance</u>. Pursuant to the terms of the Mortgage, all buildings or other improvements upon the Mortgaged Property are insured by a generally acceptable insurer against loss by fire, hazards of extended coverage and such other hazards as are customarily insured against in the jurisdiction where the related Mortgaged Property is located and acceptable to the Rating Agencies;

      (D)   <u>Compliance with Applicable Laws</u>.  Any and all requirements of any federal, state or local law including, without limitation, usury, truth-in-lending, real estate settlement procedures, consumer credit protection, equal credit opportunity, disclosure and all predatory, abusive and fair lending laws applicable to the Mortgage Loan, including, without limitation, any provisions relating to Prepayment Penalties, have been complied with, and the consummation of the transactions contemplated hereby will not involve the violation of any such laws or regulations;

      (E)   <u>Valid First or Second Lien</u>.  The Mortgage is a valid, subsisting, enforceable and perfected, first lien (with respect to a First Lien Loan) or second lien (with respect to a Second Lien Loan) on the Mortgaged Property, including all buildings and improvements on the Mortgaged Property and all installations and mechanical, electrical, plumbing, heating and air conditioning systems located in or annexed to such buildings, and all additions, alterations and replacements made at any time with respect to the foregoing.  The lien of the Mortgage is subject only to:

CONFIDENTIAL

(1) with respect to a Second Lien Loan only, the lien of the first mortgage on the Mortgaged Property;

(2) the lien of current real property taxes and assessments not yet due and payable;

(3) covenants, conditions and restrictions, rights of way, easements and other matters of the public record as of the date of recording acceptable to prudent mortgage lending institutions generally and specifically referred to in the lender's title insurance policy delivered to the originator of the Mortgage Loan and (a) specifically referred to or otherwise considered in the appraisal made for the originator of the Mortgage Loan or (b) which do not adversely affect the Appraised Value of the Mortgaged Property set forth in such appraisal; and

(4) other matters to which like properties are commonly subject which do not materially interfere with the benefits of the security intended to be provided by the Mortgage or the use, enjoyment, value or marketability of the related Mortgaged Property.

Any security agreement, chattel mortgage or equivalent document related to and delivered in connection with the Mortgage Loan establishes and creates a valid, subsisting, enforceable and perfected first lien (with respect to a First Lien Loan) or second lien (with respect to a Second Lien Loan) and first priority (with respect to a First Lien Loan) or second priority (with respect to a Second Lien Loan) security interest on the property described therein and the Seller has full right to sell and assign the same to the Purchaser.

(F)     _Validity of Mortgage Documents._ The Mortgage Note and the Mortgage and any other agreement executed and delivered by a Mortgagor in connection with a Mortgage Loan are genuine, and each is the legal valid and binding obligation of the maker thereof enforceable in accordance with its terms (including, without limitation, any provisions therein relating to Prepayment Penalties). All parties to the Mortgage Note, the Mortgage and any other such related agreement had legal capacity to enter into the Mortgage Loan and to execute and deliver the Mortgage Note, the Mortgage and any such agreement, and the Mortgage Note, the Mortgage and any other such related agreement have been duly and properly executed by other such related parties. No fraud, error, omission, misrepresentation, negligence or similar occurrence with respect to a Mortgage Loan has taken place on the part of the Seller, or, to the knowledge of the Seller, any other person, including without limitation, the Mortgagor, any appraiser, any builder or developer, or any other party involved in the origination of the Mortgage Loan;

(G)     _Title Insurance._ With respect to a Mortgage Loan which is not a Co-op Loan, the Mortgage Loan is covered by an ALTA lender's title insurance policy, or with respect to any Mortgage Loan for which the related Mortgaged Property is located in California a CLTA lender's title insurance policy, or other generally acceptable form of policy or insurance acceptable to Fannie Mae or Freddie Mac and each such title insurance policy is issued by a generally accepted title insurer and qualified to do business in the jurisdiction where the Mortgaged Property is located, insuring the Seller, its successors and assigns, as to the first (with

CONFIDENTIAL

respect to a First Lien Loan) or second (with respect to a Second Lien Loan) priority lien of the Mortgage in the original principal amount of the Mortgage Loan (or to the extent a Mortgage Note provides for negative amortization, the maximum amount of negative amortization in accordance with the Mortgage), subject only to the exceptions contained in clauses (1), (2) and (3) of paragraph (e) of this Exhibit F, and in the case of Adjustable Rate Mortgage Loans, against any loss by reason of the invalidity or unenforceability of the lien resulting from the provisions of the Mortgage providing for adjustment to the Mortgage Interest Rate and Monthly Payment;

(H)   No Defaults.   Except as set forth in paragraph (b) above, there is no default, breach, violation or event which would permit acceleration existing under the Mortgage or the Mortgage Note and no event which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event which would permit acceleration, and neither the Seller nor any of its Affiliates nor any of their respective predecessors, have waived any default, breach, violation or event which would permit acceleration;

(I)   Full Disbursement of Proceeds.   The Mortgage Loan has been closed and the proceeds of the Mortgage Loan have been fully disbursed and there is no requirement for future advances thereunder, and any and all requirements as to completion of any on-site or off-site improvement and as to disbursements of any escrow funds therefor have been complied with.   All costs, fees and expenses incurred in making or closing the Mortgage Loan and the recording of the Mortgage were paid, and the Mortgagor is not entitled to any refund of any amounts paid or due under the Mortgage Note or Mortgage;

(J)   No Mechanics' Liens.   There are no mechanics' or similar liens or claims which have been filed for work, labor or material (and no rights are outstanding that under the law could give rise to such liens) affecting the related Mortgaged Property which are or may be liens prior to, or equal or coordinate with, the lien of the related Mortgage;

(K)   Customary Provisions.   The Mortgage contains customary and enforceable provisions such as to render the rights and remedies of the holder thereof adequate for the realization against the Mortgaged Property of the benefits of the security provided thereby, including, (i) in the case of a Mortgage designated as a deed of trust, by trustee's sale, and (ii) otherwise by judicial foreclosure.   Upon default by a Mortgagor on a mortgage loan and foreclosure on, or trustee's sale of, the Mortgaged Property pursuant to the proper procedures, the holder of the Mortgage Loan will be able to deliver good and merchantable title to the Mortgaged Property.   There is no homestead or other exemption available to a Mortgagor which would interfere with the right to sell the mortgaged property at a trustee's sale or the right to foreclose the Mortgage, subject to applicable federal and state laws and judicial precedent with respect to bankruptcy and right of redemption or similar law;

(L)   Due-On-Sale.   With respect to each Fixed Rate Mortgage Loan, the Mortgage contains an enforceable provision for the acceleration of the payment of the unpaid principal balance of the Mortgage Loan in the event that the Mortgaged Property is sold or transferred without the prior written consent of the mortgagee thereunder, and to the best of the Seller's knowledge, such provision is enforceable;

F-3

CONFIDENTIAL

(M) <u>Mortgaged Property Undamaged; No Condemnation Proceedings</u>. There is no proceeding pending or, to the Seller's knowledge, threatened for the total or partial condemnation of the Mortgaged Property. The Mortgaged Property is undamaged by waste, fire, earthquake or earth movement, windstorm, flood, tornado or other casualty so as to affect adversely the value of the Mortgaged Property as security for the Mortgage Loan or the use for which the premises were intended and each Mortgaged Property is in good repair. There have not been any condemnation proceedings with respect to the Mortgaged Property;

(N) <u>Origination</u>. The Mortgagor was not encouraged or required to select a Mortgage Loan product offered by the Originator which is a higher cost product designed for less creditworthy mortgagors, unless at the time of the Mortgage Loan's origination, such Mortgagor did not qualify taking into such facts as, without limitation, the Mortgage Loan's requirements and the Mortgagor's credit history, income, assets and liabilities and debt to income ratios for a lower cost credit product then offered by the Originator or any Affiliate of the Originator. If, at the time of loan application, the Mortgagor may have qualified for a lower cost credit product then offered by any mortgage lending Affiliate of the Originator, the Originator referred the related Mortgagor's application to such Affiliate for underwriting consideration. For a Mortgagor who seeks financing through a Mortgage Loan originator's higher-priced subprime lending channel, the Mortgagor was directed towards or offered the Mortgage Loan originator's standard mortgage line if the Mortgagor was able to qualify for one of the standard products;

(O) <u>Predatory Lending Regulations</u>. No Mortgage Loan is a High Cost Loan or Covered Loan, as applicable, and no Mortgage Loan originated on or after October 1, 2002 through March 6, 2003 is governed by the Georgia Fair Lending Act. No Mortgage Loan is covered by the Home Ownership and Equity Protection Act of 1994 and no Mortgage Loan is in violation of any comparable state or local law;

(P) <u>No Outstanding Charges</u>. There are no defaults in complying with the terms of the Mortgage, and all taxes, governmental assessments, insurance premiums, water, sewer and municipal charges, leasehold payments or ground rents which previously became due and owing have been paid, or an escrow of funds has been established in an amount sufficient to pay for every such item which remains unpaid and which has been assessed but is not yet due and payable;

(Q) <u>Original Terms Unmodified</u>. The terms of the Mortgage Note and Mortgage have not been impaired, waived, altered or modified in any respect, from the date of origination except by a written instrument which has been recorded, if necessary to protect the interests of the Purchaser, and which has been delivered to the Trustee or to such other Person as the Purchaser shall designate in writing, and the terms of which are reflected in the Mortgage Loan Schedule. The substance of any such waiver, alteration or modification has been approved by the issuer of the title insurer, if any, to the extent required, and its terms are reflected on the Mortgage Loan Schedule, if applicable;

(R) <u>Qualified Mortgage</u>. The Mortgage Loan would be a "qualified mortgage," within the meaning of Section 860G(a)(3) of the Code, if transferred to a REMIC on its startup day in exchange for the regular or residual interests in the REMIC;

CONFIDENTIAL                                                        MSM_MSSTI_20071_0001895

(S)     Ownership.  The Seller is the sole owner of record and holder of the Mortgage Loan and the indebtedness evidenced by each Mortgage Note.  The Mortgage Loan is not assigned or pledged, and the Seller has good, indefeasible and marketable title thereto, and has full right to transfer and sell the Mortgage Loan to the Purchaser free and clear of any encumbrance, equity, participation interest, lien, pledge, charge, claim or security interest, and has full right and authority subject to no interest or participation of, or agreement with, any other party, to sell and assign each Mortgage Loan and following the sale of each Mortgage Loan, the Purchaser will own such Mortgage Loan free and clear of any encumbrance, equity, participation interest, lien, pledge, charge, claim or security interest;

(T)     Location of Improvements; No Encroachments.  All improvements which were considered in determining the appraised value of the Mortgaged Property lay wholly within the boundaries and building restriction lines of the Mortgaged Property, and no improvements on adjoining properties encroach upon the Mortgaged Property.  No improvement located on or being part of the Mortgaged Property is in violation of any applicable zoning law or regulation;

(U)     Appraisal.  The Mortgage File contains an appraisal of the related Mortgaged Property signed prior to the approval of the Mortgage Loan application by a Qualified Appraiser, duly appointed by the Seller, who had no interest, direct or indirect in the Mortgaged Property or in any loan made on the security thereof, and whose compensation is not affected by the approval or disapproval of the Mortgage Loan, and the appraisal and appraiser both satisfy the requirements of Fannie Mae or Freddie Mac and Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 and the regulations promulgated thereunder, all as in effect on the date the Mortgage Loan was originated;

(V)     LTV.  No Mortgage Loan has an LTV greater than 100%;

(W)     Prepayment Penalty.  Each Mortgage Loan that is subject to a prepayment penalty as provided in the related Mortgage Note is identified on the related Mortgage Loan Schedule.  With respect to each Mortgage Loan that has a prepayment penalty feature, each such prepayment penalty is enforceable and will be enforced by the Seller for the benefit of the Purchaser, and each prepayment penalty is permitted pursuant to federal, state and local law.  Each such prepayment penalty is in an amount not more than the maximum amount permitted under applicable law and no such prepayment penalty may be imposed for a term in excess of five (5) years with respect to Mortgage Loans originated prior to October 1, 2002.  With respect to Mortgage Loans originated on or after October 1, 2002, the duration of the prepayment penalty period shall not exceed three (3) years from the date of the Mortgage Note unless the Mortgage Loan was modified to reduce the prepayment penalty period to no more than three (3) years from the date of the related Mortgage Note and the Mortgagor was notified in writing of such reduction in prepayment penalty period;

(X)     Purchase of Insurance.  No Mortgagor was required to purchase any single premium credit insurance policy (e.g. life, mortgage, disability, property, accident unemployment or health insurance product) or debt cancellation agreement as a condition of obtaining the extension of credit.  No Mortgagor obtained a prepaid single-premium credit insurance policy (e.g., life, mortgage, disability, property, accident, unemployment or health insurance) in connection with the origination of the Mortgage Loan.  No proceeds from any

CONFIDENTIAL                                                      MSM_MSSTI_20071_0001896

Mortgage Loan were used to purchase single premium credit insurance policies or debt cancellation agreements as part of the origination of, or as a condition to closing, such Mortgage Loan; and

(Y)     No Arbitration.  No Mortgage Loan originated on or after July 1, 2004 requires the related Mortgagor to submit to arbitration to resolve any dispute arising out of or relating in any way to the Mortgage Loan transaction.

CONFIDENTIAL

**Part B: Mortgage Loan Representations and Warranties with respect each Mortgage Loan:**

(A)    <u>Mortgage Loans as Described</u>.  The information set forth in the Mortgage Loan Schedule relating to the Mortgage Loans is complete, true and correct as of the Cut-off Date;

(B)    <u>Ownership</u>.  The Seller is the sole owner of record and holder of the Mortgage Loan and the indebtedness evidenced by each Mortgage Note.  The Mortgage Loan is not assigned or pledged, and the Seller has good, indefeasible and marketable title thereto, and has full right to transfer and sell the Mortgage Loan to the Purchaser free and clear of any encumbrance, equity, participation interest, lien, pledge, charge, claim or security interest, and has full right and authority subject to no interest or participation of, or agreement with, any other party, to sell and assign each Mortgage Loan and following the sale of each Mortgage Loan, the Purchaser will own such Mortgage Loan free and clear of any encumbrance, equity, participation interest, lien, pledge, charge, claim or security interest;

(C)    <u>Compliance with Applicable Laws</u>.  Any and all requirements of any federal, state or local law including, without limitation, usury, truth-in-lending, real estate settlement procedures, consumer credit protection, equal credit opportunity, disclosure and all predatory, abusive and fair lending laws applicable to the Mortgage Loan, including, without limitation, any provisions relating to Prepayment Penalties, have been complied with, and the consummation of the transactions contemplated hereby will not involve the violation of any such laws or regulations; and

(D)    <u>Securitization Representation</u>.  The characteristics of each Mortgage Loan conform to the securitization requirements and loan level representations and warranties that are consistent with those applicable to a securitization transaction (i) being rated by at least two nationally recognized (or equivalent) statistical rating agencies, (ii) having at least one class of securities rated the equivalent of "AAA" by each such rating agency, (iii) being backed by similar types of mortgage loans as such Mortgage Loans, (iv) being master serviced by a master servicer satisfactory to the Purchaser and the Seller and (v) as to which disclosures required by Regulation AB with respect to the related Originator and the related Servicer are furnished.

CONFIDENTIAL                                                    MSM_MSSTI_20071_0001898

EXHIBIT 4

[Reserved]

[TPW: NYLEGAL:688702.10] 17297-00533  11/26/2007 07:47 PM

CONFIDENTIAL

MSM_MSSTI_20071_0001899

EXHIBIT 5

[Reserved]

E-4-1

[TPW: NYLEGAL:688702.10] 17297-00533  11/26/2007 07:47 PM

CONFIDENTIAL

# EXHIBIT 6
## SCHEDULE OF LOST NOTES

Available Upon Request

E-5-1

[TPW: NYLEGAL:688702.10] 17297-00533  11/26/2007 07:47 PM

CONFIDENTIAL

## EXHIBIT 7

[Reserved]

A-1

[TPW: NYLEGAL:688702.10] 17297-00533  11/26/2007 07:47 PM

CONFIDENTIAL

<u>EXHIBIT 8</u>

Accredited Assignment, Assumption and Recognition Agreement

(Please See Tab #13)

A-1

[TPW: NYLEGAL:688702.10] 17297-00533  03/14/2008 03:08 PM

CONFIDENTIAL

MSM_MSSTI_20071_0001903

SCHEDULE A

REQUIRED RATINGS FOR EACH CLASS OF CERTIFICATES

| Class | S&P | Moody's |
|-------|-----|---------|
| A-1 | AAA | Aaa |
| A-2 | AAA | Aaa |
| A-3 | AAA | Aaa |
| A-4 | AAA | Aaa |
| M-1 | AA+ | Aa1 |
| M-2 | AA | Aa2 |
| M-3 | AA- | Aa3 |
| M-4 | A+ | A1 |
| M-5 | A | A2 |
| M-6 | A- | A3 |
| B-1 | BBB+ | Baa1 |
| B-2 | BBB | Baa2 |
| B-3 | BBB- | Baa3 |

None of the above ratings has been lowered, qualified or withdrawn since the dates of issuance of such ratings by the Rating Agencies.

<u>Private Certificates</u>

| Class | S&P | Moody's |
|-------|-----|---------|
| B-4 | BB+ | Ba1 |
| CE | Not Rated | Not Rated |
| P | Not Rated | Not Rated |
| R-1 | Not Rated | Not Rated |
| R-2 | Not Rated | Not Rated |
| R-3 | Not Rated | Not Rated |
| RX | Not Rated | Not Rated |

[TPW: NYLEGAL:688702.10] 17297-00533  11/26/2007 07:47 PM

CONFIDENTIAL

MSM_MSSTI_20071_0001904