**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

DEUTSCHE BANK NATIONAL TRUST
COMPANY, solely in its capacity as
Trustee for the MORGAN STANLEY
STRUCTURED TRUST I 2007-1,

                       Plaintiff,

      v.

MORGAN STANLEY MORTGAGE
CAPITAL HOLDINGS LLC, as
Successor-by-Merger to MORGAN
STANLEY MORTGAGE CAPITAL INC.,

                Defendant.

No. 14-CV-3020(LTS)(AJP)

ORAL ARGUMENT REQUESTED

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Steven F. Molo
Robert K. Kry
Justin V. Shur
Lauren M. Weinstein
MOLOLAMKEN LLP
430 Park Avenue
New York, New York 10022
(212) 607-8160 (telephone)
(212) 607-8161 (facsimile)

*Attorneys for Plaintiff Deutsche*
*Bank National Trust Company,*
*as Trustee for the Morgan Stanley*
*Structured Trust I 2007-1*

June 22, 2017

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

I.  The MSST 2007-1 Securitization ............................................................................ 2

    A.  ████████████████████████████████████ .............................. 2

    B.  Morgan Stanley's Contractual Obligations ........................................................... 5

II.  Morgan Stanley's Breaches of Its Contractual Obligations ................................... 6

    A.  Morgan Stanley's Breaches of Representations and Warranties .......................... 6

    B.  Morgan Stanley's Failure To Repurchase Nearly All Breaching Loans ............... 7

    C.  Morgan Stanley's Admissions of Grossly Negligent Conduct Pertaining to This Trust ........................................................................................ 8

III.  Proceedings Before This Court .............................................................................. 9

    A.  The Trustee's Complaint ..................................................................................... 9

    B.  This Court's Ruling on the Motion To Dismiss .................................................. 9

    C.  This Court's Preliminary Approval of Sampling ................................................. 10

    D.  Reunderwriting Identifies Breaches in a Majority of Loans ............................... 11

STANDARD OF REVIEW ................................................................................................ 13

ARGUMENT ..................................................................................................................... 13

I.  The Trustee May Pursue Damages for All Breaching Loans in the Trust Through Sampling ................................................................................................... 13

    A.  The Securitization Agreements Do Not Prohibit the Use of Sampling ............... 13

B.      The Sole Remedies Clause Is Unenforceable Due to Morgan Stanley's Gross Negligence ................................................................................... 16

        1.      Sole Remedies Clauses in RMBS Securitizations Are Unenforceable Where a Defendant Acts with Gross Negligence ............. 17

        2.      Genuine Issues Remain Regarding Morgan Stanley's Gross Negligence ................................................................................. 19

II.      Morgan Stanley Received Notice of or Discovered All Breaching Loans in the Trust ........................................................................................................... 21

      A.      The Trustee's Pre-Complaint Breach Notice Put Morgan Stanley on Notice of Breaches Throughout the Trust ......................................... 21

      B.      The Trustee's Expert Reports Are Sufficient To Put Morgan Stanley on Notice of Additional Breaching Loans in the Trust ......................... 24

      C.      Genuine Disputes Remain Regarding Morgan Stanley's Discovery of the Breaches ......................................................................................... 27

        1.      Morgan Stanley's Due Diligence Supports an Inference of Discovery ......................................................................................... 27

        2.      Morgan Stanley Was Willfully Blind to the Breaches ............................. 29

III.     Whether Breaches Materially and Adversely Affect the Interests of Certificateholders Is a Fact Question ................................................................ 30

      A.      The Trustee's Experts Offered Sufficient Analysis To Support Their Materiality Determinations ......................................................... 31

      B.      ██████████████████████████████████████ ................. 33

IV.     The Trustee Properly Interprets the Representations and Warranties ............................. 34

      A.      Section 10(b)(5) of the MLPA Covers Any "Error," "Misrepresentation," or "Negligence," Including Failure To Adhere to Underwriting Guidelines ........ 34

      B.      The MLS Representation Guarantees That the Information in the MLS Is "Complete, True and Correct" .................................................... 36

      C.      The LTV Representation and Warranty Guarantees That the Loan-to-Value Ratio of the Property Is Not Greater Than 100% ....................... 37

      D.      The USPAP Representation and Warranty Guarantees "Credible" Appraisals ................................................................................................ 38

V.     Morgan Stanley Is Required To Repurchase Accredited, WMC, and
       Fremont Loans ......................................................................................................... 39

       A.     Morgan Stanley Must Repurchase Accredited Loans ........................................... 39

       B.     Morgan Stanley Must Repurchase WMC and Fremont Loans ............................ 40

CONCLUSION ....................................................................................................................... 40

## <u>TABLE OF AUTHORITIES</u>

Page(s)

### CASES

*Abacus Fed. Sav. Bank v. ADT Sec. Servs., Inc.*, 18 N.Y.3d 675 (2012) ......................................18

*Abax, Inc. v. Lehrer McGovern Bovis, Inc.*, 8 A.D.3d 92 (1st Dep't 2004) ................................27

*ACE Sec. Corp. v. DB Structured Prods., Inc.*, 25 N.Y.3d 581 (2015) ........................................22

*ACE Sec. Corp. v. DB Structured Prods.*, No. 651936/2013,
2014 WL 4785503 (Sup. Ct. N.Y. Cnty. Aug. 28, 2014) ..................................................28, 29

*ACE Sec. Corp. v. DB Structured Prods., Inc.*, No. 653394/2012,
2014 WL 1384490 (Sup. Ct. N.Y. Cnty. Apr. 4, 2014) ........................................................23

*ACE Sec. Corp. Home Equity Loan Trust, Series 2007-HE3 ex rel. HSBC Bank
USA, Nat'l Ass'n v. DB Structured Prods., Inc.*, 5 F. Supp. 3d 543, 554
(S.D.N.Y. 2014) ......................................................................................................10, 14

*Allen v. Coughlin*, 64 F.3d 77 (2d Cir. 1995) ...............................................................................13

*Assured Guar. Mun. Corp. v. DB Structured Prods., Inc.*, No. 650705/2010,
2014 WL 3282310 (Sup. Ct. N.Y. Cnty. July 3, 2014) ....................................................15, 23

*Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*, No. 11 Civ. 2375,
2011 WL 5335566 (S.D.N.Y. Oct. 31, 2011) ........................................................................28

*Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*, 892 F. Supp. 2d 596
(S.D.N.Y. 2012) ......................................................................................................................31

*Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*, 920 F. Supp. 2d 475
(S.D.N.Y. 2013) ............................................................................................................ *passim*

*Assured Guar. Mun. Corp. v. UBS Real Estate Sec. Inc.*, No. 12 Civ. 1579,
Dkt. 86 (S.D.N.Y. Apr. 1, 2013) ............................................................................................15

*Bank of N.Y. Mellon v. WMC Mortg., LLC*, 136 A.D.3d 1 (1st Dep't 2015),
*aff'd*, 28 N.Y.3d 1039 (2016) ................................................................................................36

*Bank of N.Y. Mellon Trust Co. v. Morgan Stanley Mortg. Capital, Inc.*,
821 F.3d 297 (2d Cir. 2016)....................................................................................................16

*B.F. Goodrich v. Betkoski*, 99 F.3d 505 (2d Cir. 1996), *clarified on
other grounds*, 112 F.3d 88 (2d Cir. 1997) ...........................................................................32

*Caputo v. Pfizer, Inc.*, 267 F.3d 181 (2d Cir. 2001) ....................................................................29

*Carr v. Marietta Corp.*, 211 F.3d 724 (2d Cir. 2000)....................................................30

*Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*,
   Civil Action No. 5140-CS, 2012 WL 3201139 (Del. Ch. Aug. 7, 2012) .........................25, 26

*Cont'l Ins. Co. v. RLI Ins. Co.*, 161 A.D.2d 385 (1st Dep't 1990) ................................30

*Cornejo v. Bell*, 592 F.3d 121 (2d Cir. 2010) ...................................................18, 24, 25

*Dellicarri v. Hirschfeld*, 210 A.D.2d 584 (3d Dep't 1994) ....................................27

*Deutsche Alt-A Sec. Mortg. Loan Trust, Series 2006-OA1 v. DB Structured Prods., Inc.*, 958 F. Supp. 2d 488 (S.D.N.Y. 2013)..........................................18, 23

*Deutsche Bank Nat'l Trust Co. v. Decision One Mortg. Co.*, No. 2013L 5823,
   2013 WL 6284438 (Ill. Cir. Ct. Nov. 19, 2013) ..............................................18, 23

*Deutsche Bank Nat'l Trust Co. v. Equifirst Corp.*, No. 651957/2013,
   Doc. No. 131 (Sup. Ct. N.Y. Cnty. May 26, 2016) ..............................................25

*Deutsche Bank Nat'l Trust Co. v. WMC Mortg., LLC*, No. 12 Civ. 933,
   2014 WL 1289234 (D. Conn. Mar. 31, 2014) ..............................................23

*Deutsche Bank Nat'l Trust Co. v. WMC Mortg., LLC*, No. 12 Civ. 933,
   2014 WL 3824333 (D. Conn. Aug. 4, 2014) ..............................................14, 18

*DiLaura v. Power Auth. of State of N.Y.*, 982 F.2d 73 (2d Cir. 1992)..........................22

*Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*, No. 11 Civ. 6188,
   2012 WL 6000885 (S.D.N.Y. Dec. 3, 2012) ..............................................14

*Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*, 104 F. Supp. 3d 441
   (S.D.N.Y. 2015)...........................................................................32, 38, 39

*Fish v. GreatBanc Trust Co.*, 749 F.3d 671 (7th Cir. 2014)....................................29

*Food Pageant, Inc. v. Consol. Edison Co.*, 54 N.Y.2d 167 (1981) ..............................19

*Foresco Co. v. Oh*, 210 F. Supp. 3d 604 (S.D.N.Y. 2016) ..............................................40

*Gadsden v. Port Auth. Trans-Hudson Corp.*, 140 F.3d 207 (2d Cir. 1998)....................36

*Galli v. Metz*, 973 F.2d 145 (2d Cir. 1992)........................................................38

*Gold Connection Discount Jewelers, Inc. v. Am. Dist. Tel. Co.*, 212 A.D.2d 577
   (2d Dep't 1995) ...........................................................................10, 17

*Greater N.Y. Health Care Facilities Ass'n v. DeBuono*, 91 N.Y.2d 716 (1998)..................26

*Gross v. Sweet*, 49 N.Y.2d 102 (1979) ...................................................................17

*Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73 (2d Cir. 2002) ...........................31, 33

*Home Equity Asset Trust 2007-2 v. DLJ Mortg. Capital, Inc.*, 140 A.D.3d 518
 (1st Dep't 2016) ...........................................................................28

*Home Equity Mortg. Trust Series 2006-5 v. DLJ Mortg. Capital, Inc.*,
 No. 653787/2012, 2014 WL 317838 (Sup. Ct. N.Y. Cnty. Jan. 27, 2014) ...........................35

*Home Equity Asset Trust 2007-2 v. DLJ Mortg. Capital, Inc.*, No. 651174/2013,
 2014 WL 4966127 (Sup. Ct. N.Y. Cnty. Oct. 1, 2014), *rev'd on
 other grounds*, 140 A.D.3d 518 (1st Dep't 2016) ...................................................28

*Homeward Residential, Inc. v. Sand Canyon Corp.*, 298 F.R.D. 116
 (S.D.N.Y. 2014).....................................................................................31, 36

*Homeward Residential, Inc. v. Sand Canyon Corp.*, No. 12 Civ. 7319,
 Dkt. 124 (S.D.N.Y. Sept. 30, 2016).....................................................................25

*Iacobelli Constr., Inc. v. County of Monroe*, 32 F.3d 19 (2d Cir. 1994) ......................................32

*Kalisch-Jarcho, Inc. v. City of New York*, 58 N.Y.2d 377 (1983) .................................................19

*Kerman v. City of New York*, 374 F.3d 93 (2d Cir. 2004) ...........................................................19

*Kuhbier v. McCartney, Verrino & Rosenberry Vested Producer Plan*,
 No. 14 Civ. 888, 2017 WL 933126 (S.D.N.Y. Mar. 8, 2017) .................................................30

*LaSalle Bank N.A. v. Nomura Asset Capital Corp.*, 424 F.3d 195
 (2d Cir. 2005).....................................................................................34, 35

*MASTR Asset Backed Sec. Trust 2006-HE3 v. WMC Mortg., LLC*,
 983 F. Supp. 2d 1104 (D. Minn. 2013)...................................................................18

*MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 105 A.D.3d 412
 (1st Dep't 2013) .........................................................................................31

*MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, No. 602825/2008,
 2013 WL 1845588 (Sup. Ct. N.Y. Cnty. Apr. 29, 2013)...................................................29

*MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, No. 602825/2008,
 2010 WL 5186702 (Sup. Ct. N.Y. Cnty. Dec. 22, 2010)...................................................14

*MBIA Ins. Corp. v. Credit Suisse Sec. (USA) LLC*, No. 603751/2009,
 2017 WL 1201868 (Sup. Ct. N.Y. Cnty. Mar. 31, 2017) ...................................................37

*MCC Proceeds, Inc. v. Advest, Inc.*, 293 A.D.2d 331 (1st Dep't 2002) .......................................30

*In re Metromedia Fiber Network, Inc.*, 416 F.3d 136 (2d Cir. 2005)...........................................39

*Morgan Stanley Mortg. Loan Trust 2006-13ARX v. Morgan Stanley Mortg. Capital Holdings LLC*, 143 A.D.3d 1 (1st Dep't 2016)................................................17, 18, 21

*Nobel Ins. Co. v. City of New York*, No. 00 Civ. 1328, 2006 WL 2848121 (S.D.N.Y. Sept. 29, 2006)..........................................................................................22

*Nomura Asset Acceptance Corp. Alt. Loan Trust v. Nomura Credit & Capital, Inc.*, No. 653390/2012, 2014 WL 2890341 (Sup. Ct. N.Y. Cnty. June 26, 2014)..............................................................23, 25, 28

*Nomura Home Equity Loan, Inc. Series 2006-FM2 v. Nomura Credit & Capital, Inc.*, 133 A.D.3d 96 (1st Dep't 2015) ..............................................................*passim*

*In re N.Y.C. Asbestos Litig.*, 89 N.Y.2d 955 (1997) ..............................................................19

*Orlander v. Staples, Inc.*, 802 F.3d 289 (2d Cir. 2015) ...........................................................30

*Platinum Equity Advisors, LLC v. SDI, Inc.*, No. 653709/2013, 2016 WL 3221580 (Sup. Ct. N.Y. Cnty. June 7, 2016)...........................................................................27

*Pomahac v. TrizecHahn 1065 Ave. of Ams., LLC*, 65 A.D.3d 462 (1st Dep't 2009) ...................34

*Roman v. Hudson Tel. Assocs.*, 11 A.D.3d 346 (1st Dep't 2004)................................................39

*Saco I Trust 2006-5 v. EMC Mortg. LLC*, No. 651820/2012, 2014 WL 2451356, (Sup. Ct. N.Y. Cnty. May 29, 2014)...........................................................................28

*In re Saint Vincents Catholic Med. Ctrs. of N.Y.*, 398 B.R. 517 (Bankr. S.D.N.Y. 2008), *aff'd*, 417 B.R. 688 (S.D.N.Y. 2009) ............................................39

*SEC v. Razmilovic*, 738 F.3d 14 (2d Cir. 2013)................................................................31, 33

*Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425 (2d Cir. 1992)...................................35

*Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540 (1992)...............................................................19

*Syncora Guar. Inc. v. EMC Mortg. Corp.*, No. 09 Civ. 3106, 2011 WL 1135007 (S.D.N.Y. Mar. 25, 2011) ..........................................................................................15

*Syncora Guar. Inc. v. EMC Mortg. Corp.*, 874 F. Supp. 2d 328 (S.D.N.Y. 2012) ................31, 34

*Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93 (2d Cir. 2010) ............................................................30

*U.S. Bank, Nat'l Ass'n v. UBS Real Estate Sec. Inc.*, 205 F. Supp. 3d 386 (S.D.N.Y. 2016)..............................................................................................*passim*

*U.S. Bank v. GreenPoint Mortg. Funding, Inc.*, 147 A.D.3d 79 (1st Dep't 2016).......................26

*Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19 (2d Cir. 2012) ..................................................30

*Wells Fargo Bank, N.A. v. JPMorgan Chase Bank, N.A.*, No. 12 Civ. 6168,
    2014 WL 1259630 (S.D.N.Y. Mar. 27, 2014) .......................................................................31

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156
    (S.D.N.Y. 2015) ....................................................................................................................38

**RULES**

Fed. R. Civ. P. 15(c) ...................................................................................................................25

Fed. R. Civ. P. 56(a) .........................................................................................................13, 19, 35

**OTHER AUTHORITIES**

*Restatement (Second) of Contracts* § 195(1) (1981)....................................................................19

## INTRODUCTION

This case concerns a residential mortgage-backed securitization in which Morgan Stanley knowingly conveyed a pool of defective mortgage loans to the Morgan Stanley Structured Trust I 2007-1 (the "Trust") ███████████████████████████████████
████████████████████████████.  Expert reunderwriting has revealed that, due to Morgan Stanley's grossly negligent conduct, most of the loans in the Trust materially breach one or more representations and warranties.  Genuine issues of material fact preclude summary judgment on many of the issues Morgan Stanley raises, and the rest fail as a matter of law.

Morgan Stanley first argues that the Trustee's case is limited to the loans in its sample. Its theory is evidently that the Court intended a bait and switch when it ordered the parties to proceed through discovery on a "sampling basis."  That is plainly not the case.  Morgan Stanley next argues that sampling is not permitted under the contracts.  But the securitization agreements are silent on what ***methodology*** the Trustee may use to prove its case.  Court after court has embraced sampling as an efficient methodology for proving breaches and the resulting damages in cases against sponsors, sellers, or originators who made representations and warranties or originated the loans in residential mortgage-backed securitizations, notwithstanding the presence of sole remedies clauses.

Morgan Stanley's arguments regarding sampling fail for the independent reason that the sole remedies clause is unenforceable due to Morgan Stanley's gross negligence.  Morgan Stanley recognizes that, under New York law, exculpatory clauses like the sole remedies clause here are unenforceable when the defendant acts with gross negligence.  Its assertion that that principle does not apply in this case has been ***directly rejected by the First Department***.  And while Morgan Stanley incorrectly claims that the Trustee has offered insufficient evidence of

gross negligence, it does not dispute that gross negligence is a quintessential fact issue that cannot be resolved on summary judgment.

Morgan Stanley also argues that the Trustee's relief must be limited to loans that were the subject of pre-suit breach notices. This Court rejected that **_exact same argument_** in denying Morgan Stanley's motion to dismiss, holding that the Trustee's breach notices were sufficient as a matter of law to put Morgan Stanley on notice of breaches throughout the Trust. That is the law of the case, and Morgan Stanley should not be permitted to reargue the point here. The First Department and other judges in this district have also rejected Morgan Stanley's argument, holding that so long as a securitization trustee serves a timely pre-suit breach notice that puts the defendant on notice that it may identify additional breaches, any breaches discovered during litigation relate back to the complaint.

Morgan Stanley's motion should be denied in its entirety, and the case should proceed to trial at the earliest available date.

## BACKGROUND

I.   THE MSST 2007-1 SECURITIZATION

    A.

Morgan Stanley served as the Sponsor of this securitization, which created the Morgan Stanley Structured Trust I 2007-1 (the "Trust"), for which Plaintiff serves as Trustee. *See* Pl.'s 56.1 Resp. ¶¶ 1-2.[1] Through a Mortgage Loan Purchase Agreement ("MLPA"), Morgan Stanley selected 4,374 mortgage loans for securitization in the Trust and sold an initial pool to a Bear Stearns subsidiary. Weinstein Decl. Ex. F (MLPA); Pl.'s 56.1 Resp. ¶ 8.[2]

---

[1] "Pl.'s 56.1 Resp." refers to Plaintiff's Response to Defendant's Local Civil Rule 56.1 Statement of Undisputed Material Facts and Plaintiff's Statement of Additional Facts.
[2] "Weinstein Decl." refers to the Declaration of Brian S. Weinstein (Dkt. 114).

█████████████████████████████████████████████████████

████████████████████████████  The loans served as collateral for residential mortgage-backed securities ("RMBS"), known as "certificates," that the Trust issued to certificateholders, who receive income from the Trust as borrowers repay their loans. *See id.* ¶¶ 6-7; Weinstein Decl. Ex. B ("PSA") § 6.04(a) (distributions to certificateholders).

███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████  These loans were the worst of the worst.

███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

### B.        Morgan Stanley's Contractual Obligations

Even though Morgan Stanley knew the loans were defective, it made or stood behind an extensive series of representations and warranties guaranteeing that the loans in the Trust met minimum quality standards.  *See* Weinstein Decl. Ex. F ("MLPA") § 10(a), (b)(1)-(24); Weinstein Decl. Ex. I ("AARA") Ex. B.  With respect to every loan, Morgan Stanley represented that the information in a "Mortgage Loan Schedule" – a document containing extensive information about the loans – was "complete, true and correct."  MLPA § 10(a)(1).

For loans originated by one of eight originators (the "MSMCH Represented Mortgage Loans"), Morgan Stanley made additional representations and warranties.  It represented that "[n]o fraud, error, omission, misrepresentation, negligence or similar occurrence with respect to a MSMCH Represented Mortgage Loan has taken place on the part of MSMCH, or, to the knowledge of MSMCH, any other person . . . involved in the origination of the MSMCH Represented Mortgage Loan."  MLPA § 10(b)(5).  It represented that "[t]he Mortgage File contains an appraisal of the related Mortgaged Property" that "satisf[ies] the requirements of Fannie Mae or Freddie Mac and Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 and the regulations promulgated thereunder."  *Id.* § 10(b)(20).  And it represented that "[n]o MSMCH Represented Mortgage Loan has an LTV [*i.e.*, loan-to-value ratio] greater than 100%."  *Id.* § 10(b)(21).

In an Assignment and Recognition Agreement, one of the originators, Accredited Home Lenders, Inc. ("Accredited"), made its own representations and warranties that largely track those Morgan Stanley made.  *See* AARA Ex. B.  For example, Accredited represented that "[n]o fraud, error, omission, misrepresentation or similar occurrence with respect to the origination of a Mortgage Loan has taken place on the part of any Person . . . involved in the origination of the Mortgage Loan."  *Id.* ¶ (k).  It represented that "[t]he Mortgage File contains an appraisal of the

related Mortgaged Property" that "satisfie[s] the requirements of Fannie Mae or Freddie Mac and Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 and the regulations promulgated thereunder." *Id.* ¶(nn).  And it represented that "no Mortgage Loan had an LTV at origination greater than 100%." *Id.* ¶(o).

To back up those representations and warranties, Morgan Stanley agreed to repurchase any loan that materially breached "a representation or warranty set forth in this Section 10 [of the MLPA], within 90 days from the date of discovery by [Morgan Stanley], *or* the date [Morgan Stanley] is notified . . . of such breach."  MLPA § 10 (emphasis added).  Morgan Stanley also agreed to repurchase breaching Accredited Loans. *Id.* § 10; Pl.'s 56.1 Resp. ¶40.

## II.   MORGAN STANLEY'S BREACHES OF ITS CONTRACTUAL OBLIGATIONS

### A.   Morgan Stanley's Breaches of Representations and Warranties

Morgan Stanley knew back in 2007 that the pool of loans it sold to the Trust was rife with breaches.  But due to Morgan Stanley's failure to advise the Trustee about any of those defects, the Trustee did not become aware of the breaches until years later.  On April 2, 2013, the Trustee received a letter ███████████████████ advising it of "material and adverse breaches of representations and warranties by Morgan Stanley" in 1,620 loans – *over one-third* of the loans in the Trust.  Pl.'s 56.1 Resp. ¶59.  On April 4, the Trustee sent a repurchase demand to Morgan Stanley that attached the April 2 letter. *Id.* ¶60.  That notice specifically stated which loans were in breach of which representations and warranties and provided a detailed explanation of why each loan was in breach. *Id.*  In addition to identifying specific breaching loans, the Trustee stated that the "repurchase request reflect[ed] only current findings," that loan review was ongoing, and that the Trustee "reserv[ed] [the] right to give notice of additional breaches." *Id.*

**B.**   **Morgan Stanley's Failure To Repurchase Nearly All Breaching Loans**

### C.    Morgan Stanley's Admissions of Grossly Negligent Conduct Pertaining to This Trust

Confirming the evidence uncovered during discovery in this case, in February 2016, Morgan Stanley expressly admitted to a pattern of grossly negligent conduct in a Statement of Facts accompanying a $2.6 billion settlement with the Department of Justice that covers this Trust.  Pl.'s 56.1 Resp. ¶ 154.  Morgan Stanley acknowledged that it was well aware of the "***problematic lending practices*** of the subprime originators from which it purchased mortgage loans." *Id.* ¶ 155 (emphasis added).  Yet it "clear[ed] dozens of loans for purchase after less than ***one minute of review*** per loan file." *Id.* ¶ 156 (emphasis added).

Morgan Stanley acknowledged that it knew that "loans that did not comply with underwriting guidelines and lacked adequate compensating factors and/or had understated loan-to-value ratios were included in the RMBS sold."  Pl.'s 56.1 Resp. ¶ 157.  It acknowledged that its "finance team, which was responsible for purchasing and securitizing loan pools but not underwriting or due diligence, instituted a procedure whereby the finance team considered [purchasing] certain loans that Morgan Stanley's credit-and-compliance due diligence process had already recommended ***should not be purchased***." *Id.* ¶ 158 (emphasis added).  Through that procedure, the finance team "decided which of the[] loans had 'acceptable risk.'" *Id.*  Morgan Stanley "ultimately purchased and securitized hundreds of loans through this process." *Id.* ¶ 159.  As a result, as Morgan Stanley knew, many of the loans it securitized, "***did not conform*** to Morgan Stanley's representations." *Id.* ¶ 160 (emphasis added).

Morgan Stanley took pains to conceal its wrongdoing.  For example, Morgan Stanley's Vice President of Valuation, who was responsible for due diligence on the properties securing the loans Morgan Stanley securitized, admonished an analyst for using the phrase "slightly

higher risk tolerance" in writing because Morgan Stanley was ***"running under the radar and d[id] not want to document these types of things."*** Pl.'s 56.1 Resp. ¶ 161 (emphasis added).

## III.   PROCEEDINGS BEFORE THIS COURT

### A.   The Trustee's Complaint

After Morgan Stanley refused to repurchase all but a handful of breaching loans, the Trustee filed a timely complaint seeking to vindicate the rights of certificateholders in the Trust. Dkt. 2.  The Trustee brought claims for breaches of representations and warranties and alleged that the breaches were "grossly negligent" because "the Loans were made without following minimal underwriting standards or verifying basic critical information about mortgage borrowers." *Id.* ¶¶ 45, 70-83.  The Trustee alleged that it provided adequate notice of the 1,620 loans specifically identified in the April 2013 breach notice and that Morgan Stanley discovered additional breaches "on its own." *Id.* ¶¶ 77-78.  Among other relief, the Trustee sought "compensatory damages for the harm [Morgan Stanley] has caused the Trust." *Id.* ¶ 79.

### B.   This Court's Ruling on the Motion To Dismiss

Morgan Stanley moved to dismiss, and the Court denied the motion in pertinent part. Dkt. 47.  The Court ruled that the Trustee's pre-suit notice was more than adequate:  It "unquestionably identified 1,620 of the 4,374 loans in the Trust as defective." *Id.* at 6.  Citing Judge Rakoff's decision in *Assured Guaranty Municipal Corp. v. Flagstar Bank, FSB*, 920 F. Supp. 2d 475 (S.D.N.Y. 2013), the Court held that the Trustee's breach notice was sufficient to provide Morgan Stanley with "constructive notice" of breaches throughout the Trust.  Dkt. 47, at 7.  The Court thus denied Morgan Stanley's motion "insofar as it [sought] dismissal of Plaintiff's claims relating to defective loans not specifically identified in the breach notice." *Id.*

The Court also rejected Morgan Stanley's argument that it was not required to repurchase Accredited loans.  Dkt. 47, at 7-9.  It held that the "MLPA does not by any means

unambiguously relieve [Morgan Stanley] of liability for Accredited's breaches." *Id.* at 9.  Thus, Morgan Stanley "has an obligation to repurchase defective Accredited Loans." *Id.*

Finally, the Court rejected Morgan Stanley's argument that the Trustee's remedy was limited to "'payment of the repurchase price.'" Dkt. 47, at 12.  The Court recognized that, "[u]nder New York law, contractual provisions limiting liability 'will not preclude recovery in . . . breach of contract where the losses are the result of gross negligence.'" *Id.* at 14 (quoting *Gold Connection Discount Jewelers, Inc. v. Am. Dist. Tel. Co.*, 212 A.D.2d 577, 578 (2d Dep't 1995)).  The Court deemed a ruling on gross negligence premature, but noted that "many courts have awarded money damages, notwithstanding sole remedy provisions, 'equivalent to what the defendant would pay were performance possible' in situations in which properties have been foreclosed or specific aspects of the prescribed remedy mechanism are no longer feasible." Dkt. 47, at 14-15 (quoting *ACE Sec. Corp. Home Equity Loan Trust, Series 2007-HE3 ex rel. HSBC Bank USA, Nat'l Ass'n v. DB Structured Prods., Inc.*, 5 F. Supp. 3d 543, 554 (S.D.N.Y. 2014)).

### C.    This Court's Preliminary Approval of Sampling

The last time the parties were before the Court, in May 2015, the Court ruled that the parties could proceed through discovery on a "sampling basis." Dkt. 53.  The Court instructed the parties to "take a sampling approach to the litigation" and explained that "discovery and the preparation of expert reports [would] focus on this sample." Dkt. 54, at 4.

The Court expressly left open the possibility that, if it did not proceed past discovery on a "sampling basis," the Trustee would have the opportunity to prove breaches in loans not in its sample.  In that scenario, the Court explained, "the loans that were examined in the sampl[e] then would be the first tranche of loans" to be reviewed, and if the parties "end up getting that far before any consensual resolution . . . we will if necessary undertake the further process of

adjudication of claims that the plaintiff may wish to assert as to the remaining loans that were not in the sample."  Dkt. 54, at 4-5.

      **D.**      **Reunderwriting Identifies Breaches in a Majority of Loans**

Heeding the Court's instructions, the Trustee proceeded on a "sampling basis."

████████████████████████████████████████

████████████████████████

**STANDARD OF REVIEW**

Summary judgment is appropriate only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when 'no reasonable trier of fact could find in favor of the nonmoving party.'" *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (citation omitted).

**ARGUMENT**

I.   **THE TRUSTEE MAY PURSUE DAMAGES FOR ALL BREACHING LOANS IN THE TRUST THROUGH SAMPLING**

    **A.   The Securitization Agreements Do Not Prohibit the Use of Sampling**

Morgan Stanley asserts that the MLPA prohibits sampling. MS Br. 9-13. It is wrong. Nothing in the MLPA purports to limit how the Trustee may prove the rate of breaches throughout the Trust or the damages attributable to those breaches where there is a basis for seeking that remedy.

Sampling is a scientific method of identifying the number of breaching loans in the Trust and calculating damages for those breaches. Court after court has embraced that approach in RMBS cases against sponsors, sellers, and originators who made representations and warranties or originated the loans at issue, notwithstanding clauses purporting to limit the available remedies to repurchase. In *Assured Guaranty Municipal Corp. v. Flagstar Bank, FSB*, 920 F. Supp. 2d 475 (S.D.N.Y. 2013), for example, Judge Rakoff held that, notwithstanding a sole remedies clause, sampling was an "appropriate method of proof" and expressly approved of

Dr. Lipshutz's sampling methodology. *Id.* at 512.   Numerous other courts have agreed that sampling "is an accepted and useful way of proving liability (and by extension, damages) in an RMBS case." *Deutsche Bank Nat'l Trust Co. v. WMC Mortg., LLC*, No. 12 Civ. 933, 2014 WL 3824333, at *9 (D. Conn. Aug. 4, 2014); *see, e.g.*, *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, No. 602825/2008, 2010 WL 5186702, at *4, 6 (Sup. Ct. N.Y. Cnty. Dec. 22, 2010) ("Scientific literature and testing is replete with the use of statistical sampling; the validity of properly conducted sampling is not a question for debate."); *see generally Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*, No. 11 Civ. 6188, 2012 WL 6000885 (S.D.N.Y. Dec. 3, 2012) (rejecting challenge to sampling).

The MLPA's sole remedies clause does not foreclose damages.  MLPA § 10.  This Court recognized in ruling on the motion to dismiss that "specific performance is an equitable remedy, and 'where the granting of equitable relief appears to be impossible or impracticable, equity may award damages in lieu of the desired equitable remedy.'"  Dkt. 47, at 14 (quoting *ACE Sec. Corp. Home Equity Loan Trust, Series 2007-HE3 v. DB Structured Prods., Inc.*, 5 F. Supp. 3d 543, 554 (S.D.N.Y. 2014)) (alteration omitted).   Thus, "many courts have awarded money damages, notwithstanding sole remedy provisions, 'equivalent to what the defendant would pay were performance possible' in situations in which properties have been foreclosed or specific aspects of the prescribed remedy mechanism are no longer feasible."  Dkt. 47, at 14-15 (quoting *ACE Sec.*, 5 F. Supp. 3d at 554); *see, e.g.*, *U.S. Bank, Nat'l Ass'n v. UBS Real Estate Sec. Inc.*, 205 F. Supp. 3d 386, 415 (S.D.N.Y. 2016) ("Trusts may recover money damages in lieu of the repurchase remedy."); *Nomura Home Equity Loan, Inc. Series 2006-FM2 v. Nomura Credit & Capital, Inc.*, 133 A.D.3d 96, 106 (1st Dep't 2015) ("In the RMBS context, most courts have repeatedly held that . . . where the granting of equitable relief appears to be impossible or

impracticable, equity may award damages in lieu of the desired equitable remedy." (quotation marks omitted) (collecting cases)).   Morgan Stanley admits that "damages equal to the repurchase price are available" for liquidated loans.  MS Br. 12 n.10.  ███████████

████████████████████████████████████████████████████████████████████████████

████████████████   Thus, there is no dispute that a damages award – and therefore sampling – is appropriate for the overwhelming majority of the loans in the Trust.

Sampling is appropriate for the additional reason that reunderwriting every loan in the Trust is not feasible.  As courts have recognized in cases against sponsors, sellers, or originators, forcing securitization trustees to reunderwrite thousands of loans is "commercially unreasonable," and thus "sampling may be used to compute damages."  *Assured Guar. Mun. Corp. v. DB Structured Prods., Inc.*, No. 650705/2010, 2014 WL 3282310, at *6 (Sup. Ct. N.Y. Cnty. July 3, 2014).  For that reason, sampling has long been a "widely accepted method of proof in cases brought under New York law, including in cases relating to RMBS and involving repurchase claims."  *Assured*, 920 F. Supp. 2d at 512; *see, e.g.*, *Assured Guar. Mun. Corp. v. UBS Real Estate Sec. Inc.*, No. 12 Civ. 1579, Dkt. 86 (S.D.N.Y. Apr. 1, 2013) (allowing sampling); *Syncora Guar. Inc. v. EMC Mortg. Corp.*, No. 09 Civ. 3106, 2011 WL 1135007, at *4-5 (S.D.N.Y. Mar. 25, 2011) (sampling permitted because MLPA contains "no limiting language on the means for enforcement").

Where courts have insisted on loan-by-loan reunderwriting in cases like this one, the process has been unworkable.  For example, after a bench trial in *U.S. Bank, National Association, as Trustee for the MASTR Adjustable Rate Mortgage Trust 2006-OA2 v. UBS Real Estate Securities Inc.*, 205 F. Supp. 3d 386 (S.D.N.Y. 2016) ("*MARM 2006-OA2*"), the court ruled on only a few illustrative loans and held that it could not "effectively and timely address[ ]"

the remainder because it lacked the "resources." *Id.* at 526. The court appointed a master to make findings and provided for the appointment of "additional masters" to assist the Lead Master. *Id.* Over nine months later, that process is still ongoing with no end in sight.

Because specific performance of the repurchase remedy is not feasible, the Trustee can seek damages – a remedy for which sampling is indisputably appropriate in this context. That the MLPA references obligations to cure "such" breach and to repurchase "the affected Mortgage Loan" is beside the point. *See* MS Br. 9 (emphasis omitted). Those descriptions of the ***repurchase*** remedy are irrelevant where there is a basis for seeking ***damages***. There is no "plain language" that limits the Trustee to any specific method of proving breaches or damages. *Id.* And that is what sampling is: a method of proving breaches throughout the Trust and the damages attributable to those breaches. Morgan Stanley's argument is nothing more than an attempt to "rewrite into a contract conditions the parties did not insert . . . under the guise of construction." *Bank of N.Y. Mellon Trust Co. v. Morgan Stanley Mortg. Capital, Inc.*, 821 F.3d 297, 307 (2d Cir. 2016).

 Nothing in the MLPA prohibits that reliable method of proving breaches and damages here.

### B. The Sole Remedies Clause Is Unenforceable Due to Morgan Stanley's Gross Negligence

Sampling is also appropriate for the independent reason that the sole remedies clause is

unenforceable due to Morgan Stanley's gross negligence.

      **1.**      *Sole Remedies Clauses in RMBS Securitizations Are Unenforceable Where a Defendant Acts with Gross Negligence*

In ruling on the motion to dismiss, this Court recognized that, "[u]nder New York law, contractual provisions limiting liability 'will not preclude recovery . . . in breach of contract where the losses are the result of gross negligence.'" Dkt. 47, at 14 (quoting *Gold Connection Discount Jewelers, Inc. v. Am. Dist. Tel. Co.*, 212 A.D.2d 577, 578 (2d Dep't 1995)). The First Department has since confirmed that this Court's ruling was correct.

In *Morgan Stanley Mortgage Loan Trust 2006-13ARX v. Morgan Stanley Mortgage Capital Holdings LLC*, 143 A.D.3d 1 (1st Dep't 2016) ("*MSM 2006-13ARX*"), the First Department expressly held that a defendant's gross negligence in an RMBS case renders a sole remedies clause unenforceable. The sole remedies clause before the court was materially indistinguishable from the one here. *See id.* at 6. And Morgan Stanley advanced the same arguments as it does here. *See id.* at 9. The First Department rejected them, holding that the sole remedies provision was unenforceable based on the "long-standing public policy" that "a party may not insulate itself from damages caused by its 'grossly negligent conduct.'" *Id.* at 8 (quoting *Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540, 554 (1992)); *see also Gross v. Sweet*, 49 N.Y.2d 102, 106 (1979) ("[T]he law frowns upon contracts intended to exculpate a party from the consequences of [its] own negligence."). The court held that the gross negligence exception "applies equally to a clause that completely exonerates a party from liability as well as to a clause limiting damages." *MSM 2006-13ARX*, 143 A.D.3d at 9.

This Court should follow that decision. Federal courts applying New York law are "bound to apply the law as interpreted by New York's intermediate appellate courts . . . unless [they] find persuasive evidence that the New York Court of Appeals would reach a different

conclusion." *Cornejo v. Bell*, 592 F.3d 121, 130 (2d Cir. 2010) (quotation marks omitted). Morgan Stanley offers no evidence that would justify a departure from the First Department's decision, which is consistent with a solid wall of authority that pre-dates it. *See, e.g.*, *Deutsche Bank Nat'l Trust Co. v. WMC Mortg., LLC*, 2014 WL 3824333, at *18-19 (gross negligence would render sole remedies clause unenforceable); *Deutsche Alt-A Sec. Mortg. Loan Trust, Series 2006-OA1 v. DB Structured Prods., Inc.*, 958 F. Supp. 2d 488, 500-02 (S.D.N.Y. 2013) (similar); *MASTR Asset Backed Sec. Trust 2006-HE3 v. WMC Mortg., LLC*, 983 F. Supp. 2d 1104, 1115 (D. Minn. 2013) (similar); *Deutsche Bank Nat'l Trust Co. v. Decision One Mortg. Co.*, No. 2013 L 5823, 2013 WL 6284438, at *5 (Ill. Cir. Ct. Nov. 19, 2013) (similar).[3]

Morgan Stanley argues that it cannot be held liable for damages absent a "tortious breach of a separate legal duty."  MS Br. 14.  In other words, according to Morgan Stanley, although New York law precludes a defendant from insulating itself from a ***tort claim for gross negligence***, this case is different because Morgan Stanley merely breached its contractual obligations in a ***grossly negligent manner***.  That argument is merely an effort to relitigate the issue Morgan Stanley already lost in *MSM 2006-13ARX*,  where the First Department held that the gross negligence exception applied to a contract claim, not a tort claim.  It is also squarely contrary to *Abacus Federal Savings Bank v. ADT Security Services, Inc.*, 18 N.Y.3d 675 (2012), where, despite ruling that the plaintiff could ***not*** pursue a tort claim, the Court of Appeals held that the defendant's grossly negligent conduct rendered an exculpatory clause in a contract unenforceable.  *Id.* at 683-84.

---

[3] Morgan Stanley points out that *MSM 2006-13ARX* was "*sub judice* before the New York Court of Appeals."  MS Br. 15 n.12.  But, on June 15, the parties advised the Court of Appeals that "an agreement in principle to settle th[e] action ha[d] been reached," and "the parties intend to withdraw the appeal."  Pl.'s 56.1 Resp. ¶ 162.

### 2. *Genuine Issues Remain Regarding Morgan Stanley's Gross Negligence*

Morgan Stanley argues that the Trustee "cannot meet the extremely high standard for proving gross negligence." MS Br. 13-14. That argument flips the summary judgment burden on its head. The Trustee does not have to prove conclusively that Morgan Stanley was grossly negligent. To the contrary, **Morgan Stanley** must prove that "there is no genuine dispute as to any material fact" on that issue. Fed. R. Civ. P. 56(a). It cannot carry that burden here.

"[Q]uestions as to whether there was gross negligence, intent, or reckless disregard are questions of fact." *Kerman v. City of New York*, 374 F.3d 93, 116 (2d Cir. 2004); *Food Pageant, Inc. v. Consol. Edison Co.*, 54 N.Y.2d 167, 172-73 (1981) (similar). Gross negligence requires conduct that "smacks of intentional wrongdoing." *Kalisch-Jarcho, Inc. v. City of New York*, 58 N.Y.2d 377, 385 (1983). Such conduct "can be explicit, as when it is fraudulent, malicious or . . . in bad faith." *Id.* (footnote omitted). But conduct can also "smack[] of intentional wrongdoing . . . when, *as in gross negligence, it betokens a reckless indifference to the rights of others*." *Id.* (emphasis added); *see also Sommer*, 79 N.Y.2d at 554 ("reckless disregard for [a counterparty's] rights"); *Restatement (Second) of Contracts* §195(1) (1981) (contract terms unenforceable if they limit liability for "harm caused intentionally or recklessly"). A party is grossly negligent if it acts with "disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow and [does] so with conscious indifference to the outcome." *In re N.Y.C. Asbestos Litig.*, 89 N.Y.2d 955, 956-57 (1997) (quotation marks omitted).

The evidence produced in discovery is more than sufficient to create a genuine issue regarding Morgan Stanley's gross negligence. Morgan Stanley admitted to widespread abuses in its $2.6 billion settlement with the Department of Justice that expressly covers this Trust. Pl.'s 56.1 Resp ¶154. Among other things, Morgan Stanley allowed its finance team to override

decisions by its due diligence teams regarding which loans had "acceptable risk," resulting in the securitization of hundreds of loans that the due diligence teams recommended *"should not be purchased."* *Id.* ¶ 158 (emphasis added). In complete disregard for the rights of investors, Morgan Stanley "clear[ed] dozens of loans for purchase after less than one minute of review per loan file." *Id.* ¶ 156. It failed to disclose that loans "*did not comply with underwriting guidelines and lacked adequate compensating factors* and/or had understated loan-to-value ratios." *Id.* ¶ 157 (emphasis added). And Morgan Stanley actively concealed its knowledge of the loans' poor quality, telling its own employees not to document the deficiencies because Morgan Stanley was "running under the radar." *Id.* ¶ 161.

The problems Morgan Stanley acknowledged in the DOJ Settlement were especially pronounced in this Trust. Morgan Stanley created this securitization knowing that the originators from which it bought loans had "problematic lending practices," Pl.'s 56.1 Resp. ¶ 155; █████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████

      ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████  █████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█
████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████

Separate and apart from all that, the reunderwriting results independently support the gross negligence claim. ██████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████

## II. MORGAN STANLEY RECEIVED NOTICE OF OR DISCOVERED ALL BREACHING LOANS IN THE TRUST

Morgan Stanley's repurchase obligation is triggered by *either* notice *or* its own discovery of breaches.  MLPA § 10.  Summary judgment is not warranted on either issue.

### A. The Trustee's Pre-Complaint Breach Notice Put Morgan Stanley on Notice of Breaches Throughout the Trust

Morgan Stanley argues, for the *second time* in this litigation, that the Trustee's recovery should be limited to the loans identified in the April 2013 breach notices.  MS Br. 16.  In its motion to dismiss, Morgan Stanley argued that the Trustee "provide[d] notice of alleged breaches only with respect to the 1,620 Mortgage Loans identified" in the notices, and that Morgan Stanley had no obligation to repurchase the remaining loans.  Dkt. 19, at 8.  This Court rejected that argument, holding that the Trustee "gave adequate notice with respect to breaching loans beyond the 1,620 specifically mentioned."  Dkt. 47, at 5.  "[G]iven the pervasive nature of the breaches identified," the Court ruled, Morgan Stanley "was put on notice of a more extensive range of defective loans within the Trust."  *Id.* at 6.

Evidently hoping for a second bite at the apple, Morgan Stanley makes that exact same

argument yet again.  Morgan Stanley has provided no valid basis for the Court to reverse its prior ruling.  Morgan Stanley contends that "more is required to survive summary judgment," claiming that there is a "critical difference between the 'notice' required for purposes of notice pleading at the motion to dismiss stage, and the 'notice' required under the terms of the contract."  MS Br. 18.  That argument makes no sense.  Morgan Stanley is not arguing that the Trustee has failed to prove the allegations in the Complaint.  Instead, it is arguing that notice of pervasive breaches is not sufficient under the contract to trigger its repurchase obligation for loans that are not specifically mentioned in the notice.  That is a legal argument, not a factual one.  And it is the exact same argument this Court already rejected.  Because the Court's legal conclusion has not been "in any way altered by discovery, or by subsequent developments in the law," there is no reason for the Court to reconsider its prior ruling.  *Nobel Ins. Co. v. City of New York*, No. 00 Civ. 1328, 2006 WL 2848121, at *4 (S.D.N.Y. Sept. 29, 2006); *see also DiLaura v. Power Auth. of State of N.Y.*, 982 F.2d 73, 76 (2d Cir. 1992) (law of the case).

Morgan Stanley's argument lacks merit in any event.  Morgan Stanley asserts that the MLPA "requires ***actual*** notice . . . of material breaches in particular loans" and "does not speak of inquiry or constructive notice."  MS Br. 16-17 (emphasis added).  But "'courts may not by construction add . . . terms . . . under the guise of interpreting the writing.'"  *ACE Sec. Corp. v. DB Structured Prods., Inc.*, 25 N.Y.3d 581, 597 (2015).  Section 10 of the MLPA requires Morgan Stanley to repurchase breaching loans upon either "discovering or receiving notice" of material breaches.  MLPA § 10.  On its face, the MLPA does not specify any particular type of notice that is required, let alone contain an "actual" notice requirement.

Multiple courts – including this one, Dkt. 47, at 6-7 – have agreed that inquiry notice is sufficient in cases against sponsors, sellers, and originators who made representations and

warranties or originated the loans at issue.  In *Assured*, for example, Judge Rakoff denied a post-trial motion arguing that "knowledge as to a subset of breaches . . . is insufficient to create an obligation to repurchase any loans not included in that subset."  920 F. Supp. 2d at 512.  That court held that "by informing [the originator and securitizers] of pervasive breaches," the repurchase demand "rendered [them] constructively aware – or, at a minimum, put [them] on inquiry notice – of the substantial likelihood that these breaches extended beyond the [noticed] population."  *Id.* at 512-13 (quotation marks omitted).  Numerous other courts have agreed.  *See, e.g.*, *Nomura Asset Acceptance Corp. Alt. Loan Trust v. Nomura Credit & Capital, Inc.*, No. 653390/2012, 2014 WL 2890341, at *16 (Sup. Ct. N.Y. Cnty. June 26, 2014) ("contractual notice requirement . . . satisfied by a plaintiff's breach notice that refers to specific allegedly defective loans . . .  where the notice also demands repurchase of all other defective loans"); *ACE Sec. Corp. v. DB Structured Prods., Inc.*, No. 653394/2012, 2014 WL 1384490, at *3 (Sup. Ct. N.Y. Cnty. Apr. 4, 2014) (similar); *Assured Guar. Mun. Corp. v. DB Structured Prods.*, 2014 WL 3282310, at *6-7 (similar); *Deutsche Bank Nat'l Trust Co. v. WMC Mortg., LLC*, No. 12 Civ. 933, 2014 WL 1289234, at *10-11 (D. Conn. Mar. 31, 2014); *Deutsche Alt-A Sec. Mortg. Loan Trust*, 958 F. Supp. 2d at 496 (similar); *Decision One Mortg. Co.*, 2013 WL 6284438, at *3-4 (similar).

Although some courts have not followed *Assured*, *see* MS Br. 17-18 & n.14, the First Department has since confirmed that the decision was correct.  In *Nomura Home Equity Loan, Inc., Series 2006-FM2 v. Nomura Credit & Capital, Inc.*, 133 A.D.3d 96 (1st Dep't 2015), the First Department held that the trial court "correctly refused to dismiss claims relating to loans that plaintiffs failed to mention in their breach notices."  *Id.* at 108.  Those notices, the court explained, "put defendant on notice that the certificateholders whom plaintiffs (as trustees)

23

represented were investigating the mortgage loans and might uncover additional defective loans for which claims would be made." *Id.* "[B]ecause of the systemic nature of these defects," the breaches "could hardly have escaped defendant's notice." *Id.* at 107. This Court is bound to follow that holding absent "'persuasive evidence that the New York Court of Appeals . . . would reach a different conclusion.'" *Cornejo*, 592 F.3d at 130. Morgan Stanley offers none.

The Trustee's April 2013 breach notices identified numerous violations of multiple representations and warranties in roughly ***37% of the loans in the Trust***. Pl.'s 56.1 Resp. ¶ 60. The Trustee also stated that the notices "reflect[ed] only current findings" because review of the loan pool was ongoing, and reunderwriting "will likely uncover additional breaches." *Id.* That was plainly sufficient to put Morgan Stanley on notice of breaching loans throughout the Trust.[5]

### B. The Trustee's Expert Reports Are Sufficient To Put Morgan Stanley on Notice of Additional Breaching Loans in the Trust

Morgan Stanley's notice arguments fail for the independent reason that the Trustee's expert reports identified additional breaches, and the notice provided by those reports relates back to the timely Complaint.

In *Nomura*, the First Department unequivocally held that subsequently identified breaches relate back to the filing of a complaint. 133 A.D.3d at 108. There, "presuit letters put defendant on notice" of specific breaching loans and of the certificateholder's ongoing review, which "might uncover additional defective loans for which claims would be made." *Id.* The court thus held that because "there were some timely claims . . . a complaint amended to add the



claims at issue [relating to non-noticed loans] would have related back to the original complaints." *Id.*

Courts in this district have reached the same result as *Nomura* under the corresponding Federal Rule. *See* Fed. R. Civ. P. 15(c). In *MARM 2006-OA2*, for example, Judge Castel held that, so long as timely pre-suit notices "reserved the right to assert future additional breaches," breach notices "served during the pendency of [an] action relate back to . . . pre-suit notices." 205 F. Supp. 3d at 421. An expert report served during litigation could thus "properly place[ ] [an RMBS defendant] on notice of all breaches claimed by the [plaintiff]." *Id.* at 422. Similarly, in *Homeward Residential, Inc. v. Sand Canyon Corp.*, No. 12 Civ. 7319, Dkt. 124 (S.D.N.Y. Sept. 30, 2016), Judge Torres held that an amended pleading adding claims relating to 649 unnoticed loans would relate back to a timely complaint that asserted claims for only 96 loans. *Id.* at 1. Citing *Nomura*, the court "conclud[ed] that Plaintiffs' proposed new claims relate back to the original and first amended complaints, both of which were timely filed." *Id.* at 10; *see also Deutsche Bank Nat'l Trust Co. v. Equifirst Corp.*, No. 651957/2013, Doc. No. 131, at 9 (Sup. Ct. N.Y. Cnty. May 26, 2016) (repurchase demands "expressly reserv[ing] the right to identify further breaches and to assert further claims . . . sufficient" for non-noticed loans); *Nomura*, 2014 WL 2890341, at *16 (similar) (collecting cases).

Morgan Stanley claims that "[c]ourts have reached conflicting conclusions" and urges this Court to accept a Delaware chancellor's interpretation of New York law over the First Department's holding in *Nomura*. MS Br. 21 & n.17, 22 (citing *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, Civil Action No. 5140-CS, 2012 WL 3201139 (Del. Ch. Aug. 7, 2012)). But it offers no "persuasive evidence" that would justify departing from "the law as interpreted by New York's intermediate appellate courts." *Cornejo*, 592 F.3d at 130

(quotation marks omitted).  The only Court of Appeals case it cites is a twenty-year-old decision addressing Medicaid reimbursement regulations that expressly recognized that a proposed intervenor could "relate its claim back if . . . [its] claim and that of the original petitioner are based on the same transaction or occurrence."  *Greater N.Y. Health Care Facilities Ass'n v. DeBuono*, 91 N.Y.2d 716, 721 (1998).  And the only First Department case it cites – *U.S. Bank v. GreenPoint Mortgage Funding, Inc.*, 147 A.D.3d 79 (1st Dep't 2016) – involved a defendant that "was not notified that ***any*** of the loans . . . were in breach" before the lawsuit was filed.  *Id.* at 83 (emphasis added).  *GreenPoint* distinguished *Nomura* on precisely that basis.  *Id.* at 88.

The Delaware Chancery case that Morgan Stanley urges this Court to follow is even farther afield.  For one thing, it was decided before *Nomura*.  For another, the plaintiff in that case **"*specifically disclaimed*"** claims relating to non-noticed loans.  *Cent. Mortg. Co.*, 2012 WL 3201139, at *19 (emphasis added).  The Delaware court held that the plaintiff's about-face was not permitted:  "[Plaintiff] has pointed me to no case where a complaint provides actual notice that the plaintiff was not bringing certain claims, but a court nonetheless permitted relation back on the basis that the defendant should have been aware from that complaint that those claims might be asserted against it anyway."  *Id.* (emphasis omitted).

*Nomura* controls here.  There is no dispute that the Trustee's Complaint was timely filed, nor is there any dispute that the pre-suit breach notices "reserve[d] [the] right to give notice of additional breaches."  Pl.'s 56.1 Resp. ¶ 60.  The Trustee may thus bring claims for all breaching loans in the Trust, including those identified in its expert reports.

███████████████████████████████████████████████

████████████████████████████████████████  But under New York law, "[s]trict compliance with [a] contract's notice provisions [is] not required, [if]

defendants do not claim that they did not receive actual notice or that they were in any way prejudiced as a result of this minimal deviation." *Dellicarri v. Hirschfeld*, 210 A.D.2d 584, 585 (3d Dep't 1994); *see, e.g.*, *Platinum Equity Advisors, LLC v. SDI, Inc.*, No. 653709/2013, 2016 WL 3221580, at *7 (Sup. Ct. N.Y. Cnty. June 7, 2016) (notice sufficient where "[s]ellers' Representative admit[ted] that it received the notice . . . and d[id] not claim . . . any prejudice"). If claims have "been the subject of sufficient correspondence to make them well known," "complete technical compliance with the notice of claim requirements [is] not necessary." *Abax, Inc. v. Lehrer McGovern Bovis, Inc.*, 8 A.D.3d 92, 93 (1st Dep't 2004). Morgan Stanley does not deny that it now has actual notice and does not claim that it suffered any prejudice from the manner in which it received that notice. The notice was therefore sufficient.

### C. Genuine Disputes Remain Regarding Morgan Stanley's Discovery of the Breaches

Morgan Stanley's notice arguments fail for the third independent reason that genuine factual disputes remain regarding Morgan Stanley's independent discovery of the breaches.

#### 1. *Morgan Stanley's Due Diligence Supports an Inference of Discovery*

In denying Morgan Stanley's motion to dismiss, this Court held that the "defect rate documented in the breach letter may support an inference that [Morgan Stanley] already had knowledge of the representation and warranty breaches based on its due diligence." Dkt. 47, at 7. Discovery has since borne that out. █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ And Morgan Stanley has since

27

publicly acknowledged that it was aware that loans in this Trust "did not comply with underwriting guidelines and lacked adequate compensating factors."  *Id.* ¶ 157.

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

Court after court has held that a high breach rate is "sufficient to support a reasonable inference that defendant discovered widespread breaches" in cases against sponsors, sellers, or originators who made representations and warranties or originated the loans at issue.  *Home Equity Asset Trust 2007-2 v. DLJ Mortg. Capital, Inc.*, No. 651174/2013, 2014 WL 4966127, at *1 (Sup. Ct. N.Y. Cnty. Oct. 1, 2014), *rev'd on other grounds*, 140 A.D.3d 518 (1st Dep't 2016) (addressing attorney's fees); *ACE Sec. Corp. v. DB Structured Prods.*, No. 651936/2013, 2014 WL 4785503, at *6 (Sup. Ct. N.Y. Cnty. Aug. 28, 2014) ("[sponsor's] role in the securitization, together with . . . allegations as to the widespread nature of the breaches, . . . sufficient to support a reasonable inference that defendant discovered widespread breaches"); *see also Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*, No. 11 Civ. 2375, 2011 WL 5335566, at *7 (S.D.N.Y. Oct. 31, 2011) (similar); *Nomura*, 2014 WL 2890341, at *15 (due diligence reviews supported inference of discovery); *Saco I Trust 2006-5 v. EMC Mortg. LLC*, No. 651820/2012, 2014 WL 2451356, at *8 (Sup. Ct. N.Y. Cnty. May 29, 2014) ("post-closing audit and quality control reviews" supported inference of discovery).  Drawing all inferences in favor of the Trustee, as Rule 56 requires, there is ample evidence of Morgan Stanley's independent discovery of breaches – at the very least a genuine dispute of material fact remains.  ████████████████████████

███████████████████████████████████████████████████████████

Morgan Stanley urges that "discovery" requires "actual knowledge of loan-specific breaches."  MS Br. 16, 17.  Even assuming that "actual knowledge" is the standard, the Trustee

has satisfied it.  A party has "knowledge" of a breach when it "has knowledge of all material facts necessary to understand" that a breach has occurred.  *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 193 (2d Cir. 2001).  The Trustee thus need only prove knowledge of facts that amount to breaches.  *See Fish v. GreatBanc Trust Co.*, 749 F.3d 671, 679 (7th Cir. 2014) ("'[A]ctual knowledge'" requires "knowledge of the 'essential facts,'" not "knowledge of every last detail.").█████████████████████████████████████████████████████

████  Morgan Stanley thus had "actual knowledge" of any breach that was apparent during due diligence. ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████  At a minimum, genuine disputes remain regarding Morgan Stanley's actual knowledge of these essential facts.[6]

## 2. *Morgan Stanley Was Willfully Blind to the Breaches*

Alternatively, the Trustee may "rely on evidence of willful blindness . . . to prove that [Morgan Stanley] had knowledge that the representations and warranties had been breached." *MARM 2006-OA2*, 205 F. Supp. 3d at 425; *see also MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, No. 602825/2008, 2013 WL 1845588, at *5 (Sup. Ct. N.Y. Cnty. Apr. 29, 2013) (similar).  "The principle that willful blindness is tantamount to knowledge is hardly novel."

---

[6] Morgan Stanley seizes on language from briefs submitted in other cases by Deutsche Bank National Trust Co. as Trustee for other trusts governed by other contracts.  MS Br. 16.  But it neglects to mention that those briefs cite authority for the proposition that an RMBS sponsor's discovery of breaches can be proven by evidence of (1) the sponsor's own due diligence; (2) forensic analysis revealing "obvious and widespread breaches"; and (3) identification of specific breaches in the trust at issue.  *See* Pl.'s 56.1 Resp. ¶¶ 55-56.  That is precisely the sort of evidence the Trustee has presented here.  Morgan Stanley also neglects to mention that the issue in those cases was whether the trustee should have discovered breaches solely by virtue of its limited role in those securitizations.  Those briefs thus shed no light on the issue in this case:  Whether Morgan Stanley, who, as Sponsor, made specific representations and warranties about the quality of the loans and conducted due diligence on the loans, discovered the breaches.  *See ACE*, 2014 WL 4785503, at *6 ("[sponsor's] role in the securitization, together with allegations as to the widespread nature of the breaches, . . . sufficient to support a reasonable inference that defendant discovered widespread breaches").

*Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 110 n.16 (2d Cir. 2010) (collecting cases).   New York courts frequently apply the concept in contract cases.   *See, e.g.*, *Carr v. Marietta Corp.*, 211 F.3d 724, 732-33 (2d Cir. 2000); *MCC Proceeds, Inc. v. Advest, Inc.*, 293 A.D.2d 331, 334 (1st Dep't 2002) (considering willful ignorance in conjunction with notice).

A party "is 'willfully blind' or engages in 'conscious avoidance' amounting to knowledge where [it] 'was aware of a high probability of the fact in dispute and consciously avoided confirming that fact.'" *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 35 (2d Cir. 2012).   To the extent Morgan Stanley did not have actual knowledge of the breaches, it lacked that knowledge only due to its "conscious avoidance." ███████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████

### III.   WHETHER BREACHES MATERIALLY AND ADVERSELY AFFECT THE INTERESTS OF CERTIFICATEHOLDERS IS A FACT QUESTION

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████   But "the question of the materiality of a breach 'is usually *a question of fact* and should be decided as a matter of law only where the inferences are certain.'" *Orlander v. Staples, Inc.*, 802 F.3d 289, 298 (2d Cir. 2015) (emphasis added); *see also Cont'l Ins. Co. v. RLI Ins. Co.*, 161 A.D.2d 385, 387 (1st Dep't 1990) (similar); *Kuhbier v. McCartney, Verrino & Rosenberry Vested Producer Plan*, No. 14 Civ. 888, 2017 WL 933126, at *18 (S.D.N.Y. Mar. 8,



2017) (similar). ██████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████ " '[W]here, as here, there are conflicting expert

reports presented, courts are wary of granting summary judgment.' " *Harris v. Provident Life &*

*Accident Ins. Co.*, 310 F.3d 73, 79 (2d Cir. 2002) (alteration in original); *see SEC v. Razmilovic*,

738 F.3d 14, 35 (2d Cir. 2013) (similar).   Thus, there is no basis on which to grant summary

judgment on the issue of materiality.

### A.   The Trustee's Experts Offered Sufficient Analysis To Support Their Materiality Determinations

████████████████████████████████████████████████████████

████████████████████   Those arguments fail.   A breach is material if it increases the "risk of

loss," regardless of whether that risk "actualizes."   *Wells Fargo Bank, N.A. v. JPMorgan Chase*

*Bank, N.A.*, No. 12 Civ. 6168, 2014 WL 1259630, at *4 (S.D.N.Y. Mar. 27, 2014).   Thus, "[i]n

order to prove that a breach 'materially and adversely affects' the Certificateholders, the

Trust[ee] . . . may . . . prove that the breach increased the risk of loss to the Certificateholders."

*MARM 2006-OA2*, 205 F. Supp. 3d at 468.[7] ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[7] *See also Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*, 892 F. Supp. 2d 596, 603 (S.D.N.Y. 2012) (a party proves materiality by showing that a breach "caused [a party] to incur an increased risk of loss"); *Syncora Guar. Inc. v. EMC Mortg. Corp.*, 874 F. Supp. 2d 328, 339 (S.D.N.Y. 2012) (similar); *Homeward Residential, Inc. v. Sand Canyon Corp.*, 298 F.R.D. 116, 131 (S.D.N.Y. 2014) (similar); *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 105 A.D.3d 412, 413 (1st Dep't 2013) (similar).

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████████████████████████████ *accord Fed. Hous. Fin. Agency v.*

*Nomura Holding Am., Inc.*, 104 F. Supp. 3d 441, 525 (S.D.N.Y. 2015) ("[A] borrower's

misrepresentation of income or debt" is a "defect[ ] that cannot be cured."); *id.* at 528 ("It is

universally recognized that owner occupancy is a critical factor in assessing credit risk.").  Judge

Cote has praised Mr. Hunter's "***careful loan by loan analysis***" of materiality, noting that "[h]is

methodology was essentially sound."  *Id.* at 531 (emphasis added); *see id.* ("[Mr. Hunter] was an

impressive witness, with intimate familiarity with . . . the reasons for his decisions.").

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████████████████████████ An expert report that

"stat[es] the facts upon which the expert's opinion is based" is sufficient to avoid summary

judgment "even if the data supporting the facts is not attached."  *Iacobelli Constr., Inc. v. County*

*of Monroe*, 32 F.3d 19, 25 (2d Cir. 1994).  If the report "explains precisely what was reviewed

and the general bases for [the] opinion," that is enough.  *B.F. Goodrich v. Betkoski*, 99 F.3d 505,

526 (2d Cir. 1996), *clarified on other grounds*, 112 F.3d 88 (2d Cir. 1997) (addressing successor

liability under CERCLA)████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████████████████████████ *See, e.g., MARM 2006-OA2*,

205 F. Supp. 3d at 469 ("[c]umulative effect of multiple breaches may support a finding that a

32

breach materially and adversely affected the interests of Certificateholders.”).



**B.**

That is a classic battle of the experts that should be resolved at trial.  *See Harris*, 310 F.3d at 79; *Razmilovic*, 738 F.3d at 35.

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████

## IV. THE TRUSTEE PROPERLY INTERPRETS THE REPRESENTATIONS AND WARRANTIES

### A. Section 10(b)(5) of the MLPA Covers Any "Error," "Misrepresentation," or "Negligence," Including Failure To Adhere to Underwriting Guidelines

MLPA §10(b)(5) provides that "[n]o fraud, error, omission, misrepresentation, negligence or similar occurrence . . . has taken place . . . in the origination" of the loans. MLPA §10(b)(5). That language includes noncompliance with underwriting guidelines.

"In interpreting a contract under New York law, 'words and phrases . . . should be given their plain meaning.'" *LaSalle Bank N.A. v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005); *Syncora Guar. Inc. v. EMC Mortg. Corp.*, 874 F. Supp. 2d 328, 335 (S.D.N.Y. 2012) (similar); *Nomura*, 133 A.D.3d at 107-08 (similar). ███████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████ *see Pomahac v. TrizecHahn 1065 Ave. of Ams., LLC*, 65 A.D.3d 462, 465 (1st Dep't 2009) ("A defendant's failure to adhere to its own internal

guideline or policy may be . . . negligence."). 

Morgan Stanley argues that the plain-language reading of § 10(b)(5) would render superfluous representations concerning compliance with underwriting guidelines in certain other RMBS agreements. MS Br. 32. But the provisions of those other contracts are irrelevant to the interpretation of ***this*** contract.

*see, e.g.*, *Nomura*, 424 F.3d at 206 (warranty requiring property to have fair market value of 80% of loan did not render superfluous another warranty requiring a "qualified mortgage" with 80% fair market value); *Home Equity Mortg. Trust Series 2006-5 v. DLJ Mortg. Capital, Inc.*, No. 653787/2012, 2014 WL 317838, at *8 (Sup. Ct. N.Y. Cnty. Jan. 27, 2014) (inflated appraisal breached both compliance with guidelines warranty and LTV warranty); *see also Nomura*, 133 A.D.3d at 108 (MLPA "remedies are cumulative"). At the very least, where there are multiple reasonable interpretations, "the meaning of the words become[s] an issue of fact and summary judgment is inappropriate." *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992).

Morgan Stanley argues that the Trustee failed to prove that the errors, omissions, misrepresentations, and negligence took place "to the knowledge of MSMCH." MS Br. 30-31. That argument fails. It is not the Trustee's burden to prove Morgan Stanley's knowledge beyond dispute on summary judgment. To the contrary, Morgan Stanley must prove that "there is no genuine dispute as to any material fact" regarding its knowledge. Fed. R. Civ. P. 56(a). It

cannot carry that burden here.  ███████████████████████████████████████

███████████████████████████████████████████████████  *see, e.g.*, *Gadsden*

*v. Port Auth. Trans-Hudson Corp.*, 140 F.3d 207, 209 (2d Cir. 1998) (denying summary

judgment where there was evidence of knowledge); *MARM 2006-OA2*, 205 F. Supp. 3d at 425

(evidence of willful blindness sufficient to prove defendant's "knowledge that the

representations and warranties had been breached").  This claim should proceed to trial.

### B.       The MLS Representation Guarantees That the Information in the MLS Is "Complete, True and Correct"

Section 10(a)(1) of the MLPA represents that "[t]he information set forth in the Mortgage

Loan Schedule relating to the Mortgage Loans is complete, true and correct."  MLPA § 10(a)(1).

Morgan Stanley argues that this representation guarantees only "that the information in the loan

file was completely  . . . reflected on the MLS," not that the information in the Mortgage Loan

Schedule was actually correct.  MS Br. 34.  The plain language belies that interpretation.  The

representation states, without qualification, that the information on the Mortgage Loan Schedule

was ***"complete"*** (*i.e.*, contains all relevant, available data), ***"true"*** (*i.e.*, not false), and ***"correct"***

(*i.e.*, not wrong).  It does not provide merely that the data was ***correctly transcribed***.

Court after court has rejected Morgan Stanley's position.  In *MARM 2006-OA2*, the court

held that the argument that "the MLS Warranty is 'more reasonably read as a transcription rep'

. . . is ***not supported by the language*** of the PSAs," and that the representation instead "imposes

a form of strict or absolute liability for a materially untrue or incorrect statement on the MLS."

205 F. Supp. 3d at 428-29 (emphasis added).  "[C]ommon sense" dictates that "the point of the

representations and warranties is to guard the purchaser against the credit risks associated with

bad loans," not to provide ***"typo-protection."***  *Homeward Residential, Inc.*, 298 F.R.D. at 130

(emphasis added); *see also Bank of N.Y. Mellon v. WMC Mortg., LLC*, 136 A.D.3d 1, 6-7 (1st

Dep't 2015), *aff'd*, 28 N.Y.3d 1039 (2016) ("[T]he language . . . is straightforward: if false information . . . was on the Mortgage Loan Schedule . . . it constitutes a breach."); *MBIA Ins. Corp. v. Credit Suisse Sec. (USA) LLC*, No. 603751/2009, 2017 WL 1201868 (Sup. Ct. N.Y. Cnty. Mar. 31, 2017) ("The MLS Warranty states that '[t]he information in the Mortgage Loan Schedule' is actually 'true and correct,' not that it merely reflects the information in the loan file." (emphasis omitted)).

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████[9]

**C.     The LTV Representation and Warranty Guarantees That the Loan-to-Value Ratio of the Property Is Not Greater Than 100%**

Section 10(b)(21) of the MLPA represents that "[n]o MSMCH Represented Mortgage Loan has an LTV greater than 100%."  MLPA § 10(b)(21); *see also* AARA Ex. B ¶ (o) (similar).

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

---

[9] In any event, the definition of "Mortgage Loan Schedule" simply sets out certain categories of information that must be included in the document; it does not limit other categories that may also be included.  *See* MLPA § 1.

████████████████████████████████████████████████████████

That interpretation is unreasonable on its face.  "It is black-letter law that courts must reject interpretations of agreement provisions that are commercially unreasonable or illogical." *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 173-74 (S.D.N.Y. 2015) (collecting cases)); *see also Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992) ("[A]n interpretation that 'gives a reasonable and effective meaning to all terms of a contract is generally preferred to one that leaves a part unreasonable or of no effect.'").  The far more reasonable reading is that, if the LTV based on the *actual value* of the property is greater than 100%, the representation and warranty is breached.  Analyzing materially indistinguishable contract language, the court in *Nomura* concluded that, Dr. Kilpatrick's proprietary methodology, showed that "the representations concerning LTV ratios were false."  104 F. Supp. 3d at 567 █

**D.    The USPAP Representation and Warranty Guarantees "Credible" Appraisals**

Section 10(b)(20) of the MLPA represents that the "appraisal" for the loans "satisf[ies] the requirements of [1] Fannie Mae or Freddie Mac and [2] Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989."  MLPA § 10(b)(20); *see also* AARA Ex. B ¶(nn) (similar).  ████████████████████████████████████████

███████████████████████████████████████████████████████████

████████ That is incorrect.

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████   As the court in

*Nomura* held, Dr. Kilpatrick's "findings of non-credibility . . . present sufficient circumstantial evidence of bias to permit a determination that the appraisers produced appraisals that they knew did not accurately describe the value of these properties."  104 F. Supp. 3d at 508-09.

## V.   MORGAN STANLEY IS REQUIRED TO REPURCHASE ACCREDITED, WMC, AND FREMONT LOANS

### A.   Morgan Stanley Must Repurchase Accredited Loans

Morgan Stanley argues that, because the Trustee entered into a stipulation during Accredited's bankruptcy releasing all claims against Accredited, it "extinguish[ed] Morgan Stanley's backstop obligations."  MS Br. 39.  The release's plain terms foreclose that argument.

The release discharges claims only against "the ***Debtors***" – *i.e.*, Accredited and other specifically "Released Parties," such as the bankruptcy trustee – ***not*** Morgan Stanley.  Pl.'s 56.1 Resp. ¶ 123 (emphasis added).   The release thus does not apply to claims against Morgan Stanley, which is not a party to the agreement.  *See In re Saint Vincents Catholic Med. Ctrs. of N.Y.*, 398 B.R. 517, 521 (Bankr. S.D.N.Y. 2008), *aff'd*, 417 B.R. 688 (S.D.N.Y. 2009) (bankruptcy order "has no application to a claim asserted . . . against a non-Debtor third party").[11]

---

[11] Even if Accredited's release did purport to encompass claims against Morgan Stanley, "a [nondebtor] release is proper only in rare cases" not applicable here.  *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 141 (2d Cir. 2005); *In re Saint Vincents*, 398 B.R. 517 at 520 ("Nothing in the Bankruptcy Code authorizes or permits a release or discharge of claims asserted against non-debtor third parties . . . [or] bar[s] claims against third parties seeking to impose liability for the third parties' own derelictions." (citation omitted)); *Roman v. Hudson Tel. Assocs.*, 11 A.D.3d 346, 347 (1st Dep't 2004) (similar).

Morgan Stanley relies on cases holding that a creditor's release of claims against a principal debtor also releases the guarantor's obligations. MS Br. 39. Those cases are beside the point – Morgan Stanley is not Accredited's guarantor or surety. *See Foresco Co. v. Oh*, 210 F. Supp. 3d 604, 609 (S.D.N.Y. 2016) ("[A] legally cognizable guaranty must be a written instrument that describes with precision: (1) the relevant parties and their particular roles; (2) the amount of the obligation at issue; and (3) the intent to guarantee the obligation.").

### B.     Morgan Stanley Must Repurchase WMC and Fremont Loans

Morgan Stanley finally asserts that it is not liable for loans originated by Fremont and WMC because they are not "MSMCH Represented Mortgage Loans." MS Br. 40. That argument flies in the face of the MLPA, which provides that "[i]n the case of any such breach of a representation or warranty set forth in this Section 10 . . . MSMCH will . . . purchase the affected ***Mortgage Loan*** at the applicable Purchase Price." MLPA § 10 (emphasis added). That provision unambiguously requires Morgan Stanley to repurchase ***all*** breaching "Mortgage Loans," not just MSMCH Represented Mortgage Loans. *See id.*[12]

Morgan Stanley also argues that § 10(b)(5)'s "no fraud, error, omission, misrepresentation, [or] negligence" representation and warranty applies only to MSMCH Represented Mortgage Loans. But the MLS representation and warranty, applies to ***all*** "Mortgage Loans." MLPA § 10(a)(1). Every Fremont loan in breach of § 10(b)(5) breaches § 10(a)(1), and all but 12 WMC loans breaching § 10(b)(5) breach § 10(a)(1). Thus, even if § 10(b)(5) does not apply, Morgan Stanley must repurchase all Fremont and WMC loans that breach § 10(a)(1).

### CONCLUSION

Morgan Stanley's motion for summary judgment should be denied in its entirety.

---

[12] While the preceding sentence refers to breaches "in any of the MSMCH Represented Mortgage Loans," MLPA § 10, that sentence refers only to Morgan Stanley's obligation to provide notice of the breach, not the repurchase obligation. The Trustee's failure to notify claim is no longer before the Court. *See* Dkt. 47, at 13-14.

June 22, 2017
New York, NY

Respectfully Submitted,

Steven F. Molo
Robert K. Kry
Justin V. Shur
Lauren M. Weinstein
MOLOLAMKEN LLP
430 Park Avenue
New York, New York  10022
(212) 607-8160 (telephone)
(212) 607-8161 (facsimile)

*Attorneys for Plaintiff Deutsche Bank
National Trust Company, as Trustee for the
Morgan Stanley Structured Trust 2007-1*

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2017, I electronically filed the foregoing redacted Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, and the accompanying redacted Plaintiff's Response to Defendant's Local Rule 56.1 Statement of Undisputed Material Facts and Plaintiff's Statement of Additional Facts, as well as the Declaration of Justin V. Shur and its exhibits, using the CM/ECF system, which sent a notice of electronic filing to all ECF registered participants, and I caused unredacted copies of the foregoing to be served on counsel of record for Morgan Stanley via email and Federal Express.

Steven F. Molo
MOLOLAMKEN LLP
430 Park Avenue
New York, New York 10022
(212) 607-8160 (telephone)
(212) 607-8161 (facsimile)

*Attorneys for Plaintiff Deutsche*
*Bank National Trust Company, as*
*Trustee for the Morgan Stanley*
*Structured Trust 2007-1*