**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DEUTSCHE BANK NATIONAL TRUST COMPANY, solely in its capacity as Trustee for the MORGAN STANLEY STRUCTURED TRUST I 2007-1,<br><br>      Plaintiff,<br><br>  v.<br><br>MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC, as Successor-by-Merger to MORGAN STANLEY MORTGAGE CAPITAL INC.,<br><br>      Defendant. | No. 14-CV-3020(LTS)(AJP) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S LOCAL CIVIL RULE 56.1**
**STATEMENT OF UNDISPUTED MATERIAL FACTS AND**
**PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS**

Pursuant to Federal Rule of Civil Procedure 56(c) and Rule 56.1(b) of the Local Civil Rules of the United States District Court for the Southern District of New York, plaintiff Deutsche Bank National Trust Company, solely in its capacity as Trustee for Morgan Stanley Structured I Trust 2007-1 (the "Trustee"), respectfully submits this response to defendant Morgan Stanley Mortgage Capital Holdings LLC's ("Morgan Stanley") Local Rule 56.1 Statement of Undisputed Material Facts, and its own statement of additional material facts as to which it contends that there exist genuine issues to be tried. In addition, the Trustee incorporates herein the evidentiary support set forth in the June 22, 2017 Declaration of Justin V. Shur and the exhibits attached thereto.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S LOCAL RULE 56.1
STATEMENT OF UNDISPUTED MATERIAL FACTS**

I.     **Structure of the Transaction**

1.     Morgan Stanley Structured Trust I 2007-1 ("MSST 2007-1") is a residential mortgage-backed securitization ("RMBS") trust created pursuant to the Pooling and Servicing Agreement ("PSA") dated as of June 1, 2007, between Bear Stearns Asset Backed Securities I LLC ("BSABS") as Depositor, Wells Fargo Bank, National Association as Master Servicer and Securities Administrator, and Deutsche Bank National Trust Company ("Deutsche Bank") as Trustee.  (See Compl. ¶15 (Weinstein Decl. Ex. A); PSA (Weinstein Decl. Ex. B).)[1]

**Plaintiff's Response:**  Undisputed.

2.     Morgan Stanley Mortgage Capital Holdings LLC was the Sponsor for MSST 2007-1.  (See PSA § 1 at 50 (Weinstein Decl. Ex. B).)

**Plaintiff's Response:**  Undisputed.

3.     ███████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

**Plaintiff's Response:**  Undisputed.

4.     Morgan Stanley sold the initial loan pool to EMC Mortgage Corporation ("EMC"), a wholly owned subsidiary of Bear, Stearns & Co., Inc. ("Bear Stearns"), pursuant to a Mortgage Loan Purchase and Warranties Agreement ("MLPWA") dated May 1, 2007. (MLPWA (Weinstein Decl. Ex. E).)

**Plaintiff's Response:**  Undisputed.

---

[1] "Weinstein Decl. Ex." refers to the exhibits to the May 8, 2017 Declaration of Brian S. Weinstein filed by Morgan Stanley.

5.      Morgan Stanley and EMC each sold certain mortgage loans to BSABS pursuant to the Mortgage Loan Purchase Agreement ("MLPA") among EMC as a Mortgage Loan Seller, Morgan Stanley as a Mortgage Loan Seller, and BSABS as Purchaser, dated as of July 6, 2007. (Compl. ¶ 13 (Weinstein Decl. Ex. A); MLPA (Weinstein Decl. Ex. F).)

**Plaintiff's Response:**  Undisputed.

6.      BSABS as depositor then transferred all right, title and interest in those mortgage loans and assigned all its rights under the MLPA to the Trust in the PSA in exchange for the certificates.  (PSA § 2.01 (Weinstein Decl. Ex. B).)

**Plaintiff's Response:**  Undisputed.

7.      Bear Stearns, as underwriter, then offered the certificates to investors.   (See Prospectus Supplement at S-1 (Weinstein Decl. Ex. C).)

**Plaintiff's Response:**  Undisputed.

8.      As of the Closing Date, MSST 2007-1 consisted of 4,374 mortgage loans (the "Mortgage Loans").  (Prospectus Supplement at S-31 (Weinstein Decl. Ex. C).)

**Plaintiff's Response:**  Undisputed.

9.      The "Closing Date" of MSST 2007-1 was July 6, 2007.  (PSA § 1.01 (Weinstein Decl. Ex. B).) The "Cut-Off Date" of MSST 2007-1 was June 1, 2007.  (Id.)

**Plaintiff's Response:**  Undisputed.

**II.     Morgan Stanley's Role as Sponsor**

10.



**Plaintiff's Response:**  Undisputed.

11.

**Plaintiff's Response:**  Undisputed

12.

**Plaintiff's Response:**  Undisputed.

13. ███████████████████████████████████

████████████████████

███████████████████████

████████████     ████████

███████████████████████

█     █████████████████

███████████████████████

███████████████

**Plaintiff's Response:**   Undisputed   █████████████

████████████████████████

14. ███████████████████████████████████

████████████████████

███████████████████████

████████████     ████████

███████████████████████

███████████████████████

███████████████████████

████████████████



**Plaintiff's Response:** Undisputed

15.





**Plaintiff's Response:** Undisputed



**Plaintiff's Response:** Undisputed

17.     Morgan Stanley acquired the Residual Interests (Class R Certificates) from Bear Stearns.  (PSA § 1 at 22-23, 48 (defining "Residual Certificates," "Residual Interest," and various "Class R Certificates") (Weinstein Decl. Ex. B); Transferee Affidavit & Agreement (MSM_MSSTI_20071_0003187-MSM_MSSTI_20071_0003191) (Weinstein Decl. Ex. H).)

**Plaintiff's Response:** Undisputed.

18.     Under the PSA, the Class R Certificates owned by Morgan Stanley only received distributions from any Excess Spread that remained after the Excess Spread had been distributed to all other classes of certificates.  (PSA § 6.04 (Weinstein Decl. Ex. B).)

**Plaintiff's Response:** Undisputed.

19.     Any Realized Losses on the mortgage loans in MSST 2007-1 were applied first to Excess Spread.  (PSA § 6.05(a) (Weinstein Decl. Ex. B).).

**Plaintiff's Response:**  Undisputed.

20.     ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

**Plaintiff's Response:**  Undisputed.

21.     There is no evidence that Morgan Stanley acted maliciously or for the purpose of harming the Trust.

**Plaintiff's Response:**  Disputed.  *See infra* ¶¶ 154-161 (citing Shur Decl. Ex. 1 (February 2016 $2.6 billion settlement between Morgan Stanley and the Department of Justice, covering this   Trust)); ██████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

22.     There is no evidence that Morgan Stanley breached a duty to the Trust or the Trustee outside of the alleged breaches of contract.

**Plaintiff's Response:**   Disputed.   *See* ¶¶154-161, *infra* (citing Shur Decl. Ex. 1 (February 2016 $2.6 billion settlement between Morgan Stanley and the Department of Justice, covering this Trust));

## III.   The Governing Agreements

23.     Section 10 of the MLPA contains "Representations and Warranties of MSMCH Concerning the Mortgage Loans" made "as of the Closing Date or such other date as may be specified below."  (MLPA § 10 (Weinstein Decl. Ex. F).)

**Plaintiff's Response:**  Undisputed.

24.    Morgan Stanley made the representations and warranties in Section 10(a) "[w]ith respect to each Mortgage Loan."  (MLPA § 10(a) (Weinstein Decl. Ex. F).)

**Plaintiff's Response:**  Undisputed.

25.    Section 10(a)(l) of the MLPA states the following:  "The information set forth in the Mortgage Loan Schedule relating to the Mortgage Loans is complete, true and correct as of the Cut-off Date."  (MLPA § 10(a)(l) (Weinstein Decl. Ex. F).)

**Plaintiff's Response:**  Undisputed.

26.    The MLPA defines the "Mortgage Loan Schedule" as:

The schedule of Mortgage Loans setting forth the following information with respect to each Mortgage Loan: (1) the related Seller's Mortgage Loan identifying number; (2) [reserved]; (3) the city, state and zip code of the Mortgaged Property; (4) [reserved]; (5) the number and type of residential units constituting the Mortgaged Property (e.g. single family residence, a two- to four-family dwelling, condominium, planned unit development or cooperative); (6) the original months to maturity or the remaining months to maturity from the Cut-off Date, in any case based on the original amortization schedule and, if different, the maturity expressed in the same manner but based on the actual amortization schedule; (7) with respect to each First Lien Loan, the Loan-to-Value Ratio at origination, and with respect to each Second Lien Loan, the combined loan-to-value ratio (the "CLTV") at origination; (8) the Mortgage Rate and the Net Mortgage Rate as of the Cut-off Date; (9) the date on which the first Monthly Payment was due on the Mortgage Loan and, if such date is not consistent with the Due Date currently in effect, the Due Date; (10) the stated maturity date; (11) the amount of the Monthly Payment as of the Cut-off Date; (12) [reserved]; (13) the original principal amount of the Mortgage Loan; (14) the actual principal balance of the Mortgage Loan as of the close of business on the Cut-off Date, after deduction of payments of principal collected on or before the Cut-off Date; (15) with respect to Adjustable Rate Mortgage Loans, the Interest Rate Adjustment Date; (16) with respect to Adjustable Rate Mortgage Loans, the Gross Margin; (17) with respect to Adjustable Rate Mortgage Loans, the Periodic Rate Cap, if applicable, under the terms of the Mortgage Note; (18) [reserved]; (19) the type of Mortgage Loan (i.e., Fixed or Adjustable Rate Mortgage Loan, First or Second Lien Loan); (20)

a code indicating the purpose of the loan (i.e., purchase, rate/term refinance or cash-out refinance); (21) the Servicing Fee Rate; (22) the LPMI Fee, if applicable; (23) the Master Servicing Fee Rate; (24) the MIN with respect to each MOM Loan; (25) with respect to Adjustable Rate Mortgage Loans, the Maximum Mortgage Rate, if applicable; (26) with respect to Adjustable Rate Mortgage Loans, the Minimum Mortgage Rate, if applicable; (27) which Mortgage Loans adjust after an initial fixed-rate period of one, two, three, five, seven or ten years or any other period; (28) the Prepayment Charge, if any; (29) a code indicating whether the Mortgage Loan is has a balloon payment; (30) a code indicating whether the Mortgage Loan is an interest-only loan; (31) the interest-only term, if applicable; (32) the related Seller; and (33) the original amortization term.  The Mortgage Loan Schedule is attached as Exhibit 2 hereto.

(MLPA § 1 (Weinstein Decl. Ex. F).)

**Plaintiff's Response:**  Undisputed to the extent that Morgan Stanley has accurately quoted the MLPA.  Disputed to the extent that Morgan Stanley suggests that the Mortgage Loan Schedule is limited to the attributes listed above.  ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████

27.     The PSA defines the "Mortgage Loan Schedule" as:

Mortgage Loan Schedule: The list of Mortgage Loans (as from time to time amended by the Sellers to reflect the deletion of Deleted Mortgage Loans and the addition of Replacement Mortgage Loans pursuant to the provisions of this Agreement) transferred to the Trustee as part of the Trust Fund and from time to time subject to this Agreement, the initial Mortgage Loan Schedule being attached hereto as Exhibit B, setting forth the following information with respect to each Mortgage Loan: (a) the related Seller's Mortgage Loan identifying number; (b) [reserved]; (c) the city, state and zip code of the Mortgaged Property; (d) [reserved]; (e) the number and type of residential units constituting the Mortgaged Property (e.g. single family residence, a two- to four-family dwelling, condominium, planned unit development or cooperative); (f) the original months to maturity or the remaining months to maturity from the Cut-off Date, in any case based on the

original amortization schedule and, if different, the maturity expressed in the same manner but based on the actual amortization schedule; (g) with respect to each first lien Mortgage Loan, the Loan-to-Value Ratio at origination, and with respect to each second lien Mortgage Loan, the CLTV at origination; (h) the Mortgage Rate and the Net Mortgage Rate as of the Cut-off Date; (i) the date on which the first Monthly Payment was due on the Mortgage Loan and, if such date is not consistent with the Due Date currently in effect, the Due Date; (j) the stated maturity date; (k) the amount of the Monthly Payment as of the Cut-off Date; (1) [reserved]; (m) the original principal amount of the Mortgage Loan; (n) the actual principal balance of the Mortgage Loan as of the close of business on the Cut-off Date, after deduction of payments of principal collected on or before the Cut-off Date; (o) with respect to Adjustable Rate Mortgage Loans, the Adjustment Date; (p) with respect to Adjustable Rate Mortgage Loans, the Gross Margin; (q) with respect to Adjustable Rate Mortgage Loans, the the Periodic Rate Cap, if applicable; under the terms of the Mortgage Note; (r) [reserved]; (s) the type of Mortgage Loan (i.e., fixed or Adjustable Rate Mortgage Loan, first or second lien Mortgage Loan); (t) a code indicating the purpose of the loan (i.e., purchase, rate/term refinance or cash-out refinance); (u) the Servicing Fee Rate; (v) the LPMI Fee, if applicable; (w) the Master Servicing Fee Rate; (x) the MIN with respect to each MOM Loan; (y) with respect to Adjustable Rate Mortgage Loans, the Maximum Mortgage Rate, if applicable; (z) with respect to Adjustable Rate Mortgage Loans, the Minimum Mortgage Rate, if applicable; (aa) which Mortgage Loans adjust after an initial fixed-rate period of one, two, three, five, seven or ten years or any other period; (aa) the Prepayment Charge, if any; (bb) a code indicating whether the Mortgage Loan is has a balloon payment; (cc) a code indicating whether the Mortgage Loan is an interest-only loan; (dd) the interest-only term, if applicable; (ee) the related Seller; and (ff) the original amortization term.

Such schedule also shall set forth for all of the Mortgage Loans, the total number of Mortgage Loans, the total of each of the amounts described under (k) and (n) above, the weighted average by principal balance as of the Cut-off Date of each of the rates described under (h) and (u) through (w) above, and the weighted average remaining term to maturity by unpaid principal balance as of the Cut-off Date.

(PSA § 1.01 (Weinstein Decl. Ex. B).)

**Plaintiff's Response:**   Undisputed to the extent that Morgan Stanley has accurately quoted the PSA.   Disputed to the extent that Morgan Stanley suggests that the Mortgage Loan Schedule is limited to the attributes listed above.   ███████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████

28.     The PSA defines "Loan-to-Value Ratio" as:   "The fraction, expressed as a percentage, the numerator of which is the original principal balance of the related Mortgage Loan and the denominator of which is the Appraised Value of the related Mortgaged Property." (PSA § 1.01 (Weinstein Decl. Ex. B).)

**Plaintiff's Response:**  Undisputed.

29.     The PSA defines "Appraised Value" as:

> With respect to any Mortgage Loan originated in connection with a refinancing, the appraised value of the Mortgaged Property based upon the appraisal made at the time of such refinancing or, with respect to any other Mortgage Loan, the lesser of (x) the appraised value of the Mortgaged Property based upon the appraisal made by a fee appraiser at the time of the origination of the related Mortgage Loan, and (y) the sales price of the Mortgaged Property at the time of such origination.

(PSA § 1.01 (Weinstein Decl. Ex. B).)

**Plaintiff's Response:**  Undisputed.

30.     Morgan Stanley made the representations and warranties in Section 10(b) "[w]ith respect to the MSMCH Represented Mortgage Loans (except as otherwise set forth in this subsection (b))."  (MLPA § 10(b) (Weinstein Decl. Ex. F).)

**Plaintiff's Response:**  Undisputed.

31.     The MLPA defines "MSMCH Represented Mortgage Loans" as:

> Any Mortgage Loan on the Mortgage Loan Schedule indicated as having been originated by Aames Capital Corporation, Aegis Mortgage Corporation, Decision One Mortgage Company, LLC, First NLC Financial Services, LLC, MILA, Inc., New Century Mortgage Corporation, Option One Mortgage Corporation or Wilmington Finance Inc.

(MLPA § 1 (Weinstein Decl. Ex. F).)

   **Plaintiff's Response:**  Undisputed.

32.     Mortgage loans originated by Accredited Home Lenders, Inc. ("Accredited"), Fremont Investment & Loan ("Fremont"), and WMC Mortgage Corp. ("WMC") are not included in the definition of MSMCH Represented Mortgage Loans.  (See MLPA § 1 at 2, 3, 4, 6 (defining "MSMCH Represented·Mortgage Loans," "Accredited Mortgage Loans," "Fremont Mortgage Loans," and "WMC Mortgage Loans") (Weinstein Decl. Ex. F).)

   **Plaintiff's Response:**  Undisputed.

33.     Section 10(b)(5) of the MLPA states the following:

> The Mortgage Note and the Mortgage and any other agreement executed and delivered by a Mortgagor in connection with a MSMCH Represented Mortgage Loan are genuine, and each is the legal valid and binding obligation of the maker thereof enforceable in accordance with its terms (including, without limitation, any provisions therein relating to Prepayment Penalties).  All parties to the Mortgage Note, the Mortgage and any other such related agreement had legal capacity to enter into the MSMCH Represented Mortgage Loan and to execute and deliver the Mortgage Note, the Mortgage and any such agreement, and the Mortgage Note, the Mortgage and any other such related agreement have been duly and properly executed by other such related parties.  No fraud, error, omission, misrepresentation, negligence or similar occurrence with respect to a MSMCH Represented Mortgage Loan has taken place on the part of MSMCH, or, to the knowledge of MSMCH, any other person, including without limitation, the Mortgagor, any appraiser, any builder or developer, or any other party involved in the origination of the MSMCH Represented Mortgage Loan;

(MLPA § 10(b)(5) (Weinstein Decl. Ex. F).)

**Plaintiff's Response:**  Undisputed.

34.    Section 10(b)(20) of the MLPA states the following:

> The Mortgage File contains an appraisal of the related Mortgaged Property signed prior to the approval of the MSMCH Represented Mortgage Loan application by a Qualified Appraiser, duly appointed by MSMCH, who had no interest, direct or indirect in the Mortgaged Property or in any loan made on the security thereof, and whose compensation is not affected by the approval or disapproval of the MSMCH Represented Mortgage Loan, and the appraisal and appraiser both satisfy the requirements of Fannie Mae or Freddie Mac and Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 and the regulations promulgated thereunder, all as in effect on the date the MSMCH Represented Mortgage Loan was originated;

(MLPA § 10(b)(20) (Weinstein Decl. Ex. F).)

**Plaintiff's Response:**  Undisputed.

35.    Section 10(b)(21) of the MLPA states the following:  "No MSMCH Represented Mortgage Loan has an LTV greater than 100%."  (MLPA § 10(b)(21) (Weinstein Decl. Ex. F).)

**Plaintiff's Response:**  Undisputed.

36.    Section 10 of the MLPA states the following:

> Upon discovery or receipt of notice by MSMCH or the Purchaser of a breach of any representation or warranty of MSMCH set forth in this Section 10 which materially and adversely affects the value of the interests of the Purchaser in any of the MSMCH Represented Mortgage Loans delivered to the Purchaser pursuant to this Agreement, the party discovering or receiving notice of such breach shall give prompt written notice to the others.  In the case of any such breach of a representation or warranty set forth in this Section 10, within 90 days from the date of discovery by MSMCH, or the date MSMCH is notified by the party discovering or receiving notice of such breach (whichever occurs earlier), MSMCH will, (i) cure such breach in all material respects, (ii) purchase the affected Mortgage Loan at the applicable Purchase Price or (iii) if within two years of the Closing Date, substitute a qualifying Replacement Mortgage Loan in exchange for such MSMCH Represented Mortgage Loan.

(MLPA § 10 (Weinstein Decl. Ex. F).)

    **Plaintiff's Response:**  Undisputed.

    37.    The MLPA defines "Purchase Price" as:

> With respect to any Mortgage Loan required to be purchased by EMC or MSMCH pursuant to the applicable provisions of this Agreement, an amount equal to the sum of (i) 100% of the principal remaining unpaid on such Mortgage Loan as of the date of purchase (including if a foreclosure has already occurred, the principal balance of the related Mortgage Loan at the time the Mortgaged Property was acquired), net of any Servicing Advances and Advances attributable to principal and payable to the purchaser of the Mortgage Loan if such purchaser is also the servicer of such Mortgage Loan, (ii) accrued and unpaid interest thereon at the applicable Mortgage Rate through and including the last day of the month of such purchase, net of any portion of the Servicing Fee and any Servicing Advances and Advances attributable to interest that is payable to the purchaser of the Mortgage Loan if such purchaser is also the servicer of such Mortgage Loan, plus (iii) any costs and damages (if any) incurred by the Purchaser in connection with any violation of such Mortgage Loan of any antipredatory lending laws.

(MLPA § 1 (Weinstein Decl. Ex. F).)

    **Plaintiff's Response:**  Undisputed.

    38.    Section 10 of the MLPA states the following:

> The obligations of MSMCH to cure, purchase or substitute a qualifying Replacement Mortgage Loan shall constitute the Purchaser's, the Trustee's and the Certificateholder's sole and exclusive remedy under this Agreement or otherwise respecting a breach of representations or warranties hereunder with respect to the MSMCH Represented Mortgage Loans.

(MLPA § 10 (Weinstein Decl. Ex. F).)

    **Plaintiff's Response:**  Undisputed.

    39.    Accredited made certain representations about the Accredited Mortgage Loans in a separate Accredited Assignment and Recognition Agreement ("Accredited ARA"). (Accredited ARA (Weinstein Decl. Ex. I).)

**Plaintiff's Response:** Undisputed.

40.    Section 10 of the MLPA states the following:

> With respect to any Accredited Mortgage Loan, reference is made to the Accredited Assignment, Assumption and Recognition Agreement attached hereto as Exhibit 8.  In the case of any such breach of a representation or warranty set forth in this Section 10 made by Accredited with respect to an Accredited Mortgage Loan, in the event Accredited fails to cure, substitute or repurchase an Accredited Mortgage Loan within the period specified in the Accredited Assignment, Assumption and Recognition Agreement, MSMCH will cure, substitute or repurchase such Accredited Mortgage Loan in accordance with the terms of the foregoing paragraph.

(MLPA § 10 (Weinstein Decl. Ex. F).)

**Plaintiff's Response:**  Undisputed to the extent that Morgan Stanley has accurately quoted the MLPA.  Disputed to the extent that Morgan Stanley suggests that this passage implies that Morgan Stanley did not also agree to repurchase Accredited Mortgage Loans.  *See* Dkt. 50 ¶ 33; ████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████ Dkt. 47 (Memorandum Opinion and Order) at 7-9 (ruling that the "MLPA does not by any means unambiguously relieve [Morgan Stanley] of liability for Accredited's breaches" and Morgan Stanley "has an obligation to repurchase defective Accredited Loans").

41.    Fremont made certain representations about the Fremont Mortgage Loans in a Bring Down Agreement between Morgan Stanley and Fremont.  (Fremont Bring Down Agreement (Weinstein Decl. Ex. J).)

**Plaintiff's Response:**  Undisputed.  This fact is irrelevant and immaterial because no breach of the Fremont Bring Down Agreement is alleged and Fremont is not a party to this litigation.

42.     WMC made certain representations about the WMC Mortgage Loans in a Bring Down Agreement between EMC and WMC.  (WMC Bring Down Agreement (Weinstein Decl. Ex. K).)

**Plaintiff's Response:**  Undisputed.  This fact is irrelevant and immaterial because no breach of the WMC Bring Down Agreement is alleged and WMC is not a party to this litigation.

43.     Section 11 of the MLPA assigns the Accredited ARA and Fremont Bring Down Agreement to the Trustee.  (MLPA § 11 (Weinstein Decl. Ex. F).)

**Plaintiff's Response:**  Undisputed.  This fact is irrelevant and immaterial because no breach of the Fremont Bring Down Agreement is alleged.

44.     The PSA defines "Bring Down Agreements" to include the Accredited ARA and the Fremont and WMC Bring Down Agreements.  (PSA § 1 at 10 (Weinstein Decl. Ex. B).)

**Plaintiff's Response:**  Undisputed, except that the PSA refers to the Accredited ARA "dated as of the Closing Date," PSA § 1, at 10 (Weinstein Decl. Ex. B), and the Accredited ARA attached to the Weinstein Declaration as Exhibit I is dated July 3, 2007.  The Trustee refers the Court to the PSA and the other cited agreements as the best evidence of their contents.

45.     Section 2.03(a) of the PSA states the following:

> Upon discovery by any of the parties hereto of a breach of a representation or warranty set forth in the Mortgage Loan Purchase Agreement or any Bring Down Agreement that materially and adversely affects the interests of the Certificateholders in any Mortgage Loan, the party discovering such breach shall give prompt written notice thereof to the other parties of this Agreement.

(PSA § 2.03(a) (Weinstein Decl. Ex. B).)

**Plaintiff's Response:**  Undisputed.

46.     Section 2.02(d) of the PSA states the following:

> On behalf of the Trust, the Trustee shall enforce the obligation of the Sellers under the Mortgage Loan Purchase Agreement or the related Originator under the related Bring Down Agreement to repurchase, cure or substitute for any Mortgage Loan for which a breach of a representation or warranty made by such party exists and any other obligations of the related Seller or the related Originator under such agreements, including, without limitation, the obligation of the Sponsor to repurchase, cure, or substitute for any Mortgage Loan originated by Accredited in the event that Accredited fails to repurchase, cure or substitute for such Mortgage Loan.

(PSA § 2.02(d) (Weinstein Decl. Ex. B).)

**Plaintiff's Response:**  Undisputed.

47.     Exhibit B Section (v) of the Accredited ARA states the following:

> <u>Conformance with Agency and Underwriting Guidelines</u>.  The Mortgage Loan was underwritten in accordance with the Underwriting Guidelines (a copy of which is attached to the Purchase Agreements as Exhibit G).  The Mortgage Note and Mortgage are on forms acceptable to Freddie Mac or Fannie Mae and the Seller has not made any representations to a Mortgagor that are inconsistent with the mortgage instruments used;

(Accredited ARA Ex. B § (v) (Weinstein Decl. Ex. I).)

**Plaintiff's Response:**  Undisputed to the extent that Morgan Stanley accurately quotes the Accredited ARA.  Disputed to the extent that Morgan Stanley suggests that the existence of this representation and warranty is relevant to the interpretation of MLPA § 10(b)(5).  ██████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

[REDACTED]

48.     Section 9.02(v) of the Second Amended and Restated Mortgage Loan Purchase and Warranties Agreement, dated as of November 1, 2006, between Morgan Stanley Mortgage Capital Inc. as Purchaser and Fremont Investment & Loan as Seller (the "Fremont 2d Am. MLPWA") states the following:

> Conformance with Underwriting Guidelines.  The Mortgage Loan was underwritten in accordance with the Underwriting Guidelines in effect at the time of origination (a copy of which is attached to the related Assignment and Conveyance as Exhibit B).   The Mortgage Note and Mortgage are on forms acceptable to Freddie Mac or Fannie Mae and no representations have been made to a Mortgagor that are inconsistent with the mortgage instruments used;

(Fremont 2d Am. MLPWA § 9.02(v) (Weinstein Decl. Ex. L).)

**Plaintiff's Response:**  Undisputed to the extent that Morgan Stanley accurately quotes the Fremont Second Amended MLPWA.  Disputed to the extent that Morgan Stanley suggests

that this provision is relevant to the interpretation of MLPA § 10(b)(5). ▮▮▮▮▮

▮

49.     Section 9.02(v) of the Fifth Amended and Restated Mortgage Loan Purchase and Warranties Agreement, dated as of November 1, 2006, between Morgan Stanley Mortgage Capital Inc. as Purchaser and WMC Mortgage Corp. as Seller (the "WMC 5th Am. MLPWA") states the following:

> Conformance with Agency and Underwriting Guidelines. The Mortgage Loan was underwritten in accordance with the Underwriting Guidelines, as may be amended from time to time by the Seller (a copy of which is attached to each related Assignment and Conveyance Agreement). The Mortgage Note and Mortgage are on forms acceptable to prudent mortgage lenders in the secondary mortgage market and no representations have been made to a Mortgagor that are inconsistent with the mortgage instruments used;

(WMC 5th Am. MLPWA § 9.02(v) (Weinstein Decl. Ex. M).)

**Plaintiff's Response:** Undisputed to the extent that Morgan Stanley accurately quotes the WMC Fifth Amended MLPWA. Disputed to the extent that Morgan Stanley suggests that this provision is relevant to the interpretation of MLPA § 10(b)(5). ▮▮▮▮▮

50.     Section 9.02(v) of the Sixth Amended and Restated Mortgage Loan Purchase and Warranties Agreement, dated as of February 1, 2007, between Morgan Stanley Mortgage Capital Inc. as Purchaser and WMC Mortgage Corp. as Seller (the "WMC 6th Am. MLPWA") states the following:

> Conformance with Agency and Underwriting Guidelines. The Mortgage Loan was underwritten in accordance with the Underwriting Guidelines, as may be amended from time to time by the Seller or GEMB (a copy of which is attached to each related Assignment and Conveyance Agreement). The Mortgage Note and Mortgage are on forms acceptable to prudent mortgage lenders in the secondary mortgage market and no representations have been made to a Mortgagor that are inconsistent with the mortgage instruments used;

(WMC 6th Am. MLPWA § 9.02(v) (Weinstein Decl. Ex. N).)

**Plaintiff's Response:**  Undisputed to the extent that Morgan Stanley accurately quotes the WMC Sixth Amended MLPWA.  Disputed to the extent that Morgan Stanley suggests that this provision is relevant to the interpretation of MLPA § 10(b)(5).  ████████████

51.    Exhibit B Section (k) of the Accredited ARA states the following:

> Validity of Mortgage Documents.  The Mortgage Note and the Mortgage and any other agreement executed and delivered by a Mortgagor in connection with a Mortgage Loan are genuine, and each is the legal, valid and binding obligation of the maker thereof enforceable in accordance with its terms (including, without limitation, any provisions therein relating to Prepayment Penalties).  All parties to the Mortgage Note, the Mortgage and any other such related agreement had legal capacity to enter into the Mortgage Loan and to execute and deliver the Mortgage Note, the Mortgage and any such agreement, and the Mortgage Note, the Mortgage and any other such related agreement have been duly and properly executed by other such related parties.  No fraud, error, omission, misrepresentation or similar occurrence with respect to the origination of a Mortgage Loan has taken place on the part of any Person, including, without limitation, the Mortgagor, any appraiser, any builder or developer, or any other party involved in the origination of the Mortgage Loan.  The Seller has reviewed all of the documents constituting the Servicing File and has made such inquiries as it deems necessary to make and confirm the accuracy of the representations set forth herein;

(Accredited ARA Ex. B § (k) (Weinstein Decl. Ex. I).)

**Plaintiff's Response:**  Undisputed.

52.    Section 9.02(k) of the Fremont 2d Am. MLPWA states the following:

> Validity of Mortgage Documents.  The Mortgage Note and the Mortgage and any other agreement executed and delivered by a Mortgagor in connection with a Mortgage Loan are genuine, and each is the legal, valid and binding obligation of the maker thereof enforceable in accordance with its terms (including, without limitation, any provisions therein relating to Prepayment Penalties).  All parties to the Mortgage Note, the Mortgage and any other such related agreement had legal capacity to enter into the Mortgage Loan and to execute and deliver the Mortgage Note, the Mortgage and any such agreement, and the Mortgage Note, the

Mortgage and any other such related agreement have been duly and properly executed by other such related parties. The·documents, instruments and agreements submitted for loan underwriting were not falsified by the Seller or, to the best knowledge of the Seller, by the Mortgagor or the appraiser, at the time of the origination of the Mortgage Loan.  No fraud, error, omission, misrepresentation, negligence or similar occurrence with respect to a Mortgage Loan has taken place on the part of the Seller or, to the Seller's knowledge, any other Person, including without limitation, the Mortgagor, any appraiser, any builder or developer, or any other party involved in the origination of the Mortgage Loan or in the application for any insurance in relation to such Mortgage Loan, where (A) such fraud, error, omission, misrepresentation, negligence or similar occurrence misrepresented a mortgagor's ability to comply with the terms of the related Mortgage Loan or (B) had such fraud, error, omission, misrepresentation, negligence or similar occurrence been known, would have changed (x) the originator's decision to originate the Mortgage Loan or to originate the Mortgage Loan at the same interest rate, the same points and fees, and all other applicable origination terms relating to the Mortgage Loan, or (y) the Purchaser's decision to purchase the Mortgage Loan on the related Closing Date.  The Seller has reviewed all of the documents constituting the Servicing File and has made such inquiries as it deems necessary to make and confirm the accuracy of the representations set forth herein and neither the Seller nor any Affiliate has made any representations to a Mortgagor that are inconsistent with the mortgage instruments used;

(Fremont 2d Am. MLPWA § 9.02(k) (Weinstein Decl. Ex. L).)

**Plaintiff's Response:**  Undisputed.

53.   Section 9.02(k) of the WMC 5th Am. MLPWA states the following:

Validity of Mortgage Documents.  The Mortgage Note and the Mortgage and any other agreement executed and delivered by a Mortgagor in connection with a Mortgage Loan are genuine, and each is the legal, valid and binding obligation of the maker thereof enforceable in accordance with its terms (including, without limitation, any provisions therein relating to prepayment penalties), subject to bankruptcy, equitable principles and laws affecting creditor rights.  All parties to the Mortgage Note, the Mortgage and any other such related agreement had legal capacity to enter into the Mortgage Loan and to execute and deliver the Mortgage Note, the Mortgage and any such agreement, and the Mortgage Note, the Mortgage and any other such related agreement have been duly

and properly executed by other such related parties. No fraud, error, omission, misrepresentation, negligence or similar occurrence with respect to a Mortgage Loan has taken place on the part of the Seller in connection with the origination of the Mortgage Loan or in the application of any insurance in relation to such Mortgage Loan. Notwithstanding the foregoing, but without limiting the other representations and warranties set forth elsewhere in this Agreement, if any error, omission or negligence in the origination of such Mortgage Loan occurred despite Seller's conformance with its Underwriting Guidelines (as in effect at the time such Mortgage Loan was made), then there shall be a presumptive conclusion that there was no error, omission or negligence. No fraud, misrepresentation, or similar occurrence or, to Seller's knowledge, error, omission, or negligence with respect to a Mortgage Loan has taken place on the part of any Person (other than Seller), including without limitation, the Mortgagor, any appraiser, any builder or developer, or any other party involved in the origination of the Mortgage Loan or in the application for any insurance in relation to such Mortgage Loan. The Seller has reviewed all of the documents constituting the Servicing File and has made such inquiries as it deems necessary to make and confirm the accuracy of the representations set forth herein;

(WMC 5th Am. MLPWA § 9.02(k) (Weinstein Decl. Ex. M).)

**Plaintiff's Response:** Undisputed.

54.    Section 9.02(k) of the WMC 6th Am. MLPWA states the following:

Validity of Mortgage Documents. The Mortgage Note and the Mortgage and any other agreement executed and delivered by a Mortgagor in connection with a Mortgage Loan are genuine, and each is the legal, valid and binding obligation of the maker thereof enforceable in accordance with its terms (including, without limitation, any provisions therein relating to prepayment penalties), subject to bankruptcy, equitable principles and laws affecting creditor rights. All parties to the Mortgage Note, the Mortgage and any other such related agreement had legal capacity to enter into the Mortgage Loan and to execute and deliver the Mortgage Note, the Mortgage and any such agreement, and the Mortgage Note, the Mortgage and any other such related agreement have been duly and properly executed by other such related parties. No fraud, error, omission, misrepresentation, negligence or similar occurrence with respect to a Mortgage Loan has taken place on the part of the Seller in connection with the origination of the Mortgage Loan or in the application of any insurance in relation to

such Mortgage Loan.  Notwithstanding the foregoing, but without limiting the other representations and warranties set forth elsewhere in this Agreement, if any error, omission or negligence in the origination of such Mortgage Loan occurred despite Seller's conformance with the Underwriting Guidelines (as in effect at the time such Mortgage Loan was made), then there shall be a presumptive conclusion that there was no error, omission or negligence.  No fraud, misrepresentation, or similar occurrence or, to Seller's knowledge, error, omission, or negligence with respect to a Mortgage Loan has taken place on the part of any Person (other than Seller), including without limitation, the Mortgagor, any appraiser, any builder or developer, or any other party involved in the origination of the Mortgage Loan or in the application for any insurance in relation to such Mortgage Loan. The Seller has reviewed all of the documents constituting the Servicing File and has made such inquiries as it deems necessary to make and confirm the accuracy of the representations set forth herein;

(WMC 6th Am. MLPWA § 9.02(k) (Weinstein Decl. Ex. N).)

> **Plaintiff's Response:**  Undisputed.

## IV.    Deutsche Bank's Understanding of the Repurchase Protocol

55.    In <u>Royal Park Investments SA/NV v. Deutsche Bank National Trust Company</u>, No. 14-CV-4394 (S.D.N.Y.), Deutsche Bank submitted a memorandum of law in support of its motion to dismiss and stated the following:

> [T]he cure obligations of the Warrantors—to either repurchase the offending loan <u>at</u> <u>the</u> <u>purchase</u> <u>price</u> of the original loan or to substitute the offending loan with a "Qualifying Substitute Mortgage Loan," <u>i.e.</u>, a loan of the same price, outstanding balance, interest rate, quality, and risk, etc.—necessarily requires detailed information about the specific offending mortgage loan.

(Memorandum of Law in Support of the Motion to Dismiss of Defendant Deutsche Bank Nat'l Trust Co., as Trustee, at 29, <u>Royal Park Investments SA/NV v. Deutsche Bank National Trust Company</u>, No. 14-CV-4394-AJN (S.D.N.Y. Mar. 2, 2015) (Dkt. No. 55) (citations omitted) (emphasis in original) (Weinstein Decl. Ex. O).)

**Plaintiff's Response:**  Undisputed to the extent that Morgan Stanley accurately quotes that submission.  Disputed to the extent that Morgan Stanley suggests that this document, which was submitted by Deutsche Bank National Trust Co. as Trustee for other trusts in another case, governed by other contracts, is relevant to the Trustee's "understanding" of the securitization agreements in this case.  *See* Weinstein Decl. Ex. O at 20-22, 27-36 (addressing whether breaches should have been discovered by virtue of the trustee's limited role in the securitization); *see also id.* at 30 (citing authority for the proposition that an RMBS sponsor's discovery of breaches can be proven by evidence of (1) the sponsor's own due diligence; (2) forensic analysis revealing "'obvious and widespread breaches'"; and (3) identification of specific breaches in the trust at issue).

56.     In National Credit Union Administration Board v. Deutsche Bank National Trust Co., No. 14-cv-8919 (S.D.N.Y.), Deutsche Bank submitted a memorandum of law in support of its motion to dismiss and stated the following with respect to 97 governing agreements ("GAs") providing for repurchase of mortgage loans upon notice or discovery of a breach of a representation and warranty ("R&W"):   "Both the language and the structure of the GAs necessarily require that both the breach, and the knowledge of the breach, of an R&W be at the single mortgage loan level."   (Memorandum of Law in Support of the Motion to Dismiss of Defendant Deutsche Bank Nat'l Trust Co., as Trustee, at 27, Nat'l Credit Union Admin. Board v. Deutsche Bank Nat'l Trust Co., No. 14-cv-8919 (S.D.N.Y. May 1, 2015) (Dkt. No. 47) (emphasis in original) (Weinstein Decl. Ex. P).)

**Plaintiff's Response:**  Undisputed to the extent that Morgan Stanley accurately quotes that submission.  Disputed to the extent that Morgan Stanley suggests that this document, which was submitted by Deutsche Bank National Trust Co. as Trustee for other trusts in another case,

governed by other contracts, is relevant to the Trustee's "understanding" of the securitization

agreements in this case.  *See* Weinstein Decl. Ex. P at 20-21, 26-33 (addressing whether breaches

should have been discovered by virtue of the trustee's limited role in the securitization); *see also*

*id.* at 28-29 (citing authority for the proposition that an RMBS sponsor's discovery of breaches

can be proven by evidence of (1) the sponsor's own due diligence; (2) forensic analysis revealing

" 'obvious and widespread breaches' "; and (3) identification of specific breaches in the trust at

issue).

57.   In Phoenix Light SF Ltd. v. Deutsche Bank National Trust Co., No. 14-cv-10103

(S.D.N.Y.), Deutsche Bank submitted a memorandum of law in support of its motion to dismiss

the second amended complaint and stated the following:

> [W]here a governing agreement "contain[s] specific
> representations about particular sets of Mortgage Loans," a party
> has knowledge of a breach only if it has "actual, specific
> knowledge of the falsity of . . . particular statements."  See FHFA
> v. HSBC N. Am. Holdings Inc., 33 F. Supp. 3d 455, 477-80
> (S.D.N.Y. 2014).   "Actual knowledge of falsity means just
> that . . . .   Even suspicion of falsity, before it ripens into actual
> knowledge, will not suffice."  Id. at 481; see also U.S. Bank N.A.
> v. Citigroup Glob. Mkts. Realty Corp., No. 13-cv-6989-GBD,
> 2014 WL 7714382 (S.D.N.Y. Nov. 14, 2014) ("speculative"
> allegations regarding knowledge of R&W breaches insufficient);
> Deutsche Zentral-Genossenchaftsbank AG v. HSBC N. Am.
> Holdings Inc., No. 12 Civ. 4025(AT), 2013 WL 6667601, at *13
> (S.D.N.Y. Dec. 17, 2013) (allegations regarding poor performance
> of mortgage loans do "not speak to why the investments were
> performing poorly").

(Memorandum of Law in Support of Motion to Dismiss the Second Amended Complaint by

Defendant Deutsche Bank Nat'l Trust Co., as Trustee, at 22, Phoenix Light SF Ltd. v. Deutsche

Bank Nat'l Trust Co., No. 14-cv-10103-JGK (S.D.N.Y. Aug. 14, 2015) (Dkt. No. 36) (alterations

in original) (Weinstein Decl. Ex. Q).)

**Plaintiff's Response:**  Undisputed to the extent that Morgan Stanley accurately quotes that submission.  Disputed to the extent that Morgan Stanley suggests that this document, which was submitted by Deutsche Bank National Trust Co. as Trustee for other trusts in another case, governed by other contracts, is relevant to the Trustee's "understanding" of the securitization agreements in this case.  *See* Weinstein Decl. Ex. Q at 21-23, 27-29 (addressing whether breaches should have been discovered by virtue of the trustee's limited role in the securitization).

58.     In IKB International, S.A. v. Deutsche Bank National Trust Co., No. 654439/2015 (Sup. Ct. N.Y. Cty.), Deutsche Bank submitted a memorandum of law in support of its motion to dismiss the complaint and stated the following:

> "[B]ecause the Agreements contain a *loan-specific* . . . remedy," Plaintiffs "cannot save [their] claim[s] by arguing that [Defendants were] *generally* aware of 'pervasive breaches' of R&Ws" or other contractual obligations.

(Defendants' Joint Memorandum of Law in Support of Motion to Dismiss at 10, IKB Int'l, S.A. v. Deutsche Bank Nat'l Trust Co., No. 654439/2015 (Sup. Ct. N.Y. Cty. Oct. 5, 2016) (Dkt. No. 26) (alterations in the original) (quoting U.S. Bank, N.A. v. Citigroup Glob. Mkts. Realty Corp., No. 13 Civ. 6989 (GBD), 2015 WL 1222075, at *3 (S.D.N.Y. Mar. 13, 2015)) (Weinstein Decl. Ex. R).)

**Plaintiff's Response:**  Undisputed to the extent that Morgan Stanley accurately quotes that submission.  Disputed to the extent that Morgan Stanley suggests that this document, which was submitted by Deutsche Bank National Trust Co. as Trustee for other trusts in another case governed by other contracts, is relevant to the Trustee's "understanding" of the securitization agreements in this case.  *See* Weinstein Decl. Ex. R at 12-15, 24-25 (addressing whether breaches should have been discovered by virtue of the trustee's limited role in the securitization).

## V.      Repurchase Demands

59.     On April 2, 2013, ████████████████████ sent a letter to Deutsche

Bank identifying purported breaches by Morgan Stanley and demanding that Deutsche Bank

seek repurchase from Morgan Stanley.  (Compl. Ex. 3 (Weinstein Decl. Ex. A); ███████

████████████████████████████████████████

**Plaintiff's Response:**     Undisputed, with the exception of the argumentative

characterization of the identified breaches as "purported breaches."  *See* Weinstein Decl. Ex. A;

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████

60.     On April 4, 2013, Deutsche Bank forwarded to Morgan Stanley a letter from ██

████████████████████ which purported to provide notice of alleged breaches of

representations and warranties with respect to approximately 1,620 Mortgage Loans (the

"Demand Letter").  (See Compl. ¶47 & Ex. 3 (Weinstein Decl. Ex. A); ████████████

██████████████████████████████

**Plaintiff's Response:**     Undisputed, with the exception of the argumentative

characterization of the letter as "purport[ing] to provide notice of alleged breaches."  Weinstein

Decl.  Ex.  A;  ████████  ████  ███  ██  ██  ████████████████  ██

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████

61.     On April 3, 2013, ████████████████████████ sent a letter to Deutsche Bank, copying Accredited, identifying purported breaches by Accredited and demanding that Deutsche Bank seek repurchase from Accredited.  (Compl. Ex. 4 (Weinstein Decl. Ex. A).)

**Plaintiff's Response:**     Undisputed, with the exception of the argumentative characterization of the identified breaches as "purported breaches."  *See* Compl. Ex. 4 (Weinstein Decl. Ex. A) (identifying "material and adverse breaches of representations and warranties by Accredited").

62.     On April 8, 2013, counsel for Accredited sent a letter to ████████████████, stating "[i]t may be worth noting that [the] Trustee receiving your letter did file proofs of claims in Accredited's bankruptcy case, and has received distributions on account of these claims." (Compl. Ex. 4 (Weinstein Decl. Ex. A).)

**Plaintiff's Response:**   Undisputed insofar as the April 8, 2013 letter contains that statement.

63.     █████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████

**Plaintiff's Response:**   Undisputed subject to the clarification that Morgan Stanley refused to repurchase any other loans.  Dkt. 50 ¶ 47.

64.     █████████████████████████████████████████████

███████████████████████████████████

**Plaintiff's Response:**  Disputed.  ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████

65.     Prior to filing suit, Deutsche Bank did not identify for Morgan Stanley any particular loans in this Trust that it alleged to be in breach other than those identified in the Demand Letter.

**Plaintiff's Response:**  Disputed.  ████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

66.     Deutsche Bank has not identified a single loan in the Trust that has not been repurchased as to which Morgan Stanley had actual knowledge that such loan contained a material breach of representations and warranties that Morgan Stanley discovered on its own.

**Plaintiff's Response:**  Disputed.  *See* MLPA §10 (Weinstein Decl. Ex. F) (no "actual knowledge" requirement); Dkt. 50 ¶20; ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████

67.    ███████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████

**Plaintiff's Response:**  Undisputed.

**VI.**    **Deutsche Bank's Sampling Expert**

68.    ███████████████████████████████████████

███████████████████████████████████████████████

█████████████████████

**Plaintiff's  Response:**    Undisputed ████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████

69.  ████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

█████████████████████████████████████████

**Plaintiff's Response:**  Undisputed ██████████████████████████

██████████████████████████████████████████████████████████████

██████████████████

70.  ████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

███████████████████████████████████████████████

**Plaintiff's Response:**  Undisputed ██████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████

71.    During his deposition taken on March 15, 2017, Dr. Lipshutz was asked the

following questions and gave the following answers:

> Q.    Is it fair to say that it is – that you are unable to say for any
> specific loan that is not part of your sample whether it breaches
> any representations?

> MS. PARTHUM:    Objection.

> A.    All that a sample is supposed to do, intended to do, can do,
> is provide information on the overall average properties of the
> population.  It cannot give information on an individual loan – this
> is well-known – and I would not dispute it because it's true.

You can't get information on an individual loan from a sample except for the loans within the sample. Okay. On those you've got information. But the rest of it, you can't pull another unsampled loan out of the pile and say, given the statistical analysis, this is what it is.

You can say at best, well, if there's a lot of breaching loans, the odds are better than not that it is breaching, but you can't identify those results to an individual loan. That's true.

Q.      So if I show you a specific loan that is not part of the sample, you're unable to say whether there is a breach in this loan or what specific breach, if any, there is in this loan; correct?

MS. PARTHUM:       Objection.

A.      Not based on the results of the sample.

(Deposition Transcript of Dr. Nelson R. Lipshutz ("Lipshutz Tr.") at 70:3-71:7 (Weinstein Decl. Ex. W).)

**Plaintiff's Response:**  Undisputed only insofar as Dr. Lipshutz was asked the cited questions and gave the cited answers and counsel for the Trustee made the cited objections.

## VII.   Deutsche Bank's Economic Damages Expert

72.   ████████████████████████████████████

████████████████████████████████████

**Plaintiff's Response:**  Undisputed.

73.   ████████████████████████████████████

████████████████████████████████████

████████████████████

**Plaintiff's Response:**  Undisputed.

74.   ████████████████████████████████████

████████████████████████████████████

████████████████████████████████████



**Plaintiff's Response:** Undisputed

75.



**Plaintiff's Response:**  Undisputed

76.

**Plaintiff's Response:**  Undisputed.

77. 

**Plaintiff's Response:** Undisputed

78.

**Plaintiff's Response:** Undisputed

**VIII.   Deutsche Bank's Appraisal Expert**

79.

**Plaintiff's Response:** Undisputed.

80. 

**Plaintiff's Response:**  Undisputed.

81.

**Plaintiff's Response:**  Undisputed

82.

██████████████████

████████████████

**Plaintiff's Response:**  Undisputed.

83.   ████████████████████████████

█████████████████████████████

█████████████████████████████

█████████████████████████████

█████████████████████████████

████████████████████

**Plaintiff's Response:**  Undisputed ████████████████

█████████████████████████████

█████████████████████████████

█████████████████████████████

█████████████████████████████

█████████████████████████████

█████████████████████████████

████████████████

84.   ████████████████████████████

█████████████████████████████

█████████████████████████████

█████████████████████████████

█████████████████████████████

█████████████████████████████

███████   ████████████████████████████████████████████████████

██████████

**Plaintiff's Response:**   Undisputed ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████.

85.   ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████

**Plaintiff's Response:**  Undisputed ███████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████

86.  █████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████

**Plaintiff's Response:**  Undisputed ████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████

87.   ██████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████

**Plaintiff's Response:**   Undisputed.   ██████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████

88.   ██████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████   ██████████████

████████████████████████

**Plaintiff's Response:** Undisputed.   ██████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████

89.   ██████████████████████████████████

████████████████████████████████████

**Plaintiff's Response:**  Undisputed ██████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████

90.   ██████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

**Plaintiff's Response:**  Undisputed.

91.   ██████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████

**Plaintiff's Response:**   Undisputed ██████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

92.   ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████



**Plaintiff's Response:**   Undisputed

93.





**Plaintiff's Response:**  Undisputed

94.



**Plaintiff's Response:** Undisputed



95.



**Plaintiff's Response:**   Undisputed

96.



**Plaintiff's Response:**  Undisputed

97.



**Plaintiff's Response:**  Undisputed

98.



**Plaintiff's Response:** Undisputed ███████████████████████

███████████████████████████████████████

99.   ███████████████████████████████████

███████████████████████████████████████

███████████████

**Plaintiff's Response:** Undisputed.

100.   ███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████

**Plaintiff's Response:** Undisputed.

101.   ███████████████████████

███████████████████████████████████████

███████████████

**Plaintiff's Response:** Undisputed.

102.   ███████████████████████████████████

█████████████████████████████████

█     ███████████████████████████



**Plaintiff's Response:** Undisputed ███████████████████████████

███████████████████████████████████████████

103.   ███████████████████████████████████████

███████████████████████████████████████████

███████████████████

**Plaintiff's Response:** Undisputed ███████████████████████████

███████████████████████████████

## IX.   Deutsche Bank's Reunderwriting Expert

104.   ███████████████████████████████████████

███████████████████████████████████

**Plaintiff's Response:** Undisputed.

105. ██████████████████████████████████████████████

██████████████████████████████████████████████

**Plaintiff's Response:**  Undisputed.

106. ██████████████████████████████████████████████

██████████████████████████████████████████████

███████

**Plaintiff's Response:**  Undisputed ████████████████████████

██████████████████████████████████████████████

████████████████████

107. ██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████   ████████████████

████████████████████

**Plaintiff's Response:**  Undisputed ████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████

108. ███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

**Plaintiff's Response:**   Undisputed, ████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████

109. ████████████████████████████████████

███████████████████████████████████████████

████████████

**Plaintiff's Response:**   Undisputed. ████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

110. █████████████████████████████████████████

**Plaintiff's Response:**   Undisputed ████████████████████████

111.





**Plaintiff's Response:**   Undisputed

112.



**Plaintiff's Response:**   Undisputed

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████

113.   ███████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████

**Plaintiff's Response:**   ███████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████

114.   ███████████████████████████████████

██████████████████████████

███████████████████████████████







**Plaintiff's Response:** Undisputed

115.

**Plaintiff's Response:** Undisputed

116.





**Plaintiff's Response:** Undisputed



117.

**Plaintiff's Response:** Undisputed

118.   █████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

**Plaintiff's Response:**   Undisputed █████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████

## X.   Morgan Stanley's Materiality Expert

119.   █████████████████████████████████████

████████████████████████████████████████████

██████

**Plaintiff's Response:**   Undisputed.

120.   █████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████

**Plaintiff's Response:** Undisputed █████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

121. ██████████████████████████████████████



███████████████████████████████████████████████████████

**Plaintiff's Response:** Undisputed █████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████



122.

**Plaintiff's Response:** Undisputed ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

## XI.     Release of Repurchase Claims Against Accredited

123.    On October 6, 2009, Deutsche Bank filed Proof of Claim No. 817 in Accredited's

bankruptcy (the "DB Claim"), in its capacity as trustee for certain specified trusts and "any other

trusts of which it is trustee and which hold mortgage loans originated or sold by any Debtor."

(Deutsche Bank Proof of Claim No. 817, ¶¶ 1, 7-8, In re Accredited Home Lenders Holding Co.,

No. 09-11516 (Bankr. D. Del. Oct. 6, 2009) (Weinstein Decl. Ex. JJ).)

**Plaintiff's Response:**  Undisputed that the release contains that statement.  Disputed that the release applies to claims against Morgan Stanley.  *See* Weinstein Decl. Ex. LL at Ex. 1 ¶3 (discharging claims only against "the Debtors" – *i.e.*, Accredited and other specifically "Released Parties").

124.    Deutsche Bank is the trustee for MSST 2007-1, which includes mortgage loans originated by Accredited.  (Prospectus Supplement at S-4-5 (Weinstein Decl. Ex. C); MLPA § 1 at 2 (defining "Accredited Mortgage Loans") (Weinstein Decl. Ex. F).)

**Plaintiff's Response:**  Undisputed.

125.    The DB Claim stated that "Debtors have breached certain of these Representations and Warranties" in the corresponding governing agreements for the trusts described in the DB Claim and "the Trusts have or will have claims for breach of such obligations." (Deutsche Bank Proof of Claim No. 817, ¶¶ 1, 7-8, In re Accredited Home Lenders Holding Co., No. 09-11516 (Bankr. D. Del. Oct. 6, 2009) (Weinstein Decl. Ex. JJ).)

**Plaintiff's Response:**  Undisputed.

126.    Accredited objected to the DB Claim.  (In re Accredited Home Lenders Holding Co., No. 09-11516, Dkt. No. 1567 (Bankr. D. Del. May 21, 2010) (Weinstein Decl. Ex. KK).)

**Plaintiff's Response:**  Undisputed.

127.    Deutsche Bank and Accredited entered a stipulation that stated:

> Except as set forth herein, DB, solely in its capacity as Trustee for each of the applicable trusts, fully and forever releases, surrenders, gives up and discharges the Debtors [Accredited] . . . (collectively, the "Released Parties") from any and all claim, actions, causes of action, rights, debts, costs, charges, losses, demands and damages of whatsoever nature or kind in law or equity, *whether now known or hereinafter known, that DB ever had, may have had or may have against the Released Parties* solely with respect to the DB Claim, including, but not limited to any and all claims for actual, punitive and/or statutory damages asserted or which could have

been asserted against the Released Parties solely with respect to the DB Claim.   DB, in its capacity as Trustee for each of the applicable Trusts, further *covenants not to sue or authorize a suit against the Released Parties* in connection with any of the foregoing released claims, actions, causes of action, rights, debts, costs, charges, losses, demands and damages relating to the DB Claim.

(Order Approving Stipulation Ex. 1 ¶¶2-3 (emphasis supplied), <u>In re Accredited Home Lenders Holding Co.</u>, No. 09-11516, Dkt. No. 3103 (Bankr. D. Del. Nov. 27, 2012) (Weinstein Decl. Ex. LL).)

**Plaintiff's Response:**  Undisputed.

128.    The Bankruptcy Court approved the stipulation on November 27, 2012, retaining exclusive jurisdiction "to interpret, implement and enforce the provisions of this Order and the Stipulation."  (Order Approving Stipulation at 2, <u>In re Accredited Home Lenders Holding Co.</u>, No. 09-11516, Dkt. No. 3103 (Bankr. D. Del. Nov. 27, 2012) (Weinstein Decl. Ex. LL).)

**Plaintiff's Response:**  Undisputed.

## PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS AS TO WHICH IT CONTENDS THAT THERE EXIST GENUINE ISSUES TO BE TRIED

In addition to the genuine issues of fact noted above, the Trustee respectfully submits that genuine issues of fact remain to be tried as set out below.

## I.    THE MSST 2007-1 SECURITIZATION

129.

130.

131. ██████████████████████████████████████

██████████████████████████████████████████

███████████████

132. ██████████████████████████████████████

███████████████████████████████

133. ██████████████████████████████████████

██████████████████████████

134. ██████████████████████████████████████

██████████████████████████████

135. ██████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████

136. ██████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

137. ██████████████████████████████████████

████████████████████████████

138. ██████████████████████████████████████

██████████████████████████████████████████

████████████

139. ██████████████████████████████████████

██████████████████████████████████████████

140.

141.

142.

143.

144.

145.

146. ████████████████████████████████
████████████████████████████████

147. ████████████████████████████████
████████████████████████████████████
█ ███ █ ███ █ ████ ███ █ ███  ██ ██ ██ █
██████████████

148. ████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
██████████████████

149. ████████████████████████████████
████████████████████

150. ████████████████████████████████
██████████████████████

151. ████████████████████████████████
████████████████████████████████████
██████████████████████

152. ████████████████████████████████
██████████████████████████████

153. ███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████

## II.   THE DOJ SETTLEMENT COVERING MSST 2007-1

154.   In February 2016, Morgan Stanley "acknowledge[d]" unlawful conduct pertaining to this Trust, among others, in the Statement of Facts accompanying a $2.6 billion settlement with the Department of Justice that covers this Trust.  Shur Decl. Ex. 1, at 1-3 & Annex 2, at 5 (listing this Trust).

155.   Morgan Stanley acknowledged that it was well aware of the "problematic lending practices of the subprime originators from which it purchased mortgage loans."  Shur Decl. Ex. 1 Annex 1, at 14.

156.   But Morgan Stanley still "clear[ed] dozens of loans for purchase after less than one minute of review per loan file."  Shur Decl. Ex. 1 Annex 1, at 10.

157.   Morgan Stanley acknowledged that it knew that "loans that did not comply with underwriting guidelines and lacked adequate compensating factors and/or had understated loan-to-value ratios were included in the RMBS sold."  Shur Decl. Ex. 1 Annex 1, at 1-2.

158.   Morgan Stanley acknowledged that its "finance team, which was responsible for purchasing and securitizing loan pools but not underwriting or due diligence, instituted a procedure whereby the finance team considered [purchasing] certain loans that Morgan Stanley's credit-and-compliance due diligence process had already recommended should not be purchased."  Shur Decl. Ex. 1 Annex 1, at 12.  Through that procedure, the finance team "decided which of the[] loans had 'acceptable risk.'"  *Id.* at 13.

159.     Morgan Stanley "ultimately purchased and securitized hundreds of loans through this process." Shur Decl. Ex. 1 Annex 1, at 13.

160.     As a result, as Morgan Stanley knew, many of the loans it securitized, including in this Trust, "did not conform to Morgan Stanley's representations." Shur Decl. Ex. 1 Annex 1, at 13.

161.     Morgan Stanley's Vice President of Valuation, who was responsible for due diligence on the properties securing the loans Morgan Stanley securitized, including in MSST 2007-1, admonished an analyst for using the phrase "slightly higher risk tolerance" in writing because Morgan Stanley was "running under the radar and d[id] not want to document these types of things." Shur Decl. Ex. 1 Annex 1, at 9.

## III.     THE *MSM 2006-13ARX* APPEAL

162.     On June 15, 2017 the parties in *Morgan Stanley Mortgage Loan Trust 2006-13ARX v. Morgan Stanley Mortgage Capital Holdings LLC*, No. APL-2016-00240, advised the Court of Appeals that "an agreement in principle to settle th[e] action ha[d] been reached," and "the parties intend to withdraw the appeal." Shur Decl. Ex. 34.

June 22, 2017                              Respectfully Submitted,

                                           Steven F. Molo
                                           Robert K. Kry
                                           Justin V. Shur
                                           Lauren M. Weinstein
                                           MOLOLAMKEN LLP
                                           430 Park Avenue
                                           New York, New York  10022
                                           (212) 607-8160 (telephone)
                                           (212) 607-8161 (facsimile)

                                           *Attorneys for Plaintiff Deutsche Bank*
                                           *National Trust Company, as Trustee for the*
                                           *Morgan Stanley Structured Trust 2007-1*