**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DEUTSCHE BANK NATIONAL TRUST COMPANY, solely in its capacity as Trustee for the MORGAN STANLEY STRUCTURED TRUST I 2007-1,

Plaintiff,

- against –

MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC, as Successor-by-Merger to MORGAN STANLEY MORTGAGE CAPITAL INC.,

Defendant.

No. 14 Civ. 3020 (LTS)

ORAL ARGUMENT REQUESTED

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000

Attorneys for Defendant

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES .......... iii

ARGUMENT .......... 1

I. DEUTSCHE BANK CANNOT AVOID THE SOLE REMEDY PROVISION .......... 1

A. The Contract's Sole Remedy Provision Precludes Extrapolation from a Sample .......... 1

B. The "Sole and Exclusive Remedy" Provision Is Enforceable .......... 3

C. Even If the Sole Remedy Provision Were Voidable, Deutsche Bank Has Failed to Provide Evidence of Malicious Intent or a Breach of a Non-Contractual Duty .......... 4

II. DEUTSCHE BANK HAS NOT SHOWN ACTUAL LOAN-BY-LOAN NOTICE OR DISCOVERY .......... 5

A. On Summary Judgment, Deutsche Bank Must Identify Evidence of *Actual* Loan-by-Loan Notice or Discovery .......... 5

B. The Only Loans For Which Evidence of Actual Notice and Breach Have Been Provided Are the [REDACTED] Loans In Deutsche Bank's Expert Reports, But Notice Through These Reports Is Untimely and Improper .......... 7

1. The Loan-Specific Nature of the Alleged Breaches, and the Available Remedies, Is Inconsistent with "Relation Back" .......... 7

2. The Notice Condition Precedent Cannot Be Satisfied Retroactively .......... 10

3. New York Law Requires Strict Compliance with Conditions Precedent .......... 10

C. There is No Evidence that Morgan Stanley Actually Discovered Breaching Loans .......... 11

III. [REDACTED] .......... 14

A. [REDACTED] .......... 14

B. [REDACTED] .......... 15

C. [REDACTED] .......... 15

PAGE

IV. DEUTSCHE BANK MISCONSTRUES THE MEANING OF VARIOUS R&Ws ....16

A. Deutsche Bank Misapplies Section 10(b)(5) of the MLPA ....16

B. The MLS Representation Is Not a No Fraud Representation ....17

C. Deutsche Bank Misconstrues the LTV and Appraisal Representations ....18

V. MORGAN STANLEY IS NOT RESPONSIBLE FOR ACCREDITED, FREMONT, OR WMC LOANS ....19

A. Deutsche Bank's Release of Accredited Extinguished Any Backstop Obligations ....19

B. MLPA § 10(b) Does Not Apply to Fremont and WMC Loans ....20

CONCLUSION ....21

# TABLE OF AUTHORITIES

## CASES

PAGE(S)

A.H.A. Gen. Constr., Inc. v. N.Y.C. Hous. Auth.,
92 N.Y.2d 20 (1998) .... 4

Abacus Fed. Sav. Bank v. ADT Sec. Servs., Inc.,
18 N.Y.3d 675 (2012) .... 5

ACE Sec. Corp. v. DB Structured Prods., Inc.,
25 N.Y.3d 581 (2015) .... 9, 10

ACE Sec. Corp. Home Equity Loan Trust, Series 2007-HE3 ex rel. HSBC Bank USA, Nat'l Ass'n v. DB Structured Prods., Inc.,
5 F. Supp. 3d 543 (S.D.N.Y. 2014) .... 5, 6, 11, 12

Assured Guar. Mun. Corp. v. Flagstar Bank,
920 F. Supp. 2d 475 (S.D.N.Y. 2013) .... 2, 6, 7

B.F. Goodrich v. Betkoski,
99 F.3d 505 (2d Cir. 1996) .... 14, 15

Bank of N.Y. Mellon v. WMC Mortg., LLC,
No. 653831/2013, 2017 WL 1946017 (1st Dep't May 11, 2017) .... 6, 20

Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC,
No. Civ. 5140 (CS), 2012 WL 3201139 (Del. Ch. Aug. 7, 2012) .... 8

de Abreu v. Bank of Am. Corp,
812 F. Supp. 2d 316 (S.D.N.Y. 2011) .... 12

Deutsche Bank Nat'l Trust Co. v. WMC Mortg., LLC,
No. 12 Civ. 933 (CSH), 2014 WL 3824333 (D. Conn. Aug. 4, 2012) .... 2

Fed. Hous. Fin. Agency v. HSBC N.A. Holdings, Inc.,
33 F. Supp. 3d 455 (S.D.N.Y. 2014) .... 12

Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.,
No. 11 Civ. 6188 (DLC), 2012 WL 6000885 (S.D.N.Y. Dec. 3, 2012) .... 2

Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.,
104 F. Supp. 3d 441 (S.D.N.Y. 2015) .... 14

Fed. Hous. Fin. Agency v. UBS Americas Inc.,
No. 11 Civ. 5201 (DLC), 2013 WL 3284118 (S.D.N.Y. June 28, 2013) .............................. 14

Fixed Income Shares: Series M v. Citibank N.A.,
109 F. Supp. 3d 587 (S.D.N.Y. 2015)......................................................................... 11

Fundamental Long Term Care Holdings, LLC v. Cammeby's Funding LLC,
20 N.Y. 438 (2013) ............................................................................................... 3

Galli v. Metz,
973 F.2d 145 (2d Cir. 1992)........................................................................... 17, 18

Glob.-Tech Appliances, Inc. v. SEB S.A,
563 U.S. 754 (2011)............................................................................................. 13

Greater New York Health Care Facilities Assn. v. DeBuono,
92 N.Y.2d 716 (1998) ........................................................................................ 8,9

Home Equity Mortg. Trust Series 2006-5 v. DLJ Mortg. Capital,
No. 653787/12, 2014 WL 317838 (Sup. Ct. N.Y. Cty. Jan. 27, 2014).................................. 17

Iacobelli Construction, Inc. v. County of Monroe,
32 F.3d 19 (2d Cir. 1994) .............................................................................. 14, 15

Int'l Tech. Mktg. Inc. v. Verint Sys., Ltd.,
157 F. Supp. 3d 352 (S.D.N.Y. 2016)....................................................................... 3

LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.,
424 F.3d 195 (2d Cir. 2005)................................................................................. 17

Marin v. Constitution Realty, LLC,
128 A.D.3d 505 (1st Dep't 2015) .......................................................................... 17

MASTR Adjustable Rate Mortgages Trust 2006-OA2 v. UBS Real Estate Sec. Inc.,
No. 12 Civ. 7322 (PKC), 2015 WL 764665 (S.D.N.Y. Jan. 9, 2015) ..................................... 7

MBIA Ins. Corp. v. Countrywide Home Loans, Inc.,
No. 602825/2008, 2010 WL 5186702 (Sup. Ct. N.Y. Cnty. Dec. 22, 2010)........................... 2

Mionis v. Bank Julius Baer & Co.,
301 A.D.2d 104 (1st Dep't 2002) .......................................................................... 18

Morgan Stanley Mortg. Loan Trust 2006-13ARX v. Morgan Stanley Mortg. Capital Holdings LLC,
143 A.D.3d 1 (1st Dep't 2016) ............................................................................... 4

Nomura Home Equity Loan, Inc., Series 2006-FM2 v. Nomura Credit & Capital, Inc., 133 A.D.3d 96 (1st Dep't 2015) ........ 7, 8, 17

Northgate Elec. Corp. v. Barr & Barr, Inc., 61 A.D.3d 467 (1st Dep't 2009) ........ 11

R/S Assocs. v. N.Y. Developmental Auth., 98 N.Y.2d 29 (2002) ........ 17

Royal Park Investments SA/NV v. HSBC Bank USA, N.A., 109 F. Supp. 3d 587 (S.D.N.Y. 2015) ........ 11

S.E.C. v. Credit Bancorp, Ltd., 232 F. Supp. 2d 260, 267 (S.D.N.Y. 2002) ........ 3

Schindler Elevator Corp. v. Tully Constr. Co., 139 A.D.3d 930 (2d Dep't 2016) ........ 11

Sommer v. Fed. Signal Corp., 79 N.Y.2d 540 (1992) ........ 5

Tiffany (NJ) Inc. v. eBay Inc., 600 F.3d 93 (2d Cir. 2010) ........ 13

TVT Records v. Island Def Jam Music Grp., 412 F.3d 82 (2d Cir. 2005) ........ 16, 17

U.S. Bank Nat'l Ass'n v. GreenPoint Mortg. Funding, Inc., 147 A.D.3d 79 (1st Dep't 2016) ........ 6, 10

U.S. Bank, Nat'l Ass'n v. UBS Real Estate Sec. Inc., 205 F. Supp. 3d 386 (S.D.N.Y. 2016) ........ 11, 15

OTHER AUTHORITIES

Black's Law Dictionary (10th ed. 2014) ........ 18

Deutsche Bank has admitted in other cases that the plain language of the governing contract requires *loan-by-loan* proof of breaches, *loan-by-loan* proof of actual notice or discovery of such breaches, and provides a *loan-specific* sole remedy that prohibits extrapolation from a sample. Now, it urges this Court to ignore this and allow it to extrapolate from a sample and assert claims for loans as to which it has presented no evidence of breaches and no evidence of actual notice/discovery of such breaches. The Court should enforce the contract as written and limit Deutsche Bank's claims to, at most, the [redacted] loans for which it purports to provide evidence of both notice and breach. Even as to these loans, Deutsche Bank's claims fail because it did not timely comply with contractual conditions precedent and [redacted] In short, in this breach of contract case between two sophisticated financial institutions, the plain language compels granting summary judgment.

**ARGUMENT**

**I. DEUTSCHE BANK CANNOT AVOID THE SOLE REMEDY PROVISION**

A. The Contract's Sole Remedy Provision Precludes Extrapolation from a Sample

Deutsche Bank seeks to relitigate an issue already decided by this Court—namely, whether reviewing a sample of loans, determining a "breach rate," and extrapolating that rate to the entire loan pool—can be squared with the *loan-specific* "sole and exclusive remedy." This Court has already concluded that it cannot and "[t]he only apparent potential basis for a sampling approach [to proving liability] would be the line of New York authority that holds that gross negligence can trigger relief from a sole remedy provision." (5/15/15 Tr.[1] at 3:16-20.) The Court's conclusion was entirely correct, and is required by the plain language of the contract, which

[1] Citations and capitalized terms are defined in the Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("MS Br."). "Opp'n" refers to Plaintiff's Memorandum in Opposition to Defendant's Motion.

provides that the Trustee's "sole and exclusive remedy" respecting a breach of R&Ws is to require Morgan Stanley to cure "*such breach*" or "purchase the *affected Mortgage Loan*" after notice or discovery of the breach. (MLPA § 10 at 18; see MS Br. at 9-11, 15-19.) Deutsche Bank offers no reason for the Court to reconsider its interpretation, which is consistent with the interpretation of numerous other courts. (See cases cited at MS Br. at 17-18.)[2]

Deutsche Bank itself has argued in other litigation that the repurchase protocol is inherently loan-specific and can be satisfied only by providing evidence of notice/discovery of specific breaches in specific loans. (See MS Br. at 16-18.) Deutsche Bank cannot walk away from its own position. Indeed, just two weeks after it filed its opposition in this case, Deutsche Bank wrote a letter to Magistrate Judge Freeman explicitly arguing that because of the loan-by-loan nature of the repurchase protocol, "*sampling is incompatible with . . . multiple controlling provisions in the governing agreements*." (Weinstein Supp. Decl. Ex. VV (emphasis added).)

Deutsche Bank spuriously contends that the plain language is "beside the point" because certain allegedly breaching loans have been liquidated, and therefore "damages" are available for such loans in lieu of specific performance of the cure/repurchase remedy. (Opp'n at 16.) This argument is a red herring.[3] Both with respect to liquidated and non-liquidated loans, the contract's plain terms require loan-specific notice or discovery of a breach, following which

---

[2] Deutsche Bank relies on cases that did not attempt to enforce contractual R&Ws, see FHFA v. JPMorgan Chase & Co., No. 11 Civ. 6188 (DLC), 2012 WL 6000885 (S.D.N.Y. Dec. 3, 2012), or were not limited by a sole remedy provision, see MBIA Ins. Corp. v. Countrywide Home Loans, Inc., No. 602825/2008, 2010 WL 5186702, at *4, 6 (Sup. Ct. N.Y. Cnty. Dec. 22, 2010). Assured Guar. Mun. Corp. v. Flagstar Bank, FSB, 920 F. Supp. 2d 475, 512-13 (S.D.N.Y. 2013), and Deutsche Bank Nat'l Trust Co. v. WMC Mortg., LLC, No. 12 Civ. 933 (CSH), 2014 WL 3824333, at *9 (D. Conn. Aug. 4, 2012) relied on these types of cases and did not explain how sampling comports with the contract language, which other courts have since concluded prohibits sampling. (See MS Br. at 17-18.)

[3] It is also factually unsupported, because Deutsche Bank has not identified any evidence that any particular loans have been "liquidated" (or even precisely how it is using this term), or why the loans that its expert purportedly identified as "liquidated" cannot actually be repurchased from the Trust.

Morgan Stanley has an opportunity to cure "such breach" (MLPA § 10 at 18) or pay the loan-specific Purchase Price (which, in this case, includes the unpaid principal balance of loans that have been foreclosed). (MLPA § 1 at 5). The contract does not carve out liquidated loans from its loan-by-loan sole remedy. The only difference with respect to liquidated loans is that, in the event that it is impossible to repurchase a particular loan, in exchange for paying the Purchase Price, Morgan Stanley will not receive the loan in return. But that is not a basis for rewriting the contract to permit the loan-specific remedy to be pursued through sampling.[4]

Deutsche Bank's final argument—that it is burdensome to prove breaches loan by loan (Opp'n at 15)—is "beside the mark" because the contract is unambiguous. Fundamental Long Term Care Holdings, LLC v. Cammeby's Funding LLC, 20 N.Y.3d 438, 445 (2013).[5] Indeed, this Court concluded that the contract requires loan-by-loan proof despite Deutsche Bank's burden arguments. (See May 8, 2015 Am. Prelim. Pre-Trial Statement (Dkt. No. 51) at 12 (arguing that loan-by-loan proof would be "costly and time consuming").) Finally, this argument is moot because Deutsche Bank cannot pursue claims for any additional loans. See infra II.B.

B. The "Sole and Exclusive Remedy" Provision Is Enforceable

Deutsche Bank argues that the Court should void the sole remedy provision based on Morgan

---

[4] While the plain language of the contract controls, it also bears noting that the loan-by-loan process is critical regardless of whether a loan is liquidated. Many alleged breaches in cases of this type are based on allegedly missing documents, which can often be rebutted and cured by locating them. [redacted] This is impossible to do if alleged breaches are not tied to particular loans.

[5] See also Int'l Tech. Mktg. Inc. v. Verint Sys., Ltd., 157 F. Supp. 3d 352, 364-65 (S.D.N.Y. 2016); S.E.C. v. Credit Bancorp, Ltd., 232 F. Supp. 2d 260, 267 (S.D.N.Y. 2002). While this principle of New York law is dispositive, it is also worth noting that there is nothing impossible about reviewing the number of loans at issue here, which Deutsche Bank had years to do. Indeed, the only case cited by Deutsche Bank was one in which the trustee reviewed almost *three times* as many loans as are contained in this entire Trust, and did so in a matter of months. (Weinstein Supp. Decl. Ex. WW at 9 (noting that the trustee had reviewed 12,757 mortgage loans).)

Stanley's alleged gross negligence, but it concedes that such conduct can only void clauses that allow a party to "insulate itself from damages." (Opp'n at 17.) Deutsche Bank does not even attempt to argue that the sole remedy provision in this case is such a clause. Indeed, it cannot because, for any loan as to which it proves its claim, it will receive the contractually defined Purchase Price (MLPA § 1 at 5), which makes the Trust whole for any alleged damages.

Deutsche Bank mistakenly attempts to rely on Morgan Stanley Mortgage Loan Trust 2006-13ARX v. Morgan Stanley Mortgage Capital Holdings LLC ("13ARX"), 143 A.D.3d 1 (1st Dep't 2016), but that decision confirms Morgan Stanley's position. Reviewing a decision on a *motion to dismiss*, the First Department merely held that the gross negligence public policy exception could apply to a sole remedy provision that proves "illusory," but that "[t]he issue of whether the sole remedies clauses in these contracts will make the investors whole cannot be ascertained *at this stage of the litigation*, militating in favor of permitting the allegations of gross negligence to remain" pending discovery. 13ARX, 143 A.D.3d at 9 (emphasis added). In this case, at summary judgment, there is no evidence the sole remedy is illusory, and Deutsche Bank does not attempt to argue otherwise or present any evidence of any damages that would not be fully remedied by payment of the Purchase Price.[6] Because the sole remedy clause does not "insulate" Morgan Stanley from any liability, it is not an exculpatory clause voidable by allegations of gross negligence. See A.H.A. Gen. Constr., Inc. v. N.Y.C. Hous. Auth., 92 N.Y.2d 20, 30-31 (1998) ("conditions precedent to suit or recovery, [are] not . . . exculpatory clauses").

[6] In 13ARX, the court left open the possibility that if defendant sought to preclude plaintiff from recovering for liquidated loans, this could potentially render the sole remedy provision "illusory," and therefore it was premature to resolve the issue at the pleading stage. 143 A.D.3d at 8. Here, however, the definition of "Purchase Price" makes clear that the defendant must make plaintiff whole for all breaching loans, whether or not they have been foreclosed (MLPA § 1 at 5), and Morgan Stanley is not arguing that any loans are exempt from this obligation.

C. Even If the Sole Remedy Provision Were Voidable, Deutsche Bank Has Failed to Provide Evidence of Malicious Intent or a Breach of a Non-Contractual Duty

Deutsche Bank grossly mischaracterizes the evidence in this case (see R. 56.1 ¶¶ 21-22, 154-61), but even if its mischaracterizations are credited, at most it has identified a dispute of fact about whether Morgan Stanley recklessly breached the contract based on its own economic self-interest. This is insufficient to avoid summary judgment because even an intentional breach of contract (much less a reckless one) does not render an exculpatory clause unenforceable in the absence of evidence of malicious intent or breach of a legal duty beyond the express requirements of the contract. (See MS Br. at 14-15 and cases cited therein.)[7]

## II. DEUTSCHE BANK HAS NOT SHOWN ACTUAL LOAN-BY-LOAN NOTICE OR DISCOVERY

A. On Summary Judgment, Deutsche Bank Must Identify Evidence of *Actual* Loan-by-Loan Notice or Discovery

The contract requires that for any loan as to which it seeks relief, Deutsche Bank must show that Morgan Stanley *actually* received notice of or independently discovered a material breach. (MS Br. at 15-19.) Hoping to ignore this plain language, Deutsche Bank argues that this Court already concluded, in its decision on the motion to dismiss, that Deutsche Bank met this obligation for every loan in the Trust. (Opp'n at 21-22.) In deciding the motion to dismiss, however, the Court only determined whether Deutsche Bank had satisfied the *notice pleading* requirement, which "notably does not relieve Plaintiff of its burden of proving loan-by-loan

[7] Deutsche Bank argues in passing that Abacus Federal Savings Bank v. ADT Security Services, Inc., 18 N.Y.3d 675 (2012), held that a grossly negligent breach of contract can render a sole remedy clause unenforceable, but ignores that, unlike here, Abacus involved an alleged breach of a duty of care arising from its ongoing obligation to "maintain" an alarm system. Abacus, 18 N.Y.3d at 681; see Sommer v. Federal Signal Corporation, 79 N.Y.2d 540, 551 (1992) (contracts that create an ongoing relationship between the parties gives rise to duties of care enforceable in "contract, [] tort, or both"). Abacus did not involve pure contract claims based on "fail[ure] to deliver goods as promised," Sommer, 79 N.Y.2d at 550, like those asserted here. Morgan Stanley respectfully refers the Court to Exs. MM-OO for a more fulsome discussion of Abacus.

breaches at later stages of litigation." ACE Sec. Corp. Home Equity Loan Trust, Series 2007-HE3 v. DB Structured Prods., Inc., 5 F. Supp. 3d 543, 560 (S.D.N.Y. 2014).

Now, at summary judgment, this Court must determine, for the first time, whether Deutsche Bank has presented evidence that it has satisfied the *contractual* notice requirement.  While on the motion to dismiss the Court observed that it "need not . . . decide" whether this requirement was a contractual condition precedent (see MTD Op. at 5), the First Department recently confirmed that it is and therefore is strictly enforced.  U.S. Bank Nat'l Ass'n v. GreenPoint Mortg. Funding, Inc. ("GreenPoint"), 147 A.D.3d 79, 86 (1st Dep't 2016); see also Bank of N.Y. Mellon v. WMC Mortg., LLC, No. 653831/2013, 2017 WL 1946017 at *4 (1st Dep't May 11, 2017) (plaintiff must "satisfy the procedural condition precedent by providing . . . notice relating to *specific loans*").  It also made clear that the type of notice sufficient to survive a motion to dismiss is not equivalent to the type that satisfies the contract.  GreenPoint, 147 A.D.3d at 88 ("[A] pleading notice and a breach notice are not natural substitutes for one another.").

The plain language of the contract requires *actual*, loan-by-loan notice—not constructive or inquiry notice—because such loan-specific notice is the predicate for "cur[ing] *such breach*" or "purchas[ing] the *affected Mortgage Loan*."  (MLPA § 10 at 18 (emphasis added).)  It is undisputed that there is no provision in the contract that requires Morgan Stanley to look for breaches based on allegations of "pervasive breaches."  Indeed, Deutsche Bank has recognized as much in other litigation.  (MS Br. at 16; R. 56.1 ¶ 58 ("'[B]ecause the Agreements contain a *loan-specific* . . . remedy,' Plaintiffs 'cannot save [their] claim[s] by arguing that [Defendants were] *generally* aware of "pervasive breaches" of R&Ws or other contractual obligations.'").)

Deutsche Bank relies heavily on Judge Rakoff's decision in Assured Guaranty Municipal Corp. v. Flagstar Bank, FSB, 920 F. Supp. 2d 475, 512-13 (S.D.N.Y. 2013), which held that

allegations of "pervasive breaches" put defendants on "inquiry notice" of additional breaches. (Opp'n at 22-23 (citing Assured, 920 F. Supp. 2d at 512-13).) But that decision was based on a contract that did not require the monoline insurer plaintiff to provide loan-by-loan notice. See Assured, 920 F. Supp. 2d at 513; MARM I, 2015 WL 764665, at *12 (distinguishing Assured because plaintiff was "not limited to loan-by-loan cure and notice requirements"). In all events, Assured does not explain how providing "inquiry notice" can trigger Morgan Stanley's obligation to cure or repurchase any mortgage loan under the relevant agreements in this case since, by definition, inquiry notice does not identify that loan. And, as Deutsche Bank readily admits (Opp'n at 23), other courts have declined to follow this decision because an inquiry notice standard is incompatible with the plain language at issue here. (MS Br. at 18 n.14.)[8] Under the plain terms of the contract, Deutsche Bank's claims are limited to, at most, the ███ loans for which it purported to provide actual notice and proof of breach through its expert reports.

B. The Only Loans For Which Evidence of Actual Notice and Breach Have Been Provided Are the ███ Loans In Deutsche Bank's Expert Reports, But Notice Through These Reports Is Untimely and Improper

Even as to these ███ loans identified in its expert reports, Deutsche Bank's claims fail because it did not timely assert those claims or timely provide proper loan-by-loan notice.

1. The Loan-Specific Nature of the Alleged Breaches, and the Available Remedies, Is Inconsistent with "Relation Back"

As Deutsche Bank has conceded in other litigations, the contractual remedies at issue are inherently loan-specific. (MS Br. at 16-17; supra I.A, II.A.) Accordingly, as Chancellor Strine explained in the most detailed discussion of the issue to date, a breach in Loan A is an

[8] Deutsche Bank suggests that Assured was confirmed by Nomura Home Equity Loan, Inc., Series 2006-FM2 Inc. v. Nomura Credit & Capital, Inc., 133 A.D.3d 96 (1st Dep't 2015), but Nomura never addressed inquiry notice and was a motion to dismiss case dealing with pleading standards, not contractual notice requirements. In any event, the decisions rejecting the inquiry notice standard were decided well after Nomura. (MS Br. at 17-18.)

independent contractual violation from a breach in Loan B, and therefore an untimely claim as to one does not relate back to a timely claim as to the other. (See MS Br. at 21-23 (discussing Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC, No. Civ. 5140 (CS), 2012 WL 3201139, at *3, 18-20 (Del. Ch. Aug. 7, 2012)).)[9] Because the loan-specific nature of the contractual remedy precludes Deutsche Bank from relying on relation back, its claims for loans not identified in its complaint are untimely and should be dismissed. (See MS Br. at 20-23.)

Deutsche Bank argues that relation back should apply because it "reserved the right to give notice of additional breaches," relying on Nomura, 133 A.D.3d 96 (1st Dep't 2015). (Opp'n at 6.) Nomura held that relation back was appropriate where the plaintiff indicated in its pre-suit notice that it "might uncover additional defective loans for which claims would be made," 133 A.D.3d. at 108, but the court did not analyze how relation back should be applied in light of the inherently loan-specific nature of the contractual remedies, nor did the court cite any authority to support its holding. Notably, Deutsche Bank makes no attempt to fill in these gaps or explain why the holding in Nomura is a correct application of relation back.

Deutsche Bank recognizes that Nomura is not binding if this Court concludes that the Court of Appeals would reach a different result. (Opp'n at 25.) Nomura is, in fact, inconsistent with controlling decisions from the New York Court of Appeals. First, in Greater N.Y. Health Care Facilities Ass'n v. DeBuono, 91 N.Y.2d 716 (1998), the Court of Appeals held that claims that were subject to "an individualized reimbursement rate" did not relate back to the original complaint because the complaint did not provide "*particularized*" notice of the new claims. Id.

[9] Deutsche Bank argues that in Central Mortgage the plaintiff had "specifically disclaimed" claims for loans not identified in the complaint (Opp'n at 26), but that disclaimer only applied to a subset of loans, and Chancellor Strine concluded plaintiff could not assert claims for *any* loans not referenced in the complaint, whether or not they had previously been disclaimed. 2012 WL 3201139, at *19, *27.

at 721 (emphasis added). That same reasoning applies here, where the loans are subject to an individualized Purchase Price (R. 56.1 ¶ 37) and where the alleged breaches and the contractual remedies are loan-specific. Moreover, the Court of Appeals reached this holding despite the fact that the original complaint included a "reservation of rights" to assert additional claims similar to the one Deutsche Bank attempts to rely upon here. See 91 N.Y.2d at 719 (explaining that "the petition purported to sue not only on petitioners' behalf, but also on 'Behalf of All Other Similarly Situated [parties]'"). Deutsche Bank's attempts to distinguish DeBuono are meritless. (Opp'n at 26.) The fact that DeBuono is 20 years old does not make it any less binding; it is still good law, and Deutsche Bank does not cite any decisions to the contrary. Nor does it help Deutsche Bank to note that DeBuono recognized that relation back would apply if claims are based on the same transaction or occurrence, because the Court of Appeals held that the individualized reimbursement rates prevented the claims at issue from being deemed "the same transaction or occurrence." The same logic applies here, where each alleged breach, the remedy for such breach, and the associated Purchase Price are all inherently loan-specific.

Second, Deutsche Bank's position would undermine the Court of Appeals' holding in ACE Securities Corp. v. DB Structured Products, Inc., 25 N.Y.3d 581 (2015) ("ACE"), and its approach to statutes of limitations generally. ACE rejected the discovery rule and held that breaches of R&Ws in RMBS contracts accrue when the R&Ws are made because New York law favors "objective, reliable, predictable, and relatively definitive rules that have long governed this aspect of commercial repose." 25 N.Y.3d at 594. Under Deutsche Bank's position, asserting a timely claim as to a single loan can preserve claims as to many thousands of loans, despite the fact that the proof of a breach in each of these loans is loan-specific and gives rise to a loan-specific remedy. That is not consistent with the proper application of relation back or the

bright-line approach to statutes of limitations taken by the Court of Appeals in ACE and its earlier cases cited therein. Deutsche Bank's position would also lead to the perverse result that the determination of whether a plaintiff could assert claims for thousands of loans not identified in the complaint would depend on whether it uttered the "magic words" of reserving rights. That is not a proper basis on which the applicability of relation back should rise or fall.

2. The Notice Condition Precedent Cannot Be Satisfied Retroactively

Even if Deutsche Bank's new claims could relate back, the First Department recently held that the "inherent nature" of conditions precedent is that they must be satisfied *prior* to filing suit and cannot be satisfied retroactively by the relation back doctrine. GreenPoint, 147 A.D.3d at 86. As a result, because Deutsche Bank failed to timely satisfy the notice condition precedent for loans not identified pre-suit, it cannot pursue notice-based claims for such loans.

Deutsche Bank barely mentions GreenPoint, and attempts to ignore its holding on the basis that, in that case, the plaintiff did not send any timely pre-suit notices. (Opp'n at 26.) However, that fact was not determinative of the holding that satisfaction of conditions precedent cannot be satisfied retroactively, which was based on the "inherent nature of a condition precedent." GreenPoint, 147 A.D.3d at 87. Since the notice condition precedent must be satisfied on a loan-by-loan basis, supra II.A, it does not matter whether or not the plaintiff timely satisfied that condition precedent for *other* loans before filing its complaint. What matters is that Deutsche Bank did not timely satisfy the condition precedent for the ███ loans identified in its expert reports and cannot do so retroactively using relation back.

3. New York Law Requires Strict Compliance with Conditions Precedent

Finally, Deutsche Bank does not dispute that providing post-complaint "notice" through an expert report fails to strictly comply with the contract, which New York law requires for notice

conditions precedent.  (MS Br. at 24 (collecting cases).)  None of the authorities cited by

Deutsche Bank are to the contrary because they all contemplate notice provisions that are not

conditions precedent.  Cf. Schindler Elevator Corp. v. Tully Constr. Co., 139 A.D.3d 930, 931

(2d Dep't 2016) (holding that "strict compliance will be required" if a "contract contains a

condition precedent-type notice provision"); Northgate Elec. Corp. v. Barr & Barr, Inc., 61

A.D.3d 467, 468-69 (1st Dep't 2009) (same).

      C.   There is No Evidence that Morgan Stanley Actually Discovered Breaching Loans

This Court held at the pleading stage that general allegations of "widespread breaches" were

sufficient to support claims that Morgan Stanley discovered breaches, but that "'[d]iscovery may

reveal that [the defendant] was, in fact, unaware of certain breaches, meaning that its obligation

to cure them or repurchase the defective loans would be triggered only upon notice.'"  (MTD Op.

at 12 (quoting ACE 2007-HE3, 5 F. Supp. 3d at 564).)  Discovery has, in fact, revealed that

Morgan Stanley did not discover any of the alleged breaches.

On summary judgment, Deutsche Bank must now identify evidence of *actual* discovery of

*specific* breaches.  See MARM IV, 205 F. Supp. 3d 386, 476 (S.D.N.Y. 2016) (plaintiff cannot

demonstrate discovery "unless the loan is identified"); ACE 2007-HE3, 5 F. Supp. 3d at 560

(discovery must be proven "loan-by-loan" after motion to dismiss); Royal Park Inv. SA/NV v.

HSBC Bank USA, Nat'l Ass'n, 109 F. Supp. 3d 587, 601 (S.D.N.Y. 2015) (at summary

judgment plaintiff must prove its claims "loan-by-loan"); Fixed Income Shares: Series M v.

Citibank N.A., 130 F. Supp. 3d 842, 851 (S.D.N.Y. 2015) (requiring "loan-specific evidence to

prevail at trial or on summary judgement.").  As Deutsche Bank has admitted, the loan-specific

nature of the repurchase protocol means that it must demonstrate that Morgan Stanley *actually*

discovered the breach, not that it *should* have. (MS. Br. at 16-17.)[10]

Deutsche Bank has no such evidence of actual discovery. Instead, relying on cases deciding *motions to dismiss*, [redacted] (Opp'n at 28.) But with discovery complete, these allegations of "pervasive breach" are not sufficient to create an issue of fact that Morgan Stanley *actually discovered* any particular alleged breach. Fed. Hous. Fin. Agency v. UBS Americas Inc., No. 11 Civ. 5201 (DLC), 2013 WL 3284118, at *15 (S.D.N.Y. June 28, 2013) (holding that, on summary judgment, "there is no authority for the proposition that evidence of generalized knowledge necessarily qualifies as circumstantial evidence of particularized, actual knowledge").

Similarly, Deutsche Bank attempts to satisfy the actual discovery requirement by asserting that Morgan Stanley must have discovered breaches as part of its due diligence because they would have been "apparent," but it fails to identify which allegedly breaching loans underwent due diligence and which breaches in those loans would have been "apparent" and why. (Opp'n at 29.)[11] Even if it had provided these essential facts, its claims would fail because it is not sufficient to show that a breach should have been "apparent"; rather, Deutsche Bank must show that Morgan Stanley *actually discovered* the breach. Fed. Hous. Fin. Agency v. HSBC N. Am. Holdings, Inc., 33 F. Supp. 3d 455, 481 (S.D.N.Y. 2014) ("Even suspicion of falsity, before it ripens into actual knowledge, will not suffice."); see also de Abreu v. Bank of Am. Corp., 812 F. Supp. 2d 316, 325 (S.D.N.Y. 2011) (dismissing claim because knowledge of "red flags . . .

---

[10] Deutsche Bank's attempt to distinguish its admissions is unavailing. (Opp'n at 29 n.6.) Deutsche Bank's brief cited ACE 2007-HE3, which held that allegations of pervasive breaches can support an inference of discovery *on a motion to dismiss*, but that loan-by-loan proof was necessary to ultimately prevail at trial. 5 F. Supp. 3d at 560. Deutsche Bank explicitly argued the same thing. (MS Br. at 16.)

[11] [redacted] (R. 56.1 ¶ 66.) [redacted]

would not be sufficient to support an allegation of actual knowledge").

Deutsche Bank's "willful blindness" argument also cannot save its discovery claims because even if it were sufficient to prove actual knowledge, it does not relieve Deutsche Bank of its obligation to prove such knowledge loan-by-loan. To demonstrate knowledge through willful blindness, Deutsche Bank would have to present evidence that Morgan Stanley "(1) subjectively believe[d] that there [was] a high probability that a [breach] existe[d] and (2) [Morgan Stanley took] deliberate actions to avoid learning of that [breach]." Glob.-Tech Appliances, Inc. v. SEB S.A., 563 U.S. 754, 769 (2011). To satisfy the inherently loan-specific inquiry under the contract here, Deutsche Bank would have to, at a minimum, identify the *specific* breaches that Morgan Stanley believed had a "high probability" of existing, and the *specific* action that Morgan Stanley deliberately took in order to avoid learning of their existence. See Tiffany (NJ) Inc. v. eBay Inc., 600 F.3d 93, 110 (2d Cir. 2010) (that defendant "knew [of counterfeit sales] as a general matter" was not sufficient to establish willful blindness because plaintiff failed to identify specific sales). Deutsche Bank, however, presents no evidence at all regarding Morgan Stanley's subjective understanding of the probability that any loan contained a particular breach. Nor does it present any evidence of any deliberate action taken to avoid discovery of such breach.[12] Deutsche Bank's argument is merely another version of its "pervasive breach" or "inquiry notice" arguments under a different label. And like these other arguments, it fails because it cannot

12 (Opp'n at 30.) (Compare Shur Ex. 32 with Shur Ex. 33.) (R. 56.1 ¶ 149.)



eliminate the loan-by-loan nature of the contractual requirements and remedies.

**III.** [redacted]

A. [redacted]

[redacted] (See supra I.A). [redacted] (R. 56.1 ¶¶ 83-86, 110-13.) [redacted][13]

[redacted] In Iacobelli Construction, Inc. v. County of Monroe, 32 F.3d 19 (2d Cir. 1994), the Second Circuit concluded that the expert opinions at issue were sufficient because they "explain[ed] *in detail* . . . the general bases for their opinions" and "their affidavits consisted of *more than bare allegations* that the encountered conditions differed *materially* from the contract indications." Id. at 25 (emphases added). In B.F. Goodrich v. Betkoski, 99 F.3d 505 (2d Cir. 1996), the expert opinion was sufficient because "every conclusion in it is drawn with reference to *specific facts or explanations*" and "[i]t *explains*

[13] Judge Cote's credibility assessment of Mr. Hunter's trial testimony in FHFA v. Nomura Holding America, Inc., 104 F. Supp. 3d 441, 531 (S.D.N.Y. 2015), is irrelevant. The issue on this motion is not Mr. Hunter's experience or credibility, but rather that [redacted]

*precisely* what was reviewed and the general bases for his opinion." Id. at 526 (emphases added). And in each of those cases, the Court contrasted the opinions at issue from ones [redacted], which "simply state[ ] one-sentence conclusions, without providing background information or any hint of the underlying basis for these statements." Iacobelli, 32 F.3d at 25; accord B.F. Goodrich, 99 F.3d at 526.

B. [redacted] (R. 56.1 ¶¶ 109, 114.) This is contrary to the plain language of the contract, which requires "*a breach* . . . that materially and adversely affects the value of the interests of the Purchaser." (MS Br. at 27.) Deutsche Bank tries to sidestep the contract language by citing MARM IV (Opp'n at 32-33), but that case merely held that evidence of multiple breaches in the same loan could "strengthen[ ] and reinforce[ ]" a finding that a particular breach had a material and adverse effect. MARM IV, 205 F. Supp. 3d at 469. That does not mean the plain language of the contract, which requires a *particular* breach that is material (and an opportunity to cure "such breach") can be disregarded.

C. [redacted] (R. 56.1 ¶117-18),[14] [redacted] (Opp'n at 33-34 (quoting MARM IV, 205 F. Supp. 3d at 467).) [redacted]

---

[14] [redacted] (R. 56.1 ¶ 118.)



(R. 56.1 ¶ 118) (Weinstein Decl. Ex. GG at 242:4-244:1.) (Id. at 244:3-18.)

**IV. DEUTSCHE BANK MISCONSTRUES THE MEANING OF VARIOUS R&Ws**

A. Deutsche Bank Misapplies Section 10(b)(5) of the MLPA

Deutsche Bank has failed to present any evidence of a breach of MLPA § 10(b)(5). *First*, Section 10(b)(5) is subject to the express qualification that any alleged fraud, error, or negligence must have occurred on the part of Morgan Stanley or to its knowledge. Deutsche Bank has presented no evidence that Morgan Stanley reviewed any of the loans alleged to breach Section 10(b)(5), let alone had actual knowledge of those alleged breaches. See supra II.C.

*Second*, the vast majority of alleged breaches of Section 10(b)(5) are based on purported underwriting guideline violations, but by its plain terms the section does not represent that the loans complied with any specific underwriting guidelines. If it did, then the express representations by Accredited, Fremont, and WMC that their loans complied with guidelines would be rendered superfluous given that those originators also made representations like Section 10(b)(5). See TVT Records v. Island Def Jam Music Grp., 412 F.3d 82, 89 (2d Cir.

2005) (contracts in same transaction are construed together); Galli v. Metz, 973 F.2d 145, 149 (2d Cir. 1992) (no provision should be rendered superfluous). Deutsche Bank's reading of the contract would mean [REDACTED], but that the explicit guideline compliance representations are completely superfluous.[15] Deutsche Bank ignores the full context of the R&W, which relates to the validity of the mortgage documents and makes no reference to underwriting guidelines. (MS Br. at 32-33.) In context, there is no plausible way to construe Section 10(b)(5) as representing guideline compliance.[16]

B. The MLS Representation Is Not a No Fraud Representation

Deutsche Bank treats the MLS Representation as a "no fraud" representation, even though there is a separate, express "no fraud" representation in MLPA § 10(b)(5). (MS Br. at 31-33 & n.23.) Worse, that express "no fraud" representation only makes Morgan Stanley liable if it had "knowledge" of the fraud, whereas Deutsche Bank's interpretation of the MLS Representation would render Morgan Stanley liable for borrower fraud *regardless* of its "knowledge," thereby rendering the knowledge qualifier in Section 10(b)(5) worthless. Deutsche Bank has no answer to these problems with its interpretation, and fails to address them altogether.

Deutsche Bank's purported reliance on the "plain language" not only ignores that its interpretation is at odds with the contract read as a whole, but also ignores that the stock legal

---

[15] By contrast, the overlapping R&Ws in LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 206-07 (2d Cir. 2005), were deemed to have separate purposes and "independent weight." Deutsche Bank's other cases are completely inapposite. See Home Equity Mortg. Trust Series 2006-5 v. DLJ Mortg. Capital, Inc., 2014 WL 317838, at *7-8 (Sup. Ct. N.Y. Cty. Jan. 27, 2014) (rejecting argument that appraisal and CLTV breach claims should be dismissed because appraisals were non-actionable opinions); Nomura, 133 A.D.3d at 108 (concluding sole remedy clause did not apply to certain alleged breaches because contract provided that "remedies are cumulative").

[16] [REDACTED], but because the provision is unambiguous, such testimony is in all events irrelevant. See R/S Assocs. v. N.Y. Developmental Auth., 98 N.Y.2d 29, 33 (2002) ("[W]hen interpreting an unambiguous contract term '[e]vidence outside the four corners of the document . . . is generally inadmissible to add to or vary the writing.'"); Marin v. Constitution Realty, LLC, 128 A.D.3d 505, 509 (1st Dep't 2015) (expert affirmation "should not be considered" where "contract is unambiguous").

phrase "true and correct" means "[a]uthentic; accurate; unaltered." (See MS Br. at 35 (citing Black's Law Dictionary (10th ed. 2014)).) Thus, when the MLS Representation states that the information in the mortgage loan schedule is "complete, true and correct," it means that it completely and accurately, without alteration, reflects the information in the loan file. If it *also* meant that Morgan Stanley was assuming liability for borrower fraud, even if it had no knowledge of such fraud, this would completely gut the knowledge qualifier in MLPA § 10(b)(5). An interpretation that reconciles the various portions of a contract is to be favored over one that does not. Galli, 973 F.2d at 149. Deutsche Bank argues that some courts have accepted its interpretation of similar MLS representations, but other courts have not (MS Br. at 35), and in all events, the cases cited by Deutsche Bank either did not contain a separate "no fraud" representation with a knowledge qualifier, or else did not address how its interpretation of the MLS Representation could be squared with such a provision.

Finally, allegedly inaccurate DTI ratios do not breach the MLS Representation because "Mortgage Loan Schedule" is defined only as "[t]he schedule of Mortgage Loans setting forth the following information," which does not include DTI. (MLPA § 1). Deutsche Bank's argument [REDACTED]

[REDACTED]

seeks to change the plain meaning of the contract based on extrinsic evidence and violates the "fundamental principle of contract interpretation" that defined terms must be given effect. Mionis v. Bank Julius Baer & Co., 301 A.D.2d 104, 109 (1st Dep't 2002).

C. Deutsche Bank Misconstrues the LTV and Appraisal Representations

Claims based on Sections 10(b)(21) ( "LTV Representation") and 10(b)(20) ("Appraisal Representation") should also be dismissed. *First*, "Loan-to-Value Ratio" is defined as the loan

balance over the "Appraised Value," (MS Br. at 36-37.) Instead, it urges the Court to ignore the plain language because it would be "unreasonable" (Opp'n at 38.) This is a red herring. Morgan Stanley does not contend , but only that it cannot breach *this* R&W under the plain terms of the contract.

*Second*, the distinct Appraisal Representation clearly provides that each appraisal will satisfy "the requirements of Fannie Mae *or* Freddie Mac." (MLPA § 10(b)(20).) (Opp'n at 39), (R. 56.1 ¶¶ 89, 102.) (id. ¶¶ 100, 102),

**V. MORGAN STANLEY IS NOT RESPONSIBLE FOR ACCREDITED, FREMONT, OR WMC LOANS**

A. Deutsche Bank's Release of Accredited Extinguished Any Backstop Obligations

Deutsche Bank does not dispute that it released all claims against Accredited relating to the Accredited Loans. (Opp'n at 39.) Nor does it dispute that "[t]he general rule in New York is that a creditor's release of the principal debtor operates to discharge parties, such as guarantors,



who are only secondarily liable on a debt." (MS. Br. at 39.) Deutsche Bank suggests that this rule does not apply because "Morgan Stanley is not Accredited's guarantor or surety" (Opp'n at 40), but the First Department recently held that a materially identical provision created a "backstop guaranty obligation." WMC, 2017 WL 1946017, at *5. More importantly, WMC made clear that a secondary backstop obligation (like Morgan Stanley's) depends on the existence of a primary repurchase obligation (like Accredited's). Id. Because the plaintiff did not make a timely repurchase demand, the originator "had no repurchase obligation and [the sponsor] had no related backstop obligation." Id. In this case, it was Deutsche Bank's voluntary agreement that relieved Accredited of its repurchase obligations, but the result is the same: because Accredited "had no repurchase obligation," Morgan Stanley "had no related backstop obligation." Id. All claims relating to Accredited Loans must be dismissed.

B. MLPA § 10(b) Does Not Apply to Fremont and WMC Loans

Deutsche Bank appears to argue that Morgan Stanley is obligated to repurchase any Mortgage Loan, including Fremont and WMC Mortgage Loans, if they breach *any* representation in Section 10. (Opp'n at 40.) This is plainly mistaken. While it is undisputed that the sole remedy provision applies to all loans—because Morgan Stanley made certain representations about every loan in Section 10(a)—that cannot wipe out the plain language that limits the representations in Section 10(b) only to "MSMCH Represented Mortgage Loans," and not Fremont or WMC Loans. (MLPA § 10(b); R. 56.1 ¶ 31.) Therefore, while Deutsche Bank may seek repurchase of Fremont and WMC loans from Morgan Stanley if it could establish a breach of Section 10(a) (which it cannot, supra IV.B), Deutsche Bank cannot seek repurchase through proof of an alleged breach of Section 10(b)(5) or any other representation in MLPA § 10(b).

**CONCLUSION**

For the reasons stated above, defendant respectfully requests that this Court dismiss this action in its entirety with prejudice.

Dated: New York, New York
July 24, 2017

DAVIS POLK & WARDWELL LLP

By: /s/ Brian S. Weinstein

Brian S. Weinstein
Matthew Cormack
Craig T. Cagney

450 Lexington Avenue
New York, New York 10017
(212) 450-4000
brian.weinstein@davispolk.com
matthew.cormack@davispolk.com
craig.cagney@davispolk.com

Attorneys for Defendant