New York          Paris
Menlo Park        Madrid
Washington DC     Tokyo
São Paulo         Beijing
London            Hong Kong

# Davis Polk

**Brian S. Weinstein**

Davis Polk & Wardwell LLP       212 450 4972 tel
450 Lexington Avenue            212 701 5972 fax
New York, NY 10017              brian.weinstein@davispolk.com

January 8, 2018

Re:   Deutsche Bank National Trust Company, solely in its capacity as Trustee for the Morgan Stanley Structured Trust I 2007-1 v. Morgan Stanley Mortgage Capital Holdings LLC, No. 14 Civ. 3020 (KBF)

The Honorable Katherine B. Forrest
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

Dear Judge Forrest:

We represent defendant Morgan Stanley Mortgage Capital Holdings LLC ("Morgan Stanley") in the above-captioned matter and write in response to the Court's request for "the parties' views as to whether certain legal developments may/may not have rendered Judge Swain's decision to dismiss Count Three of the complaint (alleging failure to notify) incorrect." Dec. 19, 2017 Order at 3 [Dkt. No. 138].

Judge Swain's conclusion that "the notice/cure/repurchase protocol is remedial and cannot constitute a basis for an independent breach separate and apart from the alleged underlying breaches of representations and warranties" remains the proper view of New York law. Apr. 3, 2015 Mem. Op. & Order at 13 [Dkt. No. 47] ("MTD Op.") (citation omitted). The Court of Appeals has *never* recognized an independent claim based on an alleged breach of that remedial protocol, either with respect to its notification component or its cure/repurchase component. To the contrary, in ACE Securities Corp. v. DB Structured Products, Inc., 25 N.Y.3d 581 (2015) ("ACE"), the Court of Appeals held that an alleged breach of the cure/repurchase obligation, which is "dependent on, and indeed derivative of, [the] representations and warranties," does not give rise to an independent cause of action. Id. at 595. As judges of this Court and other courts have held, the Court of Appeals' reasoning in ACE also applies to failure to notify claims; the notification portion of the remedial protocol inherently accompanies and goes hand in hand with the duty to cure/repurchase, and like the duty to cure/repurchase, is dependent on and derivative of the underlying alleged breaches of representations and warranties. The First Department's decision recognizing an independent claim for failure to notify in Nomura Home Equity Loan Inc., Series 2006-FM2 v. Nomura Credit & Capital, Inc., 133 A.D.3d 96 (1st Dep't 2015) ("Nomura I"), rev'd in part on other grounds, 2017 N.Y. Slip Op. 08622 (Dec. 12, 2017) ("Nomura II"), and the subsequent cases adopting this holding, never explained how they purported to reconcile this decision with ACE, much less why this is the

better view of New York law in light of ACE.  In fact, the Court of Appeals' reasoning in ACE supports Judge Swain's holding and those of other courts that have held that the notice obligation is part of the remedial framework and not a basis for an independent claim.  This Court is not bound by the First Department's decision in Nomura I and Morgan Stanley respectfully submits that it should reach the same conclusion regarding failure to notify claims reached by other judges of this Court who have found such claims to be at odds with ACE.

In any event, even if there were a separate claim for failure to notify, the reinstatement of that claim would not impact Morgan Stanley's pending summary judgment motion.  To the contrary, discovery has established that a reinstated failure to notify claim would be subject to dismissal on summary judgment.  Deutsche Bank has failed to adduce any evidence that Morgan Stanley actually discovered any breaches in particular loans that would give rise to such a notice obligation.  As Deutsche Bank has repeatedly admitted in other litigations, the notice/cure/repurchase obligations, by their express contractual terms, require actual, loan-specific knowledge of breaches in particular loans.  Deutsche Bank has adduced no evidence that Morgan Stanley had actual knowledge of breaches in particular loans.  See Morgan Stanley's Mem. in Supp. of Mot. for Summ. J. at 15-19 [Dkt. No. 112] ("MS Mem."); Morgan Stanley's Reply Mem. in Supp. of Mot. for Summ. J. at 11-14 [Dkt. No. 124] ("MS Reply").

Furthermore, any failure to notify claims—like all of Deutsche Bank's representation and warranty claims—would be time barred under CPLR 202 and California's four-year statute of limitations.  See Deutsche Bank Nat'l Tr. Co. v. Barclays Bank PLC, No. 651338/13, 2017 WL 6001819, at *2 (N.Y. App. Div. 1st Dep't Dec. 5, 2017) ("Barclays").

For all these reasons, defendant respectfully submits that the Court should not reinstate the failure to notify claims that Judge Swain correctly dismissed.  Even if they had not been dismissed, Morgan Stanley would still be entitled to summary judgment on those and all other claims.

**Standard of Review**

The law of the case doctrine "expresses the practice of courts generally to refuse to reopen what has been decided."  N. River Ins. Co. v. Phila. Reins. Corp., 63 F.3d 160, 164 (2d Cir. 1995) (quoting Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817 (1988)); see also Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ., 397 F.3d 77, 94 (2d Cir. 2005) ("Under the 'law of the case' doctrine, 'courts are understandably reluctant to reopen a ruling once made,' especially 'when one judge or court is asked to consider the ruling of a different judge or court.'" (citation omitted)).  Under this doctrine, "[a] court should be 'loathe' to revisit an earlier decision 'in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice,'" N. River Ins. Co., 63 F.3d at 165 (quoting Christianson, 486 U.S. at 817), or "where a fundamental change in the governing law impacts directly upon the parties' rights and obligations," id. (quoting N. River Ins. Co. v. Phila. Reins. Corp., 856 F. Supp. 850, 855 (S.D.N.Y. 1994)).  Moreover, "the law of the case should be 'disregarded only when the court has a clear conviction of error'"; "'[m]ere doubt . . . is not enough to open the point for full reconsideration.'"  Id. (quoting Fogel v. Chestnutt, 668 F.2d 100, 109 (2d Cir. 1981)).

**Argument**

I.  **Nothing Warrants Disturbing Judge Swain's Decision**

   A.  **Judge Swain's Decision Was Correct, But In All Events, Not Clearly Erroneous**

In dismissing Deutsche Bank's failure to notify claims, Judge Swain relied on the well-established rule that "New York law . . . does not recognize pre-suit remedial provisions as constituting separate promises which can serve as the basis for independent causes of action." MTD Op. at 13-14 (quoting Lehman XS Tr., Series 2006-4N v. GreenPoint Mortg. Funding Inc., 991 F. Supp. 2d 472, 478 (S.D.N.Y. 2014)); accord ACE Sec. Corp. Home Equity Loan Tr. Series 2007-HE3 v. DB Structured Prods., 5 F. Supp. 3d 543, 552 (S.D.N.Y. 2014). The Court of Appeals has *never* ruled otherwise. Quite the contrary, in ACE, it confirmed that the repurchase protocol, which includes the notice requirement, is a remedial provision that does not give rise to an independent cause of action.

In ACE, as here, the trustee of an RMBS transaction sought repurchase of mortgage loans that allegedly breached representations and warranties made about the loans on the transaction's closing date. ACE, 25 N.Y.3d at 589. Although the complaint was filed more than six years after the closing date, plaintiff argued that its claims were timely because they sought damages for the sponsor's failure to cure or repurchase the allegedly breaching loans—an allegedly independent breach. Id. at 594. The Court of Appeals rejected this argument, holding that the relevant breach accrued on the date the representations and warranties were made and defendant's "refusal to repurchase the allegedly defective mortgages did not give rise to a separate cause of action." Id. at 589. Because the sponsor had not guaranteed the future performance of the loans, the "cure or repurchase obligation could not reasonably be viewed as a distinct promise of future performance." Id. at 595. Rather, "*[i]t was dependent on, and indeed derivative of, [defendant's] representations and warranties*, which did not survive the closing and were breached, if at all, on that date." Id. (emphasis added). Indeed, "the underlying *act* the Trust complains of is the same: the quality of the loans and their conformity with the representations and warranties." Id. at 596 (emphasis in original). The Court rejected plaintiff's argument that "the cure or repurchase obligation transformed a standard breach of contract remedy, i.e. damages, into one that lasted for the life of the investment—decades past the statutory period" because "nothing in the parties' agreement evidences such an intent." Id. at 596-97.[1]

This same rationale applies to the notice obligation. Like the cure/repurchase obligation, the notice obligation is "dependent on, and indeed derivative of" an underlying breach of

---

[1] ACE distinguished Bulova Watch Co. v. Celotex Corp., 46 N.Y.2d 606 (1979), a case involving a contract for the sale of a roof, because "[t]he remedial clause in Bulova Watch expressly guaranteed *future* performance of the roof and undertook a promise to repair the roof if it did not satisfy the seller's guarantee." ACE, 25 N.Y.3d at 595 (emphasis in original). The defendant's failure to repair the roof therefore resulted in a breach of the defendant's express guarantee that the roof would continue to perform for the next 20 years. Id. ACE contrasted this promise of future performance of the roof with an RMBS contract, which does not contain "a promise of the loans' future performance," id., but "merely warrants certain characteristics of the loans, and promises that if those warranties and representations are materially false, it will cure or repurchase the non-conforming loans within the same statutory period in which remedies for breach of contract (i.e., rescission and expectation damages) could have been sought," id. at 596. In other words, the cure/repurchase obligation is merely a remedy for any breach of the representations and warranties that existed on the closing date, and not an independent undertaking that guarantees the future performance of the loans. The same conclusion applies to the duty to notify, which is inherently a part of the same remedial protocol.

representations and warranties. Indeed, the notice obligation inherently accompanies and goes hand in hand with the cure/repurchase obligation, as part of the overall remedial framework. See R. 56.1 ¶ 36 ("[T]he party discovering or receiving notice of such breach shall give prompt written notice to the others. In the case of any such breach of a representation or warranty set forth in this Section 10, within 90 days from the date of discovery by MSMCH, or the date MSMCH is notified by the party discovering or receiving notice of such breach (whichever occurs earlier), MSMCH will, (i) cure such breach in all material respects, [or] (ii) purchase the affected Mortgage Loan at the applicable Purchase Price . . . .").[2]

Accordingly, after the Court of Appeals decided ACE, courts applying that decision correctly concluded that it foreclosed an independent failure to notify claim. In FHFA v. WMC Mortgage, LLC, No. 13 Civ. 584, 2015 WL 9450833 (S.D.N.Y. July 10, 2015), another repurchase action brought by Deutsche Bank, Judge Hellerstein held:

> Plaintiff argue[s] that their second cause of action, which alleges that WMC breached their duty to notify Deutsche Bank and the other parties to the PSA upon discovery of breaches of the representations and warranties, is a separate duty whose statute of limitations is not covered by the decision in ACE. While Plaintiff is correct that the holding of ACE does not squarely address a duty to notify claim, which was not at issue therein, the Court of Appeals' reasoning encapsulates this second cause of action. The Court stated that the "cure or repurchase obligation could not reasonably be viewed as a distinct promise of future performance. It was dependent on, and indeed derivative of, [the defendant's] representations and warranties." ACE[, 25 N.Y3d at 595]. The same is true for the duty to notify—it was an obligation dependent on and derivative of the representations and warranties. See PSA at § 2.03(c) ("Upon discovery by [WMC or the other parties] of a *breach of any of the foregoing representations and warranties*, the party discovering such breach shall give prompt written notice to the others.") (emphasis added). This duty went hand-in-hand with the duty to cure/repurchase, which is in the immediately following section. See PSA at § 2.03(d).
>
> The opposite result, which Plaintiff urges I reach, would be illogical. If the duty to cure or repurchase, which is the sole remedy available for a breach of the representations and warranties, expired after the six-year statute of limitations period had run, an ongoing duty to notify which lasted for the lifetime of the mortgages would yield no relief for the aggrieved parties.

Id. at *3-4 (internal citations omitted); see also Bank of N.Y. Mellon v. WMC Mortg. LLC, No. 12 Civ. 7096, 2015 WL 4164691, at *2 n.3 (S.D.N.Y. July 10, 2015) (Cote, J.) ("The failure to notify claim may be barred by the recent New York Court of Appeals decision in [ACE]."); Bank of N.Y. Mellon v. WMC Mortg., LLC, 17 N.Y.S.3d 613, 617-18 (Sup. Ct. N.Y. Cty. 2015) ("After ACE, the notion that a separate failure to notify claim is viable should be put to rest."), aff'd in part and rev'd in part, 151 A.D.3d 72 (1st Dep't 2017); see generally Deutsche Bank Nat'l Tr. Co. v. Quicken Loans Inc., 810 F.3d 861, 869 (2d Cir. 2015) (construing "purported failure to notify the Trustee promptly of material defects" as part of single breach of contract claim, which accrued, under ACE, at the time the representations and warranties were made).

---

[2] "R. 56.1" refers to Defendant's Local Civil Rule 56.1 Reply Statement of Undisputed Material Facts [Dkt. No. 125] submitted in connection with Morgan Stanley's summary judgment motion.

### B. Nomura I and Its Progeny Are Not an Intervening Change of Controlling Law

The First Department reached a different conclusion in Nomura I, but without addressing ACE or offering any rationale for its decision to recognize an independent claim for failure to notify. Because the Court of Appeals has never recognized such a claim, this Court is not "strictly bound" to follow the holdings in Nomura I and its progeny unless it concludes that they are "helpful indicators" of how the Court of Appeals would rule and that there is no "persuasive data" that the Court would "decide otherwise." Reddington v. Staten Island Univ. Hosp., 511 F.3d 126, 133 (2d Cir. 2007) (quoting DiBella v. Hopkins, 403 F.3d 102, 112 (2d Cir. 2005)). Here, there is very "persuasive data"—in the form of the ACE decision—that the Court of Appeals would reject an independent failure to notify claim, and no reason to believe it would follow the First Department's unelaborated and unpersuasive decision to recognize such a claim.

Nomura I involved four coordinated appeals between the same parties raising a host of overlapping issues. In a single sentence, without elaboration, the First Department stated in its decision that "the court erred in not allowing plaintiffs to pursue damages for defendant's failure to give prompt written notice after it discovered material breaches of the representations and warranties." Nomura I, 133 A.D.3d at 108. Subsequent First Department panels bound by that holding later repeated it, but without offering any justification for the First Department's original decision to recognize such a claim, and without explaining why this decision was the correct view under New York law notwithstanding ACE. See Morgan Stanley Mortg. Loan Tr. 2006-13ARX v. Morgan Stanley Mortg. Capital Holdings LLC, 143 A.D.3d 1, 3 (1st Dep't 2016) ("13ARX"); Bank of N.Y. Mellon v. WMC Mortg., LLC, 151 A.D.3d 72, 81 (1st Dep't 2017) ("BONY").

One state court, which was obligated to apply these precedents, did so reluctantly while openly questioning their consistency with ACE. In Bank of New York Mellon v. WMC Mortgage, LLC, 39 N.Y.S.3d 892 (Sup. Ct. N.Y. Cty. 2016), Justice Kornreich, while bound to apply the First Department's precedents, noted that "[a]rguably, under ACE, . . . all notification obligations set forth in the repurchase protocol should be considered part of the repurchase remedy and not give rise to independent causes of action." Id. at 900 n.10. She further noted that, if failure to notify claims were viewed as triggering a new statute of limitations, this would be "a major backdoor to ACE. That possibility is difficult to reconcile with ACE, and is best left to the Appellate Division to resolve." Id. at 902 n.12. The First Department, however, has never addressed these discrepancies.

To the contrary, in BONY, when the First Department finally addressed whether an independent failure to notify claim was consistent with ACE, it only concluded that plaintiff's failure to notify claim against the *servicer*—the only cause of action at issue on appeal[3]—did not "contravene the Court of Appeals' decision in ACE" because it was asserted against a servicer, not a sponsor like the defendant in ACE. BONY, 151 A.D.3d at 81. Specifically, the First Department noted that ACE "held that *the sponsor's* obligation to repurchase purportedly defective loans was the remedy for the sponsor's breach of its warranties, rather than an independently enforceable right," and reasoned that "[t]his holding does not bar JPM Bank's obligation as *servicer* because *the servicer is not subject to the repurchase protocol at all*" and therefore "that protocol cannot bar a cause of action against it for an independent duty to notify." Id. (emphasis added). Where, as here, the defendant is a sponsor obligated to remedy

---

[3] Plaintiff in BONY did not appeal the dismissal of its failure to notify claim against the sponsor, and the First Department did not reinstate that claim. See BONY, 151 A.D.3d at 76 (noting that failure to notify claim was alleged against both sponsor and servicer, but "reinstating [that] cause of action only as against [the servicer]").

underlying breaches by notifying the trustee and then repurchasing/curing the breaching loans, the reasoning of ACE supports the conclusion that these remedial obligations do not give rise to an independent cause of action, as several courts have correctly held.

In sum, the Court of Appeals has *never* recognized an independent failure to notify claim, and its reasoning in ACE suggests, at a minimum, that it is more likely than not that it would decline to do so. Nomura I and its progeny offer no persuasive reason—indeed, no reason at all—for concluding otherwise. Accordingly, these First Department decisions are not binding on this Court. See Reddington, 511 F.3d at 133. They do not constitute an "intervening change of controlling law" that merits revisiting Judge Swain's well-reasoned decision. Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992).

### C. Declining to Revisit Judge Swain's Decision Would Not Result in Manifest Injustice

Nor is it necessary to revisit Judge Swain's decision to avoid any manifest injustice. Deutsche Bank cannot credibly claim that there would be any injustice in letting Judge Swain's decision stand now, when it never sought relief from that decision for more than *two years* since Nomura I was decided. If Deutsche Bank believed Nomura I was a binding change in the law, it could have brought a motion for reconsideration in 2015, in the months after Judge Swain issued her original decision and while discovery was just beginning. Deutsche Bank had new opportunities to seek reconsideration after the First Department decided 13ARX—which Deutsche Bank's counsel litigated—in 2016 and BONY in 2017, but it took no action based on those decisions either. Quite the contrary, Deutsche Bank cited Nomura I and 13ARX extensively in opposing Morgan Stanley's motion for summary judgment, without ever suggesting that these decisions provided a basis for reinstating its failure to notify claims, or that such claims could result in any damages not covered by its claims for breach of representations and warranties. See Deutsche Bank Mem. in Opp. to Mot. for Summ. J. [Dkt. No. 120]. Indeed, given that the notice obligation, like the cure/repurchase obligation, is loan-specific, see MS Mem. at 15-19; MS Reply at 5-7, it would not appear that there are any additional damages Deutsche Bank could seek in connection with any such claim.

## II. Any Failure to Notify Claims Would Be Meritless In Any Event

Even if the failure to notify claims were reinstated, they would have no impact on Morgan Stanley's pending motion for summary judgment. Morgan Stanley would still be entitled to summary judgment on all claims, including any failure to notify claims.

### A. There Is No Evidence That Morgan Stanley Actually Discovered Any Loan-Specific Breaches and Then Failed to Provide Notice

Even if, despite ACE, New York law recognized Deutsche Bank's failure to notify claims, such claims would fail as a matter of law because there is no evidence that Morgan Stanley—which, indisputably, had no obligation to look for breaches—actually discovered any breaches of representations and warranties in any particular loans. Morgan Stanley's obligation to provide notice arises "[u]pon discovery" of a breach. R. 56.1 ¶¶ 36, 45. As explained in Morgan Stanley's memoranda of law in support of its motion for summary judgment, the repurchase protocol is inherently loan-specific, and therefore "discovery," within the meaning of the governing contract, requires actual knowledge of breaches in individual loans so that Morgan Stanley knows which loans to cure or repurchase, and about which breaches it should notify the other parties. See MS Mem. at 15-19; MS Reply at 5-7, 11-14. Deutsche Bank has repeatedly admitted in other litigations where it was a defendant that, under indistinguishable contractual

language, *actual* knowledge, on a *loan-specific* basis, is necessary before any notice/cure/repurchase obligations can arise. See Weinstein Decl. Ex. Q at 21 ("The RMBS Trustee's duty, if any, to give notice of, or enforce, a Warrantor's R&W breach arises only upon the RMBS Trustee's actual knowledge of that breach."); Weinstein Decl. Ex. O at 29 ("These cure obligations [of the Warrantors] are triggered by the same 'discovery' of an R&W breach that triggers any alleged obligation by the Indenture Trustee to act, and cannot be enforced without specific information about the particular offending mortgage loan."); R. 56.1 ¶ 56 ("Both the language and the structure of the [Governing Agreements] necessarily require that *both* the breach, *and* the *knowledge* of the breach, of an R&W be at the single mortgage loan level." (emphasis in original)); R. 56.1 ¶ 57 ("[W]here a governing agreement 'contain[s] specific representations about particular sets of Mortgage Loans,' a party has knowledge of a breach only if it has 'actual, specific knowledge of the falsity of . . . particular statements.'"); R. 56.1 ¶ 58 ("'[B]ecause the Agreements contain a *loan-specific* . . . remedy,' Plaintiffs 'cannot save [their] claim[s] by arguing that [Defendants were] *generally* aware of 'pervasive breaches' of R&Ws' or other contractual obligations." (emphasis in original)).[4]

Deutsche Bank, however, has failed to adduce any evidence that Morgan Stanley had actual knowledge of alleged breaches in any particular loans here. See MS Mem. at 19; MS Reply at 11-14. Morgan Stanley would therefore be entitled to summary judgment on any failure to notify claims. See U.S. Bank, Nat'l Ass'n v. UBS Real Estate Sec. Inc., 205 F. Supp. 3d 386, 476 (S.D.N.Y. 2016) (plaintiff cannot demonstrate discovery "unless the loan is identified"); Royal Park Inv. SA/NV v. HSBC Bank USA, Nat'l Ass'n, 109 F. Supp. 3d 587, 603 (S.D.N.Y. 2015) ("If, after discovery, plaintiffs cannot prove that HSBC had actual knowledge regarding the loans at issue here, HSBC may move for summary judgment."); Fixed Income Shares: Series M v. Citibank N.A., 130 F. Supp. 3d 842, 851 (S.D.N.Y. 2015) (requiring "loan-specific evidence to prevail at trial or on summary judgment"); ACE Sec. Corp. Home Equity Loan Tr., Series 2007-HE3, 5 F. Supp. 3d at 560 (discovery must be proven "loan-by-loan" after motion to dismiss).

### B. Any Failure to Notify Claims Fail For All the Other Reasons Set Forth in Morgan Stanley's Motion for Summary Judgment

Morgan Stanley's remaining arguments in favor of summary judgment would also apply equally to any failure to notify claim, even if such a claim existed and even if Deutsche Bank had adduced any evidence supporting such a claim.

First, any failure to notify claim would be subject to the sole remedy clause, and thus Deutsche Bank's claims would be limited, at most, to the individual loans in its sample for which it purports to have provided loan-by-loan evidence of breaches. The sole remedy provision here provides that "[t]he obligations of MSMCH to cure, purchase or substitute . . . shall constitute the Purchaser's, the Trustee's and the Certificateholder's sole and exclusive remedy under this Agreement or otherwise *respecting a breach of representations and warranties*." R. 56.1 ¶ 38 (emphasis added). Under New York law, "'[r]especting' has a broader connotation than 'arising out of,'" and it therefore encompasses claims that "relate to and are concerned with" a breach of a representation or warranty. Flanagan v. Prudential-Bache Sec., Inc., 67 N.Y.2d 500, 509 (1986); see also Coregis Ins. Co. v. Am. Health Found., Inc., 241 F.3d 123, 128-29 (2d Cir. 2001) (courts have interpreted "with respect to" and "relating to" as "synonymous," and "broader in scope than the term 'arising out of'"). A failure to notify claim, which cannot exist without an

---

[4] "Weinstein Decl. Ex." refers to the exhibits attached to the Declaration of Brian S. Weinstein dated May 8, 2017 [Dkt. No. 114].

underlying breach of the representations and warranties, is necessarily a claim "respecting" or "concerning" a breach of representations and warranties.

Moreover, the Court of Appeals' recent decision in Nomura II further supports the conclusion that the sole remedy provision would apply to failure to notify claims, even if the Court were to conclude—despite ACE—that such independent claims exist.[5] Nomura II involved a claim for general contract damages based on an alleged breach of the "No Untrue Statement Provision" in Section 7 of the parties' agreement, which was based on allegations that the loan pool contained pervasive breaches of the representations and warranties in Section 8. Nomura II, 2017 N.Y. Slip Op. 08622 at *1. The trial court had dismissed the "No Untrue Statement" claim, but the First Department reinstated it on the ground that the sole remedy clause at issue only applied to breaches of the representations and warranties in Section 8, and not to the alleged breach of Section 7. Id. at *3. The Court of Appeals reversed because it was "readily apparent from the face of the complaints that the alleged breaches of the No Untrue Statement Provision [in Section 7] are, in fact, based upon alleged breaches of the Mortgage Representations" in Section 8. Id. at *5. The Court concluded that the trustee "cannot 'subvert th[e] exclusive remedies limitation' of liability by simply re-characterizing its claims" as a separate breach of contract. Id. (quoting Westmoreland Coal Co. v. Entech, Inc., 100 N.Y.2d 352, 359 (2003)). Therefore, "the Sole Remedy Provision applies, precluding HSBC from seeking general contract damages for the particular claims challenged on this appeal." Id.

Because an alleged breach of the notice obligation is also "based upon" breaches of the representations and warranties, Nomura II's rationale also would require the rejection of any attempt to obtain general contract damages based on plaintiff's attempts to "re-characterize" the failure to notify claims as a separate breach of contract. See id. Like the sole remedy clause here, the sole remedy clause at issue in Nomura II provided that "the obligations . . . to cure or repurchase a defective Mortgage Loan . . . constitute the *sole remedies . . . respecting . . . a breach of the representations and warranties* contained in [S]ection 8." Id. at *2 (emphasis added). Nomura II concluded that this sole remedy provision applied to an allegedly separate breach of Section 7 that was "based upon" breaches of the representations and warranties in Section 8. Id. at *5. Thus, to the extent the First Department has held that "claims for failure to notify were not claims 'respecting a warranty breach' subject to the 'sole remedy' clause," BONY, 151 A.D.3d at 81, that holding is at odds with the reasoning of the Court of Appeals in Nomura II.

The other arguments in Morgan Stanley's summary judgment motion likewise apply to any putative failure to notify claim, including the arguments relating to materiality and to Deutsche Bank's flawed interpretations of various representations and warranties, and any such claim would fail for the same reasons. See MS Mem. at 24-38; MS Reply at 14-19.

Finally, any failure to notify claims could not make Morgan Stanley responsible for the separate representations and warranties made by Accredited, Fremont, or WMC. Deutsche Bank voluntarily settled and released all of its repurchase claims against Accredited, "whether [they were] now known or hereinafter known, that DB ever had, may have had or may have." R. 56.1 ¶ 127. This broad release clearly encompassed *any* repurchase claims Deutsche Bank may have had, regardless of its knowledge of them, and necessarily included any repurchase claims that Morgan Stanley allegedly discovered and about which it allegedly failed to notify Deutsche Bank. Accordingly, Morgan Stanley is entitled to summary judgment on those loans

---

[5] Nomura II did not affirm Nomura I's failure to notify ruling because that issue was not raised on appeal. See Nomura II, 2017 N.Y. Slip Op. 08622 at *6 (modifying and affirming order "insofar as appealed from").

because Deutsche Bank cannot prove any damages resulting from Morgan Stanley's alleged failure to provide notice. See Milan Music, Inc. v. Emmel Commc'ns Booking, Inc., 37 A.D.3d 206, 206 (1st Dep't 2007) ("Without a clear demonstration of damages, there can be no claim for breach of contract."). And as explained in Morgan Stanley's motion for summary judgment, Deutsche Bank has failed to present evidence of any breaches relating to WMC or Fremont loans because those loans were not represented to comply with the representations and warranties in Section 10(b) of the MLPA. See MS Mem. at 40; MS Reply at 20. A failure to notify claim relating to such loans would fail for the same reason, because absent discovery of a breach, there is no duty to notify.[6]

### C. Deutsche Bank's Claims Are Barred By California's Four-Year Statute of Limitations

Any failure to notify claims are untimely because Deutsche Bank—which invoked this Court's diversity jurisdiction based on its California residency and citizenship—must comply with California's four-year statute of limitations for contract claims. See Barclays, 2017 WL 6001819, at *1-2. Its complaint, filed more than four years after the securitization closed, is untimely.

Under CPLR 202, if the plaintiff is a non-resident, "[a]n action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued." See also Thea v. Kleinhandler, 807 F.3d 492, 497-98 (2d Cir. 2015) (holding that New York federal courts must apply CPLR 202 in diversity cases). In Global Financial Corp. v. Triarc Corp., 93 N.Y.2d 525 (1999), the Court of Appeals held that "[w]hen an alleged injury is purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss." Id. at 529. Here, it is undisputed that Deutsche Bank is a resident of California. See Compl. ¶ 6 [Dkt. No. 2]. That alone is sufficient reason to conclude that any injury was suffered in California. See Glob. Fin. Corp., 93 N.Y.2d at 530 ("CPLR 202 is designed to add clarity to the law and to provide the certainty of uniform application to litigants. This goal is better served by a rule requiring the single determination of a plaintiff's residence than by a rule dependent on a litany of events relevant to the 'center of gravity' of a contract dispute."); accord Barclays, 2017 WL 6001819, at *1 (concluding that injury was felt in California regardless of whether the "plaintiff-residence rule" or a "multi-factor test" applied).

Although there is no need to look beyond Deutsche Bank's residency, the other facts considered in Barclays also point to California as the place of injury. See Barclays, 2017 WL 6001819, at *1. Deutsche Bank administers this Trust in Santa Ana, California, Compl. ¶ 6 [Dkt. No. 2]; the mortgage loans were originated predominantly by either California-based lenders or lenders with substantial operations in California; more of the loans encumbered properties in California than in any other state; and Deutsche Bank, as custodian, holds most of the mortgage notes in California.[7] Morgan Stanley can provide publicly available information from SEC filings demonstrating these points if it would be helpful to the Court, in addition to supplemental briefing.

---

[6] Deutsche Bank has not established that any WMC or Fremont loans breach Section 10(a) of the MLPA because it misconstrues the MLS Representation. See MS Mem. at 33-36; MS Reply at 17-18.

[7] Nor is there any other state where the injury could have been felt. The Court of Appeals has expressly rejected arguments that New York is the place of injury simply because it was "where the contract was negotiated, executed, substantially performed and breached," or because "the parties in their contract chose the forum and law of New York." Glob. Fin. Corp., 93 N.Y.2d at 528, 530. Moreover, the residence of the dispersed

California has a four-year statute of limitations for breach of contract actions, Cal. Code Civ. Prac. § 337, which begins to run "at the time of breach," Menefee v. Ostawari, 278 Cal. Rptr. 805, 809 (Ct. App. 1991). Any claim based upon a breach of the representations and warranties accrued on the closing date of July 6, 2007. See Barclays, 2017 WL 6001819, at *2. It is undisputed that Deutsche Bank filed its complaint more than four years later. See R. 56.1 ¶ 67.

Under ACE, any failure to notify claims accrued at the same time as the breach of representation and warranty claims. ACE held that a breach of any obligation that is dependent on and derivative of the representations and warranties accrues at the time the representations and warranties were made. See ACE, 25 N.Y.3d at 595-96; see also Quicken Loans, Inc., 810 F.3d at 869 (breach of contract claim, including allegations of failure to notify, accrued at time of closing); FHFA, 2015 WL 9450833, at *3-4 (allegedly independent failure to notify claim accrued at time of closing). While the First Department has recognized an independent failure to notify claim permitting a plaintiff to seek separate damages, it has *never* held that this "independent" claim accrues at a different time than the underlying breach of representations and warranties. Cf. Bank N.Y. Mellon, 39 N.Y.S.3d at 902 n.12 (describing "possibility" of a separate accrual date as "a major backdoor to ACE"). To the contrary, it has suggested that a failure to notify claim accrues at the same time as the underlying claim for breach of representations and warranties. See U.S. Bank Nat'l Ass'n v. GreenPoint Mortg. Funding, Inc., 147 A.D.3d 79, 85 (1st Dep't 2016) ("Regardless of when GreenPoint discovers a breach or is notified of the nonconforming mortgage, the breach of contract cause of action accrues on the date of the closing of the underlying transaction, which is when the representations and warranties were made.").[8] ACE is the controlling authority on this issue. Deutsche Bank's failure to notify claims are therefore untimely under California's four-year statute of limitations.

Finally, even if an independent "failure to notify" claim existed and could accrue at some point after the representations and warranties were made—notwithstanding ACE—Deutsche Bank has adduced no evidence of any discovery by Morgan Stanley of alleged breaches in any particular loans that is alleged to have occurred for the first time within four years prior to the filing of the complaint. See MS Mem at 15-19; MS Reply at 11-14.

\*     \*     \*     \*     \*

For the foregoing reasons, Morgan Stanley respectfully submits that Judge Swain correctly dismissed Deutsche Bank's failure to notify claims and there is no reason to revisit her decision. Even if the claims were reinstated, however, Morgan Stanley would be entitled to summary judgment on those and all other claims.

Respectfully submitted,

/s/ Brian S. Weinstein
Brian S. Weinstein
Craig T. Cagney
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017

cc:   Counsel of Record (via ECF)

---

certificateholders is not only unworkable, but "irrelevant to the analysis because such certificates are not part of the trust corpus." Barclays, 2017 WL 6001819, at *1 n.4.

[8] Litigation concerning this issue is *sub judice* before Justice Friedman in the Commercial Division. In re Part 60 RMBS Put-Back Litig., No. 777000/2015 (Sup. Ct. N.Y. Cty. fully briefed Apr. 27, 2017) (Mot. Seq. No. 004).