# Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION – FIRST DEPARTMENT

NOMURA HOME EQUITY LOAN, INC., SERIES 2007-3, by HSBC BANK USA, NATIONAL ASSOCIATION, solely in its capacity as Trustee,

        Plaintiff-Respondent/
        Cross-Appellant,

-against-

NOMURA CREDIT & CAPITAL, INC.,

        Defendant-Appellant/
        Cross-Respondent.

Index No. 651124/13

---

NOMURA HOME EQUITY LOAN, INC., SERIES 2006-FM2, by HSBC BANK USA, NATIONAL ASSOCIATION, solely in its capacity as Trustee,

        Plaintiff-Respondent/
        Cross-Appellant,

-against-

NOMURA CREDIT & CAPITAL, INC.,

        Defendant-Appellant/
        Cross-Respondent.

Index No. 653783/12

NOMURA HOME EQUITY LOAN, INC., HOME
EQUITY LOAN TRUST, SERIES 2007-2, by HSBC
Bank USA National Association, as Trustee

        Plaintiff-Appellant/
        Cross-Respondent,

    -against-

NOMURA CREDIT & CAPITAL, INC.,

        Defendant-Respondent/
        Cross-Appellant.

Index No. 650337/13

NOMURA ASSET ACCEPTANCE
CORPORATION, MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2006-AF2 TRUST, by
HSBC Bank USA, National Association, as Trustee,

        Plaintiff-Appellant-
        Cross-Respondent,

    -against-

NOMURA CREDIT & CAPITAL, INC.,

        Defendant-Respondent-
        Cross-Appellant.

Index No. 652614/12

## NOTICE OF MOTION FOR LEAVE
## TO APPEAL TO THE COURT OF APPEALS

Please take notice that, upon the accompanying affirmation of Agnès Dunogué and the exhibits attached thereto, and upon all of the pleadings, papers, and proceedings heretofore in these actions, Defendant Nomura Credit & Capital, Inc. ("Nomura") shall move this Court on December 1, 2015 at 10:00 a.m., or as soon thereafter as counsel may be heard, at the Appellate Division, First Department Courthouse, 27 Madison Avenue, New York, New York 10010, for an order pursuant to CPLR § 5602(b), granting leave for Nomura to appeal to the Court of Appeals the holdings of the Court's October 13, 2015 Decision and Order which reversed the IAS Court's dismissal of the causes of action and claims based on alleged breaches of the No Untrue Statement Provision[1]—by (i) modifying the IAS Court's orders to deny Defendant's motion to dismiss the third causes of action in each of *Nomura Home Equity Loan, Inc., Series 2006-FM2, by HSBC Bank USA, National Association, solely in its capacity as Trustee v. Nomura Credit & Capital, Inc.*, No. 653783/12 ("2006-FM2"), and *Nomura Home Equity Loan, Inc., Series 2007-3, by HSBC Bank USA, National Association, solely in its capacity as Trustee v. Nomura Credit & Capital, Inc.*, No. 651124/13 ("2007-3"), and (ii) modifying the IAS Court's orders to deny Defendant's motion to dismiss

---

[1] Capitalized terms used in this Notice but not defined herein shall have the meanings ascribed to them in the Affirmation.

claims for damages (on the first cause of action) for breach of the No Untrue Statement Provision (Section 7 of the Mortgage Loan Purchase Agreement) in each of *Nomura Home Equity Loan, Inc., Home Equity Loan Trust Series 2007-2, by HSBC Bank USA, National Association, as Trustee v. Nomura Credit & Capital, Inc.*, No. 650337/13 ("*2007-2*"), and *Nomura Asset Acceptance Corporation Mortgage Pass-Through Certificates, Series 2006-AF2, by HSBC Bank USA, National Association, as Trustee v. Nomura Credit & Capital, Inc.*, No. 652614/12 ("*2006-AF2*")—and granting such further relief as this Court deems just and proper.[2]

Dated: New York, New York
November 16, 2015

SHEARMAN & STERLING LLP

By: _____
    Joseph J. Frank
    Agnès Dunogué
    Matthew L. Craner

    599 Lexington Avenue
    New York, New York 10022
    (212) 848-4000

    *Attorneys for Defendant Nomura*

---

[2] The Decision and Order was issued in these four related actions. Nomura is Defendant-Appellant/Cross-Respondent in *2006-FM2* and *2007-3* and is Defendant-Respondent/Cross-Appellant in *2007-2* and *2006-AF2*.

TO:   KASOWITZ, BENSON,
      TORRES & FRIEDMAN LLP
      Marc E. Kasowitz
      Christopher P. Johnson
      Zachary W. Mazin

      1633 Broadway
      New York, New York 10019
      (212) 506-1700

      *Attorneys for Plaintiff in 2006-FM2 and 2007-3*

      HOLWELL SHUSTER &
      GOLDBERG LLP

      Michael S. Shuster
      Dwight A. Healy
      Daniel M. Sullivan

      125 Broad Street
      39th Floor
      New York, New York 10004
      (646) 837-5151

      *Attorneys for Plaintiff in 2007-2 and 2006-AF2*

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION – FIRST DEPARTMENT

| | |
|---|---|
| NOMURA HOME EQUITY LOAN, INC., SERIES 2007-3, by HSBC BANK USA, NATIONAL ASSOCIATION, solely in its capacity as Trustee, | Index No. 651124/13 |

          Plaintiff-Respondent/
          Cross-Appellant,

    -against-

NOMURA CREDIT & CAPITAL, INC.,

          Defendant-Appellant/
          Cross-Respondent.

| | |
|---|---|
| NOMURA HOME EQUITY LOAN, INC., SERIES 2006-FM2, by HSBC BANK USA, NATIONAL ASSOCIATION, solely in its capacity as Trustee, | Index No. 653783/12 |

          Plaintiff-Respondent/
          Cross-Appellant,

    -against-

NOMURA CREDIT & CAPITAL, INC.,

          Defendant-Appellant/
          Cross-Respondent.

NOMURA HOME EQUITY LOAN, INC., HOME EQUITY LOAN TRUST, SERIES 2007-2, by HSBC Bank USA National Association, as Trustee

Index No. 650337/13

Plaintiff-Appellant/
Cross-Respondent,

-against-

NOMURA CREDIT & CAPITAL, INC.,

Defendant-Respondent/
Cross-Appellant.

---

NOMURA ASSET ACCEPTANCE CORPORATION, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-AF2 TRUST, by HSBC Bank USA, National Association, as Trustee,

Index No. 652614/12

Plaintiff-Appellant-
Cross-Respondent,

-against-

NOMURA CREDIT & CAPITAL, INC.,

Defendant-Respondent-
Cross-Appellant.

# AFFIRMATION OF AGNÈS DUNOGUÉ IN SUPPORT OF
# MOTION FOR LEAVE TO APPEAL TO THE COURT OF APPEALS

I, AGNÈS DUNOGUÉ, an attorney duly admitted to practice law in the

Courts of the State of New York, and not a party to the above-entitled actions,

hereby affirm the following, under penalties of perjury, pursuant to CPLR 2106:

1.    I am a member of Shearman & Sterling LLP, counsel for

Defendant Nomura Credit & Capital, Inc. ("Nomura" or "Defendant").  I make this

affirmation in support of Nomura's motion (the "Motion") for leave to appeal to

the Court of Appeals the holdings of this Court's Decision and Order, dated

October 13, 2015 (the "Order") ,which reversed the IAS Court's dismissal of the

causes of action and claims based on alleged breaches of the No Untrue Statement

Provision, by (i) modifying the IAS Court's orders to deny Defendant's motion to

dismiss the third causes of action in each of *Nomura Home Equity Loan, Inc.,*

*Series 2006-FM2, by HSBC Bank USA, National Association, solely in its capacity*

*as Trustee v. Nomura Credit & Capital, Inc.*, No. 653783/12 ("2006-FM2"), and

*Nomura Home Equity Loan, Inc., Series 2007-3, by HSBC Bank USA, National*

*Association, solely in its capacity as Trustee v. Nomura Credit & Capital, Inc.*, No.

651124/13 ("2007-3"), and (ii) modifying the IAS Court's orders to deny

Defendant's motion to dismiss claims for damages on the first causes of action for

breach of the No Untrue Statement Provision (Section 7 of the Mortgage Loan

Purchase Agreement) in each of *Nomura Home Equity Loan, Inc., Home Equity*

*Loan Trust Series 2007-2, by HSBC Bank USA, National Association, as Trustee v.*
*Nomura Credit & Capital, Inc.*, No. 650337/13 ("*2007-2*"), and *Nomura Asset*
*Acceptance Corporation Mortgage Pass-Through Certificates, Series 2006-AF2,*
*by HSBC Bank USA, National Association, as Trustee v. Nomura Credit &*
*Capital, Inc.*, No. 652614/12 ("*2006-AF2*"). No previous application has been
made for this relief.

   2. Defendant respectfully requests that this Court allow a crucial
question of law addressed in the Order—the answer to which, Defendant
respectfully submits, departed from longstanding Court of Appeals precedent
concerning the enforcement of contractually-agreed-to limitations on remedies,
with far-reaching implications on a significant number of securitization contracts
and pending cases—to be considered by the Court of Appeals.

**Question of Law To Be Reviewed on Appeal**

   3. Should a party bound by a contractual "sole remedy" provision
applicable to breaches of representations regarding the characteristics of mortgage
loans in connection with a mortgage loan securitization—which expressly permits
only the cure or repurchase of the breaching loan—be allowed to seek damages for
alleged breaches of a general representation (in a separate, purportedly assigned,
agreement) that there has been no untrue statement in connection with the

2

securitization, when all the breaches alleged by such party pertain to the characteristics of the mortgage loans?

## Statement of Facts and Procedural History

### The Governing Agreements and Key Provisions

4.     Each of these actions[3] arose in the context of residential mortgage-backed securities ("RMBS") transactions from just prior to the onslaught of the worst financial crisis to face the nation since the Great Depression. Nomura, in the securitization transactions, acted as what is typically referred to as a "Sponsor" or "Seller" in the RMBS securitization process: it purchased, aggregated, and sold mortgage loans that were then deposited into a trust (the "Mortgage Loans"). HSBC Bank USA, National Association ("HSBC" or "Trustee") is the trustee of all four trusts involved with the actions; HSBC holds the Mortgage Loans for the benefit of investors in securities issued by the trusts (called "certificates"). Distributions of principal and interest income collected in connection with the Mortgage Loans in the trust are made to these investors.

---

[3] The four actions have the same plaintiff (HSBC, in its capacity as the trustee of four separate trusts) and defendant (Nomura) and involved substantially identical issues. Accordingly, HSBC requested oral argument for the actions be consolidated and the First Department issued one Decision and Order for all four actions. Nomura was the Appellant/Cross-Respondent in the *2006-FM2* and *2007-3* actions and the Respondent/Cross-Appellant in the *2006-AF2* and *2007-2* actions.

5.    The securitization transactions were each governed by two types of contracts, which were each negotiated and entered into by sophisticated parties: (1) a Pooling and Servicing Agreement ("PSA") to which the Trustee is a party, and, separately, (2) a Mortgage Loan Purchase Agreement ("MLPA"). In each of the actions, Nomura sold the relevant loan pool to a depositor pursuant to an MLPA; then, through the PSA, the depositor conveyed the loan pool to a trust for which HSBC is the Trustee, and also assigned to the Trustee its rights and interest under the MLPA "to the extent of the Mortgage Loans sold" under the MLPA. *See* 2006-AF2 R 70-94, 95-356, 193; 2007-2 R 310-336, 70-309, 145; 2006 FM2 R 56-399, 400-21, 130; 2007-3 R 53-294, 295-306, 94.[4]

6.    In Sections 8 of the MLPAs, Nomura made representations and warranties relating to characteristics of the loans in the trusts and the processes by which the loans were originated (the "Mortgage Representations"). *See* 2006-AF2 R 78-84; 2007-2 R 318-26; 2006 FM2 R 406-12; 2007-3 R 297-301.

7.    Section 7 of each of the MLPAs also includes a general representation that:

> This Agreement does not contain any untrue statement of material fact or omit to state a material fact necessary to make the statements contained herein not misleading. The written statements, reports and

---

[4] All references to "R__" are the Joint Records on Appeal. Facts alleged in the complaints in each of the appeals cited herein are accepted solely for the purposes of this motion.

other documents prepared and furnished or to be prepared and furnished by [defendant] pursuant to this Agreement or in connection with the transactions contemplated hereby taken in the aggregate do not contain any untrue statement of material fact or omit to state a material fact necessary to make the statements contained therein not misleading.

[2006-AF2 R 77; 2007-2 R 317; 2006-FM2 R 405; 2007-3 R 297 ] (referred to herein as the "No Untrue Statement Provision").

        8.     The PSA, in each of the actions, contains a sole remedy provision that sets forth the exclusive remedy available—cure or repurchase (to the extent the requisite contractual conditions are met)—for any alleged breach relating to the Mortgage Loans:

It is understood and agreed that the obligation under this Agreement of the Sponsor to cure, repurchase or replace any Mortgage Loan as to which a breach has occurred or is continuing shall constitute the sole remedies against the Sponsor respecting such breach available to . . . the Trustee.

Section 2.03 of the PSAs [2006-AF2 R 203; 2007-2 R 157; 2006 FM2 R 136; 2007-3 R 98.] *See also* Order at 8-9.[5] This sole remedy provision does *not* allow the Trustee to seek damages in connection with any breaches as to

---

[5] Each MLPA likewise contains a sole remedy provision. *See* Section 9(c) of the MLPAs ("It is understood and agreed that the obligations of the Seller set forth in this Section 9 to cure or repurchase a defective Mortgage Loan (and to make payments pursuant to Section 9(b)) constitute the sole remedies of the Purchaser against the Seller respecting a missing document or a breach of the representations and warranties contained in Section 8.") [2006-AF2 R 85; 2007-2 R 327; 2006-FM2 R 413; 2007-3 R 301.]

the Mortgage Loans.

### *The Trustee Brings Claims for Alleged Breaches as to the Mortgage Loans, Including Claims for Damages Purportedly Based on the No Untrue Statement Provision*

9.     In the midst of the financial crisis and housing collapse,

virtually all RMBS suffered losses.  Distressed-debt investors, looking to capitalize

on the economic upheaval, purchased certificates in the trusts at issue here years

after they were first sold, and demanded that HSBC bring numerous claims against

Nomura.

10.     In each of the actions, the Trustee asserted breach of the PSA

based upon alleged breaches of Mortgage Representations.  *See* 2006-AF2 R 57-

59, 65-66; 2007-2 R 57-60, 65-66; 2006 FM2 R 50-51; 2007-3 R 47-48.

11.     The Trustee, in each of the actions, also asserted claims for

damages for alleged breaches of the No Untrue Statement Provision contained in

the MLPA, based upon the assignment of rights under the MLPA "to the extent of"

the Mortgage Loans transferred to the Trust.  *See* 2006-AF2 R 57-59, 193; 2007-2

R 57-60, 145; 2006 FM2 R 52-54, 130; 2007-3 R 48-50, 94.

12.     Each claim brought by the Trustee pursuant to the No Untrue Statement Provision, in each of the four actions, is a claim for remedy of alleged breaches related to the characteristics of the Mortgage Loans.[6]

***The IAS Court Dismisses the Damages Claims for Alleged Breaches Related to the Mortgage Loans, Brought Under the No Untrue Statement Provision***

13.     Nomura moved to dismiss each of the operative complaints pursuant to CPLR 3211(a)(1) and (a)(7). The IAS Court (Justice Marcy S. Friedman) issued orders granting in part and denying in part Nomura's motions to dismiss. Each order is attached hereto as Exhibit A. *See* 2006-AF2 R 16-20; 2007-2 R 16-20; 2006 FM2 R 16; 2007-3 R 16. Each order relied on the reasoning of the IAS Court in *Nomura Asset Acceptance Corp. Alternative Loan Trust, Series 2006-S4, by HSBC Bank USA, National Ass'n, in its capacity as Trustee v. Nomura Credit & Capital, Inc.*, Index No. 653390/2012 (Sup. Ct., N.Y. Cnty. June 26, 2014) (the "IAS Related Order") (2014 WL 2890341). The IAS Related Order is attached hereto as Exhibit B.

---

[6] *See, e.g.*, 2006-FM2 Compl. ¶¶ 90, 96, [2006 FM-2 R 52-53] (alleging the No Untrue Statement Provision was breached because the "Mortgage Loan Schedule[] and the Prospectus Supplement, among other documents provided to the Trust by Nomura, contained widespread, pervasive and material misrepresentations and omissions with respect to the Mortgage Loans").

14.    The IAS Court granted the motions to dismiss with respect to the Trustee's causes of action and claims for damages under the No Untrue Statement Provision.[7]

15.    As the IAS Court explained: "The complaint does not allege any breach of the No Untrue Statement provision that was not also a breach of the Mortgage Representations to which the sole remedy provisions apply." IAS Related Order at 18. *See also* 2006-AF2 Order R 17-18; 2007-2 Order R 17; 2006 FM2 Order R 16; 2007-3 Order R 16. Indeed, as purported bases for their claims of breaches of the No Untrue Statement Provision, the complaints alleged either pervasive breaches of the representations made as to the Mortgage Loans, or that documents such as the Mortgage Loan Schedule contained inaccuracies about the characteristics of the Mortgage Loans. Related Order at 18-19. *See also* 2006-AF2 Order R 17-18; 2007-2 Order R 17; 2006 FM2 Order R 16; 2007-3 Order R 16.

16.    The IAS Court went on to state:

> It is a settled precept of contract interpretation that all parts of an agreement are to be reconciled, if possible, in order to avoid inconsistency. Thus, where two seemingly conflicting contract provisions reasonably can be reconciled, a court is required to do so and to give both effect. Here, the sole remedy provision establishing

---

[7] The IAS Court denied other portions of Nomura's motions to dismiss. *See* 2006-AF2 Order R 17-18, 20; 2007-2 Order R 17, 20; 2006 FM2 Order R 16; 2007-3 Order R 16.

the repurchase protocol for breaches of Mortgage Representations would be rendered meaningless if the duplicative representations in the Mortgage Loan Schedule were not subject to that protocol, and could support an independent breach of the No Untrue Statement provision.

IAS Related Order at 19 (internal citations and quotations omitted); *see also* 2006-AF2 Order R 17-18; 2007-2 Order R 17; 2006 FM2 Order R 16; 2007-3 Order R 16.

### *This Court Reverses the IAS Court to Reinstate the Causes of Action for Damages for Alleged Breaches Related to the Mortgage Loans, Brought Under the No Untrue Statement Provision*

17.    The Trustee, in each of the four actions, appealed (or cross-appealed) the IAS Court's dismissal of its causes of action[8] pursuant to the No Untrue Statement Provision.[9]

18.    On October 13, 2015, this Court issued the Order, which, among other things, overturned the IAS Court's dismissal of the Trustee's causes

---

[8] The Trustee filed a notice of appeal in *2006-AF2* and *2007-2* on August 21, 2014. It filed a notice of cross-appeal in *2006-FM2* and *2007-3* on September 2, 2014. *See* 2006-AF2 R 1-2; 2007-2 R 1-2; 2006 FM2 R 13-14; 2007-3 R 13-14.

[9] The Trustee, in each of the actions, appealed other aspects of the IAS Court orders. Nomura also appealed portions of the IAS Court orders. Nomura filed its notices of appeal in *2006-FM2* and *2007-3* on August 20, 2014, and filed its notices of cross-appeal in *2006-AF2* and *2007-2* on August 21, 2014. *See* 2006-AF2 R 8-9; 2007-2 R 8-9; 2006 FM2 R 7-8; 2007-3 R 7-8.

of action and claims pursuant to the No Untrue Statement Provision. *See* Exhibit C.[10]

19.     The Order noted that the IAS Court had dismissed the claims based on the alleged breaches of the No Untrue Statement Provision (section 7 of the MLPA) as duplicative of the alleged breaches of the Mortgage Representations provision (section 8 of the MLPA). Order at 13. The Order did not state, at any point, that this Court disagreed with the IAS Court's finding that *the complaints do not allege any breach of the No Untrue Statement Provision that was not also a breach of the Mortgage Representations*. Nevertheless, the Order held that the Trustee should be allowed to seek damages for such alleged breaches, notwithstanding the sole remedy provision of the PSA. *Id.* at 18-19.

20.     The Order acknowledged the PSA's provision setting forth the sole remedy of cure or repurchase for any breaches as to the Mortgage Loans. This Court held that the sole remedy provision of the PSA, however, applies *only* to alleged breaches of Section 8 of the MLPA. *Id.* This Court stated that, in the sole remedy provision (which states: "[i]t is understood and agreed that the obligation

_____

[10] Exhibit C, attached hereto, is a true and correct copy of the First Department's October 13, 2015 Decision and Order, together with the *2006-AF2* and *2007-2* Notices of Entry, dated October 20, 2015 and the *2006-FM2* and *2007-3* Notices of Entry, dated October 16, 2015. Pursuant to 22 NYCRR § 600.14(b), and CPLR §§ 5513(b) and 5516, this Motion is timely.

under this Agreement of the Sponsor to cure, repurchase or replace any Mortgage Loans as to which a breach has occurred or is continuing shall constitute the sole remedies against the Sponsor respecting such breach available to . . . the Trustee") (Section 2.03 of the PSA [2006-AF2 R 203; 2007-2 R 157; 2006 FM2 R 136; 2007-3 R 98]), the reference to "such breach" "refers back to a 'breach of any representation or warranty set forth [in Section 8 of the MLPA] that materially and adversely affects the interests of the Certificateholders in any Mortgage Loan.'" Order at 19. Furthermore, this Court also held that, despite the sole remedy provision, the Trustee could seek damages for the same alleged breaches as to the Mortgage Loans under the No Untrue Statement Provision because "section 13 of the MLPA provides that remedies are cumulative."[11] Order at 19.

## This Court Should Grant Leave To Appeal To The Court of Appeals

21.     Defendant respectfully requests that this Court grant Defendant leave to appeal to the Court of Appeals. *See* CPLR § 5602(b)(1). Leave to appeal is warranted here "in the interest of substantial justice [,]" N.Y. Const. art. VI, § 3(b)(6), a standard that is satisfied when an appeal presents "a question of law

---

[11] Section 13 of the MLPAs, to which the Trustee is not a party, provides in part: "All rights and remedies . . . under this Agreement are distinct from, and cumulative with, any other rights or remedies under this Agreement or afforded by law or equity and all such rights and remedies may be exercised concurrently, independently or successively." [2006-AF2 R 87; 2007-2 R 329; 2006 FM2 R 414; 2007-3 R 302.].

important enough to warrant the immediate attention of the Court of Appeals[,]" David D. Siegel, Practice Commentaries, CPLR § 5602 (McKinney 1995), because it involves an issue that is "novel or of public importance, present[s] a conflict with prior decisions of [the Court of Appeals], or involve[s] a conflict among the departments of the Appellate Division." 22 NYCRR § 500.22(b)(4).

### *Issue of Novel and Public Importance*

22. The question which Defendant seeks to present to the Court of Appeals—pertaining to the scope and enforcement of omnipresent sole remedy provisions in standard contracts governing RMBS, the vast majorty of which are governed by New York law—concerns an issue that affects the multitude of such securitizations, as well as the enforcement of contracts more broadly.

23. The express "sole remedy" provision in these actions is a central and standard component of the governing agreements and the transactions. The Court of Appeals recently emphasized the importance of correctly determining New York law in connection with such a provision in *ACE Securities Corp. v. DB Structured Products, Inc.*, 25 N.Y.3d 581, 590 (2015) ("Importantly, the Trust's 'sole remedy' in the event [the defendant] 'breach[ed] any of the representations and warranties contained in' the MLPA was for [the defendant] to cure or repurchase a non-conforming loan.") (emphasis in original).

24.    The No Untrue Statement Provision is also common in such agreements and transactions.  Defendant is aware of over twenty other RMBS cases, currently pending in New York courts, in which operative contracts likewise contain a sole remedy provision and a provision similar to the No Untrue Statement Provision at issue here.

25.    To allow a party that is bound by such a contractual "sole remedy" provision for breaches of representations regarding the characteristics of mortgage loans in connection with a mortgage loan securitization—which expressly permits only the cure or repurchase of the breaching loan—to nevertheless seek damages for such alleged breaches, by recharacterizing them as alleged breaches of a general representation that there has been no untrue statement in connection with the securitization, fundamentally transforms the agreement entered into by all of the parties to all such securitizations.

26.    Such a holding can also have even broader implications in creating uncertainty and doubt in parties' expectations concerning the enforcement of provisions which limit remedies as expressly agreed to by the parties—and could encourage a contractual party subsequently hoping to avoid such a provision to attempt an end-run around it, leading to unnecessary litigation.

27.     Indeed, under the Order's reasoning, every breach of a Mortgage Representation would necessarily also breach the No Untrue Statement Provision, and the Trustee would never be limited to the sole remedy provisions to which it agreed.

28.     Furthermore, securitization of mortgage loans continues to be a critical part of housing finance in the United States.  Whether parties to a contract can rely on sole remedy provisions under New York law is critical to such parties' decisions regarding choice of law in securitization contracts going forward.

29.     It is accordingly of the utmost importance for the Court of Appeals to clearly set forth the scope of the type of sole remedy provision at issue here.

### *Conflict with Prior Decisions of the Court of Appeals and Internal Inconsistency in this Department*

30.     It is particularly important that the Court of Appeals resolve this crucial question presented because, Defendant respectfully submits, the Order's answer to the question is inconsistent with Court of Appeals precedent.

31.     As set forth by the Court of Appeals, courts must enforce contracts as written and provisions should not be rendered meaningless.  *See, e.g., W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 162 (1990) ("A familiar and

eminently sensible proposition of law is that, when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms."); *see also Ronnen v. Ajax Elec. Motor Corp.*, 88 N.Y.2d 582, 589 (1996) (provisions should not be rendered meaningless); *Muzak Corp. v. Hotel Taft Corp.*, 1 N.Y.2d 42, 46 (1956) ("[N]o provision of a contract should be left without force and effect."). In New York, it is black letter law that parties to a contract may limit the remedies available for breaches of that contract. *See Biotronik A.G. v. Conor Medsystems Ireland, Ltd.*, 22 N.Y.3d 799, 805 n. 4 (2014) ("Contract provisions limiting remedies are enforceable unless they are unconscionable."); *see also Chelsea, LLC v. Seventh Chelsea Assocs., LLC*, 304 A.D.2d 498, 498 (1st Dep't 2003) ("The limitation of remedies clause in the parties' agreement . . . precluded plantiff from . . . seeking [remedies outside of those listed in the clause]"). Thus, courts must enforce such contracual limitations on remedies for contractual breaches, and not render such contractual terms meaningless by allowing a party to the contract to end-run around a remedy provision through a formal, non-substantive recasting of its breach allegations.

32. In each of the four actions, the PSA—the only contract in each action to which the Trustee is a party—clearly and unequivocally states that each Trustee is limited to the sole remedy of repurchase for any breaches related to the Mortgage Loans. [2006-AF2 R 203; 2007-2 R 157; 2006 FM2 R 136; 2007-3 R

98.] Pursuant to this clear restrictive language, any claim of breach pursuant to the No Untrue Statement Provision that relates to the Mortgage Loans is limited (if valid) to the sole remedies outlined in the sole remedy provision of the PSA.[12]

33.    The Order, however, interpreted and applied the contractual sole remedy provision in a way that fundamentally erases it out of the contract for alleged breaches regarding the characteristics and quality of the Mortgage Loans which are substantively indistinguishable from allegations of breaches of the representations and warranties as to such characteristics and quality. This is flatly inconsistent with Court of Appeals precedent. *See, e.g., Ronnen*, 88 N.Y.2d at 589; *Muzak Corp.*, 1 N.Y.2d at 46.

34.    The Order further compounded this departure from Court of Appeals precedent by holding that a generic reservation of rights (such as that in Section 13 of the MLPAs) negates a specific limitation on remedies to which the parties agreed. This, again, is fundamentally inconsistent with the Court of Appeals' prior decisions. *See, e.g., William Higgins & Sons, Inc. v. State of New*

---

[12] Although the Order states that "had these 'very sophisticated parties' desired to have the sole remedy provisions apply to both section 8 and section 7 breaches, 'they certainly could have included such language in the contracts'" (Order at 19), the Order appears to ignore that Section 2.03 of the PSA—the sole remedy provision applicable here—refers broadly to "any Mortgage Loan as to which a breach has occurred" rather than to any specific section of the contract. [2006-AF2 R 203; 2007-2 R 157; 2006 FM2 R 136; 2007-3 R 98.]

*York*, 20 N.Y.2d 425, 428 (1967) ("[a] specific provision will not be set aside in favor of a catchall clause"); *see also Bank of Tokyo-Mitsubishi, Ltd., N.Y. Branch v. Kvaerner a.s.*, 243 A.D.2d 1, 8 (1st Dep't 1998) ("if there is inconsistency between a general provision and a specific provision of a contract, the specific provision controls.").

35.     The Order also creates internal inconsistency within this Department on this crucial issue presented. This Court previously addressed this same issue and reached an opposite decision in *Ambac Assurance Corporation. v. EMC Mortgage LLC*, 121 A.D.3d 514 (1st Dep't 2014). Parties to current pending cases, as well as parties currently negotiating RMBS securitization contracts, are therefore left with insufficient guidance on how sole remedy provisions will be interpreted under New York law. The Order distinguished these actions from *Ambac*, only on the basis that the sole remedy provision at issue in *Ambac* referred to "this Agreement" whereas the sole remedy provision in the PSA here refers to "any Mortgage Loan as to which a breach has occurred" (and the MLPA sole remedy provision refers to claims respecting missing documentation or a breach of the representations contained in Section 8) (Order at 18-19). But the Order omitted that the *Ambac* provision referred to a sole remedy "'under this Agreement *or otherwise respecting a breach of representations or warranties hereunder with*

*respect to the Mortgage Loans.*'" *Ambac*, 121 A.D.3d at 518 (emphasis added).[13]
The respective language of the provisions, Defendant respectfully submits, does not provide a basis for directly contrary holdings. Thus, this Order creates an internal split in this Department—a crucial issue because all New York state-court RMBS loan repurchase cases are pending (to the best of Defendant's knowledge) in courts within the First Department.

36. Accordingly, Defendant respectfully submits, leave to appeal is warranted by the significant public issue raised as well as the conflict with prior precedent from the Court of Appeals (and internally inconsistent decisions within this Department). *See* 22 NYCRR. § 500.22(b)(4).

---

[13] Moreover, it would not be possible for the PSAs at issue here to apply the sole remedy language to every breach of the agreement because the PSAs contain numerous provisions governing the conduct of the Servicers and the Trustee, including provisions for the distribution of funds to certificateholders, none of which could be remedied by cure or repurchase of the Mortgage Loans. *See, e.g.*, *2006-FM2* and *2006-AF2* PSAs Articles V, IX [2006-AF2 R 251-94, 320-32; 2006-FM2 R 169-97, 215-24.]

## Conclusion

37.     For the reasons stated above, Defendant respectfully requests that this Court grant leave to appeal to the Court of Appeals so that it may consider the important legal question presented.

Dated:   New York, New York
             November 16, 2015

By:    _____
            Agnès Dunogué