**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                           :

DEUTSCHE BANK NATIONAL TRUST      :
COMPANY, solely in its capacity as Trustee   :
for the MORGAN STANLEY             :
STRUCTURED TRUST I 2007-1,         :
                           :    No. 14 Civ. 3020 (KBF)
               Plaintiff,   :
       - against -           :
                           :
MORGAN STANLEY MORTGAGE       :
CAPITAL HOLDINGS LLC, as Successor-  :
by-Merger to MORGAN STANLEY     :
MORTGAGE CAPITAL INC.,         :
                           :
            Defendant.  :
                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF**
**MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC'S**
**MOTION FOR JUDGMENT ON THE PLEADINGS AND**
**RENEWED MOTION FOR SUMMARY JUDGMENT**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

Attorneys for Defendant Morgan Stanley
Mortgage Capital Holdings LLC

**TABLE OF CONTENTS**

P<span>AGE</span>

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT ................................................................................................................. 3

I.   THE COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE
     DBNTC HAS NOT ALLEGED COMPLETE DIVERSITY AMONG THE PARTIES ....... 3

   A.   The Court Must Consider the Citizenship of the Represented Trust Unless
        DBNTC Satisfies the *Navarro* Exception .......................................................... 4

   B.   DBNTC Cannot Satisfy the *Navarro* Exception and Therefore Must Allege
        the Citizenship of All Beneficiaries of the MSST Trust ...................................... 6

II.  THIS CASE IS UNTIMELY PURSUANT TO THE FIRST DEPARTMENT'S
     RECENT DECISION IN *DEUTSCHE BANK* .................................................... 13

   A.   *Deutsche Bank* Requires Application of California's Statute of Limitations to
        DBNTC's Claims ................................................................................................. 14

   B.   Like *Deutsche Bank*, This Case Is Untimely Under California's Statute of
        Limitations .......................................................................................................... 16

CONCLUSION ............................................................................................................ 18

i

# TABLE OF AUTHORITIES

### CASES

PAGE(S)

ABB Indus. Sys., Inc. v. Prime Tech., Inc.,
    120 F.3d 351 (2d Cir. 1997) ................................................. 15

Airlines Reporting Corp. v. S & N Travel, Inc.,
    58 F.3d 857 (2d Cir. 1995) ................................................. 10

Americold Realty Tr. v. Conagra Foods, Inc.,
    136 S. Ct. 1012 (2016) ................................................. *passim*

April Enters., Inc. v. KTTV,
    195 Cal. Rptr. 421 (1983) ................................................. 16, 17

Ashcroft v. Iqbal,
    556 U.S. 662 (2009)................................................. 2, 3

Bank of Am., Nat'l Ass'n v. 3301 Atl., LLC,
    No. 10 Civ 5204, 2012 WL 2529196 (E.D.N.Y. June 29, 2012) ........................................... 9

Carden v. Arkoma Assocs.,
    494 U.S. 185 (1990) ................................................. 5

Cortland St. Recovery Corp. v. Aliberti,
    No. 12 No. 8686, 2014 WL 6907548 (S.D.N.Y. Dec. 9, 2014) ........................................... 9

Deutsche Bank Nat'l Tr. Co. v. Barclays Bank PLC,
    156 A.D.3d 401 (1st Dep't 2017) ................................................. *passim*

Deutsche Bank Nat'l Tr. Co. v. Flagstar Capital Mkts. Corp.,
    143 A.D.3d 15 (1st Dep't 2016) ................................................. 9

Deutsche Bank Nat'l Tr. Co. v. WMC Mortg., LLC,
    No. 12 Civ. 933, 2014 WL 12753550 (D. Conn. July 7, 2014)................................................. 9

Ely-Cruikshank Co., Inc. v. Bank of Montreal,
    81 N.Y.2d 399 (1993) ................................................. 15

E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.,
    160 F.3d 925 (2d Cir. 1998) ................................................. 3, 4

Glob. Fin. Corp. v. Triarc Corp.,
    93 N.Y.2d 525 (1999) ................................................. 14, 15, 16

ii

Guar. Trust Co. of N.Y. v. York,
  326 U.S. 99 (1945) .................................................................................... 13

Ins. Co. of N. Am. v. ABB Power Generation, Inc.,
  91 N.Y.2d 180 (1997) ........................................................................... 14, 16

Kulzer v. Pittsburgh-Corning Corp.,
  942 F.2d 122 (2d Cir. 1991) .................................................................... 13

Lembcke v. United States,
  181 F.2d 703 (2d Cir. 1950) .................................................................... 17

Lyndonville Sav. Bank & Tr. Co. v. Lussier,
  211 F.3d 697 (2d Cir. 2000)....................................................................... 3

Maiden v. Biehl,
  582 F. Supp. 1209 (S.D.N.Y. 1984) ........................................................ 14

Mary Pickford Co. v. Bayly Bros., Inc.,
  86 P.2d 102 (Cal. 1939) ........................................................................... 16

Meckel v. Cont'l Res. Co.,
  758 F.2d 811 (2d Cir. 1985) ....................................................................... 7

Med. Jet, S.A. v. Signature Flight Support-Palm Beach, Inc.,
  941 So. 2d 576 (Fla. Dist. Ct. App. 2006) .............................................. 15

Meherin v. S.F. Produce Exch.,
  48 P. 1074 (Cal. 1897) ............................................................................. 16

Mfrs. & Traders Tr. Co. v. HSBC Bank USA, Nat'l Ass'n,
  564 F. Supp. 2d 261 (S.D.N.Y. 2008) ...................................................... 9

Navarro Sav. Ass'n v. Lee,
  446 U.S. 458 (1980) ......................................................................... passim

Nolan v. Transocean Air Lines,
  276 F.2d 280 (2d Cir. 1960) .................................................................... 17

Oscar Gruss & Son, Inc. v. Hollander,
  337 F.3d 186 (2d Cir. 2003) ................................................................ 4, 12

Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n,
  No. 14 Civ. 10116, 2016 WL 1169515 (S.D.N.Y. Mar. 22, 2016) ......... 6

Raymond Loubier Irrevocable Tr. v. Loubier,
  858 F.3d 719 (2d Cir. 2017)............................................................ 2, 3, 5, 6

Roberts v. Babkiewicz,
    582 F.3d 418 (2d Cir. 2009)................................................................. 7

Rogers v. Grimaldi,
    875 F.2d 994 (2d Cir. 1989)................................................................. 17

Santos v. Dist. Council of New York City & Vicinity of United Bd. of Carpenters &
    Joiners of Am., AFL-CIO, 619 F.2d 963 (2d Cir. 1980) ...................... 13

Taketa v. State Bd. of Equalization,
    231 P.2d 873 (Cal. Ct. App. 1951) ....................................................... 16

Thea v. Kleinhandler,
    807 F.3d 492 (2d Cir. 2015)................................................................. 13

U.S. Bank Nat'l Ass'n v. GreenPoint Mortg. Funding, Inc.,
    147 A.D.3d 79 (1st Dep't 2016) ........................................................... 9

U.S. Bank Nat'l Ass'n v. UBS Real Estate Sec. Inc.,
    205 F. Supp. 3d 386 (S.D.N.Y. 2016)............................................. 11, 12

V.S. v. Muhammad,
    595 F.3d 426 (2d Cir. 2010)................................................................. 13

WBCMT 2007-C33 NY Living, LLC v. 1145 Clay Ave. Owner, LLC,
    964 F. Supp. 2d 265 (S.D.N.Y. 2013) ................................................. 9

Wells Fargo Bank, Nat'l Ass'n v. Ullah,
    No. 13 Civ. 0485, 2014 WL 470883 (S.D.N.Y. Feb. 6, 2014) ............. 9

Zoroastrian Ctr. & Darb-E-Mehr of Metro. Wash., D.C. v. Rustam Guiv Found. Of N.Y.
    822 F.3d 739 (4th Cir. 2016) ............................................................... 5

STATUTES AND RULES

28 U.S.C. § 1332(a)(1)............................................................................... 3

28 U.S.C. § 1332(c)(1)............................................................................... 3

28 U.S.C. § 1334(b) ................................................................................... 11

Fed. R. Civ. P. 12(c) .............................................................................. 1, 7

Fed. R. Civ. P. 56 ...................................................................................... 1

Cal. Civ. P. § 337 (2017) ........................................................................... 16

iv

P<span style="font-size:smaller">AGE</span>

Fla. Stat. § 95.11(2)(6) ................................................................................................ 15

N.Y. C.P.L.R. 202 ....................................................................................................... 13

Morgan Stanley Mortgage Capital Holdings LLC ("Morgan Stanley") respectfully submits this memorandum of law in support of its motion for judgment on the pleadings for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(c), and its renewed motion for summary judgment based on its statute of limitations defense, pursuant to Federal Rule of Civil Procedure 56.

## PRELIMINARY STATEMENT

This action should be dismissed pursuant to the First Department's recent decision in Deutsche Bank National Trust Co. v. Barclays Bank PLC, 156 A.D.3d 401 (1st Dep't 2017) ("Deutsche Bank"), which held that repurchase claims brought by Deutsche Bank National Trust Company ("DBNTC") were untimely because they were not brought within California's four-year statute of limitations.  While this Court declined to entertain briefing on this recent decision while Morgan Stanley's summary judgment motion was pending (see Dkt. Nos. 135, 137), the issue is case-dispositive and Morgan Stanley respectfully requests that it be adjudicated before the parties and the Court invest enormous resources on a trial in a case that is untimely under current New York law.  There is no evidence that the Court of Appeals would reach a different result than the First Department, but if there were any doubt, then DBNTC should move to stay this action until its pending motion for leave to appeal Deutsche Bank to the Court of Appeals is resolved.  That is precisely what DBNTC recently did in a different RMBS case that it brought in state court, because under Deutsche Bank the case would otherwise face dismissal.  See Stipulation & Proposed Order, Deutsche Bank Nat'l Tr. Co. v. Barclays Bank PLC, No. 651789/2013 (Sup. Ct. N.Y. Cty. Dec. 14, 2017) (Dkt. No. 205).[1]  Had this case been filed in

---

[1] In two other RMBS cases it brought in state court, where DBNTC was represented by different counsel and is presumably being directed by different certificateholders, DBNTC did not seek a stay of discovery, but instead argued that the parties should proceed with completing expert discovery while DBNTC's motion for leave to
(….continued)

state court, Morgan Stanley would be entitled to summary judgment based on <u>Deutsche Bank</u>,

and this Court, sitting in diversity, must reach the same result.

Indeed, this case should have been filed in state court in the first place because the parties

are not completely diverse.  Although DBNTC purports to bring this repurchase action in its own

name and therefore based on its own citizenship, it has admitted that RMBS trusts are "different

legal animals" and repurchase actions are entirely "investor-driven" disputes.  <u>See</u> <u>infra</u> at 7-8.

As DBNTC has argued, the entire structure of the relevant contracts explicitly allocates the

responsibility for initiating and directing repurchase litigation like this one to the

certificateholders, not the trustee.  And the pleadings here demonstrate that DBNTC is acting at

the direction of one or more trust certificateholders who are exercising those contractual rights.

Under the Second Circuit's recent decision in <u>Raymond Loubier Irrevocable Trust v. Loubier</u>,

858 F.3d 719 (2d Cir. 2017) ("<u>Loubier</u>"), this Court's diversity jurisdiction does not turn solely

on whether the trustee or the trust is the named plaintiff.  Because the certificateholders, not the

trustee, are controlling this action, the Supreme Court's 2016 decision in <u>Americold Realty Trust</u>

<u>v. Conagra Foods, Inc.</u>, 136 S. Ct. 1012 (2016) ("<u>Americold</u>") supports the conclusion that it is

the citizenship of the trust ("MSST") that controls for purposes of diversity jurisdiction, not

DBNTC's.  Because the complaint does not allege that the trust's certificateholders are diverse,

this action must be dismissed for lack of subject matter jurisdiction.[2]

---

(continued....)

appeal is litigated.  The application by the defendants in those cases to obtain a stay until DBNTC's motion for leave
to appeal is resolved, and thereby avoid costly discovery in cases that are untimely under <u>Deutsche Bank</u>, is pending
before the state court.  <u>See</u> Jan. 24, 2018 Joint Ltr. to Justice Friedman, <u>Deutsche Bank Nat'l Tr. Co. v. EquiFirst</u>
<u>Corp.</u>, No. 651957/2013 (Sup. Ct. N.Y. Cty.) (Dkt. No. 155); <u>Deutsche Bank Nat'l Tr. Co. v. Morgan Stanley</u>
<u>Mortg. Capital Holdings LLC</u>, No. 652877/2014 (Sup. Ct. N.Y. Cty.) (Dkt. No. 112).

[2] It is unlikely that DBNTC could allege diversity, because many RMBS certificateholders tend to be New
York based hedge funds, but in any event it is the plaintiff's burden to establish diversity as a basis for subject
matter jurisdiction.  <u>See</u> <u>Loubier</u>, 858 F.3d at 725 ("plaintiffs bear the burden of making a preponderance
showing . . . of 'complete diversity'" (citation omitted)); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 670 (2009)
(....continued)

**ARGUMENT**

**I.    THE COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE DBNTC HAS NOT ALLEGED COMPLETE DIVERSITY AMONG THE PARTIES**

To invoke this Court's diversity jurisdiction, there must be complete diversity of citizenship among the real parties in interest.  See 28 U.S.C. § 1332(a)(1); Loubier, 858 F.3d at 725.  "While humans and corporations can assert their own citizenship, other entities take the citizenship of their members."  Americold, 136 S. Ct. at 1014.  Moreover, "[t]he general rule undoubtedly is 'that federal courts must look to the individuals being represented rather than their collective representative to determine whether diversity of citizenship exists.'"  E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co., 160 F.3d 925, 931 (2d Cir. 1998) ("Squibb").  Because Morgan Stanley is a citizen of New York and Delaware,[3] DBNTC must establish that none of its certificateholders is a citizen of either of those states.  It has failed to do so.

Because the complaint identifies the plaintiff as "Deutsche Bank National Trust Company, solely in its capacity as Trustee for the Morgan Stanley Structured Trust I 2007-1," DBNTC apparently relies on the exception in Navarro Savings Association v. Lee, 446 U.S. 458 (1980) ("Navarro"), which allows a trustee who exercises full control over the litigation to sue in its own name and invoke diversity jurisdiction based only on its own citizenship.  But the Second Circuit recently rejected the formalistic argument that "in a trust case, diversity analysis turns upon whether the trusts or the trustees are the named part[ies]."  Loubier, 858 F.3d at 731 (quotation marks omitted).  Such a rule "would only encourage artful pleading if . . . a party

(continued….)

("Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt."); Lyndonville Sav. Bank & Tr. Co. v. Lussier, 211 F.3d 697, 700 (2d Cir. 2000) ("[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*.").

[3] See Compl. ¶ 7 (Dkt. No. 2) (alleging that Morgan Stanley is a limited liability company whose sole member is a Delaware corporation with its principal place of business in New York); see also 28 U.S.C. § 1332(c)(1); Americold, 136 S. Ct. at 1015 (unincorporated entities have the citizenship of their members).

thought it could create or defeat diversity jurisdiction to its advantage depending on whether it identified a trust or its trustee as a party to the action." Id.  Looking beyond the caption, it is apparent that—as DBNTC has admitted—this action is entirely "investor-driven." See infra at 7-8.  DBNTC did not bring this suit because it exercised its independent judgment pursuant to a fiduciary obligation that it was in the best interest of the trust, but because a certificateholder directed it to do so and the contracts require DBNTC to obey that instruction.

In these circumstances, the Court must consider the citizenship of the parties that DBNTC is representing, not DBNTC itself.  See Navarro, 446 U.S. at 461 ("a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy"); Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 195 (2d Cir. 2003) ("Oscar Gruss") ("[W]here a plaintiff brings a suit solely in his representative capacity, the citizenship of the represented party, and not that of the representative controls.").  Because plaintiff has not alleged the citizenship of MSST's certificateholders, this case should be dismissed for lack of subject matter jurisdiction.  See Americold, 136 S. Ct. 1015 (affirming dismissal where there was no record of the citizenship of a real estate investment trust's shareholders).

**A.    The Court Must Consider the Citizenship of the Represented Trust Unless DBNTC Satisfies the Navarro Exception**

A federal court generally lacks diversity jurisdiction over a suit brought by a representative on behalf of absent, non-diverse parties.  See Squibb, 160 F.3d at 931.  Navarro provides an exception for certain trustees suing on behalf of a trust, id. (citing Navarro, 446 U.S. at 456-66), but that decision has sown "understandable and widely shared" confusion. Americold, 136 S. Ct. at 1016.  Indeed, the Second Circuit recently noted that "[d]espite over two centuries of federal litigation involving trusts, the method for determining a trust's

citizenship [is] long unsettled and the subject of much debate." Loubier, 858 F.3d at 725

(quoting Zoroastrian Ctr. & Darb-E-Mehr of Metro. Wash., D.C. v. Rustam Guiv Found. of

N.Y., 822 F.3d 739, 748 (4th Cir. 2016)).

Navarro involved eight individual trustees who had the "exclusive authority free from

any power and control of the Shareholders" to manage certain trusts. Navarro, 446 U.S. at 459.

The trustees had initiated the lawsuit in their own names, and the shareholders could "neither

control the disposition of [that legal] action nor intervene in the affairs of the trust except in the

most extraordinary situations." Id. at 464-65. In that circumstance, the Supreme Court applied

the long-standing rule that trustees were "entitled to bring diversity actions in their own names

and upon the basis of their own citizenship" because they were real parties in interest, and

declined to consider the citizenship of the trust's beneficiaries. Id. at 461-62.

A decade later, the Court clarified that, by declining to consider the citizenship of the

trust beneficiaries, Navarro did not create an exception to the rule that artificial entities have the

citizenship of all their members because "Navarro had nothing to do with the citizenship of the

'trust,' since it was a suit by the trustees in their own names." Carden v. Arkoma Assocs., 494

U.S. 185, 192-93 (1990). Most recently, the Supreme Court held that a real estate investment

trust in fact "possesses its members' citizenship," including that of its shareholders. Americold,

136 S. Ct. at 1015-16. In doing so, the Court distinguished the trust at issue from a "traditional

trust"—i.e., one that is "not considered a distinct legal entity, but a 'fiduciary relationship'

between multiple people" and for which there was "no need to determine its membership." Id. at

1016. Noting that states now applied "the 'trust' label to a variety of unincorporated entities that

have little in common with this traditional template," id., the Court declined to deem the real

estate investment trust there as only having the trustee's citizenship. Id. at 1016-17 ("[N]either

this rule nor <u>Navarro</u> limits an entity's membership to its trustees just because the entity happens to call itself a trust.").

Although the Court noted that the <u>Navarro</u> rule for a "human trustee sued in her personal name" "coexists" with the <u>Americold</u> rule for "an artificial entity . . . sued in *its* name," <u>id.</u> at 1016-17 (emphasis in original), the Second Circuit rejected a construction of <u>Americold</u> that would cause diversity jurisdiction to turn solely on the caption of the complaint.  <u>See</u> <u>Loubier</u>, 858 F.3d at 731 (rejecting argument that "the essence of <u>Americold</u> is that in a trust case, diversity analysis turns upon whether the trusts or the trustees are the named part[ies]"). Looking to the nature of the trusts that had been named as parties in <u>Loubier</u>, the Second Circuit concluded that they were "traditional trusts, establishing only fiduciary relationships," and "[t]hus, it is the trustees' citizenship that must determine diversity."  <u>Loubier</u>, 858 F.3d at 731. DBNTC, which by its own admission, is not a traditional trustee owing a fiduciary obligation to certificateholders, <u>see</u> <u>infra</u> at 7-8, therefore cannot rely on the fact that it has named itself as the plaintiff to justify ignoring the citizenship of the trust.  This Court instead must look past the form of the caption and consider the substance—namely, the fact that it is the *certificateholders* who precipitated this litigation.

### B.   DBNTC Cannot Satisfy the <u>Navarro</u> Exception and Therefore Must Allege the Citizenship of All Beneficiaries of the MSST Trust

DBNTC does not get the benefit of the <u>Navarro</u> exception in this case because, among other things, it does not have a fiduciary obligation to the certificateholders to enforce the repurchase obligations like a trustee of a traditional trust would.  <u>See</u> <u>Americold</u>, 136 S. Ct. at 1016; <u>Loubier</u>, 858 F.3d at 728 n.7.  Critically, DBNTC lacks the traditional fiduciary duties of loyalty, care, or good faith.  <u>See</u> <u>Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n</u>, No. 14 Civ. 10116, 2016 WL 1169515 at *9 (S.D.N.Y. Mar. 22, 2016) (Forrest, J.) (holding that RMBS

trustee has no duty of loyalty absent an Event of Default, which did not occur here and is not

alleged to have occurred).  Indeed, DBNTC itself has explained that RMBS trusts are not

traditional trusts in this sense:

> While RMBS trusts have the word "trust" in their name, RMBS trusts and ordinary trusts (e.g., testamentary trusts) are "different legal animals."  Unlike ordinary trustees, RMBS trustees' duties "are *exclusively defined* by the terms of the" [relevant contracts].  Thus, the RMBS trustee "is not subject to the ordinary trustee's duty of undivided loyalty.  Unlike the ordinary trustee, who has historic common-law duties imposed beyond those in the agreement, an indenture trustee is more like a stakeholder whose duties are exclusively defined by the terms of the indenture agreement."

Joint Mem. of Law in Supp. of Defs.' Joint Mot. to Dismiss at 3-4, Blackrock Balanced Capital

Portfolio (FI) v. Deutsche Bank Nat'l Tr. Co., No. 14 Civ. 9367 (S.D.N.Y. May 1, 2015)

(hereinafter "Blackrock Joint Mem.") (Weinstein Decl. Ex. A)[4] (citations omitted) (quoting

Meckel v. Cont'l Res. Co., 758 F.2d 811, 816 (2d Cir. 1985)); see also Pooling & Servicing

Agreement ("PSA") § 10.01(a) (Weinstein Decl. Ex. B).[5]

Furthermore, DBNTC lacks the same powers as the trustees in Navarro.  In Navarro, the

trustees had "exclusive authority over [the] property free from any power and control of the

Shareholders, to the same extent as if the Trustees were the sole owners of the Trust Estate in

their own right."  Navarro, 446 U.S. at 459.  For example, the trustees independently decided to

enter into the loan agreement on which they had sued.  Id. at 465, 459-60.  The beneficiaries

---

[4] "Weinstein Decl. Ex. __" refers to exhibits to the Declaration of Brian S. Weinstein dated February 5, 2018, and filed with this memorandum.

[5] The PSA is attached to the complaint and may be considered on a Rule 12(c) motion for judgment on the pleadings.  See Roberts v. Babkiewicz, 582 F.3d 418, 419 (2d Cir. 2009) (per curiam) (holding that, on a Rule 12(c) motion, court can "rely on the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case").

could "neither control the disposition of [that legal] action nor intervene in the affairs of the trust except in the most extraordinary situations." Id. at 464-65.

DBNTC is the polar opposite:  it is not only subject to the control of the certificateholders, but in this very litigation it is acting at the direction of its certificateholders, who can "control the disposition of this action." See id.  As DBNTC has explained, this is a result of an intentional choice by the parties to RMBS investments:

> [T]he [governing agreements] reflect the legal rights, duties, and economic risk that each party assumed.  Investors accepted the risks and rewards of the housing market and of *their rights to collectively direct* the RMBS trustee's remedial efforts.  In contrast, RMBS trustees agreed to low pay in exchange for narrow ministerial duties, broad exculpation, and minimal economic risk in the transactions.  The *investor-driven* process for remediating breaches by Warrantors or Servicers reflects these different choices and roles.  Indeed, the [relevant contracts] place the onus of taking action against Warrantors and/or Servicers for purported duty breaches *on investors*.

Blackrock Joint Mem. at 1-2 (Weinstein Decl. Ex. A) (emphases added and in original).  This "*investor-driven*" remedial process is reflected in the MSST PSA.  For instance, DBNTC is not "bound to make any investigation into the facts or matters stated in any" documents, including breach notices, "unless requested in writing to do so by Holders of Certificates evidencing not less than 25% of the aggregate Voting Rights of the Certificates."  PSA § 10.02(a)(v) (Weinstein Decl. Ex. B).  Nor is it "under any obligation to exercise any of the trusts or powers" conferred on it in the PSA except "at the request, order or direction of any of the Certificateholders" if such "Certificateholder [has] offered to the Trustee . . . reasonable security or indemnity against the costs, expenses, and liabilities which may be incurred."  Id. § 10.02(a)(iii).[6]

---

[6] The trustee's powers are quite limited in any event.  See PSA § 10.01(a) (Weinstein Decl. Ex. B) (trustee may perform "only such duties as are specifically set forth in this Agreement"); see generally id. at § 10.01 (listing administrative responsibilities).  In foreclosure proceedings, some courts have relied on the trustee's possession of (….continued)

The significant powers granted to the certificateholders regarding enforcement of the contracts are not lying dormant.  As DBNTC itself has argued, RMBS repurchase litigation is in fact "investor-driven."  Blackrock Joint Mem. at 1-2 (Weinstein Decl. Ex. A).  As liaison counsel for the trustees bringing repurchase actions in New York state court have explained, "[i]n almost all of the Putback Cases, the plaintiff-trustee . . . is pursuing the action at the 'direction' of a certificateholder, in accordance with the terms of the applicable Pooling and Servicing Agreements or other governing documents."  Ltr. from M. Shuster to Justice Friedman (Feb. 17, 2015) (Weinstein Decl. Ex. C); see, e.g., Deutsche Bank Nat'l Tr. Co. v. Flagstar Capital Mkts. Corp., 143 A.D.3d 15, 18 (1st Dep't 2016) ("[A] certificateholder . . . engaged an underwriting firm to perform a forensic review of the loans underlying some of the certificates . . . . [P]laintiff, at the direction of [the certificateholder], commenced this action . . . ."); U.S. Bank Nat'l Ass'n v. GreenPoint Mortg. Funding, Inc., 147 A.D.3d 79, 84 (1st Dep't 2016) ("The Trustee at the direction of the Certificateholder now sues . . . .").  In fact, "[t]he phrase 'directing Certificateholders' reflects the fact that, as DBNTC has repeatedly stated and the complaints allege, the Bank is acting solely as a Trustee, and at the direction of certain Certificateholders in the Trusts, presently unidentified."  Deutsche Bank Nat'l Tr. Co. v. WMC Mortg., LLC, No. 12 Civ. 933, 2014 WL 12753550, at *2 (D. Conn. July 7, 2014).

---

(continued....)

"all right, title, and interest" in the mortgage loans as the critical fact supporting application of the Navarro exception.  See, e.g., WBCMT 2007-C33 NY Living, LLC v. 1145 Clay Ave. Owner, LLC, 964 F. Supp. 2d 265, 270 (S.D.N.Y. 2013); Wells Fargo Bank, Nat'l Ass'n v. Ullah, No. 13 Civ. 0485, 2014 WL 470883, at *4 (S.D.N.Y. Feb. 6, 2014); Bank of Am., Nat'l Ass'n v. 3301 Atl., LLC, No. 10 Civ. 5204, 2012 WL 2529196, at *4-5 (E.D.N.Y. June 29, 2012).  These cases are distinguishable because possessing legal title to the mortgage loan is necessary to foreclose upon it.  Moreover, unlike here, where the certificateholders were the impetus for the litigation, in the foreclosure cases no certificateholders were directing the trustee to foreclose on individual mortgage loans, nor was there any "indication that the certificateholders, rather than [the trustee], have control over th[e] litigation."  3301 Atl., LLC, 2012 WL 2529196, at *4; cf. Cortland St. Recovery Corp. v. Aliberti, No. 12 Civ. 8686, 2014 WL 6907548, at *3 (S.D.N.Y. Dec. 9, 2014) (citing Mfrs. & Traders Tr. Co. v. HSBC Bank USA, Nat'l Ass'n., 564 F. Supp. 2d 261, 264 (S.D.N.Y. 2008) (holding that the mere possibility that beneficiaries could direct the trustee's actions, without evidence that they had, did not preclude application of the Navarro exception)).

DBNTC has alleged that this process was followed *in this litigation*. Specifically, the complaint alleges that a directing certificateholder precipitated this litigation by conducting an analysis that purported to identify breaches in a sample of underlying loans. See Compl. Ex. 3 at Ex. A.[7] It then directed the Trustee to submit the directing certificateholders' analysis to Morgan Stanley in the form of a demand letter—which DBNTC merely forwarded without any additional analysis of its own and which provided the basis for the breach allegations in the complaint. See Compl. Ex. 3 at 2 & Ex. A; cf. id. ¶¶ 3, 44-69 (Dkt. No. 2).

Because DBNTC is acting in response to a demand made by a beneficiary to initiate this suit, it is nothing like the trustees in Navarro who had unfettered control over the litigation. Rather, DBNTC is a "mere conduit for a remedy owing to others" and therefore "the citizenship of the represented individuals controls for diversity purposes." See Airlines Reporting Corp. v. S & N Travel, Inc., 58 F.3d 857, 862 (2d Cir. 1995). The complaint alleges that the representations and warranties were made "[t]o address *the Certificateholders'* lack of knowledge," Compl. ¶ 21 (Dkt. No. 2) (emphasis added), and that "Morgan Stanley thus promised to protect the Trust (*for the benefit of the Certificateholders*) and make it whole in the event that a Loan breached applicable representations and warranties." Id. ¶ 28 (emphasis added); see also id. ¶ 69 ("The purpose of the repurchase remedy is to secure for the Trust (on behalf of the Certificateholders) the economic benefit of the bargain . . . ."). It also alleges that "*[t]he Trust* has been injured and suffered damages" and that "Morgan Stanley Capital must also *pay the Trust*." Id. ¶¶ 101, 103 (emphasis added). Indeed, the complaint claims that it is "*the Trust*, acting through the Trustee,

---

[7] DBNTC redacted the identity of the certificateholder in the demand letter that it filed as an exhibit to its complaint.

[that] respectfully requests that the Court enter judgment in its favor and against Morgan Stanley Capital." Id. at 31 (emphasis added).

Diversity should therefore be determined based on the citizenship of MSST, the trust that DBNTC represents.  MSST is an unincorporated entity, just like the real estate investment trust in Americold.  Both hold and manage property "for the benefit and profit of any person who may become a shareholder" or a certificateholder.  Americold, 136 S. Ct. at 1016 (quotation marks omitted); see PSA § 2.01 (Weinstein Decl. Ex. B) (assigning mortgage loans "to the Trustee for the use and benefit of the Certificateholders").  And both of their beneficiaries have "votes in the trust by virtue of their 'shares of beneficial interest.'"  Americold, 136 S. Ct. at 1016 (citation omitted); see PSA at 61 (Weinstein Decl. Ex. B) (defining "Voting Rights").  Therefore, like the trust in Americold, MSST is deemed to have the citizenship of all its members, which include its certificateholders.  See Americold, 136 S. Ct. at 1016.  Because the certificateholders are not alleged to be completely diverse from Morgan Stanley, this case must be dismissed for lack of subject matter jurisdiction.  See id.

Morgan Stanley respectfully submits that Judge Castel's contrary conclusion in U.S. Bank National Association v. UBS Real Estate Securities Inc., 205 F. Supp. 3d 386 (S.D.N.Y. 2016), is not persuasive authority to the contrary.  After a fourteen-day bench trial, Judge Castel sua sponte questioned the purported basis for subject matter jurisdiction in that case:  bankruptcy jurisdiction under 28 U.S.C. § 1334(b).  See May 19, 2016 Order, No. 12 Civ. 7322 (S.D.N.Y.) (Dkt. No. 422).  The parties submitted additional briefing in which they agreed that there was bankruptcy jurisdiction.  See No. 12 Civ. 7322 (Dkt. Nos. 428, 430, 441, 443, 475).  U.S. Bank argued in the alternative that there was also complete diversity and filed an amended complaint

adding diversity allegations; UBS never addressed these alternative arguments.  See id. Accordingly, no party raised any of the arguments that Morgan Stanley makes here.

Without the benefit of briefing on why diversity jurisdiction was not present, Judge Castel concluded that the trustee's "interests and obligations" in the litigation were sufficient to apply the Navarro exception, because, as he understood the governing agreements, the trustee was "obligated to enforce UBS's remedial obligations" and "[t]he PSAs do not give the Trusts or the Certificateholders the authority to enforce the PSAs."  U.S. Bank, 205 F. Supp. 3d at 410. Thus, Judge Castel believed that the trustee was the "master of the litigation."  U.S. Bank, 205 F. Supp. 3d at 410 (quoting Oscar Gruss, 337 F.3d at 195).  Whether or not Judge Castel accurately described the PSA in that case, this does not accurately describe the PSA here:  the trustee has no obligation to prosecute this litigation under the PSA, *unless a certificateholder requires it to do so*.  PSA § 10.02(a)(iii) (Weinstein Decl. Ex. B).  Indeed, the PSA gives the certificateholders the explicit authority to enforce the agreements by directing the trustee to make repurchase demands and initiate litigation, as was the case here.  Id.[8]  DBNTC has succinctly explained that, as an "*investor-driven* process for remediating breaches," the "onus of taking action" is on the certificateholders.  Blackrock Joint Mem. at 2 (Weinstein Decl. Ex. A).  And that is precisely how this litigation was precipitated.  See Compl. Ex. 3 at 2 & Ex. A (Dkt. No. 2).

In sum, because DBNTC is not in control of this litigation but is suing as a mere representative of the certificateholders, there is no reason to apply Navarro's rule for "a human trustee sued in her personal name," rather than the general rule that the court must consider the

---

[8] The certificateholders can directly enforce the PSA in the event the trustee refuses to take their direction. PSA § 12.08.  (Weinstein Decl. Ex. B.)

citizenship of the trust.  Because DBNTC has not established the citizenship of all

certificateholders, this case should be dismissed for lack of subject matter jurisdiction.

## II.     THIS CASE IS UNTIMELY PURSUANT TO THE FIRST DEPARTMENT'S RECENT DECISION IN <u>DEUTSCHE BANK</u>

Even if DBNTC could have brought this case in federal court, this Court sitting in

diversity must grant summary judgment pursuant to the First Department's recent decision in

<u>Deutsche Bank</u>, because this action is untimely under California's statute of limitations.[9]

New York federal courts sitting in diversity must apply New York's borrowing statute,

CPLR 202.  <u>See</u> <u>Thea v. Kleinhandler</u>, 807 F.3d 492, 497-98 (2d Cir. 2015).  CPLR 202 provides

that, if the plaintiff is a non-resident, "[a]n action based upon a cause of action accruing without

the state cannot be commenced after the expiration of the time limited by the laws of either the

state or the place without the state where the cause of action accrued."  CPLR 202.  Moreover,

federal courts are "bound to apply the law as interpreted by a state's intermediate appellate

courts unless there is persuasive evidence that the state's highest court would reach a different

conclusion."  <u>V.S. v. Muhammad</u>, 595 F.3d 426, 432 (2d Cir. 2010); <u>see also</u> <u>Guar. Tr. Co. of</u>

<u>N.Y. v. York</u>, 326 U.S. 99, 109 (1945) (holding that federal diversity court must apply the same

statute of limitations as a state court would because "the outcome of the litigation in the federal

court should be substantially the same . . . as it would be if tried in a State court").

---

[9] Morgan Stanley preserved this defense by including it in its answer.  Answer at 17 (Dkt. No. 50); <u>see</u> <u>Santos v. Dist. Council of N.Y.C. & Vicinity of United Bd. of Carpenters & Joiners of Am., AFL-CIO</u>, 619 F.2d 963, 967 (2d Cir. 1980) ("The defense is sufficiently raised for purposes of Rule 8 by its bare assertion. Identification of the particular statute relied upon, though helpful, is not required in the pleading."); <u>Kulzer v. Pittsburgh-Corning Corp.</u>, 942 F.2d 122, 125 (2d Cir. 1991) (holding that "boilerplate" statute of limitations defense preserved defense based on a different statute not identified in motion to dismiss or summary judgment motion).

A.    **Deutsche Bank** **Requires Application of California's Statute of Limitations to DBNTC's Claims**

This action must be dismissed under Deutsche Bank because DBNTC—which purports to invoke this Court's diversity jurisdiction based on its own California residence—has brought claims that accrued in California and are barred by California's statute of limitations.

As the First Department recognized, the "general rule [is] that, in cases where (as here) the alleged injury is purely economic, a cause of action is deemed, for purposes of CPLR 202, to have accrued in the jurisdiction of the plaintiff's residence." Deutsche Bank, 156 A.D.3d at 401 (citing Glob. Fin. Corp. v. Triarc Corp., 93 N.Y.2d 525, 529-30 (1999)). It is undisputed that DBNTC is a resident of California, see Compl. ¶ 6 (Dkt. No. 2); R. 56.1 ¶ 1[10], and therefore its claims accrued in California under this general rule. See Deutsche Bank, 156 A.D.3d at 401; see also Glob. Fin. Corp., 93 N.Y.2d at 530 ("'CPLR 202 is designed to add clarity to the law and to provide the certainty of uniform application to litigants.' This goal is better served by a rule requiring the single determination of a plaintiff's residence than by a rule dependent on a litany of events relevant to the 'center of gravity' of a contract dispute." (quoting Ins. Co. of N. A. v. ABB Power Generation, Inc., 91 N.Y.2d 180, 187 (1997))).

The First Department also noted that it would reach the same conclusion even if it applied the "multi-factor test" proposed by DBNTC. See Deutsche Bank, 156 A.D.3d at 401 (citing Maiden v. Biehl, 582 F. Supp. 1209 (S.D.N.Y. 1984)). Specifically, Deutsche Bank looked at the following factors: (1) whether the Trust was "administered in California"; (2) whether the loans were "originated by California lenders"; (3) whether the loans "encumber[ed] California properties"; and (4) "[t]o the extent the physical location of the notes memorializing

---

[10] "R. 56.1" refers to Defendant's Local Civil Rule 56.1 Statement of Undisputed Materials Facts in Support of Its Renewed Motion for Summary Judgment filed with this memorandum.

the securitized mortgage loans has relevance to the analysis," whether the governing agreements "contemplate[] that the notes may be maintained in California."  Id.[11]

These same factors all point to California here as well.  *First*, DBNTC has admitted that the "principal place of trust administration is in Santa Ana, California."  See Compl. ¶ 6 (Dkt. No. 2); R. 56.1 ¶ 3.  *Second*, nearly all of the loans in the Trust were originated by lenders based in either California, see MSST Prospectus Supplement ("Pro. Supp.") at S-4, S-42 (Weinstein Decl. Ex. D), or Florida.[12]  See R. 56.1 ¶¶ 5-8.  *Third*, the Trust consists of substantially more California and Florida properties than properties in any other state.  See Pro. Supp. at A-3 (Weinstein Decl. Ex. D); R. 56.1 ¶¶ 9-11.  And *fourth*, the governing agreements contemplate that the mortgage notes would be held by DBNTC in California or by Wells Fargo Bank in its custody facility in California.  See Pro. Supp. at S-99-100 (Weinstein Decl. Ex. D) (identifying DBNTC and Wells Fargo Bank as custodians, and noting that Wells Fargo maintains a custody facility in Irvine, California); PSA Ex. G (Weinstein Decl. Ex. B) (form request for Wells Fargo to release mortgage notes addressed to its Irvine, California facility); R. 56.1 ¶¶ 12-14.[13]

---

[11] The Court also looked to whether the governing agreements "contemplate[ ] the payment of state taxes . . . in California," even though it was undisputed that "the trusts have not incurred any state tax liability."  Deutsche Bank, 156 A.D.3d at 401 & n. 3.  At best, this factor is inconclusive here because the PSA is ambiguous regarding the state in which the Trust might have to pay taxes if it lost its preferential tax status.  See PSA § 10.12 (Weinstein Decl. Ex. B).

[12] See *First NLC Financial Services, LLC*, Fla. Dep't of State, Div. of Corps., http://search.sunbiz.org/inquiry/corporationsearch/bydocumentnumber (search for "L99000007784") (attached as Weinstein Decl. Ex. E).

[13] The fact that some of these factors point to Florida does not impact the conclusion that this action is untimely.  Florida's statute of limitations for breach of contract claims is five years, and this action was filed more than five years after the closing date.  See Fla. Stat. § 95.11(2)(b); Glob. Fin. Corp., 93 N.Y.2d at 527 n.1 (holding that breach of contract action would be untimely under Florida's five-year statute of limitations); Med. Jet, S.A. v. Signature Flight Support-Palm Beach, Inc., 941 So. 2d 576, 578 (Fla. Dist. Ct. App. 2006) (holding that, under Florida law, a breach of contract accrues at the time of breach and the "delayed discovery doctrine" does not apply (citing Ely-Cruikshank Co., Inc. v. Bank of Montreal, 81 N.Y.2d 399 (1993); ABB Indus. Sys., Inc. v. Prime Tech., Inc., 120 F.3d 351 (2d Cir. 1997))).

By contrast, there are no relevant factors pointing to New York, or any other state where the injury could be felt.  The Court of Appeals has rejected arguments that the injury for a breach of contract should be deemed to occur in New York simply because that was "where the contract was negotiated, executed, substantially performed and breached," or because "the parties in their contract chose the forum and law of New York."  Glob. Fin. Corp., 93 N.Y.2d at 528, 530 (citing Ins. Co. of N. Am., 91 N.Y.2d 180).  Moreover, the residence of the dispersed certificateholders is irrelevant to the CPLR 202 analysis.  See Deutsche Bank, 156 A.D.3d at 401 n.4 ("[T]he certificates of interest in the trust held by its beneficiaries are irrelevant to the analysis because such certificates are not part of the trust corpus.").  Whether under the plaintiff-residence rule or the multi-factor test, Deutsche Bank leads to the conclusion that the California statute of limitations applies.

**B.    Like Deutsche Bank, This Case Is Untimely Under California's Statute of Limitations**

DBNTC cannot satisfy California's four-year statute of limitations here.  See Deutsche Bank, 156 A.D.3d at 403 (citing Cal. Civ. P. § 337 (2017)).  The First Department concluded that "the alleged breaches of representations and warranties occurred . . . when allegedly nonconforming mortgage loans were deposited into the trust pools," because "[u]nder California law, plaintiff's claims for the alleged breaches accrued 'at the time of the sale.'"  See id. at 401 (quoting Mary Pickford Co. v. Bayly Bros., Inc., 86 P.2d 102, 112 (Cal. 1939)).  Moreover, the First Department concluded that DBNTC's failure to demand cure or repurchase did not delay accrual, and that California's discovery rule did not toll the California limitations period because the trustee had access to all the materials necessary to discover the breaches at closing.  Id. (citing Meherin v. S.F. Produce Exch., 48 P. 1074, 1075 (Cal. 1897); Taketa v. State Bd. of Equalization, 231 P.2d 873, 875 (Cal. Ct. App. 1951); April Enters., Inc. v. KTTV, 195 Cal.

Rptr. 421 (Cal. Dist. Ct. 1983)).  This Court is obligated to apply this understanding of California's statute of limitations.  See Rogers v. Grimaldi, 875 F.2d 994, 1002-03, 1002 n.10 (2d Cir. 1989) (noting that "a diversity court . . . is obliged to apply whatever substantive standards the forum state uses in predicting the content of foreign law"); Nolan v. Transocean Air Lines, 276 F.2d 280, 281 (2d Cir. 1960) ("Our principal task, in this diversity of citizenship case, is to determine what the New York courts would think the California courts would think on an issue . . . ."), vacated on other grounds, 365 U.S. 293, 295-96 (1961) (vacating based on intervening California decision, but directing Second Circuit to "decide what relative weights . . . the New York Court of Appeals would accord to" two competing lines of California cases); Lembcke v. United States, 181 F.2d 703, 706 (2d Cir. 1950) ("If this were a diversity case, . . . we should have to follow the New York conception of the Pennsylvania law.").

Thus, under Deutsche Bank, DBNTC's claims accrued on July 6, 2007, the closing date of the Trust, see PSA § 1.01 (Weinstein Decl. Ex. B); R. 56.1 ¶ 4, and expired in July 2011— nearly two years before DBNTC even served its repurchase demand in this case.  The complaint, filed April 28, 2014, is therefore time barred.

DBNTC's cause of action for failure to notify does not salvage its complaint because DBNTC's theory is that Morgan Stanley was aware of widespread breaches during its pre-securitization due diligence—well over four years before the complaint was filed—rather than that Morgan Stanley first learned of such alleged breaches within four years of the filing of the complaint.  See Jan. 25, 2018 Opinion & Order at 41 (Dkt. No. 145) ("The import of Deutsche Bank's allegation is that, by virtue of Morgan Stanley's due diligence, it had knowledge of *each and every* MSST 2007-1 loan that contained a material breach." (emphasis in original)).  Accordingly, DBNTC's failure to notify cause of action is time-barred as well.

## <u>CONCLUSION</u>

For the reasons set forth above, Morgan Stanley respectfully requests that the Court grant

judgment on the pleadings and dismiss DBNTC's complaint for lack of subject matter

jurisdiction or, in the alternative, grant summary judgment in Morgan Stanley's favor based on

its statute of limitations defense.

Dated:   New York, New York          DAVIS POLK & WARDWELL LLP
         February 5, 2018

                                     By:    /s/ Brian S. Weinstein
                                            Brian S. Weinstein
                                            Elisabeth Grippando
                                            Alan J. Tabak
                                            Matthew Cormack
                                            Craig T. Cagney

                                     450 Lexington Avenue
                                     New York, New York 10017
                                     (212) 450-4000
                                     brian.weinstein@davispolk.com
                                     elisabeth.grippando@davispolk.com
                                     alan.tabak@davispolk.com
                                     matthew.cormack@davispolk.com
                                     craig.cagney@davispolk.com

                                     *Attorneys for Defendant*