# Exhibit B – Part 1

BEAR STEARNS ASSET BACKED SECURITIES I LLC

Depositor

WELLS FARGO BANK, NATIONAL ASSOCIATION

Master Servicer and Securities Administrator

and

DEUTSCHE BANK NATIONAL TRUST COMPANY

Trustee

POOLING AND SERVICING AGREEMENT

Dated as of June 1, 2007

MORGAN STANLEY STRUCTURED TRUST I 2007-1

ASSET-BACKED CERTIFICATES, SERIES 2007-1

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

# TABLE OF CONTENTS

                                                                            Page

ARTICLE I DEFINITIONS                                                          9
Section 1.01      Defined Terms. .....................................................................9
Section 1.02      Allocation of Certain Interest Shortfalls. ..................................62

ARTICLE II CONVEYANCE OF TRUST FUND REPRESENTATIONS AND WARRANTIES64
Section 2.01      Conveyance of Trust Fund. ...............................................64
Section 2.02      Acceptance of the Mortgage Loans. ....................................65
Section 2.03      Representations, Warranties and Covenants of the Master Servicer and
                  Securities Administrator. ...................................................67
Section 2.04      Representations and Warranties of the Depositor. ......................69
Section 2.05      Delivery of Opinion of Counsel in Connection with Substitutions and
                  Repurchases. ..................................................................70
Section 2.06      Countersignature and Delivery of Certificates. ........................71
Section 2.07      Purposes and Powers of the Trust. ......................................72

ARTICLE III [RESERVED]                                                        73

     ARTICLE IV ADMINISTRATION AND MASTER SERVICING OF MORTGAGE LOANS
     BY MASTER SERVICER                                                       74
Section 4.01      Master Servicer. .............................................................74
Section 4.02      REMIC-Related Covenants. ..............................................75
Section 4.03      Monitoring of the Servicers. .............................................76
Section 4.04      Fidelity Bond. ...............................................................77
Section 4.05      Power to Act; Procedures. ................................................78
Section 4.06      Due-on-Sale Clauses; Assumption Agreements. ........................78
Section 4.07      Release of Mortgage Files. ...............................................79
Section 4.08      Documents, Records and Funds in Possession of Master Servicer and
                  Servicer To Be Held for Trustee. ........................................80
Section 4.09      Standard Hazard Insurance and Flood Insurance Policies. .............80
Section 4.10      Presentment of Claims and Collection of Proceeds. ....................81
Section 4.11      Maintenance of the Primary Mortgage Insurance Policies. .............81
Section 4.12      Trustee to Retain Possession of Certain Insurance Policies and
                  Documents. ..................................................................82
Section 4.13      Realization Upon Defaulted Mortgage Loans. ..........................82
Section 4.14      Compensation for the Master Servicer. .................................82
Section 4.15      REO Property. ...............................................................82
Section 4.16      Annual Statement as to Compliance. ...................................83
Section 4.17      Assessments of Compliance and Attestation Reports. ..................84
Section 4.18      Reports Filed with Securities and Exchange Commission. .............87
Section 4.19      Intention of the Parties and Interpretation. ............................96
Section 4.20      UCC. ..........................................................................96
Section 4.21      Optional Purchase of Certain Mortgage Loans. ........................96

i

CONFIDENTIAL                                    MSM_MSSTI_20071_0001490

Section 4.22    Reserve Fund; Payments to and from Swap Administrator;
                Supplemental Interest Trust; Yield Maintenance Agreement.........................97
Section 4.23    Tax Treatment of Class IO Distribution Amounts in the Event of
                Resecuritization of Class A, Class M or Class B Certificates. ......................103

ARTICLE V ACCOUNTS                                                                              105

Section 5.01    Master Servicer Account....................................................................105
Section 5.02    Distribution Account.........................................................................105
Section 5.03    Permitted Withdrawals and Transfers from the Distribution Account. .........107
Section 5.04    Yield Maintenance Credit Support Annex:.............................................109

ARTICLE VI DISTRIBUTIONS AND ADVANCES                                                           112

Section 6.01    Advances.......................................................................................112
Section 6.02    Compensating Interest Payments.........................................................112
Section 6.03    REMIC Distributions........................................................................112
Section 6.04    Distributions...................................................................................113
Section 6.05    Allocation of Realized Losses. ...........................................................117
Section 6.06    Monthly Statements to Certificateholders. .............................................119
Section 6.07    REMIC Designations and REMIC Distributions......................................123
Section 6.08    Class P Certificate Account. ..............................................................126

ARTICLE VII THE CERTIFICATES                                                                    127

Section 7.01    The Certificates...............................................................................127
Section 7.02    Certificate Register; Registration of Transfer and Exchange of
                Certificates. ...................................................................................128
Section 7.03    Mutilated, Destroyed, Lost or Stolen Certificates. ..................................136
Section 7.04    Persons Deemed Owners. ..................................................................136
Section 7.05    Access to List of Certificateholders' Names and Addresses. ......................136
Section 7.06    Book-Entry Certificates. ...................................................................136
Section 7.07    Notices to Depository. ......................................................................137
Section 7.08    Definitive Certificates.......................................................................138
Section 7.09    Maintenance of Office or Agency.........................................................138

ARTICLE VIII THE MASTER SERVICER                                                                139

Section 8.01    Liabilities of the Depositor and the Master Servicer. ................................139
Section 8.02    Merger or Consolidation of the Depositor or the Master Servicer. ...............139
Section 8.03    Indemnification of the Trustee, the Master Servicer and the Securities
                Administrator. .................................................................................139
Section 8.04    Limitations on Liability of the Depositor, the Master Servicer and
                Others...........................................................................................140
Section 8.05    Master Servicer Not to Resign. ...........................................................141
Section 8.06    Successor Master Servicer. ................................................................141
Section 8.07    Sale and Assignment of Master Servicing.............................................141

ARTICLE IX DEFAULT; TERMINATION OF MASTER SERVICER;                                             143

Section 9.01    Events of Default. ...........................................................................143

ii

CONFIDENTIAL

Section 9.02    Trustee to Act; Appointment of Successor. ...................................................145
Section 9.03    Notification to Certificateholders and Rating Agencies. ...............................146
Section 9.04    Waiver of Defaults. ........................................................................................146

ARTICLE X CONCERNING THE TRUSTEE AND THE SECURITIES ADMINISTRATOR148

Section 10.01   Duties of Trustee and Securities Administrator. ...........................................148
Section 10.02   Certain Matters Affecting the Trustee and the Securities
                Administrator. .................................................................................................150
Section 10.03   Trustee and Securities Administrator Not Liable for Certificates or
                Mortgage Loans. ............................................................................................154
Section 10.04   Trustee and Securities Administrator May Own Certificates. ......................154
Section 10.05   Trustee's and Securities Administrator's Fees and Expenses........................154
Section 10.06   Eligibility Requirements for Trustee and Securities Administrator. .............155
Section 10.07   Insurance. .......................................................................................................155
Section 10.08   Resignation and Removal of Trustee and Securities Administrator..............156
Section 10.09   Successor Trustee or Securities Administrator. .............................................157
Section 10.10   Merger or Consolidation of Trustee or Securities Administrator. ................157
Section 10.11   Appointment of Co-Trustee or Separate Trustee. .........................................157
Section 10.12   Tax Matters. ...................................................................................................159

ARTICLE XI TERMINATION                                                                    163

Section 11.01   Termination upon Liquidation or Repurchase of all Mortgage Loans. .........163
Section 11.02   Final Distribution on the Certificates. ...........................................................165
Section 11.03   Additional Termination Requirements. ..........................................................166

ARTICLE XII MISCELLANEOUS PROVISIONS                                                      168

Section 12.01   Amendment. ....................................................................................................168
Section 12.02   Recordation of Agreement; Counterparts. ......................................................169
Section 12.03   Governing Law. ..............................................................................................170
Section 12.04   Intention of Parties. ........................................................................................170
Section 12.05   Notices. ...........................................................................................................170
Section 12.06   Severability of Provisions. .............................................................................171
Section 12.07   Assignment. ....................................................................................................172
Section 12.08   Limitation on Rights of Certificateholders. ...................................................172
Section 12.09   Inspection and Audit Rights. ..........................................................................172
Section 12.10   Certificates Nonassessable and Fully Paid. ...................................................173
Section 12.11   Third Party Rights. .........................................................................................173

iii

CONFIDENTIAL

MSM_MSSTI 20071  0001492

Exhibits
Exhibit A-1          Form of Class A Certificates
Exhibit A-2          Form of Class M Certificates
Exhibit A-3          Form of Class B Certificates
Exhibit A-4          Form of Class C Certificates
Exhibit A-5          Form of Class P Certificates
Exhibit A-6          Form of Class R Certificates
Exhibit B            Mortgage Loan Schedule
Exhibit C            Form of Transfer Affidavit
Exhibit D            Form of Transferor Certificate
Exhibit E            Form of Investment Letter (Non-Rule 144A)
Exhibit F            Form of Rule 144A and Related Matters Certificate
Exhibit G            Form of Request for Release
Exhibit H            DTC Letter of Representations
Exhibit I            Schedule of Mortgage Loans with Lost Notes
Exhibit J-1          Form of Deutsche Bank Custodial Agreement
Exhibit J-2          Form of Wells Fargo Custodial Agreement
Exhibit K            Form of Back-Up Certification to Form 10-K Certificate
Exhibit L            Form of Mortgage Loan Purchase Agreement
Exhibit M-1          Swap Agreement
Exhibit M-2          Yield Maintenance Agreement
Exhibit N            Servicing Criteria to Be Addressed in Assessment of Compliance
Exhibit O            Form 10-D, Form 8-K and Form 10-K Reporting Responsibility
Exhibit P            Additional Disclosure Notification
Exhibit Q-1          Countrywide Servicing Agreement
Exhibit Q-2          Saxon Servicing Agreement
Exhibit Q-3          Wells Fargo Servicing Agreement
Exhibit R-1          Countrywide Assignment, Assumption and Recognition Agreement
Exhibit R-2          Saxon Assignment, Assumption and Recognition Agreement
Exhibit R-3          Wells Fargo Assignment, Assumption and Recognition Agreement
Exhibit S            Reporting Data for Monthly Report
Exhibit T            Reporting Data for Defaulted Loans
Exhibit U            Reporting Data for Realized Losses and Gains
Exhibit V            Form of Certification to be provided by the Securities Administrator to the Depositor

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL

MSM_MSSTI_20071_0001493

This POOLING AND SERVICING AGREEMENT, dated as of June 1, 2007, is among BEAR STEARNS ASSET BACKED SECURITIES I LLC, a Delaware limited liability company, as depositor (the "Depositor"), WELLS FARGO BANK, NATIONAL ASSOCIATION, a national banking association, as master servicer (in such capacity, the "Master Servicer") and as securities administrator (in such capacity, the "Securities Administrator"), and DEUTSCHE BANK NATIONAL TRUST COMPANY, a national banking association, as trustee (the "Trustee").

PRELIMINARY STATEMENT

The Depositor is the owner of the Trust Fund that is hereby conveyed to the Trustee in return for the Certificates.

REMIC I

As provided herein, the Securities Administrator on behalf of the Trustee shall elect to treat the segregated pool of assets consisting of the Mortgage Loans and certain other related assets subject to this Agreement (other than the Reserve Fund, the Yield Maintenance Agreement, the Yield Maintenance Collateral Account and any Prepayment Charge Waiver Amounts and, for the avoidance of doubt, the Supplemental Interest Trust, the Swap Agreement, the Swap Account, the Swap Collateral Account and any rights or obligations in respect of the Swap Administration Agreement) as a REMIC for federal income tax purposes, and such segregated pool of assets will be designated as "REMIC I". The Class R-1 Certificates will represent the sole class of Residual Interests in REMIC I for purposes of the REMIC Provisions. The following table irrevocably sets forth the designation, the Uncertificated REMIC I Pass-Through Rate, the initial Uncertificated Principal Balance and, for purposes of satisfying Treasury Regulation Section 1.860G-1(a)(4)(iii), the "latest possible maturity date" for each of the REMIC I Regular Interests. None of the REMIC I Regular Interests will be certificated.

| Designation | Uncertificated REMIC I Pass-Through Rate | Initial Uncertificated Principal Balance | Latest Possible Maturity Date [1] |
|---|---|---|---|
| I-Non-Swap-Cash | 0.00% | $ 594.37 | June 25, 2037 |
| I-Non-Swap | Variable[2] | $ 285,836,780.36 | June 25, 2037 |
| I-13-A | Variable[2] | $ 9,191,200.50 | June 25, 2037 |
| I-13-B | Variable[2] | $ 9,191,200.50 | June 25, 2037 |
| I-14-A | Variable[2] | $ 9,008,667.55 | June 25, 2037 |
| I-14-B | Variable[2] | $ 9,008,667.55 | June 25, 2037 |
| I-15-A | Variable[2] | $ 8,583,501.90 | June 25, 2037 |
| I-15-B | Variable[2] | $ 8,583,501.90 | June 25, 2037 |
| I-16-A | Variable[2] | $ 8,302,861.80 | June 25, 2037 |
| I-16-B | Variable[2] | $ 8,302,861.80 | June 25, 2037 |
| I-17-A | Variable[2] | $ 7,962,398.60 | June 25, 2037 |
| I-17-B | Variable[2] | $ 7,962,398.60 | June 25, 2037 |
| I-18-A | Variable[2] | $ 7,547,087.95 | June 25, 2037 |
| I-18-B | Variable[2] | $ 7,547,087.95 | June 25, 2037 |
| I-19-A | Variable[2] | $ 7,565,985.60 | June 25, 2037 |
| I-19-B | Variable[2] | $ 7,565,985.60 | June 25, 2037 |

1

CONFIDENTIAL

MSM_MSSTI_20071_0001494

| Designation | Uncertificated REMIC I Pass-Through Rate | Initial Uncertificated Principal Balance | Latest Possible Maturity Date [1] |
|---|---|---|---|
| I-20-A | Variable[2] | $ 11,423,710.60 | June 25, 2037 |
| I-20-B | Variable[2] | $ 11,423,710.60 | June 25, 2037 |
| I-21-A | Variable[2] | $ 13,240,299.50 | June 25, 2037 |
| I-21-B | Variable[2] | $ 13,240,299.50 | June 25, 2037 |
| I-22-A | Variable[2] | $ 6,549,365.70 | June 25, 2037 |
| I-22-B | Variable[2] | $ 6,549,365.70 | June 25, 2037 |
| I-23-A | Variable[2] | $ 5,777,194.40 | June 25, 2037 |
| I-23-B | Variable[2] | $ 5,777,194.40 | June 25, 2037 |
| I-24-A | Variable[2] | $ 5,355,387.70 | June 25, 2037 |
| I-24-B | Variable[2] | $ 5,355,387.70 | June 25, 2037 |
| I-25-A | Variable[2] | $ 5,445,987.80 | June 25, 2037 |
| I-25-B | Variable[2] | $ 5,445,987.80 | June 25, 2037 |
| I-26-A | Variable[2] | $ 9,417,952.25 | June 25, 2037 |
| I-26-B | Variable[2] | $ 9,417,952.25 | June 25, 2037 |
| I-27-A | Variable[2] | $ 11,390,710.20 | June 25, 2037 |
| I-27-B | Variable[2] | $ 11,390,710.20 | June 25, 2037 |
| I-28-A | Variable[2] | $ 4,650,930.85 | June 25, 2037 |
| I-28-B | Variable[2] | $ 4,650,930.85 | June 25, 2037 |
| I-29-A | Variable[2] | $ 3,972,136.50 | June 25, 2037 |
| I-29-B | Variable[2] | $ 3,972,136.50 | June 25, 2037 |
| I-30-A | Variable[2] | $ 3,648,591.85 | June 25, 2037 |
| I-30-B | Variable[2] | $ 3,648,591.85 | June 25, 2037 |
| I-31-A | Variable[2] | $ 3,672,394.65 | June 25, 2037 |
| I-31-B | Variable[2] | $ 3,672,394.65 | June 25, 2037 |
| I-32-A | Variable[2] | $ 5,980,005.10 | June 25, 2037 |
| I-32-B | Variable[2] | $ 5,980,005.10 | June 25, 2037 |
| I-33-A | Variable[2] | $ 9,422,447.80 | June 25, 2037 |
| I-33-B | Variable[2] | $ 9,422,447.80 | June 25, 2037 |
| I-34-A | Variable[2] | $ 7,543,633.90 | June 25, 2037 |
| I-34-B | Variable[2] | $ 7,543,633.90 | June 25, 2037 |
| I-35-A | Variable[2] | $ 5,966,929.35 | June 25, 2037 |
| I-35-B | Variable[2] | $ 5,966,929.35 | June 25, 2037 |
| I-36-A | Variable[2] | $ 2,096,595.35 | June 25, 2037 |
| I-36-B | Variable[2] | $ 2,096,595.35 | June 25, 2037 |
| I-37-A | Variable[2] | $ 1,993,037.81 | June 25, 2037 |
| I-37-B | Variable[2] | $ 1,993,037.81 | June 25, 2037 |
| I-38-A | Variable[2] | $ 2,005,618.95 | June 25, 2037 |
| I-38-B | Variable[2] | $ 2,005,618.95 | June 25, 2037 |
| I-39-A | Variable[2] | $ 4,273,687.30 | June 25, 2037 |
| I-39-B | Variable[2] | $ 4,273,687.30 | June 25, 2037 |
| I-40-A | Variable[2] | $ 6,209,814.89 | June 25, 2037 |
| I-40-B | Variable[2] | $ 6,209,814.89 | June 25, 2037 |
| I-41-A | Variable[2] | $ 4,980,582.65 | June 25, 2037 |
| I-41-B | Variable[2] | $ 4,980,582.65 | June 25, 2037 |

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL

MSM_MSSTI_20071_0001495

| Designation | Uncertificated REMIC I Pass-Through Rate | Initial Uncertificated Principal Balance | Latest Possible Maturity Date [1] |
|---|---|---|---|
| I-42-A | Variable[2] | $ 1,177,308.28 | June 25, 2037 |
| I-42-B | Variable[2] | $ 1,177,308.28 | June 25, 2037 |
| I-43-A | Variable[2] | $ 1,125,098.31 | June 25, 2037 |
| I-43-B | Variable[2] | $ 1,125,098.31 | June 25, 2037 |
| I-44-A | Variable[2] | $ 1,135,200.47 | June 25, 2037 |
| I-44-B | Variable[2] | $ 1,135,200.47 | June 25, 2037 |
| I-45-A | Variable[2] | $ 2,432,693.62 | June 25, 2037 |
| I-45-B | Variable[2] | $ 2,432,693.62 | June 25, 2037 |
| I-46-A | Variable[2] | $ 3,536,115.70 | June 25, 2037 |
| I-46-B | Variable[2] | $ 3,536,115.70 | June 25, 2037 |
| I-47-A | Variable[2] | $ 2,840,201.32 | June 25, 2037 |
| I-47-B | Variable[2] | $ 2,840,201.32 | June 25, 2037 |
| I-48-A | Variable[2] | $ 672,612.36 | June 25, 2037 |
| I-48-B | Variable[2] | $ 672,612.36 | June 25, 2037 |
| I-49-A | Variable[2] | $ 642,517.50 | June 25, 2037 |
| I-49-B | Variable[2] | $ 642,517.50 | June 25, 2037 |
| I-50-A | Variable[2] | $ 620,486.70 | June 25, 2037 |
| I-50-B | Variable[2] | $ 620,486.70 | June 25, 2037 |
| I-51-A | Variable[2] | $ 599,202.19 | June 25, 2037 |
| I-51-B | Variable[2] | $ 599,202.19 | June 25, 2037 |
| I-52-A | Variable[2] | $ 578,639.03 | June 25, 2037 |
| I-52-B | Variable[2] | $ 578,639.03 | June 25, 2037 |
| I-53-A | Variable[2] | $ 558,773.13 | June 25, 2037 |
| I-53-B | Variable[2] | $ 558,773.13 | June 25, 2037 |
| I-54-A | Variable[2] | $ 539,581.20 | June 25, 2037 |
| I-54-B | Variable[2] | $ 539,581.20 | June 25, 2037 |
| I-55-A | Variable[2] | $ 521,040.68 | June 25, 2037 |
| I-55-B | Variable[2] | $ 521,040.68 | June 25, 2037 |
| I-56-A | Variable[2] | $ 509,533.15 | June 25, 2037 |
| I-56-B | Variable[2] | $ 509,533.15 | June 25, 2037 |
| I-57-A | Variable[2] | $ 508,490.45 | June 25, 2037 |
| I-57-B | Variable[2] | $ 508,490.45 | June 25, 2037 |
| I-58-A | Variable[2] | $ 507,764.38 | June 25, 2037 |
| I-58-B | Variable[2] | $ 507,764.38 | June 25, 2037 |
| I-59-A | Variable[2] | $ 577,279.26 | June 25, 2037 |
| I-59-B | Variable[2] | $ 577,279.26 | June 25, 2037 |
| I-60-A | Variable[2] | $ 435,284.83 | June 25, 2037 |
| I-60-B | Variable[2] | $ 435,284.83 | June 25, 2037 |
| I-61-A | Variable[2] | $ 414,070.87 | June 25, 2037 |
| I-61-B | Variable[2] | $ 414,070.87 | June 25, 2037 |
| I-62-A | Variable[2] | $ 406,383.31 | June 25, 2037 |
| I-62-B | Variable[2] | $ 406,383.31 | June 25, 2037 |
| I-63-A | Variable[2] | $ 409,211.04 | June 25, 2037 |
| I-63-B | Variable[2] | $ 409,211.04 | June 25, 2037 |

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL

MSM_MSSTI_20071_0001496

| Designation | Uncertificated REMIC I Pass-Through Rate | Initial Uncertificated Principal Balance | Latest Possible Maturity Date [1] |
|---|---|---|---|
| I-64-A | Variable[2] | $ 412,046.13 | June 25, 2037 |
| I-64-B | Variable[2] | $ 412,046.13 | June 25, 2037 |
| I-65-A | Variable[2] | $ 485,733.78 | June 25, 2037 |
| I-65-B | Variable[2] | $ 485,733.78 | June 25, 2037 |
| I-66-A | Variable[2] | $ 345,363.82 | June 25, 2037 |
| I-66-B | Variable[2] | $ 345,363.82 | June 25, 2037 |
| I-67-A | Variable[2] | $ 327,211.37 | June 25, 2037 |
| I-67-B | Variable[2] | $ 327,211.37 | June 25, 2037 |
| I-68-A | Variable[2] | $ 319,768.92 | June 25, 2037 |
| I-68-B | Variable[2] | $ 319,768.92 | June 25, 2037 |
| I-69-A | Variable[2] | $ 318,428.99 | June 25, 2037 |
| I-69-B | Variable[2] | $ 318,428.99 | June 25, 2037 |
| I-70-A | Variable[2] | $ 317,152.43 | June 25, 2037 |
| I-70-B | Variable[2] | $ 317,152.43 | June 25, 2037 |
| I-71-A | Variable[2] | $ 356,289.59 | June 25, 2037 |
| I-71-B | Variable[2] | $ 356,289.59 | June 25, 2037 |
| I-72-A | Variable[2] | $ 273,700.47 | June 25, 2037 |
| I-72-B | Variable[2] | $ 273,700.47 | June 25, 2037 |
| I-73-A | Variable[2] | $ 260,758.85 | June 25, 2037 |
| I-73-B | Variable[2] | $ 260,758.85 | June 25, 2037 |
| I-74-A | Variable[2] | $ 7,288,883.45 | June 25, 2037 |
| I-74-B | Variable[2] | $ 7,288,883.45 | June 25, 2037 |
| P | 0.00% | $ 100.00 | June 25, 2037 |

---

[1]   For purposes of Section 1.860G-1(a)(4)(iii) of the Treasury Regulations, the Distribution Date in the month following the maturity date for the Mortgage Loan with the latest maturity date has been designated as the "latest possible maturity date" for each REMIC I Regular Interest.

[2]   Calculated in accordance with the definition of "Uncertificated REMIC I Pass-Through Rate" herein.

<u>REMIC II</u>

As provided herein, the Securities Administrator on behalf of the Trustee shall elect to treat the segregated pool of assets consisting of the REMIC I Regular Interests as a REMIC for federal income tax purposes, and such segregated pool of assets will be designated as "REMIC II". The Class R-2 Certificates will represent the sole class of Residual Interests in REMIC II for purposes of the REMIC Provisions. The following table irrevocably sets forth the designation, the Uncertificated REMIC II Pass-Through Rate, the initial Uncertificated Principal Balance and, for purposes of satisfying Treasury Regulation Section 1.860G-1(a)(4)(iii), the "latest possible maturity date" for each of the REMIC II Regular Interests. None of the REMIC II Regular Interests will be certificated.

| Designation | Uncertificated REMIC II Pass-Through Rate | Initial Uncertificated Principal Balance | Latest Possible Maturity Date [1] |
|---|---|---|---|
| AA | Variable[2] | $ 720,398,454.55 | June 25, 2037 |

4

CONFIDENTIAL

| | | | | |
|---|---|---|---|---|
| A-1 | Variable[2] | $ | 3,158,350.00 | June 25, 2037 |
| A-2 | Variable[2] | $ | 267,100.00 | June 25, 2037 |
| A-3 | Variable[2] | $ | 1,275,950.00 | June 25, 2037 |
| A-4 | Variable[2] | $ | 786,120.00 | June 25, 2037 |
| M-1 | Variable[2] | $ | 378,580.00 | June 25, 2037 |
| M-2 | Variable[2] | $ | 275,660.00 | June 25, 2037 |
| M-3 | Variable[2] | $ | 154,370.00 | June 25, 2037 |
| M-4 | Variable[2] | $ | 139,670.00 | June 25, 2037 |
| M-5 | Variable[2] | $ | 117,620.00 | June 25, 2037 |
| M-6 | Variable[2] | $ | 77,190.00 | June 25, 2037 |
| B-1 | Variable[2] | $ | 113,940.00 | June 25, 2037 |
| B-2 | Variable[2] | $ | 91,890.00 | June 25, 2037 |
| B-3 | Variable[2] | $ | 121,290.00 | June 25, 2037 |
| B-4 | Variable[2] | $ | 99,230.00 | June 25, 2037 |
| ZZ | Variable[2] | $ | 7,645,049.28 | June 25, 2037 |
| IO | [2] | | [3] | June 25, 2037 |
| P | 0.00% | $ | 100.00 | June 25, 2037 |

[1]   For purposes of Section 1.860G-1(a)(4)(iii) of the Treasury Regulations, the Distribution Date in the month following the maturity date for the Mortgage Loan with the latest maturity date has been designated as the "latest possible maturity date" for each REMIC II Regular Interest.

[2]   Calculated in accordance with the definition of "Uncertificated REMIC II Pass-Through Rate" herein.

[3]   REMIC II Regular Interest IO will not have an Uncertificated Principal Balance but will accrue interest on its uncertificated notional amount calculated in accordance with the definition of "Uncertificated Notional Amount" herein.

## REMIC III

As provided herein, the Securities Administrator on behalf of the Trustee shall elect to treat the segregated pool of assets consisting of the REMIC II Regular Interests as a REMIC for federal income tax purposes, and such segregated pool of assets will be designated as "REMIC III". The Class R-3 Certificates will represent the sole class of Residual Interests in REMIC III for purposes of the REMIC Provisions.

The following table irrevocably sets forth the designation, Pass-Through Rate, Initial Certificate Principal Balance (or initial Uncertificated Principal Balance, in the case of the Class CE Interest, Class P Interest or Class IO Interest) and, for purposes of satisfying Treasury Regulation Section 1.860G-1(a)(4)(iii), the "latest possible maturity date" for each class of Certificates and interests that represents ownership of Regular Interests in REMIC III created hereunder.

Each Certificate, other than the Class P, Class CE and Class R Certificates, represents ownership of a Regular Interest in REMIC III and also represents (i) the right to receive certain amounts specified herein in respect of Basis Risk Shortfall Carry Forward Amounts and (ii) the obligation to pay Class IO Distribution Amounts. The entitlement to principal of the Regular Interest which corresponds to each Certificate shall be equal in amount and timing to the entitlement to principal of such Certificate.

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL

MSM_MSSTI_20071_0001498

| Designation | Initial Certificate or Uncertificated Principal Balance | Pass-Through Rate | Latest Possible Maturity Date[1] |
|---|---|---|---|
| A-1[2] | $315,835,000.00 | Class A-1 Pass-Through Rate[3] | June 25, 2037 |
| A-2[2] | $26,710,000.00 | Class A-2 Pass-Through Rate[3] | June 25, 2037 |
| A-3[2] | $127,595,000.00 | Class A-3 Pass-Through Rate[3] | June 25, 2037 |
| A-4[2] | $78,612,000.00 | Class A-4 Pass-Through Rate[3] | June 25, 2037 |
| M-1[2] | $37,858,000.00 | Class M-1 Pass-Through Rate[3] | June 25, 2037 |
| M-2[2] | $27,566,000.00 | Class M-2 Pass-Through Rate[3] | June 25, 2037 |
| M-3[2] | $15,437,000.00 | Class M-3 Pass-Through Rate[3] | June 25, 2037 |
| M-4[2] | $13,967,000.00 | Class M-4 Pass-Through Rate[3] | June 25, 2037 |
| M-5[2] | $11,762,000.00 | Class M-5 Pass-Through Rate[3] | June 25, 2037 |
| M-6[2] | $7,719,000.00 | Class M-6 Pass-Through Rate[3] | June 25, 2037 |
| B-1[2] | $11,394,000.00 | Class B-1 Pass-Through Rate[3] | June 25, 2037 |
| B-2[2] | $9,189,000.00 | Class B-2 Pass-Through Rate[3] | June 25, 2037 |
| B-3[2] | $12,129,000.00 | Class B-3 Pass-Through Rate[3] | June 25, 2037 |
| B-4[2] | $9,923,000.00 | Class B-4 Pass-Through Rate[3] | June 25, 2037 |
| Class CE Interest | $29,404,463.83 | Class CE Pass-Through Rate[4] | June 25, 2037 |
| Class IO Interest | [5] | [6] | June 25, 2037 |
| Class P Interest | $100 | 0.00% | June 25, 2037 |

[1]   For purposes of Section 1.860G-1(a)(4)(iii) of the Treasury Regulations, the Distribution Date in the month following the maturity date for the Mortgage Loan with the latest maturity date has been designated as the "latest possible maturity date" for each Class of Class A, Class M and Class B Certificates and the Class CE Interest and the Class P Interest.

[2]   This Class of Certificates represents ownership of a Regular Interest in REMIC III. Any amount distributed on this Class of Certificates on any Distribution Date in excess of the amount distributable on the related Regular Interest in REMIC III on such Distribution Date shall be treated for federal income tax purposes as having been paid from the Reserve Fund or the Supplemental Interest Trust, as applicable, and any amount distributable on the related Regular Interest in REMIC III on such Distribution Date in excess of the amount distributable on such Class of Certificates on such Distribution Date shall be treated for such purposes as having been distributed to the Holders of such Certificates and then paid by such Holders to the Supplemental Interest Trust, all pursuant to and as further provided in Section 4.22 hereof.

[3]   Each Regular Interest in REMIC III which corresponds to a Class A, Class M or Class B Certificate will have the same Pass-Through Rate as such Certificate, except with respect to the Net Rate Cap. The Net Rate Cap for each such Regular Interest in REMIC III and Certificate is specified in the definition of "Net Rate Cap."

[4]   The Class CE Interest will not accrue interest on its Uncertificated Principal Balance, but will accrue interest at the Class CE Pass-Through Rate on its Uncertificated Notional Amount, which shall equal the aggregate Uncertificated Principal Balance of the REMIC II Regular Interests (other than REMIC II Regular Interest P).

[5]   For federal income tax purposes, the Class IO Interest will not have an Uncertificated Principal Balance, but will have a notional amount equal to the Uncertificated Notional Amount for REMIC II Regular Interest IO.

[6]   For federal income tax purposes, the Class IO Interest will not have a Pass-Through Rate, but will be entitled to 100% of the amounts distributed on REMIC II Regular Interest IO.

REMIC IV

6

[TPW: NYLEGAL:691857.8] 17297-00533   11/15/2007 06:00 PM

CONFIDENTIAL

MSM_MSSTI_20071_0001499

As provided herein, the Securities Administrator on behalf of the Trustee shall elect to treat the segregated pool of assets consisting of the Class CE Interest as a REMIC for federal income tax purposes, and such segregated pool of assets will be designated as "REMIC IV". The Class R-4 Interest will represent the sole class of Residual Interests in REMIC IV for purposes of the REMIC Provisions.

The following table sets forth the Class designation, Pass-Through Rate, Initial Certificate Principal Balance and, for purposes of satisfying Treasury Regulation Section 1.860G-1(a)(4)(iii), the "latest possible maturity date" for the indicated Class of Certificates that represents a Regular Interest in REMIC IV created hereunder:

| Class Designation | Pass-Through Rate | Initial Certificate Principal Balance | Latest Possible Maturity Date[1] |
|---|---|---|---|
| CE | [2] | $29,404,463.83 | June 25, 2037 |

[1]   For purposes of Section 1.860G-1(a)(4)(iii) of the Treasury Regulations, the Distribution Date in the month following the maturity date for the Mortgage Loan with the latest maturity date has been designated as the "latest possible maturity date" for the Class CE Certificates.

[2]   The Class CE Certificates will receive 100% of the amounts received in respect of the Class CE Interest.

## REMIC V

As provided herein, the Securities Administrator on behalf of the Trustee shall elect to treat the segregated pool of assets consisting of the Class P Interest as a REMIC for federal income tax purposes, and such segregated pool of assets will be designated as "REMIC V". The Class R-5 Interest will represent the sole class of Residual Interests in REMIC V for purposes of the REMIC Provisions.

The following table sets forth the Class designation, Pass-Through Rate, Initial Certificate Principal Balance and, for purposes of satisfying Treasury Regulation Section 1.860G-1(a)(4)(iii), the "latest possible maturity date" for the indicated Class of Certificates that represents a Regular Interest in REMIC V created hereunder:

| Class Designation | Pass-Through Rate | Initial Certificate Principal Balance | Latest Possible Maturity Date[1] |
|---|---|---|---|
| P | 0.00%[2] | $ 100.00 | June 25, 2037 |

[1]   For purposes of Section 1.860G-1(a)(4)(iii) of the Treasury Regulations, the Distribution Date in the month following the maturity date for the Mortgage Loan with the latest maturity date has been designated as the "latest possible maturity date" for the Class P Certificates.

[2]   The Class P Certificates will receive 100% of the amounts received in respect of the Class P Interest.

## REMIC VI

As provided herein, the Securities Administrator on behalf of the Trustee shall elect to treat the segregated pool of assets consisting of the Class IO Interest as a REMIC for federal income tax purposes, and such segregated pool of assets will be designated as "REMIC VI". The Class R-6 Interest will represent the sole class of Residual Interests in REMIC VI for purposes of the REMIC Provisions.

7

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL

The following table sets forth the designation, Pass-Through Rate, initial Uncertificated Principal Balance and, for purposes of satisfying Treasury Regulation Section 1.860G-1(a)(4)(iii), the "latest possible maturity date" for the indicated class of interests that represents a Regular Interest in REMIC VI created hereunder:

| Designation | Pass-Through Rate | Initial Uncertificated Principal Balance | Latest Possible Maturity Date[1] |
|---|---|---|---|
| IO[2] | [3] | [4] | June 25, 2037 |

[1]  For purposes of Section 1.860G-1(a)(4)(iii) of the Treasury Regulations, the Distribution Date in the month following the maturity date for the Mortgage Loan with the latest maturity date has been designated as the "latest possible maturity date" for REMIC VI Regular Interest IO.

[2]  REMIC VI Regular Interest IO will be held as an asset of the Supplemental Interest Trust.

[3]  REMIC VI Regular Interest IO will not have a Pass-Through Rate, but will receive 100% of the amounts received in respect of the Class IO Interest.

[4]  REMIC VI Regular Interest IO will not have an Uncertificated Principal Balance, but will have a notional amount equal to the Uncertificated Notional Amount for the Class IO Interest.

The Trust Fund shall be named, and may be referred to as, the "Morgan Stanley Structured Trust I 2007-1." The Certificates issued hereunder may be referred to as "Asset-Backed Certificates Series 2007-1" (including for purposes of any endorsement or assignment of a Mortgage Note or Mortgage).

In consideration of the mutual agreements herein contained, the Depositor, the Master Servicer, the Securities Administrator and the Trustee agree as follows:

8

CONFIDENTIAL

## ARTICLE I

## DEFINITIONS

Section 1.01   Defined Terms.

Whenever used in this Agreement, the following words and phrases, unless the context otherwise requires, shall have the following meanings:

Accepted Master Servicing Practices: With respect to any Mortgage Loan, those customary mortgage servicing practices of prudent mortgage servicing institutions that master service mortgage loans of the same type and quality as such Mortgage Loan in the jurisdiction where the related Mortgaged Property is located, to the extent applicable to the Trustee or the Master Servicer (except in its capacity as successor to a Servicer).

Account: The Distribution Account, the Swap Account, the Swap Collateral Account, the Class P Certificate Account, the Yield Maintenance Collateral Account, the Reserve Fund and any Protected Account.

Accredited: Accredited Home Lenders, Inc.

Additional Disclosure: As defined in Section 4.18.

Additional Form 10-D Disclosure: As defined in Section 4.18.

Additional Form 10-K Disclosure: As defined in Section 4.18.

Adjustable Rate Mortgage Loan:  Each of the Mortgage Loans identified in the Mortgage Loan Schedule as having a Mortgage Rate that is subject to adjustment.

Adjustment Date:  With respect to each Adjustable Rate Mortgage Loan, the first day of the month in which the Mortgage Rate of an Adjustable Rate Mortgage Loan changes pursuant to the related Mortgage Note. The first Adjustment Date following the Cut-off Date as to each Adjustable Rate Mortgage Loan is set forth in the Mortgage Loan Schedule.

Advance: An advance of delinquent payments of principal or interest in respect of a Mortgage Loan required to be made by the related Servicer in accordance with the related Servicing Agreement or by the Master Servicer as provided in Section 6.01 hereof.

Affected Party: An "Affected Party" as defined in the Swap Agreement.

Agreement: This Pooling and Servicing Agreement and any and all amendments or supplements hereto made in accordance with the terms herein.

Annual Statement of Compliance: As defined in Section 4.16.

Applied Realized Loss Amount: With respect to any Distribution Date and a Class of Class M Certificates and Class B Certificates, the sum of the Realized Losses with respect to the Mortgage Loans which have been applied in reduction of the Certificate Principal Balance of a

9

CONFIDENTIAL

Class of Certificates pursuant to Section 6.05 of this Agreement which have not previously been reimbursed or reduced by any Subsequent Recoveries applied to such Applied Realized Loss Amount.

Appraised Value: With respect to any Mortgage Loan originated in connection with a refinancing, the appraised value of the Mortgaged Property based upon the appraisal made at the time of such refinancing or, with respect to any other Mortgage Loan, the lesser of (x) the appraised value of the Mortgaged Property based upon the appraisal made by a fee appraiser at the time of the origination of the related Mortgage Loan, and (y) the sales price of the Mortgaged Property at the time of such origination.

Assignment Agreement: Shall mean any of the Wells Fargo Assignment Agreement, the Countrywide Assignment Agreement or the Saxon Assignment Agreement.

Assessment of Compliance: As defined in Section 4.17.

Attesting Party: As defined in Section 4.17.

Attestation Report: As defined in Section 4.17.

Bankruptcy Code: Title 11 of the United States Code.

Basis Risk Shortfall Carry Forward Amount: With respect to any Distribution Date and any Class of Class A, Class M and Class B Certificates, an amount equal to the sum of (A) if the Pass-Through Rate for such Class for such Distribution Date is limited to the Net Rate Cap, the excess, if any, of (a) the amount of Current Interest that such Class would have been entitled to receive on such Distribution Date had the Pass-Though Rate applicable to such Class been calculated at a per annum rate equal to One-Month LIBOR plus the related Margin, over (b) the amount of Current Interest that such Class received on such Distribution Date and (B) the Basis Risk Shortfall Carry Forward Amount for the previous Distribution Date not previously paid, together with interest thereon at a rate equal to the related Pass-Through Rate (without giving effect to the Net Rate Cap) for the current Distribution Date.

Book-Entry Certificates: Any of the Certificates that shall be registered in the name of the Depository or its nominee, the ownership of which is reflected on the books of the Depository or on the books of a person maintaining an account with the Depository (directly, as a "Depository Participant", or indirectly, as an indirect participant in accordance with the rules of the Depository and as described in Section 7.06). As of the Closing Date, each Class of Offered Certificates and the Class B-4 Certificates constitutes a Class of Book-Entry Certificates.

Bring Down Agreements: Any of the following: (i) the Assignment and Recognition Agreement, dated as of the Closing Date, among EMC, Accredited and the Depositor, together with the Third Amended and Restated Mortgage Loan Purchase and Warranties Agreement, dated as of February 1, 2004, as amended by Amendment No. 1, dated as of April 2, 2004, the Seventh Amended and Restated Mortgage Loan Purchase and Warranties Agreement, dated as of June 1, 2006, and the Eighth Amended and Restated Mortgage Loan Purchase and Warranties Agreement, dated as of August 1, 2006, each between the Sponsor and Accredited, (ii) the Bring Down Letter Agreement, dated as of the Closing Date, among WMC and EMC, together with the

10

CONFIDENTIAL

Fifth Amended and Restated Mortgage Loan Purchase and Warranties Agreement, dated as of November 1, 2006, and the Sixth Amended and Restated Mortgage Loan Purchase and Warranties Agreement, dated as of February 1, 2007, each between the Sponsor and WMC and (iii) the Bring Down Letter Agreement, dated as of the Closing Date, between Fremont and the Sponsor, together with the Second Amended and Restated Mortgage Loan Purchase and Warranties Agreement, dated as of November 1, 2006, by and between the Sponsor and Fremont, in each case whereby the related Originator made certain representations and warranties with respect to the related Mortgage Loans which were assigned to the Trustee on behalf of the Certificateholders.

Business Day:  Any day other than (i) a Saturday or a Sunday, or (ii) a day on which banking institutions in The City of New York, New York, Columbia, Maryland, Minneapolis, Minnesota or the city in which the Corporate Trust Office of the Trustee or the Securities Administrator or the principal office of the Master Servicer is located are authorized or obligated by law or executive order to be closed.

Certificate: Any one of the certificates of any Class executed and authenticated by the Securities Administrator in substantially the forms attached hereto as Exhibits A-1 through A-6.

Certificateholder or Holder: The person in whose name a Certificate is registered in the Certificate Register (initially, Cede & Co., as nominee for the Depository, in the case of any Book-Entry Certificates).

Certificate Owner: With respect to a Book-Entry Certificate, the Person that is the beneficial owner of such Book-Entry Certificate.

Certificate Principal Balance: As to any Certificate (other than the Class P Certificates, the Class CE Certificates or the Class R Certificates) and as of any Distribution Date, the Initial Certificate Principal Balance of such Certificate plus any Subsequent Recoveries added to the Certificate Principal Balance of such Certificate pursuant to Section 5.04(b), less the sum of (i) all amounts distributed with respect to such Certificate in reduction of the Certificate Principal Balance thereof on previous Distribution Dates pursuant to Section 6.04, and (ii) any Applied Realized Loss Amounts allocated to such Certificate on previous Distribution Dates. As to the Class CE Certificates and as of any Distribution Date, an amount equal to the Uncertificated Principal Balance of the Class CE Interest. As to the Class P Certificates and as of any Distribution Date, the Initial Certificate Principal Balance of such Certificate less the sum of all amounts distributed with respect to such Certificate in reduction of the Certificate Principal Balance thereof on previous Distribution Dates pursuant to Section 6.08.

Certificate Register: The register maintained pursuant to Section 7.02 hereof.

Class: All Certificates bearing the same Class designation as set forth in Section 7.01 hereof.

Class A Certificate: Any of the Class A-1, Class A-2, Class A-3 and Class A-4 Certificates.

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL                                                                                  MSM_MSSTI_20071_0001504

Class A Principal Distribution Amount: For any Distribution Date, an amount equal to the lesser of (x) the Principal Distribution Amount for such Distribution Date and (y) the excess, if any, of (i) the aggregate Certificate Principal Balance of the Class A Certificates immediately prior to such Distribution Date, over (ii) the lesser of (a) the product of (1) 49.30% and (2) the aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period, and after reduction for Realized Losses incurred during the related Prepayment Period), and (b) the aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period, and after reduction for Realized Losses incurred during the related Prepayment Period) minus $3,675,502.

Class A-1 Certificate: Any Certificate designated as a "Class A-1 Certificate" on the face thereof, in the form of Exhibit A-1 hereto, representing the right to the Percentage Interest of distributions provided for the Class A-1 Certificates as set forth herein and evidencing (i) a Regular Interest in REMIC III, (ii) the right to receive Basis Risk Shortfall Carry Forward Amounts and (iii) the obligation to pay Class IO Distribution Amounts.

Class A-1 Pass-Through Rate: Shall mean (i) on any Distribution Date which occurs on or prior to the Optional Termination Date, One-Month LIBOR plus 0.080% per annum and (ii) for each Distribution Date thereafter, One-Month LIBOR plus 0.160% per annum, in each case subject to a cap equal to the related Net Rate Cap for such Distribution Date.

Class A-2 Certificate: Any Certificate designated as a "Class A-2 Certificate" on the face thereof, in the form of Exhibit A-1 hereto, representing the right to the Percentage Interest of distributions provided for the Class A-2 Certificates as set forth herein and evidencing (i) a Regular Interest in REMIC III, (ii) the right to receive Basis Risk Shortfall Carry Forward Amounts and (iii) the obligation to pay Class IO Distribution Amounts.

Class A-2 Pass-Through Rate: Shall mean (i) on any Distribution Date which occurs on or prior to the Optional Termination Date, One-Month LIBOR plus 0.190% per annum and (ii) for each Distribution Date thereafter, One-Month LIBOR plus 0.380% per annum, in each case subject to a cap equal to the related Net Rate Cap for such Distribution Date.

Class A-3 Certificate: Any Certificate designated as a "Class A-3 Certificate" on the face thereof, in the form of Exhibit A-1 hereto, representing the right to the Percentage Interest of distributions provided for the Class A-2 Certificates as set forth herein and evidencing (i) a Regular Interest in REMIC III, (ii) the right to receive Basis Risk Shortfall Carry Forward Amounts and (iii) the obligation to pay Class IO Distribution Amounts.

Class A-3 Pass-Through Rate: Shall mean (i) on any Distribution Date which occurs on or prior to the Optional Termination Date, One-Month LIBOR plus 0.230% per annum and (ii) for each Distribution Date thereafter, One-Month LIBOR plus 0.460% per annum, in each case subject to a cap equal to the related Net Rate Cap for such Distribution Date.

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL

MSM_MSSTI 20071 0001505

Class A-4 Certificate:  Any Certificate designated as a "Class A-4 Certificate" on the face thereof, in the form of Exhibit A-1 hereto, representing the right to the Percentage Interest of distributions provided for the Class A-4 Certificates as set forth herein and evidencing (i) a Regular Interest in REMIC III, (ii) the right to receive Basis Risk Shortfall Carry Forward Amounts and (iii) the obligation to pay Class IO Distribution Amounts.

Class A-4 Pass-Through Rate:  Shall mean (i) on any Distribution Date which occurs on or prior to the Optional Termination Date, One-Month LIBOR plus 0.300% per annum and (ii) for each Distribution Date thereafter, One-Month LIBOR plus 0.600% per annum, in each case subject to a cap equal to the related Net Rate Cap for such Distribution Date.

Class B Certificates:  Any of the Class B-1, Class B-2, Class B-3 and Class B-4 Certificates.

Class B-1 Certificate:  Any Certificate designated as a "Class B-1 Certificate" on the face thereof, in the form of Exhibit A-3 hereto, representing the right to its Percentage Interest of distributions provided for the Class B-1 Certificates as set forth herein and evidencing (i) a Regular Interest in REMIC III, (ii) the right to receive Basis Risk Shortfall Carry Forward Amounts and (iii) the obligation to pay Class IO Distribution Amounts.

Class B-1 Pass-Through Rate:  Shall mean (i) on any Distribution Date which occurs on or prior to the Optional Termination Date, One-Month LIBOR plus 1.750% per annum and (ii) for each Distribution Date thereafter, One-Month LIBOR plus 2.625% per annum, in each case subject to a cap equal to the related Net Rate Cap for such Distribution Date.

Class B-1 Principal Distribution Amount:  For any Distribution Date, an amount equal to the lesser of (x) the remaining Principal Distribution Amount for such Distribution Date after distribution of the Class A Principal Distribution Amount, the Class M-1 Principal Distribution Amount, the Class M-2 Principal Distribution Amount, the Class M-3 Principal Distribution Amount, the Class M-4 Principal Distribution Amount, the Class M-5 Principal Distribution Amount and the Class M-6 Principal Distribution Amount and (y) the excess, if any, of (a) the sum of (1) the aggregate Certificate Principal Balance of the Class A Certificates (after taking into account the distribution of the Class A Principal Distribution Amount on such Distribution Date), (2) the Certificate Principal Balance of the Class M-1 Certificates (after taking into account the payment of the Class M-1 Principal Distribution Amount on such Distribution Date), (3) the Certificate Principal Balance of the Class M-2 Certificates (after taking into account the payment of the Class M-2 Principal Distribution Amount on such Distribution Date), (4) the Certificate Principal Balance of the Class M-3 Certificates (after taking into account the payment of the Class M-3 Principal Distribution Amount on such Distribution Date), (5) the Certificate Principal Balance of the Class M-4 Certificates (after taking into account the payment of the Class M-4 Principal Distribution Amount on such Distribution Date), (6) the Certificate Principal Balance of the Class M-5 Certificates (after taking into account the payment of the Class M-5 Principal Distribution Amount on such Distribution Date), (7) the Certificate Principal Balance of the Class M-6 Certificates (after taking into account the payment of the Class M-6 Principal Distribution Amount on such Distribution Date) and (8) the Certificate Principal Balance of the Class B-1 Certificates immediately prior to such Distribution Date, over (b) the lesser of (1) the product of (x) 83.50% and (y) the aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal

13

[TPW: NY LEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL

due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period, and after reduction for Realized Losses incurred during the related Prepayment Period), and (2) the aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period, and after reduction for Realized Losses incurred during the related Prepayment Period) minus $3,675,502.

Class B-2 Certificate: Any Certificate designated as a "Class B-2 Certificate" on the face thereof, in the form of Exhibit A-3 hereto, representing the right to its Percentage Interest of distributions provided for the Class B-2 Certificates as set forth herein and evidencing (i) a Regular Interest in REMIC III, (ii) the right to receive Basis Risk Shortfall Carry Forward Amounts and (iii) the obligation to pay Class IO Distribution Amounts.

Class B-2 Pass-Through Rate: Shall mean (i) on any Distribution Date which occurs on or prior to the Optional Termination Date, One-Month LIBOR plus 2.000% per annum and (ii) for each Distribution Date thereafter, One-Month LIBOR plus 3.000% per annum, in each case subject to a cap equal to the related Net Rate Cap for such Distribution Date.

Class B-2 Principal Distribution Amount: For any Distribution Date, an amount equal to the lesser of (x) the remaining Principal Distribution Amount for such Distribution Date after distribution of the Class A Principal Distribution Amount, the Class M-1 Principal Distribution Amount, the Class M-2 Principal Distribution Amount, the Class M-3 Principal Distribution Amount, the Class M-4 Principal Distribution Amount, the Class M-5 Principal Distribution Amount, the Class M-6 Principal Distribution Amount and the Class B-1 Principal Distribution Amount and (y) the excess, if any, of (a) the sum of (1) the aggregate Certificate Principal Balance of the Class A Certificates (after taking into account the distribution of the Class A Principal Distribution Amount on such Distribution Date), (2) the Certificate Principal Balance of the Class M-1 Certificates (after taking into account the payment of the Class M-1 Principal Distribution Amount on such Distribution Date), (3) the Certificate Principal Balance of the Class M-2 Certificates (after taking into account the payment of the Class M-2 Principal Distribution Amount on such Distribution Date), (4) the Certificate Principal Balance of the Class M-3 Certificates (after taking into account the payment of the Class M-3 Principal Distribution Amount on such Distribution Date), (5) the Certificate Principal Balance of the Class M-4 Certificates (after taking into account the payment of the Class M-4 Principal Distribution Amount on such Distribution Date), (6) the Certificate Principal Balance of the Class M-5 Certificates (after taking into account the payment of the Class M-5 Principal Distribution Amount on such Distribution Date), (7) the Certificate Principal Balance of the Class M-6 Certificates (after taking into account the payment of the Class M-6 Principal Distribution Amount on such Distribution Date), (8) the Certificate Principal Balance of the Class B-1 Certificates (after taking into account the payment of the Class B-1 Principal Distribution Amount on such Distribution Date) and (9) the Certificate Principal Balance of the Class B-2 Certificates immediately prior to such Distribution Date, over (b) the lesser of (1) the product of (x) 86.00% and (y) the aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period, and after reduction for

14

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

Realized Losses incurred during the related Prepayment Period), and (2) the aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period, and after reduction for Realized Losses incurred during the related Prepayment Period) minus $3,675,502.

Class B-3 Certificate: Any Certificate designated as a "Class B-3 Certificate" on the face thereof, in the form of Exhibit A-3 hereto, representing the right to its Percentage Interest of distributions provided for the Class B-3 Certificates as set forth herein and evidencing (i) a Regular Interest in REMIC III, (ii) the right to receive Basis Risk Shortfall Carry Forward Amounts and (iii) the obligation to pay Class IO Distribution Amounts.

Class B-3 Pass-Through Rate: Shall mean (i) on any Distribution Date which occurs on or prior to the Optional Termination Date, One-Month LIBOR plus 2.000% per annum and (ii) for each Distribution Date thereafter, One-Month LIBOR plus 3.000% per annum, in each case subject to a cap equal to the related Net Rate Cap for such Distribution Date.

Class B-3 Principal Distribution Amount: For any Distribution Date, an amount equal to the lesser of (x) the remaining Principal Distribution Amount for such Distribution Date after distribution of the Class A Principal Distribution Amount, the Class M-1 Principal Distribution Amount, the Class M-2 Principal Distribution Amount, the Class M-3 Principal Distribution Amount, the Class M-4 Principal Distribution Amount, the Class M-5 Principal Distribution Amount, the Class M-6 Principal Distribution Amount, the Class B-1 Principal Distribution Amount and the Class B-2 Principal Distribution Amount and (y) the excess, if any, of (a) the sum of (1) the aggregate Certificate Principal Balance of the Class A Certificates (after taking into account the distribution of the Class A Principal Distribution Amount on such Distribution Date), (2) the Certificate Principal Balance of the Class M-1 Certificates (after taking into account the payment of the Class M-1 Principal Distribution Amount on such Distribution Date), (3) the Certificate Principal Balance of the Class M-2 Certificates (after taking into account the payment of the Class M-2 Principal Distribution Amount on such Distribution Date), (4) the Certificate Principal Balance of the Class M-3 Certificates (after taking into account the payment of the Class M-3 Principal Distribution Amount on such Distribution Date), (5) the Certificate Principal Balance of the Class M-4 Certificates (after taking into account the payment of the Class M-4 Principal Distribution Amount on such Distribution Date), (6) the Certificate Principal Balance of the Class M-5 Certificates (after taking into account the payment of the Class M-5 Principal Distribution Amount on such Distribution Date), (7) the Certificate Principal Balance of the Class M-6 Certificates (after taking into account the payment of the Class M-6 Principal Distribution Amount on such Distribution Date), (8) the Certificate Principal Balance of the Class B-1 Certificates (after taking into account the payment of the Class B-1 Principal Distribution Amount on such Distribution Date), (9) the Certificate Principal Balance of the Class B-2 Certificates (after taking into account the payment of the Class B-2 Principal Distribution Amount on such Distribution Date) and (10) the Certificate Principal Balance of the Class B-3 Certificates immediately prior to such Distribution Date, over (b) the lesser of (1) the product of (x) 89.30% and (y) the aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period, and after reduction for

15

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL

Realized Losses incurred during the related Prepayment Period), and (2) the aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period, and after reduction for Realized Losses incurred during the related Prepayment Period) minus $3,675,502.

Class B-4 Certificate: Any Certificate designated as a "Class B-4 Certificate" on the face thereof, in the form of Exhibit A-3 hereto, representing the right to its Percentage Interest of distributions provided for the Class B-4 Certificates as set forth herein and evidencing (i) a Regular Interest in REMIC III, (ii) the right to receive Basis Risk Shortfall Carry Forward Amounts and (iii) the obligation to pay Class IO Distribution Amounts.

Class B-4 Pass-Through Rate: Shall mean (i) on any Distribution Date which occurs on or prior to the Optional Termination Date, One-Month LIBOR plus 2.000% per annum and (ii) for each Distribution Date thereafter, One-Month LIBOR plus 3.000% per annum, in each case subject to a cap equal to the related Net Rate Cap for such Distribution Date.

Class B-4 Principal Distribution Amount: For any Distribution Date, an amount equal to the lesser of (x) the remaining Principal Distribution Amount for such Distribution Date after distribution of the Class A Principal Distribution Amount, the Class M-1 Principal Distribution Amount, the Class M-2 Principal Distribution Amount, the Class M-3 Principal Distribution Amount, the Class M-4 Principal Distribution Amount, the Class M-5 Principal Distribution Amount, the Class M-6 Principal Distribution Amount, the Class B-1 Principal Distribution Amount, the Class B-2 Principal Distribution Amount and the Class B-3 Principal Distribution Amount and (y) the excess, if any, of (a) the sum of (1) the aggregate Certificate Principal Balance of the Class A Certificates (after taking into account the distribution of the Class A Principal Distribution Amount on such Distribution Date), (2) the Certificate Principal Balance of the Class M-1 Certificates (after taking into account the payment of the Class M-1 Principal Distribution Amount on such Distribution Date), (3) the Certificate Principal Balance of the Class M-2 Certificates (after taking into account the payment of the Class M-2 Principal Distribution Amount on such Distribution Date), (4) the Certificate Principal Balance of the Class M-3 Certificates (after taking into account the payment of the Class M-3 Principal Distribution Amount on such Distribution Date), (5) the Certificate Principal Balance of the Class M-4 Certificates (after taking into account the payment of the Class M-4 Principal Distribution Amount on such Distribution Date), (6) the Certificate Principal Balance of the Class M-5 Certificates (after taking into account the payment of the Class M-5 Principal Distribution Amount on such Distribution Date), (7) the Certificate Principal Balance of the Class M-6 Certificates (after taking into account the payment of the Class M-6 Principal Distribution Amount on such Distribution Date), (8) the Certificate Principal Balance of the Class B-1 Certificates (after taking into account the payment of the Class B-1 Principal Distribution Amount on such Distribution Date), (9) the Certificate Principal Balance of the Class B-2 Certificates (after taking into account the payment of the Class B-2 Principal Distribution Amount on such Distribution Date), (10) the Certificate Principal Balance of the Class B-3 Certificates (after taking into account the payment of the Class B-3 Principal Distribution Amount on such Distribution Date) and (11) the Certificate Principal Balance of the Class B-4 Certificates immediately prior to such Distribution Date, over (b) the lesser of (1) the product of (x) 92.00% and (y) the aggregate Stated Principal Balance of the Mortgage Loans as

16

CONFIDENTIAL                                   MSM_MSSTI_20071_0001509

of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period, and after reduction for Realized Losses incurred during the related Prepayment Period), and (2) the aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period, and after reduction for Realized Losses incurred during the related Prepayment Period) minus $3,675,502.

Class CE Certificate:  Any Certificate designated as a "Class CE Certificate" on the face thereof, in the form of Exhibit A-4 hereto, representing the right to its Percentage Interest of distributions provided for the Class CE Certificates herein and evidencing (i) a Regular Interest in REMIC IV, (ii) the obligation to pay Basis Risk Shortfall Carry Forward Amounts and (iii) the right to receive Class IO Distribution Amounts.

Class CE Distribution Amount:  With respect to any Distribution Date, the sum of (i) the Current Interest for the Class CE Interest for such Distribution Date, (ii) any Overcollateralization Release Amount for such Distribution Date and (iii) without duplication, any Subsequent Recoveries not distributed to the Class A, Class M and Class B Certificates on such Distribution Date; provided, however that on any Distribution Date after the Distribution Date on which the Certificate Principal Balances of the Class A, Class M and Class B Certificates have been reduced to zero, the Class CE Distribution Amount shall include the Overcollateralization Amount.

Class CE Interest:  An uncertificated interest in the Trust Fund held by the Trustee on behalf of the Holders of the Class CE Certificates, evidencing a Regular Interest in REMIC III for purposes of the REMIC Provisions.

Class CE Pass-Through Rate:  With respect to the Class CE Interest, a rate per annum equal to the percentage equivalent of a fraction, the numerator of which is the sum of the amount determined for each REMIC II Regular Interest (other than REMIC II Regular Interest P) equal to the product of (x) the excess, if any, of the Uncertificated REMIC II Pass-Through Rate for such REMIC II Regular Interest over the Marker Rate and (y) a notional amount equal to the Uncertificated Principal Balance of such REMIC II Regular Interest, and the denominator of which is the aggregate Uncertificated Principal Balance of such REMIC II Regular Interests.

Class IO Distribution Amount:  As defined in Section 4.22 hereof. For purposes of clarity, the Class IO Distribution Amount for any Distribution Date shall equal the amount payable to the Swap Administrator pursuant to the first and second sentences of Section 4.22(c) on such Distribution Date in excess of the amount payable on REMIC VI Regular Interest IO on such Distribution Date, all as further provided in Section 4.22 hereof.

Class IO Interest:  An uncertificated interest in the Trust Fund held by the Trustee on behalf of the holders of REMIC VI Regular Interest IO, evidencing a Regular Interest in REMIC III for purposes of the REMIC Provisions.

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL

MSM_MSSTI_20071_0001510

Class M Certificates:  Any of the Class M-1, Class M-2, Class M-3, Class M-4, Class M-5 and Class M-6 Certificates.

Class M-1 Certificate:  Any Certificate designated as a "Class M-1 Certificate" on the face thereof, in the form of Exhibit A-2 hereto, representing the right to its Percentage Interest of distributions provided for the Class M-1 Certificates as set forth herein and evidencing (i) a Regular Interest in REMIC III, (ii) the right to receive Basis Risk Shortfall Carry Forward Amounts and (iii) the obligation to pay Class IO Distribution Amounts.

Class M-1 Enhancement Percentage:  With respect to any Distribution Date, the percentage obtained by dividing (x) the sum of (i) the aggregate Certificate Principal Balance of the Class M-2, Class M-3, Class M-4, Class M-5, Class M-6, Class B-1, Class B-2, Class B-3 and Class B-4 Certificates and (ii) the Overcollateralization Amount, in each case prior to the distribution of the Principal Distribution Amount on such Distribution Date, by (y) the aggregate Stated Principal Balance of the Mortgage Loans as of the end of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period, and after reduction for Realized Losses incurred during the related Prepayment Period).

Class M-1 Pass-Through Rate:  Shall mean (i) on any Distribution Date which occurs on or prior to the Optional Termination Date, One-Month LIBOR plus 0.280% per annum and (ii) for each Distribution Date thereafter, One-Month LIBOR plus 0.420% per annum, in each case subject to a cap equal to the related Net Rate Cap for such Distribution Date.

Class M-1 Principal Distribution Amount:  For any Distribution Date, an amount equal to the lesser of (x) the remaining Principal Distribution Amount for such Distribution Date after distribution of the Class A Principal Distribution Amount and (y) the excess, if any, of (a) the sum of (1) the aggregate Certificate Principal Balance of the Class A Certificates (after taking into account the distribution of the Class A Principal Distribution Amount on such Distribution Date) and (2) the Certificate Principal Balance of the Class M-1 Certificates immediately prior to such Distribution Date, over (b) the lesser of (1) the product of (x) 59.60% and (y) the aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period, and after reduction for Realized Losses incurred during the related Prepayment Period), and (2) the aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period, and after reduction for Realized Losses incurred during the related Prepayment Period) minus $3,675,502.

Class M-2 Certificate:  Any Certificate designated as a "Class M-2 Certificate" on the face thereof, in the form of Exhibit A-2 hereto, representing the right to its Percentage Interest of distributions provided for the Class M-2 Certificates as set forth herein and evidencing (i) a Regular Interest in REMIC III, (ii) the right to receive Basis Risk Shortfall Carry Forward Amounts and (iii) the obligation to pay Class IO Distribution Amounts.

18

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL

Class M-2 Pass-Through Rate: Shall mean (i) on any Distribution Date which occurs on or prior to the Optional Termination Date, One-Month LIBOR plus 0.310% per annum and (ii) for each Distribution Date thereafter, One-Month LIBOR plus 0.465% per annum, in each case subject to a cap equal to the related Net Rate Cap for such Distribution Date.

Class M-2 Principal Distribution Amount:  For any Distribution Date, an amount equal to the lesser of (x) the remaining Principal Distribution Amount for such Distribution Date after distribution of the Class A Principal Distribution Amount and the Class M-1 Principal Distribution Amount and (y) the excess, if any, of (a) the sum of (1) the aggregate Certificate Principal Balance of the Class A Certificates (after taking into account the distribution of the Class A Principal Distribution Amount on such Distribution Date), (2) the Certificate Principal Balance of the Class M-1 Certificates (after taking into account the distribution of the Class M-1 Principal Distribution Amount on such Distribution Date) and (3) the Certificate Principal Balance of the Class M-2 Certificates immediately prior to such Distribution Date, over (b) the lesser of (1) the product of (x) 67.10% and (y) the aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period, and after reduction for Realized Losses incurred during the related Prepayment Period), and (2) the aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period, and after reduction for Realized Losses incurred during the related Prepayment Period) minus $3,675,502.

Class M-3 Certificate:  Any Certificate designated as a "Class M-3 Certificate" on the face thereof, in the form of Exhibit A-2 hereto, representing the right to its Percentage Interest of distributions provided for the Class M-3 Certificates as set forth herein and evidencing (i) a Regular Interest in REMIC III, (ii) the right to receive Basis Risk Shortfall Carry Forward Amounts and (iii) the obligation to pay Class IO Distribution Amounts.

Class M-3 Pass-Through Rate:  Shall mean (i) on any Distribution Date which occurs on or prior to the Optional Termination Date, One-Month LIBOR plus 0.330% per annum and (ii) for each Distribution Date thereafter, One-Month LIBOR plus 0.495% per annum, in each case subject to a cap equal to the related Net Rate Cap for such Distribution Date.

Class M-3 Principal Distribution Amount:  For any Distribution Date, an amount equal to the lesser of (x) the remaining Principal Distribution Amount for such Distribution Date after distribution of the Class A Principal Distribution Amount, the Class M-1 Principal Distribution Amount and the Class M-2 Principal Distribution Amount and (y) the excess, if any, of (a) the sum of (1) the aggregate Certificate Principal Balance of the Class A Certificates (after taking into account the distribution of the Class A Principal Distribution Amount on such Distribution Date), (2) the Certificate Principal Balance of the Class M-1 Certificates (after taking into account the distribution of the Class M-1 Principal Distribution Amount on such Distribution Date), (3) the Certificate Principal Balance of the Class M-2 Certificates (after taking into account the distribution of the Class M-2 Principal Distribution Amount on such Distribution Date) and (4) the Certificate Principal Balance of the Class M-3 Certificates immediately prior to such Distribution Date, over (b) the lesser of (1) the product of (x) 71.30% and (y) the aggregate

19

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period, and after reduction for Realized Losses incurred during the related Prepayment Period), and (2) the aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period, and after reduction for Realized Losses incurred during the related Prepayment Period) minus $3,675,502.

Class M-4 Certificate:  Any Certificate designated as a "Class M-4 Certificate" on the face thereof, in the form of Exhibit A-2 hereto, representing the right to its Percentage Interest of distributions provided for the Class M-4 Certificates as set forth herein and evidencing (i) a Regular Interest in REMIC III, (ii) the right to receive Basis Risk Shortfall Carry Forward Amounts and (iii) the obligation to pay Class IO Distribution Amounts.

Class M-4 Pass-Through Rate:  Shall mean (i) on any Distribution Date which occurs on or prior to the Optional Termination Date, One-Month LIBOR plus 0.450% per annum and (ii) for each Distribution Date thereafter, One-Month LIBOR plus 0.675% per annum, in each case subject to a cap equal to the related Net Rate Cap for such Distribution Date.

Class M-4 Principal Distribution Amount:  For any Distribution Date, an amount equal to the lesser of (x) the remaining Principal Distribution Amount for such Distribution Date after distribution of the Class A Principal Distribution Amount, the Class M-1 Principal Distribution Amount, the Class M-2 Principal Distribution Amount and the Class M-3 Principal Distribution Amount and (y) the excess, if any, of (a) the sum of (1) the aggregate Certificate Principal Balance of the Class A Certificates (after taking into account the distribution of the Class A Principal Distribution Amount on such Distribution Date), (2) the Certificate Principal Balance of the Class M-1 Certificates (after taking into account the distribution of the Class M-1 Principal Distribution Amount on such Distribution Date), (3) the Certificate Principal Balance of the Class M-2 Certificates (after taking into account the distribution of the Class M-2 Principal Distribution Amount on such Distribution Date), (4) the Certificate Principal Balance of the Class M-3 Certificates (after taking into account the distribution of the Class M-3 Principal Distribution Amount on such Distribution Date) and (5) the Certificate Principal Balance of the Class M-4 Certificates immediately prior to such Distribution Date, over (b) the lesser of (1) the product of (x) 75.10% and (y) the aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period, and after reduction for Realized Losses incurred during the prior calendar month), and (2) the aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period, and after reduction for Realized Losses incurred during the prior calendar month) minus $3,675,502.

Class M-5 Certificate:  Any Certificate designated as a "Class M-5 Certificate" on the face thereof, in the form of Exhibit A-2 hereto, representing the right to its Percentage Interest of

20

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL

distributions provided for the Class M-5 Certificates as set forth herein and evidencing (i) a Regular Interest in REMIC III, (ii) the right to receive Basis Risk Shortfall Carry Forward Amounts and (iii) the obligation to pay Class IO Distribution Amounts.

Class M-5 Principal Distribution Amount: For any Distribution Date, an amount equal to the lesser of (x) the remaining Principal Distribution Amount for such Distribution Date after distribution of the Class A Principal Distribution Amount, the Class M-1 Principal Distribution Amount, the Class M-2 Principal Distribution Amount, the Class M-3 Principal Distribution and the Class M-4 Principal Distribution Amount and (y) the excess, if any, of (a) the sum of (1) the aggregate Certificate Principal Balance of the Class A Certificates (after taking into account the distribution of the Class A Principal Distribution Amount on such Distribution Date), (2) the Certificate Principal Balance of the Class M-1 Certificates (after taking into account the distribution of the Class M-1 Principal Distribution Amount on such Distribution Date), (3) the Certificate Principal Balance of the Class M-2 Certificates (after taking into account the distribution of the Class M-2 Principal Distribution Amount on such Distribution Date), (4) the Certificate Principal Balance of the Class M-3 Certificates (after taking into account the distribution of the Class M-3 Principal Distribution Amount on such Distribution Date), (5) the Certificate Principal Balance of the Class M-4 Certificates (after taking into account the distribution of the Class M-4 Principal Distribution Amount on such Distribution Date) and (6) the Certificate Principal Balance of the Class M-5 Certificates immediately prior to such Distribution Date, over (b) the lesser of (1) the product of (x) 78.30% and (y) the aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period, and after reduction for Realized Losses incurred during the related Prepayment Period), and (2) the aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period, and after reduction for Realized Losses incurred during the related Prepayment Period) minus $3,675,502.

Class M-5 Pass-Through Rate: Shall mean (i) on any Distribution Date which occurs on or prior to the Optional Termination Date, One-Month LIBOR plus 0.550% per annum and (ii) for each Distribution Date thereafter, One-Month LIBOR plus 0.825% per annum, in each case subject to a cap equal to the related Net Rate Cap for such Distribution Date.

Class M-6 Certificate:  Any Certificate designated as a "Class M-6 Certificate" on the face thereof, in the form of Exhibit A-2 hereto, representing the right to its Percentage Interest of distributions provided for the Class M-6 Certificates as set forth herein and evidencing (i) a Regular Interest in REMIC III, (ii) the right to receive Basis Risk Shortfall Carry Forward Amounts and (iii) the obligation to pay Class IO Distribution Amounts.

Class M-6 Principal Distribution Amount:  For any Distribution Date, an amount equal to the lesser of (x) the remaining Principal Distribution Amount for such Distribution Date after distribution of the Class A Principal Distribution Amount, the Class M-1 Principal Distribution Amount, the Class M-2 Principal Distribution Amount, Class M-4 Principal Distribution Amount and the Class M-5 Principal Distribution Amount and (y) the excess, if any, of (a) the sum of (1) the aggregate Certificate Principal Balance of the Class A Certificates (after taking into account

21

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

the distribution of the Class A Principal Distribution Amount on such Distribution Date), (2) the Certificate Principal Balance of the Class M-1 Certificates (after taking into account the distribution of the Class M-1 Principal Distribution Amount on such Distribution Date), (3) the Certificate Principal Balance of the Class M-2 Certificates (after taking into account the distribution of the Class M-2 Principal Distribution Amount on such Distribution Date), (4) the Certificate Principal Balance of the Class M-3 Certificates (after taking into account the distribution of the Class M-3 Principal Distribution Amount on such Distribution Date), (5) the Certificate Principal Balance of the Class M-4 Certificates, (6) the Certificate Principal Balance of the Class M-5 Certificates and (7) the Certificate Principal Balance of the Class M-6 Certificates immediately prior to such Distribution Date, over (b) the lesser of (1) the product of (x) 80.40% and (y) the aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period, and after reduction for Realized Losses incurred during the prior calendar month), and (2) the aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Prepayment Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period, and after reduction for Realized Losses incurred during the related Prepayment Period) minus $3,675,502.

Class M-6 Pass-Through Rate: Shall mean (i) on any Distribution Date which occurs on or prior to the Optional Termination Date, One-Month LIBOR plus 0.800% per annum and (ii) for each Distribution Date thereafter, One-Month LIBOR plus 1.200% per annum, in each case subject to a cap equal to the related Net Rate Cap for such Distribution Date.

Class P Certificate: Any Certificate designated as a "Class P Certificate" on the face thereof, in the form of Exhibit A-5 hereto, representing the right to its Percentage Interest of distributions provided for the Class P Certificates as set forth herein and evidencing (i) a Regular Interest in REMIC V and (ii) the right to receive any Prepayment Charge Waiver Amounts.

Class P Certificate Account: The account established and maintained by the Securities Administrator pursuant to Section 6.09 hereof.

Class P Interest: An uncertificated interest in the Trust Fund held by the Trustee on behalf of the Holders of the Class P Certificates, evidencing a Regular Interest in REMIC III for purposes of the REMIC Provisions.

Class R Certificate: Any of the Class R-1, Class R-2, Class R-3 or Class RX Certificates.

Class R-1 Certificate: Any Certificate designated a "Class R-1 Certificate" on the face thereof, in the form set forth in Exhibit A-6 hereto, evidencing the Residual Interest in REMIC I and representing the right to the Percentage Interest of distributions provided for the Class R-1 Certificates as set forth herein.

Class R-2 Certificate: Any Certificate designated a "Class R-2 Certificate" on the face thereof, in the form set forth in Exhibit A-6 hereto, evidencing the Residual Interest in REMIC II

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL

MSM_MSSTI_20071_0001515

and representing the right to the Percentage Interest of distributions provided for the Class R-2 Certificates as set forth herein.

Class R-3 Certificate:  Any Certificate designated a "Class R-3 Certificate" on the face thereof, in the form set forth in Exhibit A-6 hereto, evidencing the Residual Interest in REMIC III and representing the right to the Percentage Interest of distributions provided for the Class R-3 Certificates as set forth herein.

Class R-4 Interest:  The uncertificated Residual Interest in REMIC IV.

Class R-5 Interest:  The uncertificated Residual Interest in REMIC V.

Class R-6 Interest:  The uncertificated Residual Interest in REMIC VI.

Class RX Certificate:  Any Certificate designated a "Class RX Certificate" on the face thereof, in the form set forth in Exhibit A-6 hereto, evidencing the ownership of the Class R-4 Interest, the Class R-5 Interest and the Class R-6 Interest and representing the right to the Percentage Interest of distributions provided for the Class RX Certificates as set forth herein.

Closing Date:  July 6, 2007.

Code:  The Internal Revenue Code of 1986, including any successor or amendatory provisions.

Compensating Interest:  An amount, not to exceed the Servicing Fee, to be deposited in the Distribution Account by the related Servicer with respect to the payment of a Prepayment Interest Shortfall on a Mortgage Loan subject to this Agreement; provided that in the event the related Servicer fails to make such payment, the Master Servicer shall be obligated to do so to the extent provided in Section 6.02(b) hereof.

Condemnation Proceeds:  All awards or settlements in respect of a Mortgaged Property, whether permanent or temporary, partial or entire, by exercise of the power of eminent domain or condemnation.

Corporate Trust Office:  With respect to the Trustee, the designated corporate trust office of the Trustee where at any particular time its corporate trust business with respect to this Agreement shall be administered, which office at the date of the execution of this agreement is located at Deutsche Bank National Trust Company, 1761 East St. Andrews Place, Santa Ana, California 92705-4934, Attention: Trust and Securities Services/MSSTI 2007-1, or such other address as the Trustee may designate from time to time, and (ii) with respect to the Securities Administrator, the designated office of the Securities Administrator at which at any particular time its corporate trust business with respect to this Agreement shall be administered, which office at the date of the execution of this Agreement is located at 9062 Old Annapolis Road, Columbia, Maryland 21045, Attention: Corporate Trust Services, MSSTI 2007-1 except for purposes of certificate transfer purposes, such term shall mean the office or agency of the Securities Administrator located at Wells Fargo Bank, National Association, Sixth Street and Marquette Avenue, Minneapolis, Minnesota 55479, Attention: Corporate Trust Services, MSSTI 2007-1.

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL

MSM_MSSTI_20071_0001516

Corresponding Certificate:  With respect to each REMIC II Regular Interest (other than REMIC II Regular Interests AA, ZZ, IO and P), the Certificate with the corresponding designation. With respect to each REMIC III Regular Interest (other than the Class CE Interest, the Class P Interest and the Class IO Interest), the related Certificate representing an ownership therein.

Countrywide:  Countrywide Home Loans Inc.

Countrywide Assignment Agreement:  The Assignment, Assumption and Recognition Agreement, dated as of the Closing Date, by and among EMC, Countrywide and the Trustee evidencing the assignment of the Countrywide Servicing Agreement to the Trust, attached hereto as Exhibit R-1.

Countrywide Servicing Agreement:  The Flow Servicing Rights Purchase and Servicing Agreement, dated as of November 1, 2004, between the Sponsor and Countrywide, attached hereto as Exhibit Q-1, as modified by the Countrywide Assignment Agreement.

Current Interest:  As of any Distribution Date, with respect to the Certificates and interests of each class (other than the Class P Interest, the Class P Certificates, the Residual Interests and the Residual Certificates), (i) the interest accrued on the Certificate Principal Balance or Notional Amount or Uncertificated Notional Amount, as applicable, during the related Interest Accrual Period at the applicable Pass-Through Rate, plus any amount previously distributed with respect to interest for such Certificate or interest that has been recovered as a voidable preference by a trustee in bankruptcy minus (ii) the sum of (a) any Prepayment Interest Shortfall for such Distribution Date, to the extent not covered by Compensating Interest and (b) any Relief Act Interest Shortfalls during the related Due Period, provided, however, that for purposes of calculating Current Interest for any such class, amounts specified in clause (ii) hereof for any such Distribution Date shall be allocated first to the Class CE Certificates and the Class CE Interest in reduction of amounts otherwise distributable to such Certificates and interest on such Distribution Date and then any excess shall be allocated to each Class of Class A, Class M and Class B Certificates *pro rata* based on the respective amounts of interest accrued pursuant to clause (i) hereof for each such Class on such Distribution Date.

Current Specified Enhancement Percentage:  With respect to any Distribution Date, the percentage obtained by dividing (x) the sum of (i) the aggregate Certificate Principal Balance of the Class M Certificates and Class B Certificates and (ii) the Overcollateralization Amount, in each case prior to the distribution of the Principal Distribution Amount on such Distribution Date, by (y) the aggregate Stated Principal Balance of the Mortgage Loans as of the end of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period, and after reduction for Realized Losses incurred during the related Prepayment Period).

Custodial Agreements: The Wells Fargo Custodial Agreement and the Deutsche Bank Custodial Agreement.

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL

MSM_MSSTI_20071_0001517

Custodian: Each of Deutsche Bank National Trust Company and Wells Fargo Bank, National Association, or any successor custodian appointed pursuant to the provisions hereof and the related Custodial Agreement.

Cut-off Date: The close of business on June 1, 2007.

Cut-off Date Principal Balance: As to any Mortgage Loan, the unpaid principal balance thereof as of the close of business on the Cut-off Date after application of all Principal Prepayments received prior to the Cut-off Date and scheduled payments of principal due on or before the Cut-off Date, whether or not received, but without giving effect to any installments of principal received in respect of Due Dates after the Cut-off Date. The aggregate Cut-off Date Principal Balance of the Mortgage Loans, plus the Special Deposit, is $735,100,463.83

Debt Service Reduction: With respect to any Mortgage Loan, a reduction by a court of competent jurisdiction in a proceeding under the Bankruptcy Code in the Scheduled Payment for such Mortgage Loan that became final and non-appealable, except such a reduction resulting from a Deficient Valuation or any other reduction that results in a permanent forgiveness of principal.

Defaulting Party: A "Defaulting Party" as defined in the Swap Agreement.

Deficient Valuation: With respect to any Mortgage Loan, a valuation by a court of competent jurisdiction of the Mortgaged Property in an amount less than the then outstanding indebtedness under such Mortgage Loan, or any reduction in the amount of principal to be paid in connection with any Scheduled Payment that results in a permanent forgiveness of principal, which valuation or reduction results from an order of such court that is final and non-appealable in a proceeding under the Bankruptcy Code.

Definitive Certificates: As defined in Section 7.06.

Deleted Mortgage Loan: A Mortgage Loan replaced or to be replaced by a Replacement Mortgage Loan.

Delinquent: A Mortgage Loan is "delinquent" if any payment due thereon is not made pursuant to the terms of such Mortgage Loan by the close of business on the day such payment is scheduled to be due. A Mortgage Loan is "30 days delinquent" if such payment has not been received by the close of business on the corresponding day of the month immediately succeeding the month in which such payment was due, or, if there is no such corresponding day (e.g., as when a 30-day month follows a 31-day month in which a payment was due on the 31st day of such month), then on the last day of such immediately succeeding month. Similarly for "60 days delinquent," "90 days delinquent" and so on. This method of determining delinquencies is also referred to as the OTS method.

Denomination: With respect to each Certificate, the amount set forth on the face thereof as the "Initial Principal Balance" or initial notional amount of this Certificate".

Depositor: Bear Stearns Asset Backed Securities I LLC, a Delaware limited liability company, or its successor in interest.

[TPW: NYLEGAL:691857.8] 17297-00533 11/15/2007 06:00 PM

CONFIDENTIAL

MSM_MSSTI_20071_0001518

Depositor Information: As defined in Section 4.18(b).

Depository: The initial Depository shall be The Depository Trust Company ("DTC"), the nominee of which is Cede & Co., or any other organization registered as a "clearing agency" pursuant to Section 17A of the Securities Exchange Act of 1934, as amended. The Depository shall initially be the registered Holder of the Book-Entry Certificates. The Depository shall at all times be a "clearing corporation" as defined in Section 8-102(a)(5) of the Uniform Commercial Code of the State of New York.

Depository Agreement: With respect to the Class of Book-Entry Certificates, the agreement between the Trust and the initial Depository, dated as of the Closing Date, substantially in the form of Exhibit H.

Depository Participant: A broker, dealer, bank or other financial institution or other Person for whom from time to time a Depository effects book-entry transfers and pledges of securities deposited with the Depository.

Determination Date: With respect to any Mortgage Loan serviced by Countrywide, the 18th day (or if such 18th day is not a Business Day, the Business Day immediately preceding such 18th day) of the month of the related Distribution Date. With respect to any Mortgage Loan serviced by Wells Fargo or Saxon, the 15th day of the month of such Distribution Date or, if such 15th day is not a Business Day, the immediately preceding Business Day.

Deutsche Bank Custodial Agreement: A custodial agreement, dated as of the Closing Date, among the Depositor, EMC, the Sponsor, the Trustee, the Master Servicer, the Securities Administrator and Deutsche Bank National Trust Company, in its capacity as Custodian, in substantially the form of Exhibit J-1 hereto.

Distribution Account: The separate Eligible Account created and maintained by the Securities Administrator pursuant to Section 5.08 in the name of the Trustee for the benefit of the Certificateholders and designated "Deutsche Bank National Trust Company, in trust for registered Holders of Morgan Stanley Structured Trust I 2007-1, Asset-Backed Certificates, Series 2007-1" shall be held in trust for the Certificateholders for the uses and purposes set forth in this Agreement.

Distribution Date: The 25th day of each calendar month after the initial issuance of the Certificates, or if such 25th day is not a Business Day, the next succeeding Business Day, commencing in July 2007.

Distribution Report: The Asset-Backed Issuer Distribution Report pursuant to Section 13 or 15(d) of the Exchange Act.

Due Date: As to any Mortgage Loan, the date in each month on which the related Scheduled Payment is due, as set forth in the related Mortgage Note.

Due Period: With respect to any Distribution Date, the period from the second day of the calendar month preceding the calendar month in which such Distribution Date occurs through close of business on the first day of the calendar month in which such Distribution Date occurs.

26

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL                                                                 MSM_MSSTI_20071_0001519

EDGAR: As defined in Section 4.18.

Eligible Account: Any of (i) an account or accounts maintained with a federal or state chartered depository institution or trust company, the long-term unsecured debt obligations and short-term unsecured debt obligations of which (or, in the case of a depository institution or trust company that is the principal subsidiary of a holding company, the debt obligations of such holding company, so long as Moody's is not a Rating Agency) are rated by each Rating Agency in one of its two highest long-term and its highest short-term rating categories, respectively, at the time any amounts are held on deposit therein; provided, that following a downgrade, withdrawal, or suspension of such institution's rating above, each account shall promptly (and in any case within not more than 30 calendar days) be moved to one or more segregated trust accounts in the trust department of such institution, or to an account at another institution that complies with the above requirements, or (ii) a trust account or accounts maintained with the corporate trust department of a federal or state chartered depository institution or trust company having capital and surplus of not less than $50,000,000, acting in its fiduciary capacity or (iii) any other account acceptable to the Rating Agencies, as evidenced in writing. Eligible Accounts may bear interest, and may include, if otherwise qualified under this definition, accounts maintained with the Trustee. Notwithstanding Section 12.01, this Agreement may be amended to reduce the rating requirements in clause (i) above, without the consent of any of the Certificateholders, provided that the Person requesting such amendment obtains a letter from each Rating Agency stating that such amendment would not result in the downgrading or withdrawal of the respective ratings then assigned to the Certificates.

EMC: EMC Mortgage Corporation, a Delaware corporation, and its successors and assigns.

ERISA: The Employee Retirement Income Security Act of 1974, as amended.

ERISA Restricted Certificate: Any of the Class B-4, Class CE, Class P and Residual Certificates.

Event of Default: As defined in Section 9.01 hereof.

Excess Cashflow: With respect to any Distribution Date, an amount, if any, equal to the sum of (a) the Remaining Excess Spread for such Distribution Date and (b) the Overcollateralization Release Amount for such Distribution Date.

Excess Liquidation Proceeds: To the extent not required by law to be paid to the related Mortgagor, the excess, if any, of any Liquidation Proceeds with respect to a Mortgage Loan over the Stated Principal Balance of such Mortgage Loan and accrued and unpaid interest at the related Mortgage Rate through the last day of the month in which the Mortgage Loan has been liquidated.

Excess Spread: With respect to any Distribution Date, the excess, if any, of (i) the Interest Funds for such Distribution Date over (ii) the sum of the Current Interest on the Class A, Class M and Class B Certificates and Interest Carry Forward Amounts on the Class A Certificates (other than Interest Carry Forward Amounts paid pursuant to Section 6.04(a)(3)(A)), in each case for such Distribution Date.

27

CONFIDENTIAL

MSM_MSSTI_20071_0001520

Exchange Act:  Securities Exchange Act of 1934, as amended.

Exemption:  Prohibited Transaction Exemption 90-30, as amended from time to time.

Extra Principal Distribution Amount:  With respect to any Distribution Date, the lesser of (i) the excess, if any, of the Overcollateralization Target Amount for such Distribution Date, over the Overcollateralization Amount for such Distribution Date (after giving effect to distributions of principal on the Certificates other than any Extra Principal Distribution Amount) and (ii) the Excess Spread for such Distribution Date.

Fannie Mae:  Fannie Mae (formally, Federal National Mortgage Association), or any successor thereto.

FDIC:  The Federal Deposit Insurance Corporation, or any successor thereto.

Final Recovery Determination:  With respect to any defaulted Mortgage Loan or any REO Property (other than a Mortgage Loan or REO Property purchased by the Sponsor, EMC or the related Originator pursuant to or as contemplated by Section 2.03 or Section 11.01), a determination made by the applicable Servicer pursuant to the related Servicing Agreement that all Insurance Proceeds, Liquidation Proceeds and other payments or recoveries which such Servicer, in its reasonable good faith judgment, expects to be finally recoverable in respect thereof have been so recovered. The Master Servicer shall maintain records, based solely on information provided by each Servicer, of each Final Recovery Determination made thereby.

Fiscal Quarter:  December 1 to February 29 (or the last day in such month), March 1 to May 31, June 1 to August 31, or September 1 to November 30, as applicable.

Form 8-K Disclosure Information:  As defined in Section 4.18(a)(ii)(A).

Freddie Mac:  Freddie Mac (formally, The Federal Home Loan Mortgage Corporation), or any successor thereto.

Global Certificate:  Any Private Certificate registered in the name of the Depository or its nominee, beneficial interests in which are reflected on the books of the Depository or on the books of a Person maintaining an account with such Depository (directly or as an indirect participant in accordance with the rules of such depository).

Gross Margin:  With respect to each Adjustable Rate Mortgage Loan, the fixed percentage set forth in the related Mortgage Note that is added to the Index on each Adjustment Date in accordance with the terms of the related Mortgage Note used to determine the Mortgage Rate for such Mortgage Loan.

Indemnified Persons:  The Trustee, the Master Servicer, the Trust Fund, the Custodians and the Securities Administrator and their officers, directors, agents and employees and, with respect to the Trustee, any separate co-trustee and its officers, directors, agents and employees.

Individual Certificate:  Any Private Certificate registered in the name of the Holder other than the Depository or its nominee.

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL

MSM_MSSTI_20071_0001521

Initial Certificate Principal Balance: With respect to any Certificate, the Certificate Principal Balance of such Certificate or any predecessor Certificate on the Closing Date.

Insurance Policy: With respect to any Mortgage Loan included in the Trust Fund, any insurance policy or LPMI Policy, including all riders and endorsements thereto in effect with respect to such Mortgage Loan, including any replacement policy or policies for any Insurance Policies.

Insurance Proceeds: Proceeds paid in respect of the Mortgage Loans pursuant to any Insurance Policy or any other insurance policy covering a Mortgage Loan, to the extent such proceeds are not applied to the restoration of the related Mortgaged Property or released to the Mortgagor in accordance with the procedures that the related Servicer would follow in servicing mortgage loans held for its own account, in each case other than any amount included in such Insurance Proceeds in respect of Insured Expenses.

Insured Expenses: Expenses covered by an Insurance Policy or any other insurance policy with respect to the Mortgage Loans.

Interest Accrual Period: With respect to the Certificates (other than the Class CE, Class P Certificates and the Residual Certificates) and any Distribution Date, the period from and including the Distribution Date in the calendar month preceding the month in which the current Distribution Date occurs (or with respect to the first Interest Accrual Period, the Closing Date) to and including the day immediately preceding the current Distribution Date. The Class R Certificates and Class P Certificates are not entitled to distributions of interest and do not have an Interest Accrual Period. With respect to the Class CE Certificates and the Class CE Interest and any Distribution Date, the calendar month immediately preceding the month in which such Distribution Date occurs. All calculations of interest on the Class CE Certificates and the Class CE Interest will be made on the basis of a 360-day year consisting of twelve 30-day months. All calculations of interest on the Class A, Class M and Class B Certificates will be made on the basis of the actual number of days elapsed in the related Interest Accrual Period.

Interest Carry Forward Amount: As of any Distribution Date and with respect to each Class of Certificates (other than the Class CE, Class P and Residual Certificates), the sum of (i) the excess of (a) the Current Interest for such Class with respect to such Distribution Date and any prior Distribution Dates over (b) the amount actually distributed to such Class of Certificates with respect to interest on such Distribution Dates and (ii) interest thereon (to the extent permitted by applicable law) at the applicable Pass-Through Rate for such Class for the related Interest Accrual Period including the Interest Accrual Period relating to such Distribution Date.

Interest Determination Date: Shall mean the second LIBOR Business Day preceding the commencement of each Interest Accrual Period.

Interest Funds: For any Distribution Date, (i) the sum, without duplication, of (a) all scheduled interest during the related Due Period with respect to the related Mortgage Loans less the Servicing Fee, the Master Servicing Fee and the LPMI Fee, if any, and any amounts required to be reimbursed to the Servicers, the Master Servicer, the Securities Administrator, the Custodians, the Trustee, the Supplemental Interest Trust Trustee and the Swap Administrator pursuant to this Agreement, (b) all Advances relating to interest with respect to the related

CONFIDENTIAL

MSM_MSSTI_20071_0001522

Mortgage Loans remitted by the related Servicer or Master Servicer, as applicable, on or prior to the related Remittance Date, (c) all Compensating Interest with respect to the related Mortgage Loans required to be remitted by the Master Servicer pursuant to this Agreement or the related Servicer pursuant to the related Servicing Agreement with respect to such Distribution Date, (d) Liquidation Proceeds, Insurance Proceeds, Condemnation Proceeds and Subsequent Recoveries with respect to the related Mortgage Loans collected during the prior calendar month (to the extent such Liquidation Proceeds, Insurance Proceeds, Condemnation Proceeds and Subsequent Recoveries relate to interest), less all Nonrecoverable Advances relating to interest and certain expenses reimbursed during the prior calendar month, (e) all amounts relating to interest with respect to each Mortgage Loan repurchased by the Sponsor, Saxon (or its assignee), the Majority Class CE Certificateholder, or by the related Originator pursuant to Sections 2.02 and 2.03 and (f) all amounts in respect of interest paid by Saxon, the Majority Class CE Certificateholder or the Master Servicer pursuant to Section 11.01, in each case to the extent remitted by the related Servicer, as applicable, to the Distribution Account pursuant to this Agreement or the related Servicing Agreement; minus (ii) (A) all amounts required to be reimbursed pursuant to Sections 5.01 and 5.03 or as otherwise set forth in this Agreement and (B) any Net Swap Payment or Swap Termination Payment not due to a Swap Provider Trigger Event (other than to the extent already paid by the Swap Administrator from any upfront payment received pursuant to any replacement interest rate swap agreements that may be entered into by the Supplemental Interest Trust Trustee owed to the Swap Administrator for payment to the Swap Provider for such Distribution Date) and any such payments remaining unpaid for any prior Distribution Dates.

Latest Possible Maturity Date:   June 25, 2037, which is the Distribution Date in the month following the final scheduled maturity date of the Mortgage Loan in the Trust Fund having the latest scheduled maturity date as of the Cut-off Date. For purposes of the Treasury Regulations under Sections 860A through 860G of the Code, the latest possible maturity date of each Regular Interest issued by REMIC I, REMIC II, REMIC III, REMIC IV, REMIC V and REMIC VI shall be the Latest Possible Maturity Date.

LIBOR Business Day: Shall mean a day on which banks are open for dealing in foreign currency and exchange in London and New York City.

LIBOR Certificates: Any of the Class A Certificates, Class M Certificates and Class B Certificates.

Liquidated Loan: With respect to any Distribution Date, a defaulted Mortgage Loan that has been liquidated through deed-in-lieu of foreclosure, foreclosure sale, trustee's sale or other realization as provided by applicable law governing the real property subject to the related Mortgage and any security agreements and as to which the related Servicer has made a Final Recovery Determination with respect thereto.

Liquidation Proceeds: Amounts, other than Insurance Proceeds, Condemnation Proceeds and Subsequent Recoveries received in connection with the partial or complete liquidation of a Mortgage Loan, whether through trustee's sale, foreclosure sale or otherwise, or in connection with any condemnation or partial release of a Mortgaged Property and any other proceeds received with respect to an REO Property, less the sum of related unreimbursed Advances, Servicing Fees and Servicing Advances and all expenses of liquidation, including property protection expenses and foreclosure and sale costs, including court and reasonable attorneys fees.

30

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL

MSM_MSSTI 20071 0001523

Loan-to-Value Ratio: The fraction, expressed as a percentage, the numerator of which is the original principal balance of the related Mortgage Loan and the denominator of which is the Appraised Value of the related Mortgaged Property.

Loss Allocation Limitation: The meaning specified in Section 6.05(c) hereof.

LPMI Fee: Shall mean the fee payable to the insurer for each Mortgage Loan subject to an LPMI Policy as set forth in such LPMI Policy and on the Mortgage Loan Schedule.

LPMI Policy: A policy of mortgage guaranty insurance issued by an insurer meeting the requirements of Fannie Mae and Freddie Mac in which the related Servicer of the related Mortgage Loan is responsible for the payment of the LPMI Fee thereunder from collections on the related Mortgage Loan.

Majority Class CE Certificateholder: Shall mean the Holder of a majority or greater Percentage Interest in the Class CE Certificates.

Marker Rate:  With respect to the Class CE Interest and any Distribution Date, a per annum rate equal to two (2) times the weighted average of the Uncertificated REMIC II Pass-Through Rates for the REMIC II Regular Interests (other than REMIC II Regular Interests AA, IO and P), with the rate on each such REMIC II Regular Interest (other than REMIC II Regular Interest ZZ) subject to a cap equal to the lesser of (i) the Pass-Through Rate for the Corresponding Certificate determined without regard to the Net Rate Cap for the purpose of this calculation for such Distribution Date and (ii) the Net Rate Cap for the REMIC III Regular Interest the ownership of which is represented by the Corresponding Certificate for the purpose of this calculation for such Distribution Date, and with the rate on REMIC II Regular Interest ZZ subject to a cap of zero for the purpose of this calculation; provided, however, that solely for this purpose, the related cap with respect to each REMIC II Regular Interest (other than REMIC II Regular Interests P, IO, AA and ZZ) shall be multiplied by a fraction, the numerator of which is 30 and the denominator of which is the actual number of days in the related Interest Accrual Period.

Master Servicer: Wells Fargo Bank, National Association, in its capacity as master servicer, and its successors and assigns.

Master Servicer Information: As defined in Section 4.18(b).

Master Servicing Compensation: For any Distribution Date, the Master Servicing Fee for such Distribution Date and any amounts earned on permitted investments in the Distribution Account during the Master Servicer Float Period.

Master Servicing Fee: As to each Mortgage Loan and any Distribution Date, an amount equal to 1/12th of the Master Servicing Fee Rate multiplied by the Stated Principal Balance of such Mortgage Loan as of the Due Date in the month preceding the month in which such Distribution Date occurs and any amounts earned on permitted investments in the Distribution Account during the Master Servicer Float Period.

Master Servicing Fee Rate: 0.015% per annum.

31

CONFIDENTIAL                                                                                   MSM_MSSTI_20071_0001524

Master Servicer Float Period: With respect to each Distribution Date and the related amounts in the Distribution Account, the period commencing on the Business Day immediately preceding such Distribution Date and ending on such Distribution Date.

Maximum Mortgage Rate: With respect to each Adjustable Rate Mortgage Loan, the percentage set forth in the related Mortgage Note as the maximum Mortgage Rate thereunder.

Maximum Probable Exposure: With respect to each Distribution Date, the amount calculated by the Depositor in accordance with the EMC's internal risk management process in respect of similar instruments, such calculation to be performed by the Depositor.

MERS: Mortgage Electronic Registration Systems, Inc., a corporation organized and existing under the laws of the State of Delaware, or any successor thereto.

MERS® System: The system of recording transfers of Mortgages electronically maintained by MERS.

MIN: The Mortgage Identification Number for Mortgage Loans registered with MERS on the MERS® System.

Minimum Mortgage Rate: With respect to each Adjustable Rate Mortgage Loan, the percentage set forth in the related Mortgage Note as the minimum Mortgage Rate thereunder.

MOM Loan: With respect to any Mortgage Loan, MERS acting as the mortgagee of such Mortgage Loan, solely as nominee for the originator of such Mortgage Loan and its successors and assigns, at the origination thereof.

Monthly Statement: The statement delivered pursuant to Section 6.06.

Moody's: Moody's Investors Service, Inc., and any successor thereto.

Mortgage: The mortgage, deed of trust or other instrument creating a first lien on or first priority ownership interest in an estate in fee simple in real property securing a Mortgage Note.

Mortgage File: The mortgage documents listed in Section 2.01 hereof pertaining to a particular Mortgage Loan and any additional documents delivered to the Trustee or Custodian on its behalf to be added to the Mortgage File pursuant to this Agreement.

Mortgage Loans: Such of the Mortgage Loans transferred and assigned to the Trustee pursuant to the provisions hereof, as from time to time are held as a part of the Trust Fund (including any REO Property), the mortgage loans so held being identified in the Mortgage Loan Schedule, notwithstanding foreclosure or other acquisition of title of the related Mortgaged Property. Any mortgage loan that was intended by the parties hereto to be transferred to the Trust Fund as indicated by such Mortgage Loan Schedule which is in fact not so transferred for any reason including, without limitation, a breach of the representation contained in Section 2.03(b)(v) hereof, shall continue to be a Mortgage Loan hereunder until the Purchase Price with respect thereto has been paid to the Trust Fund.

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL                                                                    MSM_MSSTI_20071_0001525

Mortgage Loan Purchase Agreement: Shall mean the Mortgage Loan Purchase Agreement, dated as of the Closing Date, among EMC, the Sponsor and the Depositor, in the form attached hereto as Exhibit L.

Mortgage Loan Purchase Price: The price, calculated as set forth in Section 11.01, to be paid in connection with the repurchase of the Mortgage Loans pursuant to Section 11.01.

Mortgage Loan Schedule: The list of Mortgage Loans (as from time to time amended by the Sellers to reflect the deletion of Deleted Mortgage Loans and the addition of Replacement Mortgage Loans pursuant to the provisions of this Agreement) transferred to the Trustee as part of the Trust Fund and from time to time subject to this Agreement, the initial Mortgage Loan Schedule being attached hereto as Exhibit B, setting forth the following information with respect to each Mortgage Loan:

    (a)    the related Seller's Mortgage Loan identifying number;

    (b)    [reserved];

    (c)    the city, state and zip code of the Mortgaged Property;

    (d)    [reserved];

    (e)    the number and type of residential units constituting the Mortgaged Property (e.g. single family residence, a two- to four-family dwelling, condominium, planned unit development or cooperative);

    (f)    the original months to maturity or the remaining months to maturity from the Cut-off Date, in any case based on the original amortization schedule and, if different, the maturity expressed in the same manner but based on the actual amortization schedule;

    (g)    with respect to each first lien Mortgage Loan, the Loan-to-Value Ratio at origination, and with respect to each second lien Mortgage Loan, the CLTV at origination;

    (h)    the Mortgage Rate and the Net Mortgage Rate as of the Cut-off Date;

    (i)    the date on which the first Monthly Payment was due on the Mortgage Loan and, if such date is not consistent with the Due Date currently in effect, the Due Date;

    (j)    the stated maturity date;

    (k)    the amount of the Monthly Payment as of the Cut-off Date;

    (l)    [reserved];

    (m)    the original principal amount of the Mortgage Loan;

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL

MSM_MSSTI_20071_0001526

(n)        the actual principal balance of the Mortgage Loan as of the close of business on the Cut-off Date, after deduction of payments of principal collected on or before the Cut-off Date;

(o)        with respect to Adjustable Rate Mortgage Loans, the Adjustment Date;

(p)        with respect to Adjustable Rate Mortgage Loans, the Gross Margin;

(q)        with respect to Adjustable Rate Mortgage Loans, the the Periodic Rate Cap, if applicable; under the terms of the Mortgage Note;

(r)        [reserved];

(s)        the type of Mortgage Loan (i.e., fixed or Adjustable Rate Mortgage Loan, first or second lien Mortgage Loan);

(t)        a code indicating the purpose of the loan (i.e., purchase, rate/term refinance or cash-out refinance);

(u)        the Servicing Fee Rate;

(v)        the LPMI Fee, if applicable;

(w)        the Master Servicing Fee Rate;

(x)        the MIN with respect to each MOM Loan;

(y)        with respect to Adjustable Rate Mortgage Loans, the Maximum Mortgage Rate, if applicable;

(z)        with respect to Adjustable Rate Mortgage Loans, the Minimum Mortgage Rate, if applicable;

(aa)       which Mortgage Loans adjust after an initial fixed-rate period of one, two, three, five, seven or ten years or any other period;

(aa)       the Prepayment Charge, if any;

(bb)       a code indicating whether the Mortgage Loan is has a balloon payment;

(cc)       a code indicating whether the Mortgage Loan is an interest-only loan;

(dd)       the interest-only term, if applicable;

(ee)       the related Seller; and

(ff)       the original amortization term.

Such schedule also shall set forth for all of the Mortgage Loans, the total number of Mortgage Loans, the total of each of the amounts described under (k) and (n) above, the weighted average by principal balance as of the Cut-off Date of each of the rates described under (h) and (u)

34

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL

through (w) above, and the weighted average remaining term to maturity by unpaid principal balance as of the Cut-off Date.

Mortgage Note: The original executed note or other evidence of indebtedness of a Mortgagor under a Mortgage Loan.

Mortgage Rate: The annual rate of interest borne by a Mortgage Note.

Mortgaged Property: The underlying property securing a Mortgage Loan.

Mortgagor: The obligors on a Mortgage Note.

Net Mortgage Rate: As to each Mortgage Loan, and at any time, the per annum rate equal to the Mortgage Rate less the sum of (i) the Servicing Fee Rate, (ii) the Master Servicing Fee Rate and (iii) the rate at which the LPMI Fee is calculated, if any.

Net Rate Cap:  With respect to the Class A, Class M and Class B Certificates and any Distribution Date, a per annum rate equal to the excess, if any, of (A) the weighted average of the Net Mortgage Rates of the Mortgage Loans as of the related Due Date prior to giving effect to any reduction in the Stated Principal Balances of such Mortgage Loans on such Due Date (and, with respect to the first Distribution Date, 0.00% per annum on a balance equal to the Special Deposit), over (B) a per annum rate equal to the sum of the Net Swap Payment payable to the Swap Provider and any Swap Termination Payment not due to a Swap Provider Trigger Event payable to the Swap Provider on such Distribution Date (to the extent not paid by the Swap Administrator from any upfront payment received pursuant to any related replacement interest rate swap agreement that may be entered into by the Supplemental Interest Trust Trustee), divided by the outstanding Stated Principal Balance of the Mortgage Loans as of the related Due Date prior to giving effect to any reduction in the Stated Principal Balances of such Mortgage Loans on such Due Date, multiplied by 12. The Net Rate Cap will be adjusted to an effective rate reflecting the accrual of interest on an actual/360 basis.

For federal income tax purposes, the Net Rate Cap with respect to each of the REMIC III Regular Interests the ownership of which is represented by the Class A, Class M and Class B Certificates and any Distribution Date shall be equal to a per annum rate equal to the weighted average (adjusted for the actual number of days elapsed in the related Interest Accrual Period) of the Uncertificated REMIC II Pass-Through Rates on the REMIC II Regular Interests (other than REMIC II Regular Interests IO and P), weighted on the basis of the Uncertificated Principal Balances of each such REMIC II Regular Interest immediately prior to such Distribution Date.

Net Swap Payment: With respect to each Distribution Date, the net payment required to be made pursuant to the terms of the Swap Agreement by either the Swap Provider or the Swap Administrator, which net payment shall not take into account any Swap Termination Payment.

Nonrecoverable Advance: Any portion of an Advance previously made or proposed to be made by the Master Servicer pursuant to this Agreement or the related Servicer pursuant to the related Servicing Agreement, that, in the good faith judgment of the Master Servicer or the

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL

MSM_MSSTI_20071_0001528

related Servicer, will not or, in the case of a proposed advance, would not, be ultimately recoverable by it from the related Mortgagor, related Liquidation Proceeds, Insurance Proceeds or otherwise.

Notional Amount: With respect to the Class CE Certificates and any Distribution Date, an amount equal to the aggregate Stated Principal Balance of the Mortgage Loans (plus the Special Deposit with respect to the first Distribution Date). The initial Notional Amount of the Class CE Certificates shall be $735,100,463.83. For federal income tax purposes, the Class CE Certificates will have a Notional Amount equal to the Uncertificated Notional Amount of the Class CE Interest. With respect to each Distribution Date and the Swap Agreement, the notional amount for the related calculation period as set forth in the related schedule set forth in Exhibit M.

Offered Certificates: Any of the Class A-1, Class A-2, Class A-3, Class A-4, Class M-1, Class M-2, Class M-3, Class M-4, Class M-5, Class M-6, Class B-1, Class B-2 and Class B-3 Certificates.

Officer's Certificate: A certificate (i) signed by the Chairman of the Board, the Vice Chairman of the Board, the President, a Vice President (however denominated), an Assistant Vice President, the Treasurer, the Secretary, or one of the assistant treasurers or assistant secretaries of any Servicer or the Master Servicer (or any other officer customarily performing functions similar to those performed by any of the above designated officers and also to whom, with respect to a particular matter, such matter is referred because of such officer's knowledge of and familiarity with a particular subject) or (ii), if provided for in this Agreement, signed by a Servicing Officer, as the case may be, and delivered to the Depositor, the Securities Administrator, the Master Servicer and/or the Trustee, as the case may be, as required by this Agreement.

One-Month LIBOR: With respect to any Interest Accrual Period and the LIBOR Certificates, the rate determined by the Securities Administrator on the related Interest Determination Date on the basis of the rate for U.S. dollar deposits for one month that appears on Telerate Screen Page 3750 as of 11:00 a.m. (London time) on such Interest Determination Date. If such rate does not appear on such page (or such other page as may replace that page on that service, or if such service is no longer offered, such other service for displaying One-Month LIBOR or comparable rates as may be reasonably selected by the Securities Administrator), One-Month LIBOR for the applicable Interest Accrual Period will be the Reference Bank Rate. If no such quotations can be obtained by the Securities Administrator and no Reference Bank Rate is available, One-Month LIBOR shall be One-Month LIBOR applicable to the preceding Interest Accrual Period. The establishment of One-Month LIBOR on each Interest Determination Date by the Securities Administrator and the Securities Administrator's calculation of the rate of interest applicable to the LIBOR Certificates for the related Interest Accrual Period shall, in the absence of manifest error, be final and binding. One-Month LIBOR for the Class M Certificates and Class B Certificates and any Interest Accrual Period shall be calculated as described above.

Opinion of Counsel: A written opinion of counsel, who may be counsel for the Seller, the Depositor, or the Master Servicer, reasonably acceptable to each addressee of such opinion; provided that with respect to Section 2.05, 8.05, 8.07 or 12.01, or the interpretation or application of the REMIC Provisions, such counsel must (i) in fact be independent of EMC, the Depositor and the Master Servicer, (ii) not have any direct financial interest in EMC, the Depositor or the

36

CONFIDENTIAL

Master Servicer or in any affiliate of either, and (iii) not be connected with EMC, the Depositor or the Master Servicer as an officer, employee, promoter, underwriter, trustee, partner, director or person performing similar functions.

Optional Termination: The termination of the Trust created hereunder as a result of the purchase of all of the assets of the Trust and any related REO Property pursuant to Section 11.01.

Optional Termination Date: The Distribution Date on which the Stated Principal Balance of all of the Mortgage Loans and REO Properties is equal to or less than 5% of the Stated Principal Balance of all of the Mortgage Loans as of the Cut-off Date.

Originator: With respect to each Mortgage Loan, shall mean the originator set forth in the Mortgage Loan Schedule for such Mortgage Loan.

OTS: The Office of Thrift Supervision.

Outstanding: With respect to the Certificates as of any date of determination, all Certificates theretofore executed and authenticated under this Agreement except:

(a)     Certificates theretofore canceled by the Securities Administrator or delivered to the Securities Administrator for cancellation; and

(b)     Certificates in exchange for which or in lieu of which other Certificates have been executed and delivered by the Securities Administrator pursuant to this Agreement.

Outstanding Mortgage Loan: As of any date of determination, a Mortgage Loan with a Stated Principal Balance greater than zero that was not the subject of a Principal Prepayment in full, and that did not become a Liquidated Loan, prior to the end of the related Prepayment Period.

Overcollateralization Amount:  With respect to any Distribution Date, the excess, if any, of (a) the aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period, and after reduction for Realized Losses incurred during the related Prepayment Period), plus, with respect to the first Distribution Date, the Special Deposit, over (b) the aggregate Certificate Principal Balance of the Class A, Class M and Class B Certificates on such Distribution Date (after taking into account the payment of principal other than any Extra Principal Distribution Amount on such Certificates).

Overcollateralization Release Amount:  With respect to any Distribution Date, the lesser of (x) the Principal Funds for such Distribution Date and (y) the excess, if any, of (i) the Overcollateralization Amount for such Distribution Date (assuming that 100% of the Principal Funds are applied as a principal payment on such Distribution Date), over (ii) the Overcollateralization Target Amount for such Distribution Date (with the amount pursuant to clause (y) deemed to be $0 if the Overcollateralization Amount is less than or equal to the Overcollateralization Target Amount on that Distribution Date).

37

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL

Overcollateralization Target Amount:  With respect to any Distribution Date (a) prior to the Stepdown Date, 4.00% of the aggregate Stated Principal Balance of the Mortgage Loans as of the Cut-off Date, plus, with respect to the first Distribution Date, the Special Deposit, (b) on or after the Stepdown Date and if a Trigger Event is not in effect, the greater of (i) the lesser of (1) 4.00% of the aggregate Stated Principal Balance of the Mortgage Loans as of the Cut-off Date, plus, with respect to the first Distribution Date, the Special Deposit and (2) 8.00% of the then current aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period, and after reduction for Realized Losses incurred during the related Prepayment Period) and (ii) $3,675,502 or (c) on or after the Stepdown Date and if a Trigger Event is in effect, the Overcollateralization Target Amount for the immediately preceding Distribution Date.

Ownership Interest: As to any Certificate, any ownership interest in such Certificate including any interest in such Certificate as the Holder thereof and any other interest therein, whether direct or indirect, legal or beneficial.

Pass-Through Rate:  With respect to each Class of Certificates (other than the Class CE Certificates, Class P Certificates and each Class of Residual Certificates) and the Class CE Interest, the Class A-1 Pass-Through Rate, the Class A-2 Pass-Through Rate, the Class A-3 Pass-Through Rate, the Class A-4 Pass-Through Rate, the Class M-1 Pass-Through Rate, the Class M-2 Pass-Through Rate, the Class M-3 Pass-Through Rate, the Class M-4 Pass-Through Rate, the Class M-5 Pass Through Rate, the Class M-6 Pass Through Rate, the Class B-1 Pass-Through Rate, the Class B-2 Pass-Through Rate, the Class B-3 Pass-Through Rate, the Class B-4 Pass-Through Rate or the Class CE Pass-Through Rate, as applicable.

With respect to the Class CE Certificate, the Class CE Certificate shall not have a Pass-Through Rate, but Current Interest for such Certificate and each Distribution Date shall be an amount equal to 100% of the amounts distributable to the Class CE Interest for such Distribution Date.

With respect to the Class P Certificate and the Class P Interest, 0.00% per annum.

With respect to the Class IO Interest, Class IO Interest shall not have a Pass-Through Rate, but Current Interest for such interest and each Distribution Date shall be an amount equal to 100% of the amounts distributable to REMIC II Regular Interest IO for such Distribution Date.

With respect to REMIC VI Regular Interest IO, REMIC VI Regular Interest IO shall not have a Pass-Through Rate, but Current Interest for such Regular Interest and each Distribution Date shall be an amount equal to 100% of the amounts distributable to the Class IO Interest for such Distribution Date.

Paying Agent: The Securities Administrator, in its capacity as paying agent, and its successors and assigns.

38

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL

Percentage Interest: With respect to any Certificate of a specified Class, the Percentage Interest set forth on the face thereof or the percentage obtained by dividing the Denomination of such Certificate by the aggregate of the Denominations of all Certificates of the such Class.

Periodic Rate Cap:   With respect to each Adjustable Rate Mortgage Loan and any Adjustment Date therefor, the fixed percentage set forth in the related Mortgage Note, which is the maximum amount by which the Mortgage Rate for such Mortgage Loan may increase or decrease (without regard to the Maximum Mortgage Rate or the Minimum Mortgage Rate) on such Adjustment Date from the Mortgage Rate in effect immediately prior to such Adjustment Date.

Permitted Investments: At any time, any one or more of the following obligations and securities:

> (i)     obligations of the United States or any agency thereof, provided such obligations are backed by the full faith and credit of the United States;

> (ii)     general obligations of or obligations guaranteed by any state of the United States or the District of Columbia receiving the highest long-term debt rating of each Rating Agency, or such lower rating as will not result in the downgrading or withdrawal of the ratings then assigned to the Certificates by each Rating Agency;

> (iii)     commercial or finance company paper which is then receiving the highest commercial or finance company paper rating of each Rating Agency, or such lower rating as will not result in the downgrading or withdrawal of the ratings then assigned to the Certificates by each Rating Agency;

> (iv)     certificates of deposit, demand or time deposits, or bankers' acceptances issued by any depository institution or trust company incorporated under the laws of the United States or of any state thereof and subject to supervision and examination by federal and/or state banking authorities (including the Trustee in its commercial banking capacity), provided that the commercial paper and/or long term unsecured debt obligations of such depository institution or trust company are then rated one of the two highest long-term and the highest short-term ratings of each such Rating Agency for such securities, or such lower ratings as will not result in the downgrading or withdrawal of the rating then assigned to the Certificates by any Rating Agency;

> (v)     guaranteed reinvestment agreements issued by any bank, insurance company or other corporation containing, at the time of the issuance of such agreements, such terms and conditions as will not result in the downgrading or withdrawal of the rating then assigned to the Certificates by any such Rating Agency;

> (vi)     repurchase obligations with respect to any security described in clauses (i) and (ii) above, in either case entered into with a depository institution or trust company (acting as principal) described in clause (iv) above;

> (vii)     securities (other than stripped bonds, stripped coupons or instruments sold at a purchase price in excess of 115% of the face amount thereof)

39

CONFIDENTIAL                                                                 MSM_MSSTI_20071_0001532

bearing interest or sold at a discount issued by any corporation incorporated under the laws of the United States or any state thereof which, at the time of such investment, have one of the two highest long term ratings of each Rating Agency (except if the Rating Agency is Moody's, such rating shall be the highest commercial paper rating of Moody's for any such securities), or such lower rating as will not result in the downgrading or withdrawal of the rating then assigned to the Certificates by any Rating Agency, as evidenced by a signed writing delivered by each Rating Agency;

        (viii)   interests in any money market fund (including any such fund managed or advised by the Trustee or Master Servicer or any affiliate thereof) which at the date of acquisition of the interests in such fund and throughout the time such interests are held in such fund has the highest applicable long term rating by each Rating Agency rating such fund or such lower rating as will not result in the downgrading or withdrawal of the ratings then assigned to the Certificates by each Rating Agency;

        (ix)   short term investment funds sponsored by any trust company or banking association incorporated under the laws of the United States or any state thereof (including any such fund managed or advised by the Trustee or the Master Servicer or any affiliate thereof) which on the date of acquisition has been rated by each Rating Agency in their respective highest applicable rating category or such lower rating as will not result in the downgrading or withdrawal of the ratings then assigned to the Certificates by each Rating Agency; and

        (x)   such other investments having a specified stated maturity and bearing interest or sold at a discount acceptable to each Rating Agency as will not result in the downgrading or withdrawal of the rating then assigned to the Certificates by any Rating Agency, as evidenced by a signed writing delivered by each Rating Agency;

provided, that no such instrument shall be a Permitted Investment if such instrument (i) evidences the right to receive interest only payments with respect to the obligations underlying such instrument, (ii) is purchased at a premium or (iii) is purchased at a deep discount; provided further that no such instrument shall be a Permitted Investment (A) if such instrument evidences principal and interest payments derived from obligations underlying such instrument and the interest payments with respect to such instrument provide a yield to maturity of greater than 120% of the yield to maturity at par of such underlying obligations, or (B) if it may be redeemed at a price below the purchase price (the foregoing clause (B) not to apply to investments in units of money market funds pursuant to clause (v) above); provided further that no amount beneficially owned by any REMIC may be invested in investments (other than money market funds) treated as equity interests for federal income tax purposes, unless the Master Servicer shall receive an Opinion of Counsel, at the expense of the Master Servicer, to the effect that such investment will not adversely affect the status of any such REMIC as a REMIC under the Code or result in imposition of a tax on any such REMIC. Permitted Investments that are subject to prepayment or call may not be purchased at a price in excess of par.

        Permitted Transferee: Any Person (x) other than (i) the United States, any State or political subdivision thereof, any possession of the United States or any agency or instrumentality of any of the foregoing, (ii) a foreign government, International Organization or any agency or instrumentality of either of the foregoing, (iii) an organization (except certain

[TPW: NYLEGAL:691857.8] 17297-00533 11/15/2007 06:00 PM

CONFIDENTIAL

MSM_MSSTI_20071_0001533

farmers' cooperatives described in Section 521 of the Code) that is exempt from tax imposed by Chapter 1 of the Code (including the tax imposed by Section 511 of the Code on unrelated business taxable income) on any excess inclusions (as defined in Section 860E(c)(1) of the Code) with respect to any Residual Certificate, (iv) rural electric and telephone cooperatives described in Section 1381(a)(2)(C) of the Code or (v) an electing large partnership within the meaning of Section 775(a) of the Code, (y) that is a citizen or resident of the United States, a corporation, partnership (other than a partnership that has any direct or indirect foreign partners) or other entity (treated as a corporation or a partnership for federal income tax purposes), created or organized in or under the laws of the United States, any State thereof or the District of Columbia, an estate whose income from sources without the United States is includible in gross income for United States federal income tax purposes regardless of its connection with the conduct of a trade or business within the United States, or a trust if a court within the United States is able to exercise primary supervision over the administration of the trust and one or more United States persons have authority to control all substantial decisions of the trust or if it has a valid election in effect under applicable U.S. Treasury Regulations to be treated as a United States person and (z) other than any other Person so designated by the Trustee or Securities Administrator based upon an Opinion of Counsel addressed to the Trustee or Securities Administrator (which shall not be an expense of the Trustee or Securities Administrator) that states that the Transfer of an Ownership Interest in a Residual Certificate to such Person may cause REMIC I, REMIC II, REMIC III, REMIC IV, REMIC V or REMIC VI to fail to qualify as a REMIC at any time that any Certificates are Outstanding. The terms "United States," "State" and "International Organization" shall have the meanings set forth in Section 7701 of the Code or successor provisions. A corporation will not be treated as an instrumentality of the United States or of any State or political subdivision thereof for these purposes if all of its activities are subject to tax and, with the exception of Freddie Mac, a majority of its board of directors is not selected by such government unit.

Person: Any individual, corporation, partnership, joint venture, association, joint-stock company, limited liability company, trust, unincorporated organization or government, or any agency or political subdivision thereof.

Prepayment Assumption: The applicable rate of prepayment, as described in the Prospectus Supplement.

Prepayment Charge: Any prepayment premium, penalty or charge payable by a Mortgagor in connection with any Principal Prepayment on a Mortgage Loan pursuant to the terms of the related Mortgage Note.

Prepayment Charge Waiver Amount: Any amount paid by the related Servicer to the Master Servicer in respect of waived Prepayment Charges pursuant to Section 5.01(a).

Prepayment Interest Shortfall: With respect to any Distribution Date, for each Mortgage Loan that was the subject of a full or partial Principal Prepayment during the related Prepayment Period or that became a Liquidated Loan during the prior calendar month, the amount received from and including the 16th day of the month preceding the month in which such Distribution Date occurs through the last day of the month preceding the month in which such Distribution Date occurs, if any, by which (i) one month's interest at the applicable Net Mortgage Rate on the Stated Principal Balance of such Mortgage Loan immediately prior to such prepayment (or

41

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

MSM_MSSTI_20071_0001534

liquidation) or in the case of a partial Principal Prepayment on the amount of such prepayment (or liquidation proceeds) exceeds (ii) the amount of interest paid or collected in connection with such Principal Prepayment or such liquidation proceeds less the sum of (a) the related Servicing Fee, (b) the Master Servicing Fee Rate and (c) the LPMI Fee, if any.

Prepayment Period: As to any Distribution Date, the period commencing on the 16th day of the month prior to the month in which the related Distribution date occurs (or with respect to the first Distribution Date, the period commencing on the Cut-off date) and ending on the 15th day of the month in which such Distribution Date occurs.

Primary Mortgage Insurance Policy: Any primary mortgage guaranty insurance policy issued in connection with a Mortgage Loan which provides compensation to a Mortgage Note holder in the event of default by the obligor under such Mortgage Note or the related security instrument, if any or any replacement policy therefor through the related Interest Accrual Period for such Class relating to a Distribution Date.

Principal Distribution Amount:  With respect to each Distribution Date, an amount equal to (x) the Principal Funds for such Distribution Date plus (y) any Extra Principal Distribution Amount for such Distribution Date, less (z) any Overcollateralization Release Amount.

Principal Funds: With respect to any Distribution Date, (i) the sum, without duplication, of (a) all scheduled principal collected on the Mortgage Loans during the related Due Period, (b) all Advances relating to principal made with respect to the Mortgage Loans remitted by the related Servicer or Master Servicer, as applicable, on or prior to the Remittance Date, (c) Principal Prepayments with respect to the Mortgage Loans exclusive of Prepayment Charges collected during the related Prepayment Period, (d) the Stated Principal Balance of each Mortgage Loan that was repurchased by the related Originator, Saxon (or its assignee) or the Majority Class CE Certificateholder pursuant to Section 4.21, the Sponsor pursuant to Sections 2.02 or 2.03 or by another Servicer (e) the aggregate of all Substitution Adjustment Amounts with respect to the Mortgage Loans for the related Determination Date in connection with the substitution of related Mortgage Loans pursuant to Section 2.03(d), (f) all Liquidation Proceeds, Insurance Proceeds and Subsequent Recoveries with respect to the Mortgage Loans collected during the prior calendar month (to the extent such Liquidation Proceeds, Insurance Proceeds and Subsequent Recoveries relate to principal) and remitted by the related Servicer to the Distribution Account pursuant to this Agreement or the related Servicing Agreement, less all Nonrecoverable Advances relating to principal reimbursed during the related Due Period, (g) amounts in respect of principal paid by Saxon or the Majority Class CE Certificateholder pursuant to Section 11.01 and (h) the Special Deposit, with respect to the first Distribution Date, minus (ii) (A) all related amounts required to be reimbursed pursuant to Sections 5.01 and 5.03 or as otherwise set forth in this Agreement and (B) any Net Swap Payments or Swap Termination Payments (not due to a Swap Provider Trigger Event and other than to the extent already paid by the Swap Administrator from any upfront payment received pursuant to any replacement interest rate swap agreement that may be entered into by the Supplemental Interest Trust Trustee) owed to the Swap Administrator for payment to the Swap Provider for such Distribution Date and any such payments remaining unpaid for any prior Distribution Dates to the extent not paid from Interest Funds.

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL                                                                    MSM_MSSTI_20071_0001535

Principal Prepayment: Any Mortgagor payment or other recovery of (or proceeds with respect to) principal on a Mortgage Loan (including Mortgage Loans purchased or repurchased under Sections 2.02, 2.03, 4.21 and 11.01 hereof) that is received in advance of its scheduled Due Date and is not accompanied by an amount as to interest representing scheduled interest due on any date or dates in any month or months subsequent to the month of prepayment. Partial Principal Prepayments shall be applied by the related Servicer in accordance with the terms of the related Mortgage Note.

Private Certificates: Any of the Class B-4, Class CE, Class P and Class R Certificates.

Prospectus Supplement: The Prospectus Supplement dated July 5, 2007 relating to the public offering of the Offered Certificates.

Protected Account: Each account established and maintained by the related Servicer with respect to receipts on the Mortgage Loans and REO Property in accordance with the related Servicing Agreement.

Purchase Price: With respect to any Mortgage Loan (x) required to be repurchased by a Seller or the related Originator pursuant to Section 2.02 hereof or (y) that the applicable Servicer or the Majority Class CE Certificateholder has a right to purchase pursuant to Section 4.21 hereof, an amount equal to the sum of (i) 100% of the outstanding principal balance of the Mortgage Loan as of the date of such purchase plus (ii) accrued and unpaid interest thereon at the applicable Mortgage Rate through and including the last day of the month of such purchase, reduced by any portion of the Servicing Fee, Servicing Advances and Advances payable to the purchaser of the Mortgage Loan plus (iii) any costs and damages (if any) incurred by the Trust in connection with any violation of such Mortgage Loan of any predatory lending laws.

Rating Agency: Each of Moody's and S&P. If any such organization or its successor is no longer in existence, "Rating Agency" shall be a nationally recognized statistical rating organization, or other comparable Person, designated by the Depositor, notice of which designation shall be given to the Trustee. References herein to a given rating category of a Rating Agency shall mean such rating category without giving effect to any modifiers.

Realized Loss: With respect to each Mortgage Loan as to which a Final Recovery Determination has been made, an amount (not less than zero) equal to (i) the unpaid principal balance of such Mortgage Loan as of the commencement of the calendar month in which the Final Recovery Determination was made, plus (ii) accrued interest from the Due Date as to which interest was last paid by the Mortgagor through the end of the calendar month in which such Final Recovery Determination was made, calculated in the case of each calendar month during such period (A) at an annual rate equal to the annual rate at which interest was then accruing on such Mortgage Loan and (B) on a principal amount equal to the Stated Principal Balance of such Mortgage Loan as of the close of business on the Distribution Date during such calendar month, minus (iii) the proceeds, if any, received in respect of such Mortgage Loan during the calendar month in which such Final Recovery Determination was made, net of amounts that are payable therefrom to the related Servicer pursuant to the related Servicing Agreement. In addition, to the extent the related Servicer receives Subsequent Recoveries with respect to any Mortgage Loan, the amount of the Realized Loss with respect to that Mortgage

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL

MSM_MSSTI_20071_0001536

Loan will be reduced to the extent such recoveries are distributed to any Class of Certificates or applied to increase Excess Spread on any Distribution Date.

With respect to any REO Property as to which a Final Recovery Determination has been made, an amount (not less than zero) equal to (i) the unpaid principal balance of the related Mortgage Loan as of the date of acquisition of such REO Property on behalf of REMIC I, plus (ii) accrued interest from the Due Date as to which interest was last paid by the Mortgagor in respect of the related Mortgage Loan through the end of the calendar month immediately preceding the calendar month in which such REO Property was acquired, calculated in the case of each calendar month during such period (A) at an annual rate equal to the annual rate at which interest was then accruing on the related Mortgage Loan and (B) on a principal amount equal to the Stated Principal Balance of the related Mortgage Loan as of the close of business on the Distribution Date during such calendar month, plus (iii) REO Imputed Interest for such REO Property for each calendar month commencing with the calendar month in which such REO Property was acquired and ending with the calendar month in which such Final Recovery Determination was made, minus (iv) the aggregate of all unreimbursed Advances and Servicing Advances.

With respect to each Mortgage Loan which has become the subject of a Deficient Valuation, the difference between the principal balance of the Mortgage Loan outstanding immediately prior to such Deficient Valuation and the principal balance of the Mortgage Loan as reduced by the Deficient Valuation.

With respect to each Mortgage Loan which has become the subject of a Debt Service Reduction, the portion, if any, of the reduction in each affected Monthly Payment attributable to a reduction in the Mortgage Rate imposed by a court of competent jurisdiction. Each such Realized Loss shall be deemed to have been incurred on the Due Date for each affected Monthly Payment.

Record Date: With respect to any Distribution Date and the Certificates (other than the Class CE, Class P and Residual Certificates), so long as such Classes of Certificates are Book-Entry Certificates, the Business Day preceding such Distribution Date, and otherwise, the close of business on the last Business Day of the month preceding the month in which such Distribution Date occurs. With respect to the Class CE, Class P Certificates and Residual Certificates, so long as such Classes of Certificates remain non-Book-Entry Certificates, the close of business on the last Business Day of the month preceding the month in which such Distribution Date occurs and otherwise the Business Day preceding the applicable Distribution Date.

Reference Banks: Shall mean leading banks selected by the Securities Administrator and engaged in transactions in Eurodollar deposits in the international Eurocurrency market (i) with an established place of business in London, (ii) which have been designated as such by the Securities Administrator and (iii) which are not controlling, controlled by, or under common control with, the Depositor, the Seller or the Master Servicer.

Reference Bank Rate: With respect to any Interest Accrual Period shall mean the arithmetic mean, rounded upwards, if necessary, to the nearest whole multiple of 0.03125%, of the offered rates for United States dollar deposits for one month that are quoted by the Reference

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL

MSM_MSSTI_20071_0001537

Banks as of 11:00 a.m., New York City time, on the related Interest Determination Date to prime banks in the London interbank market for a period of one month in an amount approximately equal to the aggregate Certificate Principal Balance of the LIBOR Certificates for such Interest Accrual Period, provided that at least two such Reference Banks provide such rate. If fewer than two offered rates appear, the Reference Bank Rate will be the arithmetic mean, rounded upwards, if necessary, to the nearest whole multiple of 0.03125%, of the rates quoted by one or more major banks in New York City, selected by the Securities Administrator, as of 11:00 a.m., New York City time, on such date for loans in United States dollars to leading European banks for a period of one month in amounts approximately equal to the aggregate Certificate Principal Balance of the LIBOR Certificates for such Interest Accrual Period.

Regular Certificate: Any Certificate other than a Residual Certificate.

Regular Interest: A "regular interest" in a REMIC within the meaning of Section 860G(a)(1) of the Code.

Regulation AB: Subpart 229.1100 - Asset Backed Securities (Regulation AB), 17 C.F.R. §§229.1100-229.1123, as such may be amended from time to time, and subject to such clarification and interpretation as have been provided by the Commission in the adopting release (Asset-Backed Securities, Securities Act Release No. 33-8518, 70 Fed. Reg. 1,506-1,631 (January 7, 2005) or by the staff of the Commission, or as may be provided by the Commission or its staff from time to time.

Relief Act: The Servicemembers Civil Relief Act, as amended, or any similar state or local law.

Relief Act Interest Shortfall: With respect to any Distribution Date and any Mortgage Loan, any reduction in the amount of interest collectible on such Mortgage Loan for the most recently ended Due Period as a result of the application of the Relief Act.

Remaining Excess Spread: With respect to any Distribution Date, the Excess Spread less any Extra Principal Distribution Amount, in each case for such Distribution Date.

REMIC: A "real estate mortgage investment conduit" within the meaning of Section 860D of the Code.

REMIC I: The segregated pool of assets described in the Preliminary Statement and Section 6.07(a).

REMIC I Regular Interest: Any of the separate non-certificated beneficial ownership interests in REMIC I issued hereunder and designated as a Regular Interest in REMIC I. Each REMIC I Regular Interest shall accrue interest at the related Uncertificated REMIC I Pass-Through Rate in effect from time to time, and shall be entitled to distributions of principal, subject to the terms and conditions hereof, in an aggregate amount equal to its initial Uncertificated Principal Balance as set forth in the Preliminary Statement hereto. The designations for the respective REMIC I Regular Interests are set forth in the Preliminary Statement hereto.

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL                                                                    MSM_MSSTI_20071_0001538

REMIC II:  The segregated pool of assets described in the Preliminary Statement and Section 6.07(a).

REMIC II Interest Loss Allocation Amount:  With respect to any Distribution Date, an amount (subject to adjustment based on the actual number of days elapsed in the respective Interest Accrual Period) equal to (a) the product of (i) the aggregate Stated Principal Balance of the Mortgage Loans and REO Properties then outstanding, plus, with respect to the first Distribution Date, the Special Deposit, and (ii) the Uncertificated REMIC II Pass-Through Rate for REMIC II Regular Interest AA minus the Marker Rate, divided by (b) 12.

REMIC II Overcollateralization Amount:  With respect to any date of determination, (i) 1.00% of the aggregate Uncertificated Principal Balance of the REMIC II Regular Interests (other than REMIC II Regular Interests IO and P) minus (ii) the aggregate Uncertificated Principal Balance of each REMIC II Regular Interest for which a Class A, Class M or Class B Certificate is a Corresponding Certificate, in each case, as of such date of determination.

REMIC II Overcollateralization Target Amount:  1.00% of the Overcollateralization Target Amount.

REMIC II Principal Loss Allocation Amount:  With respect to any Distribution Date, an amount equal to the product of (i) the aggregate Stated Principal Balance of the Mortgage Loans and REO Properties then outstanding, plus, with respect to the first Distribution Date, the Special Deposit, and (ii) 1 minus a fraction, the numerator of which is two (2) times the aggregate Uncertificated Principal Balance of each REMIC II Regular Interest for which a Class A, Class M or Class B Certificate is a Corresponding Certificate and the denominator of which is the aggregate Uncertificated Principal Balance of each REMIC II Regular Interest for which a Class A, Class M or Class B Certificate is a Corresponding Certificate and REMIC II Regular Interest ZZ.

REMIC II Regular Interest ZZ Maximum Interest Deferral Amount: With respect to any Distribution Date, the excess, if any, of (i) accrued interest at the Uncertificated REMIC II Pass-Through Rate applicable to REMIC II Regular Interest ZZ for such Distribution Date on a balance equal to the Uncertificated Principal Balance of REMIC II Regular Interest ZZ minus the REMIC II Overcollateralization Amount, in each case for such Distribution Date, over (ii) the Uncertificated Accrued Interest on each REMIC II Regular Interest for which a Class A, Class M or Class B Certificate is a Corresponding Certificate, with the rate on each such REMIC II Regular Interest subject to a cap equal to the lesser of (i) the Pass-Through Rate for the Corresponding Certificate determined without regard to the Net Rate Cap for the purpose of this calculation for such Distribution Date and (ii) the Net Rate Cap for the REMIC III Regular Interest the ownership of which is represented by the Corresponding Certificate for the purpose of this calculation for such Distribution Date; provided, however, that solely for this purpose, the related cap with respect to each REMIC II Regular Interest for which a Class A, Class M or Class B Certificate is a Corresponding Certificate shall be multiplied by a fraction, the numerator of which is 30 and the denominator of which is the actual number of days in the related Interest Accrual Period.

REMIC II Regular Interest: Any of the separate non-certificated beneficial ownership interests in REMIC II issued hereunder and designated as a Regular Interest in REMIC II. Each

46

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL                                                                 MSM_MSSTI_20071_0001539

REMIC II Regular Interest shall accrue interest at the related Uncertificated REMIC II Pass-Through Rate in effect from time to time, and (except for REMIC II Regular Interest IO) shall be entitled to distributions of principal, subject to the terms and conditions hereof, in an aggregate amount equal to its initial Uncertificated Principal Balance as set forth in the Preliminary Statement hereto. The designations for the respective REMIC II Regular Interests are set forth in the Preliminary Statement hereto.

REMIC III:   The segregated pool of assets described in the Preliminary Statement consisting of the REMIC II Regular Interests

REMIC III Regular Interest: The Class CE Interest, Class P Interest, Class IO Interest or any Regular Interest in REMIC III the ownership of which is represented by any of the Class A, Class M or Class B Certificates.

REMIC IV:  The segregated pool of assets consisting of the Class CE Interest conveyed in trust to the Trustee, for the benefit of the Holders of the Class CE Certificates and the Class RX Certificates (in respect of the Class R-4 Interest), with respect to which a separate REMIC election is to be made.

REMIC V:  The segregated pool of assets consisting of the Class P Interest conveyed in trust to the Trustee, for the benefit of the Holders of the Class P Certificates and the Class RX Certificates (in respect of the Class R-5 Interest), with respect to which a separate REMIC election is to be made.

REMIC VI: The segregated pool of assets consisting of the Class IO Interest conveyed in trust to the Trustee, for the benefit of the holders of REMIC VI Regular Interest IO and the Class RX Certificate (in respect of the Class R-6 Interest), with respect to which a separate REMIC election is to be made.

REMIC Opinion:   Shall mean an Opinion of Counsel to the effect that the proposed action will not have an adverse effect on any REMIC created hereunder.

REMIC Provisions:   Provisions of the federal income tax law relating to real estate mortgage investment conduits, which appear at Sections 860A through 860G of the Code, and related provisions, and proposed, temporary and final regulations and published rulings, notices and announcements promulgated thereunder, as the foregoing may be in effect from time to time, as well as provisions of applicable state laws.

REMIC Regular Interests: The REMIC I Regular Interests and REMIC II Regular Interests.

Remittance Date: With respect to Saxon and Wells Fargo, the 21st day (or if such day is a Saturday, the Business Day prior to that day or if such day is a Sunday or otherwise not a Business Day, the immediately following Business Day) of the month of each related Distribution Date. With respect to Countrywide, the second Business Day immediately preceding the 25th calendar day of any month (or if such 25th day is not a Business Day, the Business Day immediately following such 25th day).

47

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL

Remittance Report: As defined in Section 6.04(c).

REO Imputed Interest: As to any REO Property, for any calendar month during which such REO Property was at any time part of REMIC I, one month's interest at the applicable Net Mortgage Rate on the Stated Principal Balance of such REO Property (or, in the case of the first such calendar month, of the related Mortgage Loan, if appropriate) as of the close of business on the Distribution Date in such calendar month.

REO Property: A Mortgaged Property acquired by the related Servicer through foreclosure or deed-in-lieu of foreclosure in connection with a defaulted Mortgage Loan.

Replacement Mortgage Loan: A Mortgage Loan or Mortgage Loans in the aggregate substituted by a Seller or the applicable Originator for a Deleted Mortgage Loan, which must, on the date of such substitution, as confirmed in a Request for Release, (i) have a Stated Principal Balance, after deduction of the principal portion of the Scheduled Payment due in the month of substitution, not in excess of, and not less than 90% of, the Stated Principal Balance of the Deleted Mortgage Loan; (ii) have a fixed Mortgage Rate not less than or more than 1% per annum higher than the Mortgage Rate of the Deleted Mortgage Loan; (iii) have the same or higher credit quality characteristics than that of the Deleted Mortgage Loan; (iv) have a Loan-to-Value Ratio no higher than that of the Deleted Mortgage Loan; (v) have a remaining term to maturity no greater than (and not more than one year less than) that of the Deleted Mortgage Loan; (vi) not permit conversion of the Mortgage Rate from a fixed rate to a variable rate; (vii) have the same lien priority as the Deleted Mortgage Loan; (viii) constitute the same occupancy type as the Deleted Mortgage Loan or be owner occupied; and (ix) comply with each representation and warranty set forth in Section 2.03 hereof.

Reportable Event: As defined in Section 4.18.

Request for Release: The Request for Release to be submitted by the related Seller, the related Servicer or the Master Servicer to the Custodian substantially in the form of Exhibit G. Each Request for Release furnished to the Custodian by the related Seller, the related Servicer or the Master Servicer shall be in duplicate and shall be executed by an officer of such Person or a Servicing Officer (or, if furnished electronically to the Custodian, shall be deemed to have been sent and executed by an officer of such Person or a Servicing Officer) of the related Servicer, as applicable.

Reserve Fund:  Shall mean the separate trust account created and maintained by the Securities Administrator pursuant to Section 6.08 hereof.

Reserve Fund Deposit: With respect to the Reserve Fund, an amount equal to $5,000, which the Depositor shall initially deposit into the Reserve Fund pursuant to Section 6.08 hereof.

Residual Certificates:  The Class R-1, Class R-2, Class R-3 and Class RX Certificates (representing ownership of the Class R-4 Interest, Class R-5 Interest and Class R-6 Interest), each evidencing the sole class of Residual Interests in the related REMIC.

Residual Interest: The sole class of "residual interests" in a REMIC within the meaning of Section 860G(a)(2) of the Code.

[TPW: NYLEGAL:691857.8] 17297-00533 11/15/2007 06:00 PM

CONFIDENTIAL

MSM_MSSTI_20071_0001541

Responsible Officer: With respect to the Trustee, any Vice President, any Assistant Vice President, the Secretary, any Assistant Secretary, or any Trust Officer with specific responsibility for the transactions contemplated hereby, any other officer customarily performing functions similar to those performed by any of the above designated officers or other officers of the Trustee specified by the Trustee, as to whom, with respect to a particular matter, such matter is referred because of such officer's knowledge of and familiarity with the particular subject.

S&P: Standard & Poor's, a division of The McGraw-Hill Companies, Inc.

Saxon: Saxon Mortgage Services, Inc.

Saxon Assignment Agreement:   The Assignment, Assumption and Recognition Agreement, dated as of the Closing Date, by and among EMC, Saxon and the Trustee evidencing the assignment of the Saxon Servicing Agreement to the Trust, attached hereto as Exhibit R-3.

Saxon Servicing Agreement:  The Servicing Rights Purchase and Servicing Agreement, dated as of October 1, 2006, by and between the Sponsor and Saxon, attached hereto as Exhibit Q-2, as modified by the Saxon Assignment Agreement.

Scheduled Payment: The scheduled monthly payment on a Mortgage Loan due on any Due Date allocable to principal and/or interest on such Mortgage Loan.

Securities Act: The Securities Act of 1933, as amended, and the rules and regulations thereunder.

Securities Administrator: Wells Fargo Bank, National Association, in its capacity as securities administrator, transfer agent and paying agent hereunder, and its successors and assigns.

Securities Administrator Information: As defined in Section 4.18(b).

Seller: Any of EMC and the Sponsor in their capacity as seller of the Mortgage Loans to the Depositor.

Servicer: Any of Saxon, Wells Fargo and Countrywide and their successors and assigns.

Servicing Advances: All customary, reasonable and necessary "out of pocket" costs and expenses (including reasonable legal fees) incurred in the performance by the related Servicer of its servicing obligations hereunder or under the related Servicing Agreement, including, but not limited to, the cost of (i) the preservation, restoration, inspection and protection of a Mortgaged Property, (ii) any enforcement, administrative or judicial proceedings, including foreclosures and litigation, and including any expenses incurred in relation to any such proceedings that result from the Mortgage Loan being registered in the MERS® System, (iii) the management and liquidation of any REO Property (including, without limitation, realtor's commissions and fees paid to any independent contractor in connection therewith) and (iv) compliance with any obligations under the related Servicing Agreement to cause insurance to be maintained. Servicing Advances shall also include any reasonable "out-of-pocket" costs and expenses (including legal fees) incurred by the applicable Servicer in connection with executing and recording instruments of satisfaction, deeds of reconveyance or Assignments of Mortgage in

49

CONFIDENTIAL

connection with any foreclosure in respect of any Mortgage Loan to the extent not recovered from the Mortgagor or otherwise payable under this Agreement. No Servicer shall be required to make any Nonrecoverable Servicing Advances.

Servicing Agreement: Any of the Countrywide Servicing Agreement, the Saxon Servicing Agreement or the Wells Fargo Servicing Agreement.

Servicing Criteria: The "servicing criteria" set forth in Item 1122(d) of Regulation AB, as such may be amended from time to time, or those Servicing Criteria otherwise mutually agreed to by EMC, the Master Servicer, the Trustee and the applicable Servicer in response to evolving interpretations of Regulation AB and incorporated into a revised Exhibit N.

Servicing Fee: As to each Mortgage Loan and any Distribution Date, an amount equal to 1/12th of the Servicing Fee Rate multiplied by the Stated Principal Balance of such Mortgage Loan as of the Due Date in the month preceding the month in which such Distribution Date occurs.

Servicing Fee Rate: 0.500% per annum.

Servicing Officer: Any officer of the related Servicer involved in, or responsible for, the administration and servicing of the Mortgage Loans in the case of the related Servicer, as to which evidence reasonably acceptable to the Trustee, as applicable, of due authorization, by such party has been furnished from time to time to the Trustee.

Significance Estimate: With respect to any Distribution Date, and in accordance with Item 1115 of Regulation AB, shall be an amount determined based on the reasonable good-faith estimate by EMC or its affiliate of the aggregate Maximum Probable Exposure of the outstanding Class A Certificates and Class M Certificates to the Swap Agreement and the Yield Maintenance Agreement.

Significance Percentage: With respect to any Distribution Date, and in accordance with Item 1115 of Regulation AB, shall be a percentage equal to the Significance Estimate divided by the aggregate outstanding Certificate Principal Balance of the Class A Certificates and Class M Certificates, prior to the distribution of the Principal Distribution Amount on such Distribution Date.

Special Deposit: An amount equal to $594.37 deposited into the Trust by the Depositor on the Closing Date, representing the cash equivalent of the Stated Principal Balance of Mortgage Loans which were intended to be included in the Trust on the Closing Date but were removed from the transaction.

Sponsor: Morgan Stanley Mortgage Capital Holdings LLC, a New York limited liability company, successor-in-interest by merger to Morgan Stanley Mortgage Capital Inc., and its successors and assigns, in its capacity as sponsor.

Startup Day: The Startup Day for each REMIC formed hereunder shall be the Closing Date.

[TPW: NYLEGAL:691857.8] 17297-00533 11/15/2007 06:00 PM

CONFIDENTIAL

MSM_MSSTI_20071_0001543

Stated Principal Balance: With respect to any Mortgage Loan or related REO Property and any Distribution Date, the Cut-off Date Principal Balance thereof minus the sum of (i) the principal portion of the Scheduled Payments due with respect to such Mortgage Loan during each Due Period (and irrespective of any delinquency in their payment), (ii) all Principal Prepayments with respect to such Mortgage Loan received prior to or during the related Prepayment Period, (iii) all Liquidation Proceeds and Insurance Proceeds, to the extent applied by the related Servicer as recoveries of principal in accordance with the related Servicing Agreement with respect to such Mortgage Loan, that were received by the related Servicer as of the close of business on the last day of the calendar month immediately preceding such Distribution Date (or with respect to the first Distribution Date, two months prior to such Distribution Date) and (iv) any Realized Losses on such Mortgage Loan incurred during the related Prepayment Period. The Stated Principal Balance of a Liquidated Loan equals zero.

Stepdown Date: The later to occur of (a) the earlier to occur of (i) the Distribution Date in July 2010 and (ii) the Distribution Date following the Distribution Date on which the aggregate Certificate Principal Balance of the Class A Certificates is reduced to zero; and (b) the first Distribution Date following the Distribution Date on which the aggregate Current Specified Enhancement Percentage is greater than or equal to 50.70%.

Subordinated Certificates: The Class M, Class B, Class CE and Residual Certificates.

Subsequent Recoveries: As of any Distribution Date, amounts received by the Master Servicer or any Servicer (net of any related expenses permitted to be reimbursed pursuant to Section 6.05) or surplus amounts held by the Master Servicer and the related Servicer to cover estimated expenses (including, but not limited to, recoveries in respect of the representations and warranties made by the Seller pursuant to the Mortgage Loan Purchase Agreement) specifically related to a Mortgage Loan that was the subject of a liquidation or final disposition of any REO Property as of the end of the prior calendar month that resulted in a Realized Loss.

Subservicing Agreement: Any agreement entered into between a Servicer and a subservicer with respect to the subservicing of any Mortgage Loan hereunder by such subservicer.

Substitution Adjustment Amount: The meaning ascribed to such term pursuant to Section 2.03(d).

Successor Master Servicer: The meaning ascribed to such term pursuant to Section 9.01.

Supplemental Interest Trust: The corpus of a trust created pursuant to Section 4.22 of this Agreement and designated as the "Supplemental Interest Trust," consisting of the Swap Agreement, the Swap Administration Agreement, REMIC VI Regular Interest IO, the Swap Collateral Account and the Swap Account. For the avoidance of doubt, the Supplemental Interest Trust, the Swap Agreement, the Swap Account, the Swap Collateral Account and the Swap Administration Agreement do not constitute parts of the Trust Fund or any REMIC.

Supplemental Interest Trust Trustee: Wells Fargo Bank, National Association, a national banking association not in its individual capacity but solely in its capacity as supplemental interest trust trustee and any successor thereto, and any corporation or national banking

51

CONFIDENTIAL

MSM_MSSTI 20071 0001544

association resulting from or surviving any consolidation or merger to which it or its successors may be a party and any successor supplemental interest trust trustee as may from time to time be serving as successor supplemental interest trust trustee.

Swap Account: The separate trust account created and maintained by the Swap Administrator, and held within the Supplemental Interest Trust, pursuant to the Swap Administration Agreement.

Swap Administrator: Wells Fargo Bank, National Association acting as Swap administrator under the Swap Administration Agreement.

Swap Administration Agreement: The Swap Administration Agreement, dated as of the Closing Date, pursuant to which the Swap Administrator will make payments to the Swap Provider and the Certificateholders, and certain other payments, as such agreement may be amended or supplemented from time to time.

Swap Agreement: The interest rate swap agreement, dated as of the Closing Date, between the Supplemental Interest Trust Trustee and the Swap Provider, including any schedule, confirmations, credit support annex or other credit support document relating thereto, and attached hereto as Exhibit M-1.

Swap Collateral Account: Shall mean the separate interest-bearing account created and maintained by the Swap Administrator pursuant to the Swap Administration Agreement.

Swap Credit Support Annex: The credit support annex, dated as of the Closing Date, between the Supplemental Interest Trust Trustee and the Swap Provider, which is annexed to and forms part of the Swap Agreement.

Swap Early Termination: The occurrence of an Early Termination Date (as defined in the Swap Agreement) under the Swap Agreement.

Swap LIBOR: For any Distribution Date, a per annum rate equal to the Floating Rate Option (as defined in the Swap Agreement) for the related Calculation Period (as defined in the Swap Agreement).

Swap Optional Termination Payment: As defined in Section 11.01.

Swap Provider: The swap provider under the Swap Agreement. Initially, the Swap Provider shall be Bear Stearns Financial Products Inc.

Swap Provider Trigger Event: With respect to any Distribution Date, (i) an Event of Default under the Swap Agreement with respect to which the Swap Provider is a Defaulting Party, (ii) a Termination Event under the Swap Agreement with respect to which the Swap Provider is the sole Affected Party, or (iii) an Additional Termination Event under the Swap Agreement with respect to which the Swap Provider is the sole Affected Party.

Swap Termination Payment: Upon the designation of an "Early Termination Date" as defined in the Swap Agreement, the payment to be made by the Swap Administrator to the Swap Provider from payments from the Trust Fund, or by the Swap Provider to the Swap

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL

MSM_MSSTI_20071_0001545

Administrator for payment to the Trust Fund, as applicable, pursuant to the terms of the Swap Agreement.

Tax Matters Person: The person designated as "tax matters person" in the manner provided under Treasury Regulation Sections 1.860F-4(d) and 301.6231(a)(7)-1T. The Holder of the greatest Percentage Interest in a Class of Residual Certificates shall be the Tax Matters Person for the related REMIC. The Securities Administrator or any successor thereto or assignee thereof shall serve as tax administrator hereunder and as agent for the related Tax Matters Person.

Transferee Affidavit: As defined in Section 7.02(c).

Transferor Affidavit: As defined in Section 7.02(c).

Transfer: Any direct or indirect transfer or sale of any Ownership Interest in a Certificate.

Trigger Event: With respect to any Distribution Date, a Trigger Event exists if (i) the percentage obtained by dividing (x) the rolling three month average of the aggregate Stated Principal Balance of Mortgage Loans that are 60 or more days Delinquent (including for this purpose any such Mortgage Loans in foreclosure and Mortgage Loans with respect to which the related Mortgaged Property is REO Property) by (y) the aggregate Stated Principal Balance of the Mortgage Loans, in each case, as of the as of the last day of the related Due Period, equals or exceeds (A) on any Distribution Date before the aggregate Certificate Principal Balance of the Class A Certificates has been reduced to zero, 31.55% of the Current Specified Enhancement Percentage and (B) on any Distribution Date on or after the aggregate Certificate Principal Balance of the Class A Certificates has been reduced to zero, 39.59%, of the Class M-1 Enhancement Percentage or (ii) as of the related Prepayment Period, the aggregate amount of Realized Losses on the Mortgage Loans since the Cut-off Date as a percentage of the aggregate Cut-off Date Principal Balance of the Mortgage Loans exceeds the applicable percentage set forth below with respect to such Distribution Date:

| Distribution Date | Percentage |
|---|---|
| July 2009 – June 2010 | 1.75% with respect to July 2009, plus an additional 1/12th of 2.15% for each month thereafter until June 2010 |
| July 2010 – June 2011 | 3.90% with respect to July 2010, plus an additional 1/12th of 2.25% for each month thereafter until June 2011 |
| July 2011 – June 2012 | 6.15% with respect to July 2011, plus an additional 1/12th of 1.80% for each month thereafter until June 2012 |
| July 2012 – June 2013 | 7.95% with respect to July 2012, plus an additional 1/12th of 1.00% for each month thereafter until June 2013 |
| July 2013 – and thereafter | 8.95% |

Trust or Trust Fund: The corpus of the New York common law trust created hereunder known as Morgan Stanley Structured Trust I 2007-1, consisting of (i) the Mortgage Loans and all interest accruing and principal due with respect thereto after the Cut-off Date to the extent not

CONFIDENTIAL

MSM_MSSTI_20071_0001546

applied in computing the Cut-off Date Principal Balance thereof; (ii) the Class P Certificate Account, the Yield Maintenance Collateral Account, the Reserve Fund, the Distribution Account maintained by the Securities Administrator and the Protected Accounts maintained by the Servicers and all amounts deposited therein pursuant to the applicable provisions of this Agreement and the Servicing Agreements; (iii) property that secured a Mortgage Loan and has been acquired by foreclosure, deed in lieu of foreclosure or otherwise; (iv) the mortgagee's rights under the Insurance Policies with respect to the Mortgage Loans; (v) the Yield Maintenance Agreement, Servicing Agreements and the Assignment Agreements; (vi) the rights under the Swap Administration Agreement relating to the Certificates; (vii) the rights under the Mortgage Loan Purchase Agreement; (viii) the Special Deposit; and (ix) all proceeds of the foregoing, including proceeds of conversion, voluntary or involuntary, of any of the foregoing into cash or other liquid property. The Reserve Fund, the Yield Maintenance Agreement, the Yield Maintenance Collateral Account and Prepayment Charge Waiver Amounts shall not be included in REMIC I, REMIC II, REMIC III, REMIC IV, REMIC V or REMIC VI.

Trustee: Deutsche Bank National Trust Company, a national banking association, as trustee for the benefit of the Certificateholders under this Agreement, and any successor thereto, and any corporation or national banking association resulting from or surviving any consolidation or merger to which it or its successors may be a party and any successor trustee as may from time to time be serving as successor trustee hereunder.

Uncertificated Accrued Interest: With respect to each REMIC Regular Interest on each Distribution Date, an amount equal to one month's interest at the related Uncertificated REMIC I Pass-Through Rate or Uncertificated REMIC II Pass-Through Rate on the Uncertificated Principal Balance or Uncertificated Notional Amount of such REMIC Regular Interest. In each case, Uncertificated Accrued Interest will be reduced by any Prepayment Interest Shortfalls and Relief Act Interest Shortfalls (allocated to such REMIC Regular Interests as set forth in Section 1.02).

Uncertificated Notional Amount: With respect to the Class CE Interest and any Distribution Date, an amount equal to the aggregate Uncertificated Principal Balance of the REMIC II Regular Interests (other than REMIC II Regular Interest P) for such Distribution Date.

With respect to REMIC II Regular Interest IO and each Distribution Date listed below, the aggregate Uncertificated Principal Balance of the REMIC I Regular Interests ending with the designation "A" listed below:

| Distribution Date | REMIC I Regular Interests |
|---|---|
| 1 through 13 | I-13-A through I-74-A |
| 14 | I-14-A through I-74-A |
| 15 | I-15-A through I-74-A |
| 16 | I-16-A through I-74-A |
| 17 | I-17-A through I-74-A |
| 18 | I-18-A through I-74-A |
| 19 | I-19-A through I-74-A |
| 20 | I-20-A through I-74-A |
| 21 | I-21-A through I-74-A |

54

CONFIDENTIAL

| 22 | I-22-A through I-74-A |
| 23 | I-23-A through I-74-A |
| 24 | I-24-A through I-74-A |
| 25 | I-25-A through I-74-A |
| 26 | I-26-A through I-74-A |
| 27 | I-27-A through I-74-A |
| 28 | I-28-A through I-74-A |
| 29 | I-29-A through I-74-A |
| 30 | I-30-A through I-74-A |
| 31 | I-31-A through I-74-A |
| 32 | I-32-A through I-74-A |
| 33 | I-33-A through I-74-A |
| 34 | I-34-A through I-74-A |
| 35 | I-35-A through I-74-A |
| 36 | I-36-A through I-74-A |
| 37 | I-37-A through I-74-A |
| 38 | I-38-A through I-74-A |
| 39 | I-39-A through I-74-A |
| 40 | I-40-A through I-74-A |
| 41 | I-41-A through I-74-A |
| 42 | I-42-A through I-74-A |
| 43 | I-43-A through I-74-A |
| 44 | I-44-A through I-74-A |
| 45 | I-45-A through I-74-A |
| 46 | I-46-A through I-74-A |
| 47 | I-47-A through I-74-A |
| 48 | I-48-A through I-74-A |
| 49 | I-49-A through I-74-A |
| 50 | I-50-A through I-74-A |
| 51 | I-51-A through I-74-A |
| 52 | I-52-A through I-74-A |
| 53 | I-53-A through I-74-A |
| 54 | I-54-A through I-74-A |
| 55 | I-55-A through I-74-A |
| 56 | I-56-A through I-74-A |
| 57 | I-57-A through I-74-A |
| 58 | I-58-A through I-74-A |
| 59 | I-59-A through I-74-A |
| 60 | I-60-A through I-74-A |
| 61 | I-61-A through I-74-A |
| 62 | I-62-A through I-74-A |
| 63 | I-63-A through I-74-A |
| 64 | I-64-A through I-74-A |
| 65 | I-65-A through I-74-A |
| 66 | I-66-A through I-74-A |
| 67 | I-67-A through I-74-A |
| 68 | I-68-A through I-74-A |

55

CONFIDENTIAL

MSM_MSSTI_20071_0001548

| | |
|---|---|
| 69 | I-69-A through I-74-A |
| 70 | I-70-A through I-74-A |
| 71 | I-71-A through I-74-A |
| 72 | I-72-A through I-74-A |
| 73 | I-73-A through I-74-A |
| 74 | I-74-A |
| thereafter | $0.00 |

With respect to the Class IO Interest and any Distribution Date, an amount equal to the Uncertificated Notional Amount of REMIC II Regular Interest IO. With respect to REMIC VI Regular Interest IO, an amount equal to the Uncertificated Notional Amount of the Class IO Interest.

Uncertificated Principal Balance: With respect to each REMIC Regular Interest, the Class CE Interest and the Class P Interest, the principal amount of such REMIC Regular Interest, Class CE Interest and Class P Interest outstanding as of any date of determination. As of the Closing Date, the Uncertificated Principal Balance of each REMIC Regular Interest, Class CE Interest and Class P Interest shall equal the amount set forth in the Preliminary Statement hereto as its initial uncertificated principal balance. On each Distribution Date, the Uncertificated Principal Balance of the REMIC Regular Interests and Class P Interest shall be reduced by all distributions of principal made on such REMIC Regular Interests and Class P Interest on such Distribution Date pursuant to Section 6.07 and, if and to the extent necessary and appropriate, shall be further reduced on such Distribution Date by Realized Losses as provided in Section 6.05, and the Uncertificated Principal Balance of REMIC II Regular Interest ZZ shall be increased by interest deferrals as provided in Section 6.07(c)(1)(ii). The Uncertificated Principal Balance of each REMIC Regular Interest, Class P Interest and Class CE Interest shall never be less than zero. With respect to the Class CE Interest as of any date of determination, an amount equal to the excess, if any, of (A) the then aggregate Uncertificated Principal Balance of the REMIC II Regular Interests over (B) the then aggregate Certificate Principal Balance of the Class A, Class M and Class B Certificates and the Uncertificated Principal Balance of the Class P Interest then outstanding.

Uncertificated REMIC I Pass-Through Rate: With respect to REMIC I Regular Interest I-Non-Swap and any Distribution Date, a per annum rate equal to the weighted average of the Net Mortgage Rates on the then outstanding Mortgage Loans, weighted based on the Stated Principal Balances of such Mortgage Loans as of the related Due Date prior to giving effect to any reduction in the Stated Principal Balances of such Mortgage Loans on such Due Date. With respect to REMIC I Regular Interest I-Non-Swap-Cash and any Distribution Date, 0.00%.

With respect to each REMIC I Regular Interest ending with the designation "A", and (i) any Distribution Date prior to June 2008, a per annum rate equal to the weighted average of the Net Mortgage Rates on the then outstanding Mortgage Loans, weighted based on the Stated Principal Balances of such Mortgage Loans as of the related Due Date prior to giving effect to any reduction in the Stated Principal Balances of such Mortgage Loans on such Due Date, or (ii) any Distribution Date in or after June 2008, a per annum rate equal to the weighted average of the Net Mortgage Rates on the then outstanding Mortgage Loans, weighted based on the Stated Principal Balances of such Mortgage Loans as of the related Due Date prior to giving effect to

56

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

MSM_MSSTI_20071_0001549

any reduction in the Stated Principal Balances of such Mortgage Loans on such Due Date, multiplied by 2, subject to a maximum rate of 10.440%.

With respect to each REMIC I Regular Interest ending with the designation "B" and (i) any Distribution Date prior to June 2008, a per annum rate equal to the weighted average of the Net Mortgage Rates on the then outstanding Mortgage Loans, weighted based on the Stated Principal Balances of such Mortgage Loans as of the related Due Date prior to giving effect to any reduction in the Stated Principal Balances of such Mortgage Loans on such Due Date, or (ii) any Distribution Date in or after June 2008, a per annum rate equal to the greater of (x) the excess, if any, of (A) 2 multiplied by the weighted average of the Net Mortgage Rates on the then outstanding Mortgage Loans, weighted based on the Stated Principal Balances of such Mortgage Loans as of the related Due Date prior to giving effect to any reduction in the Stated Principal Balances of such Mortgage Loans on such Due Date, over (B) 10.440% and (y) 0.00%.

With respect to each REMIC I Regular Interest P, 0.00%.

Uncertificated REMIC II Pass-Through Rate: With respect to REMIC II Regular Interest AA, each REMIC II Regular Interest for which a Class A, Class M or Class B Certificate is a Corresponding Certificate and REMIC II Regular Interest ZZ, and (i) any Distribution Date prior to June 2008, a per annum rate equal to the weighted average of the Uncertificated REMIC I Pass-Through Rates for the REMIC I Regular Interests (other than REMIC I Regular Interest P) for such Distribution Date, weighted on the basis of the Uncertificated Principal Balances of each such REMIC I Regular Interest for such Distribution Date, and (ii) any Distribution Date in or after June 2008, a per annum rate equal to the weighted average of (x) the Uncertificated REMIC I Pass-Through Rates for the REMIC I Regular Interests ending with the designation "B", REMIC I Regular Interest I-Non-Swap and REMIC I Regular Interest I-Non-Swap-Cash for such Distribution Date, and (y) the rates listed below for the REMIC I Regular Interests ending with the designation "A" for such Distribution Date, in each case, weighted on the basis of the Uncertificated Principal Balances of each such REMIC I Regular Interest for such Distribution Date:

| Distribution Date | REMIC I Regular Interest | Rate |
|---|---|---|
| 13 | I-13-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| 14 | I-14-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
|  | I-13-A | Uncertificated REMIC I Pass-Through Rate |
| 15 | I-15-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
|  | I-13-A through I-14-A | Uncertificated REMIC I Pass-Through Rate |
| 16 | I-16-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
|  | I-13-A through I-15-A | Uncertificated REMIC I Pass-Through Rate |
| 17 | I-17-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
|  | I-13-A through I-16-A | Uncertificated REMIC I Pass-Through Rate |
| 18 | I-18-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
|  | I-13-A through I-17-A | Uncertificated REMIC I Pass-Through Rate |
| 19 | I-19-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of |

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL

MSM_MSSTI_20071_0001550

| Distribution Date | REMIC I Regular Interest | Rate |
|---|---|---|
| | | Uncertificated REMIC I Pass-Through Rate |
| | I-13-A through I-18-A | Uncertificated REMIC I Pass-Through Rate |
| 20 | I-20-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of |
| | | Uncertificated REMIC I Pass-Through Rate |
| | I-13-A through I-19-A | Uncertificated REMIC I Pass-Through Rate |
| 21 | I-21-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of |
| | | Uncertificated REMIC I Pass-Through Rate |
| | I-13-A through I-20-A | Uncertificated REMIC I Pass-Through Rate |
| 22 | I-22-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of |
| | | Uncertificated REMIC I Pass-Through Rate |
| | I-13-A through I-21-A | Uncertificated REMIC I Pass-Through Rate |
| 23 | I-23-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of |
| | | Uncertificated REMIC I Pass-Through Rate |
| | I-13-A through I-22-A | Uncertificated REMIC I Pass-Through Rate |
| 24 | I-24-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of |
| | | Uncertificated REMIC I Pass-Through Rate |
| | I-13-A through I-23-A | Uncertificated REMIC I Pass-Through Rate |
| 25 | I-25-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of |
| | | Uncertificated REMIC I Pass-Through Rate |
| | I-13-A through I-24-A | Uncertificated REMIC I Pass-Through Rate |
| 26 | I-26-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of |
| | | Uncertificated REMIC I Pass-Through Rate |
| | I-13-A through I-25-A | Uncertificated REMIC I Pass-Through Rate |
| 27 | I-27-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of |
| | | Uncertificated REMIC I Pass-Through Rate |
| | I-13-A through I-26-A | Uncertificated REMIC I Pass-Through Rate |
| 28 | I-28-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of |
| | | Uncertificated REMIC I Pass-Through Rate |
| | I-13-A through I-27-A | Uncertificated REMIC I Pass-Through Rate |
| 29 | I-29-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of |
| | | Uncertificated REMIC I Pass-Through Rate |
| | I-13-A through I-28-A | Uncertificated REMIC I Pass-Through Rate |
| 30 | I-30-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of |
| | | Uncertificated REMIC I Pass-Through Rate |
| | I-13-A through I-29-A | Uncertificated REMIC I Pass-Through Rate |
| 31 | I-31-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of |
| | | Uncertificated REMIC I Pass-Through Rate |
| | I-13-A through I-30-A | Uncertificated REMIC I Pass-Through Rate |
| 32 | I-32-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of |
| | | Uncertificated REMIC I Pass-Through Rate |
| | I-13-A through I-31-A | Uncertificated REMIC I Pass-Through Rate |
| 33 | I-33-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of |
| | | Uncertificated REMIC I Pass-Through Rate |
| | I-13-A through I-32-A | Uncertificated REMIC I Pass-Through Rate |
| 34 | I-34-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of |
| | | Uncertificated REMIC I Pass-Through Rate |
| | I-13-A through I-33-A | Uncertificated REMIC I Pass-Through Rate |
| 35 | I-35-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of |
| | | Uncertificated REMIC I Pass-Through Rate |
| | I-13-A through I-34-A | Uncertificated REMIC I Pass-Through Rate |
| 36 | I-36-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of |
| | | Uncertificated REMIC I Pass-Through Rate |
| | I-13-A through I-35-A | Uncertificated REMIC I Pass-Through Rate |
| 37 | I-37-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of |
| | | Uncertificated REMIC I Pass-Through Rate |

58

CONFIDENTIAL

MSM_MSSTI_20071_0001551

| Distribution Date | REMIC I Regular Interest | Rate |
|---|---|---|
| | I-13-A through I-36-A | Uncertificated REMIC I Pass-Through Rate |
| 38 | I-38-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| | I-13-A through I-37-A | Uncertificated REMIC I Pass-Through Rate |
| 39 | I-39-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| | I-13-A through I-38-A | Uncertificated REMIC I Pass-Through Rate |
| 40 | I-40-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| | I-13-A through I-39-A | Uncertificated REMIC I Pass-Through Rate |
| 41 | I-41-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| | I-13-A through I-40-A | Uncertificated REMIC I Pass-Through Rate |
| 42 | I-42-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| | I-13-A through I-41-A | Uncertificated REMIC I Pass-Through Rate |
| 43 | I-43-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| | I-13-A through I-42-A | Uncertificated REMIC I Pass-Through Rate |
| 44 | I-44-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| | I-13-A through I-43-A | Uncertificated REMIC I Pass-Through Rate |
| 45 | I-45-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| | I-13-A through I-44-A | Uncertificated REMIC I Pass-Through Rate |
| 46 | I-46-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| | I-13-A through I-45-A | Uncertificated REMIC I Pass-Through Rate |
| 47 | I-47-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| | I-13-A through I-46-A | Uncertificated REMIC I Pass-Through Rate |
| 48 | I-48-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| | I-13-A through I-47-A | Uncertificated REMIC I Pass-Through Rate |
| 49 | I-49-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| | I-13-A through I-48-A | Uncertificated REMIC I Pass-Through Rate |
| 50 | I-50-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| | I-13-A through I-49-A | Uncertificated REMIC I Pass-Through Rate |
| 51 | I-51-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| | I-13-A through I-50-A | Uncertificated REMIC I Pass-Through Rate |
| 52 | I-52-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| | I-13-A through I-51-A | Uncertificated REMIC I Pass-Through Rate |
| 53 | I-53-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| | I-13-A through I-52-A | Uncertificated REMIC I Pass-Through Rate |
| 54 | I-54-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| | I-13-A through I-53-A | Uncertificated REMIC I Pass-Through Rate |
| 55 | I-55-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| | I-13-A through I-54-A | Uncertificated REMIC I Pass-Through Rate |

59

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL

| Distribution Date | REMIC I Regular Interest | Rate |
|---|---|---|
| 56 | I-56-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| 57 | I-13-A through I-55-A | Uncertificated REMIC I Pass-Through Rate |
| | I-57-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| 58 | I-13-A through I-56-A | Uncertificated REMIC I Pass-Through Rate |
| | I-58-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| 59 | I-13-A through I-57-A | Uncertificated REMIC I Pass-Through Rate |
| | I-59-A and I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| 60 | I-13-A through I-58-A | Uncertificated REMIC I Pass-Through Rate |
| | I-60-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| 61 | I-13-A through I-59-A | Uncertificated REMIC I Pass-Through Rate |
| | I-61-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| 62 | I-13-A through I-74-A | Uncertificated REMIC I Pass-Through Rate |
| | I-62-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| 63 | I-13-A through I-61-A | Uncertificated REMIC I Pass-Through Rate |
| | I-63-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| 64 | I-13-A through I-62-A | Uncertificated REMIC I Pass-Through Rate |
| | I-64-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| 65 | I-13-A through I-63-A | Uncertificated REMIC I Pass-Through Rate |
| | I-65-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| 66 | I-13-A through I-64-A | Uncertificated REMIC I Pass-Through Rate |
| | I-66-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| 67 | I-13-A through I-65-A | Uncertificated REMIC I Pass-Through Rate |
| | I-67-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| 68 | I-13-A through I-66-A | Uncertificated REMIC I Pass-Through Rate |
| | I-68-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| 69 | I-13-A through I-67-A | Uncertificated REMIC I Pass-Through Rate |
| | I-69-A and I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| 70 | I-13-A through I-68-A | Uncertificated REMIC I Pass-Through Rate |
| | I-70-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| 71 | I-13-A through I-69-A | Uncertificated REMIC I Pass-Through Rate |
| | I-71-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| 72 | I-13-A through I-70-A | Uncertificated REMIC I Pass-Through Rate |
| | I-72-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| 73 | I-13-A through I-71-A | Uncertificated REMIC I Pass-Through Rate |
| | I-73-A through I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of Uncertificated REMIC I Pass-Through Rate |
| 74 | I-13-A through I-72-A | Uncertificated REMIC I Pass-Through Rate |
| | I-74-A | 2 multiplied by Swap LIBOR, subject to a maximum rate of |

60

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL

| Distribution Date | REMIC I Regular Interest | Rate |
|---|---|---|
| | | Uncertificated REMIC I Pass-Through Rate |
| | I-13-A through I-73-A | Uncertificated REMIC I Pass-Through Rate |
| thereafter | I-13-A through I-74-A | Uncertificated REMIC I Pass-Through Rate |

With respect to REMIC II Regular Interest IO and any Distribution Date, a per annum rate equal to the excess, if any, of (x) the weighted average of the Uncertificated REMIC I Pass-Through Rates for the REMIC I Regular Interests ending with the designation "A" for such Distribution Date, over (y) (a) with respect to any Distribution Date prior to June 2008, the weighted average of the Uncertificated REMIC I Pass-Through Rates for the REMIC I Regular Interests ending with the designation "A" for such Distribution Date, or (b) with respect to any Distribution Date in or after June 2008, the weighted average of 2 multiplied by Swap LIBOR on the REMIC I Regular Interests ending with the designation "A", subject to a maximum rate of the Uncertificated REMIC I Pass-Through Rate for each such REMIC I Regular Interest for such Distribution Date, in each case, weighted on the basis of the Uncertificated Principal Balances of each such REMIC I Regular Interest for such Distribution Date.

With respect to REMIC II Regular Interest P, 0.00%.

Unpaid Realized Loss Amount:  With respect to any Class M Certificates and Class B Certificates and as to any Distribution Date, is the excess of Applied Realized Loss Amounts with respect to such Class over the sum of all distributions in reduction of the Applied Realized Loss Amounts on all previous Distribution Dates.  Any amounts distributed to the Class M Certificates and Class B Certificates in respect of any Unpaid Realized Loss Amount shall not be applied to reduce the Certificate Principal Balance of such Class.

Voting Rights:  The portion of the voting rights of all the Certificates that is allocated to any Certificate for purposes of the voting provisions hereunder.  Voting Rights shall be allocated (i) 93% to the Class A, Class M and Class B Certificates, (ii) 3% to the Class CE Certificates until paid in full, and (iii) 1% to each of the Class P, Class R-1, Class R-2, Class R-3 and Class RX Certificates, with the allocation among the Certificates (other than the Class CE and Residual Certificates) to be in proportion to the Certificate Principal Balance of each Class relative to the Certificate Principal Balance of all other such Classes.  Voting Rights will be allocated among the Certificates of each such Class in accordance with their respective Percentage Interests.

Wells Fargo:  Wells Fargo Bank, National Association, in its capacity as servicer, and its successors and assigns.

Wells Fargo Assignment Agreement:  The Assignment, Assumption and Recognition Agreement, dated as of the Closing Date, by and among EMC, Wells Fargo and the Trustee evidencing the assignment of the Wells Fargo Servicing Agreement to the Trust, attached hereto as Exhibit R-3.

Wells Fargo Custodial Agreement: An agreement, dated as of the Closing Date, by and among the Depositor, the Seller, the Trustee, the Master Servicer, the Securities Administrator and Wells Fargo Bank, National Association, in its capacity as Custodian, in substantially the form of Exhibit J-2 hereto.

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL

MSM_MSSTI_20071_0001554

<u>Wells Fargo Servicing Agreement</u>:  The Servicing Agreement, dated as of May 13, 2005, as amended by Amendment Number One, dated as of January 1, 2006, each by and between the Sponsor and Wells Fargo, attached hereto as Exhibit Q-3, as modified by the Wells Fargo Assignment Agreement.

<u>WMC</u>: WMC Mortgage Corp.

<u>Yield Maintenance Agreement</u>:  With respect to the Certificates, the cap contract, dated as of the Closing Date, between the Securities Administrator and the Yield Maintenance Agreement Provider, including any schedule, confirmations, credit support annex or other credit support document relating thereto, and attached hereto as Exhibit M-2.

<u>Yield Maintenance Agreement Provider</u>:  The yield maintenance agreement provider under the Yield Maintenance Agreement.  Initially, the Yield Maintenance Agreement Provider shall be Bear Stearns Financial Products Inc.

<u>Yield Maintenance Agreement Scheduled Termination Date</u>:  With respect to the Certificates, the Distribution Date in May 2008.

<u>Yield Maintenance Collateral Account</u>: Shall mean the separate interest-bearing account created and maintained by the Securities Administrator pursuant to Section 5.04 hereof.

<u>Yield Maintenance Credit Support Annex</u>: The credit support annex, dated as of the Closing Date, between the Securities Administrator and the Yield Maintenance Agreement Provider, which is annexed to and forms part of the Yield Maintenance Agreement.

Section 1.02    Allocation of Certain Interest Shortfalls.

For purposes of calculating the amount of Current Interest for the Class A, Class M, Class B and Class CE Certificates for any Distribution Date, the aggregate amount of any Prepayment Interest Shortfalls (to the extent not covered by payments by the related Servicer pursuant to the related Servicing Agreement or the Master Servicer pursuant to Section 6.02) and any Relief Act Interest Shortfalls incurred in respect of the Mortgage Loans for any Distribution Date shall be allocated first, to the Class CE Interest based on, and to the extent of, one month's interest at the then applicable Pass-Through Rate on the Uncertificated Notional Amount of such interest and, thereafter, among the Class A, Class M and Class B Certificates, in each case on a *pro rata* basis, based on, and to the extent of, one month's interest at the then applicable respective Pass-Through Rates on the respective Certificate Principal Balances of each such Certificate.

For purposes of calculating the amount of Uncertificated Accrued Interest for the REMIC I Regular Interests for any Distribution Date, the aggregate amount of any Prepayment Interest Shortfalls (to the extent not covered by payments by the related Servicer pursuant to the related Servicing Agreement or the Master Servicer pursuant to Section 6.02) and any Relief Act Interest Shortfalls incurred in respect of the Mortgage Loans for any Distribution Date shall be allocated first, to REMIC I Regular Interest I-Non-Swap and the REMIC I Regular Interests ending with the designation "B", *pro rata*, based on, and to the extent of, one month's interest at the then applicable respective Uncertificated REMIC I Pass-Through Rates on the respective

62

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL

Uncertificated Principal Balances of each such REMIC I Regular Interest, and then, to the REMIC I Regular Interests ending with the designation "A", *pro rata*, based on, and to the extent of, one month's interest at the then applicable respective Uncertificated REMIC I Pass-Through Rates on the respective Uncertificated Principal Balances of each such REMIC I Regular Interest.

For purposes of calculating the amount of Uncertificated Accrued Interest for the REMIC II Regular Interests (other than REMIC II Regular Interests IO and P) for any Distribution Date, the aggregate amount of any Prepayment Interest Shortfalls (to the extent not covered by payments by the related Servicer pursuant to the related Servicing Agreement or the Master Servicer pursuant to Section 6.02) and any Relief Act Interest Shortfalls incurred in respect of the Mortgage Loans for any Distribution Date shall be allocated first, to Uncertificated Accrued Interest payable to REMIC II Regular Interest AA and REMIC II Regular Interest ZZ up to an aggregate amount equal to the REMIC II Interest Loss Allocation Amount, 98% and 2%, respectively, and thereafter among REMIC II Regular Interest AA, each REMIC II Regular Interest for which a Class A, Class M or Class B Certificate is the Corresponding Certificate and REMIC II Regular Interest ZZ, *pro rata*, based on, and to the extent of, one month's interest at the then applicable respective Uncertificated REMIC II Pass-Through Rates on the respective Uncertificated Principal Balances of each such REMIC II Regular Interest.

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL

MSM_MSSTI_20071_0001556

**ARTICLE II**

**CONVEYANCE OF TRUST FUND
REPRESENTATIONS AND WARRANTIES**

Section 2.01    Conveyance of Trust Fund.

Pursuant to the Mortgage Loan Purchase Agreement, the Sellers sold, transferred, assigned, set over and otherwise conveyed to the Depositor, without recourse, all the right, title and interest of the Sellers in and to the assets in the Mortgage Loans.

The Depositor, concurrently with the execution and delivery hereof, hereby sells, transfers, assigns, sets over and otherwise conveys to the Trustee for the use and benefit of the Certificateholders without recourse, all the right, title and interest of the Depositor in and to the Trust Fund.

In connection with such sale, the Depositor has delivered to, and deposited with, or caused to be delivered to and deposited with, the Trustee or the Custodian, as its agent, the following documents or instruments with respect to each Mortgage Loan so assigned: (i) the original Mortgage Note, including any riders thereto, endorsed without recourse in blank or to the order of "Deutsche Bank National Trust Company, as Trustee for Certificateholders of Morgan Stanley Structured Trust I 2007-1, Asset Backed Certificates, Series 2007-1", showing an unbroken chain of endorsements from the original payee thereof to the Person endorsing it to the Trustee, (ii) the original Mortgage and, if the related Mortgage Loan is a MOM Loan, noting the presence of the MIN and language indicating that such Mortgage Loan is a MOM Loan, which shall have been recorded (or, for Mortgage Loans, if the original is not available, a copy), with evidence of such recording indicated thereon (or if clause (x) in the proviso below applies, shall be in recordable form), (iii) unless the Mortgage Loan is either a MOM Loan or has been assigned in the name of MERS®, the original assignment (which may be in the form of a blanket assignment if permitted in the jurisdiction in which the Mortgaged Property is located) to the Trustee of the Mortgage with respect to each Mortgage Loan in the name of "Deutsche Bank National Trust Company, as Trustee for Certificateholders of Morgan Stanley Structured Trust I 2007-1, Asset Backed Certificates, Series 2007-1," or in blank which shall have been recorded (or if clause (x) in the proviso below applies, shall be in recordable form) (iv) an original or a copy of all intervening assignments of the Mortgage, if any, with evidence of recording thereon, (v) with respect to any Mortgage Loan, the original policy of title insurance or mortgagee's certificate of title insurance or commitment or binder for title insurance or, in the event such original title policy has not been received from the title insurer, such title policy will be delivered within one year of the Closing Date or, in the event such original title policy is unavailable, a photocopy of such title policy, or, in lieu thereof, a current lien search on the related Mortgaged Property; and (vi) originals or copies of all available assumption, modification or substitution agreements, if any; provided, however, that in lieu of the foregoing, the Seller may deliver the following documents, under the circumstances set forth below: (x) if any Mortgage, assignment thereof to or intervening assignments thereof have been delivered or are being delivered to recording offices for recording and have not been returned in time to permit their delivery as specified above, the Depositor may deliver, or cause to be delivered, a true copy thereof with a certification by the Seller or the title Servicer issuing the commitment for title insurance, on the face of such copy, substantially as follows: "Certified to be a true and correct copy of the

64

[TPW: NYLEGAL:691857.8] 17297-00533 11/15/2007 06:00 PM

CONFIDENTIAL

MSM_MSSTI_20071_0001557

original, which has been transmitted for recording"; (y) in lieu of the Mortgage, assignment or intervening assignments thereof, if the applicable jurisdiction retains the originals of such documents (as evidenced by a certification from the Depositor to such effect) the Depositor may deliver, or cause to be delivered, photocopies of such documents containing an original certification by the judicial or other governmental authority of the jurisdiction where such documents were recorded; and (z) in lieu of the Mortgage Notes relating to the Mortgage Loans identified in the list set forth in Exhibit I, the Depositor may deliver, or cause to be delivered, a lost note affidavit and indemnity and a copy of the original note, if available; and provided, further, however, that in the case of Mortgage Loans which have been prepaid in full after the Cut-off Date and prior to the Closing Date, the Depositor, in lieu of delivering the above documents, may deliver, or cause to be delivered, to the Trustee and the Custodian a certification of a Servicing Officer to such effect and in such case shall deposit all amounts paid in respect of such Mortgage Loans, in the Protected Account or in the Distribution Account on the Closing Date. In the case of the documents referred to in clause (x) above, the Depositor shall deliver, or cause to be delivered, such documents to the Trustee or the Custodian promptly after they are received.

Whenever it is provided for in this Agreement that any document, evidence or information relating to a Mortgage Loan to be included in a Mortgage File be delivered or supplied to the Trustee, such delivery or supply shall be made to the related Custodian pursuant to the related Custodial Agreement.

In addition, on the Closing Date, the Special Deposit will be transferred by EMC to the Trust and included as part of Principal Funds for distribution as a Principal Prepayment on the first Distribution Date to Certificateholders in accordance with Section 6.04.

Section 2.02   Acceptance of the Mortgage Loans.

(a)      Based on the Initial Certification received by it from each Custodian, the Trustee acknowledges receipt of, subject to the further review and exceptions reported by the related Custodian pursuant to the procedures described below, the documents (or certified copies thereof) delivered to the related Custodian on its behalf pursuant to Section 2.01 and declares that it holds and will continue to hold directly or through a custodian those documents and any amendments, replacements or supplements thereto and all other assets of the Trust Fund delivered to it in trust for the use and benefit of all present and future Holders of the Certificates. On the Closing Date, the related Custodian will deliver to the Sponsor, the Sellers, the Trustee an Initial Certification confirming whether or not it has received the Mortgage File for each Mortgage Loan, but without review of such Mortgage File, except to the extent necessary to confirm whether such Mortgage File contains the original Mortgage Note or a lost note affidavit and indemnity in lieu thereof. No later than 90 days after the Closing Date, the related Custodian shall, for the benefit of the Certificateholders, review each Mortgage File delivered to it and execute and deliver to the Sponsor and to the Sellers and the Trustee, an Interim Certification. In conducting such review, the related Custodian will ascertain whether all required documents have been executed and received and whether those documents relate, determined on the basis of the Mortgagor name, original principal balance and loan number, to the Mortgage Loans identified in Exhibit B to this Agreement, as supplemented (provided, however, that with respect to those documents described in subclauses (iv) and (vi) of Section 2.01, such obligations shall extend only to documents actually delivered pursuant to such subclauses). In performing any

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL

MSM_MSSTI_20071_0001558

such review, the related Custodian may conclusively rely on the purported due execution and genuineness of any such document and on the purported genuineness of any signature thereon. If the related Custodian finds any document constituting part of the Mortgage File not to have been executed or received, or to be unrelated to the Mortgage Loans identified in Exhibit B or to appear to be defective on its face, the related Custodian shall include such information in the exception report.

(b)     No later than 180 days after the Closing Date, the related Custodian, on behalf of the Trustee, will review, for the benefit of the Certificateholders, the Mortgage Files and will execute and deliver or cause to be executed and delivered to the Sellers and to the Trustee, a Final Certification. In conducting such review, the related Custodian will ascertain whether each document required to be recorded has been returned from the recording office with evidence of recording thereon and the related Custodian has received either an original or a copy thereof, as required in Section 2.01 (provided, however, that with respect to those documents described in subclauses (iv) and (vi) of Section 2.01, such obligations shall extend only to documents actually delivered pursuant to such subclauses). If the related Custodian, on behalf of the Trustee, finds any document with respect to a Mortgage Loan has not been received, or to be unrelated, determined on the basis of the Mortgagor name, original principal balance and loan number, to the Mortgage Loans identified in Exhibit B or to appear defective on its face, the related Custodian, on behalf of the Trustee, shall note such defect in the exception report attached to the Final Certification and shall promptly notify the Sellers.

(c)     In the event that a Mortgage Loan is purchased by the Sellers or the related Originator in connection with the Mortgage Loan Purchase Agreement or the related Bring Down Agreement, the Securities Administrator shall deposit any amounts received into the Distribution Account. Upon deposit of the Purchase Price in the Distribution Account and upon receipt of a Request for Release with respect to such Mortgage Loan, the Trustee or the related Custodian will release to the related Seller or the related Originator, as applicable, the related Mortgage File and the Trustee or the applicable Custodian shall execute and deliver all instruments of transfer or assignment, without recourse, representation or warranty furnished to it by the related Seller or the related Originator, as applicable, as are necessary to vest in such party title to and rights under the Mortgage Loan. Such purchase shall be deemed to have occurred on the date on which the deposit into the Distribution Account was made. The Securities Administrator shall promptly notify the Rating Agencies of such repurchase. The obligation of the related Seller or the related Originator, as applicable, to cure, repurchase or substitute for any Mortgage Loan as to which a defect in a constituent document exists shall be the sole remedies respecting such defect available to the Certificateholders or to the Securities Administrator on their behalf.

(d)     On behalf of the Trust, the Trustee shall enforce the obligation of the Sellers under the Mortgage Loan Purchase Agreement or the related Originator under the related Bring Down Agreement to repurchase, cure or substitute for any Mortgage Loan for which a breach of a representation or warranty made by such party exists and any other obligations of the related Seller or the related Originator under such agreements, including, without limitation, the obligation of the Sponsor to repurchase, cure, or substitute for any Mortgage Loan originated by Accredited in the event that Accredited fails to repurchase, cure or substitute for such Mortgage Loan.

66

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL

Section 2.03    Representations, Warranties and Covenants of the Master Servicer and Securities Administrator.

(a)    Wells Fargo Bank, National Association, in its capacity as Master Servicer and Securities Administrator hereby represents and warrants to the Depositor and the Trustee as follows, as of the Closing Date:

(i) It is a national banking association duly formed, validly existing and in good standing under the laws of the United States of America and is duly authorized and qualified to transact any and all business contemplated by this Agreement to be conducted by the Master Servicer and the Securities Administrator in any state in which a Mortgaged Property is located or is otherwise not required under applicable law to effect such qualification and, in any event, is in compliance with the doing business laws of any such state, to the extent necessary to ensure its ability to enforce each Mortgage Loan, to master service the Mortgage Loans in accordance with the terms of this Agreement and to perform any of its other obligations under this Agreement in accordance with the terms hereof or thereof;

(ii)    It has the full corporate power and authority to execute, deliver and perform, and to enter into and consummate the transactions contemplated by this Agreement and has duly authorized by all necessary corporate action on its part the execution, delivery and performance of this Agreement; and this, assuming the due authorization, execution and delivery hereof by the other parties hereto, constitutes its legal, valid and binding obligation, enforceable against it in accordance with its terms, except that (a) the enforceability hereof may be limited by bankruptcy, insolvency, moratorium, receivership and other similar laws relating to creditors' rights generally and (b) the remedy of specific performance and injunctive and other forms of equitable relief may be subject to equitable defenses and to the discretion of the court before which any proceeding therefor may be brought.

(iii)    The execution and delivery of this Agreement by it, the consummation of any other of the transactions contemplated by this Agreement, and the fulfillment of or compliance with the terms hereof are in its ordinary course of business and will not (A) result in a material breach of any term or provision of its charter or by-laws or (B) materially conflict with, result in a material breach, violation or acceleration of, or result in a material default under, the terms of any other material agreement or instrument to which it is a party or by which it may be bound, or (C) constitute a material violation of any statute, order or regulation applicable to it of any court, regulatory body, administrative agency or governmental body having jurisdiction over it; and it is not in breach or violation of any material indenture or other material agreement or instrument, or in violation of any statute, order or regulation of any court, regulatory body, administrative agency or governmental body having jurisdiction over it which breach or violation may materially impair its ability to perform or meet any of its obligations under this Agreement.

(iv)    No litigation is pending or, to the best of its knowledge, threatened, against it that would materially and adversely affect the execution, delivery or

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL

MSM_MSSTI_20071_000156C

enforceability of this Agreement or its ability to perform any of its other obligations under this Agreement in accordance with the terms hereof.

(v) No consent, approval, authorization or order of any court or governmental agency or body is required for its execution, delivery and performance of, or compliance with, this Agreement or the consummation of the transactions contemplated hereby or thereby, or if any such consent, approval, authorization or order is required, it has obtained the same.

Upon discovery by any of the parties hereto of a breach of a representation or warranty set forth in the Mortgage Loan Purchase Agreement or any Bring Down Agreement that materially and adversely affects the interests of the Certificateholders in any Mortgage Loan, the party discovering such breach shall give prompt written notice thereof to the other parties of this Agreement.

For any month in which a Seller or the related Originator substitutes one or more Replacement Mortgage Loans for a Deleted Mortgage Loan, the Master Servicer will determine the amount (if any) by which the aggregate principal balance of all the Replacement Mortgage Loans as of the date of substitution is less than the Stated Principal Balance (after application of the principal portion of the Scheduled Payment due in the month of substitution) of such Deleted Mortgage Loan. An amount equal to the aggregate of such deficiencies, described in the preceding sentence for any Distribution Date (such amount, the "Substitution Adjustment Amount") shall be deposited into the Distribution Account by the Securities Administrator upon receipt from the Sponsor, the Seller or the related Originator delivering such Replacement Mortgage Loan on the Determination Date for the Distribution Date relating to the Prepayment Period during which the related Mortgage Loan became required to be purchased or replaced hereunder. Notwithstanding anything herein or in any other agreement to the contrary, no substitution of Mortgage Loans shall be accepted by the Securities Administrator, the Trustee or the Master Servicer following the second anniversary of the Closing Date.

In the event that a Seller or the related Originator shall have repurchased a Mortgage Loan, the Purchase Price therefor shall be deposited into the Distribution Account maintained by the Securities Administrator, on the Determination Date for the Distribution Date in the month following the month during which the related Seller or the related Originator became obligated to repurchase or replace such Mortgage Loan and upon such deposit of the Purchase Price, the delivery of an Opinion of Counsel if required by Section 2.05 and the receipt of a Request for Release, the Trustee or the related Custodian shall release the related Mortgage File held for the benefit of the Certificateholders to the related Seller or the related Originator, and the Trustee shall execute and deliver at such Person's direction the related instruments of transfer or assignment prepared by the related Seller or the related Originator, in each case without recourse, representation or warranty as shall be necessary to transfer title from the Trustee for the benefit of the Certificateholders and transfer the Trustee's interest to the related Seller or the related Originator to any Mortgage Loan purchased pursuant to this Section 2.03.

(b) The representations and warranties set forth in Section 2.03 hereof shall survive delivery of the respective Mortgage Loans and Mortgage Files to the Trustee or the related Custodian for the benefit of the Certificateholders.

[TPW: NYLEGAL:691857.8] 17297-00533 11/15/2007 06:00 PM

CONFIDENTIAL

MSM_MSSTI_20071_0001561

Section 2.04    Representations and Warranties of the Depositor.

The Depositor hereby represents and warrants to the Master Servicer, the Securities Administrator and the Trustee as follows, as of the date hereof and as of the Closing Date:

(i)    The Depositor is duly organized and is validly existing as limited liability company in good standing under the laws of the State of Delaware and has full power and authority necessary to own or hold its properties and to conduct its business as now conducted by it and to enter into and perform its obligations under this Agreement.

(ii)    The Depositor has the full power and authority to execute, deliver and perform, and to enter into and consummate the transactions contemplated by, this Agreement and has duly authorized, by all necessary action on its part, the execution, delivery and performance of this Agreement; and this Agreement, assuming the due authorization, execution and delivery hereof and thereof by the other parties hereto and thereto, constitutes a legal, valid and binding obligation of the Depositor, enforceable against the Depositor in accordance with its terms, subject, as to enforceability, to (i) bankruptcy, insolvency, reorganization, moratorium and other similar laws affecting creditors' rights generally and (ii) general principles of equity, regardless of whether enforcement is sought in a proceeding in equity or at law.

(iii)    The execution and delivery of this Agreement by the Depositor, the consummation of the transactions contemplated by this Agreement, and the fulfillment of or compliance with the terms hereof are in the ordinary course of business of the Depositor and will not (A) result in a breach of any term or provision of the organizational documents of the Depositor or (B) conflict with, result in a breach, violation or acceleration of, or result in a default under, the terms of any other material agreement or instrument to which the Depositor is a party or by which it may be bound or (C) constitute a violation of any statute, order or regulation applicable to the Depositor of any court, regulatory body, administrative agency or governmental body having jurisdiction over the Depositor; and the Depositor is not in breach or violation of any material indenture or other material agreement or instrument, or in violation of any statute, order or regulation of any court, regulatory body, administrative agency or governmental body having jurisdiction over it which breach or violation may materially impair the Depositor's ability to perform or meet any of its obligations under this Agreement.

(iv)    No litigation is pending, or, to the best of the Depositor's knowledge, threatened, against the Depositor that would materially and adversely affect the execution, delivery or enforceability of this Agreement or the ability of the Depositor to perform its obligations under this Agreement in accordance with the terms hereof.

(v)    No consent, approval, authorization or order of any court or governmental agency or body is required for the execution, delivery and performance by the Depositor of, or compliance by the Depositor with, this Agreement or the consummation of the transactions contemplated hereby, or if any such consent, approval, authorization or order is required, the Depositor has obtained the same; and

69

CONFIDENTIAL

(vi)     The Depositor has filed all reports required to be filed by Section 13 or Section 15(d) of the Exchange Act during the preceding 12 months (or for such shorter period that the Depositor was required to file such reports) and it has been subject to such filing requirements for the past 90 days.

The Depositor hereby represents and warrants to the Trustee as of the Closing Date, following the transfer of the Mortgage Loans to it by the Seller, the Depositor had good title to the Mortgage Loans and the related Mortgage Notes were subject to no offsets, claims, defenses or counterclaims.

It is understood and agreed that the representations and warranties set forth in the immediately preceding paragraph shall survive delivery of the Mortgage Files to the Trustee or the related Custodian for the benefit of the Certificateholders. Upon discovery by the Depositor, the Trustee of a breach of such representations and warranties, the party discovering such breach shall give prompt written notice to the other parties to this Agreement and to each Rating Agency.

Section 2.05   Delivery of Opinion of Counsel in Connection with Substitutions and Repurchases.

(a)     Notwithstanding any contrary provision of this Agreement, with respect to any Mortgage Loan that is not in default or as to which default is not reasonably foreseeable, no repurchase or substitution pursuant to Sections 2.02 or 2.03 shall be made unless the Trustee and the Securities Administrator receive an Opinion of Counsel, addressed to the Trustee and the Securities Administrator, to the effect that such repurchase or substitution would not (i) result in the imposition of the tax on "prohibited transactions" of REMIC I, REMIC II, REMIC III, REMIC IV, REMIC V or REMIC VI or contributions after the Closing Date, as defined in Sections 860F(a)(2) and 860G(d) of the Code, respectively, or (ii) cause any of REMIC I, REMIC II, REMIC III, REMIC IV, REMIC V or REMIC VI to fail to qualify as a REMIC at any time that any Certificates are outstanding. Any Mortgage Loan as to which repurchase or substitution was delayed pursuant to this paragraph shall be repurchased or the substitution therefor shall occur (subject to compliance with Sections 2.02 or 2.03) upon the earlier of (a) the occurrence of a default or a default becoming reasonably foreseeable with respect to such Mortgage Loan and (b) receipt by the Trustee and the Securities Administrator of an Opinion of Counsel addressed to the Trustee and the Securities Administrator to the effect that such repurchase or substitution, as applicable, will not result in the events described in clause (i) or clause (ii) of the preceding sentence.

(b)     Upon discovery by the Depositor, the Trustee, the Securities Administrator, the related Custodian or the Master Servicer that any Mortgage Loan does not constitute a "qualified mortgage" within the meaning of Section 860G(a)(3) of the Code, the party discovering such fact shall promptly (and in any event within 5 Business Days of discovery) give written notice thereof to the other parties. In connection therewith, the Trustee or the related Custodian on its behalf, shall require the related Seller or the related Originator, as applicable, at such party's option, to either (i) cure such defective condition, (ii) substitute, if the conditions in Section 2.03 and the Mortgage Loan Purchase Agreement or the Bring Down Agreements, as applicable, with respect to substitutions are satisfied, a Replacement Mortgage Loan for the affected Mortgage Loan, or (iii) repurchase the affected Mortgage Loan within 90

70

CONFIDENTIAL                                        MSM_MSSTI_20071_0001563

days of such discovery in the same manner as it would a Mortgage Loan subject to repurchase pursuant to Section 2.02 or 2.03, as applicable. The Securities Administrator, or the related Custodian on its behalf, shall reconvey to the Sponsor, the Seller or the related Originator, the Mortgage Loan to be released pursuant hereto (and the Trustee or the related Custodian shall deliver the related Mortgage File) in the same manner, and on the same terms and conditions, as it would a Mortgage Loan subject to repurchase pursuant to Section 2.02 or 2.03, as applicable.

Section 2.06    Countersignature and Delivery of Certificates.

(a)    The Trustee acknowledges the sale, transfer and assignment to it of the Trust Fund and, concurrently with such transfer and assignment, the Securities Administrator has executed, countersigned and delivered, to or upon the order of the Depositor, the Certificates in authorized denominations evidencing the entire ownership of the Trust Fund. The Trustee agrees to hold the Trust Fund and exercise the rights referred to above for the benefit of all present and future Holders of the Certificates and to perform the duties set forth in this Agreement in accordance with its terms.

(b)    The Depositor concurrently with the execution and delivery hereof, does hereby transfer, assign, set over and otherwise convey in trust to the Trustee without recourse all the right, title and interest of the Depositor in and to the REMIC I Regular Interests and the other assets of REMIC II for the benefit of the holders of the REMIC II Regular Interests and the Class R-2 Certificates. The Trustee acknowledges receipt of the REMIC I Regular Interests (which are uncertificated) and the other assets of REMIC II and declares that it holds and will hold the same in trust for the exclusive use and benefit of the holders of the REMIC II Regular Interests and the Class R-2 Certificates.

(c)    The Depositor concurrently with the execution and delivery hereof, does hereby transfer, assign, set over and otherwise convey in trust to the Trustee without recourse all the right, title and interest of the Depositor in and to the REMIC II Regular Interests and the other assets of REMIC III for the benefit of the holders of the Certificates (other than the Class CE, Class P and Class R Certificates), the Class CE Interest, the Class P Interest, the Class IO Interest and the Class R-3 Certificates. The Trustee acknowledges receipt of the REMIC II Regular Interests (which are uncertificated) and the other assets of REMIC III and declares that it holds and will hold the same in trust for the exclusive use and benefit of the holders of the Certificates (other than the Class CE, Class P and Class R Certificates), the Class CE Interest, the Class P Interest, the Class IO Interest and the Class R-3 Certificates.

(d)    The Depositor, concurrently with the execution and delivery hereof, does hereby transfer, assign, set over and otherwise convey in trust to the Trustee without recourse all the right, title and interest of the Depositor in and to the Class CE Interest for the benefit of the Holders of the Class CE Certificates and the Class RX Certificates (in respect of the Class R-4 Interest). The Trustee acknowledges receipt of the Class CE Interest (which is uncertificated) and declares that it holds and will hold the same in trust for the exclusive use and benefit of the Holders of the Class CE Certificates and the Class RX Certificates (in respect of the Class R-4 Interest).

(e)    The Depositor, concurrently with the execution and delivery hereof, does hereby transfer, assign, set over and otherwise convey in trust to the Trustee without recourse all

71

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL

MSM_MSSTI_20071_0001564

the right, title and interest of the Depositor in and to the Class P Interest for the benefit of the Holders of the Class P Certificates and the Class RX Certificates (in respect of the Class R-5 Interest). The Trustee acknowledges receipt of the Class P Interest (which is uncertificated) and declares that it holds and will hold the same in trust for the exclusive use and benefit of the Holders of the Class P Certificates and the Class RX Certificates (in respect of the Class R-5 Interest).

(f)     The Depositor, concurrently with the execution and delivery hereof, does hereby transfer, assign, set over and otherwise convey in trust to the Trustee without recourse all the right, title and interest of the Depositor in and to the Class IO Interest for the benefit of the holders of REMIC VI Regular Interest IO and the Class RX Certificates (in respect of the Class R-6 Interest). The Trustee acknowledges receipt of the Class IO Interest (which is uncertificated) and declares that it holds and will hold the same in trust for the exclusive use and benefit of the holders of REMIC VI Regular Interest IO and the Class RX Certificates (in respect of the Class R-6 Interest).

Section 2.07    Purposes and Powers of the Trust.

The purpose of the common law trust, as created hereunder, is to engage in the following activities:

(a)     acquire and hold the Mortgage Loans and the other assets of the Trust Fund and the proceeds therefrom;

(b)     to issue the Certificates sold to the Depositor in exchange for the Mortgage Loans;

(c)     to make distributions on the Certificates;

(d)     to engage in those activities that are necessary, suitable or convenient to accomplish the foregoing or are incidental thereto or connected therewith; and

(e)     subject to compliance with this Agreement, to engage in such other activities as may be required in connection with conservation of the Trust Fund and the making of distributions to the Certificateholders.

The Trust is hereby authorized to engage in the foregoing activities. The Trust shall not engage in any activity other than in connection with the foregoing or other than as required or authorized by the terms of this Agreement while any Certificate is outstanding, and this Section 2.07.

72

CONFIDENTIAL                                                MSM_MSSTI_20071_0001565

# ARTICLE III

# [RESERVED]

73

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL

MSM_MSSTI_20071_0001566

## ARTICLE IV

## ADMINISTRATION AND MASTER SERVICING OF MORTGAGE LOANS BY MASTER SERVICER

Section 4.01    Master Servicer.

The Master Servicer shall, beginning on the Closing Date, supervise, monitor and oversee the obligation of the Servicers to service and administer the Mortgage Loans in accordance with the terms of this Agreement and the related Servicing Agreement and shall have full power and authority to do any and all things which it may deem necessary or desirable in connection with such master servicing and administration. In performing its obligations hereunder, the Master Servicer shall act in a manner consistent with Accepted Master Servicing Practices. Furthermore, the Master Servicer shall oversee and consult with the Servicers as necessary from time to time to carry out the Master Servicer's obligations hereunder, shall receive, review and evaluate all reports, information and other data provided to the Master Servicer by the Servicers and shall cause the Servicers to perform and observe the covenants, obligations and conditions to be performed or observed by such Person under this Agreement and the related Servicing Agreement. The Master Servicer shall independently and separately monitor the related Servicer's servicing activities with respect to each related Mortgage Loan, reconcile the results of such monitoring with such information provided in the previous sentence on a monthly basis and coordinate corrective adjustments to the related Servicer's and Master Servicer's records, and based on such reconciled and corrected information, the Master Servicer shall provide such information to the Securities Administrator as shall be necessary in order for it to prepare the statements specified in Section 6.06 and any other information and statements required hereunder. The Master Servicer shall reconcile the results of its Mortgage Loan monitoring with the actual remittances of the Servicers to the Securities Administrator pursuant to this Agreement and the related Servicing Agreement.

In addition to the foregoing, in connection with a modification of any Mortgage Loan by a Servicer, if the Master Servicer is unable to enforce the obligations of the related Servicer with respect to such modification, the Master Servicer shall notify the Depositor of such Servicer's failure to comply with the terms of the related Servicing Agreement or this Agreement. If the Servicing Agreement or this Agreement requires the approval of the Master Servicer for a modification to a Mortgage Loan, the Master Servicer shall approve such modification if, based upon its receipt of written notification from the related Servicer outlining the terms of such modification and appropriate supporting documentation, the Master Servicer determines that the modification is permitted under the terms of the related Servicing Agreement or this Agreement and that any conditions to such modification set forth in the related Servicing Agreement or this Agreement have been satisfied.   Furthermore, if the related Servicing Agreement or this Agreement requires the oversight and monitoring of loss mitigation measures with respect to the related Mortgage Loans, the Master Servicer will monitor any loss mitigation procedure or recovery action related to a defaulted Mortgage Loan (to the extent it receives notice of such from the related Servicer) and confirm that such loss mitigation procedure or recovery action is initiated, conducted and concluded in accordance with any timeframes and any other requirements set forth in the Servicing Agreement or this Agreement, and the Master Servicer

74

CONFIDENTIAL

shall notify the Depositor in any case in which the Master Servicer believes that the related Servicer is not complying with such timeframes and/or other requirements.

The Trustee shall furnish the Servicers and the Master Servicer, upon written request from a servicing officer, with any powers of attorney and other documents in form as provided to it necessary or appropriate to enable the Servicers and the Master Servicer to service and administer the related Mortgage Loans and REO Property.

The Trustee, or the related Custodian on its behalf, and the related Servicer shall provide access to the records and documentation in possession of the Trustee, or the related Custodian on its behalf, and the related Servicer regarding the related Mortgage Loans and REO Property and the servicing thereof to the Certificateholders, the FDIC, and the supervisory agents and examiners of the FDIC, such access being afforded only upon reasonable prior written request and during normal business hours at the office of the Trustee, the related Custodian, or the related Servicer; provided, however, that, unless otherwise required by law, none of the Trustee, the related Custodian or the related Servicer shall be required to provide access to such records and documentation if the provision thereof would violate the legal right to privacy of any Mortgagor. The Trustee, each Custodian and each Servicer shall allow representatives of the above entities to photocopy any of the records and documentation and shall provide equipment for that purpose at a charge that covers the Trustee's, the related Custodian's and the related Servicer's actual costs.

The Trustee shall execute and deliver to the related Servicer and the Master Servicer, upon such party's written instruction (which includes the documents to be signed) any court pleadings, requests for trustee's sale or other appropriate documents necessary or desirable to (i) the foreclosure or trustee's sale with respect to a Mortgaged Property; (ii) any legal action brought to obtain judgment against any Mortgagor on the Mortgage Note or Security Instrument; (iii) obtain a deficiency judgment against the Mortgagor; or (iv) enforce any other rights or remedies provided by the Mortgage Note or Security Instrument or otherwise available at law or equity.

Section 4.02   REMIC-Related Covenants.

For as long as each REMIC created hereunder shall exist, the Trustee and the Securities Administrator shall act in accordance herewith to assure continuing treatment of such REMIC as a REMIC, and the Trustee and the Securities Administrator shall comply with any directions of the Seller, the Servicers or the Master Servicer to assure such continuing treatment. In particular, the Trustee shall not (except as otherwise expressly permitted by this Agreement) (a) sell or permit the sale of all or any portion of the Mortgage Loans or of any investment of deposits in an Account unless such sale is as a result of a repurchase of the Mortgage Loans pursuant to this Agreement or the Trustee has received a REMIC Opinion addressed to the Trustee prepared at the expense of the Trust Fund; (b) other than with respect to a substitution pursuant to the Mortgage Loan Purchase Agreement or Section 2.03 of this Agreement, as applicable, accept any contribution to any REMIC after the Startup Day without receipt of a REMIC Opinion; or (c) acquire any assets for any REMIC other than any REO Property after the Startup Day without receipt of a REMIC Opinion.

75

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL

Section 4.03    Monitoring of the Servicers.

(a)     The Master Servicer shall be responsible for reporting to the Trustee, the Sponsor and the Seller the non-compliance by the related Servicer with its duties under this Agreement and the related Servicing Agreement. In the review of the related Servicer's activities, the Master Servicer may rely upon an Officer's Certificate of the related Servicer with regard to such Person's compliance with the terms of this Agreement or the related Servicing Agreement. In the event that the Master Servicer, in its judgment, determines that the related Servicer (other than Wells Fargo) should be terminated in accordance with this Agreement or the related Servicing Agreement, or that a notice should be sent pursuant to this Agreement or the related Servicing Agreement with respect to the occurrence of an event that, unless cured, would constitute grounds for such termination, the Master Servicer shall notify the Seller and the Trustee and the Master Servicer shall issue such notice or take such other action as it deems appropriate.

(b)     The Master Servicer, for the benefit of the Trustee and the Certificateholders, shall enforce the obligations of each Servicer under the related Servicing Agreement, and shall, in the event that a Servicer, other than Wells Fargo, fails to perform its obligations in accordance with the related Servicing Agreement, subject to the preceding paragraph, terminate the rights and obligations of such Servicer thereunder and act as servicer of the related Mortgage Loans or to cause the Trustee to enter into a new Servicing Agreement with a successor servicer selected by the Master Servicer; provided, however, it is understood and acknowledged by the parties hereto that there will be a period of transition (not to exceed 90 days) before the actual servicing functions can be fully transferred to such successor servicer. In the event that Wells Fargo fails to perform its obligations in accordance with the Wells Fargo Servicing Agreement, subject to the preceding paragraph, the Master Servicer shall notify the Trustee in writing of such failure. Pursuant to its receipt of such notification from the Master Servicer, the Trustee shall terminate the rights and obligations of Wells Fargo under the Wells Fargo Servicing Agreement and enter in to a new Servicing Agreement with a successor servicer selected by the Trustee; provided, however, it is understood and acknowledged by the parties hereto that there will be a period of transition (not to exceed 90 days) before the actual servicing functions can be fully transferred to such successor servicer. In either event, such enforcement, including, without limitation, the legal prosecution of claims, termination of the related Servicing Agreement and the pursuit of other appropriate remedies, shall be in such form and carried out to such an extent and at such time as the Master Servicer (or in the case Wells Fargo is terminated as a Servicer, the successor servicer or the Trustee, as applicable) in its good faith business judgment, would require were it the owner of the related Mortgage Loans. The Master Servicer shall pay the costs of such enforcement at its own expense, subject to its right of reimbursement pursuant to the provisions of this Agreement or the related Servicing Agreement, provided that the Master Servicer shall not be required to prosecute or defend any legal action except to the extent that the Master Servicer shall have received reasonable indemnity for its costs and expenses in pursuing such action. In the event that Wells Fargo is terminated as a Servicer, the Trustee shall pay the costs of such enforcement at its own expense, subject to its right to be reimbursed for such costs from the Distribution Account pursuant to Section 4.03(c); provided that the Trustee shall not be required to prosecute or defend any legal action except to the extent that the Trustee shall have received reasonable indemnity for its costs and expenses in pursuing such action. Nothing herein shall impose any obligation on the part of the Trustee to assume or

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL                                                                MSM_MSSTI_20071_0001569

succeed to the duties or obligations of Wells Fargo or the Master Servicer unless the Trustee has not been able to find a successor servicer or a successor master servicer.

(c)     In the event that Wells Fargo is terminated as a Servicer, to the extent that the costs and expenses of the Trustee related to any termination of Wells Fargo, or the enforcement or prosecution of related claims, rights or remedies, or the appointment of a successor servicer (including, without limitation, (i) all legal costs and expenses and all due diligence costs and expenses associated with an evaluation of the potential termination of the Wells Fargo as a result of an event of default by Wells Fargo and (ii) all costs and expenses associated with the complete transfer of servicing, including all servicing files and all servicing data and the completion, correction or manipulation of such servicing data as may be required by the successor servicer to correct any errors or insufficiencies in the servicing data or otherwise to enable the successor servicer to service the Mortgage Loans in accordance with the related Servicing Agreement) are not fully and timely reimbursed by Wells Fargo after such termination, the Trustee shall be entitled to reimbursement of such costs and expenses from the Distribution Account.   In all other cases, to the extent that the costs and expenses of the Master Servicer related to any termination of a Servicer (other than Wells Fargo), the enforcement or prosecution of related claims, rights or remedies or appointment of a successor servicer or the transfer and assumption of servicing by the Master Servicer with respect to any Servicing Agreement (including, without limitation, (i) all legal costs and expenses and all due diligence costs and expenses associated with an evaluation of the potential termination of a Servicer as a result of an event of default by such Servicer and (ii) all costs and expenses associated with the complete transfer of servicing, including all servicing files and all servicing data and the completion, correction or manipulation of such servicing data as may be required by the successor servicer to correct any errors or insufficiencies in the servicing data or otherwise to enable the successor servicer to service the Mortgage Loans in accordance with the related Servicing Agreement) are not fully and timely reimbursed by the terminated Servicer, the Master Servicer shall be entitled to reimbursement of such costs and expenses from the Distribution Account.

(d)     The Master Servicer shall require the related Servicer to comply with the remittance requirements and other obligations set forth in this Agreement or the related Servicing Agreement, as applicable.

(e)     If the Master Servicer acts as a servicer, it will not assume liability for the representations and warranties of the related Servicer, if any, that it replaces.

Section 4.04   Fidelity Bond.

The Master Servicer, at its expense, shall maintain in effect a blanket fidelity bond and an errors and omissions insurance policy, affording coverage with respect to all directors, officers, employees and other Persons acting on such Master Servicer's behalf, and covering errors and omissions in the performance of the Master Servicer's obligations hereunder. The errors and omissions insurance policy and the fidelity bond shall be in such form and amount generally acceptable for entities serving as master servicers or trustees.

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL                                                                 MSM_MSSTI_20071_0001570

Section 4.05    Power to Act; Procedures.

The Master Servicer shall master service the Mortgage Loans and shall have full power and authority, subject to the REMIC Provisions and the provisions of Article XI hereof, to do any and all things that it may deem necessary or desirable in connection with the master servicing and administration of the Mortgage Loans, including but not limited to the power and authority (i) to execute and deliver, on behalf of the Certificateholders and the Trustee, customary consents or waivers and other instruments and documents, (ii) to consent to transfers of any Mortgaged Property and assumptions of the Mortgage Notes and related Mortgages, (iii) to collect any Insurance Proceeds and Liquidation Proceeds, and (iv) to effectuate foreclosure or other conversion of the ownership of the Mortgaged Property securing any Mortgage Loan, in each case, in accordance with the provisions of this Agreement and the related Servicing Agreement, as applicable; provided, however, that the Master Servicer shall not (and, consistent with its responsibilities under Section 4.03, shall not authorize the related Servicer to) knowingly or intentionally take any action, or fail to take (or fail to cause to be taken) any action reasonably within its control and the scope of duties more specifically set forth herein, that, under the REMIC Provisions, if taken or not taken, as the case may be, would cause REMIC I, REMIC II, REMIC III, REMIC IV, REMIC V or REMIC VI to fail to qualify as a REMIC or result in the imposition of a tax upon the Trust Fund (including but not limited to the tax on prohibited transactions as defined in Section 860F(a)(2) of the Code and the tax on contributions to a REMIC set forth in Section 860G(d) of the Code) unless the Master Servicer has received an Opinion of Counsel (but not at the expense of the Master Servicer) to the effect that the contemplated action will not cause REMIC I, REMIC II, REMIC III, REMIC IV, REMIC V or REMIC VI to fail to qualify as a REMIC or result in the imposition of a tax upon REMIC I, REMIC II, REMIC III, REMIC IV, REMIC V or REMIC VI as the case may be. The Trustee shall furnish the Master Servicer, upon written request from a Servicing Officer, with any powers of attorney empowering the Master Servicer or the related Servicer to execute and deliver instruments of satisfaction or cancellation, or of partial or full release or discharge, and to foreclose upon or otherwise liquidate Mortgaged Property, and to appeal, prosecute or defend in any court action relating to the Mortgage Loans or the Mortgaged Property, in accordance with the related Servicing Agreement and this Agreement, and the Trustee shall execute and deliver such other documents, as the Master Servicer may request, to enable the Master Servicer to master service and administer the Mortgage Loans and carry out its duties hereunder, in each case in accordance with Accepted Master Servicing Practices (and the Trustee shall have no liability for misuse of any such powers of attorney by the Master Servicer, the related Servicer). If the Master Servicer or the Trustee has been advised that it is likely that the laws of the state in which action is to be taken prohibit such action if taken in the name of the Trustee or that the Trustee would be adversely affected under the "doing business" or tax laws of such state if such action is taken in its name, the Master Servicer shall join with the Trustee in the appointment of a co-trustee pursuant to Section 10.11 hereof. In the performance of its duties hereunder, the Master Servicer shall be an independent contractor and shall not, except in those instances where it is taking action in the name of the Trust, be deemed to be the agent of the Trust.

Section 4.06    Due-on-Sale Clauses; Assumption Agreements.

To the extent provided in this Agreement or the related Servicing Agreement, to the extent Mortgage Loans contain enforceable due-on-sale clauses, the Master Servicer shall cause the related Servicer to enforce such clauses in accordance with this Agreement or the related

78

CONFIDENTIAL

Servicing Agreement. If applicable law prohibits the enforcement of a due-on-sale clause or such clause is otherwise not enforced in accordance with this Agreement or the related Servicing Agreement, and, as a consequence, a Mortgage Loan is assumed, the original Mortgagor may be released from liability in accordance with this Agreement or the related Servicing Agreement.

Section 4.07    Release of Mortgage Files.

(a)    Upon becoming aware of the payment in full of any Mortgage Loan, or the receipt by the related Servicer of a notification that payment in full has been escrowed in a manner customary for such purposes for payment to Certificateholders on the next Distribution Date, the related Servicer will, if required under the related  Servicing Agreement (or if the related Servicer does not, the Master Servicer may), promptly furnish to the related Custodian, on behalf of the Trustee, two copies of a certification substantially in the form of Exhibit G (or as otherwise provided in the related Custodial Agreement) hereto signed by a Servicing Officer or in a mutually agreeable electronic format which will, in lieu of a signature on its face, originate from a Servicing Officer (which certification shall include a statement to the effect that all amounts received in connection with such payment that are required to be deposited in the Protected Account maintained by the related Servicer pursuant to the related Servicing Agreement have been or will be so deposited) and shall request that the related Custodian, on behalf of the Trustee, deliver to the related Servicer the related Mortgage File. Upon receipt of such certification and request, the related Custodian, on behalf of the Trustee, shall promptly release the related Mortgage File to the related Servicer and the Trustee and related Custodian shall have no further responsibility with regard to such Mortgage File. Upon any such payment in full, the related Servicer is authorized, to give, as agent for the Trustee, as the mortgagee under the Mortgage that secured the Mortgage Loan, an instrument of satisfaction (or assignment of mortgage without recourse, representation or warranty) regarding the Mortgaged Property subject to the Mortgage, which instrument of satisfaction or assignment, as the case may be, shall be delivered to the Person or Persons entitled thereto against receipt therefor of such payment, it being understood and agreed that no expenses incurred in connection with such instrument of satisfaction or assignment, as the case may be, shall be chargeable to the Protected Account.

(b)    From time to time and as appropriate for the servicing or foreclosure of any Mortgage Loan and in accordance with this Agreement or the related Servicing Agreement, upon written instruction from such Servicer or the Master Servicer, the Trustee shall execute such documents as shall be prepared and furnished to the Trustee by the related Servicer or the Master Servicer (in form reasonably acceptable to the Trustee) and as are necessary to the prosecution of any such proceedings. The related Custodian, on behalf of the Trustee, shall, upon the request of the related Servicer or the Master Servicer, and delivery to the related Custodian, on behalf of the Trustee, of two copies of a request for release signed by a Servicing Officer substantially in the form of Exhibit G (or in a mutually agreeable electronic format which will, in lieu of a signature on its face, originate from a Servicing Officer), release the related Mortgage File held in its possession or control to the related Servicer or the Master Servicer, as applicable. Such trust receipt shall obligate the related Servicer or the Master Servicer to return the Mortgage File to the related Custodian on behalf of the Trustee, when the need therefor by such Person no longer exists unless the Mortgage Loan shall be liquidated, in which case, upon receipt of a certificate of a Servicing Officer similar to that hereinabove specified, the Mortgage File shall be released by the related Custodian, on behalf of the Trustee, to the related Servicer or the Master Servicer.

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL                                                                                      MSM_MSSTI_20071_0001572

Section 4.08    Documents, Records and Funds in Possession of Master Servicer and Servicer To Be Held for Trustee.

(a)    The Master Servicer shall transmit and the related Servicer (to the extent required by this Agreement or the related Servicing Agreement) shall transmit to the Trustee or related Custodian such documents and instruments coming into the possession of such Person from time to time as are required by the terms hereof, or in the case of the related Servicer, the related Servicing Agreement, to be delivered to the Trustee or related Custodian. Any funds received by the Master Servicer or by the related Servicer in respect of any Mortgage Loan or which otherwise are collected by the Master Servicer or by the related Servicer as Liquidation Proceeds or Insurance Proceeds in respect of any Mortgage Loan shall be held for the benefit of the Trustee and the Certificateholders subject to the Securities Administrator's right to retain or withdraw from the Distribution Account, the Master Servicing Compensation and other amounts provided in this Agreement, and to the right of the related Servicer to retain its Servicing Fee and other amounts as provided in this Agreement or the related Servicing Agreement. The Master Servicer, the related Servicer shall provide access to information and documentation regarding the Mortgage Loans to the Trustee and, regarding the Mortgage Loans and their respective agents and accountants at any time upon reasonable request and during normal business hours, and to Certificateholders that are savings and loan associations, banks or insurance companies, the Office of Thrift Supervision, the FDIC and the supervisory agents and examiners of such Office and Corporation or examiners of any other federal or state banking or insurance regulatory authority if so required by applicable regulations of the Office of Thrift Supervision or other regulatory authority, such access to be afforded without charge but only upon reasonable request in writing and during normal business hours at the offices of the Master Servicer designated by it. In fulfilling such a request the Master Servicer shall not be responsible for determining the sufficiency of such information.

(b)    All Mortgage Files and funds collected or held by, or under the control of, the Master Servicer, in respect of any Mortgage Loans, whether from the collection of principal and interest payments or from Liquidation Proceeds or Insurance Proceeds, shall be held by the Master Servicer for and on behalf of the Trustee and the Certificateholders and shall be and remain the sole and exclusive property of the Trustee; provided, however, that the Master Servicer, the related Servicer shall be entitled to setoff against, and deduct from, any such funds any amounts that are properly due and payable to the Master Servicer or such Servicer under this Agreement or the related Servicing Agreement.

Section 4.09    Standard Hazard Insurance and Flood Insurance Policies.

(a)    For each Mortgage Loan, the Master Servicer shall enforce any obligation of the related Servicer under this Agreement or the related Servicing Agreement to maintain or cause to be maintained standard fire and casualty insurance and, where applicable, flood insurance, all in accordance with the provisions of this Agreement or the related Servicing Agreement. It is understood and agreed that such insurance shall be with insurers meeting the eligibility requirements set forth in this Agreement and the related Servicing Agreement and that no earthquake or other additional insurance is to be required of any Mortgagor or to be maintained on property acquired in respect of a defaulted loan, other than pursuant to such applicable laws and regulations as shall at any time be in force and as shall require such additional insurance.

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL

MSM_MSSTI_20071_0001573

(b)     Pursuant to Sections 5.01 and 5.04 any amounts collected by the Master Servicer under any insurance policies (other than amounts to be applied to the restoration or repair of the property subject to the related Mortgage or released to the Mortgagor in accordance with this Agreement or the Servicing Agreements) shall be deposited by the Master Servicer into the Distribution Account, subject to withdrawal pursuant to Sections 5.02, 5.03 or 5.04, as applicable. Any cost incurred by the Master Servicer in maintaining any such insurance if the Mortgagor defaults in its obligation to do so shall be added to the amount owing under the Mortgage Loan where the terms of the Mortgage Loan so permit; provided, however, that the addition of any such cost shall not be taken into account for purposes of calculating the distributions to be made to Certificateholders and shall be recoverable by the Master Servicer pursuant to Sections 5.01 or 5.03, as applicable.

Section 4.10    Presentment of Claims and Collection of Proceeds.

The Master Servicer shall (to the extent provided in this Agreement and the related Servicing Agreement) cause the Servicers to prepare and present on behalf of the Trustee and the Certificateholders all claims under the Insurance Policies and take such actions (including the negotiation, settlement, compromise or enforcement of the insured's claim) as shall be necessary to realize recovery under such policies. Any proceeds disbursed to the Master Servicer (or disbursed to the related Servicer and remitted to the Master Servicer) in respect of such policies, bonds or contracts shall be promptly deposited in the Distribution Account upon receipt, except that any amounts realized that are to be applied to the repair or restoration of the related Mortgaged Property as a condition precedent to the presentation of claims on the related Mortgage Loan to the insurer under any applicable Insurance Policy need not be so deposited (or remitted).

Section 4.11    Maintenance of the Primary Mortgage Insurance Policies.

(a)     The Master Servicer shall not take, or authorize the related Servicer (to the extent such action is prohibited under this Agreement or the related Servicing Agreement) to take, any action that would result in noncoverage under any applicable Primary Mortgage Insurance Policy of any loss which, but for the actions of the Master Servicer, the related Servicer, would have been covered thereunder. The Master Servicer shall use its best reasonable efforts to cause the related Servicer (to the extent required under this Agreement and the related Servicing Agreement) to keep in force and effect (to the extent that the Mortgage Loan requires the Mortgagor to maintain such insurance), primary mortgage insurance applicable to each Mortgage Loan (including any LPMI Policy) in accordance with the provisions of this Agreement and the related Servicing Agreement, as applicable. The Master Servicer shall not, and shall not authorize the related Servicer (to the extent required under this Agreement or the related Servicing Agreement) to, cancel or refuse to renew any such Primary Mortgage Insurance Policy that is in effect at the date of the initial issuance of the Mortgage Note and is required to be kept in force hereunder except in accordance with the provisions of this Agreement and the related Servicing Agreement, as applicable.

(b)     The Master Servicer agrees to cause the related Servicer (to the extent required under this Agreement and the related Servicing Agreement) to present, on behalf of the Trustee and the Certificateholders, claims to the insurer under any Primary Mortgage Insurance Policies and, in this regard, to take such reasonable action as shall be necessary to permit

81

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL

recovery under any Primary Mortgage Insurance Policies respecting defaulted Mortgage Loans. Pursuant to Sections 5.01 and 5.05, any amounts collected by a Servicer or by the Securities Administrator under any Primary Mortgage Insurance Policies shall be deposited by such Servicer in its Protected Account or by the Securities Administrator in the Distribution Account, subject to withdrawal pursuant to Section 5.02.

Section 4.12    Trustee to Retain Possession of Certain Insurance Policies and Documents.

The Custodians, on behalf of the Trustee, shall retain possession and custody of the originals (to the extent available) of any Primary Mortgage Insurance Policies, or certificate of insurance if applicable, and any certificates of renewal as to the foregoing as may be issued from time to time as contemplated by this Agreement. Until all amounts distributable in respect of the Certificates have been distributed in full and the Master Servicer otherwise has fulfilled its obligations under this Agreement, the related Custodian shall also retain possession and custody of each Mortgage File in accordance with and subject to the terms and conditions of this Agreement. The Master Servicer shall promptly deliver or cause to be delivered to the related Custodian, upon the execution or receipt thereof the originals of any Primary Mortgage Insurance Policies, any certificates of renewal, and such other documents or instruments that constitute portions of the Mortgage File that come into the possession of the Master Servicer from time to time.

Section 4.13    Realization Upon Defaulted Mortgage Loans.

The Master Servicer shall cause the related Servicer (to the extent required under this Agreement and the related Servicing Agreement) to foreclose upon, repossess or otherwise comparably convert the ownership of Mortgaged Properties securing such of the Mortgage Loans as come into and continue in default and as to which no satisfactory arrangements can be made for collection of delinquent payments, all in accordance with this Agreement or the related Servicing Agreement.

Section 4.14    Compensation for the Master Servicer.

The Master Servicer will be entitled to receive the Master Servicing Fee as compensation for its activities under this Agreement. The Master Servicer will also be entitled to all income and gain realized from any investment of funds in the Distribution Account for the performance of its activities hereunder during the Master Servicer Float Period. The Master Servicer shall be required to pay all expenses incurred by it in connection with its activities hereunder and shall not be entitled to reimbursement therefor except as provided in this Agreement. However, the aggregate Master Servicing Fee with respect to any Distribution Date shall be reduced by an amount equal to the Compensating Interest payable by the Master Servicer for such Distribution Date pursuant to Section 6.02 hereof.

Section 4.15    REO Property.

(a)    In the event the Trust Fund acquires ownership of any REO Property in respect of any related Mortgage Loan, the deed or certificate of sale shall be issued to the Trustee, or to its nominee, on behalf of the related Certificateholders. The Master Servicer shall,

82

CONFIDENTIAL

MSM_MSSTI_20071_0001575

to the extent provided in this Agreement or the related Servicing Agreement, cause the related Servicer to sell, any REO Property as expeditiously as possible and in accordance with the provisions of this Agreement and the related Servicing Agreement, as applicable. Pursuant to such efforts to sell such REO Property, the Master Servicer shall cause the related Servicer to protect and conserve, such REO Property in the manner and to the extent required by this Agreement or the related Servicing Agreement, in accordance with the REMIC Provisions and in a manner that does not result in a tax on "net income from foreclosure property" or cause such REO Property to fail to qualify as "foreclosure property" within the meaning of Section 860G(a)(8) of the Code.

(b)     The Master Servicer shall, to the extent required by this Agreement or the related Servicing Agreement, cause the related Servicer to deposit all funds collected and received in connection with the operation of any REO Property in the Protected Account.

(c)     The Master Servicer and the related Servicer, upon the final disposition of any REO Property, shall be entitled to reimbursement for any related unreimbursed Advances and other unreimbursed advances as well as any unpaid Servicing Fees from Liquidation Proceeds received in connection with the final disposition of such REO Property; provided, that any such unreimbursed Monthly Advances as well as any unpaid Servicing Fees may be reimbursed or paid, as the case may be, prior to final disposition, out of any net rental income or other net amounts derived from such REO Property.

(d)     To the extent provided in this Agreement or the related Servicing Agreement, the Liquidation Proceeds from the final disposition of the REO Property, net of any payment to the Master Servicer and the related Servicer as provided above shall be deposited in the Protected Account on or prior to the Determination Date in the month following receipt thereof and be remitted by wire transfer in immediately available funds to the Securities Administrator for deposit into the related Distribution Account on the next succeeding Remittance Date.

Section 4.16    Annual Statement as to Compliance.

The Master Servicer and the Securities Administrator shall deliver (or otherwise make available) to the Depositor and the Securities Administrator not later than March 15th of each calendar year beginning in 2008, an Officer's Certificate (an "Annual Statement of Compliance") stating, as to each signatory thereof, that (i) a review of the activities of each such party during the preceding calendar year and of its performance under this Agreement or other applicable Servicing Agreement has been made under such officer's supervision and (ii) to the best of such officer's knowledge, based on such review, such party has fulfilled all of its obligations under this Agreement or other applicable Servicing Agreement in all material respects throughout such year, or, if there has been a failure to fulfill any such obligation in any material respect, specifying each such failure known to such officer and the nature and status of the cure provisions thereof.  Such Annual Statement of Compliance shall contain no restrictions or limitations on its use. The Master Servicer shall enforce the obligations of each Servicer, to the extent set forth in the related Servicing Agreement, to deliver a similar Annual Statement of Compliance by that Servicer to the Depositor and the Securities Administrator as described above as and when required with respect to the Master Servicer.  In the event that certain servicing responsibilities with respect to any Mortgage Loan have been delegated by the Master

83

CONFIDENTIAL

Servicer, the Securities Administrator or a Servicer to a subservicer or subcontractor, each such entity shall cause such subservicer or subcontractor (and with respect to each Servicer, the Master Servicer shall enforce the obligation of such Servicer to the extent required under the related Servicing Agreement) to deliver a similar Annual Statement of Compliance by such subservicer or subcontractor to the Depositor and the Securities Administrator as described above as and when required with respect to the Master Servicer or the related Servicer (as the case may be).

Failure of the Master Servicer to comply with this Section 4.16 (including with respect to the timeframes required herein) shall be deemed an Event of Default, and at the written direction of the Depositor the Trustee shall, in addition to whatever rights the Trustee may have under this Agreement and at law or equity or to damages, including injunctive relief and specific performance, upon notice immediately terminate all of the rights and obligations of the Master Servicer under this Agreement and in and to the Mortgage Loans and the proceeds thereof without compensating the Master Servicer for the same. Failure of the Securities Administrator to comply with this Section 4.16 (including with respect to the timeframes required in this Section) which failure results in a failure to timely file the related Form 10-K, shall be deemed a default and the Trustee at the written direction of the Depositor shall, in addition to whatever rights the Trustee may have under this Agreement and at law or equity or to damages, including injunctive relief and specific performance, upon notice immediately terminate all of the rights and obligations of the Securities Administrator under this Agreement and in and to the Mortgage Loans and the proceeds thereof without compensating the Securities Administrator for the same. This paragraph shall supersede any other provision in this Agreement or any other agreement to the contrary.

In the event the Master Servicer, the Securities Administrator, any Servicer or any subservicer or subcontractor engaged by any such party is terminated or resigns pursuant to the terms of this Agreement or the applicable Servicing Agreement, or any other applicable agreement in the case of a subservicer or subcontractor, as the case may be, such party shall provide an Annual Statement of Compliance pursuant to this Section 4.16 or to the related section of such applicable Servicing Agreement or other applicable agreement, as the case may be, as to the performance of its obligations with respect to the period of time it was subject to this Agreement, the applicable Servicing Agreement or any other applicable agreement, as the case may be notwithstanding any such termination or resignation.

Section 4.17   Assessments of Compliance and Attestation Reports.

Pursuant to Rules 13a-18 and 15d-18 of the Exchange Act and Item 1122 of Regulation AB, each of the Master Servicer, the Securities Administrator and the related Custodian (to the extent set forth in this Section 4.17) (each, an "Attesting Party") at its own expense shall deliver (or otherwise make available) to the Master Servicer, the Securities Administrator and the Depositor on or before March 15th of each calendar year beginning in 2008, a report regarding such Attesting Party's assessment of compliance (an "Assessment of Compliance") with the Servicing Criteria during the preceding calendar year. The Assessment of Compliance, as set forth in Regulation AB, must contain the following:

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL                                                                    MSM_MSSTI_20071_0001577

(a)    A statement by an authorized officer of such Attesting Party of its authority and responsibility for assessing compliance with the Servicing Criteria applicable to the related Attesting Party;

(b)    A statement by an authorized officer that such Attesting Party used the Servicing Criteria attached as Exhibit N hereto, and which will also be attached to the Assessment of Compliance, to assess compliance with the Servicing Criteria applicable to the related Attesting Party;

(c)    An assessment by such officer of the related Attesting Party's compliance with the applicable Servicing Criteria for the period consisting of the preceding calendar year, including disclosure of any material instance of noncompliance with respect thereto during such period, which assessment shall be based on the activities such Attesting Party performs with respect to asset-backed securities transactions taken as a whole involving the related Attesting Party, that are backed by the same asset type as the Mortgage Loans;

(d)    A statement that a registered public accounting firm has issued an attestation report on the related Attesting Party's Assessment of Compliance for the period consisting of the preceding calendar year; and

(e)    A statement as to which of the Servicing Criteria, if any, are not applicable to the related Attesting Party, which statement shall be based on the activities such Attesting Party performs with respect to asset-backed securities transactions taken as a whole involving such Attesting Party, that are backed by the same asset type as the Mortgage Loans.

Such report at a minimum shall address each of the Servicing Criteria specified on Exhibit N hereto which are indicated as applicable to the related Attesting Party.

On or before March 15th of each calendar year beginning in 2008, each Attesting Party shall furnish to the Master Servicer, the Depositor and the Securities Administrator a report (an "Attestation Report") by a registered public accounting firm that attests to, and reports on, the Assessment of Compliance made by the related Attesting Party, as required by Rules 13a-18 and 15d-18 of the Exchange Act and Item 1122(b) of Regulation AB, which Attestation Report must be made in accordance with standards for attestation reports issued or adopted by the Public Company Accounting Oversight Board.

The Master Servicer shall enforce the obligation of each Servicer to deliver to the Securities Administrator, the Master Servicer and the Depositor an Assessment of Compliance and Attestation Report as and when provided in the related Servicing Agreement. Each of the Master Servicer and the Securities Administrator shall cause, and the Master Servicer shall enforce the obligation (as and when provided in the related Servicing Agreement) of each Servicer to cause, any subservicer and each subcontractor (to the extent such subcontractor is determined by the Master Servicer or the Securities Administrator, as applicable, to be "participating in the servicing function" within the meaning of Item 1122 of Regulation AB) that is engaged by such Servicer, the Master Servicer or the Securities Administrator, as applicable, to deliver to the Securities Administrator, the Master Servicer and the Depositor an Assessment of Compliance and Attestation Report as and when provided above. Such Assessment of Compliance, as to any subservicer or subcontractor, shall at a minimum address the applicable

85

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL                                                                     MSM_MSSTI_20071_0001578

Servicing Criteria specified on Exhibit N hereto which are indicated as applicable to any "primary servicer" to the extent such subservicer or subcontractor is performing any servicing function for the party who engages it and to the extent such party is not itself addressing the Servicing Criteria related to such servicing function in its own Assessment of Compliance. The Securities Administrator shall confirm that each of the Assessments of Compliance delivered to it, taken as a whole, address all of the Servicing Criteria and taken individually address the Servicing Criteria for each party as set forth in Exhibit N and notify the Depositor of any exceptions. Notwithstanding the foregoing, as to any subcontractor, an Assessment of Compliance is not required to be delivered unless it is required as part of a Form 10-K with respect to the Trust Fund.

Each Custodian shall deliver to the Master Servicer, the Securities Administrator and the Depositor an Assessment of Compliance and Attestation Report, as and when provided above, which shall at a minimum address each of the Servicing Criteria specified on Exhibit N hereto which are indicated as applicable to a "custodian". Notwithstanding the foregoing, an Assessment of Compliance or Attestation Report is not required to be delivered by any Custodian unless it is required as part of a Form 10-K with respect to the Trust Fund.

Failure of the Master Servicer to comply with this Section 4.17 (including with respect to the timeframes required in this Section 4.17) shall constitute an Event of Default, and at the written direction of the Depositor the Trustee shall, in addition to whatever rights the Trustee may have under this Agreement and at law or equity or to damages, including injunctive relief and specific performance, upon notice immediately terminate all of the rights and obligations of the Master Servicer under this Agreement and in and to the Mortgage Loans and the proceeds thereof without compensating the Master Servicer for the same (but subject to the Master Servicer's rights to payment of any Master Servicing Compensation and reimbursement of all amounts for which it is entitled to be reimbursed prior to the date of termination). Failure of the Securities Administrator to comply with this Section 4.17 (including with respect to the timeframes required in this Section 4.17) which failure results in a failure to timely file the related Form 10-K, shall constitute a default and at the written direction of the Depositor the Trustee shall, in addition to whatever rights the Trustee may have under this Agreement and at law or equity or to damages, including injunctive relief and specific performance, upon notice immediately terminate all of the rights and obligations of the Securities Administrator under this Agreement and in and to the Mortgage Loans and the proceeds thereof without compensating the Securities Administrator for the same (but subject to the Securities Administrator's right to reimbursement of all amounts for which it is entitled to be reimbursed prior to the date of termination). This paragraph shall supersede any other provision in this Agreement or any other agreement to the contrary.

In the event the Master Servicer, any Custodian, the Securities Administrator, any Servicer or any subservicer or subcontractor engaged by any such party is terminated, assigns its rights and obligations under, or resigns pursuant to, the terms of the Agreement, the related Custodial Agreement, or any other applicable agreement in the case of a subservicer or subcontractor, as the case may be, such party shall provide an Assessment of Compliance and cause to be provided an Attestation Report pursuant to this Section 4.17 or to the related section of such other applicable agreement, as the case may be, notwithstanding any such termination, assignment or resignation.

[TPW: NYLEGAL:691857.8] 17297-00533   11/15/2007 06:00 PM

CONFIDENTIAL

MSM_MSSTI_20071_0001579

Section 4.18    Reports Filed with Securities and Exchange Commission.

(a)      (i) (A) Within 15 days after each Distribution Date (subject to permitted exceptions under the Exchange Act), the Securities Administrator shall, in accordance with industry standards, prepare and file with the Commission via the Electronic Data Gathering and Retrieval System ("EDGAR"), a Distribution Report on Form 10-D, signed by the Master Servicer, with a copy of the Monthly Statement to be furnished by the Securities Administrator to the Certificateholders for such Distribution Date attached thereto; provided that, the Securities Administrator shall have received no later than five (5) calendar days after the related Distribution Date, all information required to be provided to the Securities Administrator as described in clause (a)(iv) below.  Any disclosure that is in addition to the Monthly Statement and that is required to be included on Form 10-D ("Additional Form 10-D Disclosure") shall be reported by the parties set forth on Exhibit O to the Securities Administrator and the Depositor, pursuant to the paragraph immediately below, and approved for inclusion by the Depositor, and the Securities Administrator will have no duty or liability for any failure hereunder to determine or prepare any Additional Form 10-D Disclosure absent such reporting (other than in the case where the Securities Administrator is the reporting party as set forth in Exhibit O) and approval.

(B)      Within five (5) calendar days after the related Distribution Date, (i) the parties set forth in Exhibit O shall be required to provide, and the Master Servicer shall enforce the obligation of each Servicer (to the extent provided in the related Servicing Agreement) to provide, pursuant to Section 4.18(a)(iv) below, to the Securities Administrator and the Depositor, to the extent known by a responsible officer thereof, in EDGAR-compatible format, or in such other format as otherwise agreed upon by the Securities Administrator and the Depositor and such party, the form and substance of any Additional Form 10-D Disclosure, if applicable, and (ii) the Depositor will approve, as to form and substance, or disapprove, as the case may be, the inclusion of the Additional Form 10-D Disclosure on Form 10-D.  The Depositor shall be responsible for any reasonable fees and expenses assessed or incurred by the Securities Administrator in connection with including any Additional Form 10-D Disclosure on Form 10-D pursuant to this Section.

(C)      After preparing the Form 10-D, the Securities Administrator shall forward electronically a copy of the Form 10-D to the Depositor (in the case of any Additional 10-D Disclosure and otherwise if requested by the Depositor) and the Master Servicer for review. Within two Business Days after receipt of such copy, but no later than the 12th calendar day after the Distribution Date (provided that, the Securities Administrator forwards a copy of the Form 10-D no later than the 10th calendar day after the Distribution Date), the Depositor shall notify the Securities Administrator in writing (which may be furnished electronically) of any changes to or approval of such Form 10-D. In the absence of receipt of any written changes or approval, the Securities Administrator shall be entitled to assume that such Form 10-D is in final form and the Securities Administrator may proceed with the execution and filing of the Form 10-D. No later than the 13th calendar day after the related Distribution Date, a duly authorized officer of the Master Servicer shall sign the Form 10-D and, in the case where the Master Servicer and the Securities Administrator are not affiliated, return an electronic or fax copy of such signed Form 10-D (with an original executed hard copy to follow by overnight mail) to the Securities Administrator.  If a Form 10-D cannot be filed on time or if a previously filed Form 10-D needs to be amended, the Securities Administrator shall follow the procedures set forth in Section 4.18(a)(vi)(B). Promptly (but no later than one (1) Business Day) after filing with the

87

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

                                                      MSM_MSSTI_20071_0001580

Commission, the Securities Administrator shall make available on its internet website identified in Section 6.06 a final executed copy of each Form 10-D filed by the Securities Administrator. The signing party at the Master Servicer can be contacted as set forth in Section 12.05. Form 10-D requires the registrant to indicate (by checking "yes" or "no") that it (1) has filed all reports required to be filed by Section 13 or 15(d) of the Exchange Act during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. The Depositor shall notify the Securities Administrator in writing, no later than the fifth calendar day after the related Distribution Date with respect to the filing of a report on Form 10-D if the answer to the questions should be "no". The Securities Administrator shall be entitled to rely on the representations in Section 2.04(vi) and in any such notice in preparing, executing and/or filing any such report.  The parties to this Agreement acknowledge that the performance by the Master Servicer and the Securities Administrator of their respective duties under Sections 4.18(a)(i) and (v) related to the timely preparation, execution and filing of Form 10-D is contingent upon such parties strictly observing all applicable deadlines in the performance of their duties under such Sections.  Neither the Master Servicer nor the Securities Administrator shall have any liability for any loss, expense, damage, claim arising out of or with respect to any failure to properly prepare, execute and/or timely file such Form 10-D, where such failure results from a party's failure to deliver, on a timely basis, any information from such party needed to prepare, arrange for execution or file such Form 10-D, not resulting from its own negligence, bad faith or willful misconduct.

(ii)     (A)  Within four (4) Business Days after the occurrence of an event requiring disclosure on Form 8-K (each such event, a "Reportable Event"), the Securities Administrator shall prepare and file, on behalf of the Trust, at the direction of the Depositor, any Form 8-K, as required by the Exchange Act; provided that, the Depositor shall file the initial Form 8-K in connection with the issuance of the Certificates.  Any disclosure or information related to a Reportable Event or that is otherwise required to be included on Form 8-K ("Form 8-K Disclosure Information") shall be, pursuant to the paragraph immediately below, reported by the parties set forth on Exhibit O to the Securities Administrator and the Depositor and directed and approved for inclusion by the Depositor pursuant to the following paragraph, and the Securities Administrator will have no duty or liability for any failure hereunder to determine or prepare any Form 8-K Disclosure Information absent such reporting (other than in the case where the Securities Administrator is the reporting party as set forth in Exhibit O) and approval.

(B)     For so long as the Trust is subject to the Exchange Act reporting requirements, (i) no later than the close of business on the 2nd Business Day after the occurrence of a Reportable Event the parties set forth in Exhibit O shall be required pursuant to Section 4.18(a)(iv) below to provide, and the Master Servicer shall enforce the obligation of each Servicer (to the extent provided in the related Servicing Agreement) to provide, to the Securities Administrator and the Depositor, to the extent known by a responsible officer thereof, in EDGAR-compatible format, or in such other form as otherwise agreed upon by the Securities Administrator and the Depositor and such party, the form and substance of any Form 8-K Disclosure Information, if applicable, and (ii) the Depositor shall approve, as to form and substance, or disapprove, as the case may be, the inclusion of the Form 8-K Disclosure Information on Form 8-K. The Depositor shall be responsible for any reasonable fees and

88

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

MSM_MSSTI_20071_0001581

expenses assessed or incurred by the Securities Administrator in connection with including any Form 8-K Disclosure Information on Form 8-K pursuant to this Section.

(C)   After preparing the Form 8-K, the Securities Administrator shall forward electronically a copy of the Form 8-K to the Depositor and the Master Servicer for review.  No later than the close of business New York City time on the 3rd Business Day after the Reportable Event, or in the case where the Master Servicer and Securities Administrator are affiliated, no later than noon New York City time on the 4th Business Day after the Reportable Event, a duly authorized officer of the Master Servicer shall sign the Form 8-K and, in the case where the Master Servicer and the Securities Administrator are not affiliated, return an electronic or fax copy of such signed Form 8-K (with an original executed hard copy to follow by overnight mail) to the Securities Administrator.  Promptly, but no later than the close of business on the 3rd Business Day after the Reportable Event (provided that, the Securities Administrator forwards a copy of the Form 8-K no later than noon New York time on the third Business Day after the Reportable Event), the Depositor shall notify the Securities Administrator in writing (which may be furnished electronically) of any changes to or approval of such Form 8-K.  In the absence of receipt of any written changes or approval, the Securities Administrator shall be entitled to assume that such Form 8-K is in final form and the Securities Administrator may proceed with the execution and filing of the Form 8-K.  If a Form 8-K cannot be filed on time or if a previously filed Form 8-K needs to be amended, the Securities Administrator shall follow the procedures set forth in Section 4.18(a)(vi)(B).  Promptly (but no later than one (1) Business Day) after filing with the Commission, the Securities Administrator shall, make available on its internet website a final executed copy of each Form 8-K filed by the Securities Administrator.  The signing party at the Master Servicer can be contacted as set forth in Section 12.05.  The parties to this Agreement acknowledge that the performance by Master Servicer and the Securities Administrator of their respective duties under this Section 4.18(a)(ii) related to the timely preparation, execution and filing of Form 8-K is contingent upon such parties strictly observing all applicable deadlines in the performance of their duties under this Section 4.18(a)(ii).  Neither the Master Servicer nor the Securities Administrator shall have any liability for any loss, expense, damage, claim arising out of or with respect to any failure to properly prepare, execute and/or timely file such Form 8-K, where such failure results from a party's failure to deliver, on a timely basis, any information from such party needed to prepare, arrange for execution or file such Form 8-K, not resulting from its own negligence, bad faith or willful misconduct.

(iii)   (A)  On or prior to the 90th day after the end of each fiscal year of the Trust or such earlier date as may be required by the Exchange Act (the "10-K Filing Deadline") (it being understood that the fiscal year for the Trust ends on December 31st of each year), commencing in March 2008, the Securities Administrator shall prepare and file on behalf of the Trust a Form 10-K, in form and substance as required by the Exchange Act.  Each such Form 10-K shall include the following items, in each case to the extent they have been delivered to the Securities Administrator within the applicable time frames set forth in this Agreement, (I) an annual compliance statement for the Master Servicer, each Servicer, the Securities Administrator and any subservicer or subcontractor, as applicable, as described under Section 4.16, (II)(A) the annual reports on assessment of compliance with Servicing Criteria for each Servicer, the Master Servicer, each subservicer and subcontractor participating in the servicing function, the

89

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL

MSM_MSSTI_20071_0001582

Securities Administrator and the related Custodian, as described under Section 4.17, and (B) if any such report on assessment of compliance with Servicing Criteria described under Section 4.17 identifies any material instance of noncompliance, disclosure identifying such instance of noncompliance, or if any such report on assessment of compliance with Servicing Criteria described under Section 4.17 is not included as an exhibit to such Form 10-K, disclosure that such report is not included and an explanation why such report is not included, (III)(A) the registered public accounting firm attestation report for each Servicer, the Master Servicer, the Securities Administrator, each subservicer, each subcontractor, as applicable, and the related Custodian, as described under Section 4.17, and (B) if any registered public accounting firm attestation report described under Section 4.17 identifies any material instance of noncompliance, disclosure identifying such instance of noncompliance, or if any such registered public accounting firm attestation report is not included as an exhibit to such Form 10-K, disclosure that such report is not included and an explanation why such report is not included, and (IV) a Sarbanes-Oxley Certification as described in Section 4.18(a)(iii)(D) below (provided, however, that the Securities Administrator, at its discretion, may omit from the Form 10-K any annual compliance statement, assessment of compliance or attestation report that is not required to be filed with such Form 10-K pursuant to Regulation AB). Any disclosure or information in addition to (I) through (IV) above that is required to be included on Form 10-K ("Additional Form 10-K Disclosure") shall be reported by the parties set forth on Exhibit O to the Securities Administrator and the Depositor and, pursuant to the paragraph immediately below, approved for inclusion by the Depositor, and the Securities Administrator will have no duty or liability for any failure hereunder to determine or prepare any Additional Form 10-K Disclosure absent such reporting (other than in the case where the Securities Administrator is the reporting party as set forth in Exhibit O) and approval.

(B)     No later than March 15th of each year that the Trust is subject to the Exchange Act reporting requirements, commencing in 2008, (i) the parties set forth in Exhibit O shall be required to provide, and the Master Servicer shall enforce the obligation of each Servicer (to the extent provided in the related Servicing Agreement) to provide, pursuant to Section 4.18(a)(iv) below to the Securities Administrator and the Depositor, to the extent known by a responsible officer thereof, in EDGAR-compatible format, or in such other format as otherwise agreed upon by the Securities Administrator and the Depositor and such party, the form and substance of any Additional Form 10-K Disclosure, if applicable, and (ii) the Depositor will approve, as to form and substance, or disapprove, as the case may be, the inclusion of the Additional Form 10-K Disclosure on Form 10-K. The Depositor shall be responsible for any reasonable fees and expenses assessed or incurred by the Securities Administrator in connection with including any Additional Form 10-K Disclosure on Form 10-K pursuant to this Section.

(C)     After preparing the Form 10-K, the Securities Administrator shall forward electronically a copy of the Form 10-K to the Depositor (only in the case where such Form 10-K includes Additional Form 10-K Disclosure and otherwise if requested by the Depositor) and the Master Servicer for review. Within three Business Days after receipt of such copy, but no later than March 25th (provided that, the Securities Administrator forwards a copy of the Form 10-K no later than the third Business Day prior to March 25th), the Depositor shall notify the Securities Administrator in writing (which may be furnished electronically) of any changes to or

90

[TPW: NYLEGAL:691857.8] 17297-00533   11/15/2007 06:00 PM

CONFIDENTIAL

MSM_MSSTI_20071_0001583

approval of such Form 10-K.  In the absence of receipt of any written changes or approval, the Securities Administrator shall be entitled to assume that such Form 10-K is in final form and the Securities Administrator may proceed with the execution and filing of the Form 10-K.  No later than the close of business Eastern Standard time on the 4th Business Day prior to the 10-K Filing Deadline, an officer of the Master Servicer in charge of the master servicing function shall sign the Form 10-K and, in the case where the Master Servicer and the Securities Administrator are unaffiliated, return an electronic or fax copy of such signed Form 10-K (with an original executed hard copy to follow by overnight mail) to the Securities Administrator.  If a Form 10-K cannot be filed on time or if a previously filed Form 10-K needs to be amended, the Securities Administrator will follow the procedures set forth in Section 4.18(a)(vi)(B).  Promptly (but no later than one (1) Business Day) after filing with the Commission, the Securities Administrator shall make available on its internet website a final executed copy of each Form 10-K filed by the Securities Administrator.  The signing party at the Master Servicer can be contacted as set forth in Section 12.05.  Form 10-K requires the registrant to indicate (by checking "yes" or "no") that it (1) has filed all reports required to be filed by Section 13 or 15(d) of the Exchange Act during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.  The Depositor shall notify the Securities Administrator in writing, no later than March 15th of each year in which the Trust is subject to the requirements of the Exchange Act with respect to the filing of a report on Form 10-K, if the answer to the questions should be "no".  The Securities Administrator shall be entitled to rely on the representations in Section 2.04(vi) and in any such notice in preparing, executing and/or filing any such report.  The parties to this Agreement acknowledge that the performance by the Master Servicer and the Securities Administrator of their respective duties under Sections 4.18(a)(iv) and (v) related to the timely preparation, execution and filing of Form 10-K is contingent upon such parties strictly observing all applicable deadlines in the performance of their duties under such Sections and Sections 4.16 and Section 4.17.  Neither the Master Servicer nor the Securities Administrator shall have any liability for any loss, expense, damage, claim arising out of or with respect to any failure to properly prepare, execute and/or timely file such Form 10-K, where such failure results from the failure of any party hereto to deliver on a timely basis, any information needed to prepare, arrange for execution or file such Form 10-K.

(D)    Each Form 10-K shall include a certification (the "Sarbanes-Oxley Certification") required to be included therewith pursuant to the Sarbanes-Oxley Act which shall be signed by the Certifying Person and delivered to the Securities Administrator no later than March 15th of each year in which the Trust is subject to the reporting requirements of the Exchange Act.  The Master Servicer shall cause any Servicer, and any subservicer or subcontractor engaged by it to, provide to the Person who signs the Sarbanes-Oxley Certification (the "Certifying Person"), by March 10th of each year in which the Trust is subject to the reporting requirements of the Exchange Act (or such other date specified in the related Servicing Agreement) and otherwise within a reasonable period of time upon request, a certification (each, a "Back-Up Certification"), in the form attached hereto as Exhibit K, upon which the Certifying Person, the entity for which the Certifying Person acts as an officer, and such entity's officers, directors and Affiliates (collectively with the Certifying Person, "Certification Parties") can reasonably rely.  In addition, in the case where the Master Servicer and Securities Administrator are not affiliated, the Securities Administrator shall sign a Back-Up Certification substantially in the form of Exhibit V; provided, however, that Securities Administrator shall not be required to

91

CONFIDENTIAL

undertake an analysis of any accountant's report attached as an exhibit to the Form 10-K. An officer of the Master Servicer in charge of the master servicing function shall serve as the Certifying Person on behalf of the Trust. Such officer of the Certifying Person can be contacted as set forth in Section 12.05.

                  (iv)      With respect to any Additional Form 10-D Disclosure, Additional Form 10-K Disclosure or any Form 8-K Disclosure Information (collectively, the "Additional Disclosure") relating to the Trust Fund, the Securities Administrator's obligation to include such Additional Information in the applicable Exchange Act report is subject to receipt from the entity that is indicated in Exhibit O as the responsible party for providing that information, if other than the Securities Administrator, as and when required as described in Section 4.18(a)(i) through (iii) above. Such Additional Disclosure shall be accompanied by a notice substantially in the form of Exhibit P. The Master Servicer, the Seller, the Securities Administrator and the Depositor hereby agrees to notify and provide, and the Master Servicer shall enforce the obligation (to the extent provided in the related Servicing Agreement) of each Servicer to notify and provide, the Master Servicer, the Seller, the Securities Administrator and the Depositor all Additional Disclosure relating to the Trust Fund, with respect to which such party is indicated in Exhibit O as the responsible party for providing that information. If the Significance Percentage meets either of the threshold levels detailed in Item 1115(b)(1) or 1115(b)(2) of Regulation AB, the Securities Administrator shall deliver written notification to the Depositor, the Yield Maintenance Agreement Provider and the Swap Provider to that effect. The Securities Administrator shall request from the Depositor and the Depositor shall deliver to the Securities Administrator any information that the Swap Provider delivered to the Depositor as required under Regulation AB, to the extent required under the Swap Agreement. The Depositor shall be obligated to provide to the Securities Administrator (no later than, in the case of Form 10-D, the seventh calendar day after the Distribution Date and in the case of Form 10-K, March 15th in any year in which a Form 10-K is filed for the Trust) any information that may be required to be included in any Form 10-D, Form 8-K or Form 10-K or written notification instructing the Securities Administrator that such Additional Disclosure regarding the Swap Provider or Yield Maintenance Agreement Provider is not necessary for such Distribution Date. The Depositor shall be responsible for any reasonable fees and expenses assessed or incurred by the Securities Administrator in connection with including any Additional Disclosure information pursuant to this Section.

      So long as the Depositor is subject to the filing requirements of the Exchange Act with respect to the Trust Fund, the Trustee shall notify the Securities Administrator and the Depositor of any bankruptcy or receivership with respect to the Trustee or of any proceedings of the type described under Item 1117 of Regulation AB that have occurred as of the related Due Period, together with a description thereof, no later than the date on which such information is required of other parties hereto as set forth under this Section 4.18. In addition, the Trustee shall notify the Securities Administrator and the Depositor of any affiliations or relationships that develop after the Closing Date between the Trustee and the Depositor, the Seller, the Securities Administrator, the Master Servicer or the related Custodian of the type described under Item 1119 of Regulation AB, together with a description thereof, no later than March 15 of each year that the trust is subject to the Exchange Act reporting requirements, commencing in 2008.

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL

MSM_MSSTI_20071_0001585

Should the identification of any of the Depositor, the Seller, the Securities Administrator, the Master Servicer or the related Custodian change, the Depositor shall promptly notify the Trustee.

(v)    (A) On or prior to January 30th of the first year in which the Securities Administrator is able to do so under applicable law, the Securities Administrator shall prepare and file a Form 15 relating to the automatic suspension of reporting in respect of the Trust under the Exchange Act.

(B)    In the event that the Securities Administrator is unable to timely file with the Commission all or any required portion of any Form 8-K, 10-D or 10-K required to be filed by this Agreement because required disclosure information was either not delivered to it or delivered to it after the delivery deadlines set forth in this Agreement or for any other reason, the Securities Administrator shall promptly notify the Depositor and the Master Servicer. In the case of Form 10-D and 10-K, the Depositor, the Master Servicer and the Securities Administrator shall cooperate to prepare and file a Form 12b-25 and a 10-DA and 10-KA as applicable, pursuant to Rule 12b-25 of the Exchange Act. In the case of Form 8-K, the Securities Administrator will, upon receipt of all required Form 8-K Disclosure Information and upon the approval and direction of the Depositor, include such disclosure information on the next Form 10-D. In the event that any previously filed Form 8-K, 10-D or 10-K needs to be amended, and such amendment relates to any Additional Disclosure, the Securities Administrator shall notify the Depositor and the parties affected thereby and such parties will cooperate to prepare any necessary Form 8-K, 10-DA or 10-KA. Any Form 15, Form 12b-25 or any amendment to Form 8-K, 10-D or 10-K shall be signed by an appropriate officer of the Master Servicer. The parties hereto acknowledge that the performance by the Master Servicer and the Securities Administrator of their respective duties under this Section 4.18(a)(v) related to the timely preparation, execution and filing of Form 15, a Form 12b-25 or any amendment to Form 8-K, 10-D or 10-K is contingent upon the Master Servicer and the Depositor timely performing their duties under this Section. Neither the Master Servicer nor the Securities Administrator shall have any liability for any loss, expense, damage, claim arising out of or with respect to any failure to properly prepare, execute and/or timely file any such Form 15, Form 12b-25 or any amendments to Form 8-K, 10-D or 10-K, where such failure results from a party's failure to deliver, on a timely basis, any information from such party needed to prepare, arrange for execution or file such Form 15, Form 12b-25 or any amendments to Form 8-K, 10-D or 10-K.

The Depositor agrees to promptly furnish to the Securities Administrator, from time to time upon request, such further information, reports and financial statements within its control related to this Agreement, the Mortgage Loans as the Securities Administrator reasonably deems appropriate to prepare and file all necessary reports with the Commission. The Securities Administrator shall have no responsibility to file any items other than those specified in this Section 4.18; provided, however, the Securities Administrator shall cooperate with the Depositor in connection with any additional filings with respect to the Trust Fund as the Depositor deems necessary under the Exchange Act. Fees and expenses incurred by the Securities Administrator in connection with this Section 4.18 shall not be reimbursable from the Trust Fund.

(b)    The Securities Administrator shall indemnify and hold harmless the Depositor and the Master Servicer and each of its officers, directors and affiliates from and against any losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments and other costs and expenses arising out of or based upon a breach of

93

[TPW: NYLEGAL:691857.8] 17297-00533 11/15/2007 06:00 PM

the Securities Administrator's obligations under Sections 4.16, 4.17 and 4.18 or the Securities Administrator's negligence, bad faith or willful misconduct in connection therewith. In addition, the Securities Administrator shall indemnify and hold harmless the Depositor and the Master Servicer and each of their respective officers, directors and affiliates from and against any losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments and other costs and expenses arising out of or based upon (i) any untrue statement or alleged untrue statement of any material fact contained in any Back-Up Certification, any Annual Statement of Compliance, any Assessment of Compliance or any Additional Disclosure provided by the Securities Administrator on its behalf or on behalf of any subservicer or subcontractor engaged by the Securities Administrator pursuant to Section 4.16, 4.17 or 4.18 (the "Securities Administrator Information"), or (ii) any omission or alleged omission to state therein a material fact required to be stated therein or necessary to make the statements therein, in light of the circumstances in which they were made, not misleading; provided, by way of clarification, that this paragraph shall be construed solely by reference to the Securities Administrator Information and not to any other information communicated in connection with the Certificates, without regard to whether the Securities Administrator Information or any portion thereof is presented together with or separately from such other information.

The Depositor shall indemnify and hold harmless the Securities Administrator and the Master Servicer and each of its officers, directors and affiliates from and against any losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments and other costs and expenses arising out of or based upon a breach of the obligations of the Depositor under Sections 4.16, 4.17 and 4.18 or the Depositor's negligence, bad faith or willful misconduct in connection therewith. In addition, the Depositor shall indemnify and hold harmless the Master Servicer, the Securities Administrator and each of their respective officers, directors and affiliates from and against any losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments and other costs and expenses arising out of or based upon (i) any untrue statement or alleged untrue statement of any material fact contained in any Additional Disclosure provided by the Depositor that is required to be filed pursuant to this Section 4.18 (the "Depositor Information"), or (ii) any omission or alleged omission to state therein a material fact required to be stated therein or necessary to make the statements therein, in light of the circumstances in which they were made, not misleading; provided, by way of clarification, that this paragraph shall be construed solely by reference to the Depositor Information that is required to be filed and not to any other information communicated in connection with the Certificates, without regard to whether the Depositor Information or any portion thereof is presented together with or separately from such other information.

The Master Servicer shall indemnify and hold harmless the Securities Administrator and the Depositor and each of its respective officers, directors and affiliates from and against any losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments and other costs and expenses arising out of or based upon a breach of the obligations of the Master Servicer under Sections 4.16, 4.17 and 4.18 or the Master Servicer's negligence, bad faith or willful misconduct in connection therewith. In addition, the Master Servicer shall indemnify and hold harmless the Depositor and each of its officers, directors and affiliates from and against any losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments and other costs and expenses arising out of or based upon (i) any untrue statement or alleged untrue statement of any material fact contained in

94

[TPW: NYLEGAL:691857.8] 17297-00533  11/15/2007 06:00 PM

CONFIDENTIAL

MSM_MSSTI_20071_0001587

any Annual Statement of Compliance, any Assessment of Compliance or any Additional Disclosure provided by the Master Servicer on its behalf or on behalf of any subservicer or subcontractor engaged by the Master Servicer pursuant to Section 4.16, 4.17 or 4.18 (the "Master Servicer Information"), or (ii) any omission or alleged omission to state therein a material fact required to be stated therein or necessary to make the statements therein, in light of the circumstances in which they were made, not misleading; provided, by way of clarification, that this paragraph shall be construed solely by reference to the Master Servicer Information and not to any other information communicated in connection with the Certificates, without regard to whether the Master Servicer Information or any portion thereof is presented together with or separately from such other information.

If the indemnification provided for herein is unavailable or insufficient to hold harmless the Depositor, the Securities Administrator or the Master Servicer, as applicable, then the defaulting party, in connection with any conduct for which it is providing indemnification under this Section 4.18(b), agrees that it shall contribute to the amount paid or payable by the other parties as a result of the losses, claims, damages or liabilities of the other party in such proportion as is appropriate to reflect the relative fault and the relative benefit of the respective parties.

The indemnification provisions set forth in this Section 4.18(b) shall survive the termination of this Agreement or the termination of any party to this Agreement.

Failure of the Master Servicer to comply with this Section 4.18 (including with respect to the timeframes required herein) shall, constitute an Event of Default, and at the written direction of the Depositor the Trustee shall, in addition to whatever rights the Trustee may have under this Agreement and at law or equity or to damages, including injunctive relief and specific performance, upon notice immediately terminate all of the rights and obligations of the Master Servicer under this Agreement and in and to the Mortgage Loans and the proceeds thereof without compensating the Master Servicer for the same (but subject to the Master Servicer rights to payment of any Master Servicing Compensation and reimbursement of all amounts for which it is entitled to be reimbursed prior to the date of termination). Failure of the Securities Administrator to comply with this Section 4.18 (including with respect to the timeframes required in this Section) which failure results in a failure to timely file the related Form 10-K, shall, constitute a default and at the written direction of the Depositor the Trustee shall, in addition to whatever rights the Trustee may have under this Agreement and at law or equity or to damages, including injunctive relief and specific performance, upon notice immediately terminate all of the rights and obligations of the Securities Administrator under this Agreement and in and to the Mortgage Loans and the proceeds thereof without compensating the Securities Administrator for the same (but subject to the Securities Administrator's right to reimbursement of all amounts for which it is entitled to be reimbursed prior to the date of termination). This paragraph shall supersede any other provision in this Agreement or any other agreement to the contrary. In connection with the termination of the Master Servicer or the Securities Administrator pursuant to this Section 4.18(d), the Trustee shall be entitled to reimbursement of all costs and expenses associated with such termination to the extent set forth in Section 10.05. Notwithstanding anything to the contrary in this Agreement, no Event of Default by the Master Servicer or default by the Securities Administrator shall have occurred with respect to any failure to properly prepare, execute and/or timely file any report on Form 8-K, Form 10-D or Form 10-K, any Form 15 or Form 12b-25 or any amendments to Form 8-K, 10-D or 10-K, where such

95

CONFIDENTIAL