**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                     :

DEUTSCHE BANK NATIONAL TRUST    :
COMPANY, solely in its capacity as Trustee    :
for the MORGAN STANLEY    :
STRUCTURED TRUST I 2007-1,    :
                     :
               Plaintiff,    :    No. 14 Civ. 3020 (KBF)
           - against -    :
                     :
MORGAN STANLEY MORTGAGE    :
CAPITAL HOLDINGS LLC, as Successor-    :
by-Merger to MORGAN STANLEY    :
MORTGAGE CAPITAL INC.,    :
                     :
               Defendant.    :
                     :
                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC'S**
**MOTION FOR JUDGMENT ON THE PLEADINGS AND**
**<u>RENEWED MOTION FOR SUMMARY JUDGMENT</u>**

 

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

Attorneys for Defendant Morgan Stanley
Mortgage Capital Holdings LLC

**TABLE OF CONTENTS**

PAGE

TABLE OF AUTHORITIES .................................................................................................................. ii

I.  THE COURT LACKS SUBJECT MATTER JURISDICTION ............................................. 1

II. THIS CASE IS UNTIMELY UNDER <u>DEUTSCHE BANK</u> ................................................... 5

**TABLE OF AUTHORITIES**

C<small>ASES</small>

ACE Sec. Corp. v. DB Structured Prods., Inc.,
25 N.Y.3d 581 (2015) ................................................................................................................ 9

Affordable Hous. Assocs., Inc. v. Town of Brookhaven,
150 A.D.3d 800 (1st Dep't 2017) ............................................................................................ 10

Americold Realty Tr. v. Conagra Foods, Inc.,
136 S. Ct. 1012 (2016) .............................................................................................................. 1

April Enters., Inc. v. KTTV,
195 Cal. Rptr. 421 (Ct. App. 1983) .......................................................................................... 9

Aryeh v. Canon Bus. Solutions, Inc.,
292 P.3d 871 (Cal. 2013) ......................................................................................................... 10

Bell v. HSBC Bank USA, N.A.,
No. 13 Civ. 51, 2013 WL 12308090 (M.D. Ga. June 13, 2013) ............................................... 4

Betar v. De Havilland Aircraft of Canada,
603 F.2d 30 (7th Cir. 1979) ....................................................................................................... 4

Bynane v. Bank of N.Y. Mellon,
866 F.3d 351 (5th Cir. 2017) ..................................................................................................... 5

Caribbean Wholesales & Serv. Corp. v. U.S. JVC Corp.,
101 F. Supp. 2d 236 (S.D.N.Y. 2000), aff'd, 24 F. App'x 16 (2d Cir. 2001).......................... 9

Deutsche Bank Nat'l Tr. Co. v. Barclays Bank PLC,
156 A.D.3d 401 (1st Dep't 2017) ................................................................... 6, 7, 8, 9, 10

Deutsche Bank Nat. Tr. Co. v. Quicken Loans Inc.,
810 F.3d 861 (2d Cir. 2015)..................................................................................................... 10

Farmington Vill. Corp. v. Pillsbury,
114 U.S. 138 (1885).................................................................................................................... 4

Ferrara v. Phila. Labs., Inc.,
272 F. Supp. 1000 (D. Vt. 1967), aff'd, 393 F.2d 934 (2d Cir. 1968).................................... 4

Glob. Fin. Corp. v. Triarc Corp.,
93 N.Y.2d 525 (1999) ............................................................................................................. 6, 8

ii

Goodwin v. Solil Mgmt. LLC,
     No. 10 Civ. 5546, 2012 WL 1883473 (S.D.N.Y. May 22, 2012)..............................................3

Lembcke v. United States,
     181 F.2d 703 (2d Cir. 1950)..............................................8

Navarro Sav. Ass'n v. Lee,
     446 U.S. 458 (1980).............................................. 1, 2, 3

NBCUniversal Media, LLC v. Superior Court,
     171 Cal. Rptr. 3d 1 (Ct. App. 2014).............................................. 9

Neel v. Magana, Olney, Levy, Cathcart & Gelfand,
     491 P.2d 421 (Cal. 1971) .............................................. 9

Oscar Gruss & Son, Inc. v. Hollander,
     337 F.3d 186 (2d Cir. 2003).............................................. 5

Portfolio Recovery Assocs. LLC v. King,
     14 N.Y.3d 410 (2010) .............................................. 8

Raymond Loubier Irrevocable Tr. v. Loubier,
     858 F.3d 719 (2d Cir. 2017).............................................. 1

Rogers v. Grimaldi,
     875 F.2d 994 (2d Cir. 1989).............................................. 8

Stafford v. Oil Tool Corp.,
     284 P.2d 937 (Cal. Ct. App. 1955) .............................................. 9

Toney-Dick v. Doar,
     No. 12 Civ. 9162, 2013 WL 1314954 (S.D.N.Y. Mar. 18, 2013) .............................................. 2

U.S. Bank Nat'l Ass'n v. Coop. Dist. of City of Spanish Fort,
     No. 11 Civ. 0401, 2011 WL 4499309 (S.D. Ala. Sept. 29, 2011).............................................. 1, 4

U.S. Bank Nat'l Ass'n v. Nesbitt Bellevue Property LLC,
     859 F. Supp. 2d 602 (S.D.N.Y. 2012).............................................. 5

Villante v. VanDyke,
     93 F. App'x 307 (2d Cir. 2004) .............................................. 10

Wells Fargo Bank, N.A. v. Konover Dev. Corp.,
     630 F. App'x 46 (2d Cir 2015) .............................................. 5

iii

PAGE(S)

OTHER AUTHORITIES

3 Witkin, Cal. Proc. 5th Actions § 533 (2008) ............................................................................. 9

I.      THE COURT LACKS SUBJECT MATTER JURISDICTION

DBNTC[1] purportedly relies on "two hundred years of precedent" (Opp'n at 3), but it asks

the Court to ignore binding precedent from the past *two years* (id. at 4-5).  Recently, the Second

Circuit stated that "diversity analysis" does not "turn[] upon whether the trusts or trustees are the

named part[ies]."  Raymond Loubier Irrevocable Tr. v. Loubier, 858 F.3d 719, 731 (2d Cir.

2017).  If it did, a plaintiff could seek to "create or defeat diversity jurisdiction . . . depending on

whether [a complaint] identified a trust or its trustee as a party to the action."  Id.  DBNTC

insists that Loubier applies only when the named party is a trust.  (Opp'n at 5.)  In other words,

DBNTC contends that "diversity analysis" should "turn[] upon whether the trusts or trustees are

the named part[ies]"—which is exactly the formalistic reasoning that Loubier rejected.

In Navarro, the Supreme Court held that the citizenship of the beneficiaries of the

business trust in that case need not be considered for purposes of diversity, but as it recently

explained in Americold, this was an application of the rule for *traditional* trusts, in which the

trustee exercised *complete control* over the litigation and managed it without interference from

the beneficiaries.  See Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 465-66 (1980); cf. Americold

Realty Tr. v. Conagra Foods, Inc., 136 S. Ct. 1012, 1016 (2016).  Navarro did not even purport

to create a *per se* rule that the citizenship of all trust beneficiaries should be ignored whenever

any trustee is named in the caption.  See U.S. Bank Nat'l Ass'n v. Coop. Dist. of City of Spanish

Fort, No. 11 Civ. 0401, 2011 WL 4499309, at *4 (S.D. Ala. Sept. 29, 2011) ("Spanish Fort")

(describing that interpretation as a "selective, unreasonably crabbed reading of Navarro,

effectively blue-penciling large chunks of analysis and holding to skew its meaning").

Indeed, DBNTC admits that the Supreme Court relied on the fact that the beneficiaries in

---

[1] Defined terms have the meaning assigned in Morgan Stanley's opening memorandum of law (Dkt. 153) ("MS Br.").  DBNTC's memorandum of law in opposition (Dkt. 164) is referred to as "Opp'n."

<u>Navarro</u>, like the beneficiaries in a traditional trust, could not "'control the disposition of th[e] action.'" (Opp'n at 5-6 (citation omitted).)  Yet, DBNTC never claims it is exercising exclusive control over this litigation, nor does it deny that it is acting at the direction of a certificateholder.  Instead, DBNTC hides behind the selective and self-serving allegations it chose to include in the complaint, which is insufficient to satisfy its burden of establishing subject matter jurisdiction.  See <u>Toney-Dick v. Doar</u>, No. 12 Civ. 9162, 2013 WL 1314954, at *5 (S.D.N.Y. Mar. 18, 2013) (plaintiff must demonstrate facts that "affirmatively and plausibly" establish jurisdiction).

It is not plausible that DBNTC filed this action out of a fiduciary duty owed to the trust, rather than at the direction of a certificateholder.  In DBNTC's own words, an RMBS trust is a "different legal animal" than a traditional trust, in part because it has no fiduciary duty to enforce repurchase obligations.  (MS Br. at 7 (quoting <u>Blackrock</u> Joint Mem. at 3-4).)  In fact, DBNTC has argued that the parties bargained for an "*investor-driven* process" in which investors "direct the RMBS trustee's remedial efforts." (<u>Id.</u> at 8 (quoting <u>Blackrock</u> Joint Mem. at 1-2).)  Without acknowledging these prior admissions, DBNTC argues that investors lack the power to "intervene in the affairs of the Trust 'except in the most extraordinary situations.'" (Opp'n at 7 (quoting <u>Navarro</u>, 446 U.S. at 465).)  This misrepresents both the contract and reality.

DBNTC points to Section 12.08 of the PSA (Opp'n at 7), which limits the certificateholders' ability to directly file suit on behalf of the trust, but omits that under other sections, "only investors *themselves* may affirmatively trigger any obligation of the RMBS trustee to initiate investigations or enforcement proceedings" (<u>Blackrock</u> Joint Mem. at 5 (citing provision materially identical to PSA §10.02(a)(iii))).  Indeed, RMBS investors routinely exercise this power.  For example, in "almost all of the Putback cases" pending in the New York Supreme Court (which include many filed by DBNTC), "the plaintiff-trustee is pursuing the

action at the 'direction' of a certificateholder, in accordance with the terms of the applicable . . .

governing documents." (MS Br. at 9.) DBNTC itself has "repeatedly stated" in other repurchase

litigation that it "is acting solely as a Trustee, and at the direction of certain Certificateholders."

(Id.) Because DBNTC can be compelled by certificateholders to act in its own name, it is

nothing like the trustees in Navarro, who operated "free from any power and control" of the

beneficiaries. 446 U.S. at 459.

DBNTC does not deny Morgan Stanley's contention that *in this case* it is acting "at the

direction of certain Certificateholders" who can "control the disposition of this action." (Opp'n

at 9.) Instead, it skirts the issue, claiming Morgan Stanley has "no support" for this contention

because the complaint only alleges certificateholders directed the "pre-suit investigation and

notice." (Id.) But DBNTC has the burden of establishing jurisdiction, and the Court's inquiry is

not confined to DBNTC's incomplete allegations. See Goodwin v. Solil Mgmt. LLC, No. 10

Civ. 5546, 2012 WL 1883473, at *4 (S.D.N.Y. May 22, 2012). DBNTC has argued that

enforcement of repurchase rights is entirely "investor-driven" (MS Br. at 8), it has admitted in

other repurchase cases that it was acting at the direction of a certificateholder (id. at 9), and its

complaint is based entirely on the certificateholders' "pre-suit investigation" (Compl. ¶¶ 3, 44-

69). If there were any doubt whether certificateholders were directing this litigation, it was put

to rest by DBNTC's brief. If DBNTC was in control of this litigation, it would have said so.

DBNTC offers scant support for its position that its citizenship controls even if it is

acting at the direction of a certificateholder. Navarro does not support this conclusion, let alone

resolve "this precise issue," as DBNTC suggests. (Opp'n at 3.) In Navarro, the beneficiaries

could not "control the disposition of th[at] action." 446 U.S. at 465-66. They could only

conceivably impact the litigation by "elect[ing] and remov[ing] trustees," "terminat[ing] the

trust," or "amend[ing] the [governing document]." Id. at 465 n.14.  By contrast, a MSST

certificateholder need only make a "request" and provide an indemnity.  (PSA § 10.02(a)(iii).)

Nor is it enough under Navarro that the trustee have "all right, title, and interest" in the

trust assets because, as DBNTC admits, "Navarro focused on the trustee's *authority* to take

certain actions (*and the absence of such authority for the beneficiaries*)." (Opp'n at 8 (emphasis

in original and added).)  Here, while the trustee may have the *authority* to pursue repurchase

remedies, it specifically bargained for an arrangement in which "the onus of taking action" was

placed "*on investors*" to direct the trustee's exercise of that authority.  (Blackrock Joint Mem. at

2.)  In such a situation, the citizenship of the certificateholders must be considered.  See Spanish

Fort, 2011 WL 4499309, at *6 (dismissing case for lack of subject matter jurisdiction because

trustee did not act "except as affirmatively directed by the certificate holders"); Bell v. HSBC

Bank USA, N.A., No. 13 Civ. 51, 2013 WL 12308090, at *2 (M.D. Ga. June 13, 2013)

(remanding to state court for lack of subject matter jurisdiction because trustee failed "to

establish it was the real party in the controversy"); Ferrara v. Philadelphia Labs., Inc., 272 F.

Supp. 1000, 1009-10 (D. Vt. 1967) (no diversity jurisdiction, despite assignment of "all the title

and interest," where non-diverse assignor "intended to keep the control of the whole matter")

(citing Farmington Vill. Corp. v. Pillsbury, 114 U.S. 138, 146 (1885)), aff'd, 393 F.2d 934 (2d

Cir. 1968); see also Betar v. De Havilland Aircraft of Canada, 603 F.2d 30, 35 (7th Cir. 1979)

(looking to beneficiaries' citizenship in light of limited "duties of the[ir] personal

representative," despite no evidence that the representative was appointed to create diversity).

DBNTC does not cite any case where a party argued that an RMBS trustee was acting at

the direction of certificateholders.  For example, Wells Fargo Bank, N.A. v. Konover

Development Corp., which pre-dated Americold and Loubier, only considered whether the

appointment of a loan servicer impacted diversity, 630 F. App'x 46, 49 (2d Cir 2015), and did not address an argument that anyone was directing the trustee, let alone "the same argument Morgan Stanley makes here" (Opp'n at 7).  Bynane v. Bank of New York Mellon involved litigation *against* a trustee, which the certificateholders obviously did not compel.  866 F.3d 351, 357 (5th Cir. 2017).  And the foreclosure cases cited by DBNTC have no bearing on this issue because the certificateholders have no role in those cases.  See MS Br. at 8-9 n.6; see also U.S. Bank Nat'l Ass'n v. Nesbitt Bellevue Property LLC, 859 F. Supp. 2d 602, 609 (S.D.N.Y. 2012) (citing Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 195 (2d Cir. 2003) (looking only to citizenship of trustee because it was "the *master of the litigation*" (emphasis in original)).  Morgan Stanley's argument has thus never been rejected, let alone "repeatedly."  (Opp'n at 9.)[2]

DBNTC similarly elides over the distinction between trustee- and certificateholder-driven suits when it claims that "[t]he arguments that Morgan Stanley makes could be directed at virtually any RMBS trustee."  (Id.)  DBNTC does not and cannot explain why it would be problematic for certificateholder-driven suits to proceed in state court, along with the dozens of others that trustees like DBNTC have filed in state court at the direction of certificateholders.

## II.   THIS CASE IS UNTIMELY UNDER DEUTSCHE BANK

After Morgan Stanley filed this motion, Justice Friedman stayed two of DBNTC's cases based on defendants' contentions that they were subject to immediate dismissal under Deutsche Bank.  (See Weinstein Supp. Decl. Ex. H (order granting stay); Weinstein Supp. Decl. Ex. I (stipulation and order).)  This case is no different.

Deutsche Bank requires the application of California's four-year statute of limitations.

---

[2] The only repurchase case that DBNTC cites is Judge Castel's decision in U.S. Bank, which it cites in a string cite in a footnote. (Opp'n at 8 n.3.)  There, post-trial, the parties both argued that the court had jurisdiction, and they did not brief, and the court did not consider, the role of certificateholders in the litigation. (MS Br. at 12.) Judge Castel concluded U.S. Bank was the "master of the litigation," which DBNTC does not claim to be here. (Id.)

DBNTC cannot dispute that California would be deemed the place of injury under the default "plaintiff-residence rule." <u>See</u> <u>Deutsche Bank Nat'l Trust Co. v. Barclays Bank PLC</u>, 156 A.D.3d 401, 402 (1st Dep't 2017) (citing <u>Global Fin. Corp. v. Triarc Corp.</u>, 93 N.Y.2d 525, 529-30 (1999)).  Instead, it implausibly argues that this rule never applies if the plaintiff is a trustee. If this were the law in New York, the First Department would have said so in <u>Deutsche Bank</u>, rather than presuming that the plaintiff-residence rule controlled.

In any event, California is where MSST suffered injury even under the multi-factor test that <u>Deutsche Bank</u> considered at DBNTC's request.  <u>See</u> <u>id.</u> at 402 (noting that "Plaintiff, a California domiciliary, argues that the plaintiff-residence rule . . .  should not be applied here," but declining to decide the issue because, "even under the multi-factor test," injury was still felt in California).  DBNTC quibbles with whether these factors point *exclusively* to California, but that is not the relevant question.  For instance, in <u>Deutsche Bank National Trust Co. v. EquiFirst Corp.</u>, No. 651957/2013 (Sup. Ct. N.Y. Cty.), Justice Friedman—who was appointed to preside over RMBS cases in the Commercial Division—entered a stay over DBNTC's objection even though all of the loans were originated by a *North Carolina*-based lender and the mortgage notes were maintained in *Texas*.  (See Weinstein Supp. Decl. Ex. H (granting stay); EQLS 2007-1 Prospectus Supplement at S-7 (Weinstein Supp. Decl. Ex. J); EQLS 2007-1 Pooling & Servicing Agreement § 2.02 (Weinstein Supp. Decl. Ex. K).)  Here, DBNTC does not dispute that *each* <u>Deutsche Bank</u> factor points to California to some degree (except for where taxes are paid, which points nowhere) and does not argue that *any* points to New York.

Instead, it relies on an inaccurate recitation of the record.  First, DBNTC claims there is a dispute of fact regarding the place of trust administration (Pl.'s 56.1 Resp. ¶ 48), but it is undisputed that California is the *principal* place of trust administration (Opp'n at 17).

Next, it argues that, unlike <u>Deutsche Bank</u>, the mortgage loans do not "exclusively . . . or predominantly" encumber California properties.  (Opp'n at 15.)  But the two trusts at issue in <u>Deutsche Bank</u> both contained 32% of California properties by principal balance.  (See HSBC Pro. Supp. at A-16 (Weinstein Supp. Decl. Ex. L); Barclays Pro. Supp. at A-8 (Weinstein Supp. Decl. Ex. M).)  Accordingly, when the court stated that the mortgage loans were "originated by California lenders and encumber[ed] California properties, either exclusively (in the Barclays case) or predominantly (in the HSBC case)," <u>Deutsche Bank</u>, 156 A.D.3d at 402, this must have referred to the percentage of loans "originated by California lenders," and not the percentage "encumbering California properties" (a California-based lender originated all loans in one trust and nearly all in the other).  (See HSBC Pro. Supp. at S-2, S-3 (Weinstein Supp. Decl. Ex. L); Barclays Pro. Supp. at S-9, S-43 (Weinstein Supp. Decl. Ex. M).)  Here, the percentage of California properties (19.94%) is similar to the <u>Deutsche Bank</u> trusts (Defs. Reply 56.1 ¶ 9), and DBNTC admits that roughly half the loans were originated by California-based lenders (Opp'n at 16 (2,096 out of 4,373)).  A Florida-based lender originated nearly all other loans, and a substantial percentage of loans encumber Florida properties (17.88%).  (Def's Reply 56.1 ¶¶ 7-8, 10.)  DBNTC does not dispute that its claims would also be untimely if Florida's five-year statute of limitations applied.  (See MS Br. at 15 n.13.)

Finally, DBNTC attempts to create a dispute about where the mortgage notes are held, while never disputing it holds nearly all of them in California.  (Def's Reply 56.1 ¶¶ 12-14.)  Furthermore, <u>Deutsche Bank</u> does not turn on where the notes are *actually* held, but where the parties contemplated they *may be* held.  The PSA undeniably "*contemplates* that the notes *may* be maintained in California." <u>Deutsche Bank</u>, 156 A.D.3d at 403 & n.4 (emphasis added) (acknowledging that notes for one trust were held in Minnesota); Def's Reply 56.1 ¶ 14.

Unable to identify a single <u>Deutsche Bank</u> factor pointing to New York, DBNTC instead repeats arguments the First Department explicitly rejected as *irrelevant*.  <u>See Deutsche Bank</u>, 156 A.D.3d at 403 n.2 ("that each defendant selected the . . . mortgages to be pooled in the trust at its New York office . . . [is] irrelevant"); <u>id.</u> at 404 n.4 ("the certificates of interest in the trust held by its beneficiaries are irrelevant"); <u>see also</u> <u>Global Financial</u>, 93 N.Y.2d at 528-30 (rejecting reliance on "where the contract was negotiated, executed, substantially performed and breached").  DBNTC also recycles the argument that MSST was organized under and is governed by New York law.  (Opp'n at 14.)  But Justice Friedman relied on these facts and was *reversed* in <u>Deutsche Bank</u>.  <u>See</u> <u>Deutsche Bank Nat'l Tr. Co. v. Barclays Bank PLC</u>, 2015 WL 7625829, at *2 (Sup. Ct. N.Y. Cty. Nov. 25, 2015); <u>Deutsche Bank</u>, 156 A.D.3d at 402 (quoting <u>Portfolio Recovery Assocs. LLC v. King</u>, 14 N.Y.3d 410, 416 (2010)) ("the New York choice-of-law clauses . . . 'cannot be read to encompass th[e New York] limitations period'").[3]

DBNTC also argues that there are disputes of fact about whether its claims are timely under California's statute of limitations.  These arguments all rely on a construction of California law that was rejected in <u>Deutsche Bank</u>.  <u>See</u> <u>Deutsche Bank</u>, 156 A.D.3d at 402-03.  DBNTC invites this Court to ignore the First Department's interpretation, but does not dispute that binding precedent requires this Court to apply it.  <u>See</u> <u>Rogers v. Grimaldi</u>, 875 F.2d 994, 1002-03 & n.10 (2d Cir. 1989); <u>Lembcke v. United States</u>, 181 F.2d 703, 706 (2d Cir. 1950) (noting that "[i]f this were a diversity case . . . we should have to follow the New York conception of the Pennsylvania law," not a Pennsylvania trial court decision); <u>see also</u> MS Br. at 17.

In any event, the First Department's interpretation is consistent with California law.  <u>See</u>

---

[3] DBNTC also apparently relies on Bear Stearns' New York residence as evidence that the mortgage loans must have been in New York on the closing date (Opp'n at 14), but Bear Stearns never had possession of the loans. (Def's Reply 56.1 ¶ 36.)  DBNTC and Wells Fargo Bank had custody of nearly all loans both *before* and *after* closing, with LaSalle Bank holding a de minimis amount before closing.  (<u>See</u> <u>id.</u>; Weinstein Supp. Decl. Ex. N.)

April Enters., Inc. v. KTTV, 195 Cal. Rptr. 421, 432 (Ct. App. 1983) ("The plaintiff's ignorance of the cause of action . . . does not toll the statute.'"). California applies a discovery rule to contract claims only where the defendant controls all of the relevant information and conceals the breach. See id. at 432-33. In Deutsche Bank, the First Department concluded *at the pleadings stage* that DBNTC had full access to the loan files and all other materials necessary to discover the breaches immediately upon closing. See Deutsche Bank, 156 A.D.3d at 404. The same is true here. (See Def's Reply 56.1 ¶¶ 4, 47.) Under Deutsche Bank, DBNTC's contention that it had no *obligation* to look for breaches is irrelevant because it *could have* discovered the alleged breaches at any time. See NBCUniversal Media, LLC v. Superior Court, 171 Cal. Rptr. 3d 1, 10-11 (Ct. App. 2014) (breach discoverable when information was accessible to plaintiffs).

DBNTC also argues that its claims are timely because they did not accrue until it made a repurchase demand, but it ignores the First Department's holding that New York law, and not California law, governs this question. See Deutsche Bank, 156 A.D.3d at 403-04 (citing ACE Sec. Corp. v. DB Structured Prods., Inc., 25 N.Y.3d 581, 597 (2015)). Under binding New York law, the repurchase demand requirement is *not* a substantive element of the claim and therefore does not delay accrual. ACE, 25 N.Y.3d at 597-98; see Neel v. Magana, Olney, Levy, Cathcart & Gelfand, 491 P.2d 421, 428 (Cal. 1971). This is true even if the contract includes an "accrual clause" that purports to delay accrual until after a demand. Deutsche Bank Nat. Tr. Co. v. Quicken Loans Inc., 810 F.3d 861, 867 (2d Cir. 2015). Even if California law did apply and the demand was a substantive requirement that could delay accrual, the demand must be made within the original four-year limitations period, which DBNTC did not do. Stafford v. Oil Tool Corp., 284 P.2d 937, 939 (Cal. Ct. App. 1955); 3 Witkin, Cal. Proc. 5th Actions § 533 (2008).

In addition, DBNTC has failed to demonstrate any genuine dispute of fact regarding the

9

timeliness of its failure to notify claims. As it concedes, "[w]hat matters is whether the evidence would support a finding that Morgan Stanley discovered the breaches . . . within four years of filing the Complaint." (Opp'n at 23.) The only evidence DBNTC cites, however, are three emails dated no later than March 5, 2008. (See Kry Decl. Exs. 22-24.) After extensive discovery, DBNTC cannot identify a single instance where Morgan Stanley discovered a breach within four years of the complaint. The notification claims, too, are therefore untimely.[4]

Finally, DBNTC asks this Court to deny Morgan Stanley's motion on procedural grounds. But a second summary judgment motion is appropriate in light of new, binding, and dispositive precedent. See Caribbean Wholesales & Serv. Corp. v. U.S. JVC Corp., 101 F. Supp. 2d 236, 239-40 (S.D.N.Y. 2000) ("new decision clarifying the applicable substantive law" provided good cause to file second summary judgment motion (internal quotations omitted)), aff'd, 24 F. App'x 16 (2d Cir. 2001); see also Villante v. VanDyke, 93 F. App'x 307, 310 (2d Cir. 2004) (intervening decision on dispositive issue provided good cause to file second summary judgment motion). It would waste the Court's and the parties' resources to proceed to trial on time-barred claims just because the binding decision rendering those claims untimely was issued *after* the deadline for dispositive motions. Morgan Stanley promptly brought Deutsche Bank to this Court's attention. (Dkt. 135.) Nothing in this Court's order (Dkt. 137) precluded Morgan Stanley from seeking relief based on Deutsche Bank, and DBNTC provides no reason why it would be prejudicial to resolve this issue now, rather than after an unnecessary and expensive trial.

---

[4] The continuous breach doctrine (Opp'n at 23 n.10) thus has no bearing here. That doctrine merely provides that if a plaintiff has some timely claims and some untimely claims based on breaches of the same duty, it may litigate the timely claims. See Affordable Hous. Assocs., Inc. v. Town of Brookhaven, 150 A.D.3d 800, 802 (1st Dep't 2017); accord Aryeh v. Canon Bus. Solutions, Inc., 292 P.3d 871, 880-81 (Cal. 2013). It does not restart the limitations period each day that a prior breach is left uncured. See Affordable Hous., 150 A.D.3d at 802.

Dated:    New York, New York          DAVIS POLK & WARDWELL LLP
            February 19, 2018

                                        By:    /s/ Brian S. Weinstein

                                              Brian S. Weinstein
                                              Elisabeth Grippando
                                              Alan J. Tabak
                                              Matthew Cormack
                                              Craig T. Cagney

                                        450 Lexington Avenue
                                        New York, New York 10017
                                        (212) 450-4000
                                        brian.weinstein@davispolk.com
                                        elisabeth.grippando@davispolk.com
                                        alan.tabak@davispolk.com
                                        matthew.cormack@davispolk.com
                                        craig.cagney@davispolk.com

                                        *Attorneys for Defendant*

11