**March 1, 2018**

THIS TRANSMITTAL CONTAINS IMPORTANT INFORMATION THAT IS OF INTEREST TO THE BENEFICIAL OWNERS OF THE SUBJECT CERTIFICATES. IF APPLICABLE, ALL DEPOSITORIES, CUSTODIANS AND OTHER INTERMEDIARIES RECEIVING THIS NOTICE ARE REQUESTED TO EXPEDITE RE-TRANSMITTAL TO SUCH BENEFICIAL OWNERS IN A TIMELY MANNER.

TO CERTIFICATE OWNERS: YOU SHOULD READ THIS NOTICE AND ACCOMPANYING EXHIBIT(S) THOROUGHLY AND CAREFULLY. YOUR RIGHTS MAY BE AFFECTED. PLEASE TAKE NOTE OF THE DEADLINES SET FORTH HEREIN. YOU SHOULD DISCUSS THE INFORMATION HEREIN WITH YOUR ATTORNEY AND/OR OTHER ADVISORS. IF YOU DO NOT HAVE AN ATTORNEY OR ADVISOR, YOU MAY WISH TO ENGAGE ONE. CERTIFICATE OWNERS SHOULD NOT RELY ON THIS NOTICE AS THEIR SOLE SOURCE OF INFORMATION.

## Informational Notice and Request for Direction Regarding Settlement Of Residential Mortgage-Backed Securities Claims

To the Holders of Certain Residential Mortgage Backed Securities Issued By:

**Morgan Stanley Structured Trust I 2007-1 (the "Trust")**
**(Names, Classes and CUSIPS[1] are indicated on Exhibit A hereto)**

| | |
|---|---|
| **Direction Record Date:** | **March 1, 2018** |
| **Direction Deadline:** | **5:00 p.m. EST on April 2, 2018** |

Reference is made to (i) the Mortgage Loan Purchase Agreement (the "MLPA"), dated as of July 6, 2007, among EMC Mortgage Corporation as a Mortgage Loan Seller, Morgan Stanley Mortgage Capital Holdings LLC as a Mortgage Loan Seller, and Bear Stearns Asset Backed Securities I LLC as Purchaser, and (ii) the Pooling and Servicing Agreement ("PSA"), dated as of June 1, 2007, among Bear Stearns Asset Backed Securities I LLC as Depositor (the "Depositor"), Wells Fargo Bank, National Association, as Securities Administrator and Master Servicer, and Deutsche Bank National Trust Company, as Trustee (in such capacity, the "Trustee"), pursuant to which the above-referenced Certificates were issued (collectively, "Governing Agreements"). The Trustee provides the following informational notice and requests direction as set forth below. All terms not defined in this Informational Notice and Request for Direction (this "Notice and Request") shall have the meanings assigned to them in the MLPA, the PSA, and the Settlement Agreement described below, as applicable.

---

[1] CUSIP numbers are included solely for the convenience of the Certificateholders. The Trustee is not responsible for the selection or use of the CUSIP numbers, or for the accuracy of CUSIP numbers printed on the securities or indicated in this notice.

**General Background Regarding Transaction, Litigation and Proposed Settlement**

The Trust was formed to acquire a pool of residential Mortgage Loans from an affiliate of the Depositor, EMC Mortgage Corporation ("EMC"), and the Sponsor, Morgan Stanley Mortgage Capital Holdings, LLC ("MSMCH"). Pursuant to the MLPA, EMC and MSMCH transferred the Mortgage Loans to the Depositor; pursuant to the PSA, the Depositor transferred the Mortgage Loans and its rights under the MLPA to the Trustee on behalf of the Trust. At the inception of the Trust, the majority of the Mortgage Loans were to be serviced by an affiliate of MSMCH, Saxon Mortgage Services, Inc. ("Saxon," and collectively with any parents, subsidiaries or affiliates (including, without limitation MSMCH), "Morgan Stanley").

MSMCH made representations and warranties regarding the quality and characteristics of Mortgage Loans sold by it to the Depositor and agreed to repurchase, cure, or substitute for, Mortgage Loans in breach of such representations and warranties. Additionally, MSMCH agreed to repurchase, cure, or substitute for, Mortgage Loans originated by Accredited Home Lenders, Inc. ("Accredited") for which a breach of a representation and warranty exists in the event that Accredited fails to repurchase, cure or substitute for, such Mortgage Loan. Accredited filed for bankruptcy on May 1, 2009, and was later dissolved.

In 2013, the Trustee received correspondence on behalf of certain Certificate Owners in the Trust (the "Directing Holders") asserting breaches of representations and warranties by MSMCH and Accredited concerning Mortgage Loans in the Trust.

**The Litigation**

To enforce MSMCH's obligations under the MLPA and PSA to repurchase breaching Mortgage Loans, the Trustee, at the direction of the Directing Holders, initiated a lawsuit on behalf of the Trust against MSMCH under the caption *Deutsche Bank National Trust Co., solely in its capacity as Trustee for the Morgan Stanley Structured Trust I 2007-1 v. Morgan Stanley Mortgage Capital Holdings LLC, as Successor-by-Merger to Morgan Stanley Mortgage Capital Inc.*, No. 14-cv-3020 (S.D.N.Y.) (the "Action").

The Trustee's initial complaint included four counts: (1) breach of MSMCH's representations and warranties; (2) breach of MSMCH's repurchase obligations; (3) breach of MSMCH's obligation to notify of breaching loans; and (4) breach of the implied covenant of good faith and fair dealing. The Trustee also alleged that MSMCH had been grossly negligent, thereby vitiating the PSA's "sole remedies" clause.

On July 21, 2014, MSMCH filed a motion to dismiss the Trustee's complaint. On April 3, 2015, the Court granted in part and denied in part MSMCH's motion, dismissing the Trustee's claims for breach of MSMCH's repurchase obligation (Count II), breach of MSMCH's obligation to notify (Count III), and breach of MSMCH's implied covenant of good faith and fair dealing (Count IV). Following fact and expert discovery, MSMCH filed a motion for summary judgment. On January 10, 2018, the Court reinstated the Trustee's failure to notify claim. On January 25, 2018, the Court denied MSMCH's motion for summary judgment in full. The Court then scheduled the trial to begin on April 30, 2018.

On February 5, 2018, MSMCH filed a renewed motion for summary judgment and motion for judgment on the pleadings, arguing that the Court lacked subject-matter jurisdiction and that the case was barred by the statute of limitations under *Deutsche Bank National Trust. Co. v. Barclays Bank PLC*,

156 A.D.3d 401 (1st Dep't 2017).  That motion is now fully briefed and is pending before the Court. On February 19, 2018, the parties submitted a joint letter to the Court, asking that the Court stay all proceedings and withhold its decision on MSMCH's motion pending the Trustee's consideration of a settlement in principle between MSMCH and the directing certificateholder.  On February 24, 2018, the parties submitted a second joint letter, notifying the Court that MSMCH had presented a settlement agreement in a form acceptable to the Trustee if approved by the Certificateholders, and seeking a stay of proceedings while the Trustee solicited the views of Certificateholders on the settlement.  On February 27, 2018, the Court entered an order granting the parties' request, adjourning all future deadlines and hearings in this action, and directing the parties to provide a status report no later than Monday, April 9, 2018.

The costs of the Action have been funded out of the Trust, and the Trustee expects the Trust to continue to incur fees and expenses in connection with these matters.  Certificateholders are reminded that amounts owing to the Trustee may include, but are not limited to, expenses incurred by it in connection with the administration of the Trust and the performance of its duties under the PSA.

**THE FOREGOING SUMMARY IS NOT A COMPLETE DESCRIPTION OF THE ACTION.  THE TRUSTEE URGES CERTIFICATEHOLDERS TO REVIEW THE FILINGS IN THE ACTION AND CONSULT WITH THEIR OWN LEGAL ADVISORS CONCERNING THE MATTERS DESCRIBED ABOVE.  FILINGS IN THE ACTION ARE PUBLICLY AVAILABLE AT THE FOLLOWING ADDRESS: HTTPS://ECF.NYSD.USCOURTS.GOV.**

### The Proposed Settlement

The Trustee is informed that on or about February 16, 2018, Morgan Stanley and the Directing Holders reached an agreement in principle regarding the economic terms of a settlement that would resolve the litigation.  On or about February 24, 2018, those terms were memorialized in a settlement agreement that was signed by Morgan Stanley and presented to the Trustee (the "Settlement Agreement"). A copy of the Settlement Agreement is attached hereto as Exhibit B.

### The Terms of the Settlement Agreement

Certain elements of the Settlement Agreement are summarized below.

1. Morgan Stanley would pay to the Trustee, on behalf of the Trust, $37,500,000 (the "Settlement Payment"), which amount constitutes a settlement payment in respect of the Released Claims (as defined in the Settlement Agreement and described below) against Morgan Stanley.

2. The Trustee would pay from the Settlement Payment: (i) an amount not to exceed $500,000 for costs and expenses that the Directing Holders incurred in connection with investigating and reviewing the Mortgage Loans that were the subject of the Action and (ii) fees and expenses incurred by the Trustee or the Securities Administrator in connection with its evaluation, execution, delivery, performance and implementation of this Agreement, the Instruction Proceeding, if any, the Action (to the extent not previously paid by the Trust) and any vote of Certificateholders.

3. The Trustee on behalf of Trust, would release Morgan Stanley from all claims concerning the Trust, the Governing Agreements, or the Mortgage Loans, including, without limitation, (i) any claim arising from, relating to or concerning the representations and warranties; (ii) any claim that was or could have been raised in the Action; and (iii) any claim for any and all past, present and

future costs, fees, and expenses the Trust or Morgan Stanley has incurred or may incur in connection with the Action.

Such released claims would not include (i) claims that DBNTC may assert in its personal capacity for its personal benefit, if any exist; (ii) claims to enforce the terms of the Settlement Agreement; (iii) any Servicer or Sub-Servicer obligations under any of the Governing Agreements that pertain to the future servicing of Mortgage Loans held by the Trust, except as they pertain to claims against any Morgan Stanley entity including without limitation Saxon Mortgage Services Inc., and all of its present, former, direct, and indirect parents, affiliates, subsidiaries, and each employee, officer, director, manager or representative of any of the foregoing; or (iv) Claims against third-parties, unaffiliated with Morgan Stanley, related to the origination and/or sale of Mortgage Loans securitized by the Trust.

4. **The Settlement Agreement and the Trustee's release of the Released Claims on behalf of the Trust will become effective only if the Trustee accepts the Settlement Agreement on or before the "Acceptance Date," April 4, 2018 (unless extended by Morgan Stanley). The Trustee intends to accept the Settlement Agreement only as described under "Request for Direction of Certificateholders" below. Accordingly, Certificateholders (and any beneficial owners of Certificates entitled to instruct Certificateholders as to the exercise of Voting Rights) are respectfully requested to review and respond to such Request for Direction in a timely manner.**

**THE FOREGOING SUMMARY IS NOT A COMPLETE DESCRIPTION OF THE TERMS AND CONDITIONS OF THE SETTLEMENT. IN THE EVENT OF ANY CONFLICT BETWEEN THE SUMMARY DESCRIPTION ABOVE OF THE TERMS AND CONDITIONS OF THE SETTLEMENT AND THE TERMS AND CONDITIONS CONTAINED IN THE SETTLEMENT AGREEMENT, THE TERMS AND CONDITIONS CONTAINED IN THE SETTLEMENT AGREEMENT SHALL CONTROL. THE TRUSTEE URGES CERTIFICATEHOLDERS TO REVIEW THE SETTLEMENT AGREEMENT CAREFULLY AND TO CONSULT WITH THEIR OWN LEGAL AND FINANCIAL ADVISORS CONCERNING THE SETTLEMENT AND THIS NOTICE AND REQUEST.**

## Request for Direction from Certificateholders

The Settlement will be deemed effective upon the delivery of the Trustee's Acceptance on or before the Acceptance Date, which is April 4, 2018, subject to the Approval Order and the Final Court Approval (if applicable). **The Trustee shall be directed to accept the Settlement and enter into the Settlement Agreement or reject it and continue prosecuting the Action if (i) the Trustee is directed to do so by a Majority of the Certificateholders (based on percentage of Voting Rights held) responding to the Notice in the time period prescribed therein ("Majority Certificateholders"), provided that (ii) the Majority Certificateholders hold Certificates representing not less than 25% of the aggregate Voting Rights of the Trust ("Requisite Percentage"). If more than 50% of the aggregate Voting Rights of the Trust votes are exercised in favor of acceptance of the Settlement in the Settlement Vote, and such votes in favor of acceptance represent at least 75% of the Voting Rights exercised in response to this Notice (a "Supermajority"), the Trustee shall be directed to unconditionally accept the Settlement Agreement, and the Settlement shall become binding upon the Trustee at that time and will not be subject to court approval in an Instruction Proceeding. If the Settlement Vote results in the Requisite Percentage, but not a Supermajority, voting in favor of the Settlement, the Trustee may elect not to institute an Instruction Proceeding and unconditionally accept the Settlement Agreement on or before the Acceptance Date. If the Settlement Vote results in the Requisite Percentage, but not a Supermajority, voting in favor of the Settlement, the Trustee may choose to condition its acceptance on court approval through an Instruction Proceeding; if so the terms of the Agreement, other than Sections 3 and 4, shall become binding upon the Trustee at that time.**

**The Trustee does not currently intend to accept or reject the Settlement Agreement except as explained in this Notice, but reserves the right to do so in the event that the Trustee determines that such acceptance or rejection is in the best interests of the Trust. If the Trustee does not accept the Settlement, the offer reflected in the Settlement Agreement will expire on the Acceptance Date, and no payments will be made to the Trust pursuant to the Settlement Agreement. THE VOTING DEADLINE FOR CERTIFICATEHOLDERS IS SET FORTH ON THE FIRST PAGE OF THIS NOTICE. By exercising Voting Rights in response to this Notice, any Certificateholder will be deemed to represent that it is authorized to convey preference to the Trustee for the original face amount of Certificates represented as of the Record Date, March 1, 2018.**

**By directing the Trustee to accept the Settlement Agreement, Certificateholders will be directing and agreeing that: (a) the Trustee shall execute and deliver the Settlement Agreement and (b) the Trustee, the Securities Administrator, the Master Servicer and any other person acting on behalf of the Trust shall be authorized to perform the Settlement Agreement and to take all necessary or appropriate actions to consummate the transactions contemplated thereby, including, without limitation, the distribution of all proceeds of the Settlement Agreement in accordance with its terms. In the event that the Trustee accepts a direction by Certificateholders to accept the Settlement Agreement, it may request further direction to the Trustee and/or the Securities Administrator to facilitate the implementation of that agreement.**

The Directing Holders, which have represented to the Trustee that they beneficially own certificates aggregating to approximately 43% of the Voting Rights of the Trust, participated in the negotiation of the terms of the Agreement and strongly support the Trustee's acceptance of the Settlement Agreement and believe it would be in the best interests of Certificateholders of the Trust.

\*\*\*

The record date for this solicitation is March 1, 2018. Please return executed letters of direction to the Tabulation Agent no later than 5:00 pm EST on April 2, 2018 via e-mail or facsimile with originals to follow by mail, via overnight courier or second-day delivery, to the following:

Globic Advisors
Attn: Robert Stevens
880 Third Avenue, 12th Floor
New York, NY 10022
Fax: (212) 271-3252 E-Mail: rstevens@globic.com

Questions or requests for additional information may be directed to Robert Stevens at 212-227-9699 or via e-mail at rstevens@globic.com. In order to ensure a timely response, all questions or requests for additional information must be received by the Tabulation Agent no later than 5:00 pm EST on April 2, 2018.

THE TRUSTEE MAY CONCLUDE THAT A SPECIFIC RESPONSE TO PARTICULAR INQUIRIES FROM INDIVIDUAL CERTIFICATE OWNERS IS NOT CONSISTENT WITH EQUAL AND FULL DISSEMINATION OF MATERIAL INFORMATION TO ALL CERTIFICATE OWNERS. NOTHING HEREIN IS INTENDED TO, OR SHALL, WAIVE ANY TERM OR PROVISION OF THE GOVERNING AGREEMENTS OR ANY OTHER TRANSACTION DOCUMENT, OR RIGHTS OF THE TRUSTEE THEREUNDER, ALL OF WHICH ARE HEREBY FULLY RESERVED.

NOTE: THE TRUSTEE MAKES NO RECOMMENDATIONS AND GIVES NO INVESTMENT ADVICE HEREIN OR AS TO THE CERTIFICATES GENERALLY. FURTHERMORE, THE TRUSTEE MAKES NO REPRESENTATION AND ACCEPTS NO RESPONSIBILITY OR LIABILITY AS TO THE COMPLETENESS OR ACCURACY OF THE INFORMATION PROVIDED HEREIN. THIS NOTICE DOES NOT CONSTITUTE ACCOUNTING, LEGAL OR TAX ADVICE; YOU SHOULD SEEK YOUR OWN ADVICE ON THIS MATTER.

NOTICE PURSUANT TO IRS CIRCULAR 230: THIS DISCUSSION IS NOT INTENDED OR WRITTEN BY THE TRUSTEE OR ITS COUNSEL TO BE USED, AND CANNOT BE USED, BY ANY PERSON FOR THE PURPOSE OF AVOIDING TAX PENALTIES THAT MAY BE IMPOSED UNDER U.S. TAX LAWS. EACH PERSON SHOULD SEEK ADVICE BASED ON THE PERSON'S PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR CONCERNING THE POTENTIAL TAX CONSEQUENCES OF ACTIONS DESCRIBED HEREIN

**DEUTSCHE BANK NATIONAL TRUST COMPANY,** solely as Trustee for the Trust

cc:

[PSA Notice Parties]

# EXHIBIT A

# EXHIBIT A

**Morgan Stanley Structured Trust I 2007-1**

| TRUST | CLASS | CUSIP | TRUST | CLASS | CUSIP |
|-------|-------|-------|-------|-------|-------|
| MSST 2007-1 | A-1 | 61755FAA3 | MSST 2007-1 | B-1 | 61755FAL9 |
| MSST 2007-1 | A-2 | 61755FAB1 | MSST 2007-1 | B-2 | 61755FAM7 |
| MSST 2007-1 | A-3 | 61755FAC9 | MSST 2007-1 | B-3 | 61755FAN5 |
| MSST 2007-1 | A-4 | 61755FAD7 | MSST 2007-1 | B-4 | 61755FAP0 |
| MSST 2007-1 | M-1 | 61755FAE5 | MSST 2007-1 | CE | 61755FAV7 |
| MSST 2007-1 | M-2 | 61755FAF2 | MSST 2007-1 | P | 61755FAU9 |
| MSST 2007-1 | M-3 | 61755FAG0 | MSST 2007-1 | R-X | 61755FAT2 |
| MSST 2007-1 | M-4 | 61755FAH8 | MSST 2007-1 | R-1 | 61755FAQ8 |
| MSST 2007-1 | M-5 | 61755FAJ4 | MSST 2007-1 | R-2 | 61755FAR6 |
| MSST 2007-1 | M-6 | 61755FAK1 | MSST 2007-1 | R-3 | 61755FAS4 |

# EXHIBIT B

EXECUTION COPY

## SETTLEMENT AGREEMENT
## (MSST 2007-1)

This SETTLEMENT AGREEMENT, dated as of February 24, 2018   (this "Agreement"), is between Morgan Stanley Mortgage Capital Holdings LLC, and any parents, subsidiaries or affiliates including, without limitation Saxon Mortgage Services, Inc., (collectively, "Morgan Stanley") and, upon acceptance as described below, Deutsche Bank National Trust Company ("DBNTC"), solely in its capacity as Trustee (the "Trustee") of Morgan Stanley Structured Trust I 2007-1 (the "Trust"). Each of Morgan Stanley and, upon acceptance, the Trustee, may be referred to herein as a "Party" and collectively as the "Parties."

## RECITALS

WHEREAS, Morgan Stanley sold certain residential mortgage loans that were deposited into the Trust (the "Mortgage Loans");

WHEREAS, the Trustee, on behalf of the Trust, filed a lawsuit against Morgan Stanley with respect to the Trust in the United States District Court for the Southern District of New York, which asserts claims, including, but not limited to, breaches of contractual representations and warranties concerning the Mortgage Loans that were made by Morgan Stanley or for which Morgan Stanley may otherwise have any obligations (the "R&Ws") in the Governing Agreements (as defined below);

WHEREAS, each Party disputes the allegations, claims and defenses made by the other Party in the Action (as defined below);

WHEREAS, the Parties have agreed to settle and resolve all disputes between them regarding the Mortgage Loans, the Governing Agreements, the R&Ws, and the Action, subject to the terms and conditions set forth herein.

## AGREEMENT

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree to the following terms:

1.   **Defined Terms.**  As used in this Agreement, in addition to the terms otherwise defined herein, the following terms shall have the meanings set forth below. All singular definitions used here and elsewhere in this Agreement include their respective plurals, and vice versa. Any capitalized terms not defined in this Agreement shall have the meaning assigned to them in the PSA (as defined below). To the extent that there is a conflict between the definition assigned to a term herein and the definition assigned to that term in the PSA, the definition assigned to the term herein shall control for the purposes of this Agreement.

(a)   "Acceptance Date" means April 4, 2018, unless extended by Morgan Stanley.

1

(b)      "<u>Action</u>" means the litigation filed by the Trustee, on behalf of the Trust, against Morgan Stanley under the caption *Deutsche Bank National Trust Co., solely in its capacity as Trustee for the Morgan Stanley Structured Trust I 2007-1 v. Morgan Stanley Mortgage Capital Holdings LLC, as Successor-by-Merger to Morgan Stanley Mortgage Capital Inc.*, Index No. 14-cv-3020 (S.D.N.Y.) (the "<u>SDNY Action</u>"), and any subsequent litigation refiled by the Trustee, on behalf of the Trust, following a dismissal of the SDNY Action without prejudice other than an Instruction Proceeding.

(c)      "<u>Affiliate</u>" means, with respect to any specified Person, any Person that, at the time of determination, directly or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with such specified Person. For the purposes of this definition, "control" means, as to any Person, the power to direct or cause the direction of the management, policies or practices of such Person, whether through ownership of voting securities, by contract, or otherwise; and the terms "controlled by" and "under common control with" have meanings correlative to the foregoing.

(d)      "<u>Agreement</u>" has the meaning set forth in the Preamble.

(e)      "<u>Approval Order</u>" means an order entered by the court presiding over the Instruction Proceeding (the "<u>Approval Court</u>"), entered after notice to all Certificateholders in a form and method acceptable to the Approval Court and an opportunity for any Certificateholder to be heard, (i) approving the Trustee's acceptance of this Agreement and performance of its obligations under this Agreement as a reasonable exercise of the Trustee's discretion based on its receipt of direction from a Requisite Percentage of Certificateholders in response to the Settlement Vote and in compliance with any other applicable PSA terms, (ii) approving distribution of the Settlement Payment to Certificateholders in accordance with the terms hereof, (iii) barring claims against the Trustee for such actions to the extent allowed by the Approval Court, and (iv) providing that the order and the terms of the Agreement are binding on all Certificateholders and any other Persons having or claiming any interest, beneficial or otherwise, in the Trust.

(f)      "<u>Business Day</u>" means any day other than a Saturday, a Sunday or a day on which banking or savings and loan institutions in the State of New York are authorized or obligated by law or executive order to be closed.

(g)      "<u>Certificateholder</u>" means the Person in whose name a Certificate is registered in the Certificate Register, and/or the Person who is the beneficial owner of such Certificate.

(h)      "<u>Confidential Information</u>" has the meaning given to that term in Section 7(a).

(i)      "<u>Consent Solicitation</u>" means a notice and request for direction soliciting a vote of the Certificateholders entitled to vote thereon as of the date of the notice with respect to the approval or rejection of the Settlement (the "<u>Settlement Vote</u>") and stating that the Trustee shall be directed to accept the Settlement and enter into this Agreement or reject it if (i) the Trustee is directed to do so by a majority of the Certificateholders (based on percentage of Voting Rights

held) responding to the Notice in the time period prescribed therein ("Majority Certificateholders"), provided that (ii) such Majority Certificateholders hold Certificates representing not less than 25 percent of the aggregate Voting Rights of the Trust (the "Requisite Percentage").

(j) "Contingent Acceptance" means acceptance of the Agreement by the Trustee as set forth in Section 2(e) below.

(k) "DBNTC" has the meaning set forth in the Preamble.

(l) "Directing Holder Reimbursement Amount" means an amount not to exceed $500,000, as specified by the Directing Holders in a writing delivered to the Trustee no later than the date on which the Settlement Payment is payable to the Trustee under Section 3 hereof, for costs and expenses that that the Directing Holders incurred in connection with investigating and reviewing the mortgage loans that were the subject of the Action.

(m) "Directing Holders" means the holders of certificates in the Trust that directed the Trustee to initiate the Action.

(n) "Final Court Approval" means the entry of an Approval Order and either (i) expiration of all appeal periods without an appeal (including without limitation the expiration of any time to apply for discretionary review) or (ii) if an appeal is taken, entry of an order finally affirming the Approval Order without possibility of further appeal or when the time for any further appeal has expired without an appeal (including without limitation the expiration of any time to apply for discretionary review).

(o) "Governing Agreements" means the PSA and/or the Mortgage Loan Purchase Agreement applicable to the Trust or any Mortgage Loans, and all other assignment agreements, custodial agreements, indemnity agreements, sale and servicing agreements, insurance agreements, mortgage loan purchase agreements, purchase price and terms agreements, indentures, trust agreements, and/or other similar agreements or documents, in each case relating to the Trust or any Mortgage Loans, including prospectuses and prospectus supplements and any amendments thereto or similar disclosure documents disseminated or other disclosures made in relation to the Trust or Mortgage Loans.

(p) "Impossibility Termination Notice" means a written notice provided by the Trustee to Morgan Stanley within fourteen (14) days of the date that Final Court Approval becomes Legally Impossible, providing that (i) Final Court Approval has become Legally Impossible, and (ii) the Trustee is terminating this Agreement and will continue the Action.

(q) "Instruction Proceeding" means a proceeding for instructions in the administration of the Trust brought in a court of competent jurisdiction by the Trustee and seeking entry of the Approval Order.

(r) "Legally Impossible" means the denial of entry of the Approval Order by the Approval Court with no possibility of further appeal or proceedings that could result in Final Court Approval.

(s)    "Losses" means any and all losses, expenses, costs, payments, fines, penalties, assessments, demands, charges, fees, judgments, damages, awards, disbursements and amounts paid in settlement, punitive damages, foreseeable and unforeseeable damages, incidental or consequential damages, in each case of whatever kind or nature.

(t)    "Morgan Stanley" has the meaning set forth in the Preamble.

(u)    "Mortgage Loan Purchase Agreement" means the agreement dated as of July 6, 2007, by and among EMC Mortgage Corporation as a Mortgage Loan Seller, Morgan Stanley Mortgage Capital Holdings LLC as a Mortgage Loan Seller, and Bear Stearns Asset Backed Securities I LLC as Purchaser.

(v)    "Mortgage Loans" has the meaning set forth in the Recitals.

(w)    "Net Settlement Payment" means the Settlement Payment less (a) the reasonable fees and expenses of the Trustee or the Securities Administrator incurred in connection with: (i) the Trustee's or the Securities Administrator's evaluation, execution, delivery, performance and implementation of this Agreement, (ii) the Instruction Proceeding, if any, (iii) the Action (to the extent not previously paid by the Trust) and (iv) any vote of Certificateholders and (b) the Directing Holder Reimbursement Amount.

(x)    "Person" means any individual, corporate entity, general or limited partnership, association, company, limited liability company, estate, trust, trustee, governmental agency or division, or any other type of business, governmental, or legal entity.

(y)    "PSA" means that certain Pooling and Servicing Agreement, dated as of June 1, 2007, among Bear Stearns Asset Backed Securities I LLC as Depositor, Wells Fargo Bank, National Association, as Master Servicer and Securities Administrator, and Deutsche Bank National Trust Company as Trustee.

(z)    "Released Claims" means, except as limited below, all alleged or actual claims, counterclaims, defenses, rights of setoff, rights of rescission, liens, disputes, liabilities, Losses, debts, expenses (including attorneys' fees), obligations, demands, claims for accountings or audits, rights, and causes of action of any kind or nature whatsoever, whether asserted or unasserted, known or unknown, suspected or unsuspected, fixed or contingent, in contract, tort, or otherwise, secured or unsecured, accrued or unaccrued, whether direct, indirect, derivative, by subrogation or brought in any other capacity, including claims that previously existed, currently exist, or may exist in the future, and arising from, relating to or concerning the Trust, the Governing Agreements, or the Mortgage Loans, including, without limitation, (i) any claim arising from, relating to or concerning the R&Ws; (ii) any claim that was or could have been raised in the Action; and (iii) any claim for any and all past, present and future costs, fees, and expenses the Trust or Morgan Stanley has incurred or may incur in connection with the Action, this Agreement and the Instruction Proceeding.  Notwithstanding the foregoing, the Released Claims do not include: (i) claims that DBNTC may assert in its personal capacity for its personal benefit (and not for the benefit of the Trust), if any exist, including claims for indemnification, reimbursement, or set off; (ii) defenses or counterclaims that Morgan Stanley may assert to such claims by DBNTC in

4

its personal capacity, if any exist, including counterclaims for indemnification, reimbursement, or set off; or (iii) claims to enforce the terms of this Agreement.

(aa)  "<u>Released Persons</u>" means: (A) with respect to claims by or on behalf of the Trustee or the Trust, (i) Morgan Stanley, (ii) any Morgan Stanley Affiliates, and (iii) Morgan Stanley's or any Morgan Stanley Affiliate's respective past, present, or future employees, agents, officers, directors, attorneys, managers, members, advisors, representatives, accountants, and auditors; and (B) with respect to claims by or on behalf of Morgan Stanley, (i) the Trustee, (ii) any Trustee Affiliates, (iii) the Trustee's or any Trustee Affiliate's respective past, present, or future employees, agents, officers, directors, attorneys, managers, members, advisors, representatives, accountants, and auditors, and (iv) the Trust.

(bb)  "<u>Releasors</u>" has the meaning set forth in Section 4(a).

(cc)  "<u>Requisite Percentage</u>" shall have the meaning set forth in Section 1(i).

(dd)  "<u>Settlement</u>" means the settlement set forth in Section 3 of this Agreement, including all terms and conditions thereof.

(ee)  "<u>Settlement Date</u>" means the date on which Morgan Stanley makes the Settlement Payment to the Trust, in accordance with this Agreement.

(ff)  "<u>Settlement Payment</u>" means thirty-seven million, five hundred thousand and no/100 dollars ($37,500,000).

(gg)  "<u>Settlement Vote</u>" shall have the meaning set forth in Section 1(i).

(hh)  "<u>Supermajority</u>" means a result of the Settlement Vote in which (1) the votes in favor of acceptance represent more than 50% of the aggregate Voting Rights of the Trust; and (2) the votes in favor of acceptance represent at least 75% of the Voting Rights of the certificates voted in the Settlement Vote.

(ii)  "<u>Termination Date</u>" means the date, if any, on which this Agreement terminates.

(jj)  "<u>Trust</u>" has the meaning set forth in the Preamble.

(kk)  "<u>Trustee</u>" has the meaning set forth in the Preamble.

(ll)  "<u>Unconditional Acceptance</u>" means acceptance of the Agreement by the Trustee as set forth in Section 2(c) or (d) below.

(mm)  "<u>Voting Rights</u>" has the meaning set forth in the PSA.

EXECUTION COPY

**2.** **Settlement Process.**

(a)    Settlement Offer by Morgan Stanley.  This Agreement shall constitute an irrevocable settlement offer to the Trustee upon the terms and conditions set forth herein as of the date of this Agreement and shall continue to be binding and irrevocable subject to the termination provisions in Section 2(h).  Prior to the Trustee's acceptance of this Agreement, any provision containing a covenant, representation or warranty of the Trustee shall be deemed a condition of the offer.

(b)    Certificateholder Approval Process.  By March 2, 2018, the Trustee shall circulate to Certificateholders a Consent Solicitation, unless extended by Morgan Stanley.

(c)    Unconditional Acceptance by Trustee if Settlement Vote Passes by a Supermajority.  If a Supermajority votes in favor of the Settlement in the Settlement Vote, the Trustee will unconditionally accept this Agreement on or before the Acceptance Date by executing the signature page attached hereto and delivering an original or copy thereof to Morgan Stanley on behalf of the Trust.  The Settlement shall become binding upon the Trustee at that time.

(d)    Unconditional Acceptance by Trustee if Settlement Vote Passes Without a Supermajority.  If the Settlement Vote results in the Requisite Percentage, but not a Supermajority, voting in favor of the Settlement, the Trustee may elect not to institute an Instruction Proceeding and unconditionally accept this Agreement on or before the Acceptance Date by executing the signature page attached hereto and delivering an original or copy thereof to Morgan Stanley on behalf of the Trust.  In that event, the Settlement shall become binding upon the Trustee at that time.

(e)    Contingent Acceptance by Trustee if Settlement Vote Passes Without a Supermajority.  If the Settlement Vote results in the Requisite Percentage, but not a Supermajority, voting in favor of the Settlement, and the Trustee does not elect to unconditionally accept the Agreement pursuant to Section 2(d), the Trustee shall accept this Agreement on or before the Acceptance Date by executing this Agreement and delivering an original or copy of the signature page to Morgan Stanley on behalf of the Trust, with such acceptance being contingent on Final Court Approval through an Instruction Proceeding.  In that event, the Trustee shall notify Morgan Stanley at that time of its decision to institute an Instruction Proceeding and that its acceptance of the Agreement is contingent on Final Court Approval.  The terms of this Agreement, other than Sections 3 and 4, shall become binding upon the Trustee at that time.

(f)    Instruction Proceeding.  In the event the Trustee institutes an Instruction Proceeding as described in Section 2(e) above, it shall do so within ten (10) Business Days of its Contingent Acceptance of this Agreement pursuant to Section 2(e).  Unless and until the Termination Date occurs, Morgan Stanley and the Trustee shall each use their reasonable best efforts to obtain Final Court Approval so long as there has been no material breach of this Agreement by the other Party. The Parties' obligation to use reasonable best efforts to obtain Final Court Approval shall continue in effect regardless of any intervening court decisions or regulatory actions issued after the date of this Agreement, or if any Party discovers facts that are additional to,

or inconsistent with, or different from those which they knew on the date of this Agreement, until the Termination Date.

(g)     Final Court Approval.   In the event the Trustee institutes an Instruction Proceeding as described in Section 2(e) above, Sections 3 and 4 of this Agreement shall become binding upon the Trustee upon Final Court Approval.

(h)     Termination Provisions.

(i)     Morgan Stanley has the right to terminate this Agreement if (w) the Trustee does not circulate the Consent Solicitation seeking the Settlement Vote on or prior to March 2, 2018, (x) the Acceptance Date has passed without Unconditional Acceptance or Contingent Acceptance of this Agreement by the Trustee, or (y) the Trustee advises Morgan Stanley in writing prior to the Acceptance Date that it will not accept the Settlement.

(ii)     The Trustee has the right to terminate this Agreement in the event that: (A) Final Court Approval becomes Legally Impossible, and (B) the Trustee provides Morgan Stanley with an Impossibility Termination Notice.

(iii)     If the Trustee institutes an Instruction Proceeding as described in Section 2(e), the Trustee and Morgan Stanley may terminate this Agreement if both the Trustee and Morgan Stanley consent. If an Approval Order is not issued in the Instruction Proceeding on or before May 24, 2019, either the Trustee or Morgan Stanley can terminate this Agreement without requiring the other party's consent.

(iv)     In the event that this Agreement is terminated, the Parties shall have no rights or obligations hereunder, but such termination shall not alter the fact that it constitutes a confidential settlement communication and shall not be construed as an admission.

(i)     Repurchase Claims.   Between the date of this Agreement and the earlier of (x) the Settlement Date and (y) the Termination Date, the Parties shall not take any action that is inconsistent with this Agreement, including but not limited to pursuing any claims against any Released Party concerning the Mortgage Loans; provided, however, that the Trustee may continue to provide notices of breaches where required to do so by any Governing Agreements. As of the Settlement Date, each and every notice or demand the Trustee has given regarding any repurchase claim or other claim that would be a Released Claim shall be deemed null and void, rendered inoperative, as if it were never sent, and shall be deemed solely for purposes relating to claims against Morgan Stanley to be withdrawn with prejudice.

**3.     Settlement Payment.**

(a)     Within ten (10) days after either (x) Unconditional Acceptance of this Agreement by the Trustee, or (y) Final Court Approval, Morgan Stanley shall pay the Settlement Payment to the Trust. The Settlement Payment shall be made by Morgan Stanley by wire transfer to the Trustee pursuant to wire transfer instructions to be provided by the Trustee.   From the Settlement Payment, the Trustee shall pay the Directing Holder Reimbursement Amount to the

7

Directing Holders, and shall pay the Net Settlement Payment to the Distribution Account of the Trust.

(b)     For the purposes of the distribution of the Net Settlement Payment, in accordance with the PSA, the Trustee shall request that the Securities Administrator treat the Net Settlement Payment as a Subsequent Recovery, or as otherwise prescribed or approved by the Approval Court.  If distribution of any portion of the Settlement Payment would become payable to a class of REMIC residual interests, whether on the initial distribution of the Settlement Payment or on any subsequent distribution date that is not the final distribution date under the PSA, such payment shall be maintained in the Distribution Account and the party responsible for making distributions to Certificateholders under the PSA shall distribute it on the next distribution date according to the provisions of this Section 3(b). Neither the Settlement Payment nor the receipt of any payments pursuant to this Section 3(b) shall be deemed to reverse the occurrence of any transaction-related trigger in the Trust.

(c)     Other than paying the Settlement Payment to the Trust in accordance with Section 3(a), Morgan Stanley shall have no obligation or liability with respect to (i) the allocation of the Settlement Payment; (ii) the distribution of the Net Settlement Payment to Certificateholders or any other Person; or (iii) any tax consequences to the Trust or the Certificateholders relating to such distribution.

(d)     For the avoidance of doubt, the Trustee shall not be required to transfer any Mortgage Loans, or any files relating thereto, to Morgan Stanley.

**4.     Release and Covenant Not to Sue.**

(a)     From and after the Settlement Date, each of Morgan Stanley and the Trustee on behalf of the Trust, and any Persons claiming by, through or on behalf of the Trust (including any Certificateholders claiming derivatively, beneficially, or otherwise for or through the Trust) (collectively, the "Releasors"), irrevocably and unconditionally grants to each of the Released Persons (as applicable) a full, final and complete release, waiver, and discharge of any and all Released Claims that the Releasors may now or may hereafter have, directly or indirectly, against or involving any or all of the Released Persons.

(b)     With respect to any and all Released Claims, each of Morgan Stanley, the Trust and the Trustee acknowledges that it has been advised by its attorneys concerning, and is familiar with, California Civil Code Section 1542, and expressly waives any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to the provisions of California Civil Code Section 1542, including that provision itself, which reads as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

Each Party acknowledges that inclusion of the provision of this Section 4(b) to this Agreement was a material and separately bargained for element of this Agreement.

(c)     For the avoidance of doubt, the Released Claims released in this Section do not include (i) claims to enforce the terms of this Agreement; or (ii) claims asserted by the Trustee in the Action against any Person other than the Released Persons.

(d)     <u>Disclosure Claims</u>.  The releases and waivers in this Section 4 do not include any direct individual claims for securities fraud or other alleged disclosure violations that any Certificateholder or its successors in interest, assigns, pledgees, and/or transferees may seek to assert based upon such Person's purchase or sale of Securities; <u>provided</u>, <u>however</u>, that the question of the extent to which any payment made or benefit conferred pursuant to this Agreement may constitute an offset or credit against, or a reduction in the gross amount of, any such claim shall be determined in the action in which such claim is raised, and, notwithstanding any other provision in this Agreement, the Parties reserve all rights with respect to the position they may take on that question in those actions and acknowledge that all other Persons similarly reserve such rights.

(e)     <u>Repurchase Obligations of Unaffiliated Mortgage Sellers</u>.  Claims against third-parties, unaffiliated with Morgan Stanley, related to the origination and/or sale of Mortgage Loans securitized by the Trust are not released.

(f)     <u>Correction of Document Defects</u>.  The releases and waivers in this Section 4 do not release any party from an existing obligation under the Governing Agreements to provide and/or procure, as applicable, documents needed to cure document defects; <u>provided</u>, <u>however</u>, that any claims for monetary damages against Morgan Stanley based upon the failure to cure such defects shall be included within the Released Claims.

(g)     <u>Covenant Not to Sue; Defense</u>.  Except as necessary to enforce this Agreement, each of the Releasors covenants, represents, and warrants that it will forever refrain from suing to enforce or to recover under any Released Claims from any Released Person, and that this Agreement may be pleaded as a full and complete defense by the Released Persons to any Released Claims.

(h)     <u>Obligations of Servicers and Sub-Servicers</u>. Except as it pertains to claims against any Morgan Stanley entity including without limitation Saxon Mortgage Services Inc., and all of its present, former, direct, and indirect parents, affiliates, subsidiaries, and each employee, officer, director, manager or representative of any of the foregoing, this Agreement shall not release or affect any Servicer or Sub-Servicer obligations under any of the Governing Agreements that pertain to the future servicing of Mortgage Loans held by the Trust.

## 5.     <u>The Action</u>.

(a)     If the Termination Date occurs, the Parties shall jointly request that the court presiding over the Action enter an agreed order or make a similar filing extending all deadlines in the Action by a number of days equal to or greater than the number of days that have passed between this Agreement and the Termination Date.

(b)   <u>Dismissal of the Action with prejudice</u>.  Not later than three (3) Business Days following the Settlement Date, the Trustee and Morgan Stanley shall cause the Action to be dismissed with prejudice by filing a stipulation of dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii). The Trustee shall take all other steps as necessary to effect the dismissal of the Action with prejudice, including, but not limited to filing, if required or requested by the court in the Action, a proposed order of dismissal with prejudice in a form reasonably acceptable to Morgan Stanley.

(c)   <u>Dismissal of the Action without prejudice</u>.

(i)   If the Trustee elects to institute an Instruction Proceeding pursuant to Section 2(e) of this Agreement, not later than three (3) Business Days following the date that the Trustee notifies Morgan Stanley of its election pursuant to Section 2(e) of this Agreement, the Trustee and Morgan Stanley shall cause the Action to be dismissed without prejudice by filing a stipulation of dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii). The Trustee shall take all other steps as necessary to effect the dismissal of the Action without prejudice, including, but not limited to filing, if required or requested by the court in the Action, a proposed order of dismissal without prejudice in a form reasonably acceptable to Morgan Stanley.

(ii)   In the event the Instruction Proceeding does not result in Final Court Approval, the Trustee may refile the Action.  In the event the Action is refiled pursuant to this section, the Parties shall be restored to their respective litigation positions in the Action as they existed immediately prior to the filing of the stipulation of dismissal pursuant to Section 5(c)(i) of this Agreement, and the claims in the refiled Action shall be deemed to have been made when the Action was originally filed, without prejudice to Morgan Stanley's objection that the Action was barred, in whole or in part, by the applicable statutes of limitations if commenced on that earlier date.  For the avoidance of doubt and notwithstanding anything else to the contrary, the Parties agree that all timeliness defenses available to Morgan Stanley at the time the Action was dismissed without prejudice pursuant to Section 5(c)(i) of this Agreement shall apply to the refiled Action. Without waiving such defenses, Morgan Stanley will not object to the refiling of this Action within 30 days after the Instruction Proceeding terminates without the issuance of an Approval Order. This paragraph shall survive any termination of this agreement.

**6.   <u>Representations and Warranties</u>.**

(a)   As of the date of this Agreement, each Party to this Agreement represents, warrants and agrees as to itself as follows:

(i)   it is duly organized and validly existing under the laws of the jurisdiction of its formation and, if relevant under such laws, is in good standing;

(ii)   it has the corporate, trust, or other power and authority (including contractual and/or regulatory authority to the extent applicable) necessary to execute this Agreement and any other documentation related to this Agreement to which it is a Party, to deliver this Agreement and any other documentation relating to this Agreement that it is required by this Agreement to deliver, and to perform its obligations under this Agreement and has taken all

10

necessary action to authorize such execution, delivery and performance. Assuming the due authorization, execution and delivery of this Agreement by the other Party, this Agreement constitutes its legal, valid, and binding obligations, enforceable against it in accordance with its terms;

(iii)    such execution, delivery and performance do not violate or conflict with any law applicable to it, any provision of its constitutional documents, or any order or judgment of any court or governmental authority applicable to it or any of its assets, any agreement, or any contractual restriction binding on or affecting it or any of its assets;

(iv)    it has received all approvals necessary for this Agreement to be binding on it (in the case of the Trustee, subject to its rights in this Agreement to seek Final Court Approval);

(v)    there is not pending, or, to its knowledge, threatened against it or any of its Affiliates any action, suit or proceeding at law or in equity before any court, tribunal, governmental body, agency or official, or any arbitrator that is likely to affect the legality, validity, or enforceability against it of this Agreement or its ability to perform its obligations under this Agreement;

(vi)    it has not relied upon any statement, representation, or promise of the other Party or that other Party's Affiliates (or of any representative or attorney of or for any other Party or that other Party's Affiliates) in executing this Agreement, or in connection with this settlement, except for the representations, warranties, covenants, and other obligations set forth in this Agreement. It is further acknowledged and understood that the Trustee has made its own independent judgment concerning the reasonableness and advantageousness of the Agreement and its terms;

(vii)    it is not entering into this Agreement with the intent of hindering, delaying, or defrauding any of its respective current or future creditors;

(viii)    it has made such investigation of the facts pertaining to this Agreement and the Released Claims and of all the matters pertaining thereto as it deems necessary;

(ix)    it has read this Agreement and understands the contents hereof, has consulted with the counsel of its choice with respect to the Agreement, and has executed this Agreement voluntarily and without duress or undue influence on the part of or on behalf of any other Person; and

(x)    the Person who executes this Agreement on its behalf is duly authorized to execute this Agreement on behalf of the respective Party, and such Party has full knowledge of and has consented to this Agreement.

(b)    As of the date of this Agreement, the Trustee further represents, warrants and agrees as follows:

(i)    it serves as Trustee of the Trust;

11

(ii) it has neither assigned nor delegated to another the Trustee's authority to enter into or perform under this Agreement; and

(iii) it has not heretofore assigned, transferred, or granted an interest in, or purported to assign, transfer, or grant an interest in, any of the Released Claims.

7. **Confidentiality.**

(a) All communications among Morgan Stanley and its Affiliates and the Trustee concerning this Agreement (including, without limitation, the negotiation of this Agreement, confidential information exchanged in connection with such negotiation, and communications concerning the execution and performance thereof) shall be treated as confidential settlement communications (the "Confidential Information") pursuant to Rule 408 of the Federal Rules of Evidence, Section 4547 of the New York Civil Practice Law and Rules ("CPLR") and any similar rule.

(b) The Parties will each maintain the Confidential Information in confidence, without disclosing such matters to any other Person, specifically including, but not limited to, any holder of any interest in the Trust; provided, however, that nothing in this Agreement shall prevent disclosure of the Confidential Information by a Party (i) to its respective Affiliates and to its Affiliates' respective counsel, employees, directors, members, accountants, auditors, insurers, reinsurers, or other representatives who have a need to know and are under a duty to implement appropriate measures to maintain the confidentiality, security, and integrity of the Confidential Information (with any such disclosure itself to remain, absent compulsion of law, forever confidential, undiscoverable, and inadmissible); (ii) upon request by a federal or state government entity or agency that has subpoena power or as disclosure to such a government entity or agency is otherwise required by law; (iii) where otherwise required by law or regulation but only to the extent so required and after giving each other Party reasonable advance notice of any such disclosure that could reasonably be expected to be made public and the opportunity to seek a protective order or other limitation on the scope of such disclosure, consistent with the requirements of law and regulation; and (iv) where reasonably necessary to enforce the terms of this Agreement. Notwithstanding the foregoing, the Trustee may disclose the Confidential Information as necessary or appropriate in order to obtain entry of the Approval Order in the Instruction Proceeding, as long as the Parties confer in good faith to reach agreement concerning the disclosure or use in the Instruction Proceeding of any Confidential Information other than the Agreement. For the avoidance of doubt, the Parties may disclose this Agreement to the court in the Action and in connection with the Consent Solicitation.

8. **No Admissions.** Nothing in this Agreement shall be construed as an admission by any Party hereto of any liability, violation of law, or wrongdoing whatsoever, or the truth or untruth, or merit or lack of merit, of any claim or defense of any Party. This Agreement is without value as precedent and shall not be used or referred to in any way in any action or other proceeding or hearing other than to enforce or effectuate the terms of this Agreement.

9. **Entire Agreement.** This Agreement constitutes the entire agreement of the Parties hereto with respect to the subject matter hereof, except as expressly provided herein, and

supersedes all prior agreements and understandings, discussions, negotiations and communications, written and oral, among the Parties with respect to the subject matter hereof except for the confidentiality provisions of the Term Sheet and any other confidentiality agreements between the Parties.

10. **Modification and Waiver.**  This Agreement may not be amended, altered, or modified, and no provision hereof may be waived, except by written instrument executed by the Parties. No waiver shall constitute a waiver of, or estoppel with respect to, any subsequent or other inaccuracy, breach, or failure to comply strictly with the provisions of this Agreement.

11. **Severability.**  If any term or provision of this Agreement or the application thereof, other than the payment terms contained in Section 3(a) and 3(c), the agreements with respect to the Action in Section 5, and the release, discharge, and waiver and other provisions contained in Section 4, shall, for any reason or to any extent, be invalidated or ruled to be unenforceable, the remainder of this Agreement shall be enforced to the fullest extent permitted by law.

12. **Further Assurances.**  The Parties agree to use their reasonable best efforts and cooperate in good faith to fully effectuate the intent, terms, and conditions of this Agreement, including by executing and delivering all additional documents and instruments, doing all acts not specifically referred to herein that are reasonably necessary to fully effectuate the intent, terms, and conditions of this Agreement, and refraining from taking any action (or assisting others to take any action) contrary to or inconsistent with the intent, terms, and conditions of this Agreement.

13. **Governing Law.**  This Agreement shall be governed and construed according to the laws of the State of New York without regard to any choice of law rules.

14. **Waiver of Jury Trial.**  EACH PARTY HEREBY KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY OF ANY DISPUTE ARISING UNDER OR RELATING TO THIS AGREEMENT  AND AGREES THAT ANY SUCH DISPUTE SHALL BE TRIED BEFORE A JUDGE SITTING WITHOUT A JURY.

15. **Construction.**  The terms of this Agreement were negotiated in good faith and at arm's length by the Parties. The provisions contained herein shall not be construed in favor of or against any Party because that Party or its counsel drafted this Agreement, but should be construed as if all Parties prepared this Agreement, and any rules of construction to the contrary are hereby expressly waived. The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

16. **Specific Performance.**  Each Party acknowledges and agrees that the other Party would be irreparably harmed if any of the provisions of this Agreement are not performed in accordance with their specific terms and that any such breach could not be adequately compensated in all cases by monetary damages alone. Accordingly, each Party agrees that, in addition to any other right or remedy to which a Party may be entitled at law or in equity, each Party shall be entitled to enforce any provision of this Agreement by a decree of specific performance and to

obtain temporary, preliminary and permanent injunctive relief to prevent breaches or threatened breaches of this Agreement.

17. **Successors and Assigns; Third Party Beneficiaries.**  This Agreement shall bind and inure to the benefit of and be enforceable by Morgan Stanley and the Trustee on behalf of the Trust and their respective successors, heirs, assigns, executors, beneficiaries, legal representatives and administrators to the maximum extent permitted by law.  This Agreement may not be assigned by any Party without the prior written consent of the other Party hereto and any attempted assignment in violation of this provision shall be null and void. Except as otherwise specifically provided herein, nothing expressed or referred to in this Agreement is intended or shall be construed to give any third party any legal or equitable right, remedy, or claim under or with respect to this Agreement, the obligations and statements of responsibilities hereunder, and all other conditions and provisions hereof, are for the sole and exclusive benefit of the Parties; provided, however, that each Released Person shall be a third-party beneficiary of this Agreement, with the right to sue under and directly enforce this Agreement.

18. **Notices.**  Any notice or other communication required or permitted under this Agreement shall be in writing and sent by overnight delivery service with a copy by electronic mail, and shall be deemed to be given for purposes of this Agreement upon hard copy delivery (unless expressly specified otherwise in this Agreement). Unless a different or additional address for subsequent notices is specified in a notice sent or delivered in accordance with the provisions of this Section 18, such writing shall be sent as follows:

      (a)     If to the Trustee, to:

           Ronaldo Reyes
           Vice President
           Deutsche Bank National Trust Company
           Global Transaction Banking
           1761 East St. Andrew Place
           Santa Ana, California 92705-4934

           with copies to:

           Michael S. Kraut
           Morgan, Lewis & Bockius LLP
           101 Park Avenue
           New York, New York 10178
           email:  mkraut@morganlewis.com

      (b)     If to Morgan Stanley, to:

           Matthew Morningstar, Esq.
           1585 Broadway
           New York, NY 10036
           Email: MATTHEW.Morningstar@morganstanley.com

with copies to:

Brian S. Weinstein
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
Email: brian.weinstein@davispolk.com

19.     **No Amendment of Governing Agreements.**     The Parties agree that this Agreement reflects a compromise of disputed claims and is not intended to, and shall not be argued or deemed to constitute, an amendment of any provision of the Governing Agreements; provided, however, that compliance with the Agreement shall be deemed compliance with the Governing Agreements.

20.     **Counterparts.**     This Agreement may be executed in any number of counterparts, each of which so executed shall be deemed to be an original. The counterparts shall constitute one and the same Agreement. Facsimile and .pdf signatures shall have the same force and effect as original signatures.  This Agreement shall not be binding until all Parties have signed and delivered a counterpart of this Agreement whether by mail, facsimile or electronic mail.

21.     **Binding on Certificateholders.**   The provisions of this Agreement, including the release, discharge, and waiver provisions of Section 4, are intended to be binding on all Persons claiming a beneficial interest in the Trusts, including, without limitation, all Certificateholders, and their successors in interest, assigns and transferees.

*[Remainder of the page intentionally left blank, signature page follows.]*

IN WITNESS WHEREOF, the Parties have executed this Agreement on the date so indicated above.

DEUTSCHE BANK NATIONAL TRUST COMPANY, solely in its capacity as trustee

By: _____
Name:
Title:


By: _____
Name:
Title:


MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC

By: _____
Name:
Title:        Kevin C. Ng
             Managing Director