**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DEUTSCHE BANK NATIONAL TRUST
COMPANY, solely in its capacity as
Trustee for the MORGAN STANLEY
STRUCTURED TRUST I 2007-1,

                              Plaintiff,

        v.

MORGAN STANLEY MORTGAGE
CAPITAL HOLDINGS LLC, as
Successor-by-Merger to MORGAN
STANLEY MORTGAGE CAPITAL INC.,

                              Defendant.

No. 14-CV-3020 (KBF)

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND
RENEWED MOTION FOR SUMMARY JUDGMENT**

Steven F. Molo
Robert K. Kry
Justin V. Shur
Lauren M. Weinstein
MOLOLAMKEN LLP
430 Park Avenue
New York, New York  10022
(212) 607-8160 (telephone)
(212) 607-8161 (facsimile)

*Attorneys for Plaintiff Deutsche
Bank National Trust Company,
as Trustee for the Morgan Stanley
Structured Trust I 2007-1*

February 15, 2018

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

STANDARD OF REVIEW ...................................................................................................... 2

ARGUMENT ........................................................................................................................ 3

I.      This Court Has Subject-Matter Jurisdiction .................................................................. 3

        A.      The Trustee's Citizenship Controls for Diversity Purposes ................................... 3

        B.      The Trustee Is Not a "Naked" or "Sham" Trustee................................................. 5

II.     The Trustee's Complaint Is Not Barred by the Statute of Limitations ............................ 10

        A.      Morgan Stanley's Motion Should Be Denied Because It Was Filed in
                Violation of This Court's Orders ........................................................................ 10

        B.      The Trustee's Claims Did Not Accrue in California ............................................ 12

                1.      The Place of Injury Is New York ............................................................. 13

                2.      Nothing in *Barclays* Requires a Finding That California Supplants
                        New York as the Place of Injury in This Case ......................................... 15

        C.      Even if California's Statute of Limitations Were To Apply, There Would
                Be Genuine Factual Disputes over the Timeliness of the Claims.......................... 19

                1.      There Are Genuine Disputes Under the Accrual Clause ........................... 19

                2.      There Are Genuine Disputes Under the Discovery Rule........................... 21

                3.      There Are Genuine Disputes Regarding the Failure To Notify
                        Claim .................................................................................................... 22

CONCLUSION.................................................................................................................... 24

## TABLE OF AUTHORITIES

### CASES

*2002 Lawrence R. Buchalter Alaska Trust v. Phila. Fin. Life Assurance Co.*,
    96 F. Supp. 3d 182 (S.D.N.Y. 2015)................................................................13, 14

*Allen v. Coughlin*, 64 F.3d 77 (2d Cir. 1995) .................................................................3

*Americold Realty Trust v. Conagra Foods, Inc.*, 136 S. Ct. 1012 (2016) ..............3, 4, 5

*Appel v. Kidder, Peabody & Co.*, 628 F. Supp. 153 (S.D.N.Y. 1986)...........................13

*April Enters., Inc. v. KTTV*, 195 Cal. Rptr. 421 (Ct. App. 1983) ...........................21, 22

*Bank of N.Y. Mellon v. Townhouse S. Ass'n*, No. 16-cv-208,
    2016 WL 3563503 (D. Nev. June 29, 2016)....................................................................8

*Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905 (2d Cir. 2010) .............................2

*Bear Stearns Mortg. Funding Trust 2006-SL1 v. EMC Mortg. LLC*,
    No. 7701-VCL, 2015 WL 139731 (Del. Ch. Jan. 12, 2015)..................................18

*Bonnafee v. Williams*, 44 U.S. (3 How.) 574 (1845) ......................................................3

*Brisbane Lodging, L.P. v. Webcor Builders, Inc.*, 157 Cal. Rptr. 3d 467
    (Ct. App. 2013) ..........................................................................................................20

*Bulova Watch Co. v. Celotex Corp.*, 46 N.Y.2d 606 (1979)...........................................23

*Bynane v. Bank of N.Y. Mellon, as Trustee for CWMBS, Inc. Asset-Backed
    Certificates Series 2006-24*, 866 F.3d 351 (5th Cir. 2017).........................................8

*Cal. First Bank v. Braden*, 264 Cal. Rptr. 820 (Ct. App. 1989) ..................................20

*Chappedelaine v. Dechenaux*, 8 U.S. (4 Cranch) 306 (1808).........................................3

*Childs v. Brandon*, 60 N.Y.2d 927 (1983) ...................................................................19

*Commerzbank AG v. Deutsche Bank Nat'l Trust Co.*, 234 F. Supp. 3d 462
    (S.D.N.Y. 2017)..........................................................................................................14

*Deutsche Bank Nat'l Trust Co. v. Barclays Bank PLC*, 156 A.D.3d 401
    (1st Dep't 2017) ....................................................................................... *passim*

*Deutsche Bank Nat'l Trust Co. v. Flagstar Capital Mkts. Corp.*, 143 A.D.3d 15
    (1st Dep't 2016) ..........................................................................................................19

*Deutsche Zentral-Genossenschaftsbank AG, N.Y. Branch v. Citigroup, Inc.*,
   44 Misc. 3d 1228(A), 2014 WL 4435991 (Sup. Ct. N.Y. Cnty. Sept. 8, 2014) .....................14

*E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925 (2d Cir. 1998) .....................4

*Ely-Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399 (1993) ..................................22

*Fed. Hous. Fin. Agency v. WMC Mortg., LLC*, No. 13 Civ. 584,
   2015 WL 9450833 (S.D.N.Y. July 10, 2015) ..........................................7

*Glob. Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525 (1999) ..................................13

*Haimowitz v. Novartis Pharm. Corp.*, 148 F. Supp. 3d 327 (S.D.N.Y. 2015)................................3

*Halley v. Deutsche Bank Nat'l Trust Co.*, No. CV H-15-1174, 2016 WL 3855872
   (S.D. Tex. July 15, 2016) ..........................................................8

*IKB Int'l S.A. v. Morgan Stanley*, 45 Misc. 3d 1212(A), 2014 WL 5471650
   (Sup. Ct. N.Y. Cnty. Oct. 28, 2014)................................................14

*Kaplan v. Reid Bros.*, 104 Cal. App. 268 (1930) ..........................................20

*Leonard v. Rose*, 65 Cal. 2d 589 (1967) ................................................20

*Maiden v. Biehl*, 582 F. Supp. 1209 (S.D.N.Y. 1984) .................................13, 14, 15, 18

*Mansouri v. Superior Court*, 104 Cal. Rptr. 3d 824 (Ct. App. 2010) ...........................20

*Mary Pickford Co. v. Bayly Bros.*, 12 Cal. 2d 501 (1939)...........................................20

*Meherin v. S.F. Produce Exch.*, 117 Cal. 215 (1897) ...........................................20, 21

*NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*, 262 F. Supp. 2d 134
   (S.D.N.Y. 2003)................................................................10, 12

*Navarro Sav. Ass'n v. Lee*, 446 U.S. 458 (1980) .................................................. *passim*

*Norex Petrol. Ltd. v. Blavatnik*, 23 N.Y.3d 665 (2014)..............................................12

*Philip v. Deutsche Bank Nat'l Trust Co. as Trustee for Securitized Asset Backed
   Receivables LLC Trust 2006-WM3*, No. 11 Civ. 8960, 2014 WL 4953572
   (S.D.N.Y. Sept. 30, 2014) ..........................................................8

*Portfolio Recovery Assoc., LLC v. King*, 14 N.Y.3d 410 (2010)..................................19

*Raymond Loubier Irrevocable Trust v. Loubier*, 858 F.3d 719 (2d Cir. 2017) ..........................4, 5

*Residential Funding Co. v. Acad. Mortg. Corp.*, 59 F. Supp. 3d 935
   (D. Minn. 2014) ...............................................................22

*Rosario-Diaz v. Gonzalez*, 140 F.3d 312 (1st Cir. 1998)................................................12

*SerVaas Inc. v. Republic of Iraq*, 540 F. App'x 38 (2d Cir. 2013)................................10

*Smith Barney, Harris Upham & Co. v. Luckie*, 85 N.Y.2d 193 (1995)........................19

*Taketa v. State Bd. of Equalization*, 104 Cal. App. 2d 455 (1951).........................20, 21

*U.S. Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC*, 859 F. Supp. 2d 602
    (S.D.N.Y. 2012)...................................................................................................8

*U.S. Bank Nat'l Ass'n v. UBS Real Estate Sec., Inc.*, 205 F. Supp. 3d 386
    (S.D.N.Y. 2016)...................................................................................................8

*Walnut Place LLC v. Countrywide Home Loans, Inc.*, 96 A.D.3d 684
    (1st Dep't 2012)..................................................................................................7

*Wells Fargo Bank, N.A., Trustee for the Registered Holders of Salomon Bros.
    Mortg. Sec. VII Inc., Mortg. Pass-Through Certificates v. Konover Dev.
    Corp.*, 630 F. App'x 46 (2d Cir. 2015) ...........................................................7

*Wind Dancer Prod. Grp. v. Walt Disney Pictures*, 215 Cal. Rptr. 3d 835
    (Ct. App. 2017) ................................................................................................20

## STATUTES AND RULES

CPLR § 202 .........................................................................................................................12

Fed. R. Civ. P. 56(a) .............................................................................................................2

Fed. R. Civ. P. 56(b) ...........................................................................................................10

## OTHER AUTHORITIES

11 *Moore's Federal Practice* § 56.60[4][a]-[b] (3d ed. 2017).......................................11

## PRELIMINARY STATEMENT

Four years into this litigation, Morgan Stanley argues for the first time that this Court lacks subject-matter jurisdiction.  The timing of the motion is no coincidence.  Morgan Stanley has been aware of the factual and legal basis for its arguments throughout the case.  But Morgan Stanley kept these arguments in reserve and waited until a week after this Court denied summary judgment – rejecting Morgan Stanley's legal positions on essentially every contested issue – before seeking a do-over in state court.

Morgan Stanley's motion drips with gamesmanship.  The rule that a court may consider its subject-matter jurisdiction at any stage does not mean that a party may roll the dice litigating a case on the merits – costing the parties and the Court substantial resources – while saving its jurisdictional arguments as a backup in case things don't go its way.  Once again, Morgan Stanley's view seems to be that the Court has jurisdiction over the case only to the extent it rules in Morgan Stanley's favor.  *Cf.* Dkt. 161 at 1-2.  By any measure, this latest submission is an abuse of the Court's process.

Even more astounding is Morgan Stanley's renewed motion for summary judgment, filed ***nine months*** after the dispositive motion deadline.  When the First Department decided *Deutsche Bank National Trust Co. v. Barclays Bank PLC*, 156 A.D.3d 401 (1st Dep't 2017), Morgan Stanley expressly sought this Court's permission to brief the statute of limitations issue.  Dkt. 135 at 1.  This Court said no:  "The Court does not require any additional briefing at this time. The Court will inform the parties if its view on this subject changes." Dkt. 137.  The Court never so informed the parties.  But Morgan Stanley went ahead and briefed the issue anyway, in contravention of this Court's directives and without even requesting permission to do so.

In any event, Morgan Stanley's arguments are as meritless as they are improper.  The Supreme Court made perfectly clear in *Navarro Savings Ass'n v. Lee*, 446 U.S. 458 (1980), that

where a trustee brings suit in its own name, what matters for purposes of diversity jurisdiction is the citizenship of the **trustee**.  The only exception is where the plaintiff is a mere "sham" or "naked" trustee.  Morgan Stanley does not come close to making that showing here.

Conversely, what matters for purposes of the statute of limitations is where the **trust** suffered injury.  Here, the Trust was formed as a New York common-law trust governed by New York law, and there are no facts that point to any other state as the primary locus of the injury.  Morgan Stanley claims that *Barclays* holds otherwise, but that case could not be more different.  To take just one example, in *Barclays*, the properties that secured the mortgage loans were located either "exclusively" or "predominantly" in California.  156 A.D.3d at 402.  Here, by contrast, only **13%** of the loans are for California properties.  Pl.'s 56.1 Resp. ¶9.[1]  Thus, the critical facts that *Barclays* relied on to find that a New York trust suffered injuries in some other state simply are not present here.

It is time for Morgan Stanley to stop filing meritless dispositive motions and start preparing for trial.  Morgan Stanley's latest motions should be denied.

### STANDARD OF REVIEW

On a motion for judgment on the pleadings, the Court must "'accept all factual allegations in the complaint as true and draw all reasonable inferences' in favor of the [non-moving party]."  *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010).  Summary judgment is appropriate only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

---

[1] Certain exhibits to the Declaration of Robert K. Kry cited in the Trustee's Response to Defendant's Local Rule 56.1 Statement of Undisputed Material Facts in Support of Its Renewed Motion for Summary Judgment ("Pl.'s 56.1 Resp.") have been filed under seal pursuant to the Stipulation and Order for the Filing Under Seal of Confidential Documents entered on May 5, 2017 (Dkt. 107).

56(a).  The Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor," and "may grant summary judgment only when 'no reasonable trier of fact could find in favor of the nonmoving party.'"  *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995).  "Where a defendant requests summary judgment on the ground that the statute of limitations on plaintiff's claim has run, the defendant bears the burden of proving that the particular limitation period has expired."  *Haimowitz v. Novartis Pharm. Corp.*, 148 F. Supp. 3d 327, 330 (S.D.N.Y. 2015).

## ARGUMENT

### I.     THIS COURT HAS SUBJECT-MATTER JURISDICTION

#### A.     The Trustee's Citizenship Controls for Diversity Purposes

For the first time, four years into the litigation, Morgan Stanley contends that this Court's diversity jurisdiction turns on "the citizenship of MSST's certificateholders," which is not alleged in the Complaint.  MS Br. 4.  That argument flies in the face of over two hundred years of precedent holding that where, as here, a trustee sues in its own name, it may assert jurisdiction on the basis of its own citizenship, not the citizenship of the trust's beneficiaries.

The Supreme Court decided this precise issue in *Navarro Savings Ass'n v. Lee*, 446 U.S. 458 (1980).  The Court explained that, "[a]s early as 1808, [it had] stated that trustees of an express trust are entitled to bring diversity actions in their own name and upon the basis of their own citizenship."  *Id.* at 462 (citing *Chappedelaine v. Dechenaux*, 8 U.S. (4 Cranch) 306, 308 (1808)).  "'[T]he residence of those who may have the equitable interest' is simply irrelevant."  *Id.* at 463 (quoting *Bonnafee v. Williams*, 44 U.S. (3 How.) 574, 577 (1845)).  The Court reiterated that rule just two years ago in *Americold Realty Trust v. Conagra Foods, Inc.*, 136 S. Ct. 1012 (2016), holding that "when a trustee files a lawsuit . . . in her own name, ***her citizenship is all that matters*** for diversity purposes."  *Id.* at 1016 (emphasis added).

3

Morgan Stanley simply ignores that well-settled law.  Morgan Stanley characterizes *Navarro* as creating an "exception" to a general rule that the citizenship of trust beneficiaries is what matters.  MS Br. 3.  But there was nothing exceptional about *Navarro*'s holding.  Rather, "*Navarro* reaffirmed [the] separate rule that when a trustee files a lawsuit in ***her*** name, her jurisdictional citizenship is the State to which she belongs – as is true of any natural person." *Americold*, 136 S. Ct. at 1016; *see also E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 931 (2d Cir. 1998) (recognizing that "the Supreme Court has deemed the citizenship of the trustees to be determinative").  As the Court explained, "[t]he relative simplicity of this established principle is one of its virtues."  *Navarro*, 446 U.S. at 464 n.13 (citation omitted).

Morgan Stanley tries to muddy the waters by pointing to cases where the suit was brought in the name of the ***trust*** rather than the ***trustee***.  As Morgan Stanley notes, " 'the method for determining a ***trust's*** citizenship [is] long unsettled and the subject of much debate.' "  MS Br. 4-5 (emphasis added).  In *Americold*, for example, the plaintiff was a Maryland real estate investment trust, and the Supreme Court held that the trust "possesses its members' citizenship" because "when an artificial entity is sued in ***its*** name, it takes the citizenship of each of its members."  136 S. Ct. at 1015-16.  By contrast, in *Raymond Loubier Irrevocable Trust v. Loubier*, 858 F.3d 719 (2d Cir. 2017), certain parties were common-law trusts, and the Second Circuit held that their citizenship would be determined by the citizenship of the trustees even though the suit had been brought in the name of the trusts.  *Id.* at 729-31.

Whatever uncertainty may surround a ***trust's*** citizenship, however, is irrelevant where the suit is brought in the name of the ***trustee***, as it was here.  On that question, the law could hardly be clearer.  As the Supreme Court held in *Navarro* and reaffirmed in *Americold*, "when a trustee files a lawsuit in ***her*** name, her jurisdictional citizenship is the State to which ***she*** belongs."  136

4

S. Ct. at 1016 (second emphasis added); *see also Loubier*, 858 F.3d at 722 (where a suit is "brought by or against . . . trustees . . . it is the trustees' citizenship, not that of beneficiaries, that matters for purposes of diversity").  That principle is a "separate rule" that "coexists" with the framework for determining the citizenship of trusts themselves.  *Americold*, 136 S. Ct. at 1016.

Morgan Stanley claims that *Loubier* "rejected a construction of *Americold* that would cause diversity jurisdiction to turn solely on the caption of the complaint."  MS Br. 6.  But the only thing *Loubier* held in that regard was that the trustee's citizenship governs even for certain suits brought in the name of the ***trust***.  858 F.3d at 731 (holding that "where a traditional trust is mistakenly identified as a party even though, by its nature, it can only sue or be sued in the name of its trustee, diversity jurisdiction is properly identified by reference to . . . the trustee").  Nothing in that discussion purports to modify the settled rule that, where a suit is actually brought in the name of the ***trustee***, the trustee's citizenship governs.

### B.     The Trustee Is Not a "Naked" or "Sham" Trustee

*Navarro* did recognize one exception to the rule that the trustee's citizenship governs.  Where a trustee is a mere "naked" or "sham" trustee, the Court explained, it should be deemed not to be the "real party to the controversy for purposes of diversity jurisdiction."  446 U.S. at 464-66.  But Morgan Stanley comes nowhere close to showing that this principle applies here.

In *Navarro*, the Court relied on three factors to conclude that the trustees at issue were not sham parties: (1) the trustees "possesse[d] certain customary powers to hold, manage, and dispose of assets for the benefit of others"; (2) the trustees "operated under a declaration of trust that authorized the trustees to take legal title to trust assets, to invest those assets for the benefit of the shareholders, and to sue and be sued in their capacity as trustees"; and (3) the beneficiaries "had no voice in the initial investment decision" and could "neither control the disposition of

th[e] action nor intervene in the affairs of the trust except in the most extraordinary situations." 446 U.S. at 464-66.  Each of those factors is present here, too.

First, the Trustee possesses customary powers to hold, manage, and dispose of trust assets, and operates under an instrument that empowers it to exercise those functions on behalf of the Trust.  The Pooling and Servicing Agreement expressly conveys to the Trustee "all the right, title and interest . . . in and to the Trust Fund," Weinstein Decl. Ex. B ("PSA") §2.01, and authorizes it to "continue to hold . . . all . . . assets of the Trust Fund . . . for the use and benefit of all present and future Holders of the Certificates," *id.* §2.02(a).  The Trustee "agree[d] to hold the Trust Fund and exercise the rights [granted in the PSA] . . . for the benefit of all present and future Holders of the Certificates," and "to perform the duties set forth [in the PSA]."  *Id.* §2.06(a).  Those duties include, among other things, (1) giving prompt written notice of breaches of representations and warranties upon notice or discovery thereof, *id.* §2.03(a); (2) examining documents required to be furnished to the Trustee to determine whether they are in the required form, *id.* §10.01(b); and (3) performing the obligations of the Securities Administrator, including distributing payments, if the Trustee learns that the Securities Administrator has failed to perform those functions, *id.* §10.12.

The Trustee can also sue and be sued in its capacity as trustee.  The PSA expressly authorizes the Trustee to "enforce the obligation of the Sellers under the [MLPA] . . . to repurchase . . . any Mortgage Loan for which a breach of a representation or warranty made by such party exists and . . . the obligation of the Sponsor to repurchase . . . any Mortgage Loan originated by Accredited."   PSA §2.02(d); *see also* Weinstein Decl. Ex. F, Compl. Ex. 1 ("MLPA") §10.

Finally, as in *Navarro*, the certificateholders have no voice in the initial investment decision and cannot intervene in the affairs of the Trust "except in the most extraordinary situations."  446 U.S. at 466.  The PSA expressly states that "[n]o Certificateholder shall have any right to vote . . . or in any manner otherwise control the operation and management of the Trust Fund, or the obligations of the parties [under the PSA]."  PSA § 12.08.  And under the PSA's no-action clause, no certificateholder may "institute any suit, action or proceeding in equity or law upon or under or with respect to [the PSA]" unless it meets certain very specific and demanding requirements.  *Id.*[2]

Consistent with that structure, court after court has found that RMBS trustees suing in their own names qualify as real parties in interest entitled to invoke diversity jurisdiction on the basis of their own citizenship.  In *Wells Fargo Bank, N.A., Trustee for the Registered Holders of Salomon Bros. Mortgage Securities VII Inc., Mortgage Pass-Through Certificates v. Konover Development Corp.*, 630 F. App'x 46 (2d Cir. 2015), for example, the Second Circuit rejected the same argument Morgan Stanley makes here, holding that an RMBS trustee was not a "'naked trustee [] who act[s] as [a] mere conduit [] for a remedy flowing to others.'"  *Id.* at 49 (quoting *Navarro*, 446 U.S. at 465).  Because the trustee "retain[ed] 'certain customary powers

---

[2] To sue under the PSA, a certificateholder must: (1) provide "written notice of an Event of Default"; (2) represent the interests of "not less than 25% of the Voting Rights" in the Trust; (3) have previously made a "written request to the Trustee or the Securities Administrator . . . to institute such action, suit or proceeding in its own name"; (4) have offered "the Trustee or the Securities Administrator . . . such reasonable indemnity as it may require"; and (5) have waited 60 days after satisfying the first four requirements for the Trustee or Securities Administrator to act.  PSA § 12.08.  Those are demanding requirements that are rarely satisfied.  *See, e.g.*, *Walnut Place LLC v. Countrywide Home Loans, Inc.*, 96 A.D.3d 684, 684 (1st Dep't 2012) (dismissing certificateholder action); *Fed. Hous. Fin. Agency v. WMC Mortg., LLC*, No. 13 Civ. 584, 2015 WL 9450833, at *5 (S.D.N.Y. July 10, 2015) (similar).  They easily qualify as the sort of "extraordinary situations" the Court envisioned in *Navarro*.  446 U.S. at 465.

to hold, manage, and dispose of assets' for the trust's beneficiaries" and was "bringing suit to enforce a judgment in its name," it could invoke its own citizenship for diversity purposes.  *Id.*

Similarly, in *Bynane v. Bank of N.Y. Mellon, as Trustee for CWMBS, Inc. Asset-Backed Certificates Series 2006-24*, 866 F.3d 351 (5th Cir. 2017), the Fifth Circuit held that "[the trustee's] citizenship, not the trust's shareholders' citizenships, is relevant for determining diversity jurisdiction." *Id.* at 358.  The court concluded that the mortgage-backed securitization trustee in that case had "'real and substantial control'" because the PSA granted the trustee "'all right, title, and interest in and to the Initial Mortgage Loans,'" while "the certificateholders ha[d] only limited rights to vote or otherwise control the operation of the trust." *Id.*  Numerous other courts have agreed.[3]

Morgan Stanley argues that the Trustee cannot be a real trustee because it "does not have a fiduciary obligation to the certificateholders" and "lacks the traditional fiduciary duties of loyalty, care, or good faith."  MS Br. 6.  But nothing in *Navarro*'s analysis turned on whether the trustee's duties were governed by common-law fiduciary duties rather than contractual standards. *Navarro* focused on the trustee's **authority** to take certain actions (and the absence of such authority for beneficiaries) – not the legal standards that governed the trustee's obligations.  446 U.S. at 464-66.  *Navarro* specifically held that the fact that a trust "may depart from conventional forms in other respects has no bearing upon this determination." *Id.* at 465.  The

---

[3] *See, e.g.*, *U.S. Bank Nat'l Ass'n v. UBS Real Estate Sec., Inc.*, 205 F. Supp. 3d 386, 409 (S.D.N.Y. 2016) (Castel, J.) ("[T]he citizenship of U.S. Bank, as Trustee, is controlling for the purposes of the diversity analysis."); *U.S. Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC*, 859 F. Supp. 2d 602, 608 (S.D.N.Y. 2012) (Koeltl, J.) (trustee was a "'real and substantial party for diversity purposes'"); *Halley v. Deutsche Bank Nat'l Trust Co.*, No. CV H-15-1174, 2016 WL 3855872, at *1 (S.D. Tex. July 15, 2016); *Bank of N.Y. Mellon v. Townhouse S. Ass'n*, No. 16-cv-208, 2016 WL 3563503, at *2-3 (D. Nev. June 29, 2016); *Philip v. Deutsche Bank Nat'l Trust Co. as Trustee for Securitized Asset Backed Receivables LLC Trust 2006-WM3*, No. 11 Civ. 8960, 2014 WL 4953572, at *4 & n.13 (S.D.N.Y. Sept. 30, 2014), *aff'd*, 636 F. App'x 5 (2d Cir. 2015).

absence of common-law fiduciary duties was not relevant in any of the many other RMBS cases that have followed *Navarro*, and it is not relevant here, either.

Morgan Stanley also asserts that the Trustee is "not only subject to the control of the certificateholders, but in this very litigation it is acting at the direction of its certificateholders, who can control the disposition of this action." MS Br. 8 (quotation marks omitted). But Morgan Stanley provides no support for that claim. This is a motion for judgment on the pleadings, and the only allegations about certificateholder involvement in the Complaint relate to a certificateholder's ***pre-suit investigation and notice***. Compl. ¶¶ 47-48. Further, Morgan Stanley has not met its burden of showing that, even in cases where an RMBS trustee initiates litigation pursuant to a certificateholder's direction, the certificateholder rather than the trustee exercises any particular level of "control" over the litigation. In any event, *Navarro* held that the trustee was not a sham trustee in that case even though beneficiaries could "control the disposition of th[e] action [or] intervene in the affairs of the trust" in "extraordinary situations." 446 U.S. at 464-65. Morgan Stanley shows no basis for a different result here.

None of Morgan Stanley's arguments comes close to showing that the Trustee is a sham party whose citizenship should be disregarded for diversity purposes. The arguments that Morgan Stanley makes could be directed at virtually any RMBS trustee. Yet courts have repeatedly rejected such arguments, properly concluding that RMBS trustees are entitled to invoke their own citizenship for diversity purposes. Morgan Stanley offers no good reason why this Court should depart from that settled precedent.

## II.   THE TRUSTEE'S COMPLAINT IS NOT BARRED BY THE STATUTE OF LIMITATIONS

In addition to challenging this Court's jurisdiction, Morgan Stanley also seeks summary judgment on the statute of limitations, claiming that the First Department's recent decision in *Deutsche Bank National Trust Co. v. Barclays Bank PLC*, 156 A.D.3d 401 (1st Dep't 2017), renders the Trustee's Complaint untimely as a matter of law.  The Court should not even reach that argument.  Morgan Stanley filed this summary judgment motion nine months after the deadline and in direct violation of this Court's instructions not to brief the issue.  But even if the Court considers the motion, it should deny it.  The Trustee's Complaint is timely, and nothing in *Barclays* alters that conclusion.

### A.   Morgan Stanley's Motion Should Be Denied Because It Was Filed in Violation of This Court's Orders

Morgan Stanley does not even attempt to justify the timing of its motion.  A party may move for summary judgment "at any time until 30 days after the close of all discovery," "[u]nless . . . the court orders otherwise."  Fed. R. Civ. P. 56(b).  Discovery closed on May 5, 2017.  Dkt. 104 at 2 & n.1.  The Court directed Morgan Stanley to file any "dispositive pre-trial motions" by May 8, 2017.  *Id.*  Morgan Stanley filed a summary judgment motion on that date, which did not include any statute of limitations argument, even though Morgan Stanley had asserted a statute of limitations defense in its answer.  Dkt. 111; Dkt. 50 at 17 (Second Defense).

Morgan Stanley's renewed motion was filed approximately ***nine months*** after the deadline.  Dkt. 151.  That untimeliness alone is grounds to deny the motion.  *See, e.g.*, *NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*, 262 F. Supp. 2d 134, 150 (S.D.N.Y. 2003) ("[F]ailure to abide by the Court's scheduling order . . . is sufficient grounds to deny [a party's] motion for summary judgment."); *SerVaas Inc. v. Republic of Iraq*, 540 F. App'x 38, 42 (2d Cir. 2013) (affirming denial of summary judgment motion filed more than 30 days after close of discovery).

10

Morgan Stanley has no justification for its late filing. Although the First Department decided *Barclays* only recently, that case had been fully briefed for over a year, and the decision did not purport to overrule any existing binding authority. Nor was there any other obstacle to Morgan Stanley's raising the issue sooner. The fact that Morgan Stanley included the defense in its answer confirms as much. Raising the issue now is seriously prejudicial. Courts are "generally hostile to last-minute summary judgment motions" because, by that point, "the litigants and the court have already invested many hours in case preparation and development." 11 *Moore's Federal Practice* § 56.60[4][a]-[b] (3d ed. 2017). Moreover, particularly when viewed in the context of Morgan Stanley's recent barrage of motions for reconsideration and other submissions, this latest motion seems part of a deliberate strategy to consume the Trustee's and the Court's time – time that is better spent on trial preparation.

Although the untimeliness of the motion is reason enough to deny it, Morgan Stanley's violations do not stop there. Morgan Stanley also disregarded a ***specific order of the Court*** in filing its motion. When the First Department decided *Barclays*, Morgan Stanley wrote the Court to "propose . . . that the parties brief the [statute of limitations] issue after either the Court of Appeals has issued a decision in *Barclays* or leave to appeal is denied." Dkt. 135 at 1. Morgan Stanley added that, "[o]f course, we are happy to brief the issue now if that would be the Court's preference." *Id.* This Court responded: "The Court does not require any additional briefing at this time. The Court will inform the parties if its view on this subject changes." Dkt. 137.

Morgan Stanley's solicitude for the Court's preferences was evidently short-lived. The Court never informed the parties that it wanted briefing on the statute of limitations. Yet Morgan Stanley filed its renewed motion anyway, raising the exact same arguments the Court told it not to. This Court's clear instructions about the propriety of such a submission at this time was itself

tantamount to a scheduling order whose violation justifies denial of the motion.  *See NAS Elecs.*, 262 F. Supp. 2d at 150 (failure to abide by scheduling order grounds for denying summary judgment); *Rosario-Diaz v. Gonzalez*, 140 F.3d 312, 315 (1st Cir. 1998) (noting "unflagging duty to comply with clearly communicated case-management orders").  Morgan Stanley should not be permitted to waste the Court's and the Trustee's time in the precious few weeks remaining before trial by filing motions that the Court specifically told it not to.

### B.      The Trustee's Claims Did Not Accrue in California

In any event, Morgan Stanley's argument fails on the merits.  Under New York's borrowing statute, "[a]n action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued."  CPLR § 202.  Thus, "[w]hen a cause of action accrues outside New York and the plaintiff is a nonresident," the court must " 'borrow[ ]' the statute of limitations of the jurisdiction where the claim arose, if shorter than New York's." *Norex Petrol. Ltd. v. Blavatnik*, 23 N.Y.3d 665, 668 (2014).  For purposes of the borrowing statute, "a cause of action accrues . . . in the ***place of the injury***."  *Glob. Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 529 (1999) (emphasis added).

In this case, the only jurisdiction that can fairly be viewed as the "place of the injury" is New York.  That is the jurisdiction where the Trust was organized and pursuant to whose laws the Trust is governed.  Moreover, unlike in *Barclays*, there is no other single state that can fairly be viewed as supplanting New York as the place of injury.  Accordingly, the Trustee's claims accrued in New York, and the borrowing statute does not apply.

1.     *The Place of Injury Is New York*

The "injury" in this case is the harm the Trust suffered when it received mortgage loans that breached their representations and warranties.  That injury occurred in New York, the jurisdiction in which the Trust was organized and pursuant to whose laws it was created.

In *Global Finance*, the Court of Appeals explained that "the place of injury ***usually*** is where the plaintiff resides and sustains the economic impact of the loss."  93 N.Y.2d at 529 (emphasis added).  But as courts have recognized, that general plaintiff-residence rule is not a suitable indicator of the place of injury where the plaintiff is a trustee suing on behalf of a trust.

In *Maiden v. Biehl*, 582 F. Supp. 1209 (S.D.N.Y. 1984), for example, the plaintiff trustee was a New Jersey resident, but the trust was created in New York and had a New York settlor. *Id.* at 1217.  The court explained that, "[w]here the plaintiff is a trust, the use of the residency of the trustee as the sole factor to determine the place of accrual does not make sense as a practical matter, and is not required legally." *Id.*  "New Jersey [was] not where the economic impact of the fraud was felt." *Id.*  Instead, "it [wa]s the Trust itself that suffered the loss, and the loss was felt in New York," where "[t]he corpus of the Trust diminished." *Id.* at 1218.  The court also noted that "New York is where taxes are paid, where [the trust's] investment decisions are made, and where the securities are physically kept." *Id.*  "[F]or the purpose of determining the applicability of the borrowing statute, New York is where the cause of action accrued." *Id.*

Other courts have followed *Maiden* and taken the same approach.  *See, e.g.*, *2002 Lawrence R. Buchalter Alaska Trust v. Phila. Fin. Life Assurance Co.*, 96 F. Supp. 3d 182, 201-02 (S.D.N.Y. 2015) (" '[The] Trust itself . . . suffered the loss, and the loss was felt in [Alaska]' " because "the Trust itself was located in Alaska, and organized under Alaska law."), *aff'd*, — F. App'x —, 2017 WL 6540498 (2d Cir. Dec. 21, 2017); *Appel v. Kidder, Peabody & Co.*, 628 F. Supp. 153, 156 (S.D.N.Y. 1986) (place of injury is where "financial harm [was]

sustained by the trust").  In *Barclays*, the First Department held that it "need not decide" whether the plaintiff-residence rule or the *Maiden* test applies to RMBS trusts because, on the particular facts of that case, the claims accrued in California either way.  156 A.D.3d at 402.  But for the reasons well articulated in *Maiden* and subsequent cases, the residence of the trustee is not a suitable guide to where the "injury" occurred in RMBS cases.  There is no reason to suspect that New York courts would reject *Maiden*'s approach if squarely presented with the issue.[4]

Under *Maiden*, the "injury" in this case occurred in New York.  The Trustee filed this lawsuit solely in its representative capacity as Trustee of the MSSTI 2007-1 Trust to recover losses that "*[t]he Trust*, and consequently Certificateholders . . . , suffered."  Compl. ¶ 4 (emphasis added).  The Trust was expressly created as a "*New York* common law trust."  PSA § 1.01, at 53 (emphasis added).  The PSA is "governed by the substantive laws of the State of New York."  *Id.* § 12.03.  The governing agreements were drafted and negotiated in New York.  Pl.'s 56.1 Resp. ¶ 35.  And Bear Stearns, the Depositor that conveyed the breaching loans to the Trust, was based in New York.  *Id.* ¶ 36.  All of those facts confirm that the Trust was based in New York and thus suffered injury in New York when it received the breaching loans there.  *See Maiden*, 582 F. Supp. at 1218 (finding that place of injury was New York because, "[f]rom all the facts presented on this motion, it is clear that the Trust is located in New York"); *2002 Lawrence R. Buchalter Alaska Trust*, 96 F. Supp. 3d at 201-02 (injury occurred in Alaska

---

[4] Courts have applied the plaintiff-residence rule in RMBS cases only where the plaintiff was a certificateholder suing to redress its own injury.  *See, e.g.*, *Commerzbank AG v. Deutsche Bank Nat'l Trust Co.*, 234 F. Supp. 3d 462, 469 (S.D.N.Y. 2017); *IKB Int'l S.A. v. Morgan Stanley*, 45 Misc. 3d 1212(A), 2014 WL 5471650, at *3-4 (Sup. Ct. N.Y. Cnty. Oct. 28, 2014); *Deutsche Zentral-Genossenschaftsbank AG, N.Y. Branch v. Citigroup, Inc.*, 44 Misc. 3d 1228(A), 2014 WL 4435991, at *1 (Sup. Ct. N.Y. Cnty. Sept. 8, 2014).

because trust "was located in Alaska, and organized under Alaska law"). The place of injury in this case is accordingly New York.[5]

> 2.   *Nothing in* Barclays *Requires a Finding That California Supplants New York as the Place of Injury in This Case*

Morgan Stanley claims that *Barclays* compels a finding that California law applies even under the *Maiden* approach. MS Br. 14-15. But it ignores the obvious factual differences between the two cases. In *Barclays*, the First Department identified the following factors as supporting its conclusion that California displaced New York as the place of injury: (1) the mortgage loans in the trust either "exclusively" (in the case of one trust) or "predominantly" (in the case of the other trust) encumbered properties located in California; (2) the loans were "originated by California lenders"; (3) the PSAs "contemplate[d] the payment of state taxes, if any, in California"; (4) the PSAs "contemplate[d] that the notes may be maintained in California"; and (5) the trusts were administered in California by a California-based trustee. 156 A.D.3d at 402-03. Those facts are simply not present in this case.

***First***, while the loans in *Barclays* either "exclusively" or "predominantly" concerned California properties, only a small fraction of the loans here relate to properties in that state. Specifically, only 561 of the 4,373 loans – ***a mere 13%*** – relate to California properties. Pl.'s 56.1 Resp. ¶9. By contrast, a whopping ***87%*** of the loans (3,812) relate to properties outside California. *Id.* California is not even the state with the most properties. *Id.* ¶¶9-10.

---

[5] There is no tension between holding, on the one hand, that the Trustee's California citizenship governs for purposes of diversity jurisdiction, and on the other, that the Trust's New York connections govern for purposes of determining the place of injury. Those are two different questions directed at two different issues. *See Maiden*, 582 F. Supp. at 1217 ("While the residence of a trustee determines the residence of a trust for the purpose of determining whether diversity jurisdiction exists, in the context of the borrowing statute, residency is merely a shorthand method to decide where economic impact is felt." (citation omitted)).

That composition of the Trust is no accident.  Morgan Stanley created this Trust to "empty [its] position" of "subprime loan[s]" just before the market collapsed, filling the Trust with assorted subprime loans from numerous originators and properties nationwide.  Pl.'s 56.1 Resp. ¶¶37-41.  Thus, unlike *Barclays*, this case does not involve a New York trust filled with California mortgage loans.  It involves a New York trust filled with loans swept up from all around the country as part of Morgan Stanley's last-minute garbage collection efforts – a situation where no other individual state can fairly be viewed as displacing New York as the place of injury.

A trust where only 13% of the loans relate to California properties bears no resemblance to one with "exclusively" or "predominantly" California properties.  *Barclays* mentioned the location of the properties in its very first sentence analyzing this issue and obviously attached great significance to that factor in determining where the injury occurred.  156 A.D.3d at 402. On that front, this case could not be more different from *Barclays*.[6]

***Second***, while the loans in *Barclays* were originated ***exclusively*** by California lenders, here the loans were originated by lenders in several different states.  Only half of the originators (six out of eleven) were based in California.  Pl.'s 56.1 Resp. ¶¶6, 8, 18-27.  And those California originators accounted for only a minority of the loans (2,096 out of 4,373).  *Id.* ¶¶28-33.  In that respect too, this case is a far cry from *Barclays*.

---

[6] Morgan Stanley relies heavily on the Prospectus Supplement for its assertions about the loan pool.  MS Br. 15.  The Prospectus Supplement, however, is a pre-securitization statement of what Bear Stearns "expect[ed]" the loan pool to include.  Weinstein Decl. Ex. D at S-30.  It does not reflect the actual composition of the pool.

**Third**, while the PSA in *Barclays* expressly contemplated the payment of state taxes in California, there is no such express indication here. Morgan Stanley admits that this factor is at best "inconclusive" because "the PSA is ambiguous regarding the state in which the Trust might have to pay taxes." MS Br. 15 n.11.

**Fourth**, while the governing agreements in *Barclays* contemplated that the notes memorializing the mortgage loans could be maintained in California, there is at best a factual dispute regarding the location of the notes here. The governing agreements for this Trust do not require that the notes be maintained in California. Pl.'s 56.1 Resp. ¶¶ 12-14. The PSA provides that the Custodian may be either Wells Fargo, Deutsche Bank National Trust Co., or "any successor custodian." PSA § 1.01, at 25; *see also id.* § 2.01. The Mortgage Loan Schedule lists only Wells Fargo and two other entities as custodians. Pl.'s 56.1 Resp. ¶¶ 12-13. And Wells Fargo provided a **Maryland** – not California – address for its operations as Master Servicer and Securities Administrator for this Trust. PSA § 12.05(b); *see also id.* § 1.01, at 23 (defining the "Corporate Trust Office" of the Securities Administrator as the same Maryland address); Pl.'s 56.1 Resp. ¶ 14 (Prospectus Supplement lists a "Minneapolis, Minnesota headquarters" for Wells Fargo).[7]

**Finally**, *Barclays* considered where the Trustee was located and conducted its trust administration functions. But genuine issues remain regarding that factor as well. Although the Trustee's principal place of trust administration is Santa Ana, California, the Trustee's employees performed trust administration services in New York as well. Pl.'s 56.1 Resp. ¶ 48. In any event, it is hard to see how this factor sheds much light on the place of **injury** – *i.e.*, where

---

[7] Morgan Stanley points to a form request attached to the PSA that lists a California address for Wells Fargo. MS Br. 15 (citing PSA Ex. G). But that form does not say anything about where the notes are maintained or by whom.

the injury to the **Trust** was felt.  The whole point of *Maiden*'s rejection of the plaintiff-residence rule for trust cases was that "the use of the residency of the trustee as the sole factor to determine the place of accrual does not make sense" for a trustee suing to vindicate injuries **to the trust**. 582 F. Supp. at 1217.  That is equally, if not more, true with respect to the trustee's place of trust administration.  Accordingly, this factor warrants much less weight than the others and cannot displace New York as the location where the Trust suffered injury.

In short, this case involves a New York trust governed by New York law that held mortgage loans for properties nationwide and had no predominant connection to any other particular state.  In those circumstances, the "place of injury" for purposes of the borrowing statute is New York, and nothing in *Barclays* suggests otherwise.[8]

---

[8] Two other factors that *Barclays* refused to consider provide still further support. 156 A.D.3d at 403 nn.2, 4.  **First**, all the investment decisions for this Trust were made in New York:  Morgan Stanley's New York deal team selected all the breaching loans conveyed to the Trust.  Pl.'s 56.1 Resp. ¶ 34.  The Trust's injuries are directly attributable to those decisions, so the location of the decisions is relevant to the place of injury.  *See, e.g.*, *Bear Stearns Mortg. Funding Trust 2006-SL1 v. EMC Mortg. LLC*, No. 7701-VCL, 2015 WL 139731, at *10 (Del. Ch. Jan. 12, 2015) (applying New York statute of limitations because trust was created "in New York by EMC and other Bear Stearns affiliates, all of whom had their principal places of business in New York").  **Second**, the certificates representing certificateholders' interests in the Trust were located in New York on the Closing Date, when any breach of representations and warranties occurred.  PSA § 7.06 (certificates held in book-entry form by Depository Trust Company in New York upon issuance); *id.* § 1.01, at 26 (defining "Depository").  That location is also relevant.  The Trust corpus is held "for the use and benefit of the Certificateholders."  PSA § 2.01.  The reduced value of the certificates is thus part of the "injury" for which the Trustee seeks a remedy.

Given that the place of injury is New York in this case even without regard to these two additional factors, the Court need not consider them to deny Morgan Stanley's motion.  But *Barclays* remains pending on motion for leave to appeal to the Court of Appeals, and that court may well disagree with the First Department's assessment of these two factors.

### C.   Even if California's Statute of Limitations Were To Apply, There Would Be Genuine Factual Disputes over the Timeliness of the Claims

Even if California's statute of limitations were to govern, California's accrual and tolling rules would preclude summary judgment.  The New York Court of Appeals has made clear that, where courts import a foreign statute of limitations under New York's borrowing statute, they must also import "'*[a]ll the extensions and tolls applied in the foreign state* . . . so that the entire foreign statute of limitations . . . applie[s], and not merely its period.'"  *Smith Barney, Harris Upham & Co. v. Luckie*, 85 N.Y.2d 193, 207 (1995) (emphasis added); *see also Portfolio Recovery Assoc., LLC v. King*, 14 N.Y.3d 410, 416 (2010) (court must "'borrow' Delaware's tolling statute to determine whether . . . [plaintiff] would have had the benefit of additional time"); *Childs v. Brandon*, 60 N.Y.2d 927, 929 (1983) (similar).  Applying those rules, there are multiple genuine factual disputes over the timeliness of the claims.

### 1.   *There Are Genuine Disputes Under the Accrual Clause*

The governing agreements in this case contain an express "accrual clause" that delays the accrual of the Trustee's claims until after Morgan Stanley refuses to cure or repurchase a breaching loan.  Specifically, under MLPA § 10, "[a]ny cause of action against MSMCH or relating to or arising out of a breach by MSMCH of any representations and warranties made in this Section 10 shall accrue . . . upon (i) discovery of such breach by MSMCH or notice thereof by the party discovering such breach and (ii) failure by MSMCH to cure such breach, purchase such MSMCH Represented Mortgage Loan or substitute a qualifying Replacement" within 90 days.  MLPA § 10.  New York courts have so far refused to enforce such clauses.  *See Deutsche Bank Nat'l Trust Co. v. Flagstar Capital Mkts. Corp.*, 143 A.D.3d 15, 20 (1st Dep't 2016), *leave to appeal granted*, No. APL-2016-00237.  But California case law shows that, in a case like this, California courts would deem a claim to accrue only upon the defendant's refusal to repurchase.

19

California courts have routinely enforced accrual clauses and analogous provisions that affect the statute of limitations.  *See, e.g.*, *Cal. First Bank v. Braden*, 264 Cal. Rptr. 820, 821-23 (Ct. App. 1989) (holding that a clause stating that "[g]uarantors waive the benefit of any limitations affecting their liability hereunder or the enforcement thereof to the extent permitted by law" was effective to waive the limitations period for four years); *Wind Dancer Prod. Grp. v. Walt Disney Pictures*, 215 Cal. Rptr. 3d 835, 851 (Ct. App. 2017) (enforcing clause that "shortened limitations period with a specified date of accrual"); *Brisbane Lodging, L.P. v. Webcor Builders, Inc.*, 157 Cal. Rptr. 3d 467, 474 (Ct. App. 2013) (similar).  Even absent an express accrual clause, it is well-settled that, "where a demand is necessary before a cause of action arises, the statute of limitations does not begin to run until the demand is made."  *Kaplan v. Reid Bros.*, 104 Cal. App. 268, 272 (1930); *see also Leonard v. Rose*, 65 Cal. 2d 589, 592 (1967) (where "no time is specified for performance," "a [party] who has promised to do an act in the future . . . does not violate his agreement unless and until a demand for performance is made and performance is refused"); *Mansouri v. Superior Court*, 104 Cal. Rptr. 3d 824, 831 (Ct. App. 2010) (similar).

In *Barclays*, the First Department opined that, even under California law, an RMBS trustee's claims accrue at the time of closing.  156 A.D.3d at 403 (citing *Mary Pickford Co. v. Bayly Bros.*, 12 Cal. 2d 501, 521 (1939); *Meherin v. S.F. Produce Exch.*, 117 Cal. 215, 217 (1897); and *Taketa v. State Bd. of Equalization*, 104 Cal. App. 2d 455, 460 (1951)).  But none of the cases the court cited involved an express accrual clause.  Moreover, the contract in *Mary Pickford* did not involve a demand requirement at all.  *See* 12 Cal. 2d at 507, 521.  And in the

other cases, the plaintiffs knew about their injuries immediately and thus had no justification for not making prompt demands.  *See Meherin*, 117 Cal. at 216-17; *Taketa*, 104 Cal. App. 2d at 459.[9]

Accordingly, even if California law were to apply, the MLPA's accrual clause would make it impossible to resolve Morgan Stanley's statute of limitations defense on summary judgment.  When, precisely, Morgan Stanley discovered or received notice of the breaches, thus triggering its 90-day cure or repurchase period and the start of the limitations period, is a disputed factual issue.  Morgan Stanley contends that it ***never*** discovered any breaches.  Dkt. 145 at 24-25, 54.  If the evidence bears that claim out, the accrual clause would not be triggered until Morgan Stanley received the breach notice from the Trustee on April 4, 2013 and refused to repurchase all but a handful of breaching loans.  Pl.'s 56.1 Resp. ¶¶ 15, 45-46.  This suit was filed well within four years of ***that*** date.  Thus, California's accrual rules preclude summary judgment on Morgan Stanley's claims even assuming California's statute of limitations applies.

### 2.   *There Are Genuine Disputes Under the Discovery Rule*

Genuine factual disputes under California's discovery rule would likewise preclude summary judgment.  Even for contract claims, California courts toll the statute of limitations until the plaintiff "knew or should have known of the wrongful conduct at issue."  *April Enters., Inc. v. KTTV*, 195 Cal. Rptr. 421, 436-37 (Ct. App. 1983).  Although the First Department in *Barclays* held that the claims there "[were] not saved by California's discovery rule, inasmuch as

---

[9] Morgan Stanley contends that this Court is "obligated to apply [New York's] understanding of California's statute of limitations."   MS Br. 17.   But the case for *Erie* deference to an intermediate state court's legal interpretations is surely diminished when the question involves the proper construction of ***another state's*** laws.   *Barclays* also observed that, "under New York law, which . . . governs substantive matters, the contractual provisions for demand under the repurchase protocol are not conditions precedent to suit for a preexisting breach."  156 A.D.3d at 403.  But if California would enforce the MLPA's accrual clause, the statute of limitations would start to run only upon the refusal to repurchase, regardless of how the demand condition is treated for purposes of substantive New York law.

the record establishe[d] that plaintiff reasonably could have discovered the alleged breaches within the limitation period," 156 A.D.3d at 404, whether the different record in this case supports such a conclusion is a question of fact for this Court to determine.

Under California law, "'[w]hether the plaintiff exercised reasonable diligence is a question of fact for the court or jury to decide.'" *April Enters.*, 195 Cal. Rptr. at 437. Here, there is ample evidence from which to conclude that the Trustee could not reasonably have discovered the breaches before April 2, 2013, when it received a breach notice from certificateholders. The PSA expressly relieves the Trustee of any duty to "make any investigation" into the quality of the loans. PSA § 10.02(a)(v). And the loan files used to identify breaches during post-complaint reunderwriting were held by third-party servicers. Pl.'s 56.1 Resp. ¶ 47. The Court could thus reasonably determine that the Trustee was not bound to discover the breaches before it received the breach notice on April 2, 2013. The Trustee filed suit well within four years of that date.

3.   *There Are Genuine Disputes Regarding the Failure To Notify Claim*

Finally, whatever the timeliness of the other claims, genuine factual disputes would prevent summary judgment on the failure to notify claim. As this Court explained when reinstating that claim, "notice clauses, unlike cure/repurchase protocols, are independent of the underlying R&Ws and therefore can be independently breached." Dkt. 141 at 5 (collecting cases). The limitations period on that separate claim can only logically start to run when that *separate obligation* is breached. *See Ely-Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 402 (1993) (claim accrues at "the time of the breach"). Under the MLPA, Morgan Stanley's duty to provide notice did not arise until Morgan Stanley discovered a breach but failed to provide notice. MLPA § 10. The failure to notify claim thus could not have accrued until after that date. *See Residential Funding Co. v. Acad. Mortg. Corp.*, 59 F. Supp. 3d 935, 952 (D. Minn.

22

2014) (holding that breach of duty to notify "occurred, if at all, after the sale of a loan" and therefore "the statute of limitations would not begin to run until some later date").

This Court has already held that there are genuine factual disputes on that very issue – *i.e.*, when precisely Morgan Stanley discovered the breaches.  Dkt. 145 at 24-25, 54.  Morgan Stanley claims that "[the Trustee's] theory is that Morgan Stanley was aware of widespread breaches during its presecuritization due diligence – well over four years before the complaint was filed."  MS Br. 17.  But the Trustee's purported "theory" is not the relevant standard on summary judgment.  What matters is whether the evidence would support a finding that Morgan Stanley discovered the breaches only later, after closing and within four years of filing the Complaint.  Plainly, the evidence would support that finding.  Among other things, the evidence shows that Morgan Stanley identified fraud in the origination of certain loans through post-closing fraud reviews.  Pl.'s 56.1 Resp. ¶42.  Morgan Stanley's post-closing discovery of breaches is also evidenced by the repurchase demands it pursued against originators after closing.  *Id.* ¶43.  The Court could thus readily find at trial that Morgan Stanley discovered breaches years after closing.[10]

---

[10] The failure to notify claim is timely for the independent reason that the duty to notify is a continuing obligation for which the statute of limitations resets with every passing day that Morgan Stanley fails to provide notice.  *See Bulova Watch Co. v. Celotex Corp.*, 46 N.Y.2d 606, 611 (1979) (where party owes a duty of performance over a period of time, limitations period "run[s] separately for the damages occasioned each time a breach . . . occur[s]").

## CONCLUSION

Morgan Stanley's motion for judgement on the pleadings and renewed motion for summary judgment should be denied.

February 15, 2018                          Respectfully Submitted,
New York, New York

Steven F. Molo
Robert K. Kry
Justin V. Shur
Lauren M. Weinstein
MOLOLAMKEN LLP
430 Park Avenue
New York, New York  10022
(212) 607-8160 (telephone)
(212) 607-8161 (facsimile)

*Attorneys for Plaintiff Deutsche
Bank National Trust Company, as
Trustee for the Morgan Stanley
Structured Trust I 2007-1*

## CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2018, I electronically filed the foregoing redacted Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Judgement on the Pleadings and Renewed Motion for Summary Judgment, and the accompanying redacted Plaintiff's Response to Defendant's Local Rule 56.1 Statement of Undisputed Material Facts and Plaintiff's Statement of Additional Facts, as well as the Declaration of Robert K. Kry and its exhibits, using the CM/ECF system, which sent a notice of electronic filing to all ECF registered participants, and I caused unredacted copies of the foregoing to be served on counsel of record for Morgan Stanley via email and Federal Express.

Steven F. Molo
MOLOLAMKEN LLP
430 Park Avenue
New York, New York  10022
(212) 607-8160 (telephone)
(212) 607-8161 (facsimile)

*Attorneys for Plaintiff Deutsche*
*Bank National Trust Company, as*
*Trustee for the Morgan Stanley*
*Structured Trust I 2007-1*